UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES<br>AND EXCHANGE COMMISSION,<br><br>              Plaintiff,<br><br>v.<br><br>IFTIKAR AHMED,<br><br>              Defendant, and<br><br>IFTIKAR ALI AHMED SOLE PROP;<br>I-CUBED DOMAINS, LLC; SHALINI AHMED;<br>SHALINI AHMED 2014 GRANTOR RETAINED<br>ANNUNITY TRUST; DIYA HOLDINGS LLC;<br>DIYA REAL HOLDINGS, LLC; I.I. 1, a minor<br>child, by and through his next friends IFTIKAR<br>and SHALINI AHMED, his parents; I.I. 2, a minor<br>child, by and through his next friends IFTIKAR<br>and SHALINI AHMED, his parents; and I.I. 3, a<br>minor child, by and through his next friends<br>IFTIKAR and SHALINI AHMED, his parents,<br><br>              Relief Defendants. | Civil Action No. 3:15cv675 (JBA) |

### DECLARATION OF JEFFREY ORAKER IN SUPPORT OF PLAINTIFF UNITED STATES SECURITIES AND EXCHANGE COMMISSION'S BRIEF IN SUPPORT OF PRELIMINARY INJUNCTION

I, JEFFREY E. ORAKER do, hereby declare under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the following is true and correct, that I am over 18 years of age and I am competent to testify to the matters stated herein:

1. I am an attorney licensed in Colorado since 1996. I am employed as an attorney in the Market Abuse Unit of the Division of Enforcement in the Denver Regional Office ("DRO") of the Securities and Exchange Commission ("Commission").

1

## BACKGROUND REGARDING INVESTIGATION

2. Among other things, the federal securities laws authorize the Commission to conduct investigations to determine whether federal securities laws have been violated and to bring civil actions before the United States District Courts to enforce and secure compliance with those laws. During the course of my employment with the Commission, I have participated in investigations to determine whether there have been violations of the federal securities laws.

3. I am a staff attorney assigned to investigate the securities law violations that the Commission alleges were committed by Iftikar Ahmed. I submit this declaration in support of Plaintiff United States Securities and Exchange Commission's Brief In Support Of Preliminary Injunction. I am familiar with the facts and circumstances herein.

4. The Amended Complaint alleges that Ahmed orchestrated 19 allegedly fraudulent transactions over an approximately ten year time period (the "Fraudulent Transactions"). The Fraudulent Transactions involved a number of different companies including the Oak funds, the BVI Company, Companies A through I, and I-Cubed.

5. As described more fully below, the staff of the Commission received information as part of its investigation and discovery in this litigation including documents from Oak Management Corporation ("Oak") and Shalini Ahmed as well as several financial institutions, including Bank of America ("BOA"), National Financial Services -- or Fidelity -- ("NFS"), Northern Trust ("NT"), TD-Ameritrade ("TDA"), E*Trade, JP Morgan Chase ("JPMC") and TD Bank. True and correct copies of some of these documents are attached hereto as EXHIBITS to this declaration.

### I.   PROCEEDS FROM FRAUDULENT TRANSACTIONS

#### A.   Bank Accounts Used to Receive Proceeds

6. The staff received documents from BOA that show that Ahmed opened and had sole signatory authority over seven BOA bank accounts (the "Secret BOA Accounts"). See

EXHIBIT 1. These documents show that the Secret BOA Accounts were opened in names that made them appear to be legitimate accounts for companies involved in the Fraudulent Transactions.

**Table 1: Secret BOA Accounts**

| Account Name[1] | Date Opened | Number | Shorthand |
|---|---|---|---|
| Iftikar Ali Ahmed Sole Prop dba OIP Advisors[2] | --- | x9310 | BOAx9310 (OIP) |
| Iftikar Ali Ahmed d/b/a Company E | 1/26/05 | x7717 | BOAx7717 (Co. E) |
| Company D | 6/26/06 | x2349 | BOAx2349 (Co. D) |
| Company G | 12/18/07 | x9887 | BOAx9887 (Co. G) |
| Iftikar Ali Ahmed Sole Prop dba Company G | 10/17/11 | x6367 | BOAx6367 (Co. G) |
| Iftikar Ali Ahmed Sole Prop dba BVI Company | 10/10/13 | x3640 | BOAx3640 (BVI Co.) |
| I-Cubed Domains LLC | 10/28/14 | x8384 | BOAx8384 (I-Cubed) |

**B.   Proceeds from Fraudulent Transactions**

7. As described below, Ahmed received at least **$65,021,660.27** in proceeds from the Fraudulent Transactions.

8. The staff received documents from BOA that show that substantial deposits were made into each of Ahmed's seven Secret BOA Accounts. Attached hereto are true and correct copies of certain monthly account statements produced by BOA for the Secret BOA Accounts.

    EXHIBIT 2    **BOAx9310 (OIP)** statements for 11/05, 7/06, 6/07, 10/07, 1/08, 4/09, 6/09 and 12/10

    EXHIBIT 3:    **BOAx7717 (Co. E)** statements for 7/05 and 8/05

    EXHIBIT 4:    **BOAx2349 (Co. D)** statements for 7/06, 1/07 and 8/07

---

[1] The actual names of the companies have been replaced with the designations used in the Amended Complaint (i.e., Company D, Company E, Company G and BVI Company). For example, when the Account Name is listed as "Company D", the account was actually opened in the name of the company that is designated by Company D.

[2] BOA has reported to the DRO staff that the BOAx9310 (OIP) account was originally opened at Fleet Bank, which was later acquired by BOA. BOA has represented to the staff that it has been unable to locate account opening documents or monthly statements for this account before July 2005, except for the Fleet signature cards in Exhibit 1.

3

EXHIBIT 5: **BOAx9887 (Co. G)** statements for 12/07 and 10/09

EXHIBIT 6: **BOAx6367 (Co. G)** statements for 11/11 and 4/13

EXHIBIT 7: **BOAx3640 (BVI Co.)** statements for 10/13, 11/13, 8/14, 12/14 and 1/15

EXHIBIT 8: **BOAx8384 (I-Cubed)** statements for 10/14 and 11/14

9. The monthly account statements for the Secret BOA Accounts show that Ahmed received large sums of money related to the Fraudulent Transactions in his Secret BOA Accounts. Table 2 is a summary of the deposits into the seven Secret BOA Accounts that correspond to the payments for the Fraudulent Transactions that are set forth in the Amended Complaint. Based on my review of the monthly account statements, these deposits represent the significant majority of all of the deposits into the Secret BOA Accounts during the relevant time period.

**Table 2: Deposits from Fraudulent Transactions**

| Date | Amount | Account | Fraudulent Transaction (Amended Complaint ¶ Number) |
|---|---|---|---|
| ---[3] | $650,000.00 | BOAx9310 (OIP) | Company D's payment for "management fee" (¶¶ 28-30) |
| 7/3/06 | $3,000,000.00 | BOAx2349(Co. D) | Oak's payment for advisory services (¶¶ 31-33) |
| 1/29/07 | $6,600,000.00 | BOAx2349(Co. D) | Oak's payment for capital gains taxes (¶¶ 34-36) |
| 8/21/07 | $800,528.81 | BOAx2349(Co. D) | Oak's payment for transaction fees to foreign tax authority (¶¶ 37-40) |
| 7/29/05 | $1,360,000.00 | BOAx7717 (Co. E) | Oak's payment for inflated stock purchase price (¶¶ 43-44) |
| 11/14/05 | $92,285.15 | BOAx9310 (OIP) | Company E's payment for Oak's legal fees (¶¶ 45-47) |
| 6/7/07 | $250,030.00 | BOAx9310 (OIP) | Company F's payment for Oak's legal fees (¶¶ 50-51)) |
| 10/4/07 | $786,312.27 | BOAx9310 (OIP) | Company F's payment for Oak's legal fees (¶¶ 52-54) |
| 12/18/07 1/9/08 | $2,500,000.00 $2,201,050.56 | BOAx9887 (Co. G) BOAx9310 (OIP) | Oak's payment for inflated stock purchase price (¶¶ 57-60) |

---

[3] As noted in footnote 1, BOA has represented to the staff that it has been unable to locate monthly statements for this account before July 2005.

4

| 10/29/09 | $2,101,185.45 | BOAx9887 (Co. G) | Oak's payment for delisting and legal fees (¶¶ 61-62) |
|---|---|---|---|
| 11/29/11 | $3,113,981.00 | BOAx6367 (Co. G) | Oak's payment for "management incentive payment" (¶¶ 63-65) |
| 4/11/13 | $1,556,990.00 | BOAx6367 (Co. G) | Oak's payment for "Management Incentive Payment" (¶¶ 66-67) |
| 4/30/13 | $622,796.00 | BOAx6367 (Co. G) | Oak's payment for "Advisor Fees Reimbursement" (¶¶ 68-69) |
| 4/23/09<br>4/23/09<br>6/17/09 | $1,575,905.94<br>$118,553.60<br>$535,025.04 | BOAx9310 (OIP)<br>BOAx9310 (OIP)<br>BOAx9310 (OIP) | Company H's payment for Oak's legal fees (¶¶ 72-74) |
| 12/22/10 | $2,185,946.03 | BOAx9310 (OIP) | Oak's payment for inflated stock purchase price (¶¶ 75-79) |
| 8/12/14 | $3,544,773.00 | BOAx3640 (BVI Co.) | Oak's payment for inflated purchase price (¶¶ 80-95) |
| 12/19/14 | $18,000,000.00 | BOAx3640 (BVI Co.) | Oak's payment for inflated purchase price (¶¶ 96-110) |
| 10/30/14 | $7,500,000.00 | BOAx8384 (I-Cubed) | Oak's payment for shares owned by I-Cubed (¶¶ 111-122) |
| 10/18/13 | $10,896,193.59 | BOAx3640 (BVI Co.) | Payment for BVI Co. shares in Company C (¶¶ 123-127) |

These documents show that Ahmed received a total of **$69,991,556.44** in deposits related to the Fraudulent Transactions in the Secret BOA Accounts.

10. The monthly account statements for the Secret BOA Accounts show that Ahmed made some payments to other persons related to the Fraudulent Transactions. See (EXHIBITS 2 and 7). Table 3 is a summary of the payments that Ahmed made to various companies from his seven Secret BOA Accounts that correspond to the payments for the Fraudulent Transactions that are set forth in the Amended Complaint.

Table 3: Payments from Secret BOA Accounts

| Date | Amount | Account | Fraudulent Transaction (Amended Complaint ¶ Number) |
|---|---|---|---|
| 7/5/06 | $1,200,000.00 | BOAx9310 (OIP) | Payment to Goldman Sachs for services (¶ 33) |
| 10/9/07 | $269,896.17 | BOAx9310 (OIP) | Payment to Company F (¶ 54) |
| 8/13/14 | $1,500,000.00 | BOAx3640 (BVI Co.) | Payment to BVI Company (¶ 90) |

5

In addition, Ahmed made a payment related to one of the Fraudulent Transactions from an account held jointly in his name and Shalini Ahmed's name at NFS ("NFSx9855 (Joint)"). See EXHIBIT 9.

**Table 4: Payment from NFS Account**

| Date | Amount | Account | Fraudulent Transaction (Amended Complaint ¶ Number) |
|---|---|---|---|
| 6/21/13 | $2,000,000.00 | NFSx9855 (Joint) | Payment to BVI Company (¶ 126) |

These documents show that Ahmed made total payments of **$4,969,896.17** related to the Fraudulent Transactions, which the SEC has subtracted from the money received from the Fraudulent Transactions.

11. Table 5 contains a total of the amount of proceeds Ahmed appears to have received from the Fraudulent Transactions. This was computed by subtracting the payments by Ahmed (listed above) from the deposits Ahmed received in his Secret BOA Accounts (listed above). The table also notes whether the payment to the Secret BOA Account from the Fraudulent Transaction occurred on or after May 6, 2010.

**Table 5: Proceeds from Fraudulent Transactions**

| Fraudulent Transaction (Amended Complaint ¶ Number) | Amount | Date | After 5/6/2010 |
|---|---|---|---|
| Company D's payment for "management fee" (¶¶ 28-30) | $650,000.00 | ---[4] | No |
| Oak's payment for advisory services (¶¶ 31-33) | $3,000,000.00 | 7/3/06 | No |
| Oak's payment for capital gains taxes (¶¶ 34-36) | $6,600,000.00 | 1/29/07 | No |
| Oak's payment for transaction fees to foreign tax authority (¶¶ 37-40) | $800,528.81 | 8/21/07 | No |
| Oak's payment for inflated stock purchase price (¶¶ 43-44) | $1,360,000.00 | 7/29/05 | No |
| Company E's payment for Oak's legal fees (¶¶ 45-47) | $92,285.15 | 11/14/05 | No |

---

[4] As noted in footnote 1, BOA has represented to the staff that it has been unable to locate monthly statements for this account before July 2005.

| | | | |
|---|---|---|---|
| Company F's payment for Oak's legal fees (¶¶ 50-51)) | $250,030.00 | 6/7/07 | No |
| Company F's payment for Oak's legal fees (¶¶ 52-54) | $516,416.10 | 10/4/07 | No |
| Oak's payment for inflated stock purchase price (¶¶ 57-60) | $2,500,000.00<br>$2,201,050.56 | 12/18/07<br>1/9/08 | No<br>No |
| Oak's payment for delisting and legal fees (¶¶ 61-62) | $2,101,185.45 | 10/29/09 | No |
| Oak's payment for "management incentive payment" (¶¶ 63-65) | $3,113,981.00 | 11/29/11 | Yes |
| Oak's payment for "Management Incentive Payment" (¶¶ 66-67) | $1,556,990.00 | 4/11/13 | Yes |
| Oak's payment for "Advisor Fees Reimbursement" (¶¶ 68-69) | $622,796.00 | 4/30/13 | Yes |
| Company H's payment for Oak's legal fees (¶¶ 72-74) | $1,575,905.94<br>$118,553.60<br>$535,025.04 | 4/23/09<br>4/23/09<br>6/17/09 | No<br>No<br>No |
| Oak's payment for inflated stock purchase price (¶¶ 75-79) | $2,185,946.03 | 12/22/10 | Yes |
| Oak's payment for inflated purchase price (¶¶ 80-95) | $2,044,773.00 | 8/12/14 | Yes |
| Oak's payment for inflated purchase price (¶¶ 96-110) | $18,000,000.00 | 12/19/14 | Yes |
| Oak's payment for shares owned by I-Cubed (¶¶ 111-122) | $7,500,000.00 | 10/30/14 | Yes |
| Payment for BVI Co. shares in Company C (¶¶ 123-127) | $8,896,193.59 | 10/18/13 | Yes |

Ahmed therefore received proceeds from the Fraudulent Transactions totaling **$65,021,660.27** [$69,991,556.44 - $4,969,896.17].

## II.   FROZEN ACCOUNTS AND ASSETS

12. As described below, the staff's investigation to date shows that Ahmed used a number of financial accounts and corporate entities to hold his assets, including proceeds from the Fraudulent Transactions, during the past 10 years. Real estate was also purchased by Ahmed and/or with the proceeds from the Fraudulent Transactions. The staff has received documents from financial institutions that show that, since 2004, Ahmed and his

family used more than 50 accounts at various financial institutions and in the names of various entities. Many of these accounts have now been closed or hold no assets.

13. The staff in the DRO served the Court's May 7, 2015 Order on a number of entities, including several financial institutions. Based on the responses from those financial institutions, the DRO staff has informed me that approximately $47.74 million dollars have been restricted by those financial institutions and that the money is held in the following accounts:

**Table 5: Restricted Accounts**

| Institution | Name | Acct No. | Amount |
|---|---|---|---|
| NFS | Shalini Ahmed | 7540 | $12,683,651.51 |
| NFS | Shalini Ahmed 2014 Grantor Retained Annuity Trust | 8965 | $8,455,858.11 |
| NFS | Shalini Ahmed | 5760 | $169,476.02 |
| NFS | Shalini Ahmed | 5070 | $97,929.33 |
| NFS | Essell Farms LLC | 8133 | $0.62 |
| NFS | Essell Group, LLC | 7417 | $4.72 |
| NFS | Giotech Software Limited | 9637 | $829.81 |
| E*Trade | Iftikar Ahmed | 6818 | $940,435.55 |
| TDA | Iftikar A. Ahmed Family Trust UA Jun. 5, 2009 | 7686 | $5,321,456.92 |
| TDA | For I.I.2. UTMA CT Daniel G. Johnson as Cust. | 7666 | $810,123.40 |
| TDA | For I.I.1. UTMA CT Daniel G. Johnson as Cust. | 7674 | $874,550.97 |
| TDA | For I.I.3. UTMA CT Daniel G. Johnson as Cust. | 7700 | $245,318.41 |
| NT | Iftikar Ahmed and Shalini Ahmed | 5188 | $436,365.89 |
| NT | Rakitfi Holdings LLC | 5218 | $15,000.17 |
| NT | The Essell Farms LLC | 5226 | $148,399.68 |
| NT | The Essell Farms LLC | 5234 | $26,074.35 |
| NT | Oak Management Corp FBO Iftikar Ahmed | 7193 | $851,121.00 |
| NT | Iftikar Ahmed and Shalini Ahmed | 3934 | $8,530,274.98 |
| NT | Iftikar Ahmed and Shalini Ahmed | 3935 | $10,010.96 |
| NT | Iftikar Ahmed IRA | 3781 | $66,074.23 |
| NT | Iftikar Ahmed and Shalini Ahmed | 8537 | $1,322,436.79 |

| | | | |
|---|---|---|---|
| NT | Iftikar Ahmed and Shalini Ahmed | 0895 | $1,592,412.23 |
| NT | Rakitfi Holdings LLC | 0901 | $967,244.00 |
| NT | Rakitfi Holdings LLC | 3911 | $3,697,697.00 |
| BOA | UTMA ACCT for I.I.1 Ahmed Iftikar, Custodian | 4104 | $5,002.81 |
| BOA | UTMA ACCT for I.I.2 Ahmed Iftikar, Custodian | 0070 | $5,002.81 |
| BOA | UTMA ACCT for I.I.3 Ahmed Iftikar, Custodian | 5699 | $5,004.04 |
| BOA | Shalini Ahmed and Iftikar Ahmed | 9566 | $4,184.48 |
| BOA | Shalini Ahmed and Iftikar Ahmed | 0482 | $236,043.68 |
| BOA | Shalini Ahmed and Iftikar Ahmed | 3754 | $80,509.71 |
| BOA | DIYA Capital Management, LLC | 4199 | $5,126.16 |
| BOA | DIYA Holdings LLC | 3832 | $36,188.87 |
| BOA | Robert Ades, Beneficiary Diya Holdings LLC, Custodian Landlord/Tenant Account | 6009 | $31,004.30 |
| BOA | I-Cubed Domains LLC | 8384 | $2,840.00 |
| BOA | DIYA Real Holdings, LLC | 7632 | $3,044.76 |
| TD Bank | Iftikar Ahmed | 5279 | $19,253.86 |
| TD Bank | Iftikar Ahmed | 8551 | $8,193.19 |
| JPMC | Iftikar Ahmed and Shalini Ahmed | 9065 | $20,603.28 |
| JPMC | Iftikar Ahmed and Shalini Ahmed | 9001 | $14,365.13 |

The staff has received documents showing the owners for these accounts. See EXHIBIT 10.

A. **Accounts on which Ahmed is a Signatory**

14. The financial institutions have reported that Ahmed is an owner and/or has signatory authority for many of the frozen accounts. In addition, the documents provided by the financial institutions indicate that Ahmed is a signatory for many of the accounts held in the names of corporate entities, including Essell Farms, The Essell Group, Giotech Software Limited, and Rakitfi Holdings. See EXHIBIT 11. In addition, as noted above, Ahmed is the signatory for his BOAx8384 (I-Cubed) account. See EXHIBIT 1.

9

B.  **Other Accounts Funded by Ahmed**

15. The staff's investigation to date indicates that Ahmed may not have signatory authority on some of the frozen accounts. For example, the documents that the staff has received indicate that Ahmed is not listed as a signatory on some accounts held in the name of the Relief Defendants. As described more fully below, however, Ahmed placed substantial amounts of his funds in these accounts, including large amounts of money coming from the proceeds of the Fraudulent Transactions.

C.  **Other Assets**

16. The staff in the DRO served the Court's May 7, 2015 Order on a number of entities in addition to financial institutions. Based on the responses from those entities, the DRO staff has informed me that the following assets have also been reported as frozen or restricted:

| Company | Reported Value of Asset |
|---|---|
| Fort Warren | $493,034.14 |
| Blade | 50,000 Series A Units@ $1. |
| MadeByBelieve | Shares |
| Reserve Media Inc. | $50,000.00 |
| Cyrpto Currency Partners | $25,000.00 |
| Harbor View | $100,000.00 |
| Clues Network Inc. | holds 1,623,177 of preferred A and 18,546 of Preferred C |
| Ribbit Capital I and II | market value $2,347,271.09 |
| MetLife | surrender value $1,249,243.35 death benefit of $17,621,479.91 |
| Mass Mutual | zero cash surrender balance |
| Oak | approx. $4,000,000.00 |
| Apollo | approx. $1,000,000.00 |

The staff has also received information concerning four properties that are or may be directly or indirectly owned, in whole or in part, by Ahmed or that were purchased with proceeds from Fraudulent Transactions. These properties include:

| Property | Purchase Price |
|---|---|
| 505 North Street, Greenwich, CT 06830 | $9,625,000 |

10

| | |
|---|---|
| Unit 12A, 530 Park Avenue, New York, NY 10065 | $9,300,000 |
| Unit 12F, 530 Park Avenue, New York, NY 10065 and 2 storage units | $8,630,000 |
| Ancram Farm, 1820 County Route 7, Ancram, New York | $3,000,000 |

### III. THE RELIEF DEFENDANTS RECEIVED SUBSTANTIAL AMOUNTS OF AHMED'S ASSETS, INCLUDING PROCEEDS FROM THE FRAUDULENT TRANSACTIONS

17. As described below, Ahmed transferred all of the proceeds of the Fraudulent Transactions from the Secret BOA Accounts to other places. As evidenced by the financial records for the Secret BOA Accounts (see EXHIBITS 2 – 8), Ahmed initially transferred most of the proceeds from the Fraudulent Transactions to one of three BOA accounts he held jointly with Shalini Ahmed.

| Account Name | Number | Shorthand |
|---|---|---|
| Iftikar Ahmed and Shalini Ahmed | x3754 | BOAx3754 (Joint) |
| Iftikar Ahmed and Shalini Ahmed | x0482 | BOAx0482 (Joint) |
| Iftikar Ahmed and Shalini Ahmed | x9566 | BOAx9566 (Joint) |

He then transferred substantial amounts of money from these accounts to other financial accounts.

18. The staff is continuing its investigation of where Ahmed ultimately placed his assets, including proceeds from the Fraudulent Transaction. Nevertheless, to date, the staff has found that Ahmed placed many of his financial assets, including proceeds from the Fraudulent Transactions, in accounts or properties held in the name of the Relief Defendants. As a result, the Relief Defendants have received a substantial amount of Ahmed's assets, including proceeds from the Fraudulent Transactions.

A.  **Shalini Ahmed**

19. To date and as described below, the staff has received documents from financial institutions that show accounts held in the name of Shalini Ahmed received large amounts of money from Ahmed. The documents show that a large portion of that money came from proceeds of the Fraudulent Transactions. In particular, large sums of Ahmed's money, including proceeds from the Fraudulent Transactions, were placed in NFS account number x7540 that was opened in the name of Shalini Ahmed ("NFSx7540"). See EXHIBIT 12 (select pages from 1/14, 8/14, 9/14, 11/14, 12/14 and 1/15 statements for NFSx7540).

    1.  **Proceeds from Fraudulent Transactions**

20. As described in more detail below, the staff has received documents that show that accounts held in the name of Shalini Ahmed received at least **$20,075,000** in proceeds from Ahmed's Fraudulent Transactions.

| Date | Amount | From Account |
|---|---|---|
| 8/15/14 | $2,000,000 | Company A Transaction |
| 1/12/15 | $18,000,000 | Company B Transaction |
| 11/3/14 | $75,000 | Company C Transaction |

21. An account held in the name of Shalini Ahmed received **$2,000,000** from Ahmed's proceeds from the Fraudulent Transaction involving Company A. See Amended Complaint ¶¶ 80-95. On August 12, 2014, Ahmed received $3,544,773 in his BOAx3640 (BVI Co.) account as part of the Fraudulent Transaction involving Company A. See EXHBIT 7. On August 15, 2014, just three days later, Ahmed transferred $2,000,000 from his BOAx3640 (BVI Co.) account to the BOAx3754 (Joint) account and Ahmed wrote a check to Shalini Ahmed for the same amount from the BOAx3754 (Joint) account. EXHIBIT 13. On that same day, August 15, 2014, Shalini Ahmed deposited Ahmed's $2,000,000 check into the NFSx7540 account. See EXHIBIT 12 (8/14 statement).

22. Shalini Ahmed received **$18,000,000** from Ahmed's proceeds from the Fraudulent Transaction involving Company B. See Amended Complaint ¶¶ 96-110. On December

19, 2014, Ahmed received $18,000,000 in his BOAx3640 (BVI Co.) account from Oak as part of one of the Fraudulent Transactions involving Company B. See EXHBIT 7. On January 12, 2015, Ahmed transferred $17,999,985.00 from his BOAx3640 (BVI Co.) account to the BOAx3754 (Joint) account and Ahmed wrote a check to Shalini Ahmed for $18,000,000 from the BOAx3754 (Joint) account. See EXHIBIT 14. On that same day, January 12, 2015, Shalini Ahmed deposited the $18,000,000 check from Ahmed into the NFSx7540 account. See EXHIBIT 12 (1/15 statement).

23. Shalini Ahmed received **$75,000** from the Fraudulent Transaction involving the sale of Company C shares by I-Cubed. See Amended Complaint ¶¶ 111-112. On October 30, 2014, Ahmed received $7,500,000 in his BOAx8384 (I-Cubed) account from Oak as part of one of the Fraudulent Transactions involving Company C. See EXHIBIT 8. On November 3, 2014, Ahmed wrote a $75,000 check from his BOAx8384 (I-Cubed) account to Shalini Ahmed. See EXHIBIT 15. As explained below, Ahmed wrote another check for the difference of $7,425,000 to Relief Defendant Shalini Ahmed 2014 Grantor Retained Annuity Trust (the "Shalini 2014 GRAT").

   **2.   Transfers of Proceeds from Fraudulent Transactions to other Relief Defendants**

24. As described in more detail below, the staff has received documents that show that Shalini Ahmed transferred at least **$9,860,000** of proceeds from the Fraudulent Transactions to other Relief Defendants.

25. After depositing $2,000,000 in proceeds from one of the Fraudulent Transactions into the NFSx7540 account (see paragraph 21), Shalini Ahmed transferred **$1,000,000** to Relief Defendant Shalini Ahmed 2014 Grantor Retained Annuity Trust (the "Shalini 2014 GRAT"). See paragraph 31.

26. After depositing $18,000,000 in proceeds from one of the Fraudulent Transactions into the NFSx7540 account (see paragraph 22), Shalini Ahmed used **$8,851,899.22** to purchase a New York City condo that is now owned by Relief Defendant DIYA Real Holdings, LLC. See paragraphs 41-44.

13

27. Shalini Ahmed therefore retained **$10,215,000** [$20,075,000 - $9,860,000] in proceeds from the Fraudulent Transactions.

### 3. Other Proceeds from Ahmed

28. The staff has received documents that show that Shalini Ahmed received, at a minimum, an additional **$4,450,000** from Ahmed in 2014. See EXHIBIT 16. These documents show that Ahmed wrote checks to Shalini Ahmed in the following amounts.

| Date | Amount | From Account |
|---|---|---|
| 1/7/14 | $500,000.00 | BOAx3754 (Joint) |
| 9/23/14 | $500,000.00 | BOAx3754 (Joint) |
| 11/6/14 | $1,200,000.00 | NTx5188 (Joint) |
| 11/17/14 | $1,500,000.00 | BOAx3754 (Joint) |
| 12/15/14 | $750,000.00 | NTx5188 (Joint) |

All of these funds were deposited in the NFSx7540 account. See EXHIBIT 12 (1/14, 9/14, 11/14 and 12/14 statements).

### 4. NFSx7540 Account was Almost Exclusively Funded By Ahmed

29. As described above, the NFSx7540 account currently holds approximately $12.86 million. The documents received by the staff shows that the NFSx7540 account has been funded almost exclusively by Ahmed with his money. See EXHIBIT 12. As of January 1, 2014, the account held only 192 shares of Goldman Sachs stock worth approximately $32,665.91. See EXHIBIT 12 (1/14 statement). Since that time and as detailed above, Shalini Ahmed has deposited into the account a total of **$24,450,000** in checks written to her by Ahmed.

| Date | Amount | Exhibit |
|---|---|---|
| 1/7/14 | $500,000 | Exhibit 16 |
| 8/15/14 | $2,000,000 | Exhibit 13 |
| 9/23/14 | $500,000 | Exhibit 16 |
| 11/6/14 | $1,200,000 | Exhibit 16 |
| 11/17/14 | $1,500,000 | Exhibit 16 |
| 12/15/14 | $750,000 | Exhibit 16 |
| 1/12/15 | $18,000,000 | Exhibit 14 |

In contrast, apart from the few Goldman Sachs shares, the account has received less than $5,000 in deposits from any other source.

**B.  Shalini Ahmed 2014 Grantor Retained Annuity Trust**

30. To date and as described below, the staff has received documents from financial institutions that show that the Shalini 2014 GRAT received at least **$8,425,000** from proceeds from Ahmed's Fraudulent Transactions. As detailed below, this money was deposited into NFS account number x8965, an account opened in the name of Shalini 2014 GRAT ("NFSx8965"). See EXHIBIT 17 (select pages from 10/14 and 11/14 statements for NFSx8965).

   **1.  Proceeds from Fraudulent Transactions**

31. Shalini 2014 GRAT received **$1,000,000** from Ahmed's proceeds from the Fraudulent Transaction involving Company A. See Amended Complaint ¶¶ 80-95. As described above, on August 15, 2014, Shalini Ahmed deposited into the NFSx7540 account a $2,000,000 check from Ahmed with proceeds from the Fraudulent Transaction involving Company A. See paragraph 21. On October 1, 2014, Shalini Ahmed then transferred **$1,000,000**, via check (EXHIBIT 18), from the NFSx7540 account to the Shalini 2014 GRAT, depositing the money in the NFSx8965 account. See EXHIBIT 17 (10/14 statement). This was the first check written on the NFSx7540 account and the first deposit made into the NFSx8965 account.

32. Shalini 2014 GRAT also received **$7,425,000** from Ahmed's proceeds from one of the Fraudulent Transactions involving Company C. See Amended Complaint ¶¶ 111-112. On October 30, 2014, Ahmed received $7,500,000 in his BOAx8384 (I-Cubed) account from Oak for this Fraudulent Transaction. EXHIBIT 8. On November 3, 2014, Ahmed wrote a $7,425,000 check from his BOAx8384 (I-Cubed) account to the Shalini 2014 GRAT (EXHIBIT 19) and Shalini Ahmed deposited the money in the NFSx8965 account. See EXHIBIT 17 (11/14 statement).

15

### 2. NFSx8965 Account was Exclusively Funded By Ahmed

33. The documents received by the staff show that the NFSx8965 account was funded solely through the **$8,425,000** of proceeds from the Fraudulent Transactions described above. See EXHIBIT 17.

### C. DIYA Holdings LLC

34. To date and as described below, the staff has received documents that show Relief Defendant DIYA Holdings LLC now owns a New York City condominium that was purchased with Ahmed's money and primarily with proceeds from one of the Fraudulent Transactions. In particular, these funds were used to purchase 530 Park Avenue, Unit 12A, New York, NY 10065 ("530 Park Avenue, Unit 12A") on December 30, 2013. See EXHIBIT 20.

#### 1. Proceeds from Fraudulent Transactions

35. As described below, the staff has received documents that show that the 530 Park Avenue, Unit 12A condo, now owned by DIYA Holdings LLC, was purchased using at least **$8,688,634.96** in proceeds from the Fraudulent Transactions.

36. On October 18, 2013, Ahmed received $10,896,193.59 in his BOAx3640 (BVI Co.) account as part of one of the Fraudulent Transactions involving Company C. See Amended Complaint ¶¶ 123-127. On November 14, 2013, Ahmed transferred more than $10,590,000 from his BOAx3640 (BVI Co.) account to the BOAx9566 (Joint) account. See EXHIBIT 7. Then, on December 27, 2013, Ahmed transferred $9,500,000 from the BOAx9566 (Joint) account to the BOAx3754 (Joint) account and wrote an **$8,686,494.29** check to Bank of America the same day. See EXHIBIT 21. The check was made out to Bank of America and the memo line on the check states it was for "530 Park Avenue NYC".

37. The documents received from Shalini Ahmed show that Bank of America issued a series of cashier's checks for that same amount on December 27, 2013. Those documents also show that, on December 30, 2013, Ahmed wrote two additional checks from the

16

BOAx3754 (Joint) account for a total of $2,140.67 that relate to the purchase of 530 Park Avenue, Unit 12A. EXHIBIT 22.

### 2. Other Proceeds from Ahmed

38. As described below, the staff has received documents that show that the 530 Park Avenue, Unit 12A condo, now owned by DIYA Holdings LLC, was purchased using an additional **$930,000**.

39. On or about November 29, 2012, $930,000 was wired from an account jointly owned by Ahmed and Shalini Ahmed to an attorney trust account who was involved in the deal. See EXHIBIT 23.

### D. DIYA Real Holdings, LLC

40. To date and as described below, the staff has received documents that show DIYA Real Holdings, LLC now owns a New York City condominium that was purchased with proceeds from one of the Fraudulent Transactions. In particular, these proceeds were used to purchase 530 Park Avenue, Unit 12F, New York, NY 10065 ("530 Park Avenue, Unit 12F") on April 20, 2015. EXHIBIT 24.

41. Shalini Ahmed used at least **$8,851,899.21** in proceeds from the Fraudulent Transactions to purchase the 530 Park Avenue, Unit 12F condo.

42. After depositing the $18,000,000 in proceeds from one of the Fraudulent Transaction into the NFSx7540 account (see paragraph 22), Shalini Ahmed made two substantial transfers of money (one for $860,000 and one for $8,000,000) from the account to purchase the condo.

43. On March 13, 2015, **$860,000** was wired from the NFSx7540 account to the Ahmeds' real estate attorneys as an apparent deposit on the purchase of the 530 Park Avenue, Unit 12F condo. See EXHIBIT 25.

44. On April 16, 2015, Shalini Ahmed transferred $8,000,000, via wire transfer, from the NFSx7540 account to a Northern Trust account, account number x5188 held jointly by Ahmed and Shalini Ahmed ("NTx5188 (Joint)"). EXHIBIT 26. The next day, Shalini

Ahmed withdrew **$7,991,899.21** from the NTx5188 (Joint) account and Northern Trust issued a series of cashier's checks that were used to pay for the condo that was put in name of DIYA Real Holdings, LLC. See EXHIBIT 27.

E.  **Ahmed's Children**

45.  To date, the staff has received documents which show that at least 14 different financial accounts have been opened in the name of Ahmed's children since 2009. Some of these accounts remain open and some have been closed. The documents show that each of Ahmed's three minor children received substantial amounts of money from Ahmed, including two children who received proceeds from the Fraudulent Transactions. The documents also show that large sums of money were transferred to the children's accounts by Ahmed and/or Shalini Ahmed through friends and relatives.

   1.  **Proceeds from Fraudulent Transactions**

46.  Two of Ahmed's three children received a total of **$69,300** in proceeds from one of the Fraudulent Transaction involving Company C. See Amended Complaint ¶¶ 123-127. On October 18, 2013, Ahmed received $10,896,193.59 in his BOAx3640 (BVI Co.) account as part of the Fraudulent Transaction involving Company C. See EXHIBIT 7. On December 21, 2013, Ahmed made five transfers from these proceeds, including two transfers to BOA accounts that were in the name of his children. EXHIBIT 28.

| Date | Amount | To Account |
|---|---|---|
| 10/21/13 | $35,000 | BOAx4104 |
| 10/21/13 | $34,300 | BOAx5699 |

   2.  **Other Proceeds from Ahmed**

47.  As described below, the staff has received documents showing that financial accounts in the name of the children received, either directly or indirectly, almost all of their assets from accounts owned by Ahmed and Shalini Ahmed. These documents suggest that each year, Ahmed or Shalini Ahmed would (1) write checks to their children from their personal accounts, and (2) write checks to family members or friends who would then write checks in the same amount back to the children.

48. The documents show that the three children received a total of approximately at least **$538,000** directly from accounts owned by Ahmed and Shalini Ahmed. See EXHIBIT 29. The children also received two BOA cashier's checks that total **$200,000**.

49. The documents also show that the three children received a total of approximately **$926,000** indirectly from accounts owned by Ahmed and Shalini Ahmed. Each year, Ahmed and/or Shalini Ahmed would write a check to several relatives and/or friends. Shortly before or after, those relatives and/or friends would write checks to the three children that totaled the amount of the check they received from Ahmed or Shalini Ahmed. See EXHIBIT 30 (checks showing this process from 2010).

## IV. PREJUDGMENT INTEREST

50. Using the Commission's Division of Enforcement Prejudgment Interest Calculator to calculate prejudgment interest on the proceeds from the Fraudulent Transactions, the total prejudgment interest for these proceeds is $9,303,847.24. See EXHIBIT 31. A summary of those calculations is listed below.

| Proceeds | Prejudgment Interest |
|---:|---:|
| $650,000.00 | $405,575.05 |
| $1,800,000.00 | $854,245.33 |
| $6,600,000.00 | $2,751,277.09 |
| $800,528.81 | $282,707.40 |
| $1,360,000.00 | $787,754.51 |
| $92,285.15 | $50,348.80 |
| $250,030.00 | $92,865.83 |
| $516,416.10 | $173,184.27 |
| $2,500,000.00 | $794,350.20 |
| $2,201,050.56 | $682,459.73 |
| $2,101,185.45 | $416,451.48 |
| $3,113,981.00 | $334,533.60 |
| $1,556,990.00 | $95,929.05 |
| $622,796.00 | $38,371.61 |
| $1,575,905.94 | $350,609.23 |
| $118,553.60 | $26,375.93 |
| $535,025.04 | $114,689.65 |

| | |
|---:|---:|
| $2,185,946.03 | $314,336.54 |
| $2,044,773.00 | $40,949.78 |
| $18,000,000.00 | $177,862.56 |
| $7,500,000.00 | $112,083.70 |
| $8,896,193.59 | $406,885.90 |
| **TOTAL** | $9,303,847.24 |

Executed: July 20, 2015

*/s/ Jeffrey E. Oraker*
JEFFREY E. ORAKER