UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-------------------------------------------------------------- X

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

               *Plaintiff,*

  v.

IFTIKAR AHMED,

              *Defendant, and*

IFTIKAR ALI AHMED SOLE PROP,         Civil Action No.
I-CUBED DOMAINS, LLC; SHALINI AHMED;   3:15-CV-675 (JBA)
SHALINI AHMED 2014 GRANTOR RETAINED
ANNUITY TRUST; DIYA HOLDINGS LLC;
DIYA REAL HOLDINGS, LLC; I.I. 1, a minor
child, by and through his next friends IFTIKA and
SHALINI AHMED, his parents; I.I. 2, a minor child,
by and through his next friends IFTIKAR and
SHALINI AHMED, his parents; and I.I. 3, a minor
child, by and through his next friends IFTIKAR and
SHALINI AHMED, his parents,

             *Relief Defendants.*

-------------------------------------------------------------- X

# PREHEARING BRIEF OF RELIEF DEFENDANTS REQUESTING LIMITED RELIEF FROM THE COMPLETE ASSET FREEZE SOUGHT BY THE SECURITIES AND EXCHANGE COMMISION BY PRELIMINARY INJUNCTION

MURTHA CULLINA, LLP
177 Broad Street, 16th Floor
Stamford, CT 06901
Tel. 203.653.5400

HARRIS, O'BRIEN, ST. LAURENT &
CHAUDHRY LLP
111 Broadway, Suite 1502
New York, New York 10006
Tel. 212.397.3370

*Attorneys for Relief Defendants*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

THE RELIEF DEFENDANTS ............................................................................... 3

ARGUMENT ........................................................................................................ 6

   I.   The Limited Release of Funds Is Appropriate and Justified ................................ 7

        A.   Living expenses .......................................................................... 8

        B.   Legal fees .................................................................................. 10

   II.   The Freeze Includes Monies Earned by Shalini Ahmed and DIYA ................... 11

        A.   Compensation Earned By Shalini Ahmed .................................. 11

        B.   Income from DIYA ..................................................................... 13

   III.   The SEC Overestimates the Amount of Disgorgement and Penalties ............... 13

        A.   Mr. Ahmed's Representation was Accurate ................................ 15

        B.   The SEC Cannot Establish a Legal Violation Related to I-Cubed ............. 17

        C.   Even If The SEC Prevails On The Merits, It Is Not Likely To Obtain Disgorgement Relating To Sale Of Company C Shares ............................. 19

   IV.   An Additional $23 Million Belonging to the Actual Defendant is Available ....................................................................................................... 21

RELIEF SOUGHT ................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Belmont v. MB Inv. Partners, Inc.*,
    708 F.3d 470 (3d Cir. 2013)................................................................. 18

*CFTC v. Hanover Trading Corp.*,
    34 F.Supp.2d 203 (S.D.N.Y. 1999) ...................................................... 12

*CFTC v. Kimberlynn Creek Ranch*,
    276 F.3d 187 (4th Cir. 2002) ................................................................ 12

*CFTC v. Nav Sarao Futures, Ltd.*,
    Case No. 15-cv-3398 (N.D. Ill.) ....................................................7, 8, 11

*CFTC v. Sarvey*,
    2008 WL 2788538 (N.D. Ill. July 17, 2008)......................................... 13

*CFTC v. Sidoti*,
    178 F.3d 1132 (11th Cir. 1999) ............................................................ 20

*Federal Sav. & Loan Ins. Corp. v. Dixon*,
    835 F.2d 554 (5th Cir. 1987) .................................................................8

*FTC v. Bronson Partners, LLC*,
    674 F.Supp.2d 373 (D. Conn. 2009).................................................... 12

*FTC v. Washington Data Res.*,
    2011 WL 3566612 (M.D. Fla. Aug. 12, 2011) ......................................8

*Graham v. Barriger*,
    699 F. Supp. 2d 612 (S.D.N.Y. 2009) ................................................. 18

*Janvey v. Adams*,
    588 F.3d 831 (5th Cir. 2009) ............................................................... 12

*Oliver v. Black Knight Asset Mgmt., LLC*,
    812 F. Supp. 2d 2 (D.D.C. 2011).......................................................... 18

*SEC v. Blatt*,
    583 F.2d 1325 (5th Cir. 1978) ............................................................. 19

*SEC v. Byers*,
    637 F.Supp.2d 166 (S.D.N.Y. 2009) ................................................... 24

*SEC v. Cavanagh,*
  155 F.3d 129 (2d Cir.1998)............................................................. 11, 13

*SEC v. Coates,*
  1994 WL 455558 (S.D.N.Y. Aug. 23 1994) ....................................9

*SEC v. Cohen,*
  2007 WL 1192438 (E.D. Mo. Apr. 19, 2007)............................... 19

*SEC v. Credit Bancorp,*
  2000 WL 1752979 (S.D.N.Y. Nov. 29, 2000)............................... 24

*SEC v. Credit Bancorp, Ltd.,*
  738 F.Supp.2d 376 (S.D.N.Y. 2010) ............................................ 25

*SEC v. Dowdell,*
  175 F.Supp.2d 850 (W.D. Va. 2001) ................................... 7, 8, 9, 10

*SEC v. Duclaud Gonzalez de Castilla,*
  170 F.Supp.2d 427 (S.D.N.Y. 2001) ................................... 7, 10, 25

*SEC v. First Jersey Sec., Inc.,*
  101 F.3d 1450 (2d Cir. 1996)....................................................... 19

*SEC v. Founding Partners Capital Mgmt.,*
  639 F.Supp.2d 1291(M.D. Fla. 2009)........................................... 12

*SEC v. Gane,*
  2005 WL 90154 (S.D. Fla. Jan. 4, 2005) ..................................... 20

*SEC v. Int'l Loan Network, Inc.,*
  770 F.Supp. 678 (D.D.C. 1991) ................................................... 10

*SEC v. Johnson,*
  2006 WL 2053379 (S.D.N.Y. July 24, 2006) ............................... 20

*SEC v. Jones,*
  476 F.Supp.2d 374 (S.D.N.Y. 2007) ........................................... 20

*SEC v. Lauer,*
  445 F.Supp.2d 1362 (S.D. Fla. 2006) ...........................................8

*SEC v. Manor Nursing Centers, Inc.,*
  458 F.2d 1082 (2d Cir. 1972).........................................................7

*SEC v. McCaskey,*
  2002 WL 850001 (S.D.N.Y. Mar. 26, 2002) ........................... 19, 20

*SEC v. Opulentica,*
    479 F.Supp.2d 319 (S.D.N.Y. 2007) .................................................................25

*SEC v. Petters,*
    2009 WL 3379954 (D. Minn. Oct. 20, 2009) ...............................................8

*SEC v. Quan,*
    2013 WL 1703499 (D. Minn. April 19, 2013)..........................................24

*SEC v. Quan,*
    2014 WL 4670923 (D. Minn. Sept. 19, 2014)..................................11, 13

*SEC v. Quinn,*
    997 F.2d 287 (7th Cir. 1993) .......................................................................10

*SEC v. Rosenthal,*
    426 F. App'x 1 (2d Cir. 2011) ....................................................................12

*SEC v. Todd,*
    2007 WL 1574756 (S.D. Cal. May 30, 2007)...........................................19

*SEC v. True N. Fin. Corp.,*
    909 F. Supp. 2d 1073 (D. Minn. 2012*)*..................................................18

## Statues & Other Authorities

15 U.S.C. § 80b-6 .................................................................................................17

Conn. Gen. Stat. Ann. § 46b–36 ........................................................................16

The appearing relief defendants Shalini Ahmed, her three minor children, I-Cubed Domains, LLC ("I-Cubed"), Shalini Ahmed 2014 Grantor Retained Annuity Trust ("Shalini Ahmed 2014 GRAT"), DIYA Holdings LLC ("DIYA"), and DIYA Real Holdings LLC ("DIYA Real", and collectively "the Relief Defendants") respectfully submit this memorandum of law in support of their application for limited relief from the asset freeze sought by Plaintiff U.S. Securities and Exchange Commission ("SEC") through a preliminary injunction.

## PRELIMINARY STATEMENT

The SEC seeks the extraordinary relief of a complete and total asset freeze against Relief Defendants, including a mother and three minor children who have not been accused of any wrongdoing and who have been abandoned by the defendant, Iftikar Ahmed.  In so doing, the SEC:

- improperly treats the Relief Defendants as wrongdoers;

- is unwilling to accept a standard carve-out for living and legal expenses from a pool of frozen assets that is approximately $60 million;

- ignores funds of the Relief Defendants which they earned and are untainted by any measure;

- relies on overstated estimates of any likely disgorgement and penalties;

- relies on at least one claim for $7.5 million which is fundamentally flawed; and

- willfully ignores another pool of assets belonging to the Defendant himself, which have not been frozen, and is worth in excess of $23 million.

The underlying allegation in this case is that Iftikar Ahmed, the husband of Relief Defendant, Shalini Ahmed, committed a massive fraud against his former employer, Oak Capital Management LP and investors in venture funds managed by Oak.  In seeking the freeze, the SEC relies almost entirely upon two affidavits provided by Oak's Chief Financial Officer and documents provided by Oak.  However, nowhere in those affidavits does Oak disclose or acknowledge that it engaged in self-help by seizing at least $23 million in assets belonging to Defendant Iftikar Ahmed at a time when this Court's temporary restraining order prohibiting such actions was already in effect.  These assets should be available to satisfy any judgment against Mr. Ahmed, and should come before any disgorgement from non-wrongdoing Relief Defendants.

The Relief Defendants seek limited and reasonable relief from the freeze to either (a) free assets with respect to which the SEC is unlikely to prevail; or (b) free sufficient funds to pay living and legal expenses, taxes and other reasonable expenses during the pendency of this proceeding.  Under either alternative, the Relief Defendants will agree to reasonable restrictions on the use of the funds so as to prevent any improper dissipation.   In sum, the Relief Defendants ask to be treated for who they genuinely are: a mother and three small children, with no knowledge of the alleged wrongdoing of their husband and father, who need to pay their bills under extraordinarily difficult conditions, and who have been compelled to contest highly complex allegations of fraud by the SEC.

## THE RELIEF DEFENDANTS

Shalini Ahmed is a 39 year old mother of three minor children: an 8-year old son, a 7 year old son, and 3 year old son.  She is a 1998 graduate of Princeton University and a 2002 graduate of Harvard Business School.[1]

In 2003, while working as an analyst at Merrill Lynch, Shalini Ahmed married Iftikar Ahmed.  At the time, Iftikar Ahmed, a graduate of the Indian Institute of Technology Delhi and Harvard Business School, worked as a Vice President at Fidelity Ventures, the venture capital arm of Fidelity Investments.  In 2004, Mr. Ahmed took a prestigious position at Oak Management Corporation, operating as Oak Investment Partners ("Oak"), a well-known venture capital firm headquartered in Norwalk, Connecticut.  In 2004, Shalini Ahmed took a job as a research analyst at Goldman Sachs in New York, New York.  The couple then moved to New York City, where they remained until moving to Greenwich, Connecticut in 2007.

After the birth of her first two children, Shalini Ahmed continued to work at Goldman Sachs, and commuted every day to work in New York after her move to Greenwich.  Shalini Ahmed remained at Goldman Sachs until 2011, when she was downsized while pregnant with her third child.

At all times, Shalini Ahmed believed her husband to be a hard-working, successful venture capitalist, who had pulled himself up from nothing, and an excellent father to her children.  That all changed on April 2, 2105.  On that day, her husband, was

---

[1] Shalini Ahmed will testify at the preliminary injunction hearing as to the facts presented herein.

arrested and charged with insider trading in the United States District Court in the District of Massachusetts, Case No. 1:15-mj-02062.

About a month later, by its Complaint dated May 6, 2015, the SEC brought this case charging her husband with wrongdoing relating to his position at Oak, including the misuse and theft of funds through fraud.

On or about May 16, 2015, Iftikar Ahmed fled the country, leaving Shalini Ahmed and their three minor children at home in Connecticut to fend for themselves. Since that day, Shalini Ahmed has done nothing except deal with the problems left behind by her husband under the most difficult of circumstances.

On May 20, 2015, the US District Court in Massachusetts handling the criminal case ordered severe restrictions on Shalini Ahmed's personal movements including forcing her to wear an ankle bracelet, on the ground that she is a material witness. The restrictions limited Shalini Ahmed to two-and-a-half hours of movement outside her home in the mornings and afternoons, with no trips allowed on the weekends.  Under these restrictions, Ms. Ahmed had time to pick up and drop off her three young children at school and do some grocery shopping, but was effectively otherwise limited to her home.  In short, Shalini Ahmed has been effectively held a prisoner in her own home, although accused of no wrongdoing.

At the same time, all the financial institutions where Shalini Ahmed held her accounts except one, immediately restrained access to her accounts, even though she had not even yet been named a Relief Defendant, and such accounts were not within the ambit of the initial freeze Order.  From the one account in her name not frozen, Shalini Ahmed transferred $671,000 to her counsel prior to being named a Relief Defendant.

These funds were subsequently used to transfer $500,000 to the custody of the government to fund a bond to somewhat lessen the conditions of her home confinement, to pay long overdue bills, school expenses and a modest retainer to her Connecticut counsel.

On June 16, 2015, the SEC brought this Amended Complaint, naming Shalini Ahmed, her three minor children, and several other entities in which Shalini Ahmed and/or her children have material interests. Those entities are:

- I-Cubed Domains, LLC ("I-Cubed"), an investment vehicle 99 percent owned by Relief Defendant Shalini Ahmed 2014 Grantor Retained Annuity Trust and 1 percent owned by Shalini Ahmed;

- Shalini Ahmed 2014 Grantor Retained Annuity Trust (the "Shalini Ahmed 2014 GRAT"), a trust of which Shalini Ahmed is Trustee, with approximately $7.5 million in assets, including a 99 percent interest in I-Cubed;

- DIYA Holdings LLC ("DIYA"), which owns an apartment at 530 Park Avenue in New York; Shalini Ahmed holds a 99 percent interest in DIYA and acts as its sole Manager; and

- DIYA Real Holdings LLC ("DIYA Real"), which owns a second apartment at 532 Park Avenue; Shalini Ahmed holds a 99 percent interest in DIYA Real and acts as its sole Manager.

***Notably not named as a Relief Defendant is Oak, Iftikar Ahmed's former employer***. The affidavits from Oak's CFO, Grace Ames, upon which the SEC relies, details a laundry list of alleged wrongdoing by Mr. Ahmed taking place over ten years and claiming damages to Oak's investors of approximately $65 million. Ms. Ames ascribes exactly zero blame to Oak for any of the purported wrongdoing (not even negligence or a failure to supervise), even though all the transactions at issue unquestionably involved numerous other participants and approvals from Oak. Even more importantly, Ms. Ames leaves out of her affidavit completely any description of the self-help maneuver executed by Oak, in which it took a minimum of $23 million dollars

belonging to Iftikar Ahmed for itself following the filing of the SEC's complaint and the entry of the TRO in this case. All of those funds, which belong to Mr. Ahmed, should be available to recompense any wrongdoing by Mr. Ahmed. That further increases the already considerable pool of funds available to the SEC.

## ARGUMENT

The SEC has the burden of establishing that the equities are in its favor, and that it will ultimately prevail with respect to *all* the frozen assets, and this is a burden it cannot meet. As discussed below:

• Courts routinely unfreeze some portion of restricted assets for the purpose of paying legal fees and ordinary living expenses. That approach is particularly appropriate for Relief Defendants.

• In order to reach the assets of a relief defendant, the SEC has the burden of proving that the relief defendant (1) received ill-gotten gains from the defendant and (2) has no legitimate claim to those funds. There is no question that several of the Relief Defendants possess untainted assets and have legitimate claims to those funds.

• The SEC's estimate of $65 million in disgorgement is overstated by at least $7.5 million. The SEC cannot demonstrate it is likely to prevail on its claim that one of the Company C transactions described in the Amended Complaint supports disgorgement of some $7.5 million held entirely by a Relief Defendant.[2]

• The SEC's claim that it must freeze assets to cover a prospective civil penalty of more than $40 million is unsupportable.

---

[2] For purposes of this motion, the Relief Defendants focus only on one set of transactions—those involving "Company C". The Relief Defendants reserve all rights to challenge any aspect of the SEC's case in further proceedings.

•       Even if the SEC could show a genuine need for a freeze of that magnitude, it has more than enough assets available to it without freezing *all* of the Relief Defendant's accounts.  In addition, Oak has unilaterally seized capital accounts in Iftikar Ahmed's name worth at least $23 million dollars and those accounts should be made part of the asset freeze.

## I.       The Limited Release of Funds Is Appropriate and Justified

Where the SEC seeks to freeze the assets of a defendant or relief defendant, "the disadvantages and possible deleterious effect of a freeze must be weighed against the considerations indicating the need for such relief."  *SEC v. Duclaud Gonzalez de Castilla*, 170 F.Supp.2d 427, 429 (S.D.N.Y. 2001) (citing *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1105 (2d Cir. 1972)); *SEC v. Dowdell*, 175 F.Supp.2d 850, 854 (W.D. Va. 2001) (same).

The SEC and other similar agencies commonly reach agreements with parties for the payment of reasonable living expenses and legal fees.  To take a recent example, *CFTC v. Nav Sarao Futures, Ltd.*, Case No. 15-cv-3398 (N.D. Ill.), involves claims against the individuals responsible for the 2010 "flash crash" and allegations that the defendants enriched themselves by approximately $40 million.  The CFTC entered into an agreement with individual defendant Navinder Singh Sarao that immediately released $2.5 million for legal expenses, and permitted him access to additional funds for legal expenses and for reasonable living expenses as long as the amount of assets frozen surpassed $30 million.  (Consent Order of Preliminary Injunction and Other Ancillary Relief in Resolution of Plaintiff's Motion for Statutory Restraining Order, Preliminary Injunction and Other Equitable Relief, *CFTC v. Nav Sarao Futures, Ltd.*, Case No. 15-

cv-3398 (N.D. Ill.), Docket No. 46, at 9-10.)  *See also* Nick Baker, *Judge Lets Rigas Family Get $15 Million to Cover Legal Fees*, Wall Street Journal, Aug. 1, 2003 (U.S. Bankruptcy Court releases $15 million to cover defendants' legal fees in *In re Adelphia Communications Corp.*, No. 02-41729) (attached as Ex. 1 to Declaration of Alexander Sakin ("Sakin Decl.")); *F.T.C. v. QT, Inc.*, 249 F.R.D. 305, 306 (N.D. Ill. 2008) (stipulation between Defendants and FTC included carve-out permitting Defendants to "pay reasonable . . . business and living expenses, and attorneys' fees, costs, and expenses of up to $2.5 million from existing assets" notwithstanding $17 million in frozen assets).

### A.   Living expenses

Equity and decency weigh in favor of permitting Shalini Ahmed and her three children sufficient funds to pay ordinary living expenses.  Even defendants accused of crimes are commonly permitted funds for basic living expenses.  *See, e.g.*, *FTC v. Washington Data Res.*, 2011 WL 3566612, at *1 n. 2 (M.D. Fla. Aug. 12, 2011); *Federal Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 557 (5th Cir. 1987); *SEC v. Petters*, 2009 WL 3379954 at *2 (D. Minn. Oct. 20, 2009); *SEC v. Dowdell*, 175 F.Supp.2d at 854-55 (W.D. Va. 2001); *SEC v. Lauer*, 445 F.Supp.2d 1362, 1364 (S.D. Fla. 2006).  By contrast, we have been unable to locate even a single decision where the SEC or other governmental agency sought—much less was successful in obtaining—a complete freeze of the assets of a relief defendant that was a real person, as opposed to a corporate entity.

Indeed, in the rare cases in which courts have denied requests for the release of living expenses, "the defendants were found to have other sources of income or were requesting funds for luxuries, not necessities." *Dowdell*, 175 F.Supp.2d at 854 (internal

citations omitted); *see also SEC v. Coates*, 1994 WL 455558 at *2 (S.D.N.Y. Aug. 23 1994) (request for living expenses denied where defendant neglected to inform court that receiver was paying salaries to him, his wife and his son).

Shalini Ahmed has no personal income (and is incapable of even looking for a job while subject to the restraints imposed by government). However, one of the Relief Defendant entities currently generates $31,000 a month of substantial income and another would generate similar income if the SEC would consent to the rental of the underlying property. In the event the Court does not grant a lump sum relief from the freeze, Shalini Ahmed requests a fraction of this income, $20,000 per month for living expenses, as to which she will testify at the hearing. We ask the Court to consider the following factors:

- Relief Defendant DIYA owns a rental apartment that generates $31,000 in monthly income. Shalini Ahmed is the beneficial owner and Manager of DIYA. This income alone could be used to pay living expenses with no dissipation of frozen assets.[3]

- Relief Defendant DIYA Real owns an apartment that could be rented for approximately $20,000 per month. Shalini Ahmed is the beneficial owner and Manager of DIYA Real. To date, the SEC has not given approval to rent this apartment that could wholly fund these living expenses.

- $20,000 per month is a meaningful reduction from the family's prior living expenses of over $45,000 per month and reflects Shalini Ahmed's understanding of her family's changed circumstances and her concerted efforts to significantly reduce their living expenses.

- Two of Shalini Ahmed's children have medical issues requiring meaningful expenditures.

## B.    Legal fees

Access to fees for proper legal representation is essential to ensure the fairness of the process. For example, in *SEC v. Dowdell*, the Court explained:

---

[3] The $31,000 generated by DIYA would be sufficient to fund both the requested living expenses and maintenance on the apartments held by DIYA and DIYA Real.

> This court's central concern is the fairness of the proceedings. The court does not believe that it could achieve a fair result at the preliminary injunction hearing were it to deny defendants the ability to retain counsel. This is a complex legal matter, and lawyers are essential to the presentation of issues related to it.

175 F.Supp.2d at 856.

Similar reasoning has led numerous courts to grant legal fees even to defendants accused of wrongdoing. *See, e.g.*, *SEC v. Quinn*, 997 F.2d 287, 289 (7th Cir. 1993); *Duclaud Gonzalez de Castilla*, 170 F.Supp.2d at 430 (noting that defendants had presented a possible challenge to the SEC's evidence and that substantial legal work had already been performed in arguing summary judgment motion, necessitating release of legal fees); *SEC v. Int'l Loan Network, Inc.*, 770 F.Supp. 678, 680 (D.D.C. 1991) (granting modification of asset freeze to permit defendants to retain counsel); *S.E.C. v. McGinnis*, 2013 WL 6500268, at *6 (D. Conn. Dec. 11, 2013) (releasing funds requested by defendant to pay balance of legal fees).

The complexity of the issues in this case reinforces the need for counsel. The SEC's alleges multiple frauds dating back to 2004—involving a variety of companies, many of which are located abroad. The value of Mr. Ahmed's assets available to satisfy a judgment is a central issue, and many of these assets are illiquid and not easily valued. In addition, Oak has helped itself to at least $23 million of Mr. Ahmed's assets and this will may require substantial litigation to resolve.

Counsel for Relief Defendants have, to date, already incurred approximately $240,000 in fees including discovery, analyzing all allegations, depositions, and preparing for this preliminary injunction hearing. Counsel has received no payment to date, except for a $25,000 retainer paid to Murtha Cullina LLP. We estimate that a full

litigation of this matter on behalf of the Relief Defendants would cost in the range of $2 to $4 million. At this time, we request the release of $2.5 million for legal fees, which is the same amount as the CFTC agreed to release in the recent *Nav Sarao* case.

## II.   The Freeze Includes Monies Earned by Shalini Ahmed and DIYA

In order to reach the assets of a relief defendant, the SEC has the burden of proving that the relief defendant (1) received ill-gotten gains from the defendant and (2) has no legitimate claim to those funds. *See SEC v. Cavanagh,* 155 F.3d 129, 136 (2d Cir. 1998) (setting forth the standard). With regard to the second prong, the Relief Defendant need not possess all property rights to the subject property, rather "[a]n ownership interest or legitimate claim in property that is the subject of litigation will preclude a person or entity from being a proper relief defendant. *S.E.C. v. Quan*, 2014 WL 4670923, at *18 (D. Minn. Sept. 19, 2014). Here, the SEC has overreached by attempting to freeze funds that do not constitute ill-gotten gains *and* as to which Ms. Ahmed has a legitimate property interest.

### A.   Compensation Earned By Shalini Ahmed

From 2004 to 2012, Shalini Ahmed worked for Goldman Sachs and earned $1,261,564.87 in after-tax income. She also received stock and made retirement plan contributions. Her 401K accounts currently hold about $262,800, and she holds about $39,600 in Goldman Sachs stock. Ms. Ahmed is "is a far cry from the 'paradigmatic' nominal defendant: a trustee, agent or depository." *SEC v. Founding Partners Capital Mgmt.*, 639 F.Supp.2d 1291, 1294 (M.D. Fla. 2009).

There can be no dispute that she is entitled to retain the proceeds of her work for Goldman Sachs, including her 401K and stock awards. *See CFTC v. Kimberlynn Creek*

*Ranch*, 276 F.3d 187, 192 (4th Cir. 2002) ("[R]eceipt of funds as payment for services rendered to an employer constitutes one type of ownership interest and would preclude proceeding against the holder of the funds as a nominal defendant."); *CFTC v. Hanover Trading Corp.*, 34 F.Supp.2d 203, 207 (S.D.N.Y. 1999) (named relief defendant had a legitimate interest in "funds paid as compensation for services actually performed").

We understand the SEC to be arguing that the monies she earned from Goldman were commingled with funds earned by her husband. This is immaterial. Shalini Ahmed performed actual services for the money she received. As a *Relief Defendant*, it does not matter that the funds she was paid by Goldman were not segregated. It is for this reason that courts have refused to disgorge money paid to relief defendants for services rendered even where the funds could be directly traced to misconduct by the primary defendant. *See Janvey v. Adams*, 588 F.3d 831, 834–35 (5th Cir. 2009); *FTC v. Bronson Partners, LLC*, 674 F.Supp.2d 373, 392 (D. Conn. 2009) (denying disgorgement from relief defendant on ground that services she provided gave her legitimate claim to funds in her possession); *Hanover Trading*, 34 F. Supp. 2d at 207 (same).[4]

Thus, the Court should find that, to the extent that the SEC has frozen assets that were earned by Ms. Ahmed in her employment, those assets should be released because they are not ill-gotten gains, but rather assets to which Ms. Ahmed has a legitimate claim.

---

[4] To the extent the SEC contends, based on *SEC v. Rosenthal*, 426 F. App'x 1, 3 (2d Cir. 2011), that it can disgorge the funds received from Goldman, it is wrong on the law. In *Rosenthal*, the relief defendants received distributions from a fund that included both illicit profits and untainted profits, and the Second Circuit found that the SEC was not required to trace the illicit gains from the fraud to particular distributions because the primary defendant commingled tainted and untainted money. *See id.* at 2. The case merely stands for the proposition that there is no tracing requirement where the primary defendant—as opposed to a relief defendant spouse—commingles funds. Moreover, *Rosenthal* only addresses the first prong of the *Cavanagh* standard, whether the funds are ill-gotten gains.

### B.     Income from DIYA

As discussed above, Relief Defendant DIYA generates significant income. Shalini Ahmed is the Manager and beneficial owner of DIYA, she performed substantial services related to the procurement and management of the property held by DIYA, and she continues to do so.  She is thus entitled to the rental income generated (and arguably the property itself, although she does not advance this latter claim at this time).  *See Quan*, 2014 WL 4670923, at *18 (relief defendant spouse's contributions to the purchase and management of real property created an ownership interest in it and put the property beyond the reach of disgorgement); *CFTC v. Sarvey*, 2008 WL 2788538, at *4 (N.D. Ill. July 17, 2008) ("If a party performed some service or rendered some consideration in exchange for the property, that party generally has an ownership interest in the property and thus cannot be joined as a nominal defendant.").

### III.    The SEC Overestimates the Amount of Disgorgement and Penalties

The SEC argues it is *likely* to obtain a disgorgement order against Iftikar Ahmed of approximately $65 million <u>and</u> that it is *likely* to obtain an order assessing civil penalties in the approximate amount of $43 million.  (Memorandum of Law in Support of SEC's Amended Motion for Preliminary Injunction (and other relief), Dkt. No. 30 at 6.)

For purposes of this motion, the Relief Defendants concede that the SEC can show a likelihood of success in obtaining a judgment against Mr. Ahmed, and the likelihood that the judgment it obtains will include an order of disgorgement.  But the SEC's claim that disgorgement and civil penalties will total $108 million is wholly unsupportable.  That number will undoubtedly be far smaller, and significant discovery is required before it is clear what realistic disgorgement and civil penalties will entail.

The SEC's claim for $65 million in disgorgement includes disgorgement of $7.5 million arising from a transaction involving an entity identified in the Amended Complaint as Company C.  The SEC's lone allegation of wrongdoing is that Iftikar Ahmed had an undisclosed interest in Company C (through an interest in I-Cubed) at the time that Oak purchased an interest in Company C.  This allegation is both factually wrong and insufficient to support disgorgement of $7.5 million.

The following facts are undisputed: on or about October 24, 2012, Iftikar Ahmed formed I-Cubed with himself as the sole member, and funded it with a cash infusion of $2.2 million.  (I-Cubed Domains LLC Limited Liability Company Agreement, Exhibit 21 to Declaration of Grace A. Ames ("First Ames Decl.") dated May 5, 2015 [Docket No. 4-22].)  In November, 2012, I-Cubed purchased shares in Company C worth $2 million.  In June 2013, Mr. Ahmed proposed that one of the funds affiliated with Oak ("Oak XIII") invest $25 million dollars in shares of Company C.  █████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
████████████████████████████████████████████



The SEC alleges that Iftikar Ahmed's response to Ms. Ames was untruthful and supports $7.5 million of disgorgement. However, Mr. Ahmed's statement was accurate, and, in any event, the non-disclosure of an ownership interest does not support disgorgement because there was no harm to Oak or its investors.

### A.   Mr. Ahmed's Representation was Accurate

Mr. Ahmed's statement as to ownership was accurate. On or about May 16, 2013, he transferred the ownership of I-Cubed to Shalini Ahmed. (Assignment of Limited Liability Company Interest – I-Cubed Domains LLC dated May 16, 2013, Exhibit 23 to First Ames Decl. [Dkt. No. 4-24].) Thereafter, in or about September 2014, Ms. Ahmed transferred 99 percent of her membership interest in I-Cubed (which still owned the

---

shares of Company C) to the Shalini Ahmed 2014 GRAT.  In October 2014, Oak XIII purchased the shares from I-Cubed for $7.5 million.

Within the context of Oak's compliance regime, the answer was both precise and meaningful. ████████████████████████████████████████████

████████████████████████████████████████████ █████████

███████████████████████████████████████████████

███████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████

Moreover, in this very litigation, Oak has taken the position, citing to Connecticut law, that a spouse does not have any ownership interest in assets held in the name of the other spouse.  Sakin Decl. Ex. 9 (citing to Conn. Gen. Stat. § 46b-36 (2012) ("Neither husband nor wife shall acquire by the marriage any right to or interest in any property held by the other before or acquired after such marriage . . . .").  Accordingly, Oak has effectively acknowledged that Mr. Ahmed had no ownership interest in I-Cubed that he was required to disclose.

Thus, Mr. Ahmed was truthful in his disclosure.  Notably, the SEC attempts to artfully plead around this by alleging that Mr. Ahmed failed to disclose "his interest in I-Cubed" (Amended Complaint ¶¶ 14, 119), or that "[Mr. Ahmed] and his wife (through her ownership of I-Cubed) held a sizable investment in Company C." (*Id.*, ¶ 119.)  But the fact is that at the time of the transaction, he had zero interest in I-Cubed.

### B.     The SEC Cannot Establish a Legal Violation Related to I-Cubed

Because Mr. Ahmed's statement was true, the SEC is unable to establish that he

violated the securities laws in connection with the Company C transaction:

- *Self-Dealing Allegations*

In the Fourth Claim of the Amended Complaint, the SEC alleges a violation of

Section 206(3) of the Investment Advisers Act of 1940 (the "Advisers Act").  That statute

states, in relevant part, that it shall be unlawful for any investor

> ***acting as principal for his own account***, knowingly to sell any security to
> or purchase any security from a client, or acting as broker for a person
> other such client, knowingly to effect any sale or purchase of any security
> for the account of such client, without disclosing to such client in writing
> before the completion of such transaction the capacity in which he is
> acting an obtaining the consent of the client to such transaction.

15 U.S.C. § 80b-6 (2010) (emphasis added).  The SEC alleges that Mr. Ahmed violated

this statute because he "did not disclose to Oak his interest in I-Cubed or his conflict of

interest in the deal." (Amended Complaint ¶ 147.)

The SEC is unlikely to prevail on its claim because Mr. Ahmed was not "acting as

principal for his own account."   It cannot be disputed that Mr. Ahmed had transferred his

entire interest in I-Cubed to Shalini Ahmed in May 2013—nearly a year and a half

earlier—and that Ms. Ahmed had transferred 99 percent of her interest in I-Cubed to the

Shalini Ahmed 2014 GRAT prior to I-Cubed's 2014 sale of its Company C shares.   In

short, Section 206(3) of the Advisers Act does not apply here. *See Belmont v. MB Inv.*

*Partners, Inc.,* 708 F.3d 470, 484 (3d Cir. 2013) (no violation of the Investment Advisors

Act where plaintiffs did "not allege[] any conflict of interest").

- *Fraud Claims*

Other claims in the Amended Complaint state generally that Mr. Ahmed violated anti-fraud provisions in sections 206(1) and 206(2) of the Advisers Act, section 17(a) of the Securities Act of 1933 and section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5. If these claims are read to encompass the allegations involving Company C, the SEC is likewise unlikely to prevail.

A false or misleading statement is a required element of a claim under any of the three statutes underlying the SEC's fraud claims here.[6] Because the SEC cannot show an actionable deception by Mr. Ahmed on Oak XIII, its claims related to I-Cubed are not viable. *See S.E.C. v. True N. Fin. Corp.*, 909 F. Supp. 2d 1073, 1115 (D. Minn. 2012) (Rule 10b-5); *Graham v. Barriger*, 699 F. Supp. 2d 612, 625 (S.D.N.Y. 2009) (Rule 10b-5); *Oliver v. Black Knight Asset Mgmt., LLC*, 812 F. Supp. 2d 2, 14 (D.D.C. 2011) (Advisers Act claim).

### C.   Even If The SEC Prevails On The Merits, It Is Not Likely To Obtain Disgorgement Relating To I-Cubed's Sale Of Company C Shares.

Even assuming the SEC could prevail on the merits of its claims with respect to purchases of Company C shares, the SEC would still not be entitled to disgorgement because the SEC has not even alleged, and cannot prove, a causal nexus between the alleged misconduct and any ill-gotten gains.

---

[6] 

"As an equitable remedy, the Court is not required to grant disgorgement upon a finding that a defendant violated federal securities laws." *SEC v. Cohen*, 2007 WL 1192438 at *21 (E.D. Mo. Apr. 19, 2007) (citing *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1474-75 (2d Cir. 1996)). Indeed, "[t]he court's power to order disgorgement extends only to the amount with interest by which the defendant profited from his wrongdoing." *Cohen*, 2007 WL 1192438 at *21 (quoting *SEC v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978)). This limit arises from the fact that disgorgement is not a punitive remedy, but rather a means of forcing a defendant to surrender his unjust enrichment. *See SEC v. Todd*, 2007 WL 1574756 at *18 (S.D. Cal. May 30, 2007) (collecting authorities); *SEC v. McCaskey*, 2002 WL 850001, at *4 (S.D.N.Y. Mar. 26, 2002) (explaining that disgorgement is remedial in nature, and "must be [a] reasonable approximation of the profits causally related to the wrongdoing").

Here, the disgorgement the SEC seeks is the $7.5 million price that Oak XIII paid for I-Cubed's shares in Company C. The SEC cannot show a connection between that money and Mr. Ahmed's alleged failure to disclose who owned the shares. ██████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

Accordingly, there are no ill-gotten gains to disgorge because Mr. Ahmed's alleged misconduct did not inflate the price paid by Oak XIII for shares in Company C. *See SEC*

*v. Gane*, 2005 WL 90154, at *19 (S.D. Fla. Jan. 4, 2005)  ("The Court finds that all profits gained while the defendants were in violation of the law do not constitute ill-gotten gains because they are not causally related to the defendant's violation."); *CFTC v. Sidoti*, 178 F.3d 1132, 1138 (11th Cir. 1999) (defendant's failure to register as principal of brokerage could not serve as grounds for disgorgement of profits from him because it was not causally related to the profits); *SEC v. Jones*, 476 F.Supp.2d 374, 386 (S.D.N.Y. 2007) (ordering no disgorgement where the SEC lacked evidence of "specific profits" that "were causally connected to the alleged violations").[7]

Thus, the SEC's expected claim for disgorgement should be reduced by at least $7.5 million dollars.

## IV.    An Additional $23 Million Belonging to the Actual Defendant is Available

The SEC has successfully frozen an enormous pool of assets belonging to the Relief Defendants.  However, the SEC has, to date, ignored at least $23 million in funds belonging to Defendant that are being held by Oak.  As between funds belonging to Relief Defendants, and funds belonging to the Defendant being held by Oak, the SEC should look to recovery first from the Defendant's own funds.

The different venture capital funds affiliated with Oak are limited partnerships for which the general partner was a limited liability company. As part of his employment, Mr. Ahmed functioned as a member or managing member of a number of these limited

---

[7] Moreover, even if the Court were to find that the transaction involved ill-gotten gains (which the Relief Defendants vigorously contest), any should gains would be limited to a maximum of the $5.5 million profit over the $2 million that I-Cubed originally paid to acquire the shares in 2012.  *See*, *e.g.*, *SEC v. Johnson*, 2006 WL 2053379 at *8-*9 (S.D.N.Y. July 24, 2006) (awarding disgorgement amounts deducting the defendants' initial investments); *McCaskey*, 2002 WL 850001, at *11 (lowering requested disgorgement figure because "[t]he SEC simply assumes, without explanation, that [the defendant] should be credited with a zero capital basis").

liability companies. These general partner LLCs are eligible to participate in the profit growth of the funds—something to which the venture capital industry commonly refers as "carried interest."  For each LLC in which Mr. Ahmed was a member or managing member,[8] he has a "capital account" that tracks (as a bookkeeping entry) his percentage of the carried interest earned by the general partner LLC.  In addition, Mr. Ahmed had personal investments in the funds.



**as of 3/31/2015**

While Mr. Ahmed's capital account may be illiquid, it is certainly capable of being valued or cashed out.                                                                                   In addition, the value of the carried

---

[8] Mr. Ahmed was a managing member of the LLC for Oak XII and Oak XIII, and was a member of the LLC for Oak X and Oak XI.

interest increases with any increase in the value of the underlying funds.  The substantial likelihood is that the accounts are currently worth well in excess of $23 million and will increase in value over time.  In any case, it is indisputable that these are assets worth some tens of millions of dollars today.

The SEC has thus far refrained from seizing Mr. Ahmed's assets held by Oak based on Oak's self-serving and legally incorrect position that Mr. Ahmed forfeited those assets upon the termination of his employment. The fact is that Oak helped itself to Mr. Ahmed's accounts in violation of the Court's temporary restraining order, as entered on May 7, 2015.   That Order states, in relevant part:

- "***The assets, funds, or other property held by or under the direct or indirect control of Defendant Iftikar Ahmed***, Relief Defendant Iftikar Ali Ahmed Sole Prop, and Relief Defendant I-Cubed Domains, LLC, ***whether held in any of their names or for their direct or indirect beneficial interests, wherever located***, up to the amount of $55,089,546, ***are frozen***." Temporary Restraining Order Freezing Assets and Providing for Other Ancillary Relief, and Order Setting Preliminary Injunction Hearing [Docket No. 9] ("TRO") ¶ 1.A. (emphasis added).

- "***Any bank, financial or brokerage institution or other person or entity holding any funds, securities or other assets of Defendant Iftikar Ahmed*** or Relief Defendants Iftikar Ali Ahmed Sole Prop or I-Cubed Domains, LLC, up to the amounts identified in paragraph I.A., held in the name of, for the benefit of, or under the control of Defendant Iftikar Ahmed or Relief Defendants Iftikar Ali Ahmed Sole Prop or I-Cubed Domains, LLC, or their offices, directors, successor corporations, subsidiaries, affiliates, agents, servants, employees, attorneys-in-fact, and those persons in active concert or participation with them, and each of them, ***shall hold and retain within their control and prohibit the withdrawal, removal, transfer or other disposal of any such funds or assets***." TRO ¶ 1.C. (emphasis added).

- "***No person or entity***, including the Defendant, Relief Defendants, or any creditor or claimant against the Defendant or any of the Relief Defendants, or any person acting on behalf of such creditor or claimant, ***shall take any action to interfere with the asset freeze***, including, but not limited to, the filing of any lawsuits, liens, or encumbrances, or bankruptcy cases to impact the property and assets subject to this order; provided, however,

that any party or non-party may seek leave from this order upon a proper showing." TRO ¶ 1.D. (emphasis added)

████████████████████████████████████████████████

████████████████████████████████████████ Accordingly, the capital accounts fall within the scope of the "property" or "assets" referenced by this Order, and Oak was plainly prohibited from exercising any alleged rights as a claimant against Mr. Ahmed to forfeit those accounts. ██████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████ Those actions were ineffective as a matter of law given the existence of the TRO (and Oak's knowledge thereof),[10] and Mr. Ahmed's assets invested in Oak Funds should be part of any plan to disgorge assets for the benefit of investors.

While Oak may or may not have contractual rights to some portion of Mr. Ahmed's assets, those rights do not trump the rights of investors to restitution or the rights of investors under contracts with Oak. To put it another way, the individual partners of Oak are not entitled to a windfall as a result of Mr. Ahmed's alleged misconduct. *See SEC v. Byers*, 637 F.Supp.2d 166, 183 (S.D.N.Y. 2009) (courts have broad discretion to craft equitable remedies for violations of the securities laws); *SEC v. Credit Bancorp*, 2000 WL 1752979, at *35 (S.D.N.Y. Nov. 29, 2000) (in ordering distribution of ill-gotten assets, contractual rights of parties must give way to equitable principles). To take one example, in *SEC v. Quan*, 2013 WL 1703499 (D. Minn. April 19, 2013), the court found that a SEC distribution plan may trump contractual rights set

---

[10] ████████████████████████████████████████████████
████████████████████████████

forth in hedge fund operating documents, and the "legal rules governing priority" that derive from such documents:

> Upon disgorgement of a defendant's ill-gotten gains, it remains within the court's discretion to determine how and to whom the money will be distributed.  A district court has broad powers and wide discretion in approving an equitable distribution plan for receivership funds.   No specific distribution scheme is mandated so long as the distribution is fair and equitable.  ***In exercising its broad discretion, a court is not bound by formalistic arguments that would otherwise be available in a traditional lawsuit.***  If the SEC prevails on its fraud claims and [the relief defendant] is disgorged of its assets, the Receiver may propose, and ***the Court has broad authority to approve, a distribution plan that is governed by equitable principles rather than [the relief defendant's] operating documents and other legal rules governing priority***.") If the SEC does not prevail and [the relief defendant] retains its assets, distribution of the receivership funds will be more heavily guided by established legal rules and preferences.

*Id.* at *5 (emphasis added, citations and internal quotations omitted).  As in that case, it is for the Court to decide how Mr. Ahmed's assets will be disgorged—not for the partners of Oak, a self-interested group of individuals—and any arguments that they have about contractual rights to Mr. Ahmed's assets should be made to the Court in the normal course of this litigation.

 If the SEC does not seek to bring all of Mr. Ahmed's available assets within the scope of the asset freeze, including assets worth tens of millions of dollars at Oak, the Relief Defendants intend to ask the Court's leave to do so.  One way or the other, there will be more than sufficient frozen assets to release funds to the Relief Defendants for payment of legal fees and reasonable living expenses.

Moreover, should Oak ultimately decide to allocate any of these funds to investors,[11] that transfer would reduce the amount of damage that Mr. Ahmed has caused on a dollar-for-dollar basis. In turn, the required disgorgement would be reduced accordingly. *See Credit Bancorp*, 738 F.Supp.2d at 391 (offsetting disgorgement obligation by amount paid in restitution in criminal case); *SEC v. Opulentica*, 479 F.Supp.2d 319, 331 (S.D.N.Y. 2007) (same). This is yet another reason why the SEC should not be permitted to retain all of the Relief Defendants' assets.[12]

## RELIEF SOUGHT

We respectfully request that Court strike a just balance between the SEC's enforcement of the law and "the disadvantages and possible deleterious effect of a freeze" upon the Relief Defendants. *Duclaud Gonzalez de Castilla*, 170 F.Supp.2d at 429. While the Court has authority to grant the SEC broad injunctive relief in its efforts to prevent the unjust enrichment of defendants who violate the securities laws, the question of how to treat Relief Defendants who are accuse of no wrongdoing requires that the Court strike a different balance in order to ensure that the Relief Defendants are treated fairly and are not subjected to punishment simply by virtue of their association with a defendant.

In this memorandum, the Relief Defendants have set forth certain assets as to which the SEC has no entitlement to disgorgement, including the salary, shares and retirement funds earned by Ms. Ahmed. The Relief Defendants also demonstrated that

---

11 ███████████████████████████████

12 ███████████████████████████████

the SEC is unlikely to prevail in its claim arising from the sale of Company C shares by I-Cubed made at a time when Mr. Ahmed had no interest in or control over that entity, and that any such claim, regardless of its merit, will not entitle the SEC to disgorgement of the funds resulting from that sale.  The Relief Defendants have also demonstrated that the Oak is in possession of assets worth at least $23 million that belonged to defendant Iftikar Ahmed at the time when this Court issued the TRO, and that those funds should have been (and still should be) subjected to the asset freeze.

The release of funds for legal fees and living expenses will not result in dissipation of the assets available to the SEC here: DIYA generates more than enough income to fund the requested expenses.  There are more than enough assets to ensure that the SEC will collect enough funds from Defendant Iftikar Ahmed to achieve the goals of deterrence and the avoidance of unjust enrichment, and the funds will be spent solely for the legal fees and living expenses for which they would be released.  Moreover, even the release all $7.5 million arising from the I-Cubed transaction—will leave tens of millions of dollars in place within the asset freeze.

The Relief Defendants therefore request this Court:

A-1.    Release the funds earned individually by Relief Defendant Shalini Ahmed, specifically:  (a) $1,261,564.87 million in salary; (b) the funds in her retirement accounts; and (c) the shares of stock in Goldman Sachs awarded individually to Ms. Ahmed during her employment with that firm, and

A-2.    Release $7.5 million held by Relief Defendant Shalini Ahmed 2014 Grantor Trust attributable to I-Cubed's 2014 sale of Company C stock to Oak XIII on the

ground that the SEC is unlikely to prevail on its claims relating to that transaction and/or such funds are not subject to disgorgement; with

A-3 - An offset applied for $171,000 of funds belonging to Shalini Ahmed that have been used for paying overdue bills, education, and legal fees.

OR, in the alternative, the Relief Defendants request this Court:

B-1.   Release $2.5 million to pay for the Relief Defendants' reasonable attorneys fees; and

B-2.   Release $20,000 per month from the earnings of DIYA and DIYA Real to pay the reasonable living expenses of Shalini Ahmed and her minor children; and

B-3.   Order the payment of taxes and maintenance on the properties subject to the freeze; with

B-4.   An offset applied for $171,000 of funds belonging to Shalini Ahmed that have been used for paying overdue bills, education, and legal fees.

Dated: New York, New York
        July 20, 2015

Respectfully submitted,

_____/s/ Jonathan Harris_____
Jonathan Harris (admitted *pro hac vice*)
L. Reid Skibell (admitted *pro hac vice*)
David B. Deitch (admitted *pro hac vice*)
HARRIS, O'BRIEN, ST. LAURENT
& CHAUDHRY LLP
111 Broadway, Suite 1502
New York, New York 10006
Tel. 212.397.3370

MURTHA CULLINA
Paul E. Knag
Murtha Cullina, LLP
177 Broad Street, 16th Floor
Stamford, CT 06901
Tel. 203.653.5400

27

*Attorneys for Relief Defendants*
*I-Cubed Domain, LLC, Shalini Ahmed,*
*Shalini Ahmed 2014 Grantor Retained*
*Annuity Trust, Diya Holdings, LLC, Diya*
*Real Holdings, LLC, I.I. 1, I.I. 2 and I.I. 3*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on July 20, 2015, I caused a copy of the foregoing memorandum to be served by email upon:

Nicholas P. Heinke
Mark L. Williams
U.S. Securities and Exchange Commission
1961 Stout St., Suite 1700
Denver, CO 80294
HeinkeN@sec.gov
WilliamsML@sec.gov

_____/s/ David B. Deitch_____

29