UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>IFTIKAR AHMED,<br><br>　　　　　　Defendant, and<br><br>IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUNITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents,<br><br>　　　　　　Relief Defendants. | Civil Action No. 3:15-cv-675 (JBA) |

**DEFENDANT AHMED'S REPLY BRIEF IN FURTHER SUPPORT OF**
**<u>HIS REQUEST FOR A MODIFICATION OF THE FREEZE ORDER</u>**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 4

   I.   THE RELEASE OF LIMITED ASSETS COMPORTS WITH EQUITY ........................... 4

      A.   Mr. Ahmed Has Fifth and Sixth Amendment Rights to Use Funds Not Traceable to the Alleged Fraud to Retain Counsel of His Choice ............................................................... 4

      B.   Mr. Ahmed's Fifth and Sixth Amendment Rights Outweigh the Government's Interests in Freezing Assets to Cover Fines ....................................................................... 7

         1.   The Frozen Assets Exceed the Potential Repayment to Alleged Victims ................... 7

         2.   It Is Likely that the Present Surplus Over Any Potential Amount Needed to Make Victims Whole Would Grow If Subjected to Scrutiny ................................................ 8

         3.   Mr. Ahmed Is Not Required to Submit a Financial Accounting ................................ 9

      C.   The Request Is Reasonable For Proceedings That Seek $118 Million and Subject Mr. Ahmed to Up to Twenty Years in Prison ........................................................................ 10

   II.   REQUEST FOR RELIEF .................................................................................................. 10

i

## **PRELIMINARY STATEMENT**

Contrary to what the Commission says, Stein stands for the proposition that government interference with defendants' relationship with counsel and the ability to mount a defense of their choosing, even pre-indictment, is *not* immune from constitutional scrutiny. See SEC at 9-12. If this were not the case, the Second Circuit opinion would have been short and simple, not necessitating over twenty pages of analysis in which the government's interference with the eventual defendants' ability to afford a counsel of choice during the pendency of the government's *investigation*—pre-complaint, pre-indictment, and in the absence of a parallel government civil case stemming from the same allegations—was found to have deprived defendants of their Sixth Amendment rights. United States v. Stein, 541 F.3d 130 (2d Cir. 2008). In fact, the Second Circuit observed, after noting that the government conceded that it is in the government's best interest for a defendant to receive the best possible representation that he or she can, that it must follow that "it cannot also be in the government's interest to leave defendants naked to their enemies." Id. at 157. By preventing Mr. Ahmed from using even what the Commission concedes are untainted funds for his defense, the Commission, in fact, seeks to leave Mr. Ahmed naked against the weight of the government in two sets of parallel civil and criminal cases that seek up to $118 million and subject Mr. Ahmed to up to twenty years of incarceration. It would be an abuse of discretion for this Court to allow the Commission to do that. See Smith v. SEC, 653 F.3d 121, 127 (2d Cir. 2011) (holding that "[w]e review an order freezing assets, or modifying an asset freeze, for abuse of discretion.") (citations omitted).

As an initial matter, the Commission claims Mr. Ahmed has not demonstrated a Sixth Amendment violation. We will make it plain: by freezing 100 percent of Mr. Ahmed's assets— including approximately $53 million more than the highest amount that was allegedly stolen— the Commission has deprived him of the use of *any of his own* funds to hire counsel of his choice

or mount a defense. Stein is clear: one has a right to hire whatever lawyer one wants to hire and mount whatever defense one wants to mount, so long as one pays for it with one's own money or money to which one has a right. 541 F.3d at 154-156. That is the essence of the right to counsel enshrined in the Sixth Amendment; the government does not get to determine a budget for its adversary's defense or to opine on the manner in which its adversary choses to present his or her defenses. Id. at 154. To be sure, a defendant cannot pay for his or her defense with stolen funds, i.e., one does not have a right to use other people's money for any purpose, including hiring a lawyer. But untainted funds are the defendant's funds and no litigant, not even the government, has the right to deprive an opponent of counsel on the theory that the untainted money the defendant is spending to fight the government's charges may one day be needed to satisfy a judgment not yet won. Because the freeze order covers both funds that were allegedly stolen (i.e., allegedly, other people's funds that Mr. Ahmed is not entitled to use for his defense) and his own *untainted* funds, Mr. Ahmed's Fifth Amendment right to not be deprived of his property without due process of law and his Sixth Amendment right to counsel of his choice and to mount a defense are violated.

      Second, the Commission asserts that it wants to protect a pot of money needed to compensate alleged victims. This is simply not true. The Commission itself has represented to the Court that it needs at most approximately $65 million to compensate alleged victims, but has frozen $118 million. See Suppl. Br. of Relief Defs. at 2 [Dkt. No. 87]. Furthermore, $65 million is still an inflated figure because it assumes the Commission will successfully prosecute all of its allegations, and it excludes approximately $23 million that is already in the hands of the alleged victim, Oak Partners. Mr. Ahmed only seeks to use his *own* funds in *excess* of the amount earmarked for alleged victims to mount a defense of his choice. Distilling it to its essence, pre-conviction, this sum cannot be deemed "other people's money."

Third, the Commission asserts that Mr. Ahmed has not contested the allegations. On its face, this claim is circular and patently untrue: Having frozen all of his funds, the Commission left him defenseless. Having left him defenseless, the Commission now claims he is not entitled to relief because he is not defending himself. Even the Commission must realize that Mr. Ahmed would not have contested a default judgement against him and would not be presently briefing this asset freeze issue seeking to release funds but for the very purpose of contesting the allegations. In fact, even at this preliminary pleading stage, and in the absence of adequately-funded, substantive analysis of all allegations, it appears that the Commission has over-reached and many of the claims will likely be dismissed as either time-barred, or because they exceed the scope or territorial limitations of the securities laws. In any event, taken to its logical conclusion, the Commission's position is that a defendant does not have a Sixth Amendment right unless he or she is in fact innocent of all charges and can prove it. Under the United States Constitution, Mr. Ahmed is entitled to be represented by counsel in proceedings that could subject him to decades in prison and a loss of $118 million, even if his defenses are weak or non-existent. See United States v. Gonzalez-Lopez, 548 U.S. 140, 148 (2006) ("Where the right to be assisted by counsel of one's choice is wrongly denied, therefore, it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation. Deprivation of the right is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants.").

Finally, the Commission's assertion that the fees requested are unreasonable in these four complex matters does not withstand scrutiny. To begin, as noted above, Mr. Ahmed has a Sixth Amendment right to use his own money to fund a lawyer of his choice and a defense he wants to mount. The government has no say here and it is jarring to read that it thinks it might; one of the constitutional checks on the federal government's power is that it does not get to choose its

3

adversary in court. Under the United States Constitution, the government does not get to review counsel's bills for appropriateness. Under the United States Constitution, the government does not get the benefit of a waiver of any privilege that would go along with reviewing counsel's bills. Under the United States Constitution, the government does not decide whether its adversary is too expensive. Because our government's power is limited by the Constitution, the government's request to serve as the arbiter of whether defense counsel's representation is reasonable and, thus, entitled to payment, should be rejected as repugnant to our adversarial legal system and fundamental constitutional protections. Kaley v. United States, 134 S. Ct. 1090, 1114-15 (Roberts, J., dissenting) (2015) (noting, "the importance of an independent bar as a check on prosecutorial abuse and government overreaching. Granting the Government the power to take away a defendant's chosen advocate strikes at the heart of that significant role."); see also Brief of the ABA as Amicus Curiae in Support of Petitioner, Luis v. United States, 564 F. App'x. 493, 494 (11th Cir. 2014), cert. granted, 135 S. Ct. 2798 (U.S. Jun. 8, 2015) (No. 14-419), at 12 ("If defendants in criminal proceedings are unable to use their legally obtained, untainted property to retain private counsel, then accepted notions of effective assistance of counsel, the right to counsel of choice, and a balanced adversary system will have undergone a transformative shift.").

## ARGUMENT

### I. THE RELEASE OF LIMITED ASSETS COMPORTS WITH EQUITY

#### A. Mr. Ahmed Has Fifth and Sixth Amendment Rights to Use Funds Not Traceable to the Alleged Fraud to Retain Counsel of His Choice

When a defendant seeks funds for a parallel criminal proceeding, the court must weigh the defendant's Fifth and Sixth Amendment rights. SEC v. Coates, 1994 WL 455558, at *3 (S.D.N.Y. Aug. 23, 1994). A defendant has a Fifth Amendment right "to get and deploy in

4

defense all resources lawfully available to him or her, free of knowing or reckless government interference." Stein, 541 F.3d at 141 (internal quotations omitted). Moreover, a defendant "possesses a qualified Sixth Amendment right to use wholly legitimate funds to hire the attorney of his choice." Id. at 155. The Commission, however, argues that in freezing more assets than necessary to compensate any victims, it is immune from constitutional scrutiny because Mr. Ahmed "has no Sixth Amendment right to access the frozen monies" in his criminal cases. SEC at 10.

The Commission's recitation of the scope of the Sixth Amendment is wrong. First, and most obviously, the Commission has conceded that Mr. Ahmed's Sixth Amendment right has attached to the insider trading case. Compare SEC at 11 (Sixth Amendment right attaches at "initial appearance") with SEC at 13 ("Mr. Ahmed made his initial appearance"). Second, the Commission argues that the "mere filing of a federal criminal complaint [in the money laundering case] does not trigger the right to counsel." SEC at 11. This formulistic argument, however, was raised and rejected in Stein: "[w]e therefore reject the government's argument that its actions (virtually all pre-indictment) are immune from scrutiny under the Sixth Amendment." 541 F.3d at 153.[1] In Rosen (cited favorably in Stein), the court likewise concluded that "there is no doubt that the government's commitment to prosecute a defendant in some cases becomes concrete well before indictment, and that events prior to indictment can imperil a defendant's [Sixth Amendment] rights." United States v. Rosen, 487 F. Supp. 2d 721, 732 (E.D. Va. 2007).[2] As in Stein and Rosen, the government should not inhibit the use of legitimate funds to chill a

---

[1] In its response, the Commission provides a partial quote from Stein to suggest that Mr. Ahmed misread the Sixth Amendment issue. See SEC at 12 n.6. Of course, the second half of the paragraph that the Commission omitted concludes that "the rule is not mere formalism, but a recognition of the point at which the government has committed itself to prosecute." Stein, 541 F.3d at 152 (internal quotations omitted).

[2] In Rosen, the court concluded that where "an individual is a target or subject of an investigation, and he is in fact spending his own funds (or third party funds to which he had a right) to retain counsel of his choice, his constitutional right to spend such funds has clearly attached." Id. at 733.

5

defendant's right to counsel and mount a defense. Anything less would run counter to the dictates of Stein: "[T]he right to counsel in an adversarial legal system would mean little if defense counsel could be controlled by the government or vetoed without good cause." 541 F.3d at 154.

The Commission next contends Mr. Ahmed's Fifth and Sixth Amendment rights have not been interfered with because there are no "critical stages" of the criminal proceedings. SEC at 11. The Commission's position is nonsensical and internally inconsistent. For example, the Commission argues that funds should not be released because the cases may conclude early as a result of plea bargaining. SEC at 18. Under the Commission's "critical stage" theory, presumably Mr. Ahmed would be entitled to attorney's fees spent actually negotiating a plea deal with the prosecution. Yet, by freezing assets not even traceable to the alleged fraud, the Commission inhibits any meaningful factual or legal analysis, which would be a necessary predicate for substantive plea bargaining. Under Stein, such a rigid construction of the right to counsel would be untenable: "the government violates the Sixth Amendment when it intrudes on the attorney-client relationship, preventing defense counsel from participat[ing] fully and fairly in the adversary factfinding process." 541 F.3d at 154 (internal citations and quotations omitted).

Analogous to Stein and Rosen, by refusing to release undisputedly legitimate funds—i.e., sums beyond that necessary to repay any alleged victims, which inherently cannot be traced to any alleged fraud—the Commission has chilled Mr. Ahmed's Fifth and Sixth Amendment rights to counsel of his choice and to mount a defense. Among other things, Mr. Ahmed will be deprived of the ability to develop factual and legal defenses or engage in meaningful dialogue with the government. Instead, he will be left naked to two sets of parallel civil and criminal proceedings that seek a total of $118 million and subject him to up to twenty years in prison.

### B. Mr. Ahmed's Fifth and Sixth Amendment Rights Outweigh the Government's Interests in Freezing Assets to Cover Fines

The Commission concedes that "[t]he purpose of an asset freeze is to facilitate *enforcement of any disgorgement remedy*." SEC at 6 (emphasis added). Nonetheless, the Commission seeks to keep frozen $53 million in untainted funds for possible future fines. The Commission further fails to dispute that title to funds earmarked for prejudgment interest and civil fines do not vest in the government until a final judgment is rendered, if any. See Def's Mem. at 9-13. Notwithstanding these concessions, the Commission argues that Mr. Ahmed "requests millions of dollars in legal fees from a pot of assets *that will likely be needed to compensate the victims of his fraud*." SEC at 3 (emphasis added); see also SEC at 10 (same). This is not true. The Commission alleges that Mr. Ahmed stole approximately $65 million, which is the amount that must be repaid, but it has frozen some $118 million. Mr. Ahmed has Fifth and Sixth Amendment rights to use his *own* funds which are in excess of any amount needed to repay investors.

#### 1. The Frozen Assets Exceed the Potential Repayment to Alleged Victims

The Commission indeed concedes, as it must, that there is a surplus of funds over any amount for investors: At most it needs $65 million[3] to compensate alleged victims. SEC at 6. The government's overreach amounts to unequitable results. Thus far, the Commission has identified $68,739,123.23 in assets. SEC at 6; see also Suppl. Br. of Relief Defs. at 2 [Dkt. No. 87]. As a starting point, there is **$3.7 million** in surplus over any amount necessary to compensate alleged victims. That surplus grows to **$36.3 million** if the Court includes the $9.6 million from Mr. Ahmed's residence or the $23 million from Mr. Ahmed's Oak capital accounts

---

[3] Even this amount is at issue. For example, as to the Company C transaction, the Commission has already conceded that the loss to Oak was less than the $7.5 million it seeks to disgorge. SEC's Mot. for Prelim. Inj. at 15 [Dkt. No. 66].

7

already in the hands of the alleged victims. In short, Mr. Ahmed's Fifth and Sixth Amendment rights to use his *own* funds to retain counsel of his choice in these serious matters outweighs the government's speculative interest in freezing assets for prejudgment interest and fines, which are hypothetical in nature.

### 2. It Is Likely that the Present Surplus Over Any Potential Amount Needed to Make Victims Whole Would Grow If Subjected to Scrutiny

The Commission makes the argument that the Court should refuse to release funds because Mr. Ahmed has failed to deny the allegations. SEC at 20. But Mr. Ahmed seeks funds for the purpose of contesting the allegations against him. See discussion supra p. 3. Even at this preliminary stage and without the benefit of a comprehensive analysis, Mr. Ahmed, with the assistance of counsel of his choice, could materially reduce his exposure.

#### a. Transactions Outside the Territorial United States

The Exchange Act does not regulate foreign exchanges. City of Pontiac Policemen's and Firemen's Retirement System v. UBS AG, 752 F.3d 173, 181-182 (2d Cir. 2014). Here, the Commission seemingly over-reaches for **$48,625,466.68**, which concern the purchase of foreign securities from Asia and Europe. See Am. Compl. at ¶¶ 27 (Asia), 42 (Switzerland), 49 (Europe), 56 (Asia), 71 (Europe), 75 (Europe), 80 (Asia), and 96 (Asia). Even limiting this analysis to Company G, which the Commission concedes was listed on the "Korean Stock Exchange," Am. Compl. at ¶ 61, would reduce the amount by **$12,096,003.01**. See Ex. 2 to Commission's Resp. to Int., attached to Suppl. Br. of Relief Defs. at 2 [Dkt. No. 87].

#### b. Transactions Outside the Scope of Federal Securities Laws

In addition, **$20,333,697.09** of the disputed conduct was not "in connection with" the purchase, sale, or offer of securities, but concerned subsequent invoices for legal fees, advisor fees, or management incentive plans. Id. These claims are not actionable under federal securities

8

laws. SEC v. Zanford, 535 U.S. 813, 820 (2002). Indeed, limiting this analysis to only the Commission's claim that Mr. Ahmed fraudulently submitted an invoice for $6.6 million regarding capital gains taxes *more than seven months after* the otherwise lawful purchase of securities, Am Compl. at ¶¶ 35-6, alone reduces the total potential disgorgement by **$6,600,000**. See Taylor v. Westor Capital Group, 943 F. Supp. 2d 397, 402 (S.D.N.Y. 2013) (dismissal where alleged conduct post-dated decision to purchase securities).

### c. Transactions Outside the Scope of the Limitations Under 28 U.S.C. § 2462

Mr. Ahmed further intends to assert that a majority of the disgorgement claims are barred by the statute of limitations under 28 U.S.C. § 2462 on the basis of, inter alia, Gabelli v. SEC, 568 U.S. __ (2013) (No. 11-1274) and SEC v. Graham, 21 F. Supp. 3d 1300 (S.D. Fla. 2014). If successful, the amount owed to make alleged victims whole would fall by **$21,100,980.65**.

### 3. Mr. Ahmed Is Not Required to Submit a Financial Accounting

The Commission's contention that Mr. Ahmed must submit a financial accounting to show that his *own* assets, beyond the amount necessary to compensate victims, are not tainted funds is a red herring. SEC at 17. The government bears the burden to show that frozen assets are traceable to fraud. SEC v. FTC Capital Markets, 2010 WL 2652405, at *7 (S.D.N.Y. June 30, 2010). Yet, the Commission seeks to flip the burden of proof onto the defendant. SEC at 15-17. None of the cases cited by the Commission concern the present scenario, namely, where it is undisputed that the amount of frozen assets exceeds the potential disgorgement. See, e.g., SEC v. Cherif, 1989 WL 135555, at *1 (N.D. Ill. Sept. 27, 1989), aff'd, 933 F.2d 403 (7th Cir. 1991). No financial affidavit is necessary, in short, because the amount of the frozen assets exceeds the full amount alleged to have been stolen; thus, there is a pool of assets that simply cannot be traced to the alleged fraud.

### C. The Request Is Reasonable For Proceedings That Seek $118 Million and Subject Mr. Ahmed to Up to Twenty Years in Prison

The Commission contends that no fees have been earned, the cases could fall short of trial, and the rates are unreasonable. SEC at 18-20. First, Mr. Ahmed is seeking the return of his *own* untainted funds to which he has Fifth and Sixth Amendment rights. See Stein, 541 F.3d 130. The government cannot control the type or quality of his defense. Mr. Ahmed is constitutionally guaranteed the ability to use his own funds for this purpose. Second, fees have been incurred for opposing the entry of default, briefing this issue, and conducting a preliminary Rule 12 analysis. If Mr. Ahmed cannot obtain funds through this request, then counsel will not be able to continue this complex and expensive representation for free. See R. Pro. Conduct 1.16(b)(6). Third, if the cases fall short of trial, then the funds will be returnable. Fourth, these are serious matters, which seek up to $118 million and subject Mr. Ahmed to significant prison time. These cases are very expensive.[4, 5]

## II. REQUEST FOR RELIEF

Mr. Ahmed respectfully requests a modification of the freeze order to permit him to use surplus funds in excess of the amount allegedly needed to repay investors in order to retain the counsel of his choice and mount a defense.

---

[4] In Stein, the district court noted that defense costs for four KPMG Partners in a criminal investigation and civil litigation brought by the Commission was over $20 million. 435 F. Supp. 2d at 340.

[5] As the Commission concedes, under the Supreme Court's decision in Degen v. US, 517 U.S. 820 (1996), the fugitive disentitlement doctrine is not applicable under these facts. SEC at 22. The doctrine typically justifies dismissal of a criminal appeal when the convicted defendant has fled. Id. at 823. In Degen, the Court refused to extend the doctrine to bar a fugitive from being heard in a parallel civil forfeiture proceeding. Moreover, the Court in Degen specifically held that overuse of the fugitive disentitlement doctrine would erode, not enhance, the dignity of a court's judgments because it would too freely foreclose consideration of the merits. Id. at 828.

Dated: September 9, 2015

        Respectfully submitted,

        */s/ Dylan P. Kletter*
        Dylan P. Kletter (ct28197)
        Brown Rudnick LLP
        185 Asylum Street, 38th Floor
        Hartford, Connecticut 06103
        Tel: (860) 509-6500
        Fax: (860) 509-6501
        Email: dkletter@brownrudnick.com

        -and-

        Alex Lipman (admitted *pro hac vice*)
        Ashley L. Baynham (admitted *pro hac vice*)
        Seven Times Square
        New York, New York 10036
        Tel: (212) 209-4800
        Fax: (212) 938-2852
        Email: alipman@brownrudnick.com
        Email: abaynham@brownrudnick.com

        **ATTORNEYS FOR DEFENDANT IFTIKAR ALI AHMED**

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 9, 2015, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to any parties unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

      */s/ Dylan P. Kletter*
      Dylan P. Kletter