UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____

|  |  |  |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 3:15cv675 (JBA) |
| IFTIKAR AHMED, | ) ) ) | |
| Defendant, and | ) ) | |
| IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC;  SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Relief Defendants. | ) ) | |

_____ )

**PLAINTIFF UNITED STATES SECURITIES AND EXCHANGE COMMISSION'S RESPONSE IN OPPOSITION TO RELIEF DEFENDANTS' MOTION FOR LIMITED MODIFICATION OF THE ASSET FREEZE ORDER**

Plaintiff United States Securities and Exchange Commission (the "Commission") submits this brief in opposition to Relief Defendants Shalini Ahmed, I-Cubed Domains, LLC, Shalini Ahmed 2014 Grantor Retained Annuity Trust, DIYA Holdings LLC, DIYA Real Holdings LLC, I.1, I.2 and I.3's (together, the "Relief Defendants") motion to modify [Doc. # 148] the Ruling and Order Granting Preliminary Injunction ("Preliminary Injunction Asset Freeze").  As outlined herein, Relief Defendants' motion should be denied.

## I.      Introduction

Mrs. Shalini Ahmed ("Mrs. Ahmed") again asks the Court to allow her to consume monies that do not belong to her, are the proceeds of her husband's fraud, and will likely be needed to repay victims of that fraud.  Rather than identify specific untainted assets that belong to her, Mrs. Ahmed instead makes a general request for money while disregarding this Court's prior findings and resurrecting the same arguments this Court previously rejected.  In fact, Mrs. Ahmed's entire motion – in which she claims to have a constitutional right to consume any funds over and above disgorgement – disregards this Court's explicit findings that she "merely served as a nominal owner for Mr. Ahmed's funds" (Ruling & Order [Dkt. #113] at 10) and that "the SEC has made a preliminary showing that the frozen assets belong to Defendant, not Relief Defendant, and thus it is appropriate to freeze such funds."  *Id.* at 16.  Rather than make a legitimate request to release specific untainted assets she alleges belong to her, Mrs. Ahmed's motion merely attempts to reargue the contested issues that gave rise to the Preliminary Injunction Asset Freeze.  The Court should decline to again entertain these arguments, which remain meritless.

It is undisputed that untainted assets belonging to Mrs. Ahmed should be released to her.  While Mrs. Ahmed continues to declare the existence of such assets, she refuses to identify them.  Instead, Mrs. Ahmed simply requests that this Court release nearly $1 million, and write a blank check to her attorneys, without identifying anything that is improperly frozen, aside from 121 shares of Morgan Stanley stock worth approximately $3,960 (which, as explained below, the Commission had previously consented to release so long as Mrs. Ahmed provided a basic declaration about this asset).  Moreover, by her own admission, Mrs. Ahmed had more than $200,000 in cash less than one month ago, and currently has nearly $50,000 in cash available to

her, with approximately $8,000 in monthly living expenses. While the Commission does not foreclose the possibility that a release of funds to Mrs. Ahmed may be appropriate at some point, now is not the time.

Lastly, the Commission is mindful of Mrs. Ahmed's Sixth Amendment rights and, at this time, does not necessarily object to releasing some monies needed for her criminal defense. However, prior to releasing these funds, the Court should direct Mrs. Ahmed to 1) disclose how much she has paid her criminal attorneys to date; 2) disclose how much she expects to spend on her criminal defense in the next six months; and 3) identify what frozen assets she seeks to liquidate to fund her criminal defense.  The Commission will then work in good faith with Mrs. Ahmed to negotiate an appropriate order carving out limited fees that are necessary in the near term for her criminal defense.

## II.      Summary of Argument

First, because the Relief Defendants have appealed the Preliminary Injunction Asset Freeze, this Court is without jurisdiction to grant Relief Defendants' requested relief.  Second, Mrs. Ahmed has not identified any untainted monies or property that belongs to her, aside from 121 shares of Morgan Stanley stock.  That is because the funds she seeks do not belong to her, are tainted by her husband's fraud, or both.  She has no right to consume these monies.  Third, Mrs. Ahmed already has sufficient assets to pay *reasonable* living expenses and equity does not weigh in favor of releasing monies to her, as the monies she seeks will likely be needed to compensate the victims of her husband's fraud.  Fourth, if the Court is inclined to grant Relief Defendants' motion, the Commission requests that the Court first hold an evidentiary hearing to ensure any assets released are untainted and belong to a Relief Defendant. Finally, Mrs. Ahmed's claim that the asset freeze violates her Sixth Amendment rights is erroneous.  Mrs. Ahmed has

no Sixth Amendment right to counsel in the instant civil proceeding, and she does not have a right to use the proceeds of fraud, or monies that do not belong to her, to defend against criminal charges.  However, as a matter of discretion and given the equities of Mrs. Ahmed's situation, the Commission does not necessarily object to releasing reasonable monies needed for her criminal defense.

### III.    Relevant Background

On May 6, 2015, the Commission filed [Doc. #2] an emergency motion for a temporary restraining order freezing assets and for a preliminary injunction continuing that asset freeze for the pendency of the litigation.  On June 16, 2015, the Commission filed [Doc. #33] its Amended Complaint and Motion for a Preliminary Injunction based on newly-discovered misconduct by Mr. Ahmed.  The Court subsequently ordered [Doc. #34] expedited discovery and set this matter for a preliminary injunction hearing, which took place on July 23, 2015, and July 30, 2015.  The Relief Defendants participated in the hearing, "concede[d] that the SEC c[ould] show a likelihood of success in obtaining a judgment against Mr. Ahmed, and the likelihood that the judgment it obtains will include an order of disgorgement," (Relief Defs.' Prehr'g Brief [Doc. #69] at 18), and challenged only limited portions of the Court's temporary asset freeze.[1]

On August, 3, 2015, the United States Attorney's Office for the District of Massachusetts filed a Criminal Complaint charging Mrs. Ahmed and her husband with conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(h) and 1957 related to the fraud alleged in

---

[1] The vast majority of the Commission's requested asset freeze was unopposed, as Relief Defendants sought only the release of the proceeds attributable to Mr. Ahmed's October 2014 sale of shares from Relief Defendant I-Cubed to Oak and a release of funds representing the amounts Mrs. Ahmed earned during her prior employment, or, alternatively, a release of proceeds from a condominium held in the name of Relief Defendant DIYA Holdings LLC and other funds to pay millions in legal fees. *See* Relief Defs.' Prehr'g Brief [Doc. # 69] at 26-27.

this action.  *See* Case No. 15-mj-2161-MBB (D. Mass.).  Mrs. Ahmed made her initial

appearance the following day.  *See* ECF 3, Case No. 15-mj-2161-MBB (D. Mass.).

On August 5, 2015, attorneys for Mr. Ahmed entered a notice of appearance in this case.

On August 12, 2015, the Court granted [Doc. #113] the Commission's Motion [Doc. #29] for a

Preliminary Injunction Asset Freeze.  On August 19, 2015, Relief Defendants filed [Doc. #119] a

Notice of Appeal of the Preliminary Injunction Asset Freeze.  On October 17, 2015, Relief

Defendants filed [Doc. #148] the instant motion.  Two days later, on October 19, 2015, Relief

Defendants filed their Appellant Brief seeking to overturn the Preliminary Injunction Asset

Freeze. *See* ECF 41, Case No. 15-2658 (2d Cir. 2015).  To date, Relief Defendants have not

withdrawn their appeal.

## IV.   Preliminary Injunction

The Commission sought a Preliminary Injunction Asset Freeze up to $118,246,186,

which consisted of approximately (1) $65 million in ill-gotten gains; (2) $9.3 million in

prejudgment interest; and (3) $44 million in civil penalties. (SEC Prehr'g Br. [Dkt. #66] at

14).  After a two-day preliminary injunction hearing, the Court granted the Commission's

request, freezing up to $118,246,186 of Mr. Ahmed's assets. (Ruling & Order [Dkt. #113] at 19-

20).  Upon finding that "Mrs. Ahmed merely served as a nominal owner for Mr. Ahmed's funds"

[Dkt. #113 at 10], and that "unless restrained and enjoined by order of this Court, the Defendant

and Relief Defendants will dissipate, conceal, or transfer from the jurisdiction of this Court

assets that could be subject to an order directing disgorgement or the payment of civil monetary

penalties in this action," the Court also froze up to $118,246,186 of Relief Defendants' assets.

(Ruling & Order [Dkt. #113] at 19-20).

To date, the Commission has located and frozen approximately $51.2 million in liquid assets, real estate worth approximately $19.7 million, and other non-liquid assets that are difficult to value and whose value, if any, may not be realized in the near future.

a. <u>Liquid Assets</u>

Since July, the liquid assets the Commission has secured have increased from approximately $47.7 million to $51.2 million. This increase is due to several factors. Most notably, several sources of liquid assets which were not known to the Commission when it was preparing its Preliminary Injunction filings have now been identified and included: the Barclay's bank account in the name of Mrs. Ahmed (which is now frozen) contains approximately $338,000; Mrs. Ahmed's $500,000 material witness bond was been withdrawn and the Commission understands that the money will be released into a frozen account; and the Commission accepts Mrs. Ahmed's representation that she has jewelry and paintings worth approximately $1.77 million, automobiles worth approximately $96,000, and that her attorneys hold $66,173.93. In addition, the tenants of 530 Park Avenue, Unit 12A, have made several rental payments to one of the frozen accounts. Finally, based on the Commission's understanding of the surrender value of Mr. Ahmed's MetLife insurance policy, the Commission has included that approximately $1.25 million value as a liquid asset. Below is a full listing of the current valuation of the liquid assets that the Commission has secured:

| Institution | Titled Name | Account No. | Amount as of November 2015 |
|---|---|---|---|
| **Barclays** | Shalini Ahmed | x0166 | $338,602.21 |
| **BOA** | UTMA ACCT For I.I.1 | x4104 | $5,002.81 |
| **BOA** | UTMA ACCT For I.I.2 | x0070 | $5,002.83 |
| **BOA** | UTMA ACCT For I.I.3 | x5699 | $5,004.04 |
| **BOA** | Shalini Aggarwal Ahmed lftikar Ali Ahmed | x9566 | $4,184.48 |
| **BOA** | Shalini Aggarwal Ahmed lftikar Ali Ahmed | x0482 | $236,043.68 |

| Institution | Titled Name | Account No. | Amount as of November 2015 |
|---|---|---|---|
| BOA | Shalini Aggarwal Ahmed Iftikar Ali Ahmed | x3754 | $80,509.71 |
| BOA | DIYA Capital Management, LLC | x4199 | $5,126.16 |
| BOA | DIYA Holdings LLC | x3831 | $129,128.97 |
| BOA | Robert Ades, Beneficiary Diya Holdings LLC, Custodian Landlord/Tenant Account | x6009 | $31,004.30 |
| BOA | I-Cubed Domains LLC | x8384 | $2,840.00 |
| BOA | Diya Real Holdings, LLC | x7632 | $3,044.76 |
| BOA | The Iftikar Foundation Shalini Aggarwal Ahmed Trustee | x7477 | $100.00 |
| BOA | Shalini Aggarwal Ahmed | x3132 | $14,560.00 |
| BOA | Iftikar Ahmed (Safe Deposit Box) | x1325 | --- |
| BOA | Iftikar Ahmed (Safe Deposit Box) | x1332 | --- |
| BOA | Iftikar Ahmed (Safe Deposit Box) | x235 | --- |
| BOA | Ahmeds (Safe Deposit Box) | x3257 | --- |
| BOA | Ahmeds (Safe Deposit Box) | x3323 | --- |
| BOA | Ahmeds (Safe Deposit Box) | x4655 | --- |
| BOA | I. Ahmed (Credit Card) | x1747 | $0.00 |
| BOA | I. Ahmed (Credit Card) | x5599 | $0.00 |
| E*Trade | I. Ahmed | x6818 | $940,767.20 |
| Fidelity | Shalini Aggarwal Ahmed, individually or as Trustee and/or Custodian Individual Brokerage Acct | x7540 | $12,538,381.19 |
| Fidelity | Shalini Aggarwal Ahmed, individually or as Trustee and/or Custodian Trust Acct | x8965 | $8,177,385.79 |
| Fidelity | Shalini Aggarwal Ahmed Rollover Retirement Acct | x5760 | $0.00 |
| Fidelity | Shalini Aggarwal Ahmed Roth Retirement Acct | x5070 | $5,934.12 |
| Fidelity | Essell Farms, LLC[2] | x8133 | $0.62 |
| Fidelity | Essell Farms, LLC | x7417 | $4.72 |
| Fidelity | Giotech Software Limited Corporate Acct | x9637 | $829.87 |
| Fidelity | Shalini Aggarwal Ahmed, individually or as Trustee and/or Custodian Individual Brokerage Acct Uniform Transfer to Minor Acct | x1895 | $94,906.64 |

---

[2] Ahmed is not a 100% owner of Essell Group and thus may not be entitled to full proceeds from the accounts held by Essell entities.

| Institution | Titled Name | Account No. | Amount as of November 2015 |
|---|---|---|---|
| Fidelity | Shalini Aggarwal Ahmed, individually or as Trustee and/or Custodian Individual Brokerage Acct Uniform Transfer to Minor Acct | x8069 | $95,181.95 |
| Fidelity | Shalini Aggarwal Ahmed, individually or as Trustee and/or Custodian Individual Brokerage Acct Uniform Transfer to Minor Acct | x9441 | $84,855.89 |
| Fidelity | Raktifi Holdings LLC Partnership Acct | x5996 | $0.00 |
| Fidelity | Oak Management Corporation Pension Plan and Trust FBO lftikar Ali Ahmed Acct | x6700 | $0.00 |
| Harris O'Brien | Money held by S. Ahmed's law firm | | $66,173.93 |
| HSBC Bank | I. Ahmed | x2984 | $9.50 |
| JPMC | lftikar Ahmed / Shalini Ahmed | x9065 | $20,604.14 |
| JPMC | lftikar Ahmed / Shalini Ahmed | x9001 | $14,366.21 |
| MetLife | I. Ahmed | | $1,283,865.09 |
| Mass Mutual[3] | I. Ahmed | | --- |
| Northern Trust | lftikar Ahmed and Shalini Ahmed | x5188 | $436,411.86 |
| Northern Trust | Raktifi Holdings LLC | x5218 | $15,000.17 |
| Northern Trust | Essell Farms LLC | x5226 | $169,233.03 |
| Northern Trust | Essell Farms LLC | x5234 | $26,074.35 |
| Northern Trust | Oak Management Corp FBO Ifkitar A Ahmed | x7193 | $738,117.00 |
| Northern Trust | lftikar A Ahmed and Shalini A Ahmed | x3934 | $8,323,340.37 |
| Northern Trust | lftikar Ali Ahmed and Shalini A Ahmed | x3935 | $9,703.83 |
| Northern Trust | lftikar Ali Ahmed IRA The Northern Trust Company as Trustee | x3781 | $63,946.52 |
| Northern Trust | lftikar A Ahmed and Shalini A Ahmed | x8537 | $1,349,963.20 |
| Northern Trust | lftikar A Ahmed and Shalini A Ahmed | x8985 | $1,608,181.23 |
| Northern Trust | Raktifi Holdings LLC | x0901 | $982,727.06 |
| Northern Trust | Raktifi Holdings LLC | x3911 | $3,598,057.97 |
| Northern Trust | lftikar Ahmed Family Trust | x8459 | $0.00 |
| TDA | Ifkitar A.Ahmed Family Trust UA Jun 05, 2009 Daniel G. Johnson TR | x7686 | $5,367,246.78 |
| TDA | Daniel G. Johnson as Cust for I.I.2 UTMA CT | x7666 | $758,746.78 |

[3]  The SEC has not received an update on the value of the MetLife insurance policy; as of July 2015, that policy had zero cash surrender value.

| Institution | Titled Name | Account No. | Amount as of November 2015 |
|---|---|---|---|
| TDA | Daniel G. Johnson as Cust for I.I.1 UTMA CT | x7674 | $886,524.01 |
| TDA | Daniel G. Johnson as Cust for I.I.3 UTMA CT | x7700 | $248,522.17 |
| TDA | Iftikar A Ahmed and Shalini A Ahmed JT TEN | x7664 | $0.00 |
| TD Bank | Iftikar A Ahmed  - TD Relationship Checking | x5279 | $19,253.86 |
| TD Bank | Iftikar A Ahmed - TD Relationship Savings | x8551 | $8,193.19 |
| TD Bank | Shalini Aggarwal - TD Convenience Checking | x2774 | $156.51 |
| U.S. Dist. Ct for District of Mass | Funds initially used by S. Ahmed for bond | | $500,000.00 |
| Jewelry/Paintings | | | $1,770,000.00 |
| Automobiles | | | $96,000.00 |

**Total**       **$51,158,820.70**

     b.  Real Estate

The Commission estimates that it has secured approximately $19.7 million in real property.  This includes 1) 530 Park Avenue Unit 12A that was purchased for approximately $9.3 million; 2) 530 Park Avenue Unit 12F that was purchased for approximately $8.6 million; and Mr. Ahmed's 60% interest in 1820 Country Route 7 that was purchased for approximately $3 million.  The Commission has not and cannot secure Mr. and Mrs. Ahmed's primary residence because it was the collateral for Mr. Ahmed's bond in his insider trading case (Case No. 15-mj-02062-MBB (D. Mass.)).  As this Court is aware, Mr. Ahmed fled the United States in violation of his release conditions.  According to the United States Attorney's Office for the District of Massachusetts, it remains possible, but not assured, that it could foreclose on the property at some point in the future, effectuate a sale, and apply sale proceeds toward compensating victims.  However, as of the date of this filing, the property continues to be held

by the Clerk of the Court of the District of Massachusetts and cannot be secured by the
Commission.

        c.  <u>Other Assets</u>

      There are also certain non-liquid assets that are subject to the asset freeze.  There is
significant uncertainty ascribing value to these assets.  As a threshold matter, by their nature, any
realization may not occur for years, if at all.  In addition, several of the non-liquid assets are held
by the Essell Group, which the Commission understands Mr. Ahmed is only a partner in and not
the full owner.  Thus, it is unclear at this stage what percentage of the assets the Commission
would be able to ultimately secure.  Finally, several of the non-liquid assets have restrictions on
their liquidation.  It is therefore difficult to place an accurate valuation on these assets.  The
Commission's best estimate of the total value of these non-liquid assets, not adjusted for any
limitations on Mr. Ahmed's percentage ownership or liquidation penalties, is approximately $9.7
million.  Because of the uncertainty of the assets, and the inability to liquidate the assets, the
Commission does not believe that it will be able to ultimately obtain anywhere near this amount.
Below is a full listing of the current valuation information that the Commission has regarding the
non-liquid assets:

| Institution | Titled Name | Reported Value of Asset as of July 2015 | Reported Value of Assets as of November 2015 | Purchase Price/Market Value |
|---|---|---|---|---|
| **Blade** | I-Cubed Domains | 50,000 Series A Units, purchased for $1 each. | No updates to the valuation | Purchase Price |
| **Clues Network Inc.** | Essell Group[4] | 1,623,177 of preferred A and 18,546 of Preferred C | No updates to the valuation | Purchase Price |

---

[4] Ahmed is not a 100% owner of Essell Group and thus may not be entitled to full proceeds of
any liquidation/realization of assets held by the Essell Group.

| Institution | Titled Name | Reported Value of Asset as of July 2015 | Reported Value of Assets as of November 2015 | Purchase Price/Market Value |
|---|---|---|---|---|
| Crypto Currency Partners | I. Ahmed | $25,000.00 | No material change | Purchase Price |
| Fort Warren | I. Ahmed | $493,034.14 | $485,540.00 | Market value (restrictions on redemption) |
| Harbor View | I. Ahmed | $100,000.00 | No updates to the valuation | Purchase Price; no realization expected for 2-4 years |
| Investment in IT Security Company[5] | I-Cubed Domains | Approx. $1,000,000 | No updates to the valuation | Purchase price |
| MadeByBelieve | The Essell Group LLC | Shares | No current value | Market value |
| Oak Investment Partners | I. Ahmed | Approx. $4,000,000 | Approx. $3,800,000[6] | Market value |
| Ribbit Capital I and II | The Essell Group LLC | Market value of 2,347,271.09 | Market value $4,184,350.65 | Market value (cannot be liquidated at election of Essell Group) |
| Reserve Media Inc (A Round) | I-Cubed Domains | $50,000.00 | No updates to the valuation | Purchase Price |

V.   **Argument**

a.   <u>This Court is Without Jurisdiction to Grant Relief Defendants' Motion.</u>

Relief Defendants' Notice of Appeal of the Preliminary Injunction Asset Freeze

transferred jurisdiction over the subject of the appeal (i.e., the Preliminary Injunction Asset

---

[5] This asset was inadvertently described as relating to "Apollo" in the SEC's July 20, 2015 filing. (Doc. # 68 at 10.)

[6] Oak has represented to the Commission that there are restrictions on the transfer of this asset, and that, because of Mr. Ahmed's removal as a member, he would only be entitled to approximately $2.8 million of this asset.

Freeze) from this Court to the Second Circuit Court of Appeals.  Because Relief Defendants'

appeal is currently pending, this Court is without jurisdiction to grant the relief that Relief

Defendants seek in their instant motion for modification of the Preliminary Injunction Asset

Freeze.[7]

The "filing of a notice of appeal is an event of jurisdictional significance—it confers

jurisdiction on the court of appeals and divests the district court of its control over those aspects

of the case involved in the appeal."  *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56,

58 (1982) (per curiam).  "A district court does not regain jurisdiction until the issuance of the

mandate by the clerk of the court of appeals."  *United States v. Rodgers*, 101 F.3d 247, 251 (2d

Cir. 1996).  As explained by the Second Circuit, "absent an appeal, a district court has complete

power over its interlocutory orders" and "it lay within the discretion of the district court to

consider newly presented evidence."  *Ideal Toy Corp. v. Sayco Doll Corp.*, 302 F.2d 623, 625

(2d Cir. 1962).  "Once the appeal is taken, however, jurisdiction passes to the appellate court.

Thereafter the appellant is not usually entitled as of right to present new evidence or argument to

the trial court, which in the exercise of a sound discretion will exercise jurisdiction only to

preserve the status quo as of the time of appeal."  *Id.*

Rule 62(c) of the Federal Rules of Civil Procedure provides a district court with

jurisdiction over an injunction on appeal in only limited exceptions.  It states in relevant part:

> *Injunction Pending Appeal*. When an appeal is taken from an
> interlocutory or final judgment granting, dissolving, or denying an
> injunction, the court in its discretion may suspend, modify, restore,
> or grant an injunction during the pendency of the appeal upon such

---

[7] As indicated in the Commission's recently-filed opposition to Relief Defendant's motion to
expedite the appeal, the Commission would not oppose the Relief Defendants moving to dismiss
their appeal or to hold their appeal in abeyance while remanding to this Court, which would cure
the jurisdictional problem that Relief Defendants created when they took their appeal.  *See* ECF
63 at 3, n.2; Case No. 15-2658 (2d Cir. 2015).  However, unless and until Relief Defendants take
such action, jurisdiction remains vested in the Second Circuit.

terms as to bond or otherwise as it considers proper for the security
of the rights of the adverse party.

Rule 62(c) "has been narrowly interpreted to allow district courts to grant only such relief as may be necessary to preserve the status quo pending an appeal where the consent of the court of appeals has not been obtained." *Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. E. Air Lines, Inc.*, 847 F.2d 1014, 1018 (2d Cir. 1988); *see also Sayco Doll Corp.*, 302 F.2d at 625 (Rule 62(c) allows district courts to modify injunction orders "during the pendency of an appeal…to preserve the status quo where, in its sound discretion, the court deems the circumstances to justify."). Thus, under the Second Circuit's *Sayco* doctrine, once an injunction has been appealed the district court lacks jurisdiction "to tamper in any way with the order then on interlocutory appeal other than to issue orders designed to preserve the status quo of the case as it sat before the court of appeals." *State of New York v. Nuclear Reg. Com'n.,* 550 F.2d 745, 758 (2nd Cir.1977).[8]

The facts of *Nuclear Regulatory Comm'n* are analogous to Relief Defendants' instant motion for modification. There, appellants sought a preliminary injunction in the district court that was subsequently denied. Appellants appealed the denial of the injunction and, while the appeal was pending, again moved for a similar preliminary injunction before the district court. The Second Circuit found that appellant's "new motion [in the district court] for a preliminary injunction was little more than a poorly disguised effort to reopen and reargue the earlier unsuccessful motion" that was on appeal. *Id.* at 758. The Second Circuit specifically found that the district court was without jurisdiction to grant the requested relief while the appeal was pending:

---

[8] Orders modifying the Preliminary Injunction Asset Freeze to, for example, ensure the payment of taxes or common charges on the frozen real estate [*e.g.*, Doc. # 155] simply preserve the status quo by ensuring the property remains unencumbered and are thus appropriate even in light of Relief Defendants' appeal.

> It is obvious, of course, that if on the basis of the new evidence [the district court] had reconsidered [its] denial of the original motion and granted the preliminary relief appellant was again seeking, the judge would have acted in contravention of our holding in *Sayco* and would have accomplished precisely what *Sayco* intended to prevent destruction, rather than preservation of the posture of the case as it sat before the court of appeals.

*Id.* at 758-59.  In light of the foregoing authority, this Court is without jurisdiction to grant Relief Defendants' motion for modification because the relief they request is beyond the ambit of Rule 62(c).  Indeed, unlike *Nuclear Regulatory Comm'n*, Relief Defendants do not even attempt to conceal that they are seeking modification of the very Court Order that they are simultaneously appealing.  Far from preserving the status quo, Relief Defendant's requested modification would significantly alter it by unfreezing assets that are currently frozen and the subject of Relief Defendant's appeal.

Although the Court's Order specifically found that "Mrs. Ahmed's request to unfreeze funds [was] premature" (Ruling & Order [Dkt. #113] at 18), she opted to file a notice of appeal rather than wait for her request to mature.  The filing of that appeal "divests[ed] the district court of its control over those aspects of the case involved in the appeal."  *Griggs*, 459 U.S. at 58.  The aspects of the case involved in Relief Defendants' appeal are undeniably the very same aspects of the case found in Relief Defendants' instant motion (*i.e.* the Preliminary Injunction Asset Freeze).  Because the requested relief does not preserve the status quo, it runs afoul of the *Sayco* doctrine as articulated above.  Relief Defendants' motion for modification should therefore be denied for want of jurisdiction unless, as explained above, Relief Defendants either dismiss their appeal or the Second Circuit holds the appeal in abeyance.

14

b. <u>The Assets Mrs. Ahmed Seeks to be Released Either do Not Belong to Her, are Tainted by Mr. Ahmed's Fraud, or Both.</u>

Even were this Court to have jurisdiction to grant Mrs. Ahmed's motion for modification, it should decline to do so because she seeks assets that do not belong to her and/or are tainted by Mr. Ahmed's fraud. Indeed, conspicuously absent from her motion is the identification of any untainted accounts or assets (save 121 shares of Morgan Stanley stock worth approximately $3,960) that belong to a Relief Defendant. That is because the Preliminary Injunction Asset Freeze has not improperly frozen untainted assets belonging to any Relief Defendant. Moreover, notwithstanding Mrs. Ahmed's arguments to the contrary, the release of frozen assets will likely come from the pot of money needed to make victims of Mr. Ahmed's fraud whole, and will almost surely include tainted monies.

*i. Morgan Stanley shares should be released.*

Based on Mrs. Ahmed's sworn statement that she purchased the Morgan Stanley shares through an employee purchase plan before she married her husband, (Ahmed Decl. [Doc. # 149] at ¶14), the Commission agrees the shares should be released to her. Notably, the Commission had already agreed to stipulate that these funds should be unfrozen upon a signed declaration that the funds were untainted and belonged to her, but Mrs. Ahmed refused citing cost concerns. The Commission then drafted and provided Mrs. Ahmed with a declaration to sign and represented it would handle filing, but did not receive a response. In hindsight, the entire exchange appears to be gamesmanship, as just days later Mrs. Ahmed filed her instant 14 page declaration specifically dealing with her assets and including information about the Morgan Stanley shares.[9]

_____

[9] It is unclear why Mrs. Ahmed takes issue with the Commission's position that the Morgan Stanley "shares are subject to the Court's asset freeze." (Ahmed Decl. [Doc. # 149] at ¶14); *see also* Relief Def. Mem. of Law in Supp. of Mot. for Modification [Doc. # 152] at 9-10, n.3. The assets are unquestionably frozen unless and until the Court orders otherwise. Mrs. Ahmed seems to imply that she holds assets which have not been unfrozen by the Court, but are not subject to

     *ii. The funds Mrs. Ahmed seeks do not belong to her.*

   Mrs. Ahmed's failure to identify any untainted assets that belong to her (aside from the

Morgan Stanley shares discussed above) makes clear that she merely seeks monies that are not

hers, are tainted, or both.  As this Court previously found, "Mrs. Ahmed merely served as a

nominal owner for Mr. Ahmed's funds." (Ruling & Order [Dkt. #113] at 10).  The Commission

has made clear that it seeks to freeze only those assets owned or controlled by Mr. Ahmed, or

tainted by his fraud.[10]  In fact, the Court could not have been more clear that if requesting the

release of assets, Mrs. Ahmed was expected to specifically articulate which assets were untainted

and belonged to her:

> [I]f [Mrs. Ahmed] [has] something more developed to show the
> Court of assets that have been frozen improperly, because they are
> demonstrably acquired by untainted funds, then by all means, the
> Court will entertain your motion.  But that is not what's before the
> Court.  The two-day hearing we had did not produce any
> persuasive evidence that there were specific items that the Court
> didn't release.
>
> . . . .
>
> So it seems to me that what we should do is deny the motion to
> stay without prejudice to renew on a well documented and sworn
> motion demonstrating funds that should be released, and/or some
> other reason why the entirety of the case should be stayed, other

---

the asset freeze.  The Commission's concerns are only heightened by the way Mrs. Ahmed
describes the assets in her declaration, stating "[b]elow, I describe the entirety of the assets that
are <u>covered by the Court's order</u>" (Id. at 11) (emphasis added).  The Commission trusts that, in
her reply brief, Mrs. Ahmed will unequivocally confirm that she has disclosed to the Court the
entirety of her assets.

[10] At the telephonic status conference held on September 15, 2015, there was considerable
discussion about Mrs. Ahmed disclosing assets that could be released from the asset freeze.
Undersigned counsel made clear that the Commission "[did not] want any money frozen that
shouldn't be frozen" and explained the Commission's view that "if Mrs. Ahmed comes and says
here's, for example, 'A car held in my name that the SEC can't show was purchased with
fraudulent funds,' then she can sell that car."  September 15, 2015, Telephonic Status Conference
Tr. at 20-21.

than freeing funds to pay counsel for a case in which she's only a
relief defendant.

September 15, 2015, Telephonic Status Conference Tr. at 30.

Rather than identify untainted assets belonging to her, Mrs. Ahmed instead disregards this Court's prior finding that she served as a nominee, ignores this Court's direction to point to assets that are improperly frozen, and simply declares that she is entitled to monies that this Court has already found are not hers and should be frozen pending this litigation. Rather than declare a particular asset is improperly frozen – which would allow the Commission to submit evidence and argument disputing her claim – Mrs. Ahmed instead simply asks that the Court to release nearly $1 million and to write blank checks to her attorneys. Put simply, there is no reason the Court should reconsider its earlier findings, and the Court should decline to release any assets or monies that Mrs. Ahmed does not even declare are improperly frozen. On this basis alone, Mrs. Ahmed's motion should be denied.

        iii.   *Were the Court to release money to Relief Defendants, the funds would likely come from assets needed to make victims whole.*

In making a general request for money, Mrs. Ahmed simply resurrects the same arguments this Court previously rejected by erroneously asserting that "there are ample assets available to compensate victims of the defendant's alleged fraud." (Relief Def. Mem. of Law in Supp. of Mot. for Modification [Doc. # 152] at 11). In making this statement, Mrs. Ahmed disregards this Court's prior findings by overstating the known frozen assets and understating the amount of money owed to Mr. Ahmed's victims. Contrary to Mrs. Ahmed's claims, the assets she seeks to release will likely be needed to repay victims of Mr. Ahmed's fraud.

To overstate the known assets that are frozen under the Preliminary Injunction Asset Freeze, Mrs. Ahmed (disregarding the Court's earlier findings) declares that the Commission

will be able to obtain $9.6 million through the sale of her residence and $23.2 million from Mr. Ahmed's carried interest in Oak funds.  The Court has previously found that neither of these assets should be included in the calculation of the assets available to compensate victims, and there is no reason to reconsider that ruling here.

With respect to the residence, as this Court previously found, "in the face of [ ] uncertainty about the Greenwich home…the Court cannot be assured that [it] will be available to compensate victims at this point." (Ruling & Order [Dkt. #113] at 14, n. 4).  The Commission represents that since the Court entered the Preliminary Injunction Asset Freeze, there has been no material change to the circumstances of Mrs. Ahmed's residence.  As noted above, the residence served as Mr. Ahmed's personal bond to appear, and not violate any conditions of release, in his criminal case. (*See* Case No. 15-mj-02062-MBB (D. Mass), Doc. No. 20.).  He subsequently fled the United States.  Thus, the Commission cannot secure this asset, and cannot obtain the proceeds from the asset, unless and until the property is foreclosed on, sold, and the United States Attorney's Office transfers the proceeds from that sale to an account controlled by this Court to compensate victims of Mr. Ahmed's fraud.  It is possible that this will occur, but there is no guarantee.  The risk that this does not occur should not be borne by the victims of Mr. Ahmed's fraud.

With regards to Mr. Ahmed's carried interest, the Commission has confirmed with Oak that the value has declined significantly – from approximately $23.3 million as of March 31, 2015 to approximately $18.4 million as of September 30, 2015.  This decline in market value only underscores the Court's previous holding that "there is great uncertainty as to whether this carried interest account will materialize into an asset available for victim recovery and in the face of this uncertainty, the Court cannot assume that it will." Ruling & Order [Dkt.

#113] at 15).  In sum, there is no reason that either Mr. and Mrs. Ahmed's residence or Mr.

Ahmed's "carried interest" should now be included in the figure of assets the Commission

expects to obtain for the benefit of Mr. Ahmed's victims.

Relief Defendants also understate the amount needed to compensate Mr. Ahmed's

victims by referencing only the approximately $65 million that Mr. Ahmed stole,[11] and not

the prejudgment interest that victims are owed, which now stands at $10,432,173.85. (Ex.

A).  Relief Defendants' assertion that prejudgment interest is "punitive in nature," "a fine," and

"does not aim to make victims whole" (Relief Def. Mem. of Law in Supp. of Mot. for

Modification [Doc. # 152] at 15, n. 7) is erroneous.  Rather, "[a]n award of prejudgment interest

is intended to compensate an aggrieved party for the wrongful deprivation of its money." *SEC v.*

*Hasho*, 784 F. Supp. 1059, 1112 (S.D.N.Y. 1992).  Thus, prejudgment interest is not a fine.[12]

---

[11] Mrs. Ahmed's claim that "serious legal deficiencies support the conclusion that the amount
potentially subject to disgorgement is a fraction of what the SEC seeks" (Relief Def. Mem. of
Law in Supp. of Mot. for Modification [Doc. # 152] at 13) is meritless.  Her only support for the
argument is Mr. Ahmed's claim (raised for the first time in a reply brief) that he intends to file a
motion to dismiss certain allegations at some point in the future.  (Def. Reply in Supp. of Mot.
for Mod. of Freeze Or. [Doc. # 137] at 10-11).  Tellingly, Mrs. Ahmed did not raise these
"defenses" at the Preliminary Injunction hearing.  The Commission will respond to these
arguments if and when they are properly raised.

[12] *Accord Loeffler v. Frank,* 486 U.S. 549, 558 (1988) ("Prejudgment interest ... is an element of
complete compensation." (citation and internal quotation omitted)); *Rolf v. Blyth, Eastman
Dillon & Co.,* 637 F.2d 77, 87 (2d Cir.1980) ("An award of prejudgment interest is in the first
instance compensatory."); *Myron v. Chicoine*, 678 F.2d 727, 733-34 (7th Cir. 1982) ("[A]n
award of prejudgment interest is particularly appropriate in cases involving investment fraud. In
order to realize the objective of compensatory relief, prejudgment interest is imposed in certain
classes of cases in order to make a party whole."); *Quintel Corp., N.V. v. Citibank, N.A.*, 606 F.
Supp. 898, 914 (S.D.N.Y. 1985) ("In exercising its discretionary powers, a court must consider
two principles: compensation and fairness. An award of prejudgment interest is principally
intended to compensate an aggrieved party for the wrongful deprivation of the use of its
money.")

When disgorgement and prejudgment interest are combined the sum is $75.3 million. Prejudgment interest will of course continue to accumulate.  Yet, as explained above, the Commission has secured only approximately $51.2 million in liquid assets, real estate worth approximately $19.7 million (totaling $70.9 million), and certain other non-liquid assets that are difficult to value, many of which cannot be liquidated.  Even assuming the Commission obtains every single dollar of liquid assets and real estate it has secured, as well as half of the $9.7 million in non-liquid assets (as the assets are illiquid, speculative, and Mr. Ahmed does not own all of The Essell Group LLC), and there are no costs associated with liquidation of any of the assets or real estate, and the liquidation occurs in the very near future (thereby preventing prejudgment interest from increasing), any release of funds will diminish those assets to below the level of disgorgement and prejudgment interest (this would also of course leave no monies for a civil fine).  Put simply, the Court should decline to release assets, as they will likely be needed to repay victims of Mr. Ahmed's fraud.

> iv.  *Were the Court to release money to Relief Defendants, the funds would likely included tainted monies.*

In making a general request for money, Mrs. Ahmed avers that "every dollar frozen above [$65,021,660.27] is by definition untainted." [Doc. # 152 at 6]  Mrs. Ahmed does not cite any authority to support her claim, and completely ignores the plethora of cases cited in the Commission's earlier filings, as well as this Court's prior finding, regarding commingling.

In opposing Defendant Iftikar Ahmed's Motion to Unfreeze Assets, the Commission detailed that "Courts that have addressed commingling in different contexts have concluded that, 'due to the fungibility of money, any commingling is enough to warrant treating all the funds as tainted.'"  (SEC Resp. in Opp'n  [Doc. # 123] at 15) (quoting *SEC v. Byers*, 637 F.Supp.2d 166, 174 (S.D.N.Y.2009), *aff'd sub nom. SEC v. Orgel*, 407 F. App'x 504 (2d Cir.2010) and *SEC v.*

*Malek*, 397 F. App'x 711 (2d Cir.2010)).  The Commission went on to cite several cases holding that the presence of some tainted funds is sufficient to taint all.  *Id.* at 16-17.[13]  Similarly, in entering the Preliminary Injunction Asset Freeze Order, this Court specifically declined to release monies Mrs. Ahmed claimed she earned thorough employment, finding that " [t]here [was] no evidence, [ ]  that this income was segregated from Mr. Ahmed's assets."  (Ruling & Order [Dkt. #113] at 12).

Rather than address the Commission's arguments, distinguish the facts of this case from those cited in the Commission's earlier filing, or explain which untainted monies were segregated from tainted funds, Mrs. Ahmed simply ignores the Commission's argument, and this Court's prior ruling, by asking the Court  to accept her bare declaration on what is and is not legally tainted.  The Court should decline to do so.  Mrs. Ahmed does not identify untainted assets belonging to her because, presumably, none exist.

      c.  <u>Mrs. Ahmed has Sufficient Assets to Pay Reasonable Living Expenses and Equity Does Not Weigh in Favor of Releasing Tainted Monies.</u>

The parties previously entered into a stipulation [Doc. # 121], approved by the Court [Doc. # 135], providing for the release of certain accounts which held, among other things, stock that Mrs. Ahmed earned during her employment with Goldman Sachs.  On October 7th and 8th, 2015, Mrs. Ahmed liquidated these accounts obtaining "$208,890.51 in cash."  (Ahmed Decl. [Doc. # 149] at ¶12 & Ex. 3 [Doc. # 149-3] to Ahmed Decl.).  According to Mrs. Ahmed, by October 17, 2015, 10 days after she obtained the approximately $208,000 in cash, she had spent more than $160,000, leaving her with "approximately $48,000." Ahmed Decl. [Doc. # 149] at ¶13.  According to Mrs. Ahmed, her monthly living expenses exceed $8,000 per month.

---

[13] The Commission incorporates these and its other arguments made in its Response in Opposition [Doc. # 123] to Mr. Ahmed's similar motion to release assets from the Preliminary Injunction Asset Freeze.

Asking for more than $8,000 per month, without having a mortgage, tax payments, or car payments, is excessive.  Regardless, Mrs. Ahmed has nearly $48,000 in cash, which will provide for six months of living expenses.  Thus, her request is premature.  Moreover, the district court should scrutinize Mrs. Ahmed's individual expenses if and when she demonstrates a need for access to additional funds.  That is because she appears to continue to engage in spending that is excessive, including having her pool serviced on a weekly basis throughout this litigation (Ex. 12 [Doc. # 149-12] Ahmed Decl.), and last month's purchase of an $8,800 "custom, hand-knotted wool and viscose" rug.  (Ex. 11 [Doc. # 149-11] to Ahmed Decl.).  It is inappropriate to engage in this type of spending, but then request that the bill be paid with tainted monies that should be used to repay the victims of fraud.

> d.   The Court Should Hold an Evidentiary Hearing Before Unfreezing Particular Assets Mrs. Ahmed Claims Belong to Her and are Not Tainted by Fraud.

If the Court is inclined to unfreeze assets at this time, the Commission requests the Court first require Mrs. Ahmed to identify purported untainted assets belonging to her, and then to hold an evidentiary hearing that will allow the Commission to cross-examine Mrs. Ahmed on her declaration as well as to allow the Commission to rebut claims that the purported untainted assets belonging to her are what she claims them to be.  *See, e.g., Lauer*, 2009 WL 812719, at *1 (finding assets tainted by fraud after briefing and evidentiary hearing); *Coates*, 1994 WL 455558, at *3 (ordering evidentiary hearing).  If an evidentiary hearing is ordered, the SEC requests expedited discovery on those issues.

> e.   The Preliminary Injunction Asset Freeze Does Not Violate Mrs. Ahmed's Rights Under the Sixth Amendment.

Even were the Court to find it has jurisdiction to reach the merits of her motion, Mrs. Ahmed does not have a constitutional right to counsel in the instant civil proceeding, and does

not have a Sixth Amendment right to consume monies that are not hers and/or are traceable to her husband's fraud.  Nonetheless, the Commission does not necessarily object to releasing some funds that are needed for her criminal defense.

> i. *Mrs. Ahmed does not have a Sixth Amendment right to counsel in the instant civil proceeding.*

It is rudimentary that one does not have a Sixth Amendment right to counsel in civil proceedings.  Mrs. Ahmed's arguments to the contrary are made without case law support and conflict with both the United States Constitution and binding case law interpreting those rights guaranteed under the Sixth Amendment.

"The [Sixth] Amendment [ ] defines the scope of the right to counsel in three ways: It provides who may assert the right ('the accused'); when the right may be asserted ('[i]n all criminal prosecutions'); and what the right guarantees ('the right ... to have the Assistance of Counsel for his defence')."  *Rothgery v. Gillespie County*, 554 U.S. 191, 214 (2008) (Alito, J., concurring).  It is therefore axiomatic that "the Sixth Amendment does not govern civil cases." *Turner v. Rogers*, 131 S. Ct. 2507, 2516 (2011); *see also Austin v. United States*, 509 U.S. 602, 608 (1993) ("The protections provided by the Sixth Amendment are explicitly confined to 'criminal prosecutions.'"); *SEC v. Prater*, 296 F.Supp.2d 210, 218 (D.Conn.2003) ("[T]he right to counsel inheres only in proceedings that threaten Defendant with actual imprisonment."); *SEC v. Current Fin. Servs.*, 62 F.Supp.2d 66, 67 (D.D.C.1999) (rejecting a claim that an asset freeze violated defendant's constitutional right to counsel in an SEC action because "the Sixth Amendment provides defendants the right to counsel only in criminal, not civil, proceedings.").

Mrs. Ahmed attempts to insert a new constitutional right into the Sixth Amendment by claiming that "this civil enforcement action is so closely intertwined with [her criminal] case that her Sixth Amendment rights are at play here."  (Def. Mem. of Law in Supp. of Mot. for

Modification [Doc. # 152] at 11).  Although parallel civil and criminal investigations and prosecutions are common,[14] Mrs. Ahmed does not cite a single case to support her claim that she has a constitutional right to counsel in the instant civil action because she has been charged criminally.  That is because there is no legal support for such an argument.  Moreover, Mrs. Ahmed's criminal case is notably different than the instant civil action, in which she is accused of no wrongdoing.

The Court should decline Mrs. Ahmed's request to write her civil attorneys a blank check, which as noted above would be funded by the proceeds of Mr. Ahmed's fraud.  First, it would be improper to allow Mrs. Ahmed to consume monies that do not belong to her, or are tainted, even if those funds will go directly to her attorneys in this civil action.  This is especially true in the instant case because Mrs. Ahmed has had the benefit of counsel to date, and she has secured counsel for her appeal, which will likely go well into next year, even if expedited.  Mrs. Ahmed presents no evidence in support of her motion that counsel in the civil case will withdraw from their representation if funds are not unfrozen.  Thus, Mrs. Ahmed does not depend on this Court releasing monies in order to be represented in this action.

Moreover, Mrs. Ahmed has the ability to obtain money through employment, which she can put toward legal costs associated with the litigation.  Mrs. Ahmed is mistaken when she states that she is "under house arrest," and it seems unlikely that is "virtually impossible for her to find full-time employment."  (Def.'s Mem. in Supp. of Mot. to Modify [Dkt. # 152] at 5).  It is also unclear why she has not attempted to secure part-time employment.  Even were the Court to

---

[14] "[W]ith respect to the investigation and prosecution of potential violations of S.E.C. regulations and laws, parallel civil and criminal investigations and prosecutions are not only common, but the sharing of information between agencies is authorized by statute." *United States v. Harris,* No. 1:09–CR–0406–TCB–JFK, 2010 U.S. Dist. LEXIS 126620, at *42, 2010 WL 4962981 (N.D.Ga. Oct. 22, 2010).

release monies for attorneys' fees in the instant civil action, it should decline to write a blank check which will only encourage unnecessary litigation and wasteful spending.

> ii.   *Mrs. Ahmed does not have a right to use the proceeds of fraud, or monies that do not belong to her, to defend against criminal charges.*

Following the Preliminary Injunction hearing, Mrs. Ahmed was charged with conspiring to commit money laundering in violation of 18 U.S.C. §§ 1956(h) and 1957.  *See* Case No. 15-mj-2161-MBB (D. Mass.).  Mrs. Ahmed's rights under the Sixth Amendment attached at her initial appearance.  *See* ECF 3, Case No. 15-mj-2161-MBB (D. Mass.).[15]  The Commission is mindful of these Sixth Amendment rights and, at this time, does not necessarily object to releasing some monies to assist in Mrs. Ahmed's criminal defense.  Prior to releasing funds, however, the Court should direct Mrs. Ahmed to 1) disclose how much she has paid her criminal attorneys to date; 2) disclose how much she expects to spend on her criminal defense in the next six months; and 3) identify what frozen assets she seeks to liquidate to fund her criminal defense.  The Commission will then work in good faith with Mrs. Ahmed to negotiate an appropriate order carving out limited fees that are necessary in the near term for her criminal defense.

To be clear, Mrs. Ahmed herself acknowledges that her Sixth Amendment right to a frozen asset hinges on whether the particular asset is her "own funds" (Relief Def. Mem. of Law

---

[15] In *United States v. Stein*, the Second Circuit held that the Sixth Amendment right to counsel only attached upon indictment.  541 F.3d 130, 148, n.9 (2d Cir. 2008) ("Because the Sixth Amendment attaches only *upon* indictment, the KPMG conduct attributable to the government is relevant only insofar as it contributed to KPMG's decision to withhold legal fees upon defendants' indictment.") (emphasis in original).  However, three months after *Stein* was decided, the Supreme Court held that Sixth Amendment rights attach at an initial appearance, which, like the instant case, can occur before indictment.  *See Rothgery v. Gillespie Cnty.*, Tex., 554 U.S. 191, 213 (2008) ("[A] criminal defendant's initial appearance before a judicial officer, where he learns the charge against him and his liberty is subject to restriction, marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel.").  Contrary to any argument Mrs. Ahmed may make, her rights under the Sixth Amendment did not attach until this initial appearance.  *Id.*

in Supp. of Mot. for Modification [Doc. # 152] at 15 (quoting *United States v. Stein*, 541 F.3d

130, 141 (2d Cir. 2008))) and untainted by Mr. Ahmed's fraud.  *Id*. at 16.   Mrs. Ahmed has not

identified any such assets (aside from Morgan Stanley shares) that have been frozen.  Legally,

she is not entitled to any monies on the current record.  However, the Commission recognizes the

unique equities of the situation, and therefore, as a matter of discretion, does not oppose the

release of limited monies that are reasonable and necessary in the near term for her criminal

defense.

**VI.      Conclusion**

For the reasons outlined herein, Relief Defendants' motion to modify the Preliminary

Injunction Asset Freeze should be denied.


DATED: November 6, 2015.


                    s/ Mark L. Williams
                    Nicholas P. Heinke
                    Mark L. Williams
                    U.S. Securities and Exchange Commission
                    1961 Stout Street, Suite 1700
                    Denver, CO 80294-1961
                    (303) 844-1071 (Heinke)
                    (303) 844-1027 (Williams)
                    HeinkeN@sec.gov
                    WilliamsML@sec.gov
                    Attorneys for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

I certify that on November 6, 2015, a copy of the foregoing document was served via

ECF upon the following:

Alex Lipman
Ashley L. Baynham
Brown Rudnick LLP
Seven Times Square
New York, NY 10036
(Counsel for Defendant)

Jonathan Harris
Reid Skibell
David Deitch
Alexander Sakin
Harris, O'Brien, St. Laurent & Chaudhry LLP
111 Broadway, Suite 1502
New York, NY 10006
(Counsel for Relief Defendants)

s/ Mark L. Williams
Mark L. Williams