UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____
                                              )
UNITED STATES SECURITIES                      )
AND EXCHANGE COMMISSION,                       )
                                              )
                 Plaintiff,                   )
                                              )
        v.                                    )     Civil Action No. 3:15cv675 (JBA)
                                              )
IFTIKAR AHMED,                                )
                                              )
                 Defendant, and               )
                                              )
IFTIKAR ALI AHMED SOLE PROP;                   )
I-CUBED DOMAINS, LLC;  SHALINI AHMED;           )
SHALINI AHMED 2014 GRANTOR RETAINED            )
ANNUITY TRUST; DIYA HOLDINGS LLC;              )
DIYA REAL HOLDINGS, LLC; I.I. 1, a minor       )
child, by and through his next friends IFTIKAR )
and SHALINI AHMED, his parents; I.I. 2, a minor)
child, by and through his next friends IFTIKAR )
and SHALINI AHMED, his parents; and I.I. 3, a  )
minor child, by and through his next friends   )
IFTIKAR and SHALINI AHMED, his parents,        )
                                              )
                 Relief Defendants.           )
_____ )

**PLAINTIFF UNITED STATES SECURITIES AND EXCHANGE COMMISSION'S
RESPONSE IN OPPOSITION TO RELIEF DEFENDANTS' MOTION TO DISMISS
CERTAIN CLAIMS IN THE SECOND AMENDED COMPLAINT**

Plaintiff United States Securities and Exchange Commission ("SEC") hereby files this

opposition to Relief Defendants I-Cubed Domains, LLC, Shalini Ahmed, Shalini Ahmed 2014

Grantor Retained Annuity Trust, DIYA Holdings LLC, DIYA Real Holdings, LLC, and three

minor children by and through their next friends Iftikar and Shalini Ahmed, their parents

(collectively, "Relief Defendants") motion seeking to dismiss certain claims as barred by the

statute of limitations ("Motion").  For the reasons outlined herein, the Motion should be denied.

## I.     Introduction

As detailed in the SEC's Second Amended Complaint [Doc. #208], Defendant Iftikar Ahmed ("Defendant" or "Mr. Ahmed") engaged in a long-running scheme in which he defrauded his venture capital firm, that firm's investors, and companies in which the firm invested out of more than $65 million.  Defendant's fraudulent conduct began more than a decade ago, and continued until shortly before the SEC sought and received a temporary restraining order freezing Defendant's assets.  Notwithstanding Relief Defendants' arguments to the contrary, the statute of limitations in 28 U.S.C. § 2462 does not limit the SEC's claims for disgorgement to the fraudulent gains Defendant realized in the five years prior to May 6, 2015.  That is because disgorgement of ill-gotten gains is an equitable remedy not covered by Section 2462, which by its very terms applies only to a "civil fine, penalty, or forfeiture."  28 U.S.C. § 2462.  In fact, the Second Circuit has previously addressed, and rejected, Relief Defendants' argument that disgorgement is equivalent to forfeiture.  The Court should follow this binding Second Circuit precedent and deny Relief Defendants' Motion in its entirety.[1]

## II.     Background

On February 18, 2016, Defendant requested [Doc. #192] a pre-filing conference to discuss a proposed Motion to Dismiss.  The Court granted [Doc. # 194] Defendant's request the following day.

On February 23, 2016, Relief Defendants' requested [Doc. #197] that they be permitted to join in the Defendant's request for a pre-filing conference.  The Court granted [Doc. #199] Relief Defendants' request the following day.

---

[1] The issue of Section 2462's applicability to disgorgement is again before the Second Circuit in *S.E.C. v. Wyly*, Case No. 15-2821 (2d Cir. 2015).  The arguments made herein in opposition to Relief Defendants' Motion reflect the same arguments made by the SEC in *Wyly*, which has now been fully briefed and is awaiting oral arguments, which are tentatively scheduled for the week of September 6, 2016.  *Id.,* Doc. # 99 (Case Calendaring).

On March 14, 2016, the Court held a pre-filing conference on the proposed motion to dismiss certain claims. *See* Minute Entry [Doc. # 204]. During the conference, the Court ordered that the SEC file any amendment to its complaint by April 1, 2016. Defendant and Relief Defendants were ordered to file any responsive pleading, including a motion to dismiss, by April 22, 2016.

On April 1, 2016, the SEC filed [Doc. # 208] its Second Amended Complaint.

On April 20, 2016, Relief Defendants filed [Doc. # 216] a motion (on consent) requesting a three-week extension to respond to the SEC's Second Amended Complaint. The Court subsequently granted [Doc. # 219] Relief Defendants' request, thereby extending their response deadline to May 13, 2016.

On April 22, 2016, Defendant opted not to file a motion to dismiss, and instead filed [Doc. # 218] an Answer.

On May 13, 2016, Relief Defendants filed [Doc. # 224] the instant Motion.[2]

On May 19, 2016, Defendant filed a Memorandum of Law stating that he "joins the Motion to Dismiss filed by the Relief Defendants." Def. Mem. in Supp. [Doc. # 230] at 1.

### III.    Argument

####     a.    Relief Defendants' Arguments are Not Supported by *Gabelli*

Citing to *Gabelli v. S.E.C.*, 133 S. Ct. 1216 (2013), the Relief Defendants argue that the SEC is precluded from seeking disgorgement of Defendant's ill-gotten gains for conduct that

---

[2] Even were Relief Defendants permitted to move to dismiss certain claims against the Defendant, they would presumably be only those claims that occurred more than the five years prior to May 6, 2015, *and* that serve as a basis for disgorgement of ill-gotten gains held by a particular Relief Defendant. As explained *infra* at 18, the Relief Defendants fail to point to any such claims.

occurred more than five years before the complaint in this case was filed.[3]  Notably, Relief Defendants cite to no case from within the Second Circuit to support their reading of *Gabelli*. Nor could they, since the Second Circuit has already foreclosed this argument, as discussed below.

In *Gabelli*, the Supreme Court held that the five-year statute of limitations set forth in 28 U.S.C. § 2462 "begins to tick when the fraud occurs, not when it is discovered." 133 S. Ct. at 1219.  The Court held that Section 2462 applies to a "civil fine, penalty, or forfeiture," a list of remedies that are of the same kind in that they are all "*intended to punish*" wrongdoers.  *Gabelli*, 133 S. Ct. at 1223 (emphasis added) (citing *Meeker v. Lehigh Valley RR Co.*, 236 U.S. 412, 423 (1915) (the terms in Section 2462 "refer to something imposed in a punitive way")).  The Court went on to say that "[t]he SEC also sought injunctive relief and disgorgement, *claims the District Court found timely on the ground that they were not subject to § 2462*.  Those issues are not before us."  *Gabelli,* 133 S. Ct. at 1220 n.1 (emphasis added).

The Supreme Court's recognition that the remedies in Section 2462 are intended to punish wrongdoers is important because both the Supreme Court and Second Circuit have previously recognized that the purpose of disgorgement is "not to inflict punishment but to prevent an unjust enrichment." *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 399 (1940); *accord Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 352 (1998).  By depriving violators of ill-gotten gains, disgorgement "restore[s] the status quo" prior to the wrongdoing.  *S.E.C. v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 95 (2d Cir. 1978).  Put

---

[3] Although Relief Defendants' motion purports to seek "dismissal" of the claims alleging conduct that occurred more than five years before the filing of the complaint [*see, e.g.*, Doc. # 224-1 at 4], the motion argues only for dismissal of the SEC's claim for disgorgement with respect to that conduct.  The motion does not, for example, make any argument that an injunction with respect to that conduct is time-barred.  Because the Relief Defendants' arguments are limited to disgorgement, the SEC's opposition addresses only that issue.

simply, disgorgement is "remedial rather than punitive."  *S.E.C. v. Cavanagh,* 445 F.3d 105, 116, n.25 (2d Cir.2006).  It is therefore not surprising that the term "disgorgement" does not appear in the text of Section 2462.

Thus, because Section 2462 applies to those remedies that are "intended to punish" wrongdoers, *Gabelli*, 133 S. Ct. at 1223, and because disgorgement's purpose is "not to inflict punishment but to prevent an unjust enrichment," *Sheldon*, 309 U.S. at 399, and because the term disgorgement does not appear in the text of Section 2462, disgorgement is not subject to Section 2462's five year statute of limitations.  *See*, *e.g.*, *S.E.C. v. Syndicated Food Serv. Int'l, Inc.*, 04-CV-1303 NGG VLS, 2014 WL 1311442, at *25 (E.D.N.Y. Mar. 28, 2014) ("The Supreme Court in *Gabelli* noted that *unlike claims for injunctive relief and disgorgement*, claims for civil penalties are subject to the five-year statute of limitations in 28 U.S.C. § 2462, which concerns the enforcement of civil fines.) (citing *Gabelli,* 133 S. Ct. at 1220 n. 1) (emphasis added).

### b.  Relief Defendants' Arguments are Foreclosed by Second Circuit Law

Consistent with *Gabelli,* the Second Circuit has held that while Section 2462 bars SEC claims for civil penalties for violations that occurred more than five years before instituting suit, the SEC is permitted to pursue in the same action its claims for disgorgement for violations that occurred outside of five years.

For example, in *S.E.C. v. Pentagon Capital Mgmt*, 725 F.3d 279 (2d Cir. 2013), defendants engaged in unlawful late trading "between February 15, 2001 and September 3, 2003," which included trades that occurred more than five years before the SEC had filed its complaint on April 3, 2008.  *Id.* at 282-83, 287-88.  Based on Section 2462 and the Supreme Court's decision in *Gabelli*, the Second Circuit vacated and remanded the district court's imposition of civil penalties for trades that occurred "earlier than five years before the SEC

instituted its suit." *Id.* at 287.  However, the Second Circuit affirmed the district court's order

awarding disgorgement of profits from trades that occurred earlier than five years before the SEC

filed its complaint.  *Id.* at 288.

Similarly, in *S.E.C. v. Amerindo Investment Advisors*, defendants argued that Section

2462 barred the district court from granting summary judgment in favor of the SEC on certain

claims involving disgorgement, and therefore requested it reconsider its ruling in light of the

Supreme Court's decision in *Gabelli*.  *S.E.C. v. Amerindo Inv. Advisors, Inc.*, 05 CIV. 5231 RJS,

2014 WL 405339, at *9 (S.D.N.Y. Feb. 3, 2014), *aff'd sub nom. S.E.C. v. Amerindo Inv.

Advisors*, 14-2425, 2016 WL 761365 (2d Cir. Feb. 26, 2016).  The district court disagreed, and

explained that both Supreme Court and Second Circuit precedent foreclosed such an argument:

> [Defendants] specifically point to *Gabelli v. SEC*, which held that
> the SEC cannot seek civil penalties for a claim that accrued more
> than five years before the filing of the action. —— U.S. ——, 133
> S.Ct. 1216, 185 L.Ed.2d 297 (2013). This argument, however,
> misses two essential facts. First, and most importantly, the statute
> of limitations at issue in *Gabelli* applies only to civil penalties, and
> does not prevent a finding of liability or an awarding of other kinds
> of remedies. *Gabelli,* 133 S.Ct. at 1220 n. 1; *see also SEC v.
> Pentagon Capital Mgmt. PLC,* 725 F.3d 279, 288 & n. 8 (2d
> Cir.2013) (noting that disgorgement is not a penalty and allowing
> disgorgement even where civil penalties were barred by the statute
> of limitations). Therefore, because the March 11 Order and this
> decision are focused solely on the issue of liability for the
> violations, and not the appropriateness of civil penalties, *Gabelli*
> has no bearing.

*Id*. at *9.

On appeal, the defendants in *Amerindo* alleged the district court erred and, like the Relief

Defendants do in the instant case, argued that the Second Circuit should accept the holding in

*S.E.C. v. Graham,* 21 F.Supp.3d 1300 (S.D.Fla. 2014).  *See* Brief for Defendants-Appellants,

Case 14-2425, Doc. # 95 at 97-99 (July 20, 2015).  In rejecting this argument, the Second Circuit

concluded that, although the Section 2462 argument was waived, the district court "correctly

limited civil penalties" to violative conduct that occurred within Section 2462's five-year period and "properly imposed disgorgement" based on violative conduct that occurred outside of that period.  *S.E.C. v. Amerindo Inv. Advisors*, 14-2425, 2016 WL 761365, at *1 (2d Cir. Feb. 26, 2016) (summary order).

In addition to *Pentagon Capital Management* and *Amerindo*, the Second Circuit has also foreclosed the core of the Relief Defendants' argument – that disgorgement is akin to "forfeiture," which admittedly is within Section 2462's limitations period.  *See, e.g.*, Motion at 6. In *S.E.C. v. Contorinis*, 743 F.3d 296, 306-07 (2d Cir. 2014), *cert. dismissed,* 136 S. Ct. 531, 193 L. Ed. 2d 419 (2015), the Second Circuit made clear that, within the Second Circuit, forfeiture and disgorgement are not synonymous.  As the Court explained:

> …criminal forfeiture "serves no remedial purpose, is designed to punish the offender, and cannot be imposed upon innocent owners." [*United States v.* Contorinis, 692 F.3d 136,] 146 [2d. Cir. 2012)], quoting *United States v. Bajakajian,* 524 U.S. 321, 332, 118 S. Ct. 2028, 141 L.Ed.2d 314 (1998). Disgorgement, in contrast, is a civil remedy which serves the remedial purpose of preventing unjust enrichment.
>
> Thus, while both criminal forfeiture and disgorgement serve to deprive wrongdoers of their illicit gain, the two remedies reflect different characteristics and purposes—disgorgement is an equitable remedy that prevents unjust enrichment, and criminal forfeiture a statutory legal penalty imposed as punishment. *See SEC v. Lorin,* 869 F.Supp. 1117, 1121 (S.D.N.Y.1994) ("I will not label disgorgement a 'fine, penalty, or forfeiture' in light of the operation of disgorgement, which merely deprives one of wrongfully obtained proceeds"), citing *Tex. Gulf Sulphur,* 446 F.2d at 1308; *see also SEC v. Williams,* 884 F.Supp. 28, 30–31 (D.Mass.1995) (holding the same and collecting cases). One ramification in particular of this qualitative divergence between disgorgement and criminal forfeiture nullifies Contorinis's argument. As disgorgement is designed to equitably deprive those who have obtained ill-gotten gains of enrichment, it may be imposed upon innocent third parties who have received such ill-gotten funds and have no legitimate claim to them. *Cavanagh I,* 155 F.3d at 136, citing *SEC v. Colello,* 139 F.3d 674, 677 (9th Cir.

- 7 -

> 1998). That is consistent with disgorgement's remedial purpose—
> disgorgement is imposed not to punish, but to ensure illegal actions
> do not yield unwarranted enrichment even to innocent parties.

*Contorinis*, 743 F.3d at 306-07.  The Court went on to explain that "unlike disgorgement, which

is a discretionary, equitable remedy, criminal forfeiture is mandatory, and a creature of statute,"

and therefore "unlike the criminal forfeiture case, the district court's discretion in determining

disgorgement is not confined by precise contours of statutory language, but rather serves the

broader purposes of equity."  *Id.* at 307.  The Court then explicitly found:

> [T]he substantive distinctions between the liability imposed by the
> disgorgement remedy and the criminal forfeiture penalty, and the
> subsequently differing impacts on violators, reflect the diversity of
> corrective action necessary to enforce the securities regime. As
> forfeiture is punitive in nature, it would be irrational to impose it
> upon innocent third parties, whereas disgorgement's purpose—the
> prevention of unjust enrichment—would be thwarted if securities
> law violators were able to pass their illicit gains off to affiliates. To
> expect the same outcomes from legal concepts with such different
> characteristics is unrealistic, and Contorinis's efforts to analogize
> his criminal forfeiture penalty and disgorgement remedy are
> unavailing.

*Id.*.  The Second Circuit's explicit findings that disgorgement and forfeiture are not synonymous,

but rather are so distinct that they cannot even be analogized to one another, cannot be squared

with Relief Defendants' argument that "where, as here, the [SEC] seeks disgorgement that is in

the nature of forfeiture, the five-year limitations period set forth in Section 2462 applies to such

claims with equal force."  Thus, Relief Defendants' arguments are directly contrary to binding

Second Circuit law.

Notably, in their Motion, Relief Defendants do not cite to a single court decision within

the Second Circuit, much less attempt to distinguish the facts of this case from *Pentagon Capital*

*Management*, *Amerindo*, *Contorinis*, or the plethora of pre- and post-*Gabelli* district court

decisions within the Second Circuit addressing and rejecting the very arguments Relief

Defendants now put forth.[4] *See, e.g., S.E.C. v. Spongetech Delivery Sys., Inc.*, 10-CV-2031 DLI RML, 2015 WL 5793303, at *11 (E.D.N.Y. Sept. 30, 2015) ("Unlike disgorgement, civil penalties are subject to the five-year statute of limitations in 28 U.S.C. § 2462, which concerns the enforcement of civil fines.) (citing *Gabelli*, 133 S. Ct. at 1220, n. 1); *S.E.C. v. Wyly*, 56 F.Supp.3d 394, 402 (S.D.N.Y. 2014) ("Disgorgement, being an equitable remedy, is not subject to the five year statute of limitations under 28 U.S.C. § 2462"); *Amerindo Inv. Advisors Inc.*, 2014 WL 2112032 at 11 (citing *Gabelli,* 133 S. Ct. at 1220–21) (explaining that "gross pecuniary gain, *unlike disgorgement,* may consider gains only from frauds occurring within the five-year statute of limitations for civil penalties.") (emphasis added); *S.E.C. v. v. Vuono*, 13-MC-405 JFB, 2013 WL 6837568, at *6 (E.D.N.Y. Dec. 26, 2013) ("[E]quitable claims which do not constitute a civil fine, penalty, or forfeiture' are not subject to the statute of limitations contained in Section 2462.") (internal quotations omitted) (alteration in original); *S.E.C. v. Straub*, 11 CIV. 9645 RJS, 2013 WL 4399042, at *5 (S.D.N.Y. Aug. 5, 2013) ("However, even if reversal would eliminate the SEC's claim for civil penalties, the claims for disgorgement and injunctive relief would still survive."); *S.E.C. v. Power,* 525 F.Supp.2d 415, 426 (S.D.N.Y.2007) ("Disgorgement is an equitable remedy to which Section 2462 does not apply."); *S.E.C. v. DiBella*, 409 F.Supp.2d 122, 127 (D. Conn. 2006) ("Section 2462 does not preclude disgorgement actions brought by the SEC where the claim seeks to deprive[ ] one of wrongfully obtained proceeds.  [D]isgorgement merely returns the wrongdoer to the status quo before any wrongdoing had occurred.") (internal

---

[4] *SEC v. Graham*, F.Supp.3d 1300 (S.D. Fla. 2014)), the sole case interpreting *Gabelli* on which Relief Defendants rely, was recently upheld by the Eleventh Circuit.  *See S.E.C. v. Graham*, 14-13562, 2016 WL 3033605 (11th Cir. May 26, 2016).  Therein, the Eleventh Circuit explicitly departed from the Second Circuit by "agree[ing] with the district court that for the purposes of § 2462 forfeiture and disgorgement are effectively synonyms; § 2462's statute of limitations applies to disgorgement." *Id.* at *4.  This holding is not only inconsistent with *Pentagon Capital Management* and *Amerindo*, but its analysis directly contradicts *Contorinis*.  For the reasons explained *infra* at 10-15, the Court should decline to depart from clear Second Circuit precedent and follow *Graham*.

citations and quotation omitted) (alteration in original); *S.E.C. v. Lorin*, 869 F.Supp. 1117, 1122

(S.D.N.Y. 1994) ("I will not label disgorgement a 'fine, penalty, or forfeiture' in light of the

operation of disgorgement, which merely deprives one of wrongfully obtained proceeds.")

(citing *S.E.C. v. Texas Gulf Sulphur Co.,* 446 F.2d 1301, 1308 (2d Cir. 1971)).

In sum, Second Circuit authority is dispositive on the Motion. For that reason alone, the

Motion should be denied.

### c.  Disgorgement is Not Forfeiture Under Section 2462

To escape the Second Circuit's binding authority on Section 2462's inapplicability to

disgorgement, Relief Defendants argue that "forfeiture" can be "deemed to include claims

labeled as seeking 'disgorgement' where such claims essentially seek the same form of relief."

Motion at 10. In putting forth this argument, Relief Defendants rely on *S.E.C. v. Graham*, 21

F.Supp.3d 1300 (S.D.Fla. 2014), which was recently upheld by the Eleventh Circuit. *See S.E.C.

v. Graham*, 14-13562, 2016 WL 3033605 (11th Cir. May 26, 2016). It is telling that after

presumably scouring the judicial landscape over the past century, Relief Defendants have found

only one (out of circuit) case to support their argument.[5] Notwithstanding Relief Defendants'

arguments to the contrary, forfeiture and disgorgement are not synonymous.

---

[5] In *Graham,* the Eleventh Circuit not only split with the Second Circuit as explained herein, but
it also split with every other Circuit to have addressed Section 2462's (in)applicability to
disgorgement. The D.C. Circuit, which also previously considered whether disgorgement is a
"forfeiture" under Section 2462, concluded that its "binding" precedents "implicitly reject[]" the
argument that "disgorgement is a kind of forfeiture covered by § 2462." *Riordan v. S.E.C.*, 627
F.3d 1230, 1234 & n.1 (D.C. Cir. 2010). The Ninth Circuit has similarly held that "no statute of
limitations" applies to disgorgement. *S.E.C. v. Rind*, 991 F.2d 1486, 1490-93 (9th Cir. 1993).
The First Circuit has held more generally that Section 2462 does not apply to the SEC's requests
for disgorgement. *S.E.C. v. Tambone*, 550 F.3d 106, 148 (1st Cir. 2008), *reh'g en banc granted,
opinion withdrawn*, 573 F.3d 54 (1st Cir. 2009), *opinion reinstated in part on reh'g*, 597 F.3d
436 (1st Cir. 2010), *on remand*, 802 F.Supp.2d 299, 305 (D. Mass. 2011). District courts outside
of the Second Circuit have also rejected the analysis and holding in *Graham. See, e.g., S.E.C. v.
Collyard*, 11-CV-3656 (JNE/JJK), 2015 WL 8483258, at *7 (D. Minn. Dec. 9, 2015) (Declining
to follow *Graham* and noting that the decision "is something of an outlier.") (citing cases);

### i.   Background.

In the original 1933 and 1934 securities acts, Congress authorized seven express private claims and included a statute of limitations for each.  *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 359-360 (1991).  But Congress "deliberate[ly]" refrained from enacting any express statute of limitations for SEC enforcement actions.  *S.E.C. v. Rind*, 991 F.2d 1486, 1491 (9th Cir. 1993).  Section 2462 is applicable where Congress has not otherwise provided a limitations period, but only to a claim for a "civil fine, penalty, or forfeiture."  28 U.S.C. § 2462.

The direct predecessors of Section 2462 date back to 1839, and their antecedents date to the 1790s.  *3M Co. v. Browner*, 17 F.3d 1453, 1458 (D.C. Cir. 1994).  Section 2462 itself was codified in 1948 in a comprehensive revision of the Judicial Code, but any alterations were merely "changes in phraseology," and the "revised statute means only what it meant before 1948."  *Id.*  Despite its extensive history, the SEC has not found, and Relief Defendants have not offered, any case (aside from *Graham*) to support their arguments that Section 2462 is intended to reach the equitable remedy of disgorgement.

### ii.   Congress recognized that forfeiture and disgorgement were distinct.

The Congress that enacted Section 2462 understood that forfeiture and disgorgement were distinct and it drafted that provision to cover forfeiture and not disgorgement.  When Congress uses a known term of art like "forfeiture," courts interpret the term "in light of [its] history, and presume Congress intended the phrase to have the meaning generally accepted in the legal community at the time of enactment."  *Office of Workers' Comp. Programs v. Greenwich*

---

*S.E.C. v. Jones*, 1:13-CV-00163-BSJ, 2015 WL 9273934, at *6, n. 53 (D. Utah Dec. 18, 2015) ("The court finds *Graham* unpersuasive and inapplicable to the case at hand. This court's position in declining to follow *Graham* is consistent with the positions of other courts that have also considered *Graham*.") (citing cases).

*Collieries*, 512 U.S. 267, 275 (1994).  As noted above, the antecedents of Section 2462 date back to the 1790s.  *3M Co. v. Browner*, 17 F.3d 1453, 1458 (D.C. Cir. 1994).  At that time, it was well understood that forfeiture and disgorgement were distinct remedies with distinct legal foundations, procedures, and scopes, and thus Section 2462 applies to forfeiture, but not to disgorgement.

In the eighteenth century, forfeiture was a distinct remedy used to recover contraband or instrumentalities.  *See Austin v. United States*, 509 U.S. 602, 611-12 (1993); *United States v. Bajakajian*, 524 U.S. 321, 333 (1998).  Forfeiture arose from admiralty, customs law, and criminal law.  *See Bajakajian*, 524 U.S. at 329-32; *The Underwriter*, 13 F.2d 433, 433-35 (2d Cir. 1926).  By contrast, disgorgement was an equitable remedy that arose in the chancery courts. *See, e.g.*, *Cavanagh*, 445 F.3d at 116-20 (in determining whether "the remedies available at chancery in 1789 included disgorgement," the Second Circuit concluded that "chancery courts possessed the power to order equitable disgorgement in the eighteenth century" and that "contemporary federal courts are vested with the same authority").

Thus, an order for disgorgement—also known as an "accounting for profits"—is "'an equitable adjunct to an injunction'" because a district court's "authority to issue an injunction" carries with it the authority to grant "ancillary equitable relief, including equitable monetary relief." *F.T.C. v. Bronson Partners, LLC*, 654 F.3d 359, 365-66 (2d Cir. 2011) (quoting *Porter v. Warner Holding Co.*, 328 U.S. 395, 399 (1946), and discussing *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 291 (1960)).  Indeed, the Second Circuit has traced disgorgement to the "ancient remedies of accounting [for profits], constructive trust, and restitution"— but not to forfeiture.  *Cavanagh*, 445 F.3d at 119-20.  And while disgorgement was among the equitable "remedies available at chancery" in the eighteenth century (*id.* at 118-20), a "court of chancery

[was] not the proper tribunal for enforcing forfeitures." *Horsburg v. Baker*, 26 U.S. 232, 236 (1828); *accord Marshall v. City of Vicksburg*, 82 U.S. 146, 149 (1872).

Section 2462 must be interpreted in light of this history: forfeiture and disgorgement were understood to be distinct remedies, yet Section 2462 does not contain a time bar for "disgorgement," "accounting for profits," or "injunctive" relief.  Thus, by using the term "forfeiture," Congress is presumed to have intended Section 2462 to reach forfeiture but not the distinct remedy of disgorgement.  *See Greenwich*, 512 U.S. at 268.

> ### iii.   Both the Supreme Court and the Second Circuit expressly distinguish between disgorgement and forfeiture.

The Supreme Court has also distinguished between the "equitable remed[y]" of requiring a person to "disgorge" his unlawful gains and "forfeiture."  *Kaley v. United States*, 134 S. Ct. 1090, 1102 n.11 (2014).  And in a case decided soon after the direct predecessors of Section 2462 were enacted, the Supreme Court expressly distinguished between an "accounting for profits" and "forfeiture," holding that a court's equity powers included ordering the former but not the latter.  *Stevens v. Gladding*, 58 U.S. 447, 453-55 (1854).

Similarly, the Second Circuit's decision in *S.E.C. v. Contorinis*, discussed *supra* at 7-9, highlighted the "substantive distinctions" between disgorgement and forfeiture, concluding that "the two remedies reflect different characteristics and purposes" because disgorgement is an "equitable remedy that prevents unjust enrichment," while forfeiture is a "statutory legal penalty imposed as punishment."  743 F.3d at 306-07.  Disgorgement is "discretionary" and "not confined by precise contours of statutory language," while forfeiture is "mandatory, and a creature of statute," *id.* at 307; such "flexibility" and lack of "mechanical rules" are why "[t]raditionally … statutes of limitation are not controlling measures of equitable relief." *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946).  In concluding that Mr. Contorinis could be

ordered to disgorge gains from fraudulent securities trades he executed in the accounts of others,

though the relevant forfeiture statute did not apply to such gains, *see United States v. Contorinis*,

692 F.3d 136 (2d Cir. 2012), the Second Circuit emphasized that the two "legal concepts"

possess "different characteristics" and reflect the "diversity of corrective action necessary to

enforce the securities regime." *S.E.C. v. Contorinis*, 743 F.3d at 307.

<em>iv.  Disgorgement is not punitive.</em>

Finally, disgorgement is not the sort of punitive remedy that falls within the contours of

Section 2462.  Section 2462 applies to a "civil fine, penalty, or forfeiture," a list of remedies that

are, as noted above, of the same kind in that they are all "intended to punish" wrongdoers.

*Gabelli*, 133 S. Ct. at 1223 (citing *Meeker v. Lehigh Valley RR Co.*, 236 U.S. 412, 423 (1915)

(the terms in Section 2462 "refer to something imposed in a punitive way")).  Indeed, courts

have expressly recognized that forfeiture can serve a "punitive" purpose.  *Calero-Toledo v.

Pearson Yacht Leasing Co.*, 416 U.S. 663, 686 (1974); *accord Peisch v. Ware*, 8 U.S. (4 Cranch)

347, 364 (1808) (forfeiture "punishes"); *S.E.C. v. Contorinis*, 743 F.3d at 307 (forfeiture based

on securities-law violations is "punitive in nature").  By contrast, disgorgement's purpose is "not

to inflict punishment but to prevent an unjust enrichment." *Sheldon v. Metro-Goldwyn Pictures

Corp.*, 309 U.S. 390, 399 (1940); *accord Feltner v. Columbia Pictures Television, Inc.*, 523 U.S.

340, 352 (1998).

For example, civil forfeiture is punitive because it extends to property the defendant

*lawfully* acquired, *Calero-Toledo*, 416 U.S. at 684-90, whereas disgorgement is limited to *ill-

gotten gains*, *First Jersey*, 101 F.3d at 1475.  And civil forfeiture punitively reaches an entire

piece of real or personal property even if only part of that property was involved in wrongdoing,

*Calero-Toledo*, 416 U.S. at 684-90, *United States v. 141st Street Corp.*, 911 F.2d 870, 880 (2d

- 14 -

Cir. 1990), whereas disgorgement is limited to a "sum equal to the amount wrongfully obtained, rather than a requirement to replevy a specific asset" *Miller*, 808 F.3d at 635.  In short, by depriving violators of ill-gotten gains, disgorgement "restore[s] the status quo" prior to the wrongdoing.  *Commonwealth Chem.*, 574 F.2d at 95.  Disgorgement is accordingly "remedial rather than punitive."  *Cavanagh*, 445 F.3d at 116 n.25.

### d. *Graham* is Not Analogous to the Instant Case

The facts of the instant case further underscore the remedial nature of disgorgement and the inapplicability to the analysis in *Graham*.  As outlined in the SEC's Second Amended Complaint [Doc. #208], Defendant defrauded his venture capital firm, that firm's investors, and companies in which the firm invested out of more than $65 million.  As this Court is aware, he subsequently fled the United States and is now believed to be in India.  By seeking disgorgement of these sums, the SEC seeks to deprive Defendant of these ill-gotten gains, rather than allow him to enjoy the fruits of his fraud while living abroad as a fugitive of justice.  Such a remedy is plainly not punitive, but rather seeks to restore the status quo.

Moreover, this is not a case where the SEC can be accused of sitting on its hands while a statute expires.  Unlike *Graham,* where the SEC "waited more than five years to commence an action" which resulted in the dismissal of the entire case because the statute of limitations had expired on "every remedy the SEC requested," *Graham*, 2016 WL 3033605 at *1, Defendant's fraud continued until shortly before he fled the United States following the SEC's initial Complaint.  Much of the Defendant's fraud occurred in the past five years.  Allowing the Defendant to keep the millions of dollars he obtained through fraud – a fraud that he has not, to this point, disputed – because those fraudulent gains were acquired more than five years ago in his decade-long scheme would be a perverse result that could not have been envisioned or

sanctioned by Congress.  Put simply, the facts of this case illustrate the very good reason

Congress omitted "disgorgement" from Section 2462.

> e.  <u>No Claims Should Be Dismissed at this Time</u>

Even were this Court to find that Second Circuit law is not dispositive on this issue, that

disgorgement is "intended to punish" wrongdoers, *Gabelli*, 133 S. Ct. at 1223, that Congress did

not purposefully omit disgorgement from Section 2462, and that the analysis and holding in

*Graham* is persuasive, it should nonetheless decline to dismiss any claims in the Second

Amended Complaint.

<u>First</u>, as the district court in *Amerindo* noted, "even if *Gabelli* did apply" to

disgorgement, the fraud at issue "could be enough to bring all of the fraudulent activity within

the statute of limitations" because of the continuing violation doctrine.  *Amerindo*, 2014 WL

405339 at *9 (citing *Shomo v. City of N.Y.*, 579 F.3d 176, 181 (2d Cir. 2009) (describing the

continuing violation doctrine)).  The same result holds here: the continuing violation doctrine

would bring all of Defendant's fraudulent activity within the statute of limitations, since it was a

"decade-long fraud [that] employed similar and related fraudulent devices and

misrepresentations in connection with at least 10 companies in which [ ] Oak [f]unds invested."

Second Amended Complaint [Doc. # 208] at 2.  This is yet an additional reason that the Relief

Defendants' request to preclude disgorgement of Defendant's ill-gotten gains from transactions

occurring more than five years before the filing of this case should be denied.

<u>Second</u>, the fraudulent concealment doctrine would similarly prevent the statute of

limitations from expiring.  *See Gabelli*, 133 S. Ct. at 1220 n.2 (Recognizing that district court

"distinguished the discovery rule … from doctrines that toll the running of an applicable

limitations period when the defendant takes steps beyond the challenged conduct itself to conceal

that conduct from the plaintiff," but noting those doctrines were "not before" the Court).  Here, the Defendant defrauded his employer venture capital firm, that firm's investors, and companies in which the firm invested out of more than $65 million, which he placed into accounts he opened and held in his own name.  To prevent detection of this fraud, the Defendant then funneled money through various accounts and into assets and accounts held in the name of nominees, including the Relief Defendants.  This conduct evidences that Defendant's intent was to conceal his fraudulent conduct and gains from law enforcement, including the SEC, thereby tolling the statute of limitations.

    Third, Relief Defendants do not have standing to litigate any portion of the Complaint aside from, at best, those claims that form the basis of disgorgement from a particular Relief Defendant.[6]  *See, e.g., Coal. of Watershed Towns v. U.S. E.P.A.*, 552 F.3d 216, 217-18 (2d Cir. 2008 (recognizing that the three elements of Article III standing are (1) an "injury in fact" that is (2) causally related ("fairly traceable") to the challenged action and (3) likely to be redressed by a favorable court decision) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  As an initial mater, Relief Defendants are merely nominees for the Defendant, and thus the ill-gotten gains the SEC seeks to disgorge from Mr. Ahmed belong to him, not to the Relief Defendants.  As Defendant's ill-gotten gains are not theirs to claim, they have no standing to litigate whether the SEC may disgorge them.  Further, even were they not nominees, Relief

---

[6] Even if Relief Defendants have standing, and even if the Court grants their Motion, neither Relief Defendants nor the Defendant seeks to modify the Court's preliminary injunction freezing assets [Doc. # 113] to release specific assets tied to conduct occurring more than five years before this case was filed.  While any arguments about such a modification are premature, the SEC notes that a modification to the asset freeze would not necessarily follow from a five-year limitation on disgorgement, in light of the Court's prior findings that Relief Defendants are nominees of Mr. Ahmed and the SEC's request to preserve assets for prejudgment interest and civil penalties.  In any event, should the Court grant the instant Motion, and should the Relief Defendants seek to modify the asset freeze, the SEC will respond to such a motion in the ordinary course.

Defendants do not argue that any of the transactions they challenge form the basis of disgorgement against them.  Although Defendant has standing to make such arguments, he waived his ability to do so at this stage of the litigation by filing an Answer instead of a motion to dismiss by the Court ordered deadline of April 22, 2016.

**IV.    Conclusion**

As outlined herein, Relief Defendants' Motion should be denied in its entirety.

DATED: June 3, 2016.

*s/ Mark L. Williams*
Nicholas P. Heinke
Mark L. Williams
U.S. Securities and Exchange Commission
1961 Stout Street, Suite 1700
Denver, CO 80294-1961
(303) 844-1071 (Heinke)
(303) 844-1027 (Williams)
HeinkeN@sec.gov
WilliamsML@sec.gov
Attorneys for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

I certify that on June 3, 2016, a copy of the foregoing document was emailed to

Defendant Iftikar Ahmed at IftyAhmed@icloud.com, and served via ECF upon the following:

Jonathan Harris
Reid Skibell
David Deitch
Alexander Sakin
Harris, O'Brien, St. Laurent & Chaudhry LLP
111 Broadway, Suite 1502
New York, NY 10006
(Counsel for Relief Defendants).


                                        s/ *Mark L. Williams*
                                        Mark L. Williams