UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>IFTIKAR AHMED,<br><br>Defendant, and<br><br>IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents,<br><br>Relief Defendants. | Civil Action No. 3:15cv675 (JBA) |

**PLAINTIFF UNITED STATES SECURITIES AND EXCHANGE COMMISSION'S RESPONSE IN PARTIAL OPPOSITION TO RELIEF DEFENDANTS' MOTION TO <u>MODIFY THE ASSET FREEZE ORDER</u>**

Plaintiff United States Securities and Exchange Commission ("SEC") hereby files this partial opposition to Relief Defendants I-Cubed Domains, LLC, Shalini Ahmed, Shalini Ahmed 2014 Grantor Retained Annuity Trust, DIYA Holdings LLC, DIYA Real Holdings, LLC, and three minor children by and through their next friends Iftikar and Shalini Ahmed, their parents (collectively, "Relief Defendants"), motion [Doc. #225] to modify the Preliminary Injunction

freezing assets ("Second Motion for Modification"). For the reasons outlined herein, Relief Defendants' Second Motion for Modification should be granted in part, and denied in part.

## I. Introduction

Pursuant to the Court's February 19, 2016, Endorsement Order ("Order of Modification"), Ms. Ahmed was ordered to identify and liquidate within 90 days certain assets that would replenish the approximately $73,000 that have thus far been released to her. *See* Order of Modification [Doc. #195] at 2; Ex. A (Excerpt of Feb. 18, 2016, Status Conf. Tr) at 62. Rather than simply working with the SEC to identify and liquidate such assets, and then file a "status report in 90 days" on how the liquidation was effectuated (Ex. A at 62), Ms. Ahmed opts to file yet another motion requesting that this Court release to her more monies – this time over $1 million – that do not belong to her. Moreover, the vast majority of the monies Ms. Ahmed requests the Court release are not to replenish funds that have previously been released to her – the express instructions this Court gave in the Order of Modification – but rather to pay insurance premiums, hundreds of thousands of dollars in future living expenses, and a million dollars' worth of attorneys' fees. Not only is such a modification inappropriate and contrary to the Court's instructions, but Relief Defendants' appeal has divested this Court of jurisdiction to grant such a request.[1]

Consistent with the Order of Modification [Doc. #195] amending the preliminary injunction freezing assets [Doc. #113] ("Asset Freeze Order") – which remains on appeal before the Second Circuit – the Court should permit Ms. Ahmed to liquidate certain assets and deposit those proceeds into "the Fidelity account to replenish sums distributed" to Ms. Ahmed. Order of Modification [Doc. #195] at 2. Specifically, the Court should permit Ms. Ahmed to liquidate a 2012 BMW and the Aldrich Capital Partners' investment held in the name of Relief Defendant I-

---

[1] *SEC v. I-Cubed Domains, LLC, et al.*, Case No. 15-2658 (2d Cir. 2015).

Cubed Domains, LLC ("I-Cubed").  The Court should not, however, permit Ms. Ahmed to dissipate gold and other assets that do not belong to her, are already liquid, and can be used to repay the victims of Mr. Ahmed's fraud.  Nor should the Court permit Ms. Ahmed to use funds for any purpose not within this Court's Order of Modification [Doc. #195], including releasing $1 million for "professional services and attorneys' fees..."  Second Motion for Modification [Doc. #225] at 4.

## II.     Relevant Background

On May 6, 2015, the SEC filed [Doc. #2] an emergency motion for a temporary restraining order freezing assets and for a preliminary injunction continuing that asset freeze for the pendency of the litigation.  On June 12, 2015, the SEC amended its complaint [Doc. #27] and filed an Amended Motion for a Preliminary Injunction [Doc. #29].[2]  The Court subsequently ordered [Doc. #34] expedited discovery and set this matter for a preliminary injunction hearing, which took place on July 23, 2015, and July 30, 2015.  The Relief Defendants participated in the hearing, "concede[d] that the SEC c[ould] show a likelihood of success in obtaining a judgment against Mr. Ahmed, and the likelihood that the judgment it obtains will include an order of disgorgement," (Relief Defs.' Prehr'g Brief [Doc. #69] at 18), and challenged only limited portions of the Court's temporary asset freeze.  In particular, Relief Defendants sought the release of the proceeds attributable to Mr. Ahmed's October 2014 sale of shares from Relief Defendant I-Cubed to Oak and a release of funds representing the amounts Mrs. Ahmed earned during her prior employment, or, alternatively, a release of proceeds from a condominium held in the name of Relief Defendant DIYA Holdings LLC and other funds to pay millions in legal fees.  *See* Relief Defs.' Prehr'g Brief [Doc. #69] at 26-27.

---

[2] On June 16, 2015, this Court granted [Doc. #32] the SEC's motion for leave to file an Amended Complaint [Doc. #27].  The Amended Complaint was docketed on that day.  [*See* Doc. #33.]

On August 12, 2015, the Court granted [Doc. #113] the SEC's Motion for a Preliminary Injunction [Doc. #29] and entered the Asset Freeze Order. On August 19, 2015, Relief Defendants filed [Doc. #119; ECF 1][3] a Notice of Appeal of the Asset Freeze Order.

On October 17, 2015, Relief Defendants filed [Doc. #148] a motion for a limited modification of the Court's Asset Freeze Order ("First Motion for Modification"). Two days later, on October 19, 2015, Relief Defendants filed [ECF 41] their Appellant Brief seeking to overturn that same Asset Freeze Order.

On November 6, 2015, the SEC filed [Doc. #157] a Response in Opposition to Relief Defendants' First Motion for Modification, in which the SEC argued, among other things, that this Court lacked jurisdiction to consider the motion because of Relief Defendants' pending appeal. *See* SEC Resp. in Opp'n [Doc. #157] at 11-14.

On November 18, 2015, Relief Defendants filed [ECF 67-1] a motion, with the SEC's consent, requesting that the Second Circuit grant "a limited remand of [their] appeal to the district court for the purpose of adjudicating the Relief Defendants' [First Motion for Modification]." Consented Motion for Limited Remand [ECF 67-1] at 3.

On December 16, 2015, Relief Defendants requested [Doc. #167], with the SEC's consent, that this Court issue a statement that the First Motion for Modification "raise[d] a substantial issue" thereby permitting the Second Circuit to hold the appeal in abeyance and to remand jurisdiction over the Asset Freeze Order back to this Court in order to resolve the pending First Motion for Modification, pursuant to Rule 62.1(b) of the Federal Rules of Civil Procedure.

---

[3] "Doc." refers to this Court's docket. "ECF" refers to the Second Circuit docket in *SEC v. I-Cubed Domains, LLC, et al.*, Case No. 15-2658 (2d Cir. 2015).

On January 11, 2016, this Court granted [Doc. #173] Relief Defendants' Consent Motion [Doc. #167] and found that the First Motion for Modification "'raise[d] a substantial issue' as that phrase is used in Rule 62.1(b) of the Federal Rules of Civil Procedure."  Order [Doc. #173] at 3.  Two days later, the Second Circuit granted [ECF 87] Relief Defendants' Consent Motion [ECF 67-1] for Limited Remand, thereby returning jurisdiction over the Asset Freeze Order to this Court.[4]

On February 9, 2016, Relief Defendants notified this Court that the Second Circuit "granted the motion of Relief Defendants for a limited remand pursuant to Rule 12.1(b) of the Federal Rules of Appellate Procedure."  Notice [Doc. #189] at 1.

On February 18, 2016, this Court held a telephonic status conference [Doc. #193] to discuss Relief Defendants' First Motion for Modification.  The Court issued [Doc. #195] its written Order of Modification the following day, granting the First Motion for Modification, but with certain alterations.  The Court ordered the release of $8,245 per month for living expenses on the condition that Ms. Ahmed maintain records documenting her use of the funds, and the release of $40,000 to pay certain vendors who performed services associated with Mr. and Ms. Ahmed's residence in Greenwich, Connecticut.  Order of Modification [Doc. #195] at 1.  According to Relief Defendants' Second Motion for Modification [Doc. #225], approximately $73,000 has been released to date to comply with these provisions of the Order of Modification. *Id.* at 3.  The Court further ordered that the parties prepare and execute a plan for the sale of specific assets to replenish the funds so spent and to inventory the contents of certain safety deposit boxes, and that Ms. Ahmed be permitted to rent 530 Park Avenue, Unit 12F ("Unit

---

[4] On January 12, 2016, the Second Circuit denied [ECF 84] Relief Defendants' Consent Motion for Limited Remand because it had not yet been notified of this Court's Order [Doc. #173], issued one day earlier, finding that the Fist Motion for Modification "raised a substantial issue." However, on January 13, 2016, the Second Circuit vacated its previous order [ECF 84] and granted the request for limited remand.  *See* ECF 87.

12F"), "with the net proceeds from rental income deposited into the Fidelity account to pay reasonable attorneys' fees, which will be released upon application." Order of Modification [Doc. #195] at 2.

On February 23, 2016, Relief Defendants filed [ECF 92-1] a status report alerting the Second Circuit of this Court's ruling on the First Motion for Modification, and advising that their appeal of the Asset Freeze Order "should proceed." One week later, on March 1, 2016, the Second Circuit lifted [ECF 98] the stay of Relief Defendants' appeal.

On May 3, 2016, Relief Defendants first produced to the SEC a proposed lease for the rental of Unit 12F. Relief Defendants are now in the process of securing a tenant.

On May 18, 2016, Relief Defendants filed the instant Second Motion for Modification, which, among other things, requests that this Court "further modify the [A]sset [F]reeze [O]rder" to release "[a]pproximately $1,000,000 for the payment of professional services and attorneys' fees" to lawyers for Ms. Ahmed. Second Motion for Modification [Doc. #225] at 2 & 4.

### III. Inventory of Safety Deposit Boxes

On January 11, 2016, the SEC requested that the Court "order a third-party appraiser to inspect, document, and appraise the assets in three safety deposit boxes at Bank of America,"

███████████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
████████████████ .

In opposing the SEC's request, Relief Defendants responded in part that "there is nothing suspicious about Ms. Ahmed's payment of rental charges for the safe deposit boxes held by her and her husband while not knowing what is in those boxes." Relief Defs.' Post-Depo. Brief in Support of First Motion for Modification [Doc. #182] at 12, n.11.[5] The Court subsequently ordered the parties to "inventory the contents of three safety deposit boxes at Bank of America." Order of Modification [Doc. #195] at 1.

On May 2, 2016, the parties inventoried the three safety deposit boxes. They contained a large amount of gold and fine jewelry. The value of the gold likely exceeds $500,000, and consists of dozens of gold coins and at least nine 1 kg gold bars, most with markings suggesting they were purchased abroad (*e.g.*, "Dubai Duty Free"). █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

### IV. Argument

    a. <u>The Court Should Permit the Liquidation of Mr. Ahmed's BMW.</u>

As noted in the Second Motion for Modification [Doc. #225], the SEC does not object to the sale of a 2012 BMW, with the proceeds being used to replenish the funds previously distributed to Ms. Ahmed. Nor does the SEC object to the release of $442.36 from the Fidelity account ending in 7540 for the purchase of a replacement key from BMW. As an automobile, the BMW is a depreciating asset, and thus liquidating this asset now will maximize the value of

---

[5] Relief Defendants' post-deposition brief in support of the First Motion for Modification [Doc. #182] was filed under seal, but later refiled [Doc. 196] with redactions pursuant to Court Order. *See* Order on Modification. [Doc. #195] at 3.

the asset.  Moreover, the sale of the BMW will convert an illiquid asset into money, which is consistent with the Court's instructions during the telephonic status conference [Doc. #193] that resulted in the Order of Modification [Doc. #195].  According to Ms. Ahmed's previously-filed [Doc. #149] declaration, Relief Defendants' best estimate of the value of this asset (according to the Kelley Blue Book) is approximately $40,000.  *Id.* at ¶ 23.

The SEC does note, however, that the BMW is owned by, and titled in the name of, Mr. Ahmed.  Indeed, the SEC has reason to believe that the BMW was used by Mr. Ahmed during his May 2015 flight from the United States in violation of the terms of his conditions of release in a criminal insider trading case.  The BMW was located in a storage garage earlier this year.  For this reason, the Court should order the liquidation of this asset, but should explicitly note that asset belongs to Mr. Ahmed, as opposed to the Relief Defendants.  This will prevent the Defendant from later arguing that such liquidation was improper and based on misrepresentations or a misunderstanding of ownership.

      b.  <u>The Court Should Permit the Liquidation of the Aldrich Capital Partners Investment Held in I-Cubed's Name.</u>

The SEC also does not oppose the liquidation of the Aldrich Capital Partners investment, which is held in the name of Relief Defendant I-Cubed.  However, the SEC does oppose using the proceeds of that sale for any purpose other than to "replenish sums distributed" to pay Ms. Ahmed's household debts and monthly living expenses, as specified in the Order of Modification.  *See* Doc. #195 at 2.  Like the BMW, this investment is an illiquid asset, the liquidation of which is consistent with the Court's instructions during the telephonic status conference [Doc. #193] that resulted in the Order of Modification [Doc. #195].  Assuming the asset can be monetized for anywhere near the $1,000,000 purchase price (*see* SEC Opp'n to Motion for First Modification [Doc. #157] at 11), the funds generated by this liquidation will be

more than sufficient to replenish the approximately $73,000 that has previously been released, and will fund Ms. Ahmed's $8,245 in monthly living expenses far into the future.

While the Relief Defendants propose liquidating this asset, they suggest that doing so will require significant effort and refuse to do so unless they are paid all of their attorneys' fees that have been incurred in the case thus far. *See* Second Motion for Modification [Doc. #225] at 4 ("The liquidation of these assets [including the Aldrich Capital Partners investment] will require significant effort by Relief Defendants and their counsel and, as such, the Relief Defendants will only pursue the liquidation efforts … if the resulting funds may be utilized for the payment of … attorneys' fees …."). The SEC objects to this portion of Relief Defendants' request. Not only is the Court without jurisdiction to grant such a request (as more fully detailed below), but Relief Defendants have not explained what "significant effort" will be required to liquidate this investment. Should the Court authorize the liquidation of this asset, the SEC is willing and able to take the laboring oar on facilitating the liquidation. The SEC commits that it will impose on Relief Defendants and their counsel as little as possible. Any attorneys' fees incurred in the liquidation may be sought from this Court pursuant to the Order of Modification. *See* Doc. #195 at 2 ¶1(F) (making net proceeds from rental income of Unit 12F, which are anticipated to be $25,000 per month, available for "reasonable attorneys' fees").[6]

---

[6] Relief Defendants also request the Court permit the liquidation of an investment Mr. Ahmed holds with Fort Warren Capital Management. Second Motion for Modification [Doc. #225] at 3. The SEC does not oppose the liquidation of this asset in principle. However, there is no need for Relief Defendants to be involved in the liquidation, since the asset is not even titularly held in any of their names. It is inappropriate for Relief Defendants to request that *they* be paid to liquidate assets on behalf of Mr. Ahmed (s*ee id.* at 4) after this Court declined to release attorneys' fees on behalf of Mr. Ahmed. *See* Ruling on Defendant's Motion for Release of Funds [Doc. #191]. With the Court's permission, the SEC will coordinate the liquidation of this asset with Mr. Ahmed, with the resulting funds being placed into a frozen bank account. The SEC sees no reason that Relief Defendants need bear any costs related to this liquidation.

      c.   <u>The Sale of Gold is Unnecessary at this Time.</u>

Relief Defendants propose selling several gold bars, some to replenish the approximately $73,000 previously released to Ms. Ahmed and some to pay additional living expenses and attorneys' fees.  Second Motion for Modification [Doc. #225] at 2, 4 & n.3.  The SEC opposes this request.  As a threshold matter, the sale of the BMW and the Aldrich Capital Partners investment held in the name of I-Cubed would generate significant monies to replenish the funds previously distributed to Ms. Ahmed and to fund Ms. Ahmed's monthly living expenses for the foreseeable future.  For this reason alone, no additional assets need to be sold in order to comply with the Court's instructions in the Order of Modification.

In addition, gold bars are not the sort of illiquid assets that were the focus of the discussion during the telephonic status conference [Doc. #193] that resulted in the Order of Modification [Doc. #195].  During that status conference, the Court raised the issue of selling assets to replenish funds distributed to Ms. Ahmed.  *See* Ex. A at 29.  The Court focused on illiquid assets that are difficult to value and quickly monetize, such as jewelry and automobiles. *See, e.g.*, *id.* at 36 ("[I]t will, at the end of the day, … be a lot easier to be distributing if in fact there is to be a disgorgement remedy, cold hard cash, rather than having illiquid assets that would need to be reduced to a price"); *see also id.* at 29 (mentioning earrings, chandeliers, and cars); *id.* at 30 (mentioning jewelry).[7]  Gold – which has an easily discernable value and can presumably be monetized at that value – should not be considered such an illiquid asset.  *Cf. U.S. v. Day*, 700 F.3d 713, 725-26 (4th Cir. 2012) (rejecting defendant's argument that gold is not

---

[7] The SEC recognizes that the Court did mention "gold coins" during the telephonic status conference in the context of replenishing funds.  *See* Ex. A at 39, 61-62.  However, the SEC respectfully submits that, where other plainly illiquid assets exist that cannot be immediately monetized, such as the BMW and the Aldrich Capital Partners investment, those assets should be looked to first before selling a liquid asset like gold.

"funds" for purposes of criminal money laundering statute because gold falls within the "ordinary meaning of 'funds,'" which "refers to assets of monetary value that are susceptible to ready financial use"; further concluding that gold may be considered a "liquid, monetary asset"). For this additional reason, the Court should decline to authorize the sale of gold coins or gold bars, at least so long as there are other illiquid assets that may be monetized to replenish funds distributed to Ms. Ahmed.[8]

Finally, Relief Defendants have made no showing (or even representation) that the gold bars are even titularly theirs, as opposed to Mr. Ahmed's. The gold bars are all stored in safety deposit boxes at Bank of America opened in the name of Mr. and Ms. Ahmed. *See* Second Motion for Modification [Doc. #225] at 2 & 4. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Thus, as with the BMW, were the Court inclined to allow the sale of gold bars, it should explicitly note the assets belong

---

[8] The SEC recognizes that the price of gold fluctuates. According to the Wall Street Journal, the price of gold is currently approximately $1250 per ounce, and has fluctuated between approximately $1200 and $1300 per ounce over the last three months. *See* Wall Street Journal – Gold Futures Index, *available at* http://quotes.wsj.com/futures/GOLD?mod=mdc_cmd_dtabnk (last visited June 6, 2016). To the extent Defendant or Relief Defendants wish to sell gold bars to preserve the value of the asset in the face of declining prices – a request that is not currently before the Court – the SEC would not necessarily oppose such a request, with the proceeds to be deposited into a frozen bank account.

to Mr. Ahmed to prevent the Defendant from arguing in the future that such liquidation was improper and based on misrepresentations of ownership.

> d. The Court Should Not Release Additional Funds Beyond Those Necessary to Replenish the Funds Previously Released to Ms. Ahmed.

The Court's Order was clear: within 90 days the Relief Defendants were to "prepare and execute a plan for the sale of specific assets, including non-liquid assets, … which proceeds shall be deposited in the Fidelity account to replenish sums distributed" to Ms. Ahmed for living expenses and household debts. Order of Modification [Doc. #195] at 2.  The instant Motion strays far afield of this Order.  Rather than simply identify assets to be sold to "replenish" funds released to Ms. Ahmed, the Relief Defendants ignore the Court's explicit language and simply re-ask the Court to release more than $1 million of frozen assets for the payment of living expenses and attorneys' fees.[9]  This request, which essentially asks (with no articulated basis) the Court to reconsider its recent ruling in the Order of Modification, should be denied.  Indeed, as Relief Defendants' should know, their appeal has divested this Court of jurisdiction to grant this request.

> i. *The Court Has Already Determined the Appropriate Amount of Funds to Release for Attorneys' Fees and Relief Defendants Provide No Basis to Revisit this Ruling.*

Relief Defendants have already sought – and the Court has already ordered – the release of attorney's fees.  As noted above, in October 2015, Relief Defendants filed their First Motion

---

[9] The instant Motion also requests the release of approximately $50,000 to pay insurance premiums on Ms. Ahmed's home in Greenwich, Connecticut.  Second Motion for Modification [Doc. #225] at 4.  However, during the telephonic status conference held on May 27, 2016, Relief Defendants indicated they were in the process of retaining a new home insurance quote.  On June 2, 2016, Relief Defendants contacted the SEC with a revised home insurance quote.  The SEC did not object to this new quote.  *See* Mot. for Release of Funds for Payment of Home Insurance Premiums [Doc. #243].  For this reason, the SEC respectfully requests the Court deny as moot Relief Defendants' request for the release of $50,000 for home insurance premiums made in the instant Motion.

to Modify the Court's asset freeze. [*See* Doc. #148.] In that motion and accompanying papers, Relief Defendants sought funds for Ms. Ahmed's monthly living expenses, as well as more than $600,000 to pay for attorneys' fees that had been incurred to that point. *See, e.g.*, Decl. of S. Ahmed [Doc. #149] at ¶ 15. Following extensive briefing on this motion [*see* Docs. ##157 & 160], additional discovery and a deposition regarding Ms. Ahmed's financial situation, additional briefing following that deposition [*see* Docs. ##176 & 182], and a two-hour status conference on February 18, 2016 [*see* Doc. #193], this Court made a thorough ruling on Relief Defendants' requests. Among other things, the Court granted Ms. Ahmed's request for $8,245 per month for living expenses. *See* Ex. A at 20-21. With respect to attorneys' fees, after substantial discussion at the status conference, the Court denied Relief Defendants' request for an immediate release of funds to pay accumulated attorney's fees. Instead, in its Order of Modification, the Court ruled that the net rental proceeds from Unit 12F were to be used "to pay reasonable attorneys' fees, which will be released upon application." Order of Modification [Doc. #195 ] at 2 ¶ 1(F).[10]

Less than three months after the Court's ruling, Relief Defendants again seek the immediate release of funds – this time in the amount of $1 million – for the payment of what appears to be all the accumulated legal fees in this case.[11] Second Motion for Modification [Doc. #225] at 4. Notably, Relief Defendants make no effort to identify any changed circumstance that would suggest the Court should reconsider its recent ruling. Indeed, the only purported

---

[10] In addition, the Court previously ordered, with the consent of the SEC, the release of approximately $200,000 for the payment of Ms. Ahmed's legal fees in her pending criminal matter. *See* Doc. #165.

[11] [redacted]

justification Relief Defendants offer for their request for $1 million in legal fees is that the future liquidation of certain assets – the Fort Warren investment, the Aldrich Capital Partners investment, and seven gold bars – would require such extensive efforts that the Relief Defendants "will only pursue the liquidation efforts" if they are paid $1 million in attorneys' fees. Second Motion for Modification [Doc. #225] at 4. This argument should be rejected.

The SEC has consented to the liquidation of two assets – the BMW and the Aldrich Capital Partners investment – that would more than provide for the replenishment of funds released to Ms. Ahmed for payment of household debts and living expenses. Moreover, as noted above, the SEC is willing and able to take the laboring oar on the liquidation of the Aldrich Capital Partners investment, as well as the BMW. Relief Defendants' efforts in the liquidation of these two assets should be minimal, and certainly would not require the release of $1 million in accumulated attorneys' fees. Similarly, and as also noted above, Relief Defendants need play no part in the liquidation of the Fort Warren Capital Management investment, since that investment is in Mr. Ahmed's name. That leaves only the sale of seven bars of gold. Even if the Court were inclined to permit the liquidation of those assets at this juncture – which the SEC opposes, for the reasons stated above – Relief Defendants have not offered, nor can the SEC envision, any argument that selling seven bars of gold is such a burdensome endeavor as to require the release of $1 million in attorneys' fees to justify it. Finally, the SEC notes that Relief Defendants have made no showing (to the SEC's knowledge) as to the reasonableness of the rates or hours charged in response to the concerns articulated by this Court during the February 18, 2016 telephonic status conference that led to the Order of Modification. *See* Ex. A at 45. Rather than provide any justification for their prior fees, or how the fees have substantially increased over the past few months despite the SEC having not served any discovery on any

Relief Defendant, they simply ask the Court to release $1 million of assets to pay attorneys' fees. The Court should decline to do so.

In short, Relief Defendants' request that the Court reconsider its prior ruling on the immediate release of all accumulated attorneys' fees should be denied. The proceeds of any liquidation should only be used to "replenish sums distributed" to Ms. Ahmed for payment of household debts and monthly living expenses. Order of Modification [Doc. #195] at 2.[12]

> ii. *The Court Does Not have Jurisdiction to Modify the Asset Freeze Order.*

Not only is Relief Defendants' request for reconsideration improper, but the Court lacks jurisdiction to grant it. Relief Defendants' appeal of the Asset Freeze Order is currently pending before the Second Circuit. This Court is therefore without jurisdiction to modify the Asset Freeze Order, except to "preserve the status quo where, in its sound discretion, the court deems the circumstances to justify." *Ideal Toy Corp. v. Sayco Doll Corp.*, 302 F.2d 623, 625 (2d Cir. 1962). Here, Relief Defendants' request for $1 million in attorneys' fees will not maintain the status quo, rather it will alter the Asset Freeze Order, which was specifically modified to permit the rental of Unit 12F with the net proceeds from rental income deposited into the Fidelity account to pay reasonable attorneys' fees, to be released upon application. *See* Order of Modification [Doc. #195] at 2. Thus, as explained in detail below, the Court is without jurisdiction to grant Relief Defendants' request.

Following the preliminary injunction hearing, Relief Defendants "requested $2.5 million for legal fees." Relief Defs.' Post Hearing Brief [Doc. #96] at 13. In entering [Doc. #113] the

---

[12] Should the Court be inclined to release additional funds for items beyond replenishing funds distributed to Ms. Ahmed, the SEC submits that, for the reasons stated above, the assets sold should not be easily monetizable gold bars. Rather, the SEC submits that there are other less liquid assets – ███████████████████ ███████ – that should be the source of any such funds.

Asset Freeze Order, the Court denied Relief Defendants' request. Relief Defendants subsequently filed [Doc. #148] their First Motion for Modification, wherein they sought "$736,004.84 for unpaid outstanding liabilities, including legal fees." Relief Defs' Mem. in Supp. of Motion for Modification [Doc. #148] at 8. As outlined in the SEC's opposition brief [Doc. #157], the SEC argued, among other things, that this Court lacked jurisdiction to consider the motion because of Relief Defendants' pending appeal. *Id*. at 11-14.[13] The Second Circuit subsequently stayed appellate proceedings and remanded [ECF 87] jurisdiction over the Asset Freeze Order to this Court, which then granted [Doc. #195] Relief Defendants' motion with modifications. Specifically, the Court ordered the rental of Unit 12F "with the net proceeds from rental income deposited into the Fidelity account to pay reasonable attorneys' fees, which will be released upon application." *Id.* at 2. Following that modification, Relief Defendants continued to pursue their appeal. *See* ECF 92-1. The Second Circuit therefore lifted its stay of appellate proceedings and retook jurisdiction over the subject of the appeal (*i.e.*, the Asset Freeze Order). *See* ECF 98.

Relief Defendants now request that this Court release $1 million to their attorneys. Thus, through the instant Second Motion for Modification [Doc. #225], Relief Defendants do nothing more than ask for reconsideration of this Court's prior ruling on the issue of attorneys' fees.

Rule 62(c) of the Federal Rules of Civil Procedure provides a district court with jurisdiction over an injunction on appeal in only limited exceptions, and "has been narrowly interpreted to allow district courts to grant only such relief as may be necessary to preserve the status quo pending an appeal where the consent of the court of appeals has not been obtained."

---

[13] The SEC incorporates herein its prior arguments (*see* SEC Resp. in Opp'n to First Motion for Modification [Doc. #157] at 11-14) that, because of Relief Defendants' pending appeal, this Court was without jurisdiction to modify the Asset Freeze Order prior to the Second Circuit remanding jurisdiction back to this Court.

*Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. E. Air Lines, Inc.*, 847 F.2d 1014, 1018 (2d Cir. 1988); *see also Sayco Doll Corp.*, 302 F.2d at 625.  Thus, under the Second Circuit's *Sayco* doctrine, once an injunction has been appealed the district court lacks jurisdiction "to tamper in any way with the order then on interlocutory appeal other than to issue orders designed to preserve the status quo of the case as it sat before the court of appeals." *State of New York v. Nuclear Regulatory Com'n,* 550 F.2d 745, 758 (2nd Cir. 1977).

The facts of *Nuclear Regulatory Comm'n* are analogous to Relief Defendants' instant Second Motion for Modification, which by their own admission seeks to "further modify" the Asset Freeze Order.  Second Motion for Modification [Doc. #225] at 1.  In *Nuclear Regulatory Comm'n*, appellants sought a preliminary injunction in the district court that was subsequently denied.  Appellants appealed the denial of the injunction and, while the appeal was pending, again moved for a similar preliminary injunction before the district court.  The Second Circuit found that appellant's "new motion [in the district court] for a preliminary injunction was little more than a poorly disguised effort to reopen and reargue the earlier unsuccessful motion" that was on appeal.  *Id.* at 758.  The Second Circuit specifically found that the district court was without jurisdiction to grant the requested relief while the appeal was pending:

> It is obvious, of course, that if on the basis of the new evidence [the district court] had reconsidered [its] denial of the original motion and granted the preliminary relief appellant was again seeking, the judge would have acted in contravention of our holding in *Sayco* and would have accomplished precisely what *Sayco* intended to prevent destruction, rather than preservation of the posture of the case as it sat before the court of appeals.

*Id.* at 758-59.

Relief Defendants do not even attempt to conceal that they are seeking modification of the very Court Order that they are simultaneously appealing, nor can they deny that this Court

- 17 -

already rejected their identical request in previously modifying the Asset Freeze Order. Thus, in light of the foregoing authority, this Court is without jurisdiction to grant Relief Defendants' Second Motion for Modification because the relief they request is beyond the ambit of Rule 62(c), and unlike their First Motion for Modification, the Second Circuit has not remanded to this Court jurisdiction over the Asset Freeze Order.

      e.  <u>The Court Should Not Seal the Court Ordered Inventory of Safety Deposit Boxes.</u>

Relief Defendants also move to seal the reports of the inventories of the three Bank of America safety deposit boxes – attached as exhibits to their Second Motion for Modification [Doc. #225] – because they "contain personal and confidential information about the Relief Defendants' property and represent 'documents or information provided by Relief Defendant Shalini Ahmed in connection with her … deposition.'" Motion to Seal [Doc. #226]. at 3. The Court should deny this request.

As a threshold matter, the inventory reports do not "contain personal and confidential information about the Relief Defendants' property" (*Id*.), as these assets do not belong to the Relief Defendants. Indeed, as noted above, Ms. Ahmed was unable to explain what was held within the three safety deposit boxes, and has not made an ownership claim to any asset contained therein (which, in part, led this Court to release to her a monthly stipend). It would be troubling were Ms. Ahmed to now claim that she owns millions in gold and jewelry found in the safety deposit boxes. Regardless, there is no reason an inventory of assets should be treated as confidential, especially when the existence of the safety deposit boxes is within the public record. *See* Order of Modification [Doc. #195] at 1 (ordering the parties to "inventory the contents of three safety deposit boxes at Bank of America."). Moreover, the description and

location of recovered assets should not be kept from the public, especially Mr. Ahmed's victims, who have an interest (and likely a right) in being informed of such assets.

Moreover, Ms. Ahmed's claim that these inventories constitute "documents or information provided by Relief Defendant Shalini Ahmed in connection with her … deposition" (*Id*.) is inaccurate.  The three inventory reports were created by Bank of America, not Ms. Ahmed.  Moreover, aside from Ms. Ahmed's own public disclosure (in her Second Motion to Modify) that her deposition testimony included questions on the contents of the three safety deposit boxes, the three inventory reports in no way touch on Ms. Ahmed's testimony or disclose anything she has stated (or that she even testified on the topic).  The Court should not permit Ms. Ahmed to seal records simply because she publicly discloses that she provided testimony on the subject.

## V. Conclusion

For the reasons outlined herein, Relief Defendants' Second Motion for Modification should be granted in part, and denied in part.


DATED: June 8, 2016.

>*s/ Mark L. Williams*
>Nicholas P. Heinke
>Mark L. Williams
>U.S. Securities and Exchange Commission
>1961 Stout Street, Suite 1700
>Denver, CO 80294-1961
>(303) 844-1071 (Heinke)
>(303) 844-1027 (Williams)
>HeinkeN@sec.gov
>WilliamsML@sec.gov
>Attorneys for Plaintiff

CERTIFICATE OF SERVICE

I certify that on June 8, 2106, a copy of the foregoing document was emailed to

Defendant Iftikar Ahmed at IftyAhmed@icloud.com, and served via ECF upon the following:

Jonathan Harris
Reid Skibell
David Deitch
Alexander Sakin
Harris, O'Brien, St. Laurent & Chaudhry LLP
111 Broadway, Suite 1502
New York, NY 10006
(Counsel for Relief Defendants).

                                                  s/ *Mark L. Williams*
                                                  Mark L. Williams