# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> IFTIKAR AHMED, <br><br> Defendant, and <br><br> IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents, <br><br> Relief Defendants. | Civil Action No. 3:15-cv-675 (JBA) |

## DEFENDANT'S NOTICE OF TRANSCRIPT OF MOTION HEARING OF JUNE 29TH 2016 IN FRONT OF HONORABLE ALLISON D. BURROUGHTS, UNITED STATES DISTRICT JUDGE

Defendant Iftikar Ahmed respectfully notifies this esteemed Court that on June 29th, 2016, there was a Motion Hearing in the Case Number Civil Action No. 15-cv-13042-ADB in the District of Massachusetts.   Because the discussions and the pertinent decisions on that civil

matter may be similar and relevant to this esteemed Court's decision on the pending Motion for

Full Access to Investigative File (Document #237) and the Motion for Protective Order and

Motion to Quash Notice of Deposition (Document #238), the Defendant humbly files this instant

Notice to this esteemed Court.

      With the assumed leniency of the esteemed Court, the Defendant humbly and respectfully

wishes to draw the attention of the Learned Honorable Court to the following salient and

germane points from the attached hearings.

      1.    Throughout its response in opposition to the Motion for Protective Order and

Motion to Quash Notice of Deposition (Document #253), the Plaintiff repeatedly asserts that the

erstwhile counsel to the Defendant withdrew from this civil matter in front of this esteemed

Court because of the Defendant's unwillingness to return to the United States.   As the erstwhile

counsel has clearly established in these transcripts, that is absolutely not the case and the

counsels' decision and motion to withdraw was based solely on economic reasons of undue

financial hardship as a result of the denial of funds by this esteemed Court to mount a proper and

rigorous defense by the Defendant's counsel.    The Defendant is not qualified to understand the

proper classification of such a flagrant misrepresentation of facts to an esteemed Court of Law,

but in many parts of the civilized world, this would indeed simply be recognized as perjury.

      2.    In the same response, the Plaintiff outright rubbishes the Defendant's sincere and

circumstantially forced offer to be deposed via Skype or any other viable videoconferencing

technology; yet the same Plaintiff correctly and willingly accepts not just the use of video

conferencing technologies but potentially even travel to India to depose the Defendant as is

established by the attached transcript.

3.     In the same response mentioned above, the Plaintiff states *"[R]equiring defendants to take plaintiffs deposition by remote means would in fact place them at a disadvantage by not allowing defense counsel to adequately observe plaintiff's demeanor to prepare for trial"* (Line 4 of Page 11 of Document #253).    Yet even a very perfunctory reading of the transcripts of the said Motion Hearing establishes, beyond any iota of doubt, that the Plaintiff's strategy has been to, first, pauperize the Defendant; then, to engineer a Machiavellian forced withdrawal of the erstwhile Counsel to the Defendant who is unable to afford legal representation which in it of itself is a universal basic human right; and thus, finally, achieve its sinister goal of a default judgment; while all along deceptively claiming the honorable cover of "preparations for a trial" to deny the Defendant every shred of human dignity and human rights, thus crushing the Defendant's ability to put up any semblance of a legal fight to survive – much like the stories of innocent victims of today's contemporaneous evil that sadly permeates global media every day who are accused by their perpetrators but denied any rights at all.

The Defendant thus provides this instant Notice to this Honorable Court.

Respectfully Submitted,

Dated:         August 02nd, 2016              /s/ Iftikar Ahmed

_____
Iftikar A. Ahmed
C/O Advocate Anil Sharma
10 Government Place East, Ground Floor
Behind Kanpur Leather House
Kolkata 700069, India
Tel: +91.98.30.089.945
Email: iftyahmed@icloud.com
*Pro Se*

## CERTIFICATE OF SERVICE

       I hereby certify that a copy of the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and served by electronic mail to:

Nicholas P. Heinke
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1071
Email: heinken@sec.gov

Mark L. Williams
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1027
Email: williamsml@sec.gov

Alexander Sakin
Harris, St. Laurent & Chaudhry LLP
40 Wall Street, 53rd Floor
New York, NY 10005
(646) 461-2279
Fax: (212) 202-6206
Email: asakin@sc-harris.com

David B. Deitch
Harris, St. Laurent & Chaudhry LLP VA
1818 Library Street, Suite 500
Reston, VA 20190
(703) 956-3549
Fax: (703) 935-0349
Email: ddeitch@sc-harris.com

Jonathan Harris
Harris, St. Laurent & Chaudhry LLP
40 Wall Street, 53rd Floor
New York, NY 10005
(646) 395-3481
Fax: (212) 202-6206
Email: jon@sc-harris.com

L. Reid Skibell
Harris, St. Laurent & Chaudhry LLP
40 Wall Street, 53rd Floor
New York, NY 10005
(917) 512-9466
Fax: (212) 202-6206
Email: rskibell@sc-harris.com

Priya Chaudhry
Harris, St. Laurent & Chaudhry LLP
40 Wall Street, 53rd Floor
New York, NY 10005
(212) 785-5550
Fax: (212) 202-6206
Email: priya@sc-harris.com

Steven Gabriel Hayes Williams
Harris, St. Lauren & Chaudhry LLP
40 Wall Street, 53rd Floor
New York, NY 10005
(212) 397-3370
Fax: (212) 202-6206
Email: ghayeswilliams@sc-harris.com

Kristen Luise Zaehringer
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5406
Fax: (860) 240-5758
Email: kzaehringer@murthalaw.com

Paul E. Knag
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5400
Fax: (203) 653-5444
Email: pknag@murthalaw.com

Dated:        August 02nd, 2016        /s/ Iftikar Ahmed
                                          _____
                                          Iftikar A. Ahmed
                                          C/O Advocate Anil Sharma
                                          10 Government Place East, Ground Floor
                                          Behind Kanpur Leather House
                                          Kolkata 700069, India
                                          Tel: +91.98.30.089.945
                                          Email: iftyahmed@icloud.com

                                          *Pro Se*

EXHIBIT 1

```
 1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
 2
        * * * * * * * * * * * * * *
 3      UNITED STATES SECURITIES      *
        AND EXCHANGE COMMISSION        *
 4             Plaintiff,              *
                                       *
 5               vs.                   *        CIVIL ACTION
                                       *        No. 15-13042-ADB
 6      AMIT KANODIA, et al            *
                Defendants.            *
 7      * * * * * * * * * * * * * *

 8             BEFORE THE HONORABLE ALLISON D. BURROUGHS
                    UNITED STATES DISTRICT JUDGE
 9                      MOTION HEARING

10

11      A P P E A R A N C E S

12             U.S. SECURITIES AND EXCHANGE COMMISSION
               Byron G. Rogers Federal Building
13             1961 Stout Street, Suite 1700
               Denver, Colorado 80294
14             for the plaintiff
               By:  Mark L. Williams, Esq.
15

16             BROWN RUDNICK LLP
               7 Times Square
17             New York, New York 10036
               for the defendants
18             By:  Alex Lipman, Esq.
                    Ashley L. Baynham, Esq.
19                  Jessica T. Lu, Esq.

20

21                                   Courtroom No. 17
                                     John J. Moakley Courthouse
22                                   1 Courthouse Way
                                     Boston, Massachusetts 02210
23                                   June 29, 2016
                                     3:50 p.m.
24

25
```

APPEARANCES, CONTINUED


            MARTIN G. WEINBERG, PC
            20 Park Plaza, Suite 1000
            Boston, Massachusetts 02116
            for the defendants
            By: Martin G. Weinberg, Esq.


            UNITED STATES ATTORNEY'S OFFICE
            1 Courthouse Way, Suite 9200
            Boston, Massachusetts 02210
            for the intervenor U.S. Attorney's Office
            By: Sarah E. Walters, AUSA


                    CAROL LYNN SCOTT, CSR, RMR
                     Official Court Reporter
                    One Courthouse Way, Suite 7204
                    Boston, Massachusetts 02210
                        (617) 330-1377

1 <u>**P R O C E E D I N G S**</u>

2    **THE CLERK:**  This is civil action 15-13042, *SEC*

3 *versus Kanodia*.  Will counsel identify themselves for the

4 record.

5    **MR. WILLIAMS:**  Good afternoon, Your Honor.

6 Mark Williams on behalf of the Securities and Exchange

7 Commission.

8    **MR. WEINBERG:**  Good afternoon, Your Honor.

9 Martin Weinberg on behalf of Amit Kanodia and the Lincoln

10 Charitable Foundation.

11    **MR. LIPMAN:**  Good afternoon, Your Honor.  Alex

12 Lipman for Mr. Ahmed and with me are Ashley Baynham and

13 Jessica Lu.

14    **THE COURT:**  All right.  I really don't want to

15 let you out of this case.

16    **MR. LIPMAN:**  Well, Your Honor, it would be

17 quite a hardship for us to stay in and that's the truth.  We

18 have spent enormous amounts in time and resources.

19    **THE COURT:**  Why?  Nothing has happened.

20    **MR. LIPMAN:**  Well, Your Honor, let me -- I

21 think -- as you can imagine, I've prepared an entire speech

22 and I will try not to abuse the privilege of addressing you

23 but let me just tell you a little bit of how we got here and

24 I think that that's relevant to all of the issues that are

25 before you today.

1        We got here because I got a call from a friend of

2   mine who represented Mr. Ahmed's wife who said to me I

3   represent a woman with three young kids whose husband has

4   become a fugitive, can you help me out, because all of their

5   assets have been frozen and it's a mess.  And I said, Well,

6   if all their assets have become frozen, you know my

7   situation.  I can't, this is not a pro bono client.  And she

8   said, well, the assets are frozen in Connecticut.  There is

9   an opportunity there to potentially get them released and we

10  can make an application, et cetera.

11       So we briefed all that and did all of that.  And we

12  told the Court in Connecticut that we were going to make an

13  appearance for a limited purpose to see if we can get money

14  released so we can represent them and if not, we would have

15  to get out.

16       And the reason we make an appearance here too is

17  because while that was pending we wanted to keep things at a

18  status quo level so that if the money is released, nothing

19  irreversible has happened.

20       When the judge in Connecticut ruled that, against

21  us and denied our motion for fees, we didn't immediately ask

22  to be relieved because by that time we started having

23  conversation with the U.S. Attorney's Office about whether

24  it would make sense for me to go to India and see Mr. Ahmed

25  in person and in order to facilitate his return.

1          Now, as the Court is aware, I think, Mr. Ahmed went

2     to India.  When he was in India he went to the U.S.

3     Consulate and asked for a passport.  This was within days of

4     arriving there.  They gave him a passport which is a

5     surprise.  But with that passport he went to whatever local

6     office in India there is to get a stamp so he could go out

7     of the country.  He was then arrested, put in jail for 61

8     days and he is now without travel documents in India.  He

9     can't leave.

10             **THE COURT:**  That is a self-inflicted wound.

11             **MR. LIPMAN:**  Your Honor, undoubtedly, but at

12     this point it is what it is and he did try to come back.  By

13     the way, I've had conversations with the U.S. Attorney's

14     Office and my understanding, my understanding is that their

15     understanding of the facts is the same as mine, meaning that

16     he did go to the Consulate.  He got an American passport

17     with the intention of coming back and was arrested and so

18     now things are happening (ph.).

19          Now, when we got to the point and I, we had, I had

20     a conversation with the U.S. Attorney's Office, we had

21     gotten on the same page that would make sense for me to go

22     to India because I have never met the man and I wanted to go

23     and understand why it's taking so long and what needs to be

24     done and also just to see him face-to-face and get -- make a

25     judgment about whether it makes sense for us to stay in the

1    case.

2          Now, the SEC has said in the papers that the reason

3    I'm withdrawing is because I have made a determination that

4    he is not coming back.  No, I have not made any such

5    determination as far as -- nothing has changed as far as I'm

6    concerned.  I don't have a reason to believe that he decided

7    to stay there.  But what happened was I asked the SEC if

8    they would consent to release of funds to allow me to go to

9    India and see if I can make things go.  They said no.

10          I then had a conversation with Mr. Gallagher of the

11    U.S. Attorney's Office here and I said to him, "Look, can't

12    you talk to the SEC, this is crazy.  It's $35,000 and what

13    are we doing?"

14          And he said, I can't.  Their concern is that you're

15    going to, if you come back and bring him back -- the judge

16    in Connecticut did not deny me completely.  She said that

17    it's denied but I can reapply essentially if he comes back

18    because then his Sixth Amendment rights are going to be

19    different.

20          I said can't you prevail on the SEC and help me out

21    here and he said their concern is that if you bring him

22    back, you're going to be in the case, you're going to fight

23    them and they don't want that.  I said I'm not going to lie

24    to you, if he comes back, I will fight them because I think

25    that their Complaint is defective in a number of ways.  You,

1    Mr. Gallagher, have a different set of tools.  You have mail

2    fraud, wire fraud, I think you are in pretty good shape.

3           The SEC on the other hand has the securities laws

4    and there are bells and whistles and I'm not sure that they

5    can satisfy all of them.  That was the conversation we had.

6           After that we were going to have a hearing -- bless

7    you, Your Honor.  We were going to have a hearing before

8    Judge Arterton about, on the motion to -- it was pre-motion

9    to dismiss.  We had a hearing and the judge said to me,

10   essentially in words of substance, "Mr. Lipman, why are you

11   still here?"  And I told her what I just, essentially what I

12   just told Your Honor and I said to her that I had emailed

13   the U.S. Attorney's Office to ask them what position they

14   would take if we made an application and the judge said you

15   may not make an application.

16          I then, now, I then had, if I recall correctly, I

17   had further conversations with the government and my concern

18   was at the time that -- and the judge said two things.  You

19   need to make an application but I want from him an affidavit

20   that he's indigent and that he wants to come back, okay.

21          Now, in the face of the SEC's opposition I wanted,

22   I was hoping that the U.S. Attorney's Office would say they

23   consent because that would make it then -- that would make a

24   difference to me.  Among other things, I was asking for

25   $35,000 and litigating that, spending $25,000 to make

1    $35,000 on top of the $700,000 we already spent made no

2    sense to me or my partners.  Okay.

3           So I kind of, I waited for them to reply and they

4    came back and said we're not a party to this lawsuit.  We're

5    going to take no position.  At that point I had conversation

6    with George Vien who is our local counsel.  Unfortunately he

7    couldn't be here today.  And I was, like, George, you know,

8    I've got to tell you, this doesn't make sense.  I'm not

9    doing this.

10          In the meantime the U.S. Attorney's Office had said

11   to us that if he came back, they had charged his wife in the

12   Complaint and that if he didn't come back, they might indict

13   her, but if he did come back, they might think about it

14   differently.

15          So now you can understand the pressure.  Remember

16   how I got into this case?  So now with all that I get a call

17   from George who got a call from the wife's local counsel

18   here and he says let's, let's get on the phone with Neil

19   Gallagher and let's see if we can figure this out.  I get on

20   the phone with Mr. Gallagher and we all understand at this

21   point that I can't afford to stay in the case but here's the

22   conversation that we have.

23          He says -- I said, "Look, we'll agree, it makes

24   sense for me to go.  Again, can't you ask, prevail on the

25   SEC to do the right thing here?"

1          And he says, "Alex, I cannot do that because they

2   want you to withdraw from the case."

3          And I said, "Okay.  Well, I guess I know what I

4   need to do and I have to get out of the case anyway, so I

5   guess that's what we're going to have to do."

6          I then hang up with him with the understanding, and

7   I have to say with the understanding that I was going to do

8   that, but when I hung up I started thinking about it.  And I

9   thought I had an ethical and moral problem; right?  I was

10  going to accept $35,000 on the condition that I was

11  withdrawing from the case to go to India to try to

12  facilitate the guy's return here.  And if he did come back

13  here, I would have no ability to go and ask for more money

14  and, so what am I doing?  It's just, you put me in a very

15  difficult spot and I actually, I had multiple conversations

16  with all sorts of friends and some of whom said, well, you

17  know, unless you promise them that you are not going to

18  make, you know, a subsequent appearance anyway, why don't

19  you just do it.  That's not -- that didn't, that's not

20  right.

21          Anyway, so where we ended up is they wanted, the

22  government continued to press me for making an application.

23  I was demuring because I was very uncomfortable with the

24  whole thing.  And then eventually, once again through

25  George, through the wife's local counsel I got a message

1    that no, no, no, no, you completely misunderstood.

2         I, by the way, have an email to Mr. Gallagher where

3    in response to his, one of the times where he said to me,

4    "Alex, are you filing or not filing," I have an email to him

5    that said, "My understanding was that as a condition I have

6    to withdraw so I'm trying to figure that out." Okay. No

7    response from him by the way saying, "Oh, you

8    misunderstood."

9         But now we have a conversation in which someone

10   says to me, "Okay, you misunderstood." I'm like, Okay, I

11   misunderstood. We've prepared an application. We sent it

12   to the government, because they wanted to see what we were

13   going to say about their position. It comes back to us with

14   they're not consenting. What they're saying is that they --

15   what were the magic words?

16        **MS. BAYNHAM:** They're supportive.

17        **MR. LIPMAN:** They're supportive of our

18   application but as far as the SEC is concerned, we're on our

19   own. We should go to them and ask them on our own. You

20   know, once again, we're nowhere.

21        So, I have to say I've never been in a case, and I

22   don't know whether I should take this as a compliment or

23   not, where the government wanted me out of the case as a

24   specific condition to doing something for my client. I

25   mean, if that's the case, then frankly I have an ethical

1    obligation I think to withdraw just for that reason.

2            And what follows from all this and where I'm

3    going -- and I'm done with my soliloquy, I promise.  What

4    follows from all this is that we really do need to withdraw

5    for financial reasons because it is a hardship on us to stay

6    in but --

7            **THE COURT:**  Well, all right.  Let's just

8    address that point.  You have three lawyers here from New

9    York when you have --

10            **MR. LIPMAN:**  No, not three from New York.  We

11    have one lawyer from Boston who is here to chaperone us

12    because we're pro hac and you have two lawyers from New

13    York.  And the reason --

14            **THE COURT:**  You have a Boston office.

15            **MR. LIPMAN:**  We do.

16            **THE COURT:**  You are paying a lot of lawyers.

17    You're paying Mr. Vien.  I could keep you in and you could

18    pare down this defense until Mr. Ahmed shows up and it

19    becomes necessary for him to have a more robust defense

20    team.

21        Is Mr. Vien intending on entering an appearance?

22            **MR. LIPMAN:**  I don't think so.  I don't think

23    he intended to make an appearance in the civil case.

24            **THE COURT:**  How about Ms. Lu?  This would be

25    an excellent opportunity for her to come in and get in-court

 1   experience?

 2           **MR. LIPMAN:**  Your Honor, it's a serious case

 3   with serious allegations.

 4           **THE COURT:**  Which is exactly why I want him

 5   represented by competent counsel who is familiar with the

 6   facts underlying it.

 7           **MR. LIPMAN:**  But, Your Honor, to do it for

 8   free having already expended enormous resources --

 9           **THE COURT:**  You are not doing it for free.  It

10   is potentially deferring your payment.

11           **MR. LIPMAN:**  Your Honor, he is now charged in

12   two separate criminal indictments.  And I think that, I'd

13   like to be optimistic but I think that the amount of

14   resources that this is going to take is enormous and to do

15   this right is going to, it's going to take effort and it's

16   not something that we can simply, it's not something that we

17   can simply pawn off on somebody who would be getting

18   experience.  I think this is a little more serious than

19   that.

20           **THE COURT:**  I agree with you once he's here

21   but once he's here many of these problems are in a different

22   posture.

23           **MR. LIPMAN:**  Your Honor, I'm not sure --

24           **THE COURT:**  I have all these motions pending

25   here.  In one of them he wants to be pro se and he wants all

1    the discovery to be made available to him in India, right?

2    That's not happening.  So he needs somebody here that can at

3    least sort of hold the fort for him until some of these

4    issues get sorted out.

5              MR. LIPMAN:  Well, Your Honor, the case could

6    be stayed against him and achieve the same result.  And

7    there is no reason why this case needs to proceed against

8    him.  As a matter of fact, before this case --

9              THE COURT:  I view not letting this case

10   proceed rewarding him for his precipitous ill-advised

11   flight.

12             MR. LIPMAN:  All right.  But then, but then,

13   Your Honor, if the conversation we're having is about doing

14   what's necessary pending his return, right, then one way to

15   do what's necessary pending his return is to stay it at

16   least for some period of time.  And then if he's not back in

17   whatever time that the Court sets, then we could revisit the

18   issue but right now we do have lots of pending issues.

19   There is discovery and it's costly, Your Honor, and it's, as

20   I understand, as I understand the law, if we -- the

21   financial hardship of counsel, in a civil case at least, is

22   a perfectly valid reason to withdraw.  He consents.  He

23   knows that we're going to withdraw.  He understands the

24   consequences.

25             And as far as him being in India and participating

1    in the case, they can make the documents available

2    electronically.  They don't need to be shipped to India,

3    whatever it is.  They could very easily have a deposition by

4    Skype.  He's going to take five, they know it, everybody

5    knows it.  They say because he's in India he doesn't have a

6    Fifth Amendment right.  Really?  The Fugitive Disentitlement

7    Doctrine does not apply to him even though he is a fugitive.

8         Now, that is not to say that the Court's hands are

9    tied but it is to say that something short of forcing a

10   default is the relevant remedy.  I'm not saying that, the

11   Supreme Court said that, as Your Honor is aware, so there

12   are ways that this case can proceed with him participating.

13   And if he takes five, and their proof is as strong as they

14   say it is, well, then, you know, it's not going to take

15   long.

16        THE COURT:  The ability of this case to

17   proceed with him in India and pro se is hard to figure out.

18        MR. LIPMAN:  Well, Your Honor, that's, that

19   may be but I am -- I think we've done as much as we can.

20        THE COURT:  All right.  I'm going to take the

21   motion to withdraw under advisement.

22        MR. LIPMAN:  Thank you, Your Honor.  I

23   understand the Court's ruling.  For what it's worth I really

24   hope that --

25        THE COURT:  I completely understand you.  I

```
 1   have been in your shoes.  I know why you want out of this

 2   case, I get it, but I want to think about it and I'm taking

 3   it under advisement for the time being.

 4            MR. LIPMAN:  Thank you, Your Honor.

 5        For what it's worth, as Your Honor may be aware,

 6   the Court in Connecticut did let us out.

 7            THE COURT:  That should cut your costs in

 8   half.

 9            MR. LIPMAN:  That -- let's just say that the

10   reception I'm going to get today when I get back to the

11   office is going to be less than welcoming.

12            THE COURT:  Brown Rudnick can do its part,

13   while I think about this.  I'm not saying you're going to be

14   in for forever but I want to think about it and not rule

15   from the bench on this.

16            MR. LIPMAN:  All right.

17            THE COURT:  And --

18            MR. LIPMAN:  Thank you, Your Honor.  I

19   understand your ruling.

20            THE COURT:  What do you want to do next?  We

21   have the two other motions.  The motion to withdraw is under

22   advisement.  The motion for clarification, do you want to

23   hit that next?

24            MR. WILLIAMS:  If the Court is directing that

25   at me, Your Honor, I can take anything next.  I want to put
```

```
 1    in the argument that I do take issue with Mister --

 2              THE COURT:  Don't bother, it's fine.

 3              MR. WILLIAMS:  Okay.

 4              THE COURT:  I don't -- I am not going to

 5    resolve that today.  I'm not interested in the politics of

 6    it.

 7              MR. WILLIAMS:  We can take anything next.  I

 8    think that there was a, there is Mister or Tippee 1's

 9    deposition.  We have the discovery deadlines.

10              THE COURT:  All right.  What is everyone's

11    position on Tippee 1 being deposed?

12              MR. WILLIAMS:  Starting with the SEC, we don't

13    have a position.

14              THE COURT:  You don't have a position.  You

15    want them deposed?

16              MR. WEINBERG:  I urge the deposition, Your

17    Honor, and I urged the deposition --

18              THE COURT:  And is Tippee 1, he's represented;

19    correct?

20              MR. WEINBERG:  He is represented by Goodwin

21    Procter.  They have not moved to intervene.  They have not

22    asserted his Fifth Amendment rights.  They have signed a

23    Plea Agreement with the U.S. Attorney.  I asked Ms. Walters

24    to be here because of anything she wants to say.

25              He's entered a consent agreement where he has
```

1    agreed to the facts of the allegations while reaching an

2    agreement with the SEC.  Yes, he may have the Fifth

3    Amendment on some collateral issues that don't go to the

4    heart of this case that theoretically could, you know, be

5    used against him at sentencing, although ordinarily truthful

6    cooperation works in --

7                **THE COURT:**  I'm going to order his deposition.

8    If Goodwin wants to come in and quash that, they can.

9                **MR. WEINBERG:**  Thank you, Your Honor.

10               **THE COURT:**  Now that they're so much more

11   conveniently located they won't be spending undue funds to

12   get here and they can come and advocate on Tippee 1's

13   behalf.

14         Lincoln Charitable Foundation.  As far as I'm

15   concerned they can be deposed too, although I'll hear you on

16   it, Mr. Weinberg.  They don't have a Fifth Amendment right.

17               **MR. WEINBERG:**  I agree, Your Honor.  The

18   30(b)(6) was deficient in not setting forth the specific

19   subjects as required by the rule.  When the SEC corrects

20   that deficiency, the entity will have to find a responsible

21   designated person other than Mr. Kanodia to learn the facts

22   and respond to the deposition.  I don't disagree that

23   it's --

24               **THE COURT:**  And then, all that, and then, so

25   in terms of the motion for clarification, I am, I will hold

1    off on Mr. Kanodia's deposition for the time being.

2              MR. WEINBERG:  Thank you, Your Honor.

3              THE COURT:  And I will -- you can extend the

4    deadlines.  I don't know if you want to submit a draft order

5    or you want me to just craft it myself?

6              MR. WEINBERG:  I think the only disagreement

7    is we, or the need for clarification is that other discovery

8    vehicles that would require compelled testimony.

9              THE COURT:  I'm not going to compel

10   Mr. Kanodia to respond to anything in writing but I am going

11   to require document production.

12             MR. WEINBERG:  Thank you, Your Honor.

13             THE COURT:  I think the production privilege

14   is so limited, I don't think he's really covered by it.

15             MR. WEINBERG:  Can we defer that decision as

16   to the applicability of *Hubbell* and other Fifth Amendment

17   related documents to the, any compulsion attempts for him

18   to, for instance, be required to supply emails that his

19   active authenticating them could be construed as an act of

20   production?

21             THE COURT:  You can brief it but it's so, that

22   privilege is so limited and so narrow that I'm not sure it

23   applies here.  But if you want to brief it, go ahead.

24             MR. WEINBERG:  Okay.

25             MS. WALTERS:  Your Honor?

1          **THE COURT:**  Yeah, I know.  I see you standing

2     there.  We'll get to you.

3          **MS. WALTERS:**  Thanks.

4          **THE COURT:**  And then on his motion to stay,

5     I'm not staying this case for him.  He is just, he is --

6     my -- I understand there is an argument to be made that he

7     is as much of a victim, right, as anybody else; but my

8     thinking on this case is that you should be able to defend

9     both cases without being prejudiced in either one.  He is

10    not defending a criminal case.  He fled from the criminal

11    case.  I'm not going to afford him the same protections as

12    I'm affording Mr. Kanodia who is here actively defending the

13    thing.

14          **MR. LIPMAN:**  Your Honor, he can take, he can

15    invoke his Fifth Amendment right, that's -- even if there

16    were no parallel criminal case he would still have a Fifth

17    Amendment right.

18          The issue that we have is they insist on him

19    showing up in person.  He cannot leave India.  I mean,

20    that's just so --

21          **THE COURT:**  Why can't you do this by Skype or

22    videoconference?

23          **MR. LIPMAN:**  Thank you.

24          **MR. WILLIAMS:**  A couple of reasons, Your

25    Honor.

1          One, there is going to be no jurisdiction over

2     anything he says or does in that deposition because it's

3     done in India.

4          Second, he's the defendant in this case.  We should

5     have a right to size him up, to see how he answers

6     questions --

7               THE COURT:  Then go to India.

8               MR. WILLIAMS:  Well, I don't know if --

9               THE COURT:  And take him (indicating) with

10    you.  On your nickel.

11              MR. WILLIAMS:  Your Honor, I don't know if --

12    I think that may even make matters worse because then we're

13    having essentially an American court order a deposition to

14    take place in India with all the parties being in India.  I

15    don't know if we can do that.  We'll certainly look into it

16    but I guess --

17              THE COURT:  Why can't you do it by video or

18    Skype?

19              MR. WILLIAMS:  I apologize, Your Honor, I'm

20    sorry?

21              THE COURT:  Skype, video.  I mean -- right?

22              MR. WILLIAMS:  Yes.  I mean, listen, Your

23    Honor, the technology allows us to do it a few different

24    ways.  The point is it just disadvantages the SEC and I

25    submit it's a bit unfair for him to --

1          **THE COURT:**  Make this, forcing him to default

2     disadvantages him; right?  I think that the technological

3     solution is a reasonable path down the middle.

4          **MR. WILLIAMS:**  Okay.  So then, if I understand

5     Your Honor's order, it's either to take a deposition in

6     India or to take it via videoconference --

7          **THE COURT:**  He can't come here.  He's

8     unavailable.  He says he's going to be deposed.  He'll do

9     what he's going to do.  If he takes the Fifth, he takes the

10    Fifth and, you know, you can declare victory and go home.

11    And if he decides to answer the questions, so be it.

12          **MR. WILLIAMS:**  Okay.  Yes, Your Honor.  Just

13    so I understand Your Honor's ruling, so we would be

14    permitted to go to India to take his deposition in person or

15    to take it via videoconference?

16          **THE COURT:**  I'm not ordering you to go to

17    India and take his deposition.  I am just saying that he

18    can't come here.  And if you want him to be deposed, either

19    you do it electronically or you figure out some way for it

20    to be done there.

21          **MR. WILLIAMS:**  Yes, Your Honor.

22          **THE COURT:**  I'm laying out options since he

23    cannot come here.

24          All right.  That pretty well takes care of

25    everything except whatever it is that Ms. Walters wants to

1    say.

2                    MS. WALTERS:  As, I think, Your Honor, as you

3    point out, it's not clear to me that anything has changed

4    other than --

5                    THE COURT:  Nothing has changed except that

6    all that is left is Mr. Kanodia and Tippee 1.

7                    MS. WALTERS:  And Mr. Ahmed.

8            The criminal case is scheduled to go to trial on

9    September 19th.  Mr. Watson is scheduled to be sentenced in

10   November and so this is not actually a tremendous delay.

11   I'll certainly let Mr. Braceras know that he has the

12   opportunity to move to quash the subpoena which will cost

13   Mr. Watson fees but I just don't -- just as a practical

14   matter literally nothing has changed in terms of the

15   existence of his Fifth Amendment right and the status of the

16   case except that we have a firm trial date, that it is a

17   matter of a couple of months away.

18           And so --

19                    THE COURT:  Just there is nobody here

20   objecting to his deposition but you and you don't really

21   have any standing to object to his deposition.  So if

22   Mr. Braceras wants to come in and do it, that's fine, but

23   it's not in a procedural posture where I can feel that I can

24   do anything about it.

25                    MS. WALTERS:  I guess because it's a

1    different -- so it's just, are you granting the motion to

2    reconsideration of your previous order then?  Is that where

3    we stand?

4                **THE COURT:**  There is no, there isn't a motion

5    for reconsideration pending.

6                **MS. WALTERS:**  I believe there was one that was

7    filed --

8                **MR. WEINBERG:**  The order was to defer the two

9    depositions.

10               **THE COURT:**  That's right.

11               **MR. WEINBERG:**  And the Court always

12   anticipated that there would be a deposition and with a

13   November sentencing date, which is the result of the U.S.

14   Attorney's efforts to delay, we're talking about five or six

15   months' delay in this case.

16               **THE COURT:**  Where I left it was that they were

17   deferring to all of their discovery was complete and then

18   we would come back and have a status conference and

19   reevaluate where we were.

20               **MS. WALTERS:**  Okay.

21               **THE COURT:**  So I'm happy to hear from

22   Mr. Braceras.  You're welcome to attend with him but I

23   don't, there is nobody here with any standing to object to

24   it.

25               **MR. WILLIAMS:**  May I say a few things, Your

```
 1    Honor?

 2                THE COURT:  Of course.

 3                MR. WILLIAMS:  One, the SEC's position, at

 4    least with Mr. Kanodia, is we're going to need discovery

 5    after deposing Mr. Kanodia.

 6                THE COURT:  That's fine.  I'll extend the

 7    deadlines for you.

 8                MR. WILLIAMS:  Okay.  And the second thing, to

 9    the extent that, you know, the defense is saying, listen, we

10    want to protect our guy but not the person cooperating, you

11    know, fine, we will object to that.  I mean, I think it's a

12    bit unfair.  I'm sure, you know, I don't think that

13    deposition has much to do with this case to be frank.  I

14    think it has more to do with the criminal case, but, you

15    know, that's not my fight.

16           To the extent that the Court is pushing off one and

17    allowing the other, I submit that they should both be

18    allowed or they should both be pushed back.

19                THE COURT:  There is nobody here with any

20    standing to object to the others so I'm not saying I won't

21    hear Mr. Braceras on it but there is nobody here objecting

22    to it that has any standing to object to it.  The only --

23    Tippee 1 is not represented here.

24                MR. WILLIAMS:  Yes, Your Honor.

25                THE COURT:  So, I mean, my hands are somewhat
```

```
 1   tied.

 2              MR. LIPMAN:  Your Honor, I apologize.  If I

 3   may, if we're going to stay in this case, we would like an

 4   extension of the deadlines also so that we can --

 5              THE COURT:  Yes, I'm happy to give you that.

 6              MR. LIPMAN:  Thank you, Your Honor.

 7              THE COURT:  Anything else we can do today?

 8         You all look so unhappy.

 9         (Laughter.)

10              THE COURT:  Collectively you all look unhappy.

11         All right.  The case is recessed.  We'll get out a

12   new scheduling order.  Do you all want to do that scheduling

13   order or do you want us to do it based on what I have in

14   front of me?

15              MR. WEINBERG:  I'm content with Your Honor

16   redrafting the scheduling order.

17              THE COURT:  All right.  We'll redraft it and

18   if anybody has any issues with it, you can let me know and

19   we will revise it as necessary.

20              MR. WEINBERG:  Thank you very much, Your

21   Honor.

22              THE COURT:  Okay.  Thanks everyone.

23              VOICES:  Thank you, Your Honor.

24              THE CLERK:  Court is adjourned.

25
```

1          (WHEREUPON, the proceedings were recessed at 4:25

2      p.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E


        I, Carol Lynn Scott, Official Court Reporter for

the United States District Court for the District of

Massachusetts, do hereby certify that the foregoing pages

are a true and accurate transcription of my shorthand notes

taken in the aforementioned matter to the best of my skill

and ability.



                    /S/CAROL LYNN SCOTT


        _____

                    CAROL LYNN SCOTT
                   Official Court Reporter
                 John J. Moakley Courthouse
                1 Courthouse Way, Suite 7204
                 Boston, Massachusetts 02210
                      (617) 330-1377



**DATE: July 20, 2016**