UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>  v.<br><br>IFTIKAR AHMED,<br><br>    Defendant, and<br><br>IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUNITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents,<br><br>    Relief Defendants. | Civil Action No. 3:15-cv-675 (JBA) |

**DEFENDANT'S MOTION FOR INCLUSION OF ALL UNTAINTED ASSETS CURRENTLY HELD BY OAK TO COMPLY WITH THE ESTEEMED COURT'S TEMPORARY RESTRAINING ORDER OF MAY 07TH, 2015**

  Defendant Iftikar Ahmed respectfully submits the following prayer for inclusion of his 100% untainted assets - currently being inappropriately assumed and held by Oak Investment Partners in violation of this esteemed Court's orders - under the Temporary Restraining Order Freezing Assets And Providing For Other Ancillary Relief, And Order Setting Preliminary

Injunction Hearing (Document #9 dated 7th of May 2015).

1.      The Defendant joined his erstwhile employers, Oak Management Corporation ("Oak") in January 2004 and was later promoted to be a partner in the firm.  Oak Management Corporation managed a number of venture capital and private equity funds.  As a partner at Oak, the Defendant invested directly in certain investment vehicles, named for example as Oak Associates X, LLC.

2.      The Defendant had <u>four</u> direct forms of investment and investment related economic interests associated with this employment with Oak.

(i)     **Carried Interest:**  Carried Interest is the share of the capital gains from a certain fund.  The Defendant was a participant in the Carried Interest generated by the Oak Investment Partners X, XI, XII and XIII funds.  The Carried Interest would vest equally semi-annually over 10 (ten) years.  Carried Interest payments start only after all the invested capital from the investors is first returned back to the investors.  For example, if a certain fund was capitalized with $100MM, as the portfolio companies started monetizing and generating returns, the first $100MM would all get retuned to the investors (known as Limited Partners or LPs), and then every incremental dollar of return would be shared between the LPs and the partners managing the fund (called the General Partners or GPs) as per the agreed share of profits.

The Defendant was significantly vested in each of the four Oak funds – for example, he was more than 80% vested in Fund XI and more than 50% vested in Fund XIII.   For illustrative

purposes only, if a certain $1 Billion fund were to double in value, there would be $1 Billion in gains and 25% of that (or, $250MM in total) would be distributed to the GPs as carried interest. All of the Oak funds (with the exception of Oak XIII) had a 25% carried interest.  Oak XIII had a 20% carried interest.   The Defendant has varying allocations of that carried interest pool across the various funds but had significant carried interest in the Oak XII and Oak XIII funds. Oak X was capitalized at $1.5B, Oak XI was capitalized at $1.5B; Oak XII was capitalized at $2.5B, and Oak XIII was a $770MM fund.   These numbers are substantial and, hence also, the carried interest amounts.   Oak X had already turned profitable and was paying out Carried Interest much prior to the Defendant's termination from Oak.   Both Oak XI and Oak XII were close to generating if not currently generating Carried Interest at that time.   As of January 2015, the Defendant was fully 100% vested in his Fund X carry, 91% vested in his Fund XI carry, 83% vested in his Fund XII carry, and 54% vested in his Fund XIII carry (**Exhibit 1**).   With very conservative assumptions, the total value of the Defendant's vested Carried Interest across these funds is material and significant – easily in the **$60 Million** range even with very conservative market assumptions.    The illustrative analysis on how this number is arrived at is attached herewith as **Exhibit 2**.

   (ii)  **IPP**: Oak has a performance based bonus plan called the IPP.  In simple terms, each investment was led by a "manager" and supported by "buddies".   The manager would allocate 100 points amongst herself or himself (keeping the majority of the 100 points, say 60 points) and the 2 or 3 other buddies in the team.    For every $1 million of net gains generated by an investment, the responsible team would be paid $110,000 (the total was $55,000 for Oak XIII only) to be shared as per the allocation of the 100 points at the start of the investment (for

3

example, if someone had 60 points, he would be paid $66,000 per million dollars of realized gain).  Realized gains were offset by unrealized and realized losses.  The Defendant was the manager for 8 portfolio companies and a buddy in another 10 or more portfolio companies.  These IPP points also vested in the same way as carried interest over 10 years.  The Defendant had significant IPP points in total and, again conservatively, the vested IPP earned but not paid to the Defendant would easily be in the **$15 Million** range.

      (iii)    **Direct Investment:**  The Defendant was also a direct investor in all the Oak Funds.  In that sense, the Defendant was also a Limited Partner (LP) in the same funds.  Oak's compensation structure was such that the capital commitment to the funds by members of its GP would be paid by Oak such that the after-tax amount which would be round-tripped back in to the Fund as a direct investment.  So, this direct investment by the Defendant is clearly 100% untainted as it was directly and immediately invested in an Oak fund from his Oak salary.   Say, if there was a $1 capital call (a capital call is a notice for investment in a fund), Oak would pay the Defendant $1 post-tax and the Defendant would immediately invest the $1 in the fund.  Across the various Oak funds, the Defendant had a total capital commitment of around **$8.6 Million**.  Some of that capital invested would no doubt have been realized as well, thus diminishing the actual capital left invested at Oak.  In any event, the direct invested capital in Oak funds would still be a substantial and significant amount, in the **$8 Million** range on cost basis itself and likely a lot higher on mark to market (or Fair Market Value, FMV) basis.

      (iv)    **Equity Ownership of the Management Company:**  The Defendant was a shareholder in the management company, Oak Management Corporation.  His equity stake in the

company was in the 8% fully diluted ownership range.  And that equity stake would also be substantially valuable and an independent valuation would be required to establish the true inherent value of that equity stake.  If one were to venture a guesstimate, using comparable publicly traded companies like the Blackstone Group (NYSE: BX) and Carlyle Group (NASD: CG), this 8% equity stake would likely be worth more than **$50 Million**.

In summary, the Defendant's demonstrably and completely untainted direct investment, equity ownership and vested financial interests (carried interest and IPP) in Oak and the Oak funds represent a significant package of economic value; possibly even exceeding the total amount of freeze ordered by this esteemed Court for the duration of the pendency of this matter.

3.   This esteemed Court had ordered a Temporary Restraining Order Freezing Assets etc. (Document #9) on the **07th of May 2015 at 18:50 Hours US EDT** (**Exhibit 3**).

4.   The Defendant was only legally and officially terminated by his erstwhile employer after their Board Meeting held on the **18th of May 2015** (**Exhibit 4**).

5.   All of the Defendant's assets, including but not limited to his investments in the Oak funds, his vested and earned Carried Interest and IPP, and his ownership of the management company, were therefore covered and addressed by the TRO immediately on its order on the 07th of May 2015 and came into the TRO order's purview immediately after 18:50 Hours US EDT on the 7th of May 2015.

6. The Defendant's erstwhile employers, Oak, continues not to make any of the distributions from its funds and any of the vested and earned carried interest and IPP payments that should have been made to the Defendant under ordinary course of business. These amounts are not only material and significant but also could be accruing significant interest income were they to be held at a bank or any other financial institution versus being unjustly and improperly appropriated by Oak at this time, in flagrant violation of this esteemed Court's above mentioned order.

7. As ordered by this esteemed Court, all of the Defendant's bank accounts and brokerage accounts remain frozen and under direct oversight of the esteemed Court and also the Plaintiff. It is, therefore, only appropriate that Oak immediately transfer all the accumulated investment distributions, carried interest, and IPP payments into a joint untainted frozen bank account for such assets to be included in the TRO as mentioned above from April 2015 onwards and continue to do so during the pendency of this matter in front of this esteemed Court.

8. This esteemed Court should, therefore, order Oak to immediately transfer all direct investment distributions, carried interest payments and IPP payments, if any such payments were made to other members of the Oak GP into a joint frozen untainted account.

9. By improperly holding on to hold to the Defendant's rightful realized distributions and earned and vested carried interest and IPP payments, Oak is not only violating the esteemed Court's orders and engaging in flagrant self-help, but is also causing a potential double jeopardy in the event, hypothetical as it may be, that any or all of the Plaintiff's

allegations are proven to be true and the victims of such alleged misdoings need to be fully and adequately compensated.

**WHEREFORE**, the Defendant again humbly submits and respectfully requests that this motion be immediately granted in its entirety together with such other and further relief as the Court may deem to be necessary and proper so that the assets and monies that are currently being improperly retained by Oak be immediately covered by this Court's Temporary Restraining Order dated 07th May 2016 at 18:50 Hours US EDT.

Respectfully Submitted,

Dated:        September 07th, 2016         /s/ Iftikar Ahmed

_____

Iftikar A. Ahmed
C/O Advocate Anil Sharma
10 Government Place East, Ground Floor
Behind Kanpur Leather House
Kolkata 700069, India
Tel: +91.98.30.089.945
Email: iftyahmed@icloud.com
*Pro Se*

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and served by electronic mail to:

Nicholas P. Heinke
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1071
Email: heinken@sec.gov

Mark L. Williams
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1027
Email: williamsml@sec.gov

Alexander Sakin
Harris, St. Laurent & Chaudhry LLP
40 Wall Street, 53rd Floor
New York, NY 10005
(646) 461-2279
Fax: (212) 202-6206
Email: asakin@sc-harris.com

David B. Deitch
Harris, St. Laurent & Chaudhry LLP VA
1818 Library Street, Suite 500
Reston, VA 20190
(703) 956-3549
Fax: (703) 935-0349
Email: ddeitch@sc-harris.com

Jonathan Harris
Harris, St. Laurent & Chaudhry LLP
40 Wall Street, 53rd Floor
New York, NY 10005
(646) 395-3481
Fax: (212) 202-6206
Email: jon@sc-harris.com

L. Reid Skibell
Harris, St. Laurent & Chaudhry LLP
40 Wall Street, 53rd Floor
New York, NY 10005
(917) 512-9466
Fax: (212) 202-6206
Email: rskibell@sc-harris.com

Priya Chaudhry
Harris, St. Laurent & Chaudhry LLP
40 Wall Street, 53rd Floor
New York, NY 10005
(212) 785-5550
Fax: (212) 202-6206
Email: priya@sc-harris.com

Steven Gabriel Hayes Williams
Harris, St. Lauren & Chaudhry LLP
40 Wall Street, 53rd Floor
New York, NY 10005
(212) 397-3370
Fax: (212) 202-6206
Email: ghayeswilliams@sc-harris.com

Kristen Luise Zaehringer
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5406
Fax: (860) 240-5758
Email: kzaehringer@murthalaw.com

Paul E. Knag
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5400
Fax: (203) 653-5444
Email: pknag@murthalaw.com

Dated:  September 07th, 2016  /s/ Iftikar Ahmed

                                                     Iftikar A. Ahmed
C/O Advocate Anil Sharma
10 Government Place East, Ground Floor
Behind Kanpur Leather House
Kolkata 700069, India
Tel: +91.98.30.089.945
Email: iftyahmed@icloud.com

*Pro Se*

EXHIBIT 1

From: Grace Ames
Date: May 30, 2014 at 4:11:23 PM EDT
To: Iftikar Ahmed <>, Ren Riley <>
Subject: Vesting Schedules

Oak Associates XI, XI-A, XII, XII-A, XIII, XIII-A, LLC
Vesting Percentages

Applicable Percentage

| Intervals | Oak Associates XI, LLC | Oak Associates XI-A, LLC | Oak Associates XII, LLC | Oak Associates XII-A, LLC | Oak Associates XIII, LLC | Oak Associates XIII-A, LLC |
|---|---|---|---|---|---|---|
| 7/1/2014 | 88.500% | 88.500% | 79.875% | 79.875% | 48.000% | 48.000% |
| 1/1/2015 | 91.375% | 91.375% | 82.750% | 82.750% | 54.000% | 54.000% |
| 7/1/2015 | 94.250% | 94.250% | 85.625% | 85.625% | 60.000% | 60.000% |
| 1/1/2016 | 97.125% | 97.125% | 88.500% | 88.500% | 64.000% | 64.000% |
| 7/1/2016 | 100.000% | 100.000% | 91.375% | 91.375% | 68.000% | 68.000% |
| 1/1/2017 | 100.000% | 100.000% | 94.250% | 94.250% | 72.000% | 72.000% |
| 7/1/2017 | 100.000% | 100.000% | 97.125% | 97.125% | 76.000% | 76.000% |
| 1/1/2018 | 100.000% | 100.000% | 100.000% | 100.000% | 80.000% | 80.000% |
| 7/1/2018 | 100.000% | 100.000% | 100.000% | 100.000% | 84.000% | 84.000% |
| 12/31/2018 | 100.000% | 100.000% | 100.000% | 100.000% | 88.000% | 88.000% |
| 1/1/2019 | 100.000% | 100.000% | 100.000% | 100.000% | 88.000% | 88.000% |
| 7/1/2019 | 100.000% | 100.000% | 100.000% | 100.000% | 92.000% | 92.000% |
| 1/1/2020 | 100.000% | 100.000% | 100.000% | 100.000% | 96.000% | 96.000% |
| 7/1/2020 | 100.000% | 100.000% | 100.000% | 100.000% | 100.000% | 100.000% |

**Grace A. Ames**
General Partner
Chief Operating Officer

**Oak Investment Partners**
3 Pickwick Plaza | Suite 302 | Greenwich, CT 06830
901 Main Avenue | Suite 600 | Norwalk, CT 06851
Main: 203.xxx.xxxx | Phone: 203.xxx.xxxx | Fax: xxx.222.xxxx
Email: | Web:

**EXHIBIT 2**

Oak - Carried Interest

| Oak Fund | Total Fund Size, $ MM | Oak Carried Interest % | Value of Carried Interest if fund doubles, $ MM | IAA Carry Allocation | Vested % as of 01/01/2015 | Value of IAA carried interest, $ MM |
|---|---|---|---|---|---|---|
| X | $1,500 | 25% | $375 | 2% | 100% | $7.5 |
| XI | $1,500 | 25% | $375 | 2% | 91% | $6.9 |
| XII | $2,500 | 25% | $625 | 8% | 82% | $41.2 |
| XIII | $770 | 20% | $154 | 8% | 54% | $6.7 |
| | | | | | | $62.2 |

**EXHIBIT 3**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 3:15cv675 (JBA) |
| IFTIKAR AHMED, | ) ) ) |
| Defendant, and | ) ) |
| IFTIKAR ALI AHMED SOLE PROP and I-CUBED DOMAINS, LLC, | ) ) ) ) |
| Relief Defendants. | ) ) |

**FILED UNDER SEAL**

**TEMPORARY RESTRAINING ORDER FREEZING ASSETS AND PROVIDING FOR OTHER ANCILLARY RELIEF, AND ORDER SETTING PRELIMINARY INJUNCTION HEARING**

On May 6, 2015, Plaintiff United States Securities and Exchange Commission (the "Commission") filed an emergency motion [Doc. # 2] for an *ex parte* order: (1) freezing funds and other assets of Defendant Iftikar Ahmed and Relief Defendants Iftikar Ali Ahmed Sole Prop and I-Cubed Domains, LLC; (2) requiring Defendant and Relief Defendants to provide an accounting; (3) providing for expedited discovery; (4) providing for alternative service by the Commission; (5) prohibiting the destruction or alteration of documents; and (6) setting this matter for a preliminary injunction hearing. For the reasons that follow, Plaintiff's motion is granted with modifications.

On May 7, 2015, the Court conducted an *ex parte* telephonic hearing on the record to

consider the representations and arguments of Plaintiff in support of its claims. The Court has considered the record presented in support of Plaintiff's Motion for a Temporary Restraining Order, including: the Complaint; the Commission's Memorandum of Law in Support of its Motion for an *Ex Parte* Temporary Restraining Order Freezing Assets and Providing for Other Ancillary Relief, and for Preliminary Injunction; the Declaration of Grace Ames, with attached exhibits; and the Certification of Counsel pursuant to Federal Rule of Civil Procedure 65(b).

Based on this record, the Court finds:

1. The Court has jurisdiction over the subject matter of this action and over the Defendant and Relief Defendants.

2. The Commission has made a sufficient and proper showing in support of the relief granted herein, as required by Section 20(b) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77t(b)], Section 21(d) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78u(d)] and Section 209(d) of the Investment Advisor's Act of 1940 ("Advisor's Act") [15 U.S.C. § 80b-9(d)] by establishing a likelihood that the Commission will prevail at trial on the merits and an inference that the Defendant has engaged in acts, practices, and courses of business constituting violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Sections 206(1), 206(2), 206(3), and 206(4) of the Investment Advisers Act 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1), 80b-6(2), and 80b-6(3)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

3. There is good cause to believe that, unless restrained and enjoined by order of this Court, the Defendant and Relief Defendants will dissipate, conceal, or transfer from the jurisdiction of this Court assets that could be subject to an order directing disgorgement or the

payment of civil monetary penalties in this action such that an order freezing the Defendant's and Relief Defendants' assets, as specified *infra*, is necessary to preserve the *status quo* and to protect this Court's ability to award equitable relief in the form of disgorgement of illegal profits from fraud and civil penalties.

    4.    In light of the Court's finding that there is good cause to believe the Defendant will dissipate, conceal, or transfer assets, and pursuant to Fed. R. Civ. P. 65(b), the Court specifically finds that there is a likelihood of irreparable injury unless this order is issued *ex parte*. To avoid this irreparable harm, the Court will issue this Temporary Restraining Order Freezing Assets *ex parte* so that prompt service on appropriate financial institutions can be made, thus preventing the dissipation of assets.

    5.    There is good cause to believe that, unless restrained and enjoined by order of this Court, the Defendant and Relief Defendants may alter or destroy documents relevant to this action.

    6.    There is good cause to believe that expedited discovery and alternative means of service are warranted.

Now, therefore, and for the reasons set forth on the record during the *ex parte* telephonic hearing of May 7, 2015 with counsel for Plaintiff:

## I.

**IT IS HEREBY ORDERED** that, pending the determination of the Commission's Motion for a Preliminary Injunction or hearing on the merits:

    A.    The assets, funds, or other property held by or under the direct or indirect control of Defendant Iftikar Ahmed, Relief Defendant Iftikar Ali Ahmed Sole Prop, and Relief

Defendant and I-Cubed Domains, LLC, whether held in any of their names or for their direct or indirect beneficial interests, wherever located, up to the amount of **$55,089,546**, are frozen.

      B.      Defendant Iftikar Ahmed and Relief Defendants Iftikar Ali Ahmed Sole Prop and I-Cubed Domains, LLC, and their officers, directors, successor corporations, subsidiaries, affiliates, agents, servants, employees, attorneys-in-fact, and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, and each of them, shall hold and retain within their control, and otherwise prevent any disposition, transfer, pledge, encumbrance, assignment, dissipation, concealment, or other disposal whatsoever of any of their funds or other assets or things of value presently held by them, under their control or over which they exercise actual or apparent investment or other authority, in whatever form such assets may presently exist and wherever located, up to the amounts identified in paragraph I.A.

      C.      Any bank, financial or brokerage institution or other person or entity holding any funds, securities or other assets of Defendant Iftikar Ahmed or Relief Defendants Iftikar Ali Ahmed Sole Prop or I-Cubed Domains, LLC, up to the amounts identified in paragraph I.A, held in the name of, for the benefit of, or under the control of Defendant Iftikar Ahmed or Relief Defendants Iftikar Ali Ahmed Sole Prop or I-Cubed Domains, LLC, or their officers, directors, successor corporations, subsidiaries, affiliates, agents, servants, employees, attorneys-in-fact, and those persons in active concert or participation with them, and each of them, shall hold and retain within their control and prohibit the withdrawal, removal, transfer or other disposal of any such funds or other assets.

      D.      No person or entity, including the Defendant, Relief Defendants, or any creditor or claimant against the Defendant or any of the Relief Defendants, or any person acting on behalf

4

of such creditor or claimant, shall take any action to interfere with the asset freeze, including, but not limited to, the filing of any lawsuits, liens, or encumbrances, or bankruptcy cases to impact the property and assets subject to this order; provided, however, that any party or non-party may seek leave from this order upon a proper showing.

## II.

**IT IS HEREBY FURTHER ORDERED** that, the Defendant and Relief Defendants are prohibited from destroying or altering documents and records. Pending determination of the Commission's Motion for a Preliminary Injunction or hearing on the merits, Defendant Iftikar Ahmed and Relief Defendants Iftikar Ali Ahmed Sole Prop and I-Cubed Domains, LLC, and their officers, directors, successor corporations, subsidiaries and affiliates, agents, servants, employees, attorneys-in-fact, and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, and each of them, are hereby restrained from destroying, mutilating, concealing, altering, or disposing of any document referring or relating in any manner to any transactions described in the Commission's Complaint in this action, or to any communications between or among any of the Defendant or Relief Defendants. As used in this order, "document" means the original and all non-identical copies (whether non-identical because of handwritten notation or otherwise) of all written or graphic matter, however produced, and any other tangible record, or electronic data compilation capable of reproduction in tangible form, including, without limitation, computer data, e-mail messages, correspondence, memoranda, minutes, telephone records, reports, studies, telexes, diaries, calendar entries, contracts, letters of agreement, and including any and all existing drafts of all documents.

**III.**

**IT IS HEREBY FURTHER ORDERED** that the Commission's application for expedited discovery is granted in part and that, commencing with the time and date of this Order, in lieu of the time periods, notice provisions, and other requirements of Rules 26, 30, 33, 34, 36, and 45 of the Federal Rules of Civil Procedure, discovery shall proceed as follows:

A. Pursuant to Rule 30(a) of the Federal Rules of Civil Procedure, the Commission may take depositions upon oral examination on **three days'** notice of any such deposition. Depositions may be taken telephonically. As to Defendant Iftikar Ahmed and Relief Defendants Iftikar Ali Ahmed Sole Prop and I-Cubed Domains, LLC, and their officers, directors, subsidiaries and affiliates, agents, servants, employees, owners, brokers, associates, trustees, and underwriters, the Commission may depose such witnesses after serving a deposition notice by facsimile, e-mail, mail, hand or overnight courier upon such Defendant or Relief Defendant, and without serving a subpoena on such witness;

B. Pursuant to Rule 33(a) of the Federal Rules of Civil Procedure, the Defendant and Relief Defendants, and each of them, shall answer the Commission's interrogatories within **seven days** of service of such interrogatories. Interrogatories may be served and answered by facsimile, e-mail, mail, hand or overnight courier upon the parties or their counsel;

C. Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, the Defendant and Relief Defendants, and each of them, shall produce all documents requested by the Commission within **seven days** of service of such request. Documents produced to the Commission shall be delivered by hand or overnight courier to the U.S. Securities and Exchange Commission, Denver Regional Office, 1961 Stout St., Suite 1700, Denver, CO 80294, to the attention of Nicholas P.

6

Heinke or Mark L. Williams, or such other person or place as counsel for the Commission may direct in writing. Requests for production may be served by facsimile, e-mail, mail, hand or overnight courier upon the parties or their counsel; and

    D.  In connection with any discovery from any non-party, deposition or document discovery may be had within **five days** of service of a subpoena pursuant to Rule 45. Service of a subpoena may be made by facsimile, e-mail, mail, hand or overnight courier.

## IV.

  **IT IS HEREBY FURTHER ORDERED** that service of this Order, the Summons and Complaint may be made by facsimile, mail, e-mail, delivery by commercial courier, or personally by any employee of the Securities and Exchange Commission who is not counsel of record in this matter, or special process server, or any other person, or in any other manner authorized by Rule 5 of the Federal Rules of Civil Procedure and may be made on any registered agent, officer, or director of Defendant or Relief Defendant, or by publication. If alternative service is made, the Commission must thereafter effect formal service in compliance with Fed. R. Civ. P. 5.

## V.

  **IT IS HEREBY FURTHER ORDERED** that, until the Commission is able to freeze Defendant's and Relief Defendants' bank, financial, and brokerage accounts, all documents filed in this matter are **SEALED**. The Commission shall move to unseal the documents filed in this matter once Defendant's and Relief Defendants' bank, financial, and brokerage accounts are frozen, but in any case no later than seven days following the issuance of this Order.

**VI.**

**IT IS HEREBY FURTHER ORDERED** that the Defendant and Relief Defendants, and each of them, shall appear before this Court at 10 a.m. on May 21, 2015 in Courtroom Three in New Haven of the United States District Court for the District of Connecticut, to show cause, if any there be, why this Court should not enter a Preliminary Injunction against the Defendant and Relief Defendants pursuant to Rule 65 of the Federal Rules of Civil Procedure extending the temporary relief granted in this Order until a final adjudication on the merits may be had.

**SO ORDERED** this 7th day of May, 2015, at 6:50 p.m.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

8

EXHIBIT 4

NOTICE OF SPECIAL MEETING

OF THE BOARD OF DIRECTORS

OF OAK MANAGEMENT CORPORATION

NOTICE IS HEREBY GIVEN that a Special Meeting of the Board of Directors (the "<u>Board</u>") of Oak Management Corporation (the "<u>Corporation</u>") will be held on Monday, May 18, 2015 at 1:00pm, EDT.  The meeting will be by conference call using the following dial-in details:

    Toll-free Dial-in Number (U.S. and Canada):  (877) XXX-XXXX

    International Dial-in Number:  (760) XXX-XXXX

    Conference Code:  XXXXXXXXX

The purpose of the meeting will be for the Board to consider the formation of a committee of the Board, which committee shall be authorized to consider and vote upon matters relating to the termination of employment of Iftikar A. Ahmed by the Corporation.

    On behalf of:

    Edward F. Glassmeyer, Member of the Board of Directors

    Fredric W. Harman, Member of the Board of Directors

May 14, 2015