UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>IFTIKAR AHMED,<br><br>Defendant, and<br><br>IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents,<br><br>Relief Defendants. | Civil Action No. 3:15cv675 (JBA) |

**PLAINTIFF UNITED STATES SECURITIES AND EXCHANGE COMMISSION'S RESPONSE IN OPPOSITION TO RELIEF DEFENDANTS' RENEWED MOTION FOR <u>PAYMENT OF CRIMINAL FEES</u>**

Plaintiff United States Securities and Exchange Commission ("SEC") hereby files this opposition to Relief Defendants I-Cubed Domains, LLC, Shalini Ahmed, Shalini Ahmed 2014 Grantor Retained Annuity Trust, DIYA Holdings LLC, DIYA Real Holdings, LLC, and three minor children by and through their next friends Iftikar and Shalini Ahmed, their parents (collectively, "Relief Defendants") renewed motion to modify the Preliminary Injunction freezing assets to release funds for the payment of fees in Ms. Ahmed's prior criminal matter

("Renewed Motion") [Doc. # 296]. For the reasons outlined herein, Relief Defendants' Motion should be denied.

## I. Introduction

Relief Defendants' Renewed Motion is substantively identical to their initial motion to modify the Preliminary Injunction freezing assets to release funds for the payment of fees in Ms. Ahmed's prior criminal matter ("Initial Motion") [Doc. # 264], with the exception that Relief Defendants have included their detailed legal bills in support of the Renewed Motion. For the same reasons outlined in the SEC's opposition to the Initial Motion [Doc. # 267], the Renewed Motion should be denied. Ms. Ahmed, not the victims of her husband's fraud, should pay the remaining balance of her criminal legal fees. Further, Ms. Ahmed is free to obtain employment now that her criminal case is over and the conditions of her release have been lifted. Regardless, Ms. Ahmed has no Sixth Amendment right to the requested funds. The Court should decline to release tainted funds that do not belong to Ms. Ahmed to pay her outstanding legal bills, especially when the bulk of those bills have already been paid. Finally, should the Court be inclined to release any funds for the payment of fees in Ms. Ahmed's prior criminal matter, the SEC respectfully requests the Court carefully scrutinize those fees to ensure they are reasonable.

## II. Relevant Background

For the sake of efficiency, the SEC incorporates the relevant background outlined in response to Relief Defendants' Initial Motion. [*See* Doc. # 267 at 2-5.]

## III. Argument

### a. The Renewed Motion Should Be Denied for the Same Reasons as the Initial Motion.

As noted above, the Renewed Motion is substantively identical to the Initial Motion, with the exception of the inclusion of Relief Defendants' detailed legal bills. Again for the sake of

efficiency, the SEC will not repeat all of the reasons that the request is flawed, but rather incorporates the argument outlined in response to Relief Defendants' Initial Motion. [*See* Doc. # 267 at 5-8.] In brief, Relief Defendants do not have a Sixth Amendment right to the release of assets to pay legal fees because Ms. Ahmed's criminal case is over. [*Id.* at 5-6.] Even if the Sixth Amendment were applicable, Relief Defendants do not have a Sixth Amendment right to use tainted assets, and Ms. Ahmed has repeatedly declined to even attempt to identify frozen, untainted assets belonging to her. [*Id.* at 6-7.] Moreover, the SEC's prior consent to the release of funds for Ms. Ahmed's criminal case is no reason to grant the instant Renewed Motion, since the equities of the situation have changed. [*Id.* at 7-8.] And finally, equity does not weigh in favor of releasing for Ms. Ahmed's criminal counsel tainted monies that do not belong to her, and will likely be needed to make investor-victims whole. [*Id.* at 8.]

### b. The Frozen Assets Will Likely Be Needed to Make Investor-Victims Whole.

In their reply in support of the Initial Motion, Relief Defendants claim that, of the approximately $74 million that they estimate has been frozen, there is approximately $7 million "that ha[s] been frozen above and beyond the government's most ambitious claims of fraud," and that as a result Ms. Ahmed is "entitled" to use a portion of those funds to pay her criminal legal fees. [Doc. # 276 at 3.] This argument fails for two independent reasons. First, as explained in the SEC's response to the Initial Motion, Ms. Ahmed has no Sixth Amendment right to spend another person's assets on her counsel. [*See* Doc. # 267 at 6.] Thus, even if the amount of the asset freeze was definitively above the amount necessary to compensate victims (which is it not, as explained below), Ms. Ahmed has still not identified any frozen, untainted assets belonging to her. [*See id.* at 6-7.] Second, Relief Defendants' suggestion that there are millions of dollars frozen above the amount that will be needed to make investor-victims whole is simply wrong. In

addition to the approximately $67 million that Mr. Ahmed fraudulently obtained from his victims, significant prejudgment interest – in the range of $10 million – will be needed to fully compensate victims. *See, e.g.*, *SEC v. Hasho*, 784 F. Supp. 1059, 1112 (S.D.N.Y. 1992) ("An award of prejudgment interest is intended to compensate an aggrieved party for the wrongful deprivation of its money."). [*See also* Doc. # 157 at 19 & n.12 (citing cases).] Even if the frozen assets (which include real estate) are all able to be liquidated at their current value, and without significant cost, it is far from a forgone conclusion that investor-victims will be made whole. The risk that the frozen assets will be insufficient should not be borne by the victims of Mr. Ahmed's fraud.

### c. Relief Defendants' Legal Bills are Not Reasonable.

Finally, even if the Court were inclined to permit the release of frozen funds for payment of criminal attorneys' fees, the Court should carefully scrutinize the fees and expenses to ensure that they are reasonable. [Doc. # 283 at 2 (requiring submission of invoice and billing records to "enable the Court to determine the reasonableness of the work represented to have consumed the original $202,443.31" and "the supplemental amount sought by" the Initial Motion).] For example, the rates charged by Ms. Ahmed's attorneys from the Harris St. Laurent firm are as high as $675 per hour, and her attorney from the Morvillo Abramowitz firm is $850 per hour. [*See, e.g.*, Doc. # 296-2 at 4, 21.] These rates are significantly higher than the top rate billed by senior partners at the Murtha Cullina firm, which is located in Hartford, Connecticut and has also performed work on this matter. [*See, e.g.*, Doc. # 300-2 at 3 (noting hourly rate for P. Knag of $585 per hour).[1]] In addition, many of the entries appear unreasonable on their face. For

---

[1] Mr. Knag is a partner at Murtha Cullina and co-chair of one of the firm's practice groups. *See* http://www.murthalaw.com/our_people/paul-knag. The SEC notes that it did not object to the Relief Defendants' request for release of approximately $65,000 from the rental proceeds of one

- 4 -

example, counsel appears to have charged their full hourly rate for travel to and from various meetings and conferences, including a May 13, 2016 charge of $8,100 – 12 hours at a rate of $675 per hour – to "travel to and from USAO in Boston for meeting." [Doc # 296-2 at 12.[2]] Other entries are so vague as to be impossible to discern whether they are reasonable.[3] Still other entries appear as though they may not be related to the criminal case at all.[4] Should the Court determine that the release of fees is appropriate – which the SEC strongly contends it is not – the SEC respectfully requests the Court carefully scrutinize the requested amount.

       Finally, should the Court determine that the release of fees is appropriate, the SEC respectfully requests that the Court concurrently order Relief Defendants to sell illiquid assets to replace the fees released.[5] Such an order would prevent the depletion of the pool of frozen, liquid assets that will likely be needed to make investor-victims whole. Further, such an order is

---

of Relief Defendants' apartments for the payment of civil legal fees. [*See* Doc. # 300.] This position, however, in no way concedes that Relief Defendants' rates are reasonable. Rather, since Relief Defendants were seeking only a small portion of the fees billed to date, the SEC did not object to the release. [*See* Doc. # 300 at 3-4 (seeking release of $58,500 of $820,000 due to the Harris St. Laurent firm and $6,500 of $83,000 due to the Murtha Cullina firm).]

[2] *See also id.* at 2 (6-7-2015 entry for 7.0 hours to "travel to and from client meeting; initial client meeting; telephone call with client," 6-9-2015 entry for 10.5 hours to "travel to Greenwich, meet with client; internal meetings re: strategy; email with client and other counsel"), 3 (7-6-2015 entry for 12.0 hours to "travel to boston to attend hearing; meet with client; prepare for hearing; hearing," 8-4-2015 entry for 12.5 hours to "travel to and from Boston; hearing in Boston"), 17 (3-7-2016 entry for 3.0 hours to "[t]ravel to/from Harris St. Laurent and meeting with client, L. Reimer and P. Chaudry and J. Harris").

[3] *See, e.g.*, Doc. # 296-2 at 2 (6-8-2015 entry by A. St. Laurent for "[w]ith PC re: case strategy"), 3 (8-5-2015 entry by A. St. Laurent for "[w]ith PC re: D. Mass proceedings").

[4] *See* Doc. # 296-2 at 3 (7-20-2015 entry for 12.0 hours to "work on pre-hearing brief"). On July 20, 2015 the Relief Defendants filed a prehearing brief in advance of the preliminary injunction hearing in this civil case. [Doc. # 69.]

[5] As the SEC has noted in prior briefing, any assets sold should in fact be illiquid and not, for example, gold bars. [*See* Doc. # 245 at 10-11.]

consistent with the spirit of the Court's February 19, 2016 order modifying the asset freeze, which required Relief Defendants to liquidate assets to replace funds released for living expenses and to pay vendors of residential services, and further permitted payment of civil attorneys' fees only from funds generated by the rental of one of Relief Defendants' New York City apartments. [*See* Doc. # 195.]

### IV.    Conclusion

For the reasons outlined herein and in the SEC's response to Relief Defendants' Initial Motion, Relief Defendants' Renewed Motion for payment of criminal fees should be denied.


DATED: September 14, 2016.

*s/ Nicholas P. Heinke*
Nicholas P. Heinke
Mark L. Williams
U.S. Securities and Exchange Commission
1961 Stout Street, Suite 1700
Denver, CO 80294-1961
(303) 844-1071 (Heinke)
(303) 844-1027 (Williams)
HeinkeN@sec.gov
WilliamsML@sec.gov
Attorneys for Plaintiff

- 7 -

## CERTIFICATE OF SERVICE

I certify that on September 14, 2016, a copy of the foregoing document was emailed to Defendant Iftikar Ahmed at IftyAhmed@icloud.com, and served via ECF upon the following:

Jonathan Harris
Reid Skibell
David Deitch
Alexander Sakin
Harris, O'Brien, St. Laurent & Chaudhry LLP
111 Broadway, Suite 1502
New York, NY 10006
(Counsel for Relief Defendants).

                    s/ *Nicholas P. Heinke*
                    Nicholas P. Heinke