UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | )    Civil Action No. 3:15cv675 (JBA) |
| IFTIKAR AHMED, | ) ) ) |
| Defendant, and | ) ) |
| IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Relief Defendants. | ) ) |

_____ )

**PLAINTIFF UNITED STATES SECURITIES AND EXCHANGE COMMISSION'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR INCLUSION OF ALL UNTAINTED ASSETS**

Plaintiff United States Securities and Exchange Commission ("SEC") hereby files this opposition to Defendant Iftikar Ahmed's motion requesting that Oak Investment Partners ("Oak") transfer certain interests into frozen bank accounts [Doc. # 303] ("Motion").

Defendant's Motion is without merit and should be denied.

## I.    Introduction

Iftikar Ahmed defrauded his former employer Oak and its investors out of more than $65 million before fleeing the United States in direct violation of a court order.  *See* SEC Emergency Motion Clarifying and Amending Temporary Restraining Order Freezing Assets [Doc. # 23] at ¶¶ 1 – 9.  Mr. Ahmed then sought to access frozen assets in violation of this Court's Temporary Restraining Order, and in violation of the stipulation Mr. Ahmed had previously entered into with the SEC.  *Id.* at ¶ 15.  While residing in India as a fugitive of justice, Mr. Ahmed now announces that he is owed money from Oak – through various interests he held at Oak – and that these interests should be placed into a frozen bank account because it is Oak that cannot be trusted to abide by the Court ordered asset freeze.  The irony should not be lost on this Court.

The SEC has obtained no evidence supporting Mr. Ahmed's allegations, many of which appear incredible on their face.  The SEC has confirmed with Oak that – regardless of the merits of Mr. Ahmed's claims to certain interests – Oak has not dissipated or reallocated any such interests in light of the Court's Temporary Restraining Order and Preliminary Injunction Order Freezing Assets (together, the "Asset Freeze Orders").  Because there is no evidence that Oak is not complying with the Asset Freeze Orders – aside from unreliable accusations made by Mr. Ahmed – Oak should be trusted to abide by the Asset Freeze Order like any other person or entity similarly holding interests or assets subject to the freeze.

Further, Mr. Ahmed appears to vastly overstate both the value of the alleged interests, as well their liquidity and transferability.  The SEC has a strong interest in maximizing the value of the assets available for disgorgement, prejudgment interest, and a significant civil penalty in light of Mr. Ahmed's extraordinary conduct.  Even so, Mr. Ahmed's claim that there is a "significant package of economic value" (Motion at 5) held by Oak is difficult to credit.  This Court has

already found that there is uncertainty as to whether Mr. Ahmed's carried interest account will materialize into an asset available for victim recovery, and Mr. Ahmed provides no reason for the Court to reconsider that decision. The remaining interests are no different. While the Court need not decide at this juncture whether or not Mr. Ahmed's claims to the Oak interests are valid, in light of the uncertainty, those interests should not be included in the calculation of assets available to satisfy a judgment against Mr. Ahmed (aside from the approximately $2.8 million described below, which has already been included in the calculation of assets). The risk that these interests will not materialize should be borne by Mr. Ahmed, not the victims of his fraud.

## II.     Argument

First, the Court should be skeptical of any statements made by Mr. Ahmed. As this Court is aware, Mr. Ahmed has not hesitated to make false statements, manufacture false documents, violate court orders, and mislead judicial officers. Mr. Ahmed has more than earned this distrust.

Second, the SEC has (again) confirmed with Oak's attorneys that Oak has not consumed, dissipated, spent, or otherwise encumbered any interests belonging to Mr. Ahmed, or interests to which Mr. Ahmed may have once had a claim.[1] This includes each of the four "direct forms of investment and investment related economic interests associated with this employment with Oak" referenced in Mr. Ahmed's Motion. Motion at 2. Notably, the Commission has obtained no evidence supporting Mr. Ahmed's allegations to the contrary.

Indeed, more than one year ago, Oak confirmed its intent to abide by the Court's Asset Freeze Orders. At the July 23, 2015 hearing on the SEC's motion for a preliminary injunction, the Court specifically questioned a representative of Oak – Ms. Grace Ames – about whether any

---

[1] To the extent the Court wishes to hear directly from Oak on this matter, Oak has confirmed to undersigned counsel that a representative would be available to produce a declaration on these issues or otherwise answer any questions from the Court.

distributions had been made from Mr. Ahmed's carried interest account (none had), and then ordered Oak to notify the SEC before making any distribution.  (Exhibit 1: July 23, 2015, Hearing Tr. at pp. 122-125).  The SEC has (again) confirmed with Oak that they remain aware of the Asset Freeze Order, that Oak must alert the SEC prior to making any distribution of any investments or assets belonging to Mr. Ahmed, or investments or assets to which Mr. Ahmed may have once had a claim, and that no such distributions have been made to date.

Third, even if the four categories of interests in Mr. Ahmed's motion still belong to him (a point that Oak disputes, and that is addressed below), Mr. Ahmed vastly overstates both their value and liquidity.  Mr. Ahmed claims four types of interests in Oak: (1) carried interest, (2) an Incentive Performance Plan or "IPP"; (3) certain direct investments in Oak funds; and (4) equity ownership in Oak's management company. The Court should ascribe no value to these interests beyond the approximately $2.8 million in a direct investment that has already been included in the list of assets which are part of the corpus of the asset freeze.

Mr. Ahmed declares that his "carried interest" is "easily in the $60 million range" (Motion at 3), but for support provides only a spreadsheet that he likely created[2] and which assumes that every single Oak fund will double in value.  *See* Exhibit 2.[3]  As a threshold matter, the carried interest issue has already been litigated, and Mr. Ahmed provides no reason the Court should reconsider its prior ruling:

> …the SEC and Ms. Ames disputed that the funds in this account
> are an asset available for freezing and instead contended that Mr.
> Ahmed's carried interest represented only an expectancy of an
> entitlement to future income by Mr. Ahmed on Oak's profits but

---

[2] The SEC has confirmed with Oak's attorneys that this spreadsheet was not prepared by Oak.

[3] Although not relevant to the instant Motion, Mr. Ahmed statement that "Carried Interest payments start only after all the invested capital from the investors is first returned back to the investors" (Motion at 2) is not accurate.  There are several other hurdles that need be cleared before funds are paid out.

> any such interest was (1) still uncertain and (2) forfeited due to his
> disabling conflict of interest and termination from Oak. Thus, there
> is great uncertainty as to whether this carried interest account will
> materialize into an asset available for victim recovery and in the
> face of this uncertainty, the Court cannot assume that it will.

Ruling and Order Granting Preliminary Injunction [Doc. # 113] at 14-15.  Moreover, Mr. Ahmed

provides no support for his valuation assumptions.  Although Mr. Ahmed values the carried

interest at $62.2 million (Motion at 11, Ex. 2), Relief Defendants previously argued it was worth

closer to $23 million (Rel. Defs.' Prehr'g Brief in Opp'n to Prelim. Inj. [Dkt. # 69] at 12; 25-30).

Oak has informed undersigned counsel that carried interest stands at approximately $17.3 million

as of June 30, 2016.  Putting aside the issue that carried interest is not payable, and the dispute

over its current ledger balance, for the reasons the Court has already found, carried interest

should not be included in the valuation of the corpus of frozen assets.

Mr. Ahmed makes a similar claim that he is entitled to performance-based bonus

payments under Oak's Incentive Performance Plan ("IPP").  However, IPP, like carried interest,

is an asset that Oak contends was forfeited as a result of Mr. Ahmed's conduct (*i.e.* fraud) and

termination.  In any event, Oak has informed undersigned counsel that Mr. Ahmed's IPP ledger

balance had a negative valuation at the time this Court entered its first Asset Freeze Order (and at

the time he was terminated), and indeed still has a negative valuation as of the last valuation

period.  Notably, Mr. Ahmed provides nothing to support his "$15 million range" claim.  Motion

at 4.

Mr. Ahmed did have two direct investments: (1) investments in General Partner entities

in the Oak funds; and (2) investments in the Limited Partner entities associated with the Oak

funds.  The former, Oak contends, was forfeited due to Mr. Ahmed's disabling conduct.  The

latter, which as of November 2015 had a reported value of approximately $2.8 million, has

already been included in the corpus of the frozen assets.[4]  *See* SEC Opp'n to Relief Defs.' Mot. to Modify [Doc. # 157] at 11.

      Mr. Ahmed's claim to equity ownership in Oak's management company is similarly suspect.  As a threshold matter, his claim that his equity ownership was worth more than $50 million is submitted without support.  Further, Oak has informed undersigned counsel that pursuant to the operative documents, Mr. Ahmed's shares in Oak's management company are illiquid and not transferable.  Moreover, all Mr. Ahmed would be entitled to receive for these shares upon leaving Oak (whether voluntarily or otherwise) is $5 per share for 240 shares, or a total of $1,200.

      For all of these reasons, even if Mr. Ahmed could eventually make a claim to certain of these interests – a point that is uncertain, as discussed below – they are hard to value, illiquid assets that cannot be "transfer[red] … into a joint untainted frozen bank account."  Motion at 6.

      <u>Lastly</u>, even assuming it was possible, the action Mr. Ahmed requests – a transfer of the interests from Oak to a bank account in his name – would essentially require the Court to make a finding that these interests in fact belong to Mr. Ahmed.  Were the Court to consider this request, it should do so on a much more developed record, and Oak should be given the chance to be heard.  Notably, a representative of Oak appeared at the preliminary injunction hearing; Mr. Ahmed did not.  In any event, based on the information the SEC has obtained from Oak, it is far from clear that such a finding – that the  interests at issue belong to Mr. Ahmed – would be correct.  Oak contends that under the unambiguous terms of the relevant contractual agreement

---

[4] As noted in a prior filing, the total figure is $3.8 million, but Oak has represented to the SEC that there are restrictions on the transfer of this investment, and that, because of Mr. Ahmed's removal as a member, the vested portion of his investment as of November 2015 has a value of approximately $2.8 million.  *See* SEC Opp'n to Relief Defs.' Mot. to Modify [Doc. # 157] at 11, n. 6.

signed by Mr. Ahmed, the vast majority of his interests in Oak were forfeited by Mr. Ahmed by virtue of his disabling conduct (*i.e.* his fraud), and thus no longer belong to him.  While the Court need not determine at this stage the issue of ownership of the Oak interests, the Court should recognize the risk associated with any of these Oak interests being available to compensate victims (through disgorgement or prejudgment interest) or to pay a civil penalty.

Moreover, Mr. Ahmed's arguments to the contrary are not persuasive.  According to Mr. Ahmed, because this Court entered a temporary restraining order freezing assets on May 7, 2015, and because Mr. Ahmed was not officially terminated until May 18, 2015, all of the above investments "came into the TRO order's purview immediately after 18:50 Hours US EDT on the 7th of May 2015."  Motion at 5.  Mr. Ahmed appears to erroneously equate investments being within the TRO with assets that will be available for victim recovery.  Furthermore, Oak delayed terminating Mr. Ahmed's employment – which would have tipped off Mr. Ahmed that his fraud had been uncovered – until after the SEC had the opportunity to seek an asset freeze from this Court.  This delay – and the resulting asset freeze – is unquestionably the only reason Mr. Ahmed was not able to take his ill-gotten gains with him when he absconded to India.  Thus, despite his arguments to the contrary, it is unlikely that Mr. Ahmed has a right to the interests at issue simply because Oak terminated his employment after the Asset Freeze was in place.  In any event, at this time the Court need not decide whether Mr. Ahmed has a proper claim to these interests because, as noted above, the interests remain frozen at Oak.

### III.    Conclusion

For the reasons outlined herein, the Court should deny Defendant Iftikar Ahmed's Motion.  Aside from Mr. Ahmed's unsubstantiated allegations, the SEC has found no evidence that Oak has not complied with the Asset Freeze Orders.

DATED: September 28, 2016.

                                     *s/ Mark L. Williams* _____
                                     Nicholas P. Heinke
                                     Mark L. Williams
                                     U.S. Securities and Exchange Commission
                                     1961 Stout Street, Suite 1700
                                     Denver, CO 80294-1961
                                     (303) 844-1071 (Heinke)
                                     (303) 844-1027 (Williams)
                                     HeinkeN@sec.gov
                                     WilliamsML@sec.gov
                                     Attorneys for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

I certify that on September 28, 2016, a copy of the foregoing document was emailed to

Defendant Iftikar Ahmed at IftyAhmed@icloud.com, and served via ECF upon the following:

Jonathan Harris
Reid Skibell
David Deitch
S. Gabriel Hayes-Williams
Harris, St. Laurent & Chaudhry LLP
40 Wall Street, 53rd Floor
New York, NY 10005
(Counsel for Relief Defendants).


                                        s/ Mark L. Williams
                                        Mark L. Williams