UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br>    *Plaintiff*,<br>*v.*<br>IFTIKAR AHMED,<br>    *Defendant*, and<br><br>IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents,<br><br>    Relief Defendants. | Civil No. 3:15cv675 (JBA)<br><br><br>December 8, 2016 |

**RULING DENYING RELIEF DEFENDANTS' MOTION TO DISMISS CERTAIN CLAIMS IN THE SECOND AMENDED COMPLAINT**

Plaintiff United States Securities and Exchange Commission (the "SEC") brought this civil enforcement action against Defendant Iftikar Ahmed ("Mr. Ahmed") alleging fraud in the purchase or sale of securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 (Count One); fraud in the offer or sale of securities in violation of Section 17(a) of the Securities Act (Count Two); fraud by an Investment Adviser in violation of Sections 206(1) and 206(2) of the Advisers Act (Count Three); an undisclosed principal transaction in violation of Section 206(3) of the Advisers Act (Count Four); and fraud on pooled investment vehicle investors in violation of Section 206(4) of the Advisers Act and Rule 206(4)-8 (Count Five).  The SEC additionally seeks

relief in the form of equitable disgorgement against each respective Relief Defendant in Counts Six

through Fourteen. Relief Defendants Shalini Ahmed ("Ms. Ahmed") and her three minor children

I.1, I.2 and I.3, Shalini Ahmed 2014 Grantor Retained Annuity Trust, DIYA Holdings LLC and

DIYA Real Holdings LLC ("Defendants") now move [Doc. # 224] to dismiss all claims against them

in the Second Amended Complaint [Doc. # 208] ("Am. Compl.") that arise from events alleged to

have occurred prior to May 6, 2010 on the ground that such claims are time-barred.[1] For the

following reasons, Defendants' motion is denied.

## I.   Background

The SEC brought this action against Iftikar Ahmed on May 6, 2015 after Mr. Ahmed was

criminally charged in the District of Massachusetts for unrelated allegations of insider trading. *See*

*SEC v. Ahmed*, 123 F. Supp. 3d 301, 306 n.1 (D. Conn. 2015). Plaintiff also included Relief

Defendants in this action who it claims are the beneficiaries or custodians of at least some of the

proceeds of Defendant's wrongful acts.  Plaintiff alleges that Mr. Ahmed defrauded the venture

capital firm of which he was a partner, Oak Investment Partners ("Oak"), as well as pooled

investment funds managed by Oak, and companies held in those funds' portfolios, out of more

than $65 million. (Am. Compl. ¶ 1.) According to Plaintiff, Mr. Ahmed employed fraudulent

devices and misrepresentations in connection with several of Oak's investments by "frequently

misrepresent[ing] and alter[ing] the price[s] of . . . investment[s] . . . misrepresent[ing] the

---

[1] Although Defendant Iftikar Ahmed purports to join [Doc. # 230] the Relief Defendants' Motion to Dismiss, as Plaintiff points out, his motion is untimely. Defendant filed his Memorandum in Support of Relief Defendants' Motion to Dismiss on May 19, 2016. However, pursuant to the Scheduling Order [Doc. #205] issued on February 26, 2016, Defendant had only until April 22, 2016 to file a motion to dismiss. Instead, Defendant filed an Answer on April 22, 2016.

exchange rate at which foreign currency purchase price[s] [were] to be converted to the U.S. currency purchase price[s]," inflating costs and company performance, and fabricating or altering invoices for purported expenses. (*Id.* ¶¶ 2–3.)

Defendants' motion focuses on securities transactions that occurred prior to May 6, 2010, i.e., five years prior to the filing of the Complaint May 5, 2016, which Defendants contend are beyond of the applicable statute of limitations and thus time barred. (Def.'s Mem. Supp. Mot. to Dismiss [Doc. # 224] at 2–3.)  Specifically, Defendants challenge the disgorgement sought by the SEC relating to the following alleged transactions or conduct:

1. That between 2004 and 2007 Mr. Ahmed defrauded Oak of at least $9.85 million in connection with a securities sales transaction with an entity identified as "Company D" and that Mr. Ahmed retained some of that money in accounts he controlled jointly with his wife, Ms. Ahmed. (Am. Compl. ¶¶ 29-43.)

2. That in 2005 Mr. Ahmed misappropriated $1.4 million in a transaction with "Company E" and transferred the funds into a bank account he held jointly with Ms. Ahmed. (*Id.* ¶¶ 44-49.)

3. That Mr. Ahmed misappropriated $1.8 million in connection with a dividend payment on shares purchased by Oak in "Company J" in 2006, and transferred the money into a bank account held jointly with Ms. Ahmed. (*Id.* ¶¶ 51-54.)

4. That in 2007 Mr. Ahmed misappropriated $675,000 in a transaction to sell shares in "Company F" and transferred approximately $515,000 of that money into an account held jointly with Ms. Ahmed. (*Id.* ¶¶ 56-61.)

5. That between November 2007 and October 2009 Mr. Ahmed misappropriated approximately $6.8 million in a series of securities sales transactions involving

"Company G" and that he subsequently transferred those funds into bank accounts held jointly with Ms. Ahmed. (*Id.* ¶¶ 63-69.) Also, that between October 2011 and April 2013 Mr. Ahmed presented Oak with a series of fraudulent invoices in connection with the sale of "Company G" shares totaling approximately $5.283 million and that after receiving the funds from Oak he transferred them into bank accounts he held jointly with Ms. Ahmed. (*Id.* ¶¶ 70-76.)[2]

6. That Mr. Ahmed misappropriated approximately $2.2 million in reimbursements sent to Oak by "Company H" between January and April 2009, and that he proceeded to transfer these funds into a bank account jointly held with Ms. Ahmed. (*Id.* ¶¶ 78-80.)

## II. Discussion

Defendants maintain that the five-year statute of limitations period imposed by 28 U.S.C. § 2462 applies to actions seeking disgorgement, and thus all claims for disgorgement which relate to transactions that occurred prior to May 6, 2010 are barred. Plaintiff responds that by its own terms Section 2462 applies only to a "civil fine, penalty, or forfeiture," and that the equitable remedy of disgorgement is none of these, and therefore its claims for disgorgement are not barred by the statute of limitations. 28 U.S.C. § 2462.

### A.  Defendants' Standing to Assert the Statute of Limitations Defense

---

[2] The transactions that occurred between October 2011 and April 2013 clearly occurred after May 6, 2010 and thus are within the five-year limitations period. Therefore, even if Defendants were to prevail on their motion, disgorgement relating to those transactions would not be time-barred.

The SEC argues that Defendants do not have standing to contest whether the SEC may seek disgorgement from them. (Pl.'s Opp'n to Def.'s Mot. to Dismiss [Doc. # 240] at 17.) In the SEC's view, "Defendants are merely nominees for [Mr. Ahmed], and thus the ill-gotten gains the SEC seeks to disgorge from Mr. Ahmed belong to him" and not Defendants. Defendants respond that in order for the SEC to obtain a disgorgement remedy, it must first prove that Defendants "(1) have received ill-gotten funds; and (2) do not have a legitimate claim to those funds." (Def.'s Reply Supp. Mot. to Dismiss [Doc. # 250] at 7.) Thus, they argue they have standing to assert the statute of limitations defense as to disgorgement on the underlying claims. (*Id.* at 8.)

The Court issued a preliminary injunction freezing "[t]he assets, funds, or other property held by or under the direct or indirect control of Defendant Iftikar Ahmed and Relief Defendants . . . whether held in any of their names or for their direct or indirect beneficial interests, wherever located, up to the amount of $118,246,186." (*See* Ruling and Order [Doc. #113].) The Second Circuit affirmed this preliminary injunction by Summary Order dated November 4, 2016. *See S.E.C. v. I–Cubed Domains, LLC*, No. 15-2658-CV, 2016 WL 6561484 (2d Cir. Nov. 4, 2016). However, final determinations of whether those assets are in fact owned by Defendants, independently of Mr. Ahmed, await trial, and as long as the question of ownership remains open, Defendants have standing to contest whether these assets should be subject to disgorgement.[3]

_____

[3] The SEC also argues that even were they not nominees, Defendants do not have standing because they "do not argue that any of the transactions they challenge form the basis of disgorgement against them." (Pl.'s Opp'n to Def.'s Mot. to Dismiss at 18.) However, Defendants correctly point out that "the SEC sought an injunction and freeze order based upon the full amount of the alleged fraud on all claims as to assets held by the Relief Defendants," thus making it clear that "the SEC is seeking disgorgement . . . of funds related to the transactions which the Relief Defendants challenge." (Def.'s Reply Supp. Mot. to Dismiss at 6.)

**B.  Applicability of Section 2462 to Claims for Disgorgement[4]**

Section 2462 sets forth a general limitations period for civil suits seeking certain sanctions

under the United States Code. *See Gabelli v. S.E.C.*, 133 S. Ct. 1216, 1219 (2013). It reads:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for
> the enforcement of any *civil fine, penalty, or forfeiture*, pecuniary or otherwise, shall
> not be entertained unless commenced within five years from the date when the
> claim first accrued if, within the same period, the offender or the property is found
> within the United States in order that proper service may be made thereon.

28 U.S.C. § 2462 (emphasis added). Thus, Section 2462's statute of limitations period on its face

applies only to civil fines, penalties or forfeitures. Nonetheless, Defendants argue that

disgorgement is also covered by this statute of limitations period, even though not specified in the

statute, because "the term 'forfeiture' in Section 2462 is not limited to any specific statutory

provision using that label, and can be deemed to include claims labeled as seeking 'disgorgement'

where such claims essentially seek the same form of relief" (Def.'s Mem. Supp. Mot. to Dismiss at

7).

       i.     **Disgorgement as an Equitable Remedy**

---

[4] Defendants alternatively argue that "[e]ven if the court should conclude that the
expiration of the statute of limitations does not directly apply to an equitable disgorgement claim,
Section 2462 is powerful evidence of laches under the concurrent remedy rule." (Def.'s Mem. Supp.
Mot. to Dismiss at 7 n. 5.) In support, Defendants argue that "where, as here, the government's
claim for injunctive relief is connected to a claim for legal relief, the statute of limitations for that
legal relief applies to both." *Id.* Because Defendants do not develop this argument further and fail
to identify any specific claim for legal relief by the SEC that is tied to the disgorgement of
Defendants and that is barred by a statute of limitations, this issue is not addressed.

The terms disgorgement and forfeiture must be interpreted "in light of [Section 2462's] history . . . [and according to] the meaning generally accepted in the legal community at the time of enactment." *Office of Workers' Comp. Programs v. Greenwich Collieries*, 512 U.S. 267, 275 (1994) (interpreting the meaning of the term "burden of proof" in the Administrative Procedure Act); *see also Perrin v. United States*, 444 U.S. 37, 42 (1979) (the court "look[s] to the ordinary meaning of the term 'bribery' at the time Congress enacted [the Travel Act] in 1961" because language in statutes must "be interpreted as taking [its] ordinary, contemporary, common meaning."). Section 2462 was codified in 1948 but its predecessor statutes date back to the 1790s and its statutory language has changed little since. *3M Co. v. Browner*, 17 F.3d 1453, 1458 n. 7 (D.C. Cir. 1994). Consequently, for guidance, the Court looks to the meaning of these two terms as they were understood at the end of the 18th century when Congress enacted the initial version of this statute.

In *SEC v. Cavanaugh*, the Second Circuit recognized that although "the term 'disgorgement' has entered common legal parlance only recently . . . the ancient remedies of accounting, constructive trust, and restitution have compelled wrongdoers to 'disgorge'-*i.e.*, account for and surrender-their ill-gotten gains for centuries" with "chancery courts [having] possessed the power to order equitable disgorgement in the eighteenth century." 445 F.3d 105, 119-20 (2d Cir. 2006). Thus, since the antecedents of Section 2462, disgorgement has been "understood to be an equitable remedy allowing chancery courts to order the repayment of ill-gotten gains." *S.E.C. v. Saltsman*, No. 07CV4370NGGRML, 2016 WL 4136829, at *25 (E.D.N.Y. Aug. 2, 2016) (citing *Cavanaugh*, 445 F.3d at 116-20)).

Forfeiture, on the other hand, was a legal remedy with two generally accepted meanings. *Id.* It was an *in rem* statutory civil remedy to recover property used in criminal activity, including

7

violations of customs and revenue laws. *Austin v. United States*, 509 U.S. 602, 612 (1993); *United States v. 92 Buena Vista Ave.*, 507 U.S. 111, 118-19 (1993). Therefore, "[t]he owner of the seized property could be completely innocent of any wrongdoing, and the value of the property taken have no necessary relation to any loss to others or gain to the owner." *S.E.C. v. Kokesh*, No. 15-2087, 2016 WL 4437585, at \*5 (10th Cir. Aug. 23, 2016).

Second, forfeiture was used as a synonym for a fine. *Austin*, 509 U.S. at 614 n.7 ("[D]ictionaries [from the end of the 18th century] confirm that 'fine' was understood to include 'forfeiture' and vice versa.").[5] Reflecting the distinction between the equitable and legal remedies, "early disgorgements and forfeitures proceeded before different tribunals and on different legal theories." *Saltsman*, 2016 WL 4136829, at \*25 (citing *Stevens v. Gladding*, 58 U.S. 447, 450 (1854) ("[E]quity cannot relieve against common law or statute penalties and forfeitures"); *Horsburg v. Baker*, 26 U.S. 232, 236 (1828) ("[A] Court of Chancery is not the proper tribunal for enforcing forfeitures.")).

Courts continue to view these two remedies as distinct, with different characteristics and purposes. The Supreme Court recently noted that unlike forfeiture, disgorgement is an equitable remedy that "applies only to specific assets," *Kaley v. United States*, 134 S. Ct. 1090, 1102 n.11 (2014). Moreover, the Second Circuit has clearly articulated the differences between the two terms.

---

[5] The Supreme Court cited the following Eighteenth Century dictionaries to support its conclusion: 1 T. Sheridan, A General Dictionary of the English Language (1780) (unpaginated) (defining "fine" as: "A mulct, a pecuniary punishment; penalty; forfeit, money paid for any exemption or liberty"); J. Walker, A Critical Pronouncing Dictionary (1791) (unpaginated) (same); 1 Sheridan, *supra* (defining "forfeiture" as: "The act of forfeiting; the thing forfeited, a mulct, a fine"); Walker, *supra* (same); J. Kersey, A New English Dictionary (1702) (unpaginated) (defining "forfeit" as a "default, fine, or penalty").

*See e.g., S.E.C. v. Contorinis*, 743 F.3d 296, 306 (2d Cir. 2014) ("disgorgement is an equitable remedy that prevents unjust enrichment" whose "underlying purpose is to make lawbreaking unprofitable for the law-breaker" while "forfeiture [is] a statutory legal penalty imposed as punishment");[6] *S.E.C. v. Lorin,* 869 F.Supp. 1117, 1122 (S.D.N.Y. 1994) (disgorgement "merely deprives one of wrongfully obtained proceeds" and "returns the wrongdoer to the status quo before any wrongdoing had occurred," whereas forfeiture "alter[s] the status quo before the unlawful activity took place")[7] (citing *S.E.C. v. Texas Gulf Sulphur Co.*, 446 F.2d 1301, 1308 (2d Cir. 1971)).[8]

Significantly, Section 2462 has been interpreted as applying only to punishments. *See Meeker v. Lehigh Valley R. Co.*, 236 U.S. 412, 423 (1915) ("The words 'penalty or forfeiture' in [the

---

[6] While Defendants are correct that Section 2462 was not at issue in *Contorinis*, they fail to explain how this has significance with respect to the differences drawn between forfeiture and disgorgement as applied to the question of whether Section 2462 covers disgorgement. (*See* Def.'s Reply Supp. Mot. to Dismiss at 5.)

[7] The following example provided in *Lorin* illustrates this difference.

> An individual who stole an item might be required to return the item, serve time in jail, and pay an amount of money to the government. Returning the item puts the individual where he or she would have been had he or she not stolen the item, and is therefore similar to disgorgement. Simultaneously, the victim of the theft is generally returned to where he or she would have been had the theft not occurred. Serving time in jail and paying money to the government, meanwhile, do not serve the purpose of returning the affected parties to the status quo, and therefore serve the purpose of fines, penalties, and forfeitures.

869 F.Supp. at 1122.

[8] Further support for the conclusion that these two terms are not interchangeable is found in the Restatement (Third) of Restitution and Unjust Enrichment: "[d]isgorgement of wrongful gain is not a punitive remedy," § 51 cmt. k, and "[t]he object of restitution [in the disgorgement context] . . . is to eliminate profit from wrongdoing while avoiding, so far as possible, the imposition of a penalty" § 51(4). In fact, the Restatement notes that if punishment is required, disgorgement can be supplemented with exemplary damages. *See id.* § 51 cmt. k.

antecedent to] this section refer to something imposed in a punitive way"); *S.E.C. v. Power*, 525 F. Supp. 2d 415, 426 (S.D.N.Y 2007) (stating that "[t]he primary consideration when determining whether a claim seeks a 'penalty' to which Section 2462 applies is whether the remedy at issue is 'punitive' or 'remedial' in nature."). It is therefore critical that courts in the Second Circuit have found that disgorgement is not punitive, whereas forfeiture is. *See S.E.C. v. DiBella*, 409 F.Supp. 2d 122, 127 (D. Conn. 2006) (stating that "[p]enalties and forfeitures are meant to be punitive . . . [whereas] [d]isgorgement . . . merely dispossesses the wrongdoer of the profits earned from illegal conduct.").[9] As a result of this distinction, *Contorinis* found that because "forfeiture is punitive in nature, it would be irrational to impose it upon innocent third parties, whereas disgorgement's purpose—the prevention of unjust enrichment—would be thwarted if securities law violators were able to pass their illicit gains off to affiliates." *Contorinis*, 743 F.3d at 307.[10]

---

[9] This distinction is further underscored by a comparison of *S.E.C. v. Wyly*, 56 F. Supp. 3d 394 (2014) (finding that "disgorgement does not constitute a penalty") and *S.E.C. v. Vuono*, No. 13-MC-405 JFB, 2013 WL 6837568, at *6 (E.D.N.Y. Dec. 26, 2013) (holding that "disgorgement is equitable as a matter of law and . . . remedial in nature, rather than punitive"), with *Austin v. United States*, 509 U.S. 602, 616 (1993) (explaining that "forfeiture proceedings historically have been understood as imposing punishment"), and *Contorinis* 743 F.3d at 307 (finding that forfeiture is "punitive in nature.")).

[10] Defendants appear to argue that disgorgement is somehow different when pursued against third party recipients rather than the defendant. (Def.'s Reply Supp. Mot. to Dismiss at 4.) They note that in *Contorinis* the disgorgement award was not a forfeiture of ill-gotten gains for the defendant's own use, but related to profits the defendant made for others. (*Id.*) Defendants point out that the court indicated that "one argument in favor of requiring disgorgement from the trader is that he is culpable, while the third party recipients, though unjustly enriched, may have been unaware of any wrongdoing." (*Id.*) (citing *Contorinis*, 743 F.3d at 305 n.4). However, the court ultimately found that because "disgorgement is designed to equitably deprive those who have obtained ill-gotten gains of enrichment, it may be imposed upon innocent third parties who have received such ill-gotten funds and have no legitimate claim to them" and further noted that its holding "is consistent with disgorgement's remedial purpose—disgorgement is imposed not to punish, but to ensure illegal actions do not yield unwarranted enrichment even to innocent

10

Accordingly, because Section 2462's statute of limitations covers only fines, penalties or forfeitures, all of which are punitive, the Court concludes that its statute of limitations does not apply to claims for disgorgement, which is not punitive but remedial.

> ii.   *Gabelli* **and Defendants' Argument That § 2462 Applies to Claims for the Equitable Remedy of Disgorgement**

Defendants rely on the Supreme Court's decision in *Gabelli* to support their contention that the SEC is precluded from seeking disgorgement of Defendants' ill-gotten gains for conduct that occurred more than five years before the complaint was filed because the remedy it seeks is in the nature of a forfeiture. However, *Gabelli* specifically stated that the timeliness of disgorgement and other equitable remedies was not before it, *see Gabelli*, 133 S. Ct. at 1220 n.1, and only held that the discovery rule would not extend the five-year statute of limitations applicable to the SEC's claims for civil penalties under Section 2462 "which go beyond compensation, are intended to punish, and label defendants wrongdoers" *Id*. at 1223.[11]

Defendants argue that even though *Gabelli* did not address Section 2462 in the context of disgorgement, its rationale with respect to forfeiture claims applies equally to disgorgement. (Def.'s Reply Supp. Mot. to Dismiss at 4.) *Gabelli* reasoned that applying the discovery rule to Section 2462 would vitiate the statute of limitations because "[i]t would leave defendants exposed to

---

parties." *Contorinis*, 743 F.3d at 305-07.  Thus, Defendant's suggestion that *Contorinis* stands for the idea that disgorgement is improper against innocent third party defendants lacks merit.

[11] The Second Circuit's description of disgorgement as a nonpunitive remedy to "deter violations of the securities laws by depriving violators of their ill-gotten gains" distinguishes disgorgement from Section 2462's civil penalties, which *Gabelli* characterizes as being "intended to punish." *See S.E.C. v. Fischbach Corp.*, 133 F.3d 170, 175 (2d Cir. 1997); *see also SEC v. Tome*, 833 F.2d 1086, 1096 (2d Cir. 1987); *SEC v. Wang*, 944 F.2d 80, 85 (2d Cir. 1991); *First Jersey Securities*, 101 F.3d at 1474; *Contorinis*, 743 F.3d at 301.

Governmental enforcement action not only for five years after their misdeeds, but for an additional uncertain period into the future." 133 S. Ct. at 1223. Defendants urge the Court to extend this rationale to the remedy of disgorgement, citing *S.E.C. v. Graham*, 21 F. Supp. 3d 1300 (S.D Fla. 2014) *aff'd*, 823 F.3d 1357, 1363–64 (11th Cir. 2016).[12]

However, there is substantial authority within the Second Circuit that Section 2462's statute of limitations does not apply to claims for disgorgement and none suggesting otherwise.[13] Even the post-*Gabelli* decisions demonstrate that *Gabelli* has not thus far altered this consensus. Most recently, the district court in *Securities and Exchange Commission v. Straub*[14] declined to depart from "the weight of the authority in this jurisdiction hold[ing] that disgorgement, being a

---

[12] Discussed *infra* at subsection (II)(B)(iii).

[13] The following cases predate *Gabelli* but definitively establish that the Second Circuit then viewed Section 2462 as being inapplicable to claims for disgorgement. *See Vuono*, 13-MC-405 JFB, 2013 WL 6837568, at *6 (E.D.N.Y. Dec. 26, 2013) ("[E]quitable claims which do not constitute a civil fine, penalty, or forfeiture' are not subject to the statute of limitations contained in Section 2462.") (internal quotations omitted) (alteration in original); *S.E.C. v. Straub*, 11 CIV. 9645 RJS, 2013 WL 4399042, at *5 (S.D.N.Y. Aug. 5, 2013) ("However, even if reversal would eliminate the SEC's claim for civil penalties, the claims for disgorgement and injunctive relief would still survive."); *S.E.C. v. Power*, 525 F.Supp.2d 415, 426 (S.D.N.Y.2007) ("Disgorgement is an equitable remedy to which Section 2462 does not apply."); *DiBella*, 409 F.Supp.2d at 127 ("Section 2462 does not preclude disgorgement actions brought by the SEC where the claim seeks to deprive[ ] one of wrongfully obtained proceeds.") (internal citations and quotation omitted) (alteration in original); *Lorin*, 869 F.Supp. 1117, 1122 (S.D.N.Y. 1994) ("I will not label disgorgement a 'fine, penalty, or forfeiture.'") (citing *S.E.C. v. Texas Gulf Sulphur Co.*, 446 F.2d 1301, 1308 (2d Cir. 1971)). Defendants argue that these cases are distinguishable and "not instructive or controlling." (Def.'s Reply Supp. Mot. to Dismiss at 6.) The Court acknowledges that both *Vuono* and *Straub* involve significantly different circumstances, but this does not negate the fact that, at least in *dicta*, those courts believed that Section 2462 does not apply to disgorgement.

[14] The companion case is *S.E.C. v. Straub*, 11 CIV. 9645 RJS, 2013 WL 4399042 (S.D.N.Y. Aug. 5, 2013), cited *supra* at footnote 12.

traditional equitable remedy, is not covered by Section 2462." No. 11 CIV. 9645 (RJS), 2016 WL

5793398, at *14 (S.D.N.Y. Sept. 30, 2016) (citing *Wyly*, 56 F. Supp. 3d at 402). In *S.E.C. v. Amerindo*

*Investment Advisors*, defendants unsuccessfully sought reconsideration of the court's grant of

summary judgment to plaintiff on claims involving disgorgement in light of *Gabelli* because "the

statute of limitations at issue in *Gabelli* applies only to civil penalties, and does not prevent a

finding of liability or an awarding of other kinds of remedies." No. 05 CIV. 5231 RJS, 2014 WL

405339, at *9 (S.D.N.Y. Feb. 3, 2014), *aff'd*, 639 F. App'x 752 (2d Cir. 2016) (defendants had waived

their Section 2462 statute of limitations argument but the Second Circuit opined that "[t]he district

court properly imposed disgorgement . . . and correctly limited civil penalties to gains only from

frauds occurring within the five-year statute of limitations for civil penalties.") (internal quotation

marks omitted). *See also S.E.C. v. Spongetech Delivery Systems, Inc* 10-CV-2031 DLI RML, 2015

WL 5793303, at *11 (E.D.N.Y. Sept. 30, 2015) (dictum) ("[u]nlike disgorgement, civil penalties are

subject to the five-year statute of limitations in 28 U.S.C. § 2462, which concerns the enforcement

of civil fines.").

Thus, while there has been no determination yet by the Second Circuit whether Section

2462's statute of limitations applies to claims for disgorgement,[15] the reasoning in the many district

court cases which have held that Section 2462 does not apply to disgorgement, buttressed by

Second Circuit cases with analogous analysis, persuade this Court that Defendants' motion must

be denied.

### iii.    This Court Declines to Follow *Graham*

---

[15] In *S.E.C. v. Wyly*, the district court addressed the precise question posed in the instant case. 56 F. Supp. at 402. Its conclusion that "[d]isgorgement, being an equitable remedy, is not subject to the five year statute of limitations under 28 U.S.C. § 2462," is currently under review by the Second Circuit. *See S.E.C. v. Wyly*, No. 15-2821 (2d Cir. 2015).

In *Graham*, the Eleventh Circuit found "no meaningful difference in the definitions of disgorgement and forfeiture" and therefore held that "[b]ecause forfeiture includes disgorgement, § 2462 applies to disgorgement." *S.E.C. v. Graham*, 823 F.3d 1357, 1463-64. This Court disagrees and finds convincing the three reasons articulated by Judge Nicholas G. Garaufis in *S.E.C. v. Saltsman* for rejecting that holding in *Graham*: (1) "the *Graham* court failed to consider the varied historical meaning of the two terms, the continued differences between the two remedies, and the statutory context of Section 2462";[16] (2) even the dictionary definitions the *Graham* court relied upon appear to have different meanings;[17] and (3) every court to consider the underlying district court's ruling on disgorgement has rejected it.[18] *Saltsman*, 2016 WL 4136829, at *27-28.

It is well established that a statute must be interpreted "not in a vacuum, but with reference to the statutory context, structure, history, and purpose." *See e.g., Abramski v. United States*, 134 S. Ct. 2259, 2267 (2014) (internal quotations and citation omitted). Nonetheless, *Graham* appears to have garnered its understanding of the words "forfeiture" and "disgorgement" solely from modern day usage of the terms given that the dictionaries it cited were all published in the 21st century.[19] *See Graham*, 823 F.3d at 1363. *Graham* cites Black's Law Dictionary, which defines

---

[16] Discussed *supra* at section (II)(B)(i).

[17] Discussed *infra* at page 15.

[18] At the time *Saltsman* was decided no other court had yet considered the Eleventh Circuit's affirmance of the district court's ruling equating forfeiture and disgorgement. Since then, the Tenth Circuit has weighed in, similarly disagreeing with *Graham's* holding that disgorgement and forfeiture are one and the same. *See Kokesh*, 2016 WL 4437585, at *5. For other cases see *infra* at footnote 22.

[19] Although Defendants accurately point out that the Supreme Court used the terms forfeiture and disgorgement interchangeably in *United States v. Ursery*, 518 U.S. 267, 284 (1996)

14

disgorgement as "[t]he act of giving up something (such as profits illegally obtained) on demand or by legal compulsion." Black's Law Dictionary (10th ed. 2014). Forfeiture, on the other hand, is defined as "[t]he loss of a right, privilege, or property because of a crime, breach of obligation, or neglect of duty." *Id.* Not only are these contemporary definitions, but despite appearing similar at first glance, they still reflect a continued distinction between the concepts of forfeiture and disgorgement. The definition of forfeiture links the behavior of an individual to the "loss of a right, privilege, or property" indicating that such loss is a consequence for that individual's actions. This is the essence of a punishment. On the other hand, disgorgement compels an individual to give up something, without necessarily any connection between the behavior of the individual and the act of giving that something up. Thus, these terms are not interchangeable, a further indication of Congress's "conscious choice to include one and not the other." *See Saltsman,* 2016 WL 4136829, at *28.

This Court declines to be guided by *Graham,* which has been described as an "outlier."[20] Accordingly, it concludes that Section 2462 does not apply to disgorgement.

---

("Forfeitures serve a variety of purposes, but are designed primarily to confiscate property used in violation of the law, and to require disgorgement of the fruits of illegal conduct"), the distinct remedy of disgorgement was not at issue in *Ursery* and it appears the Supreme Court was using the term colloquially and not as a legal term of art. Defendants, citing *Contorinis,* 743 F.3d at 310 and *United States v. Hoover-Hankerson,* 511 F.3d 164, 171 (D.C. Cir. 2007), further argue that Circuit Courts have similarly used the term disgorgement when describing forfeiture (Def.'s Reply Supp. Mot. to Dismiss at 3), but neither of these cases involved disgorgement as a remedy.

[20] *See Saltsman,* 2016 WL 4136829, at *28-29 ("[T]he court agrees with the courts that have viewed *Graham* as an outlier") (citing *S.E.C. v. Jones,* No. 13-CV-00163 (BSJ), 2015 WL 9273934, at *6 (D. Utah Dec. 18, 2015) ("The court finds *Graham* unpersuasive and inapplicable to the case at hand"); *S.E.C. v. Collyard,* No. 11-CV-3656 (JNE) (JJK), 2015 WL 8483258, at *8 (D. Minn. Dec. 9, 2015) ("But that decision [*Graham*] is something of an outlier"); *S.E.C. v. Stoecklien,* No. 15-CV-0532 (JAH) (WVG), 2015 WL 6455602, at *3 (S.D. Cal. Oct. 26, 2015) ("This Court does not find

**III. Conclusion**[21]

For the foregoing reasons, Defendants' Motion to Dismiss Certain Claims in the Amended Complaint is DENIED.

IT IS SO ORDERED.

      /s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 8th day of December 2016.

---

*Graham* persuasive in light of the many cases finding section 2462 inapplicable to cases seeking disgorgement, the Supreme Court's limitation on its holding in *Gabelli* and the Ninth Circuit's indication disgorgement is equitable in nature.")); *see also Kokesh*, 2016 WL 4437585, at *5 (Following those courts that have rejected *Graham*, "[r]espectfully, we also see things a bit differently.").

[21] Because the Court finds that Section 2462 does not apply to claims for disgorgement, it is unnecessary to address Plaintiff's alternative arguments that the fraudulent concealment doctrine and continuing violation doctrine require the Court to deny Defendants' motion.