# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>IFTIKAR AHMED,<br><br>Defendant, and<br><br>IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents,<br><br>Relief Defendants. | Civil Action No. 3:15-cv-675 (JBA) |

## DEFENDANT'S RESPONSE TO SEC'S OPPOSITION TO MOTION FOR RELEASE OF FUNDS FOR LEGAL REPRESENTATION IN INDIA TO BE ABLE TO RETURN TO THE US

The Defendant submits this humble response to the purported Plaintiff's Opposition [Document #466 dated 27th Feb 2017] to the Defendant's prayer for funds to be released for and directly to his Indian lawyer to facilitate his return to the United States of America.

The purported Plaintiff's opposition, expected and predictable like a broken record caught up in denying anything the Defendant could ask for as their default response, is so fraught with juvenile conclusions and bigoted assertions, it seriously beggars belief that some of the purportedly most qualified legal minds actually paid for by US taxpayer funds could have really authored it!  It is astounding but not surprising that the SEC continues to try and mislead the esteemed Court and cast aspersions on the Defendant, and now even his Indian attorney, while actively ignoring facts and twisting words and misrepresenting the truth.

1. On Page 2, the purported Plaintiff asserts "making unsupported claims that he fled to India…" - a distortion of facts.   The Defendant has never even made any such claims that he "fled" to India!

If the "unsupported claims" refer to his claimed visit to India "through an act of commitment and loyalty to his ailing, widowed mother", indeed the Defendant cannot furnish any documentary evidence; just as it would be preposterous to ask for documentary evidence and support to prove that any mother loves her own child!    The entire linguistic and logical construct of the SEC assertion is so fundamentally flawed, one would be pardoned for thinking it was a juvenile joke.

The Defendant has always maintained he is not a "fugitive" by any stretch of imagination. He is a captive in a foreign country.   One cannot be a "fugitive" and a "captive" at the same time!    To make things simple for the SEC, one cannot be a "slave" and a "master" at the same time.   One cannot be a "Plaintiff" and a "Judge" at the same time - well, except maybe when it comes to *Sharia Law* in some really dark parts of the world!  One cannot be a "dead" and "alive" at the same time.    Well, to be fair, not unless one is in a thought experiment about

Schrödingers Cat in quantum physics, which is probably beyond the intellectual scope of this discussion but quite an apt comparison!  In common English, it is called a paradox!

How the Defendant is supposed to offer documentary evidence to support his claim that "he wishes to return to the United States" has left all of the Defendant's Indian legal counsels first scratching their heads; and then laugh in wild amusement.    It is actually the purported Plaintiff's assertions that are indeed actually "incredible" in their wild fantasy and "unreasonable" in as much as there is no humanly possible way to offer documentary evidence to support the Defendant's claims of "love for his mother" and his "desire to return home to his family."

2. On Page 3, the purported Plaintiff is clearly demonstrating bipolar legal viewpoints.  On record, the purported Plaintiff has stated multiple times that they "do not know the facts" in a bid to avoid being deposed.  And now, they confidently claim "The SEC has produced substantial evidence that…"   What is the truth?   In all of the legal rigmarole presented to this esteemed Court, the purported Plaintiff reflects the Schrödinger's Cat phenomenon - that is a thought experiment in quantum physics and not a reality - in common man's parlance, one often says one "cannot eat the cake and have it too"….unless, one guesses, one is Schrödinger's cat!  The SEC does not stand for **S**chrodinger's **E**ccentric **C**at, does it?

3. The SEC summarizes the Defendant's Motion as "…entire Motion rests on the claims that he seeks to return to the United States and needs money to do so."  For the entirety of this dispute so far, the Plaintiff has been crying hoarse that the Defendant is a "fugitive" and demanding that the Defendant "return" to the United States.   The Defendant is a captive in India, with no travel or identification documents save for his US Driver's License.   Anyone would know that the Defendant cannot just return home without legal travel papers; and for that he

3

needs legal help to petition the Indian Courts etc.   Again, the Schrodinger's Cat.   The purported Plaintiff first demands that the Defendant come back to the US; but when faced with the prospect of actually facilitating and making that happen, they are arguing vociferously against it!   One can only react with disbelief and amusement.   Quantum physicists may have an explanation for such paradoxical and quixotic arguments; but people with normal intelligence will never be able to comprehend this logical inconsistency, to put it mildly.

4. The purported Plaintiff has repeatedly made outrageously bigoted comments about India and Indians.   Here they go again in their footnote on page 3 stating "…to pay an attorney in Hyderabad India $500-600 per hour is **facially unreasonable**."   Why is it unreasonable?   In that objection there are only three nouns - "attorney", "Hyderabad", and "India".

Clearly the fact that an "attorney" has to be paid cannot be unreasonable.   The objection is then based on the fact that the attorney is based in Hyderabad, India and, hence, cannot reasonably be charging $500-600 an hour.   It would have been okay to the SEC if the same attorney was in London, UK or New York, USA, one guesses.   It is again a testimony of the unbridled bigotry and the deep rooted racial bias demonstrated by the purported Plaintiff, who clearly forgets that they represent the great United States of America and should restrict their personal or professional bigotry and racism when it comes to making statements as officers of the Nation paid for by taxpayer's monies.   A US Court of Law is not the same as a Kansas pub; yet the same deplorable behavior.

India is not some third world, underdeveloped country that the purported Plaintiff can ridicule with such outrageous comments and ill informed bigotry.   The purported Plaintiff representing the United States would have done well to do some fundamental research before

4

exposing their deep rooted bigotry and flaunt their misguided ignorance as representatives of the US Government.

Please refer to **Exhibit 1** for an article on how much lawyers charge and earn in India (equivalent US $ rates are appended by the Defendant for ease of comparison, and for reference 10 Lakh = 1 Million, a Lakh is an Indian unit; and an "appearance" typically means a couple of hours). Compare that to **Exhibit 2** for lawyers hourly rates in London, UK and **Exhibit 3** for the same in the United States. The purported Plaintiff will surely be shocked to learn that lawyers in India charge and earn significantly more than their counterparts in the western world. India is not your British grandparent's colonial destination for plundering and loot any more. These website sources, again to simply assure this esteemed Court, are not owned or controlled by the Defendant and can be independently verified with simple Google searches. So, compared to what these rates online establish, the Defendant's attorney's rates of $500-600 per hour are actually quite cheap and beyond reasonable. In any event, it is really as unreasonable for US SEC to give their ill-informed views on Indian lawyer's hourly rates as it would be for an Indian citizen to comment on whether the SEC Trial Counsel's salary, albeit funded by American taxpayers, is "facially reasonable" or not. Those are best left aside as private opinions.

The SEC says that the $500-600 hourly rate to pay an attorney is unreasonable. The Defendant faces a very strict law; and it is not for the SEC - the Defendant's adversary - to decide who the Defendant chooses to represent him. It is as preposterous as the Yankees suggesting that a Yankees vs. Red Sox ballgame be officiated only by umpires hand selected by Yankees!

5. On Page 4, the purported Plaintiff confuses matters and again makes some crazy assertions. The Defendant indeed filed a Motion seeking that his investment distributions from Oak (frozen) be transferred to his **frozen** accounts at Northern Trust for primary reasons - (1)

5

these distributions would trigger taxes and hence the funds that generate the taxes should be matched to the taxes that need to be paid (something that is being separately litigated as the tax bills have now become overdue); and (2) the distributions rightfully belong to the Defendant, are 100% untainted and should be available to grow during the pendency of this dispute (which would not happen while being illegally held at Oak).   Moving assets from one frozen account to another frozen account does not mean the Defendant could access those funds even if he wanted to!  So, that submission is both flawed and seriously outrageous.

Separately, the SEC then proceeds to argue that the Defendant's assertion that he "never tried to access any of his frozen funds…" is untrue.  Let us look at the facts.

Fact:  Document #2-3 was filed on May 06th, 2015.

Fact:  The Defendant did try to redeem a private investment to be able to pay for his children and spouse - for them to eat, live, and survive.  **YES**.  That was on May 19th, 2015. Days prior to the filing of the next relevant Document #23 on May 21st 2015.   And the only previous asset freeze orders (Documents #2-3 dated May 6th, 2015; and even Document #24 filed days later on  May 21st, 2015 both stipulated total asset freeze of an amount of $55,089,546 on page 3 of Doc 2-3; and page 4 of Doc 24).

It is also an indisputable fact that there were substantially more liquid assets than the amount of freeze ordered.  And the private investment referenced by the SEC now was NOT covered by the asset freeze; and was well outside the total dollar figure stipulated by the freeze orders as of the May 6th, 2015.

May 19th 2015 was a full two days before May 21st 2015 - even as the Defendant did not see any of the documents and Court orders from any period during this time - whether it be May 6th, May 19th, or May 25th.

If it is a crime for a man to try and get funds to be able to provide for his children so they can eat and live and survive, the SEC should say so directly and not hide behind legalese and moralistic articulations.

6.   On page 6, the SEC asserts, "…it is imperative that assets not be held by any third party that is similarly willing to violate the orders of this Court."  The purported Plaintiff again lets their bigotry get the better of their senses.   The Indian attorneys for the Defendant would only transfer assets to the Defendant as much as the Defendant's attorneys in the US would transfer assets to the Defendant!   It is shocking that the SEC would slander and malign someone of their own profession.  The Defendant does not have a "purported" attorney, he has a highly qualified and imminently successful Indian attorney.  Not only has the Defendant already offered all particulars of his Indian attorney, the same attorney had also had multiple interactions and conversations with the US DOJ.   Rather than shamelessly casting aspersions on his Indian attorney, the Plaintiff could easily make a call to their collaborators in the US DOJ to confirm these facts.

It is so outrageously preposterous a comment and a direct insult to an Indian attorney, indeed to the entire Indian legal and judicial community and the judiciary, that this esteemed Court should sanction the Plaintiff for making such an insinuation against an Indian attorney with no basis on facts or even experience.

If the Plaintiff is so opposed to the idea of an Indian attorney representing the Defendant in his bid to return to the United States for strange and schizophrenic fear, one would conclude that the Plaintiff would very happily consent to a New York, US based attorney who could represent the Defendant and hire an Indian lawyer to work with them and under their direct supervision and oversight to run the legal process over which this esteemed Court would

presumably have more control and oversight and, hence, greater faith. That construct would easily double or triple the total costs; but such an arrangement would be happily acceptable to the Defendant.

7. On the foot note on Page 6, the SEC claims, "There can be no dispute that Defendant entered India illegally, as his passport was confiscated pending his criminal insider trading case." It is best that the SEC keep their comments to what they know and not express their unsolicited opinions on what they really have no knowledge about. They are no experts on Indian laws and legal systems. That question whether the Defendant entered India illegally or legally is the subject of the criminal case in India, the one that the Defendant needs to fight and resolve and being currently held captive in India under. He needs legal help as the SEC acknowledges there is a criminal case pending in India and, unfortunately, lawyers cost money.

The blatant hypocrisy of the US SEC is plainly obvious for anyone to see - shout as loud and as often as they can "fugitive" in a bid to first deny the Defendant any rights at all; then demand that for any rights to attach, the Defendant return to the United States; but when the Defendant tries to do just that, the purported Plaintiff says "not so fast, stay there forever" by claiming "he is lying, he has no intention of coming back." And so, now the SEC is omniscient God; the all knowing, all powerful power on Earth with the crystal ball of perfect knowledge of the future and all of human intentions and beliefs! Oops….sorry, but the same divine powers betrayed them and, by their own admission, they do not even know all or any of the historical facts around this very dispute! What more comic amusement can a reader of their motions and submissions derive from their contorted and juvenile hypocrisy.

8. Finally, on Page 7, the purported Plaintiff confusingly asserts, "…and his refusal to seek the permission of the Indian Court to leave the territorial Jurisdiction of India and return to the United States …, strongly suggests that he has no intention of ever returning to the United States, but rather is simply attempting to mislead this Court into releasing to him the fruits of his crimes."

First, the Defendant never asked for and does not expect any "fruits" to be released to him. He is being fed, okay, and taken care of his friends and family, thank you very much! As for any fees for his legal battle in India, the Defendant has stated and reasserts the funds / fees can be released directly from the Defendant's frozen assets to a US lawyer who manages the Indian legal team or to an Indian attorney to manage the Indian legal case.

Second, the Defendant has never refused to seek permission of the Indian Courts and in fact this Motion is exactly aimed at doing that! Quite to the contrary, the Defendant prayed for his US passport / travel papers not be confiscated in India - which is a necessary and precursory step towards seeking permission to leave - such prayer was denied multiple times by the Indian Courts. At every hearing roughly every six months, the Defendant has made his prayers for relaxation of his bail conditions with the Indian Courts; and every time such prayers have been denied. So, the Plaintiff assertions are both untrue and a result of their distorted imagination, quite contrary to the truth and the reality.

9. Finally, the Defendant has submitted multiple motions in this matter clearly identifying his 100% untainted and clean assets untouched by any of the disputed allegations in this matter. The Defendant has also submitted a sworn affidavit that he is indigent and penniless. The Defendant cannot afford a detailed financial accountant - and predictably if the Defendant were to seek funds to conduct one, the Plaintiff would violently oppose it! The

9

Defendant has already consented to a detailed financial accounting however it can be conducted as long as the Court allows for payment for it as the indigent Defendant does not have the means to pay in US$ for such an exercise and it would be surely be unacceptable to the racist SEC were it to be conducted by an Indian accountant.    Metaphorically, the purported Plaintiff cuts off a person's arms and then demands that he salute the national flag!!    If an affidavit is not a sworn statement, then what is an affidavit?  The very meaning of an affidavit is "a written statement confirmed by oath or affirmation, for use as evidence in court."

There is no need for any evidentiary hearing.  The burden of proof lies with the Plaintiff to identify any allegedly tainted assets.   The Defendant has already in multiple prior submissions [including Doc #341 dated 24th Nov, 2016] to this esteemed Court provided a detailed list of significant untainted assets that are readily available for his legal defense in India - the SEC conveniently suffers from amnesia here.

**WHEREFORE**, the Defendant respectfully requests the esteemed Court to grant this motion for the unconditional, unsecured release of funds (1) to directly pay the Defendant's Indian attorney for legal fees in India; OR (2) to pay for attorney's fees in the United States as chosen by the Defendant for such US lawyer to select and collaborate directly with an Indian lawyer of his choice;  so that the Defendant can address his legal issues in India and return to the United States to be able to defend himself fully in this matter and establish his innocence by due process of justice

Respectfully Submitted,

Dated: February 28th, 2017    s/ Iftikar Ahmed

_____

Iftikar A. Ahmed
C/O Advocate Anil Sharma
10 Government Place East, Ground Floor
Behind Kanpur Leather House
Kolkata 700069, India
Tel: +91-983-008-9945
Email: iftyahmed@icloud.com
*Pro Se*

**CERTIFICATE OF SERVICE**

       I hereby certify that a copy of the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and served by electronic mail to:

Nicholas P. Heinke
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1071
Email: heinken@sec.gov

Mark L. Williams
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1027
Email: williamsml@sec.gov

Paul E. Knag
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5400
Fax: (203) 653-5444
Email: pknag@murthalaw.com

David B. Deitch
Harris, St. Laurent & Chaudhry LLP VA
1818 Library Street, Suite 500
Reston, VA 20190
(703) 956-3549
Fax: (703) 935-0349
Email: ddeitch@sc-harris.com

Jonathan Harris
Harris, St. Laurent & Chaudhry LLP
40 Wall Street, 53rd Floor
New York, NY 10005
(646) 395-3481
Fax: (212) 202-6206
Email: jon@sc-harris.com

L. Reid Skibell
Harris, St. Laurent & Chaudhry LLP
40 Wall Street, 53rd Floor
New York, NY 10005
(917) 512-9466
Fax: (212) 202-6206
Email: rskibell@sc-harris.com

Priya Chaudhry
Harris, St. Laurent & Chaudhry LLP
40 Wall Street, 53rd Floor
New York, NY 10005
(212) 785-5550
Fax: (212) 202-6206
Email: priya@sc-harris.com

Steven Gabriel Hayes Williams
Harris, St. Lauren & Chaudhry LLP
40 Wall Street, 53rd Floor
New York, NY 10005
(212) 397-3370
Fax: (212) 202-6206
Email: ghayeswilliams@sc-harris.com

Kristen Luise Zaehringer
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5406
Fax: (860) 240-5758
Email: kzaehringer@murthalaw.com

Dated: February 28th, 2017        s/ Iftikar Ahmed

 _____
Iftikar A. Ahmed
C/O Advocate Anil Sharma
10 Government Place East, Ground Floor
Behind Kanpur Leather House
Kolkata 700069, India
Tel: +91-983-008-9945
Email: iftyahmed@icloud.com

*Pro Se*



EXHIBIT: 1

Home » Politics

Last Modified: Wed, Sep 16 2015. 02 45 AM IST

## How much do Delhi's top advocates charge?

The top bracket is dominated by advocates who are or were also politicians (mainly from the Congress party)

http://www.livemint.com/Politics/BvOZE6z7Oyl6LiHZxWVlzL/How-much-do-Delhis-top-advocates-charge.html

Enter your email    Go    Subscribe to our newsletter.

**Prachi Shrivastava**



Ram Jethmalani is one of the oldest senior advocates still regularly practising and is also one of the highest-paid senior advocates in India at the apex or any other court. Photo: Hindustan Times

The colonial-era building with a red sandstone dome on Delhi's Bhagwan Dass Road is home to an elite class of lawyers who are likely to be the most expensive in the world: they are typically paid between Rs.5 lakh and Rs.15 lakh per hearing.

Interviews by *Legally India* with more than more than 32 Delhi law firm partners and advocates working with business clients have revealed that the top bracket in terms of pay is dominated by advocates who are or were also politicians (mainly from the Congress).

All the lawyers spoke on condition of anonymity.Most of the 'class 1' seniors (although there's no actual such term for them) can be retained to represent clients on ordinary matters in the Supreme Court for between Rs.5 lakh and Rs.7 lakh, said one of the lawyers interviewed.

The nonagenarian Ram Jethmalani is one of the oldest senior advocates still regularly practising and is also one of the highest-paid senior advocates in India at the apex or any other court. According to several briefing lawyers, it generally costs at least Rs.25 lakh to have Jethmalani's name attached to the case file and for him to read it.

Jethmalani can afford to price himself out of the market for all but the most affluent clients because a majority of the cases he does take up these days, he handles pro bono, or without charging a fee, according to lawyers, and he only appears in a few cases per week.

Former finance minister P. Chidambaram charges in the range of Rs.6-7 lakh for one appearance before a bench of Supreme Court judges. Former Rajya Sabha member Fali S. Nariman, who by most accounts rarely takes up cases any more, charges between Rs.11 lakh and Rs.15 lakh per appearance in the Supreme Court.

"(Nariman), like Chidambaram, is very choosy. He only accepts (a case) if it involves a challenging question of law. (He accepts) not more than one (case) in a day," explained a Delhi advocate who has previously engaged Nariman and Chidambaram for clients.

Former law minister Kapil Sibal charges at least Rs.8 lakh and up to Rs.15 lakh for one appearance at the Supreme Court. Congress politician Abhishek Manu Singhvi and Harish Salve (the son of late Congress politician NKP Salve), who is now also a London barrister, generally charge upwards of Rs.6 lakh for one day's appearance in a case in the Supreme Court, with Salve charging up to Rs.15 lakh.

However, the fees charged in that top bracket are fairly variable, depending on the complexity of a case and how interesting it is, the relationship with the client or briefing lawyer or a variety of other factors, including the day of the week it is listed to be heard.

The rates are usually lowest in the Supreme Court on Mondays and Fridays—the so-called miscellaneous days when the apex court hears new matters before deciding whether to admit them for a proper hearing.

On Tuesdays, Wednesdays and Thursdays the Supreme Court hears arguments in cases, and fees for advocates such as Sibal, Singhvi and Salve can range between Rs.11 lakh and Rs.15 lakh.

# BIG BUCKS

A look at the fee charged by Delhi's top senior advocates at the Supreme Court and the Delhi high court

| Approximate Delhi senior counsel rates, per appearance | Supreme Court range (₹ lakh) | Delhi high court range (₹ lakh) | US $ Equivalents |
|---|---|---|---|
| Ram Jethmalani | 25+ | 25+ | $35,000 |
| Fali Nariman | 8-15 | | |
| K.K. Venugopal | 5-7.5 | 7-15 | |
| Gopal Subramanium | 5.5-15 | 11-16.5 | |
| P. Chidambaram | 6-7 | 7-15 | $10,000 |
| Harish Salve | 6-15 | 6-15 | |
| A.M. Singhvi | 6-11 | 7-15 | |
| C.A. Sundaram | 5.5-16.5 | | |
| Dushyant Dave | 5.5-10 | 5.5-10 | |
| Salman Khurshid | 5+ | 8-11 | |
| Parag Tripathi | 5-7 | 5-10 | |
| K.T.S. Tulsi | 5-6 | 8-9 | |
| Kapil Sibal | 5-15 | 9-16 | |
| Shanti Bhushan | 4.5-6 | 4.5-6 | |
| Ranjit Kumar | 4-5 | | |
| L. Nageswara Rao | 3-5 | | |
| Sidharth Luthra | 3.5 | 4-5 | |
| Rajeev Dhavan | 3-5 | | |
| Balbir Singh | 2.7 | 1.7 | |
| Gopal Jain | 2.2-3 | 2.2-3 | |
| Ajit Sinha (former judge) | 2-5 | | |
| Raju Ramachandran | 2-4 | | $4,300 |
| Shyam Divan | 2-4 | | |
| K.V. Vishwanathan | 2-3 | 3.5 | |
| Dhruv Mehta | 2-2.5 | 2.75 | |
| Harin Raval | 1.65-3.3 | 2.2-3.5 | |
| Indu Malhotra | 1-3 | | |
| Jayant Bhushan | 1-2.2 | | |
| Ravi Sikri | 0.75-1+ | | |

| Delhi high court | | | |
|---|---|---|---|
| A.S. Chandhiok | | 5-7 | $10,000 |
| Rajiv Nayar | | 4-5.5 | |
| Arvind Nigam | | 3-3.5 | |
| Sandip Sindhwani | | 3 | |
| Sandip Sethi | | 2.5-3.3 | |
| Pinky Anand | | 2-3 | $2,000 |
| Pratibha Singh | | 1.5-2 | |
| Joy Basu | | 1.5 | |
| Meet Malhotra | | 1.5 | |
| Sudhir Nandrajog | | 1.1 | |
| Amit Sibal | | 1-3.5 | |
| Dayan Krishnan | | 0.55-1.1 | |
| Geeta Luthra | | 0.5-1 | |

Source: Legally India research

**The grass is greener**

**Law**

Top London lawyers charge £1,000 an hour, study finds



EXHIBIT: 2



© Martin O'Neill

FEBRUARY 5, 2016 by: **Jane Croft** and **Lindsay Fortado**

Partners at top London law firms are charging as much as £1,000 an hour — the highest rate ever recorded, according to researchers.

Hourly rates for partners at leading commercial law firms have risen in real terms from as much as £598 in 2003 to at least £775 an hour with some lawyers charging £1,000 an hour, a report from the Centre for Policy Studies think-tank found.

Jim Diamond, a UK legal cost analyst who compiled the study, said the biggest firms are now charging almost the same figure — except in sterling — as their US counterparts.

He claims the high costs could restrict access to justice particularly for small business clients who can be deterred from bringing cases.

The report points to three factors that have pushed up billing rates. These include the increasing complexity of the UK tax and legal systems, which has prompted more clients to seek advice. The British tax code has more than trebled in size since 1997 and is now 22,000 pages long.

The study also says lack of transparency by firms on legal costs and the similarity in hourly rates charged by top firms has contributed to rising billable rates.

Rates charged by partners in City firms rose to up to £700 an hour in 2007 bolstered by a flurry of M&A deals before rates fell to £450 an hour in 2009, according to the report.

The prolonged financial downturn and fall in revenues meant that law firms were forced to cut swaths of jobs even among senior partners in 2009.

However, since then profits at the biggest law firms have rebounded and, by 2013, some partners at the UK's 10 biggest law firms were receiving about £1m. Research by Deloitte published in December showed the UK's top 10 firms had increased their fee income more than 6 per cent, mostly by raising their billing rates.

[A rise in US firms opening offices in London (http://next.ft.com/content/ef972c00-52ea-11e5-8642-453585f2cfcd)](http://next.ft.com/content/ef972c00-52ea-11e5-8642-453585f2cfcd) has also sparked a war for talent, prompting rising salaries. Last year it emerged that US law firm White & Case increased its pay to qualifying solicitors in London by 20 per cent to £90,000 and that some US firms are offering as much as £100,000 for new lawyers.

**Special Report**

### Innovative Lawyers (http://www.ft.com/reports/innovative-lawyers)

For 10 years the FT has weighed and ranked a profession in a period of transformation, this report spotlights the top companies and individuals in the legal profession who are game changers and looks at the areas that have seen the greatest shifts

In his report, Mr Diamond said law firms needed to look again at the method they used to charge for their services — the so-called "billable" hour — which he calls "outdated" and "unsustainable".

Participants in big-ticket lawsuits, particularly involving banks and other FTSE 100 companies, will typically look to instruct top law firms from London's so-called magic circle.

Recent court cases have highlighted the rising cost of commercial litigation — despite attempts to make lawsuits more cost effective after a review by Lord Justice Jackson, one of the most senior judges in the

LAW

# Legal Fees Cross New Mark: $1,500 an Hour

Billing rates for partners at elite corporate law firms keep rising, despite low inflation, weak demand

By SARA RANDAZZO and JACQUELINE PALANK
Updated Feb. 9, 2016 10:11 a.m. ET

EXHIBIT: 3

To Read the Full Story, Subscribe or Sign In

https://www.wsj.com/articles/legal-fees-reach-new-pinnacle-1-500-an-hour-1454960708