# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

---

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | |
| *Plaintiff*, | |
| v. | Civil No. 3:15-cv-675 (JBA) |
| IFTIKAR AHMED, | |
| *Defendant*, and | |
| IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUITY TRUST; DIY A HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; 1.1. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; 1.1. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and 1.1. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents, | MARCH 17, 2017 |
| *Relief Defendants*. | |

---

## MEMORANDUM OF LAW
## OF NON-PARTY OAK MANAGEMENT
## CORPORATION IN SUPPORT OF MOTION TO STRIKE
## <u>CERTAIN PAPERS FILED BY DEFENDANT IFTIKAR AHMED</u>

Non-party Oak Management Corporation ("OMC"), the former employer of defendant Iftikar Ahmed, and the investment manager of the investment funds victimized by Mr. Ahmed's fraudulent conduct that is the focus of this action (the "Funds") (together with "OMC," "Oak"), files this memorandum of law in support of its motion to strike certain papers filed in

this action over the course of the last two months by Defendant Iftikar Ahmed.[1]  As demonstrated below, these filings are scandalous and inflammatory with respect to OMC and its employees and relate to topics not at issue in this case.  Accordingly, these filings should be stricken in their entirety, or, in the alternative, such papers should be placed under seal.

## FILINGS TO BE STRICKEN

This motion seeks to strike the following papers filed by Mr. Ahmed between January 3, 2017 and February 27, 2017:

- Defendant's Motion to Compel Oak to Produce All Documents Pertaining to Company C, dated January 3, 2017 (ECF No. 383) ("Company C Motion");

- Defendant's Motion to Compel Oak to Produce All Documents Pertaining to Company H, dated January 6, 2017 (ECF No. 391) (Company H Motion");

- Defendant's Motion to Compel Oak to Produce All Documents Pertaining to Company D, dated January 8, 2017 (ECF No. 393) ("Company D Motion");

- Defendant's Motion to Implead 3rd Party, Oak Management, As a Co-Defendant, dated January 9, 2017 (ECF No. 394) ("Implead Motion");

- Defendant's Motion to Compel Oak to Produce All Documents Pertaining to Companies A and B and All Compensation Documents and Data Since Inception, dated January 10, 2017 (ECF No. 397) ("Company A/B Motion");

- Memorandum of Law of Non-Party Oak Management Corporation In Opposition to Certain Motions to Compel and Implead Filed By Defendant Iftikar Ahmed, dated January 23, 2017 (ECF No. 408) ("Oak's Opposition");

- Defendant's Response to Plaintiff and Non-Party OMC's Opposition to Compel Oak to Produce All Documents Pertaining to Company C, dated January 26, 2017 (ECF No. 411) ("Company C Reply");

---

[1] In its papers filed in opposition to certain of Mr. Ahmed's motions to compel, OMC requested that such filings be stricken from the docket.  (ECF No. 408).  However, in denying Mr. Ahmed's motions to compel, the Court indicated that it would not consider Oak's request outside of a formal motion to strike. (ECF No. 477 n.3).  This motion seeks to strike, or in the alternative seal, those motions Oak previously opposed, as well as certain other motions and related briefing filed by Mr. Ahmed after Oak filed its opposition papers.

{N5336797}   DOC ID - 25861830.4           2

- Defendant's Response to Plaintiff and Non-Party OMC's Opposition to Compel Oak to Produce All Documents Pertaining to Company H, dated January 29, 2017 (ECF No. 416) ("Company H Reply");

- Defendant's Response to Plaintiff and Non-Party OMC's Opposition to Compel Oak to Produce All Documents Pertaining to Company D, dated February 1, 2017 (ECF No. 426) ("Company D Reply");

- Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Compel Oak to Produce All Documents Pertaining to Companies A and B and All Compensation Documents and Data Since Inception, dated February 3, 2017 (ECF No. 430) ("Company A/B Reply");

- Defendant's Notice with Respect to His Motion to Implead Oak Management Corporation, dated February 13, 2017 (ECF No. 444) ("Implead Notice");

- Defendant's Motion to Compel Oak to Produce All Documents Pertaining to Company J, dated February 17, 2017 (ECF No. 451) ("Company J Motion"); and

- Defendant's Motion to Compel Oak to Produce All Documents Pertaining to Companies E, F, G, and I, dated February 27, 2017 (ECF No. 464) ("Company E/F/G/I Motion").

As demonstrated below, all of these filings contain unsubstantiated irrelevant, scandalous, and inflammatory assertions. The filings also wrongfully disclose confidential information that is proprietary to OMC. Accordingly, the Court should strike these filings from the record in their entirety. In the alternative, these filings should be placed under seal.

## ARGUMENT

**Mr. Ahmed's Filings Should Be Stricken Because They Contain Irrelevant, Scandalous, and Inflammatory Assertions**

Mr. Ahmed's filings are plagued with irrelevant, scandalous, and inflammatory assertions that should be stricken. "[T]he Supreme Court established long ago that federal courts have the duty to keep their records clean and free from scandal. Courts have inherent powers derived from common law that assist in exercising their enumerated judicial powers, such as managing their cases and courtrooms." *United States v. Spellissy*, 374 Fed. Appx. 898, 900 (11th

Cir. 2010) (citing *Green v. Elbert*, 137 U.S. 615, 624 (1891); *Byrne v. Nezhat*, 261 F.3d 1075, 1132 n.110 (11th Cir. 2001) (*abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008); (additional citations omitted)); *Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ'g Co.*, No. 09 Civ. 2669 (LAP), 2015 WL 4757601, at *3 (S.D.N.Y. Aug. 12, 2015) (noting that a court has the "inherent authority to manage the cases before it").

This authority "includes the court's ability to strike any filed paper which it determines to be abusive or otherwise improper under the circumstances." *Muench Photography, Inc.*, 2015 WL 4757601, at *3 (quoting *NRDC v. FDA*, 884 F. Supp. 2d 108, 115 n.5 (S.D.N.Y. 2012)) (additional quotations omitted); *see also In re Gitto Global Corp.*, 422 F.3d 1, 12 (1st Cir. 2005) ("A person within the court's jurisdiction should not be subjected to scandalous or defamatory material submitted under the guise of a properly pleaded court document.").[2]

"'Scandalous' matter is that which improperly casts a derogatory light on someone . . . ." *See* 5C C.A. Wright and A. Miller, *Federal Practice and Procedure (Civil) 3d* § 1382 (2017) ("'Scandalous' generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court.") (footnote omitted). The striking of scandalous matters is particularly appropriate when the material is not responsive to an argument but, rather, constitutes an inappropriate attempt to abuse the Court's process to attack an individual personally. *See, e.g.*, *Magill v. Appalachia Intermediate Unit 08*, 646 F. Supp. 339, 343 (W.D. Pa. 1986) (striking

---

[2] Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, a court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Although Rule 12(f) applies by its terms only to "pleadings," courts have applied the Rule and the concepts underlying it to filings other than only those enumerated as "pleadings" in Rule 7(a). *See, e.g.*, *Cobell v. Norton*, 224 F.R.D. 1, 2 (D.D.C. 2004).

allegations that "reflect adversely on the moral character of an individual who is not a party to this suit" which were "unnecessary to a decision on the matters in question").

Mr. Ahmed has used the filings at issue here as an occasion to make unsubstantiated accusations that reflect poorly on OMC and its personnel's moral character and business practices.  For instance, Mr. Ahmed asserts that OMC and/or its personnel:

- Committed unspecified "crime(s)" (Company H Motion at 4; Company H Reply at 2),

- Attempted to gain control of a company through a "wicked" and "illegal" design using "evil and nefarious means" (Company H Motion at 4, 7; Company H Reply at 3),

- Engaged in a legal strategy of "lies and deception and purchased witnesses" in connection with an unrelated legal dispute with the founder and CEO of a portfolio company that purportedly caused the "ruin" of the founder's family (Company H Motion at 5-6),

- Structured an investment to "illegally avoid US taxes" (Company D Motion at 5, Company D Reply at 3),

- Engaged in "self-serving nepotism" (Company A/B Motion at 5),

- Was not attentive enough to certain investments (Company H Motion at 4-5; Company D Motion at 7),

- Committed "accounting frauds" with respect to a company not implicated in this action that Mr. Ahmed identifies as "Company P" (Company A/B Motion at 6),

- Misled and manipulated regulators (Company A/B Motion at 8),

- Used non-employee family members as part of the OMC's due diligence process (Company C Motion at 3-4; Company D Motion at 7; Company C Reply at 4; Company D Reply at 3),

- "[W]as sleeping in [*sic*] the wheel" and failed to discover his fraud through "dereliction of duties or utter incompetence." (Implead Motion at 4),

- Suggested that North Korea would "'nuke Seoul.'" (Company D Motion at 6; Company D Reply at 3),

- Was allegedly unsuccessful with certain personal investments (Company J Motion at 4-5),

- Made certain unrelated investments on behalf of the Funds that did not do well (Company E/F/G/I Motion at 6),

- Purportedly amassed expenses related to efforts to "wine and dine" executives at certain potential investment targets (Company E/F/G/I Motion at 7),

- Was "fired" from one of the subject companies (Company E/F/G/I Motion at 7),

- Killed a general partner of Oak ( Company A/B Reply at 3),

- "[C]herry picked pieces of data and purported evidence to weave a story that itself is full of deceit and deception" (Implead Notice at 3),

- Made "off the record payments" to certain parties including an individual who was purportedly deprived of the "finder's fee" (Company J Motion at 4), and

- "[D]irectly violat[ed] the US usury laws" (Company E/F/G/I Motion at 9).

These assertions are false and misleading and serve no purpose but to malign OMC, a non-party, and its personnel in an effort to cause reputational harm. Indeed, Mr. Ahmed readily admits that he has no firsthand knowledge of certain statements made in the motions (*see, e.g.*, Company H Motion at 6), and even goes so far as to base certain of them on pure speculation and rumor (Company H Motion at 6), admitting that some may be wrong (Company A/B Motion at 7). This Court should strike Mr. Ahmed's filings because they are riddled with scandalous and inflammatory accusations.

The Court's authority to strike filings also extends to material that is irrelevant to the matters at issue in the litigation. *See Ruffino v. Murphy*, No. 3:09-cv-1287, 2009 WL 5064452, at *1 (D. Conn. Dec. 16, 2009) (striking allegations irrelevant to the claims in the litigation); *see also Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ'g Co.*, No. 09 Civ. 2669 (LAP), 2015 WL 4757601, at *4 (S.D.N.Y. Aug. 12, 2015) (striking filing where topics had no relation to subject matter of action); *Low v. Robb*, No. 11-CV-2321 (JPO), 2012

WL 173472, at *10 (S.D.N.Y. Jan. 20, 2012) (granting motion to strike; "[w]ether any of these allegations is 'true' or not" had "no relevance to th[e] particular case."); *Shahzad v. H.J. Meyers & Co.*, 95 Civ. 6196 (DAB), 1997 U.S. Dist. Lexis 1128, at *40 (S.D.N.Y. Feb. 4, 1997) (striking allegations is warranted "where the allegations challenged have no real bearing on the subject matter . . . .").

Mr. Ahmed has similarly used his access to the public record to interject topics into this action that are of no relevance to any of the factual and legal issues actually being litigated. For example, in the papers at issue here, Mr. Ahmed has included discussions of:

- How hard he claims to have worked on certain investments (Company H Motion at 3-7; Company D Motion at 7, 10),

- What he believes should have been the proper level of his compensation at OMC (Company D Motion at 10-11),

- His view of the risk level associated with certain investments made by OMC and whether it should or should not have made those investments (Company H Motion at 3-5; Company A/B Motion at 6; Company C Motion at 2-3; Company D Motion at 5-6),

- The purported post-financial crisis lobbying efforts made by certain OMC partners (Company H Motion at 8),

- The names and places of employment of family members of a OMC managing partner (Company C Reply at 4),

- The licensing requirements in the securities industry (Implead Motion at 4-5),

- The bonus structure at OMC (Company A/B Motion at 4-6),

- Investment losses purportedly incurred by other OMC employees (Company A/B Motion at 7),

- What he describes as a "somewhat retarded survey amongst Korean-Americans in the US about the business prospects of [a] company not doing any business in the US" (Company D Motion at 6),

- The process for making investments (Company J Motion at 2-6, Company E/F/G/I Motion at 2-10),

- The relative success of a particular OMC investment (Company J Motion),

- How OMC unfairly reset their negative ledgers to zero "at a time of their own convenience and choosing"(Company A/B Reply at 5), and

- The belief that Defendant and another OMC partner "were mere 'tools' and 'low level associates' with no decision making powers and authority." (Implead Notice at 6).

None of these topics has any relevancy to any claim or defense at issue in this case. The SEC's action "involves a long-running scheme that Mr. Ahmed perpetrated to defraud Oak Investment Partners, Oak's Investors, and companies in which Oak invested." (Second Amended Complaint [ECF No. 208] at ¶¶ 103 – 117 ¶1). The SEC has asserted claims against Mr. Ahmed related to specific incidents of wrongdoing and seeks the disgorgement of his ill-gotten gains obtained as a result of those specific acts. Notably, nowhere in his various motions does Mr. Ahmed deny engaging in the acts of wrongdoing alleged by the SEC, or make any attempt to explain how his assertions against OMC would give rise to a valid defense to the SEC's claims against him.

Indeed, the focus of Mr. Ahmed's motions is not on the SEC's claims, nor would the assertions made therein lend any support to a motion to compel or an impleader motion even if Mr. Ahmed had filed a procedurally proper motion. Rather, Mr. Ahmed uses these motions as a vehicle to make outrageous statement after outrageous statement regarding a whole host of other topics, none of which touch upon the legal and factual issues being litigated in this action as to how tens of millions of dollars of other people's money made its way into bank accounts controlled by him. It is transparently clear from the sheer volume of scandalous assertions made in these motions that Mr. Ahmed's primary, if not sole, purpose in filing them was to cause harm and embarrassment to OMC and certain of its employees.

**Mr. Ahmed's Motions**
**<u>Should Have Been Filed Under Seal</u>**

In the alternative, the papers at issue should be placed under seal in light of the confidential information that Mr. Ahmed has included in them. The OMC portfolio companies that worked with Mr. Ahmed may suffer negative publicity and reputational and financial harm (which, indirectly, also could harm the investors in the Funds) if their identities are publicly disclosed. Accordingly, the identities of those portfolio companies consistently have been redacted from publicly filed documents (*see, e.g.*, ECF Nos. 31-14, 68-1, 68-3, 99-4) or referred to as "Company A," "Company B," etc., including in the first and second declarations of Grace A. Ames (ECF Nos. 4, 31), in the Second Amended Complaint (ECF No. 208), in the Relief Defendants' motion to dismiss (ECF No. 224), and at the preliminary injunction hearing on July 23 and July 30, 2015 (*see, e.g.*, PI Hearing Tr. 18:16). Documents with confidential information also are frequently placed under seal in this action. (*See* ECF Nos. 68-20, 68-24, 74, 99-4 (motion granted to seal exhibit at ECF No. 107).

Certain of Mr. Ahmed's motions to compel identify by name the portfolio companies that the parties heretofore have kept confidential, or delineate the search terms one could use in a search engine to find the name of the entity. (Company C Motion at Ex. 1, Company E/F/G/I Motion at 2, 3), the bonus structure at OMC (Company A/B Motion at 4-6), and Oak's process for making investments (Company J Motion at 2-6, Company E/F/G/I Motion at 2-10). Certain of the motions to compel contain confidential information regarding OMC itself, including its compensation structure. (Company A/B Motion at 4-5). Although Mr. Ahmed describes the practice of protecting confidential information as "silly, shallow" and "utterly ridiculous" (Company D Motion at 2), his disclosure of confidential information in the form of filings made on the public docket risks causing harm to OMC and others.

Mr. Ahmed frequently references the fact that he has been denied access to the SEC's investigative file. (*See, e.g.*, Company D Motion at 1-2, Company A/B Motion at 2, Company H Motion at 1-2). As this Court noted earlier in its denial of Mr. Ahmed's motion to access that file, Mr. Ahmed is a fugitive from justice and therefore, even if he entered into a protective order regarding the material he obtained, the Court could not "effectively limit the use of the requested" material. (*See* Endorsement Order Denying Defendant's Motion for Full Access to the SEC's Investigative File [ECF No. 286] at 4). Mr. Ahmed's motions to compel and implead implicate this same concern—the misuse of confidential materials by Mr. Ahmed to suit his own purposes. He should not be permitted to do so any further. Accordingly, at a minimum, Mr. Ahmed should cause these motions to be placed under seal, and he should file a properly redacted version in the public docket.

## CONCLUSION

For all of the foregoing reasons, the motions and related briefs filed by Mr. Ahmed referenced above should be stricken from the record in their entirety.  In the alternative, these filings should be placed under seal.

          OAK MANAGEMENT CORPORATION
          NON-PARTY RESPONDENT

          By:  /s/ David T. Grudberg
              David T. Grudberg (ct01186)
              CARMODY TORRANCE SANDAK &
              HENNESSEY LLP
              195 Church Street, P.O. Box 1950
              New Haven, CT 06509-1950
              Telephone: (203) 777-5501
              Facsimile: (203) 784-3199
              E-mail:dgrudberg@carmodylaw.com

          Of Counsel:

          David K. Momborquette, Esq.
          Gary Stein, Esq.
          SCHULTE ROTH & ZABEL LLP
          919 Third Ave.
          New York, N.Y.  10022
          Telephone: (212) 756-2000
          Facsimile: (212) 593-5955
          E-mail:  David.Momborquette@srz.com
                    Gary.Stein@srz.com

## CERTIFICATION

I hereby certify that on March 17, 2017, a copy of the foregoing Memorandum of Law In Support of Non-Party Oak Management Corporation's Motion to Strike Defendant's Motions to Compel and related briefing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operating of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

    /s/ David T. Grudberg
    David T. Grudberg