UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____
                                                        )
UNITED STATES SECURITIES                                )
AND EXCHANGE COMMISSION,                                 )
                                                        )
            Plaintiff,                                  )
                                                        )
      v.                                                )      Civil Action No. 3:15cv675 (JBA)
                                                        )
IFTIKAR AHMED,                                          )
                                                        )
            Defendant, and                              )
                                                        )
IFTIKAR ALI AHMED SOLE PROP;                            )
I-CUBED DOMAINS, LLC;  SHALINI AHMED;                   )
SHALINI AHMED 2014 GRANTOR RETAINED                     )
ANNUNITY TRUST; DIYA HOLDINGS LLC;                      )
DIYA REAL HOLDINGS, LLC; I.I. 1, a minor                )
child, by and through his next friends IFTIKAR          )
and SHALINI AHMED, his parents; I.I. 2, a minor         )
child, by and through his next friends IFTIKAR          )
and SHALINI AHMED, his parents; and I.I. 3, a           )
minor child, by and through his next friends            )
IFTIKAR and SHALINI AHMED, his parents,                 )
                                                        )
            Relief Defendants.                          )
_____        )

**PLAINTIFF UNITED STATES SECURITIES AND EXCHANGE COMMISSION'S
RESPONSE IN OPPOSITION TO DEFENDANT'S EMERGENCY MOTION FOR
RECONSIDERATION TO MODIFY THE ASSET FREEZE ORDER
TO RELEASE OF FUNDS FOR LEGAL DEFENSE IN LIGHT OF
SCOTUS DECISION ON *KOKESH* v. SEC**

  Plaintiff United States Securities and Exchange Commission (the "SEC") hereby files

this response in opposition to Defendant's motion [Doc. # 589] for reconsideration of his two

prior requests [Doc. ## 97 & 325] for the release of funds for legal counsel while remaining a

fugitive ("Motion").  Defendant's Motion is no different than his two previous requests, and

there has not been a change in circumstances warranting the Court to revisit its prior rulings. Defendant's Motion should again be denied.

## Introduction

The Court should decline to revisit its prior rulings and should again deny Defendant's request to access funds while he remains a fugitive.  Contrary to Defendant's arguments, *SEC v. Kokesh* does not alter the previous conclusions reached by the Court.  That is because even accepting Defendant's arguments as true – that his fraud occurring more than five years before the filing of the complaint is outside the statute of limitations for purposes of disgorgement and civil penalties – a release of funds would still be inappropriate and inconsistent with the Court's prior findings, since the SEC still has not secured assets sufficient to satisfy disgorgement, prejudgment interest, and civil penalties related to conduct indisputably within the five year statute of limitations.  Defendant's remaining arguments and assertions are erroneous and not credible.

## Relevant Law

"The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Doc. 392 at 2 (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)) (alteration in original).

## Argument

For the reasons explained below, that which Defendant claims to be new evidence – the Supreme Court's decision in *SEC v. Kokesh* – does not alter the conclusion this Court reached on two previous occasions. *See* Doc. ## 97 & 325.

<u>First</u>, the SEC has not secured enough assets to cover even a modified asset freeze order and therefore the release of any funds to Defendant remains inappropriate.  For the sake of argument, even were the Court to accept Defendant's assertion that the asset freeze must be immediately narrowed to cover only his fraud committed within five years of the filing of the Complaint, and further accept Defendant's implicit argument (and admission) that all of the frozen assets belong to him and will therefore will be available to satisfy an order of disgorgement, prejudgment interest, and civil penalties, the Court should nonetheless decline to release any assets because the SEC has not secured enough funds to cover even a modified asset freeze.

The Court previously entered an asset freeze of $118 million, which consisted of $65 million in disgorgement, $9 million in prejudgment interest, and a $44 million civil penalty.  *See* Doc. # 113 at 3, 20.  Isolating only Defendant's fraud that occurred within the five years prior to the filing [Doc. # 1] of the Complaint, the SEC would be entitled to an asset freeze of approximately $89 million: $44 million in disgorgement, $1.5 million in prejudgment interest, and an additional $44 million in civil penalties.[1]  The amount currently frozen is not sufficient to satisfy this amount.

---

[1] Specifically, the following fraudulent transactions occurred within five years of the filing of the SEC's Complaint: 2011 Company G fraud related to a purported management incentive payment ($3,113,981) [Doc. # 208 ¶¶ 70-72]; 2013 Company G fraud related to a purported management incentive payment ($1,556,990) [Doc. # 208 ¶¶ 73-74]; 2013 Company G fraud related to a purported investment bank advisory fee ($622,796) [Doc. # 208 ¶¶ 75-76]; 2010 Company I fraud related to overpayment due to exchange rate ($2,185,946) [Doc. # 208 ¶¶ 83-85]; 2014 Company A fraud related to overpayment for shares ($2,044,733) [Doc. # 208 ¶¶ 87-102]; 2014 Company B fraud related to overpayment for shares ($18,000,000) [Doc. # 208 ¶¶ 103-117]; 2013 Company C fraud related to redemption of shares ($8,896,193) [Doc. # 208 ¶¶ 130-134]; and 2014 Company C fraud related to I-Cubed's sale of Company C shares ($7,500,000) [Doc. # 208 ¶¶ 119-129]. These fraudulent transactions – which are indisputably within the five-year statute of limitations – total $43,920,639. Prejudgment interest on this amount comes to $1,520,953. *See* Doc. # 68 at 19-20. And the approximately $44 million civil penalty amount

3

The SEC has secured approximately $58.4 million in cash, securities, jewelry, and gold; and real estate worth approximately $19.7 million. *See* Doc. # 157 at 6-10.[2] Assuming Defendant is entitled to 100% of the proceeds of these assets, and that there are no costs to sell the assets, these relatively liquid assets total approximately $78 million – well under the approximately $89 million modified asset freeze amount.

The SEC has also frozen certain non-liquid assets. As described in prior pleadings, there are significant difficulties in ascribing value to these assets, since any realization may not occur for years (if at all), many of the assets are held by an entity in which Defendant is not the 100% owner, and several of the assets have liquidation restrictions. *See* Doc. # 157 at 10. That said, the SEC's best estimate of the total value of these non-liquid assets, <u>not</u> adjusted for any limitations on Defendant's percentage ownership or liquidation penalties, is approximately $9.2 million.[3] *See id.* at 10-11.  Even including these illiquid and difficult to value assets, the SEC has secured only approximately $87 million – still less than the approximately $89 million modified asset freeze.

---

represents the same amount the SEC initially requested, since the SEC excluded fraudulent transactions older than five years from its requested civil penalties. *See* Doc. # 66 at 14.

[2] The SEC has undertaken a good faith effort to update the value of frozen assets in Defendant's bank and brokerage accounts, and estimates that amount to be approximately $55 million. This figure includes a forthcoming distribution payment of approximately $2.2 million from the sale of certain shares owned by the Essell Group. *See* Doc. # 569. The additional approximately $3 million consists of the SEC's previous estimates of the value of Defendant's MetLife insurance policy and jewelry/paintings [*see* Doc. # 157 at 8 (MetLife), 9 (jewelry/paintings)] and gold in a safety deposit box [*see* Doc. # 442]. The SEC notes that these values may be overstated. For example, Relief Defendant Shalini Ahmed has acknowledged that a sculpture she initially believed was purchased for $500,000 was in fact purchased for approximately $20,000.

[3] The decrease in value from the SEC's prior estimate [Doc. # 157 at 10] is due to the fact that one of the assets – the asset held by Fort Warren – has been liquidated. *See* Doc. # 568.

Thus, even were the Court to accept Defendant's argument that it cannot freeze any assets with respect to his fraud that occurred more than five years prior to the initiation of this action, and were to further assume that there will be no costs associated with liquidation and that Relief Defendant Shalini Ahmed does not have a right to any of the frozen assets (nor does anyone else) so they will all be available to satisfy a judgment, the SEC still has not secured enough assets to cover even this modified asset freeze. For this reason alone, *SEC v. Kokesh* does not "alter the conclusion [previously] reached by the court" [Doc. 392 at 2], especially when considering that Defendant seeks reconsideration of his request for the release of $6 million to his attorneys. *See* Doc. # 97 at 18.

<u>Second</u>, Defendant's argument that the value of the non-liquid Oak capital accounts should now be included in the frozen corpus, and that the Court should then release millions of dollars in liquid assets to him, should also be denied (again). As a threshold matter, the carried interest issue has already been litigated and Defendant provides no reason the Court should reconsider its prior ruling:

> …the SEC and Ms. Ames disputed that the funds in this account are an asset available for freezing and instead contended that Mr. Ahmed's carried interest represented only an expectancy of an entitlement to future income by Mr. Ahmed on Oak's profits but any such interest was (1) still uncertain and (2) forfeited due to his disabling conflict of interest and termination from Oak. Thus, there is great uncertainty as to whether this carried interest account will materialize into an asset available for victim recovery and in the face of this uncertainty, the Court cannot assume that it will.

Ruling and Order Granting Preliminary Injunction [Doc. # 113] at 14-15. If anything, this uncertainty has only been amplified since the Court's earlier ruling. Putting aside whether the asset will ever come to realization, Defendant's explanation of why his fraud against Oak did not cause him to forfeit his interests in Oak is unpersuasive. *See* Doc. # 303 at 5 (arguing he did not forfeit his interests in Oak despite his fraud because the Court entered its TRO on "07th of May 2015 at

18:50 Hours US EDT" but he was "only legally and officially terminated by his erstwhile employer after their Board Meeting held on the 18th of May 2015").[4]  Moreover, the ever increasing value Defendant assigns to the Oak capital accounts further confirms that he cannot be trusted to be forthright with the Court.  Prior to the preliminary injunction hearing, Relief Defendants asserted that the Oak capital accounts held "$23,298,447.06" and therefore the frozen corpus plus the Oak capital accounts was "$101,037,571.28."  Doc. # 86 at 2.  Following the preliminary injunction hearing, Defendant himself similarly represented there to be "at least approximately $23 million[5] from the Oak capital accounts." Doc. # 97 at 18.  Defendant now, however, claims that by including Oak capital accounts within the asset freeze it would push frozen assets "well north of $200MM," meaning the Oak capital accounts have swelled in value by some $100 million.  Like Defendant's claims of seeking to return to the United States, his valuation claims are not credible.

Third, Defendant's claim that he previously "submitted sworn affidavits" declaring "that he is (i) indigent and unable to afford legal representation; and (ii) that he seeks to return to the United States at the earliest opportunity" is both inaccurate and incredible.  Defendant has not filed any such affidavit.  Regardless, Defendant's irrational fear of entering a U.S. consulate claiming it was the Indian authorities that were worried the FBI would engage in "international fugitive snatching" [*see* Doc. # 406 at 4], and his refusal to seek the permission of the Indian Court to leave the territorial Jurisdiction of India and return to the United States [*see* Doc. # 275-3 at 6], strongly suggests that he has no intention of ever returning to the United States.

---

[4] As the SEC previously explained [Doc. # 315 at 7], the timing of Defendant's termination is irrelevant.  Moreover, Oak's delay in terminating Defendant was to allow the SEC an opportunity to seek an asset freeze from this Court, which unquestionably was the only thing that prevented Defendant from taking his now frozen ill-gotten gains with him when he fled to India.

[5] According to Oak, as of June 30, 2016, the value stood at $17.3 million. Doc. # 315 at 5.

<u>Fourth</u>, Defendant's claim that there is new evidence since the Court's earlier ruling is untrue. Defendant avers that "[n]ew evidence since presented after its Order [Doc. 392 dated 1/6/17] to this esteemed Court and not disputed by either the SEC or the non-party Oak also clearly establish now that Oak was proactively encouraging the Defendant to pursue and complete the second secondary transaction - the purchase of Series A shares by Oak from i-Cubed Domains."[6] Motion at 8. Defendant does not explain or cite to this "new evidence," nor how and when the SEC (and Oak) was expected to dispute the evidence but did not do so. With respect to Company C, the only relevant event that occurred between the Court's January 6, 2017 Order [Doc. # 392] and Defendant's June 1, 2017 Motion [Doc. # 589] was Defendant's deposition in which he invoked his Fifth Amendment right against self-incrimination to every question regarding Company C. *See, e.g.*, Doc. # 623 at 51. Defendant's refusal to answer questions on these allegations is hardly sufficient grounds for the Court to revisit its prior ruling.

<u>Lastly</u>, Defendant's claim that his Sixth Amendment rights have been violated and that he is without legal counsel because of the SEC and this Court [*see* Motion at 7] again ignores that his situation is of his own making. The Asset Freeze Order was entered only after a two-day preliminary injunction hearing where Defendant had the right to contest the underlying allegations, present evidence, and cross-examine witnesses. Instead of attending, Defendant

---

[6] Relief Defendants previously (though only temporarily) challenged the fraud with respect to Company C. *See* Dkt. # 113 at 8 ("[I]n their prehearing brief, Relief Defendants contended that the SEC is unlikely to succeed on its claim relating to the Company C transaction because Mr. Ahmed transferred his interest in I-Cubed to wife shortly before the sale to Oak…Relief Defendants do not continue to advance this argument in their post-hearing brief…."). In finding that that the SEC was "likely to succeed on the merits of its claim that [the Company C] transaction was fraudulent," the Court found, among other things, that Defendant "did not disclose to Oak that the shares it paid $7.5 million were valued at less than $900,000 just two months prior or that Mr. Ahmed had privately expressed concerns about the viability of the company just before recommending that Oak further invest in it." *Id.*

chose to flee the United States.[7]  Despite his flight, Defendant nonetheless obtained counsel in this case before he explicitly consented to their withdrawal and opted to proceed *pro se*.  *See* Doc. # 210 at 3.  Thus, any claim that either the SEC or this Court is to blame for Defendant being without counsel ignores Defendant's own conduct.

## Conclusion

As the SEC has not secured sufficient assets to satisfy even an asset freeze modified to exclude disgorgement related to Defendant's fraud executed more than five years prior to the filing of this case, and as there have been no other circumstances to warrant this Court's reconsideration of its prior orders denying Defendant's motions to release millions of dollars from the asset freeze, Defendant's present Motion should be denied.

/////

---

[7] Defendant has recently claimed that he did not flee, but rather went to India "to look for his mother caught up in a devastating earthquake in Northeast India – *a fact that he ran by his erstwhile legal counsel at that time and sought his permission to travel* …." Doc. # 555 at 2 (emphasis added). This claim – incredible on its face – is further contradicted by Defendant's counsel's motion to withdraw as counsel in Defendant's criminal insider trading case, where counsel noted that Defendant had "ceased all communication with Counsel," that "Counsel lacks any reliable means to contact him," and that Defendant "appears to have become a fugitive." *See* Mem. in Supp. of Mot. for Leave to Withdraw, *United States v. Kanodia, et al.*, 2015-cr-10131(D. Mass.) (ECF 31) at 2; *see also* Doc. # 97 at 4-5.

DATED: July 3, 2017.                        Respectfully submitted,

                                            *s/ Mark L. Williams*
                                            Nicholas P. Heinke
                                            Mark L. Williams
                                            Terry R. Miller
                                            Jeffrey E. Oraker
                                            U.S. Securities and Exchange Commission
                                            1961 Stout Street, Suite 1700
                                            Denver, CO 80294-1961
                                            (303) 844-1071 (Heinke)
                                            (303) 844-1027 (Williams)
                                            (303) 844-1041 (Miller)
                                            (303) 844-1097 (Oraker)
                                            HeinkeN@sec.gov
                                            WilliamsML@sec.gov
                                            MillerTE@sec.gov
                                            OrakerJ@sec.gov

                                            *Attorneys for Plaintiff*

<u>CERTIFICATE OF SERVICE</u>

I certify that on July 3, 2017, a copy of the foregoing document was emailed to

Defendant Iftikar Ahmed at IftyAhmed@icloud.com, and served via ECF upon the following:

Jonathan Harris
Reid Skibell
David Deitch
Alexander Sakin
S. Gabriel Hayes-Williams
Harris, St. Laurent & Chaudhry LLP
40 Wall Street, 53rd Floor
New York, NY 10005
(Counsel for Relief Defendants)

*s/ Mark L. Williams*
Mark L. Williams