UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br>    *Plaintiff*,<br>    *v.*<br>IFTIKAR AHMED,<br>    *Defendant*, and<br><br>IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents,<br><br>    *Relief Defendants*. | Civil No. 3:15cv675 (JBA)<br><br>July 18, 2017 |

**ORDER DENYING RELIEF DEFENDANTS' MOTION TO MODIFY THE ASSET FREEZE TO RELEASE RENTAL PROCEEDS FROM RELIEF DEFENDANT'S APARTMENT AND TO PERMIT SALE OF GOLD ASSETS FOR ATTORNEYS' FEES**

In this civil enforcement action brought by the Securities and Exchange Commission (the "SEC"), Relief Defendants Shalini Ahmed, her three minor children, I.I. 1, I.I. 2 and I.I. 3, Shalini Ahmed 2014 Grantor Retained Annuity Trust, DIYA Holdings LLC, DIYA Real Holdings LLC, and I-Cubed Domains LLC (together, the "Relief Defendants") move [Doc. # 442] the Court to modify its August 12, 2015, [Dkt. No. 113] Order freezing certain assets to (1) release $250,000 claimed as rental proceeds generated from Relief Defendant DIYA Holdings LLC's apartment (the "Rental Proceeds"); "and (2) permit the sale of gold assets held in the safety deposit box in the

name of Shalini Ahmed at Bank of America (the "Gold Bars"), for payment of attorneys' fees and replenishment of living expenses." (Relief Def.'s Mot. to Modify the Asset Freeze ("R. Def.'s Mot to Modify") [Doc. # 442] at 1-2.) The SEC opposes this Motion. (*See* Pl.'s Opp'n [Doc. # 465].) The parties' familiarity with the underlying facts of the case is presumed.  For the reasons that follow, Relief Defendants' Motion is denied.

## I. Discussion

In its ruling in this case, the Second Circuit noted that "Relief Defendants do not allege that the referenced assets . . . properly belong to Relief Defendants, much less that they do not include proceeds of Iftikar's fraud." *Sec. & Exch. Comm'n v. I-Cubed Domains, LLC*, 664 F. App'x 53, 57 (2d Cir. 2016). The panel then instructed that

> Insofar as Relief Defendants are able to identify any improperly frozen assets—including those mentioned in their reply brief—they can apply to the district court to release them in the first instance. The SEC would then be required to carry its burden of demonstrating that any such identified assets are either ill-gotten gains to which Relief Defendants do not have a legitimate claim or that Iftikar in fact owns the assets in question.

*Id.*

Accordingly, Relief Defendants must first allege that the assets properly belong to them, upon which the SEC carries the burden of establishing the assets are either ill-gotten gains or owned by Iftikar. Relief Defendants maintain that the SEC has not carried this burden with respect to the Rental Proceeds or Gold Bars and therefore that these assets should be released from the freeze.

## A. Rental Proceeds

Relief Defendants seek access to $250,000 in claimed proceeds derived from renting Unit 12A which, before this Court's asset freeze order, Ms. Ahmed transferred from the DIYA Holdings account at Bank of America and deposited into her account at Fidelity, ending x7540. Relief Defendants assert that "[t]he source of these funds was lease payments from DIYA Holdings' third party tenant" and Ms. Ahmed, testifying as DIYA Holdings' 30(b)(6) representative, explained that she made this transfer because "she was the 99% owner of DIYA Holdings LLC, she had performed services for DIYA Holdings, and she wished to invest the funds, and thus deposited them to a brokerage account." (R. Def.'s Mot. to Modify at 6-7.)

However, Relief Defendants apparently ignore that this Court has already found that Ms. Ahmed is not entitled to proceeds of Unit 12A because she was only a nominal owner of the condominium:

> Mrs. Ahmed next contends that she is the manager and beneficial owner of Relief Defendants DIYA Holdings LLC, an entity that owns a condominium in New York City, 530 Park Avenue, Unit 12A, which generates significant rental income, and DIYA Real Holdings LLC (Unit 12F in the same building), which could generate significant rental income; and that she is entitled to the rental income from both properties. (Relief Defs.' Prehr'g Br. at 13.) The SEC, however, has shown a likelihood of success on its claim that these properties are actually owned by Mr. Ahmed and were purchased with proceeds of fraud. . . .Therefore, the record supports the SEC's contention that Mr. Ahmed and not Mrs. Ahmed is in reality the owner of these two properties.

(Ruling and Order Granting Preliminary Injunction [Doc. # 113] at 10-11.) The Second Circuit subsequently affirmed this Court's Asset Freeze Order recognizing that the record supported (and that Relief Defendants did not contest) "that the funds used to purchase each apartment derived from Iftikar's alleged fraudulent dealings" and that "DIYA, DIYA Real, and Shalini did not provide

any goods or services in exchange for the apartments" which was "sufficient to show the Relief Defendants' likely receipt of ill-gotten assets to which they had no legitimate claim . . ." *I–Cubed Domains, LLC, et al.*, 2016 WL 6561484 at *2.[1]

Here, Relief Defendants put forth the same argument – that Ms. Ahmed is entitled to the asset because "she had performed services for DIYA Holdings" (Motion at 6-7) – that the Second Circuit explicitly rejected in holding that her "involvement in the management of the properties after they were acquired is not relevant" to determining whether she had a legitimate claim to the assets. *I– Cubed Domains, LLC, et al.*, 2016 WL 6561484 at *2. The Court's subsequent decision, using its equitable powers, to release rental proceeds for the limited purpose of payment of Relief Defendants' reasonable attorneys' fees did not modify its determination that the two properties and income they produce belong to Mr. Ahmed. Therefore, Relief Defendants are not entitled to the $250,000 Rental Proceeds derived from those properties.

### B.  The Gold Bars

Relief Defendants next seek release of nine 1-kilogram gold bars (worth a total of approximately $353,448 at today's price of $39,272 per kilogram), which are held in a safety deposit box at Bank of America, account ending x1332. (R. Def.'s Mot. to Modify at 7.) The SEC argues that "Ms. Ahmed does not even claim these assets belong to her," (Pl.'s Opp'n at 8), and Relief Defendants' Motion admits that Ms. Ahmed "testified [at her most recent deposition] that she had no specific memory of when or how those . . . bars were acquired" (R. Def.'s Mot. to Modify at 7).

---

[1] Relief Defendants argument that "[t]he SEC has never suggested that the tenant's rental payments—as opposed to the apartment itself—belong to Mr. Ahmed," is therefore meritless. (Relief Defendant's Reply at 4.)

Indeed she could not identify when the two gold bars[2] were placed in the safety deposit box, who placed them there, or why they were placed there. (Ex. E (Ms. Ahmed 1/23/17 Tr.) to R. Def.'s Mot. to Modify at 370-375.) Relief Defendants' attorney, David Deitch, also stated on February 2, 2017 that the Gold Bars were "discovered . . . in the safety deposit boxes in the inventory" directed by this Court. (Ex. 1 (Status Conference Tr.) at 46:10-14.)

Still, Relief Defendants maintain the Gold Bars should be released because "the SEC [has not] provided any evidence that these gold bars were either 'illgotten' or that they do not belong to Relief Defendants." (R. Def.'s Motion to Modify at 7.) The Court disagrees. Even Relief Defendants' Motion does not contain an explicit allegation of Ms. Ahmed's ownership of the Gold Bars, and the SEC has pointed to testimony which demonstrates that Ms. Ahmed had no knowledge of the existence of the bars. In addition to the testimony referenced above, in February of 2016, prior to the inventory of the safety deposit box, counsel for Relief Defendants represented that no one–including Ms. Ahmed–knew the contents of the box:

> THE COURT: … Is it still accurate that nobody knows what is in these safe deposit boxes? Mr. Deitch?
> MR . DEITCH : That's correct, your Honor . My understanding, and again, I hope Ms. Ahmed will correct me if I have this wrong, that under the freeze, the bank will not allow her to access those safety deposit boxes.

(Ex. 2 (2/18/16 Teleconference Tr.) to Pl.'s Opp'n at 38:20-39:3.) Moreover, Ms. Ahmed testified that Mr. Ahmed had access to the safety deposit box and that she "would not have known if he put something into the box." (Ex. E to R. Def.'s Mot. to Modify at 368:4-12.)

---

[2] Ms. Ahmed has only specifically been questioned about two of the nine bars. (*See* Ms. Ahmed 1/23/17 Tr. at 370-75.)

That Ms. Ahmed had no knowledge of the contents of the safety deposit box and had no recollection of the Gold Bars, and where Mr. Ahmed had independent access to those boxes, the Court finds that the SEC has made a sufficient showing to justify continuing restraint of the Gold Bars pending resolution of this case.

### C. *Balance of the Equities*

The Court rejects Relief Defendants' argument that

[t]he balance of equities favors the requested releases as: (a) Relief Defendants have substantial legitimate assets and are burdened by the lack of funds to trace the provenance of those assets; (b) the release requested would not impact compensation to alleged victims; (c) Relief Defendants have substantial defenses and are burdened by the lack of funds to put forth those defenses.

(R. Def.'s Mot. to Modify at 8.) The SEC disputes Relief Defendants' first two assertions, claiming they are "not true" and "based on . . . misrepresentation." (Pl.'s Opp'n at 10-11.)

The SEC points out Ms. Ahmed's prior acknowledgement "that she made only $1.2 million in the past 13 years (*See* Doc. # 69 at 16) and has been unable to identify the existence of any clean assets belonging to her aside from a few retirement accounts." (*Id.* at 11.) The Second Circuit already rejected Relief Defendants' claim that there existed large amounts of Relief Defendants' legitimate assets that were subject to the asset freeze. *See I–Cubed Domains*, LLC, 2016 WL 6561484 at *4. Relief Defendants have offered no further evidence convincing this Court otherwise. Furthermore, Relief Defendants' claim that the release of assets will not harm investors is based on the misrepresentation that the "[t]he SEC concedes that more than $87,000,000 in cash and assets are currently frozen." (R. Def.'s Motion to Modify at 8.) However, the SEC subsequently updated the Court and parties about the assets it had secured in November 2015, which is "approximately $51.2 million in liquid assets, real estate worth approximately $19.7 million, and other non-liquid

assets that are difficult to value and whose value, if any, may not be realized in the near future."
(Pl.'s Opp'n to R. Def.'s Motion for Limited Modification of the Asset Freeze Order [Doc. # 157]
at 6.)

The Court finds that the balance of the equities weighs against releasing the requested funds
on this record. As the Second Circuit recognized, this Court has already provided "substantial
carve-outs from the freeze for her legal and living expenses" which the SEC complains derive from
tainted monies that do not belong to Relief Defendants. *See I–Cubed Domains, LLC*, 2016 WL
6561484 at *3. Accordingly, neither the Rental Proceeds nor the Gold Bars will be released from
the asset freeze.

## II. Conclusion

For the foregoing reasons, Relief Defendants' Motion to Modify the Asset Freeze is
DENIED.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.


Dated at New Haven, Connecticut this 18th day of July 2017.

7