UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>IFTIKAR AHMED,<br><br>Defendant, and<br><br>IFTIKAR ALI AHMED SOLE PROP; *ET AL.*,<br><br>Relief Defendants. | Civil Action No. 3:15-cv-675 (JBA) |

**DEFENDANT'S REPLY TO SEC'S RESPONSE IN OPPOSITION TO DEFENDANT'S EMERGENCY MOTION TO STAY IN LIGHT OF *KOKESH*.**

The Defendant respectfully submits this reply to the SEC's Opposition [Doc. 684] (hereinafter, referred to as the "Response") to the Defendant's Emergency Motion for Stay in light of *Kokesh* [Doc. 654]. In its Response, the SEC makes the same series of flawed and failed arguments that were all summarily rejected by the US Supreme Court as it unanimously decided on *Kokesh*[1] that disgorgement was **not** an equitable remedy, and that disgorgement constituted a penalty. Quite notably, the SEC fails to submit any numbers or data to assert their claims of insufficient assets, rather they have withheld data so as to mislead the esteemed Court.

*First*, the current asset freeze, in light of *Kokesh*, is now illegal and excessive. Hence, an immediate stay in the proceedings, while the Court addresses the economic and legal impact of *Kokesh*, is not only justified but overdue. Hon'ble Justice Janet B. Arterton herself stated, "It's ***not*** a trial issue. And so we ***want*** - we ***can***, and we ***should*** resolve it at the earliest point. To the

---

[1] *Kokesh v. SEC*, No. 16-529, 2017 WL 2407471, at *9 (U.S. June 5, 2017).

Case 3:15-cv-00675-JBA Document 685 Filed 08/10/17 Page 2 of 13

extent that that resolution focuses on how much should be **properly** frozen, whether there should be amendments in the modifications to the asset freeze order..." (Please see **Exh. 1**, pg. 13, lines 3-8, emphasis added). Thus, all of SEC's arguments in its Response are in contradiction to what this esteemed Court has already declared. Also see Doc. 644 (**Exh. 2**) where the esteemed Court itself acknowledges the need for adjustments to the asset freeze based on the impact of *Kokesh*.

<u>Second</u>, the SEC makes yet another unsubstantiated allegation that mirrors every single claim they have hurled at the Defendant throughout this dispute - unsubstantiated storytelling without any truth in its genes. In Footnote 1, Doc. 684, the SEC alleges that the Defendant has somehow received "legal assistance;" and yet offers no evidence in support. It is plausible that the SEC has not heard of *Google*[2] or *Plainsite*[3] or, given their proven abhorrence to the use of technology, the Internet. If anyone has assisted the Defendant, it is Google and Plainsite!

<u>Third</u>, in November 2015, the SEC had submitted a detailed list of all assets that were frozen [see **Exh. 3**, Doc. 157, pages 6-11]. Yet, the SEC fails, neigh prefers not, to submit an updated account of the same frozen assets now. The SEC knows very well that it has now secured and frozen assets worth around **$130MM** - well in excess of not just the appropriate level of assets that can be legitimately frozen in light of *Kokesh*, but also the current asset freeze limit. This, *now-illegal*, asset freeze has gone on way too long and the Court must correct this grave injustice immediately. Everything has been frozen with no accounting of the total asset value till date. That itself is *illegal* and *wrong*.

I.  **The SEC has secured assets well in excess of even the currently ordered asset freeze and significantly in excess of what can be legitimately frozen in light of *Kokesh*.**

Leaving aside all the legal arguments for a moment, the numbers will tell the true story that supports an immediate stay in the proceedings and to correct the wrong that has now gone

---

[2] www.google.com is the leading internet search engine, is a part of Alphabet, a CA-based technology company.
[3] PlainSite (www.plainsite.org), makes available over 8 million legal dockets to users free of charge.

on for way too long, depriving three innocent, minor American children of their basic necessities.  The Defendant's children have been forced to discontinue all their extracurricular and sporting activities, and the Defendant has been deprived of both preventative and urgent medical care despite his life threatening malaise of cancer[4].  <u>This has to stop, and stop now</u>.

Even as it remains the burden of the SEC to demonstrate how they have not been able to secure the required assets sufficient to satisfy any potential judgment, the SEC presents no numbers, no data to back up their claims, simply because they know the numbers directly contradict their position.

<u>*First*</u>, the SEC has wrongly convinced the esteemed Court to freeze (i) the alleged gross pecuniary gain, labeled as "*disgorgement*"; (ii) prejudgment interest; and (iii) the amount of alleged gross pecuniary gain, but this time labeled as "*civil penalties*."  In *Grupo Mexicano v. Alliance Bond Fund*, 527 U.S. 308, 321 (1999), the Supreme Court held that "the District Court had no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' contract claims for money damages." Also, in *United States v. Oncology Assocs*., 198 F.3d. 489, 496 (4th Cir. 1999), the Circuit Court held that "general equitable authority does **not** authorize prejudgment injunctions in actions at law."

<u>*Second*</u>, the Defendant has taken the tabulation of assets that was presented by the SEC in Doc. 157 (see **Exh. 3**) in Nov, 2015 and updated them for current values - supporting each change with statements from financial institutions or relevant market data.

The value of all frozen assets belonging to Relief Defendants is **$58.2MM (Exh. 4)**;  that of all frozen assets <u>jointly</u> held by Defendant and his spouse is **$14.5MM (Exh. 5)**; and that of all frozen assets belonging to the Defendant alone is **$56.9MM (Exh. 6)**. Aggregating them, the

---

[4] It is quite ironic to note here that, were something to happen to the Defendant as a result of the repeated denial of expenses for medical care (and even the meager $200 once approved by the Court was never actually ever received by the hospital in India), not only would the SEC and the esteemed Court have blood on their hands; the SEC would indeed not have any claims of penalties against a dead Defendant.  Anyone with very basic understanding of game theory, a branch of economics made popular by Prof. John Nash, would indeed be shocked by the SEC's irrational (leave alone illegal) insistence on denying basic medical care to the Defendant.

total value of assets currently frozen is **$129.7MM**[5]. It has to be noted that the esteemed Court had only ordered an asset freeze, prior to the Supreme Court decision on *Kokesh*, totaling $118MM. Thus, the SEC's argument that they have not secured assets sufficient to satisfy any judgment for alleged conduct within the five-year statute of limitations is utterly flawed and unsupported. Numbers do not lie.

*Third*, in his Motion to Stay [Doc. 654], the Defendant has submitted all his legal arguments why the maximum judgment in this dispute, hypothetically assuming every single claim against him is granted by a jury, cannot exceed $44MM post-*Kokesh*. As **Exh. 6** clearly shows, the assets belonging solely to the Defendant (even *excluding* his share of the assets that are jointly held with his spouse, to which the Defendant should have a 50% ownership claim), the SEC has secured assets worth **$56.9MM**. Thus, the excess assets should be immediately unfrozen so that the Defendant can afford long overdue life-saving treatment for his cancer and, *more importantly*, to be able to afford adequate and appropriate legal assistance so as to be able to adequately protect his interests even at this stage of the proceeding. *Better late than never*.

*Fourth*, it can only be taken as a compliment by the Defendant that the mighty SEC has accepted and conceded to the "acute legal analysis"[6] submitted by the Defendant in his Motion for Summary Judgment and his Reply to the SEC Opposition; yet it is incredible that they infer that the Defendant would not benefit by having proper legal representation even at this stage. Their utterly flawed argument is akin to saying a serious cardiac patient, in need of immediate

---

[5] It has to be duly noted by this esteemed Court that this analysis completely ignores, for the limited purpose of this exercise of establishing the **undisputed** value of assets currently frozen only, the value of the earned and vested IPP payments due to the Defendant that Oak, the purported victim, continues to hold in its possession and should be available first to the purported victims, in the event of any judgment. Arguably the assets seized by Oak (consisting of the Defendant's actual investments in various Oak funds, his carried interest, IPP, Oak equity, and actual realized cash and stock distributions for 2015, 2016 and YTD 2017 held at Oak), itself is worth north of $100MM. The esteemed Court may be pleased to order a full independent accounting of all the Defendant's assets held at Oak to establish the real value of those assets already in the possession of Oak.
[6] Doc. 684, Page 19, Line 12.

bypass surgery, should forgo the services of a qualified surgeon (*despite being able to afford one now*) simply because he has survived without surgery (*which he could not afford earlier*) so far!

*Fifth*, the SEC's insistence that the Defendant has not been denied access to evidence is, likewise, ludicrous.  One only needs to examine their Statement of Undisputed Facts [Doc. 624] and its accompanying exhibits to see that most of them were not shared with the Defendant.  And no one needs any reminder that their only witness is the disgraced Oak representative, Ms. Grace Ames, who not only repeatedly lied under oath, but the SEC shared >96% redacted transcripts of her depositions and testimonies.  If that constitutes "*access to evidence,*" justice has been brutally murdered already.

This proceeding must be stayed immediately to correct the immense wrong from continuing.  This Court must aspire to get to the *right* result, not a *rushed* result.   Numbers do not lie; and **Exhs. 4**, **5** and **6** clearly establish the severe injustice that has gone on for way too long already, especially with its irreversible impact on three innocent, minor children.

II. **Kokesh undeniably establishes disgorgement is a penalty and not an equitable relief: the SEC cannot seek disgorgement as an equitable relief in federal courts.**

In analyzing the implications of *Kokesh*, the former SEC Chair, Ms. Mary Jo White, wrote, "…the [C]ourt rejected the government's argument that disgorgement is remedial…and they represent a penalty and **thus** fall within the 5-year statute of limitation of §2462."[7]  It is critical to understand the **cause** (*it is a penalty*) and **effect** (hence, *subject to §2462 statute of limitations*) carefully in understanding and implementing *Kokesh*.  The SEC's labored legal analysis is flawed; they claim *because* disgorgement is subject to §2462 (*cause*), it is a penalty under that Title only and not otherwise (*effect*).  It is noteworthy that, in *Kokesh*, the SEC unsuccessfully argued against a "*narrow construction*" presumption; and yet its entire Response

---

[7] Law360: *What Kokesh v. SEC Means for Enforcement Actions,* at https://www.law360.com/articles/932661/what-kokesh-v-sec-means-for-enforcement-actions

now wants a "*narrow construction*" presumption when interpreting *Kokesh*. Quite unprincipled and opportunistic.

For many decades, the SEC has routinely sought and obtained from federal courts relief in form of disgorgements. However, the Supreme Court's decision in *Kokesh*, coupled with its 2013 decision in *Gabelli v. SEC*, 568 U.S. 442, 454 (2013), clearly reins in the overzealous SEC actions as it has no basis in law as it relates to disgorgement. The Supreme Court's decision on *Kokesh* (**Exh. 7**) very clearly establishes that disgorgement is not available at all as an SEC remedy in enforcement actions within federal courts.

Four different Supreme Court Justices asked questions or made comments about the issue during oral arguments (oral transcript attached as **Exh. 8**), including Chief Justice Roberts who remarked, "One reason we have this problem is that **the SEC devised this remedy or relied on this remedy without any support from Congress**. If Congress had provided, here's a disgorgement remedy, you would expect them, as they typically do, to say, here's a statute of limitations that go with it."[8] (emphasis added). Justice Kennedy asked if "specific statutory authority…makes it clear that the district court can entertain [the disgorgement] remedy." Both Justices Alito and Sotomayor pointedly asked for the source of authority seeking disgorgement, and the SEC could point to none. Justice Gorsuch specifically noted that there was **no** statute governing disgorgement and pointed out, "**We're just making it up**." (emphasis added). Arguably, the Supreme Court Justices know a thing or two about statutes; and yet all the SEC arguments fly in the face of the US Supreme Court Justices' assertions and statements.

The SEC, in its Response, cites the same old precedent cases that were summarily rejected and reversed by the Supreme Court decision on *Kokesh*. And, contrary to their arguments in the Response, the SEC had indeed conceded during the oral arguments on *Kokesh*,

---

[8] Transcript of oral arguments at 7, 13, 15-16, 31-33, 52, *Kokesh v. SEC*, WL 2407471 (U.S. Apr. 18, 2017)(No. 16-529) available at htpps://www.supremecourt.gov/oral_arguments/argument_transcript/2016/16-529_21p3.pdf

that "[i]t's true that the **securities statutes don't have a specific authorization that says courts may order disgorgement**."[9] (emphasis added).

Congress has never explicitly included disgorgement among the remedies the SEC can seek in federal court.  This is not merely a legislative oversight - as Congress has explicitly empowered the SEC to order disgorgement administratively without having to go to court at all.[10]  Notably, the SEC's toolkit as set forth in various statutes does not include disgorgement in any enforcement action brought in federal courts.  Congress's explicit silence on the issue only means that it has not authorized the SEC to pursue disgorgement in federal courts, as the Justices in the Supreme Court clearly stated.

Now that the Supreme Court has irrefutably established that disgorgement is a penalty ("We hold that SEC disgorgement constitutes a penalty."[11]), undeniably the SEC's arguments are flawed, and all of the old cases cited by them stands reversed by the Supreme Court decision on *Kokesh*.  The *Amici Curiae* briefs filed by Mr. Mark Cuban[12] (see **Exh. 9**) and Americans For Forfeiture Reform[13] (see **Exh. 10**) presents authoritative legal arguments and support that, *if* disgorgement is not an equitable remedy, then the SEC has *no* statutory authority to seek disgorgement in federal courts.

As a former Assistant Director of the SEC's Division of Enforcement has noted, "Removing the façade of equity would severely undermine the prevailing approach…"[14] **Exh. 11** is the seminal paper by Mr. Russell G. Ryan on the issues debated in this section.  The Supreme

---

[9] *Idem*.  Page 32 lines 21-23, Ms. Goldenberg responding to Chief Justice Roberts.
[10] See e.g. 15 USC§§ 77h-1(c), 78u-2(e), -3(e).  The fact that Congress has explicitly granted the SEC, an independent executive branch agency, the power to order disgorgement claims administratively as part of its law enforcement functions, weighs heavily against the presumption that disgorgement is available as a remedy in federal courts.  Also, noteworthy here, none of the statutory provisions use the term "disgorgement."
[11] *Kokesh v. SEC*, 2017 WL 2407471 (U.S. June 5, 2017).
[12] Available at http://www.scotusblog.com/wp-content/uploads/2017/03/16-529_amicus_pet_mark_cuban.pdf
[13] Available at http://www.scotusblog.com/wp-content/uploads/2017/03/16-529_tsac_Americans_For_Forfeiture_Reform.pdf
[14] Russell G. Ryan, The Equity Façade of SEC Disgorgement, 4 Harvard Business Law Review Online (2013), available at http://www.hblr.org/2013/11/the-equity-façade-of-sec-disgorgement/

Court decision on *Kokesh* has permanently removed that façade. Every single precedent case cited by the SEC began and ended with the (*now-flawed*) assumption, which courts earlier accepted as a truism, that disgorgement is an "equitable remedy." All the advantages enjoyed by the SEC are now permanently swept aside given the Supreme Court decision that disgorgement sought by the SEC is not an equitable remedy but is a penalty.[15]

Justice Sotomayor, authoring the Supreme Court decision on *Kokesh*, went out of her way to establish that disgorgement is a relatively new **penalty** that was artificially created by judicial fiat at the SEC's behest.[16] In reviewing the statutory history, she noted that the SEC initially lacked any "statutory authorization for monetary remedies" and urged courts to order disgorgements as an exercise of their inherent equitable power.[17] In 1990, Congress authorized the SEC to seek civil penalties[18] - endowing it with what she called a "full panoply of enforcement tools" - yet, the SEC has "continued its practice of seeking disgorgement in enforcement proceedings."[19] Finally, had Congress meant for §78u(d)(5) to allow the SEC to seek disgorgement in federal courts, they would have explicitly copied the language it enacted 12 years earlier in § 202(a) of the Securities Enforcement Remedies and Penny Stock Reform Act of 1990 for the purposes of <u>allowing disgorgement only in SEC administrative proceedings</u> ("…the Commission…**may enter an order requiring accounting and disgorgement, including reasonable interest**.").[20] Congress did not.

On page 5 of their Response, the SEC falsely claims "Congress…has approved of that practice." (lines 10-12). The lengthy discourse by Justice Sotomayor plainly disproves SEC's claims. Congress never "approved" it - else it would be law, and if Congress approved it, the

---

[15] *Idem.*

[16] *Kokesh*, 2017 WL 240471, at *5 n.3 (declining to opine on "whether courts possess authority to order disgorgement in SEC enforcement proceedings or whether courts have properly applied disgorgement principles in this context").

[17] *Idem*, at *2.

[18] Securities Enforcement Remedies and Penny Stock Reform Act of 1990, Pub. L. No. 101-429, 104 Stat. 931.

[19] *Idem*, at *3.

[20] Pub. L. No. 101-429, 104 Stat. 931, 938 (codified at 15 U.S.C. §78U-2).

Supreme Court Justices would not question it. Similarly, disgorgement does not constitute injunctive relief as claimed by the SEC in a post-*Kokesh* world, else it could not be a penalty under any Title or Statute of Law.

### III. *Kokesh* clearly establishes that disgorgement amounts must be considered when calculating the maximum penalty amount under 15 USC§ 78u(d)(3)(B)(iii).

*First*, statutes dictate maximum penalties. Thus, the SEC cannot seek any penalty (*including* disgorgement, which is a penalty) greater than that statutory ceilings. In its Response, the SEC continues to make the same failed arguments that disgorgement is a penalty under USC § 2462 but not otherwise and, hence, *Kokesh* must be interpreted narrowly. But the Supreme Court's opinion on *Kokesh*, read as a whole, centers about the fundamental premise that disgorgement cannot be one thing under one construct, and yet another thing completely different under a different construct. The Supreme Court rejected the SEC's unprincipled argument that the SEC can construe the same word - in this case "*disgorgement*" - differently in different contexts, always choosing the construction that benefits the government. Something cannot be an "apple" under certain conditions but an "orange" under others in the same dispute - as Sherlock Holmes would say, "*Elementary, my dear Watson*!"[21]

*Second*, the SEC repeatedly cites its privileges under administrative proceedings; but undeniably the same authorizations do not automatically extend to federal courts. As stated in *SEC v. Wyly*, 56 F. Supp. 3d. 394, 402 (S.D.N.Y. 2014) (citing *SEC v. Pentagon Capital Management*, 725 F.3d 279, 288 (2d Cir. 2013)[22], "Because disgorgement is an equitable remedy, the district court has broad discretion not only in determining whether or not to order disgorgement but also in calculating the amount to be disgorged." This presumption (of being an equitable remedy) behind each such precedent decision cited by the SEC is now rendered <u>invalid</u>

---

[21] http://quoteinvestigator.com/2016/07/14/watson/ - an interesting background to a widely used quote.
[22] *Wyly* and *Pentagon Capital* are two of innumerable decisions that had affirmed, <u>prior</u> to *Kokesh*, that disgorgement was not a penalty.

under *Kokesh* and a proper regard for the statutory language dictates that any amount that is disgorged must now be added to the calculation of the maximum penalty amount; otherwise the SEC is impermissibly circumventing the statutory maximums.

*Third*, disgorgement is also a forfeiture, because under *Gabelli'*s natural-reading approach, disgorgement is synonymous to forfeiture. The Supreme Court indicated as much when it stated, "forfeiture…requires disgorgement of the fruits of illegal conduct."[23] Furthermore, in giving their words the correct meanings, the Eleventh Circuit also found "forfeiture clearly synonymous with disgorgement."[24]

*Fourth*, this is not an administrative or a cease-and-desist proceeding. None of the multiple claims the SEC makes in page 15 of Doc. 684 and on Footnote 10 have any relevance at all in federal courts in the absence of clear and distinct Congressional sanction, of which there is currently none.

## CONCLUSION

In summary, this Motion is nothing more than an articulation of what the Hon'ble Justice Janet A. Arterton already said on the July 12TH, 2017 teleconference, "But it seems to me that we've **got** to - that we **ought** to, at the **earliest point**, take care of the legal impact of *Kokesh*." (emphasis added). As this esteemed Court will agree, the *status quo* is morally wrong, legally indefensible, and financially punishing innocent kids. *First*, this esteemed Court must immediately determine the new permissible asset freeze amount (all parties and this Court agrees it is no longer $118MM). *Second*, the esteemed Court must account for all assets currently frozen and independently establish the real value of all frozen assets. *Third*, this esteemed Court must unfreeze and release any and all assets in excess of the new permissible asset freeze limit.

This Motion must be granted immediately.

---

[23] *United States v. Ursery*, 518 U.S. 267, 284 (1996).
[24] *Graham*, 823 F.3d. at 1363. The Court found it moot to consider whether disgorgement is a penalty (at 1363 n.3) because it clearly was a forfeiture, and hence punitive.

Respectfully Submitted,

Dated:	August 10TH, 2017	/s/ Iftikar Ahmed
―――――――――――――――――
Iftikar A. Ahmed
C/O Advocate Anil Sharma
10 Government Place East, Ground Floor
Behind Kanpur Leather House
Kolkata 700069, India
Tel: +91.98.30.089.945
Email: iftyahmed@icloud.com
*Pro Se*

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and served by electronic mail to:

Nicholas P. Heinke
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1071
Email: heinken@sec.gov

Mark L. Williams
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1027
Email: williamsml@sec.gov

Paul E. Knag
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5400
Fax: (203) 653-5444
Email: pknag@murthalaw.com

David B. Deitch
Harris, St. Laurent & Chaudhry LLP VA
1818 Library Street, Suite 500
Reston, VA 20190
(703) 956-3549
Fax: (703) 935-0349
Email: ddeitch@sc-harris.com

Jonathan Harris
Harris, St. Laurent & Chaudhry LLP
40 Wall Street, 53rd Floor
New York, NY 10005
(646) 395-3481
Fax: (212) 202-6206
Email: jon@sc-harris.com

L. Reid Skibell
Harris, St. Laurent & Chaudhry LLP
40 Wall Street, 53rd Floor
New York, NY 10005
(917) 512-9466
Fax: (212) 202-6206
Email: rskibell@sc-harris.com

Priya Chaudhry
Harris, St. Laurent & Chaudhry LLP
40 Wall Street, 53rd Floor
New York, NY 10005
(212) 785-5550
Fax: (212) 202-6206
Email: priya@sc-harris.com

Steven Gabriel Hayes Williams
Harris, St. Lauren & Chaudhry LLP
40 Wall Street, 53rd Floor
New York, NY 10005
(212) 397-3370
Fax: (212) 202-6206
Email: ghayeswilliams@sc-harris.com

Kristen Luise Zaehringer
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5406
Fax: (860) 240-5758
Email: kzaehringer@murthalaw.com

Dated:       August 10TH, 2017              /s/ Iftikar Ahmed

                                                                       _____
                                                                       Iftikar A. Ahmed
                                                                       C/O Advocate Anil Sharma
                                                                       10 Government Place East, Ground Floor
                                                                       Behind Kanpur Leather House
                                                                       Kolkata 700069, India
                                                                       Tel: +91.98.30.089.945
                                                                       Email: iftyahmed@icloud.com

                                                                       *Pro Se*