UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> IFTIKAR AHMED, <br><br> Defendant, and <br><br> IFTIKAR ALI AHMED SOLE PROP; *ET AL.*, <br><br> Relief Defendants. | Civil Action No. 3:15-cv-675 (JBA) <br><br><br><br><br><br><br><br> AUGUST 29TH, 2017 |

**DEFENDANT'S NOTICE OF SUPPLEMENTAL AUTHORITY FOR HIS MOTION TO STAY IN LIGHT OF *KOKESH*  [DOC. 654 OF 07/13/2017]**

The Defendant respectfully submits the attached Opinion and Order issued on 22ND August 2017, in *SEC v. Penn*, Case No. 14-CV-581 (VEC) in the United States District Court Southern District of New York (S.D.N.Y.) in further support of the Defendant's Motion to Stay in Light of *Kokesh* [Doc. 654 dated 13TH July 2017].  The relevant Order is attached as **Exhibit 1**.

The defendant in that matter, Penn, was the general partner of Camelot Acquisition Secondary Opportunities, L.P., a private equity fund.  In *Penn*, the SEC sought summary judgment, including an award of disgorgement, against the defendant who had earlier been convicted in a parallel criminal case of having misappropriated approximately $9MM from the

1

private equity fund that he controlled.   The defendant had forfeited his interest in the said fund, which primarily consisted of his right to "*carried interest*" or a percentage of the fund's profits. The parties dispute the value of the forfeited interest in the fund - while the defendant valued his carried interest in the fund to be worth around $18.5MM, the SEC argued that that estimate was too rosy, based on speculative and out of date assumptions and did not account for the fund's provisions which required the defendant to forfeit certain interests in the fund upon his removal as the general partner of that fund.

Despite the lack of consensus on the value of the forfeited carried interest of the defendant, the SEC did not dispute that Penn's carried interest in the fund had some notional value that could and would offset his disgorgement obligation.

The court in *Penn* acknowledged the parties' dispute over the value of the defendant's forfeited interest in the fund as a material dispute of fact.   The court ordered an evidentiary hearing to resolve the factual question of the value of the defendant's forfeited carried interest in the fund; and, therefore, denied the SEC's motion for disgorgement pending an evidentiary hearing.   The court further strongly encouraged the parties to consider whether this issue could be resolved consensually without the need for a hearing.

The defendant had argued that any disgorgement award must be offset by the value of his forfeited interest in the fund; and the court clearly stated that the SEC acknowledged and accepted this point but only disputes the valuation of the forfeited interest in the funds.[1]

---

[1] Lines 12-18, Page 6 of the Order (attached as Exhibit 1) in SEC v. Penn, 14-CV-581 (VEC), S.D.N.Y. dated 08/22/2017.

2

In this instant matter in front of this esteemed Court, the Defendant has a number of assets associated with his former employer, Oak, including his vested and earned carried interest, IPP (bonus) payments, his direct investments in the Oak funds as an investor (or as a limited partner), and his equity ownership of Oak Management Corporation itself.   The valuation of carried interest in a private equity or a venture capital fund is a complex undertaking.   The Defendant has presented three different methodologies for the valuation of his earned and vested carried interest only in the Oak funds (leaving aside the valuation of his earned and vested IPP payments, and the value of the equity ownership of Oak Management Corporation itself for the moment).   Please see **Exhibit 2** for the detailed analysis of the three valuation methodologies, with the summary shown here below, along with other data inputs required for the analysis.

1. Using general market practice of a 2x return over the life of a fund: **$59MM**[2]
2. Oak's internal valuation of GP gains allocation as of 08/2010: **$97MM**[3,4]
3. Oak's capital statements and K-1s issued to the Defendant: **$31MM**[5]

---

[2] It is a general practice in the VC market as a rule of thumb to assume a 2x fund return over the life of a fund, which represents a very modest 7.2% IRR over 10-years.   Compare this very conservative assumption with the 10-year return of the NASDAQ Composite Index of 8.3% per year (for the period 2006-2016, the last ten years).   Arguably, a riskier asset like a venture capital fund should, and does, return a higher IRR (and hence multiple) than a public market proxy; hence this is a very conservative assumption and understates the actual value of the carried interest calculated.

[3] Oak publishes these GP gains allocation estimates to all its partners and investment team professionals every Monday throughout the year (the Monday Meeting Reports).   These numbers are admittedly dated as the only such Monday Meeting Report available to the Defendant is from August 2010.   However, the esteemed Court should be pleased to get the most updated numbers from any Monday Meeting Report prior to March 30TH, 2015 (the last Monday prior to the start of this dispute) for an updated and unbiased analysis.   The Defendant contends that this number presented here is conservative and likely understates the value of his carried interest.   For comparison purposes, the NASDAQ Composite Index ended 2010 at 2,653 (as of 12/31/2010) and ended 2014 at 4,736 (as of 12/31/2014), representing an increase of 78.5% over that 4-year period.   The NASDAQ Composite Index is the closest market proxy that is very closely correlated to any technology focused venture capital fund.   Historical $R^2$ values between NASDAQ Composite Index and Oak funds' returns are very close to 1 or 100%.

[4] This analysis ignores the carried interest in Oak XIII since that fund Oak XIII, though established, had not commenced investing as of the date of the report used in the analysis (Monday Meeting Report of August 23RD, 2010).   Hence, the figure $97MM is an under estimation as it leaves out a $770MM fund completely from the arithmetic.

[5] This figure is taken from December 31ST, 2014 Oak Capital Account statements since this was the last known unbiased valuation of the Defendant's capital accounts at Oak.   Oak also continues to hold on to most of $2MM

While nothing in the *Penn* opinion binds this esteemed Court, the Defendant wishes to bring to the attention of this esteemed Court, the SEC's concession in the *Penn* matter that the forfeited carried interest in the fund had some notional value and would offset any disgorgement obligations.   The treatment and valuation of the earned and vested carried interest in a private equity, *irrespective of whether it is forfeited or not*, bears significant similarity to the instant matter in front of this esteemed Court, and in particular to the fully briefed Motion to Stay in Light of *Kokesh* that awaits the esteemed Court's decision.

---

worth of actual realized distribution (hence, liquid assets) from 2015, and an unknown amount since then.   Thus, the purported victims are already in possession of significant assets in their hands; which should all be included in the calculation of the total asset base currently frozen - well in excess of what is  now legitimate and legally permissible in light of *Kokesh*.

Respectfully Submitted,

Dated:      August 29TH, 2017        /s/ Iftikar Ahmed

                                                Iftikar A. Ahmed
C/O Advocate Anil Sharma
10 Government Place East, Ground Floor
Behind Kanpur Leather House
Kolkata 700069, India
Tel: +91.98.30.089.945
Email: iftyahmed@icloud.com
*Pro Se*

**CERTIFICATE OF SERVICE**

       I hereby certify that a copy of the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and served by electronic mail to:

Nicholas P. Heinke
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1071
Email: heinken@sec.gov

Mark L. Williams
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1027
Email: williamsml@sec.gov

Paul E. Knag
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5400
Fax: (203) 653-5444
Email: pknag@murthalaw.com

David B. Deitch
Harris, St. Laurent & Chaudhry LLP VA
1818 Library Street, Suite 500
Reston, VA 20190
(703) 956-3549
Fax: (703) 935-0349
Email: ddeitch@sc-harris.com

Jonathan Harris
Harris, St. Laurent & Chaudhry LLP
40 Wall Street, 53rd Floor
New York, NY 10005
(646) 395-3481
Fax: (212) 202-6206
Email: jon@sc-harris.com

L. Reid Skibell
Harris, St. Laurent & Chaudhry LLP
40 Wall Street, 53rd Floor
New York, NY 10005
(917) 512-9466
Fax: (212) 202-6206
Email: rskibell@sc-harris.com

Priya Chaudhry
Harris, St. Laurent & Chaudhry LLP
40 Wall Street, 53rd Floor
New York, NY 10005
(212) 785-5550
Fax: (212) 202-6206
Email: priya@sc-harris.com

Steven Gabriel Hayes Williams
Harris, St. Lauren & Chaudhry LLP
40 Wall Street, 53rd Floor
New York, NY 10005
(212) 397-3370
Fax: (212) 202-6206
Email: ghayeswilliams@sc-harris.com

Kristen Luise Zaehringer
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5406
Fax: (860) 240-5758
Email: kzaehringer@murthalaw.com

Dated: August 29TH, 2017  /s/ Iftikar Ahmed

                                                                                  _____
Iftikar A. Ahmed
C/O Advocate Anil Sharma
10 Government Place East, Ground Floor
Behind Kanpur Leather House
Kolkata 700069, India
Tel: +91.98.30.089.945
Email: iftyahmed@icloud.com

*Pro Se*