UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>        Plaintiff,<br><br>    v.<br><br>IFTIKAR AHMED,<br><br>        Defendant, and<br><br>IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents,<br><br>        Relief Defendants. | Civil Action No. 3:15cv675 (JBA) |

**PLAINTIFF UNITED STATES SECURITIES AND EXCHANGE COMMISSION'S RESPONSE IN OPPOSITION TO RELIEF DEFENDANTS' MOTION TO MODIFY THE ASSET FREEZE ORDER TO RELEASE FUNDS FOR PAYMENT OF INCOME TAXES**

Plaintiff United States Securities and Exchange Commission (the "SEC") hereby files this opposition to Relief Defendants' motion to modify the asset freeze order to release funds for payment of taxes purportedly owed by Relief Defendant Shalini Ahmed [Doc. # 690] ("Motion"). In the Motion, Relief Defendants seek the release of nearly $280,000 in frozen assets to pay two tax bills related to Ms. Ahmed's 2015 federal and state income taxes. For the reasons outlined below, the Court should not release these funds at this time. Rather, the Court

1

should take Relief Defendants' request under advisement and not release funds for tax payments until, at a minimum, the Court determines there are sufficient funds to satisfy any judgment in this case <u>and</u> until such time that it is determined that Ms. Ahmed in fact owes these taxes.

<u>First</u>, it is unlikely that the tax bills reflect Ms. Ahmed's true tax liability. Ms. Ahmed likely does not owe the income taxes reflected in the notices attached to the Motion (which are simply the result of her filing tax returns claiming to owe those amounts).[1] For example, the Motion notes that more than $100,000 of the income tax liability relates to the account ending x8965 at Fidelity Investments. *See* Motion at 3. But as the SEC detailed in prior pleadings, this account was exclusively funded by Mr. Ahmed's proceeds from fraudulent transactions. *See* Doc. # 68 ¶ 33. Indeed, with respect to this account, this Court has already found that "Mrs. Ahmed's testimony and the other record evidence suggests that Mrs. Ahmed merely served as a nominal owner for Mr. Ahmed's funds." Doc. # 113 at 10. Similarly, the Motion notes that approximately $75,000 in income tax liability relates to income in the account ending x7540 at Fidelity Investments. *See* Motion at 3. But again, this account was funded almost entirely by Mr. Ahmed, including being funded with at least $20 million in fraudulently-obtained funds. *See* Doc. # 68 ¶¶ 21-22, 29. These two accounts alone account for approximately $184,000 of the approximately $280,000 in income tax liability Ms. Ahmed claims to owe.[2] Put simply, Ms. Ahmed's claim that she personally owes taxes on gains from these accounts, which is premised

---

[1] The tax notices received by Ms. Ahmed do not appear to be the result of an audit or other IRS determination of her true tax due and owing. Rather, the notices are simply the result of Ms. Ahmed filing tax returns claiming to have a tax due and owing without making a corresponding tax payment. Put another way, the notices were triggered only because Ms. Ahmed told the IRS she owed them money but did not pay, not because the IRS determined that Ms. Ahmed in fact owes this amount in taxes.

[2] Further, Exhibit C to the Motion indicates that more than $160,000 of the taxable income relates to a distribution from an IRA. *See* Doc. # 690-3. Relief Defendants previously indicated that taxes had already been paid associated with this distribution. *See* Doc. # 152 at 4 ("The funds in Ms. Ahmed's individual retirement accounts likewise did not yield liquid funds even close to the amount on deposit because they were subject to significant tax withholding."). It is not clear to the SEC why Ms. Ahmed owes additional taxes on the IRA distribution.

on her claim that these accounts belong to her, is specious at best. Further, if funds are released to pay Ms. Ahmed's outstanding tax liability, and this Court later confirms the accounts causing the tax liabilities do not, in fact, belong to Ms. Ahmed, she may be able to amend her tax return and seek a refund for the overpaid taxes (thereby obtaining funds that were never hers to begin with). *See, e.g.*, Collection Due Process (CDP) FAQs, *available at* https://www.irs.gov/compliance/appeals/ collection-due-process-cdp-faqs (explaining that if a taxpayer does not agree to owing the amount on the CP504 the taxpayer can "[p]ay the amount due in full and file a claim for refund. If the IRS disallows your claim, you will have the right to appeal at that time."). The Court should decline to release funds to pay taxes that Ms. Ahmed very likely does not owe, especially when those same funds may be needed to compensate the victims of Mr. Ahmed's fraud.

Alternatively, if the Court were to eventually find that some of these assets in fact belong to Ms. Ahmed, there is no reason to make a tax payment at this time because it will do little to prevent interest and penalties from accruing. That is because, if the assets in fact belong to her, the requested tax payments will pay only a fraction of Ms. Ahmed's true outstanding tax liability. As noted above, the tax liabilities are not the result of an IRS audit or other finding of Ms. Ahmed's true tax liability. As previously explained [Doc. # 468 at 2-3], Ms. Ahmed and her husband did not report as income, nor pay taxes on, the tens-of-millions of dollars that Defendant stole and placed into joint bank accounts and accounts and assets in Ms. Ahmed's name (which she now claims belong to her). Thus, to the extent Ms. Ahmed is arguing these accounts belong to her, and this Court agrees, she will likely have an enormous tax liability. *See Rutkin v. United States*, 343 U.S. 130, 137 (1952) ("An unlawful gain, as well as a lawful one, constitutes taxable income when its recipient has such control over it that, as a practical matter, he derives readily

3

realizable economic value from it."). The Court should not release assets from the asset freeze that may be needed to compensate the victims of Mr. Ahmed's fraud when the tax payment will do little to satisfy her true tax liabilities.

Second, as the SEC has noted throughout this litigation, and as noted above, there are likely not enough assets to satisfy a final judgment following resolution of this case. As explained in prior pleadings, isolating only Mr. Ahmed's fraud that occurred within the five years prior to the filing of the Complaint, the SEC would be entitled to a judgment of up to approximately $89 million: $44 million in disgorgement,[3] $1.5 million in prejudgment interest, and an additional $44 million in civil penalties. *See* Doc. # 634 at 3. The SEC has not frozen sufficient assets to satisfy this amount, even were the Court to reject Ms. Ahmed's claim that the bulk of the assets belong to her.

Specifically, the SEC has secured approximately $58.4 million in cash, securities, jewelry, and gold; and real estate worth approximately $19.7 million. *See id.* at 4. Further, the SEC has frozen certain non-liquid assets. While there are significant difficulties ascribing value to these assets – since any realization may not occur for years (if at all), many of the assets are held by an entity in which Mr. Ahmed is not the 100% owner, and several of the assets have liquidation restrictions – the SEC's best estimate of the total value of these non-liquid assets, not adjusted for any limitations on Mr. Ahmed's percentage ownership or liquidation penalties, is approximately $9.2 million. *See id.* Thus, even if all of the frozen assets belong to Defendant (and all of Ms. Ahmed's claims to such assets are rejected), the total value of assets secured is only approximately $87 million – less than the total amount the SEC may be entitled to in a final

---

[3] As explained in the SEC's Notice of Supplemental Authority [Doc. # 701], the Second Circuit recently confirmed that following *Kokesh*, a "district court has broad discretion not only in determining whether or not to order disgorgement but also in calculating the amount to be disgorged." *SEC v. Metter,* 16-526-CV, 2017 WL 3708084, at *2 (2d Cir. Aug. 29, 2017).

judgment that will compensate the victims of Defendant's fraud. *See id.* Combined with the uncertainty over which specific assets will be available to satisfy any judgment [*see* Doc. # 684 at 3-5], any release of funds at this time risks diminishing funds that may be needed to compensate victims, or at least to satisfy any final judgment entered in this case. *See, e.g., SEC v. McGinn, Smith & Co., Inc.*, 10-CV-457 (GLS/CFH), 2013 WL 12141501, at *8 (N.D.N.Y. Sept. 11, 2013) (Denying defendants' motion to release funds for tax payments and finding that "the interests of the defrauded investors in preserving the frozen assets substantially outweighs the interests of the [defendants] in releasing assets to pay for tax liabilities.").

Third, to the SEC's knowledge, the IRS has not attempted to place liens on Relief Defendants' assets, nor has it engaged in any sort of collection effort. Ms. Ahmed attaches an IRS Notice CP504 to her Motion. *See* Motion, Ex. A. According to the IRS's website, "[t]he IRS cannot levy with just this notice," but instead must issue a formal Notice of Intent to Levy. *See* Collection Due Process (CDP) FAQs, *available at* https://www.irs.gov/compliance/appeals/collection-due-process-cdp-faqs. Until there is reason to believe that Relief Defendants' outstanding tax bill will trigger collection efforts that could affect the corpus of frozen assets, the Court should not release funds. *See McGinn, Smith & Co., Inc.*, 2013 WL 12141501 at *6 ("…the IRS has not attempted to collect on any liens or intervened in the present case. The intentions of the IRS remain, at best, unclear at this time.").

Fourth, the Court should recognize that Ms. Ahmed's tax bill is atypical and at least in part the result of her creating a tax liability through filing tax returns separate from her husband. As noted in prior filings, the Ahmeds are typically entitled to a tax refund. *See* Doc. # 468 at 3. For example, based on records obtained by the SEC, between 2010 and 2014 the Ahmeds received a refund each year (except for 2011) totaling over $800,000. *See id.* Here, Ms. Ahmed

requests approximately $280,000 be released to pay individual taxes for the 2015 tax year. This is on top of the more than $500,000 that Mr. Ahmed requested to be paid for his individual taxes for the 2015 tax year. *See* Doc. # 433.[4] At least some of this tax liability stems from Mr. and Ms. Ahmed opting to file as Married Filing Separate. *See* Doc. # 468 at 3. Although the Ahmeds remain married, appear to communicate regularly,[5] and maintain that anything discussed between them is protected by the marital privilege, they have filed separate tax returns, thereby constructing a greater tax liability. The Court should decline to release funds from the Asset Freeze for individual tax payments when a portion of the tax liability is the result of Mr. and Ms. Ahmed decision to file separate tax returns.[6]

<u>Lastly</u>, to the extent the Court entertain Relief Defendants' Motion, it should hold a hearing to permit the SEC to question Ms. Ahmed on tax returns and her reasons for including certain assets on that return. The SEC is confident that through cross examination of Ms. Ahmed, it will become clear that she does not in fact own the assets that are triggering the tax liability and that the instant Motion is erroneous.

In sum, the Court should decline to release funds for Ms. Ahmed's purported 2015 income taxes and instead take the Motion under advisement. The Court should await releasing funds from the asset freeze until it is confident there are sufficient funds to satisfy any judgment in this case, or there is reason to believe the IRS is engaging in collection efforts, <u>and</u> until such time that it is determined that Ms. Ahmed in fact owes these taxes.  To the extent the Court

---

[4] The Court previously denied Mr. Ahmed's motion without prejudice to renew to reflect any adjustments in the asset freeze order based on the impact of *Kokesh*. Doc. # 644 at 3.

[5] During her January 2017 deposition, Relief Defendant Shalini Ahmed noted that she and Mr. Ahmed had communicated more than 50 times since May 2015.

[6] Ms. Ahmed acknowledges "fil[ing] her 2015 tax return in or about January 2017" [Motion at 2], but fails to explain why she waited more than eight months to bring the instant Motion.

entertains the Motion, the SEC should afforded an opportunity to question Ms. Ahmed about her reasons for claiming to own certain assets that have created a tax liability.

DATED: September 7, 2017.             Respectfully submitted,

                                                *s/ Nicholas P. Heinke*
Nicholas P. Heinke (Colo. Bar No. 38738)
      Connecticut Bar No. phv07374
Jeffrey E. Oraker (Colorado Bar. No. 26893)
      Connecticut Bar No. phv08631
Terry R. Miller (Colorado Bar. No. 39007)
      Connecticut Bar No. phv08981
Mark L. Williams (New York Bar. No. 4796611)
      Connecticut Bar No. phv07375
United States Securities and Exchange Commission
1961 Stout St., Suite 1700, Denver, CO 80294
Phone:    (303) 844-1000
              (303) 844-1071 (Heinke)
              (303) 844-1041 (Miller)
              (303) 844-1097 (Oraker)
              (303) 844-1027 (Williams)
E-mail:    HeinkeN@sec.gov
              MillerTE@sec.gov
              OrakerJ@sec.gov
              WilliamsML@sec.gov

Attorneys for Plaintiff:

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION

CERTIFICATE OF SERVICE

      I certify that on September 7, 2017, a copy of the foregoing document was emailed to Defendant Iftikar Ahmed at IftyAhmed@icloud.com, and served via ECF upon the following:

Jonathan Harris
Reid Skibell
David Deitch
Alexander Sakin
S. Gabriel Hayes-Williams
Harris, St. Laurent & Chaudhry LLP
40 Wall Street, 53rd Floor
New York, NY 10005
(Counsel for Relief Defendants)

                                         *s/ Nicholas P. Heinke*
                                         Nicholas P. Heinke