UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>IFTIKAR AHMED,<br><br>Defendant, and<br><br>IFTIKAR ALI AHMED SOLE PROP; *ET AL*.,<br><br>Relief Defendants. | Civil Action No. 3:15-cv-675 (JBA)<br><br><br><br><br><br><br><br><br><br>JANUARY 04TH, 2018 |

**DEFENDANT'S MOTION FOR PERMISSION TO MONETIZE HIS BITCOIN (BTC) ASSETS AT THE APPROPRIATE TIME**

The Defendant humbly submits this Motion seeking the permission of this esteemed Court to be able to trade and sell his Bitcoin (BTC) assets, currently held at Circle Internet Finance, at the appropriate time given market conditions and to then hold such cash proceeds, net of the payment of any state and federal taxes due on the sale, in the same currently frozen account belonging to the Defendant.

**I.   THE FACTS:**

To the best of his recollection, the Defendant had opened an account with Circle Internet Finance ("Circle"), a crypto-currency startup in the Boston area, sometime in 2014 and had

1

invested a relatively small amount of money in buying Bitcoins (BTC) soon after opening the said account in his name.

The Defendant voluntarily identified this asset to the SEC and the SEC then confirmed the existence of this account.  Further, with the knowledge and the assistance of the SEC, the Defendant ascertained that the said account held 27 (twenty-seven) Bitcoins and a *de minimus* amount in cash (US Dollars) in that account.   The Circle account can hold BTCs and US Dollars.

Like the rest of all of his assets, this account at Circle is also currently subject to the asset freeze ordered by this esteemed Court.

## II.   THE DISPUTE:

As is well known, while Bitcoins have had a significant increase in valuation over the last 12 months or so, it remains a highly speculative and volatile asset.   It started last year with 1BTC = $998 (on January 01ST, 2017), and it ended the year at 1BTC = $13,860 (on December 31ST, 2017); representing an incredible increase of 1,289%.   It hit an all-time high of 1 BTC = $19,343 on December 16TH, 2017.   As of January 01ST, 2018 the value of 1 BTC = $13,044 (down 33% from its peak value).   Please see **Exhibit 1** for the relevant price history of BTC trading versus US Dollars.

The Defendant submits that the SEC probably does not have the inclination nor the interest in regularly tracking the value of this particular asset as to maximize its value, even as there must be complete alignment between the Defendant and the SEC in maximizing the value of the assets even as they remain under the temporary restraining order as ordered by this esteemed Court during the pendency of this dispute.   The Defendant humbly submits that the Defendant

probably has a more intimate knowledge on the dynamics around Bitcoins, having been an early investor and adopter of this emerging and disruptive financial innovation.

The Defendant, therefore, reached out to the SEC on December 11TH, 2017 seeking their consent to monetize his BTC holdings to cash, subject to the payment of all state and federal taxes arising out of such a transaction.  Given that the US tax authorities treat BTC as an asset, rather than as a currency, it would therefore levy capital gains on the sale of the BTCs, which have appreciated considerably over the past 3 years or so.   Given the timing of his purchase of the BTCs, the cost basis would be negligible relative to current prices and hence there would be significant capital gains due on the sale of these BTCs.

The very next day, December 12TH, 2017, the SEC consented to the sale of the BTCs but later clarified that they would only consent to the sale and monetization of the BTCs but **not** to the payment of taxes arising from such a sale.

As the Defendant has explained to the SEC, the Defendant would have no interest in monetizing the BTCs without the immediate payment of all state and federal taxes arising from such a sale since he would otherwise be left holding an unknown and growing liability that would only accrue interest and penalties from non-payment of taxes - much like all his tax liabilities that remain unpaid since the commencement of this dispute (viz. 2015 and every year hence!).   Such an arrangement would only represent unfair and unjustified punishment of the Defendant for trying to do the right thing by maximizing the value of the liquid assets in frozen asset pool.

Yet, with the benefit of hindsight, the irrational position taken by the SEC actually continues to hurt the asset pool instead of helping maximize its value.

Hypothetically, if the SEC had consented on December 12TH, 2017 to the entire request, the monetization of the 27 BTCs would have yielded a pre-tax cash outcome of $522,261 (on December 16TH, 2017), and assuming a 25% tax rate, it would have yielded a cash addition of $391,696 to the frozen asset pool.  Yet, today, the 27 BTCs currently trade at a lower cash equivalent value on a *pre-tax* basis - in other words, the *post-tax* value from the time of the request is higher than the *pre-tax* value today.

While the Defendant has no ability to predict the future valuation of BTCs, the volatility in BTC prices continue to be alarmingly high and this asset continues to be wildly speculative.  Hence, one must monitor it closely and constantly in order to maximize the monetized value of this highly speculative investment.

Please see **Exhibit 2** for the email exchange between the Defendant and the SEC on this topic as detailed above.


**III.    PRECEDENT DECISIONS SUPPORT THE DEFENDANT'S REQUEST:**

This esteemed Court has ordered, and the SEC has consented, to the monetization of other illiquid assets belonging to the Defendant.   More specifically, the esteemed Court has ordered and the SEC consented to the sale and monetization of an investment in a private company that was acquired by a large, publicly traded technology company and all taxes were agreed to be paid post the transfer of the cash proceeds to a frozen bank account.   The fact that that investment was made by The Essell Group LLC, of which the Defendant is a controlling 60% shareholder should have no bearing on this instant argument other than to support the payment of all taxes arising out of the monetization of an illiquid asset into cash.

If it is okay to pay taxes on an asset where he has 60% beneficial ownership, why would it not be okay to pay the taxes on an illiquid asset that he has 100% ownership of? Would it be okay if he had a 75% ownership? Would it be okay if he had a $99.\bar{9}\%$ ownership? That is as arbitrary a decision guideline as one can think of. There is precedence even in this instant dispute where the SEC has consented to and the Court has ordered for the payment of all state and federal taxes on the monetization of an otherwise illiquid asset that would contribute cash proceeds to the frozen asset pool and this request is no different in any respect except for ownership percentage.

### IV.   THE PRAYER:

The Defendant therefore humbly requests that the esteemed Court authorize the Defendant to monitor the BTC asset held at Circle and to sell (all or in parts) at his discretion the 27 BTCs (and *not* to buy, at any time, for the avoidance of any doubt) that he holds there to maximize the cash proceeds and for all state and federal taxes to be paid immediately out of such cash proceeds to satisfy the tax obligations of this sale(s) only.   The cash proceeds (net of payment of all state and federal taxes) can remain frozen either at Circle or may be transferred to another frozen bank account that belongs to the Defendant only as per the instructions of the esteemed Court.

For avoidance of doubt, the SEC consents to the monetization of this asset (the 27 BTCs) as per the discretion of the Defendant but does not consent to the payment of any state or federal taxes liable to be paid as a result on such a trade.   The Defendant wishes to have the authorization to sell some or all of the BTCs at the right price, subject to the payment of all state and federal taxes due on such sale(s).   Both the SEC and the Defendant agree that all cash proceeds

(assuming a sale of these BTCs can be agreed upon) could continue to be held at Circle (since that account remains frozen subject to the Court's orders) or could be transferred to another frozen bank account belonging to the Defendant only.  In any event, any cash proceeds (net of all taxes) would remain frozen and, hence, not disturb the *status quo* as ordered by this esteemed Court.

**WHEREFORE**, the Defendant humbly petitions and respectfully requests that the esteemed Court to grant this Motion immediately.

Respectfully Submitted,

Dated:       January 04TH, 2018           /s/ Iftikar Ahmed

_____
Iftikar A. Ahmed
C/O Advocate Anil Sharma
10 Government Place East, Ground Floor
Behind Kanpur Leather House
Kolkata 700069, India
Tel: +91.98.30.089.945
Email: iftyahmed@icloud.com
*Pro Se*

**CERTIFICATE OF SERVICE**

        I hereby certify that a copy of the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and served by electronic mail to:

Nicholas P. Heinke
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1071
Email: heinken@sec.gov

Mark L. Williams
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1027
Email: williamsml@sec.gov

Paul E. Knag
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5400
Fax: (203) 653-5444
Email: pknag@murthalaw.com

David B. Deitch
Harris, St. Laurent & Chaudhry LLP VA
1818 Library Street, Suite 500
Reston, VA 20190
(703) 956-3549
Fax: (703) 935-0349
Email: ddeitch@sc-harris.com

Jonathan Harris
Harris, St. Laurent & Chaudhry LLP
40 Wall Street, 53rd Floor
New York, NY 10005
(646) 395-3481
Fax: (212) 202-6206
Email: jon@sc-harris.com

L. Reid Skibell
Harris, St. Laurent & Chaudhry LLP
40 Wall Street, 53rd Floor
New York, NY 10005
(917) 512-9466
Fax: (212) 202-6206
Email: rskibell@sc-harris.com

Priya Chaudhry
Harris, St. Laurent & Chaudhry LLP
40 Wall Street, 53rd Floor
New York, NY 10005
(212) 785-5550
Fax: (212) 202-6206
Email: priya@sc-harris.com

Steven Gabriel Hayes Williams
Harris, St. Lauren & Chaudhry LLP
40 Wall Street, 53rd Floor
New York, NY 10005
(212) 397-3370
Fax: (212) 202-6206
Email: ghayeswilliams@sc-harris.com

Kristen Luise Zaehringer
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5406
Fax: (860) 240-5758
Email: kzaehringer@murthalaw.com

1

Dated:    January 04TH, 2018        /s/ Iftikar Ahmed
_____
Iftikar A. Ahmed
C/O Advocate Anil Sharma
10 Government Place East, Ground Floor
Behind Kanpur Leather House
Kolkata 700069, India
Tel: +91.98.30.089.945
Email: iftyahmed@icloud.com

*Pro Se*