UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br>    *Plaintiff*,<br>v.<br>IFTIKAR AHMED,<br>    *Defendant*, and<br><br>IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents,<br><br>    *Relief Defendants.* | Civil No. 3:15cv675 (JBA)<br><br>March 26, 2018 |

**ORDER ON DEFENDANT'S MOTIONS FOR MODIFICATION OF THE ASSET FREEZE ORDER TO RELEASE FUNDS FOR HIS LEGAL DEFENSE AND FOR A STAY IN LIGHT OF *KOKESH***

In this civil enforcement action brought by the Securities and Exchange Commission ("SEC"), Defendant Iftikar Ahmed moves [Doc. #589] for modification of the asset freeze order for the release of funds for his legal defense,[1] and for a stay [Doc. #654] of this action, based on the Supreme Court's decision in *Kokesh v. S.E.C.*, 137 S. Ct. 1635 (2017). For the reasons discussed

---

[1] As Defendant recognizes, this is a motion for reconsideration at least in part, as the Court has twice previously rejected Defendant's requests for the release of frozen assets to fund his legal defense. (*See* Docs. ## 97, 325.)

below, Defendant's Motion to Modify the Asset Freeze Order to Release Funds for Legal Defense is granted in part and denied in part, and his Motion to Stay is denied.

The Court presumes the parties' familiarity with the underlying facts of this case.

In *Kokesh*, the Supreme Court held that "[d]isgorgement in the securities-enforcement context is a 'penalty' within the meaning of § 2462, and so disgorgement actions must be commenced within five years of the date the claim accrues." 137 S. Ct. at 1639. Defendant argues that this change in the law "clearly establishes that significant assets currently frozen should be immediately released and made available to the Defendant for his legal defense and representation."[2] (Def.'s Mot. for Release of Funds [Doc. # 589] at 3.) Defendant also filed a Motion to Stay in Light of *Kokesh*, requesting a stay "till after a formal analysis by this esteemed Court is done on the post-*Kokesh* quantum of the permissible asset freeze including a thorough evaluation of the assets vested and earned by the Defendant being retained by Oak and being part of the asset freeze order." (Def.'s Mot. to Stay at 11.)

Defendant's request for release of funds for his legal defense is two-fold: he seeks recalculation of the asset freeze after *Kokesh*, *and* "the immediate release of all assets in excess of that new limit; including the unconditional release of such unfrozen funds to pay for attorney's fees in the United States . . ." (Def.'s Mot. for Release of Funds at 10.) At its base then, Defendant's Motion seeks modification of the Ruling and Order Granting Preliminary Injunction (the "Asset Freeze Order") [Doc. # 113] to reduce the asset freeze based upon the change in law articulated in

---

[2] In its Ruling and Order Granting Preliminary Injunction, issued August 12, 2015, the Court ordered frozen "up to the amount of $118,246,186," consisting of $65 million in disgorgement, $9 million in prejudgment interest, and a $44 million civil penalty. (*See* Doc. # 113 at 20.)

*Kokesh* which he theorizes would result in a release of previously frozen funds, which he could use for his legal defense.

In response, the SEC never directly disputes that the Asset Freeze Order should be modified to reflect that a portion of Defendant's fraud occurred outside of the five-year statute of limitations. Instead, it argues the Court should deny reconsideration of its prior orders denying release of sums for Defendant's legal defense because the SEC "has not secured enough assets to cover even a modified asset freeze order and therefore the release of any funds to Defendant remains inappropriate." (Pl.'s Opp'n [Doc. # 634] to Def.'s Mot. for Release of Funds at 3.)

The SEC represents that isolating only Defendant's fraud that occurred within the five years prior to the filing of the Complaint, an adequate asset freeze needs to be approximately $89 million: $44 million in disgorgement, $1.5 million in prejudgment interest, and an additional $44 million in civil penalties.[3]

---

[3] The parties agree that the following fraudulent transactions occurred within five years of the filing of the SEC's Complaint: 2011 Company G fraud related to a purported management incentive payment ($3,113,981) [Doc. # 208 ¶¶ 70-72]; 2013 Company G fraud related to a purported management incentive payment ($1,556,990) [Doc. # 208 ¶¶ 73-74]; 2013 Company G fraud related to a purported investment bank advisory fee ($622,796) [Doc. # 208 ¶¶ 75-76]; 2010 Company I fraud related to overpayment due to exchange rate ($2,185,946) [Doc. # 208 ¶¶ 83-85]; 2014 Company A fraud related to overpayment for shares ($2,044,733) [Doc. # 208 ¶¶ 87-102]; 2014 Company B fraud related to overpayment for shares ($18,000,000) [Doc. # 208 ¶¶ 103-117]; 2013 Company C fraud related to redemption of shares ($8,896,193) [Doc. # 208 ¶¶ 130-134); and 2014 Company C fraud related to I-Cubed's sale of Company C shares ($7,500,000) [Doc. # 208 ¶¶ 119-129]. These fraudulent transactions – which are indisputably within the five-year statute of limitations – total $43,920,639. Prejudgment interest on this amount comes to $1,520,953. (*See* Doc. # 68 at 19-20.) And the approximately $44 million civil penalty amount represents the same amount the SEC initially requested, since the SEC excluded fraudulent transactions older than five years from its requested civil penalties. (*See* Doc. # 66 at 14.)

Having heard no argument that the asset freeze should not be modified to remove disgorgement associated with fraud executed more than five years prior to the filing of the related claims, the Court modifies the August 12, 2015 Asset Freeze Order to freeze assets up to the amount of $89 million.

The Court rejects Defendant's unsupported contention that the current corpus of frozen funds is over $200 million, and credits the SEC's accounting, identifying the specific assets that comprise the current value of assets secured to date to satisfy the freeze order, which it calculates as approximately $87 million.[4] This includes Defendant's non-liquid assets, many of which are held by an entity in which Defendant is not the 100% owner, and several of which have liquidation restrictions, and also assumes that were Defendant to prevail, he would be entitled to 100% of the proceeds of the frozen assets, and that there are no costs to sell the assets, or liquidation penalties for non-liquid assets.[5] Thus, although the SEC estimates that the total corpus of secured assets is valued at $87 million, the secured assets which can be readily liquidated total only approximately $78 million, and in either event, the value of the secured assets fall short of the modified asset freeze order of $89 million.[6]

---

[4] This number includes approximately $58.4 million in cash, securities, jewelry, and gold, in addition to real estate worth approximately $19.7 million, totaling approximately $78 million. It also includes approximately $9.2 million in non-liquid assets.

[5] The SEC maintains that these non-liquid assets may not be available to satisfy disgorgement, prejudgment interest, and civil penalties related to conduct indisputably within the five-year statute of limitations

[6] As the SEC notes, the Court has already determined that the value of the carried interest account should not be included in the calculation of the frozen funds, because "there is great uncertainty as to whether this . . . account will materialize into an asset available for victim recovery." (Doc. # 113 at 14-15.)

This shortfall demonstrates that the asset freeze recalculation performed above, will not result in the release of any frozen assets at this time. Should the value of the frozen assets exceed $89 million, the SEC is directed to inform the Court, at which point the Court will determine whether any release of frozen assets is appropriate and under what conditions.[7]

Accordingly, Defendant's Motion to Modify is GRANTED insofar as the Court modifies ¶3A of the Asset Freeze Order [Doc. # 113] as follows: The assets, funds, or other property held by or under the direct or indirect control of Defendant and Relief Defendants, whether held in any of their names or for their direct or indirect beneficial interest, wherever located, up to the amount of $89,000,000, are frozen. Defendant's Motion to Modify is DENIED to the extent Defendant seeks reconsideration of the denial of entitlement to release of funds for Defendant's legal defense. (*See* Docs. ## 191, 392.) Defendant's Motion to Stay, predicated on his contention that frozen assets are required to be released, is denied, as the freeze modification will not result in any funds being unfrozen.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 26th day of March 2018.

---

[7] Defendant's arguments regarding whether the SEC may seek disgorgement at all, whether the amounts sought as disgorgement count towards the maximum penalty amount permitted by 15 U.S.C. § 78u-1(a)(1), and whether the SEC can seek pre-judgment interest on disgorgement amounts, are appropriately addressed at a damages or remedy phase.