UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____
                                            )
UNITED STATES SECURITIES                    )
AND EXCHANGE COMMISSION,                    )
                                            )
        Plaintiff,                         )
                                            )
   v.                                       )    Civil Action No. 3:15cv675 (JBA)
                                            )
IFTIKAR AHMED,                              )
                                            )
        Defendant, and                     )
                                            )
IFTIKAR ALI AHMED SOLE PROP;                )
I-CUBED DOMAINS, LLC;  SHALINI AHMED;       )
SHALINI AHMED 2014 GRANTOR RETAINED         )
ANNUITY TRUST; DIYA HOLDINGS LLC;           )
DIYA REAL HOLDINGS, LLC; I.I. 1, a minor    )
child, by and through his next friends IFTIKAR )
and SHALINI AHMED, his parents; I.I. 2, a minor )
child, by and through his next friends IFTIKAR )
and SHALINI AHMED, his parents; and I.I. 3, a )
minor child, by and through his next friends )
IFTIKAR and SHALINI AHMED, his parents,     )
                                            )
        Relief Defendants.                  )
_____)

**PLAINTIFF UNITED STATES SECURITIES AND EXCHANGE COMMISSION'S
<u>PREHEARING STATEMENT</u>**

Plaintiff United States Securities and Exchange Commission ("SEC") hereby files this statement in advance of the November 28, 2018 hearing. As the Court previously explained, the hearing will be used to "vet receivers" and to explain to prospective receivers "what they would be charged with doing, which is a finite and limited function" of valuing certain assets. That valuation will then "enable the parties to move to enable liquidation to take place." Nov. 9, 2018 Hearing Tr. at 51.

> a. <u>The Court Should Appoint a Receiver to Value and Liquidate Assets.</u>

As the SEC has previously requested, the Court should appoint a receiver to value assets, and then liquidate sufficient assets to satisfy Defendant's judgment. Any remaining assets should then be unfrozen.

It is undisputed that the frozen assets are worth tens-of-millions of dollars and are held in a variety of forms, including cash, stocks, bonds, gold, real estate, jewelry, art, and venture capital investments, among others. Aside from cash, the amount of money that will flow from the liquidation of these assets is unknown and fluctuates. The costs associated with liquidating these assets, and taxes owed upon their liquidation, are also unknown. Thus, the Court should appoint a receiver to value Defendant's assets in order to determine whether there are sufficient assets to satisfy Defendant's judgment, and if there are sufficient assets, determine which of those assets need be liquidated in order to satisfy the judgment.

The Second Circuit has "repeatedly [ ] upheld the appointment of trustees or receivers to effectuate the purposes of the federal securities laws." *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1105 (2d Cir. 1972) (citing cases).[1] Courts may equip a receiver with a variety of tools and broad authority to "help preserve the status quo while the various transactions [a]re unraveled," "obtain an accurate picture of what transpired," and "implement the court's order to refund the misappropriated proceeds to defrauded [ ] investors." *Id.* It is "not unreasonable" for a court to look to a receiver when a defendant has engaged in "fraudulent conduct" and cannot be counted on to recompense his victims. *Id.*

---

[1] Though likely obvious, district courts are permitted to (and expected to) pay a receiver reasonable compensation from frozen assets. *Manor Nursing,* 458 F.2d at 1105 n.27 ("We assume that the district court in due course will enter an appropriate order providing for payment to the trustee of reasonable compensation for his services and reimbursement of his expenses.").

Once the receiver determines which assets need be liquidated in order to satisfy Defendant's judgment, the Court should direct the receiver to liquidate those assets and place the proceeds into a Court Registry Investment System ("CRIS") account. At the conclusion of Defendants' appeal, these monies should be released, principally to compensate Defendant's victims.[2] To be clear, the Court has jurisdiction to take these steps: even during the pendency of an appeal, this Court retains jurisdiction to enforce its judgment. *See, e.g., N.L.R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987) ("the mere pendency of an appeal does not, in itself, disturb the finality of a judgment. [T]he district court has jurisdiction to act to enforce its judgment so long as the judgment has not been stayed or superseded. Although a district court may not alter or enlarge the scope of its judgment pending appeal, it does retain jurisdiction to enforce the judgment.") (internal citations and quotations omitted) (alteration in original). *See also* RDs' Reply in Support of Mot. to Alter Judgment [Doc. # 1033] at 4 ("There is no dispute that the Court retains authority to enforce its judgments, absent a stay.").[3]

Moreover, the Court should reject any request that it stay the enforcement of its judgment absent Defendant posting a supersedeas bond pursuant to Fed.R.Civ.P. 62(d). Putting aside that

---

[2] The Court should not delay in instituting a Fair Fund. Section 308(a) of the Sarbanes-Oxley Act, known as the "Fair Funds" provision, instructs that a Court "shall, upon the SEC's motion, include a defendant's civil penalties in a distribution to benefit victims of securities laws violations." 15 U.S.C. § 7246(a) (emphasis added). Because the SEC brought this action under the securities laws, because Defendant has been ordered [Doc. # 982 at 4] to pay a $21 million civil penalty, and because the SEC has moved the Court for a Fair Fund since disgorgement is not sufficient to fully compensate Defendant's victims, the Court should institute a Fair Fund.

[3] *See also Deering Milliken, Inc. v. F.T.C.*, 647 F.2d 1124, 1128–29 (D.C. Cir. 1978) ("It is well established that the District Court is without jurisdiction to alter a judgment of its own while an appeal therefrom is ongoing. But it is equally clear that the vitality of that judgment is undiminished by pendancy of the appeal. Unless a stay is granted either by the court rendering the judgment or by the court to which the appeal is taken, the judgment remains operative. To be sure, for as long as the appellate court retains its mandate it maintains its jurisdiction over the case, and thus the power to alter the mandate. But non-issuance of the mandate by the appellate court has no impact on the trial court's powers to enforce its unstayed judgment since the latter court has retained that power throughout the pendency of the appeal.") (footnotes omitted).

neither the fraud nor the ownership of assets was meaningfully challenged, neither Defendant nor Relief Defendants have even attempted to make a sufficient showing that Defendant's judgment should be stayed pending appeal. Thus, there is no reason to stay the execution of Defendant's judgment. *See, e.g.*, *SEC v. Ishopnomarkup.com, Inc*, 2015 WL 10990237 (E.D.N.Y. Oct. 28, 2015) (denying stay of monetary portion of judgment when Defendant did not offer to post a supersedeas bond pursuant to Fed.R.Civ.P. 62(d) and did not offer "any reason why the Court should stay enforcement without bond."). "A party seeking a stay of a lower court's order bears a difficult burden." *United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir. 1995) ("We consider (1) whether the movant will suffer irreparable injury absent a stay; (2) whether a party will suffer substantial injury if the stay is granted; (3) whether the movant has established a substantial possibility, which need not be a likelihood, of appellate success; and (4) the public interest."); *see also Clarett v. National Football League,* 306 F.Supp.2d 411, 412 (S.D.N.Y.2004) (denying application for stay because movant failed to meet burden to prove entitlement to stay); *Neely v. Pension Trust Fund of the Pension, Hospitalization and Benefit Plan of the Electrical Industry*, 2003 WL 21448872, at *1 (E.D.N.Y. June 4, 2003) (denying application for stay because movants did not satisfy "high burden" placed upon them).

Thus, the Court should appoint a receiver to value assets, and then liquidate sufficient assets to satisfy Defendant's judgment. Those monies should remain in a CRIS account pending further order of the Court.

      b.  <u>Prospective Receivers.</u>

At the hearing, the SEC anticipates putting forth three prospective receivers for the Court's consideration.

The first is Jed Horwitt with Zeisler & Zeisler, P.C.  Mr. Horwitt has served as either the receiver or liquidating custodian, or the responsible partner, in several cases, including *SEC v. Mark J. Varacchi and Sentinel Growth Fund Management, LLC*, 17-cv-00155 (D. Conn.).  In that case, following a request by the SEC, the Hon. Victor A. Bolden appointed Mr. Horwitt as the receiver where he immediately took control over multiple financial accounts, caused their balances to be transferred into a single account in his name as receiver, and promptly secured stock certificates and otherwise asserted control over certain equity positions.  With the assistance of other Z&Z attorneys, Mr. Horwitt endeavored to value certain assets and determine the best method to liquidate them, including certain intellectual property where he engaged a broker to value the intellectual property and locate prospective purchasers.  Mr. Horwitt has communicated to the SEC that he is capable of performing receiver tasks, such as identifying, locating and securing possession of the frozen assets, and undertaking the appropriate valuation and liquidation or disposal process to obtain the greatest benefit to the estate while maintaining a good understanding and appropriate control over ultimate cost.

The second prospective receiver is Mark Conlan with Gibbons P.C.  Mr. Conlan, who recently represented a chapter 11 trustee and the post-confirmation liquidation and litigation trustees in *In re DBSI Inc., et al.*, Case No. 08-12687 (Bankr. D. Del.), has extensive experience in marketing, selling and auctioning a portfolio of more than 60 real properties, including retail shopping centers, a unique 12,000 square foot mansion, residential development projects and a golf course.  Mr. Conlan has communicated to the SEC that he is capable of performing receiver tasks, such as identifying and liquidating assets as soon as practicable to protect the receivership estate from adverse market risk, as certain assets – particularly brokerage accounts and real estate – are susceptible to sudden decreases in value due to market forces.  In addition,

Mr. Conlan is prepared to, with the assistance from an accounting firm, determine tax consequences from liquidation, as stolen money constitutes income in each year received, and that state and local taxing authorities may have claims and possibly statutory liens for unreported income.

The third prospective receiver is William Edwards with Goldin Associates LLC. Mr. Edwards – who previously practiced law at Wachtell, Lipton, Rosen & Katz before serving as a Senior Attorney in the Market Abuse Unit of the U.S. Securities and Exchange Commission – is the Managing Director of Goldin, where he helps the firm's Governance practice. Mr. Edwards currently leads the team of Goldin professionals providing financial and forensic advisory services to the receiver of Platinum Partners, a now-defunct hedge fund which specialized in esoteric assets. *SEC v. Platinum Management (NY) LLC, et al.*, 16-cv-06848 (E.D.N.Y.). Mr. Edwards and his team provide (i) asset disposition, (ii) asset valuation, (iii) accounting, and (iv) forensic investigatory services to the receiver in connection with this alleged $1 billion "Ponzi-like" fraud. Mr. Edwards has communicated to the SEC that he is capable of performing receiver tasks, such as immediately seizing control of, and establishing sole signatory authority over, the relevant bank and brokerage accounts titled to Mr. Ahmed and the Relief Defendants; establishing control over the accounts and/or entities through which Mr. Ahmed holds his interests in various private companies; and immediately acting to seize control of the various relevant personal effects – including jewelry, gold bars, and paintings – and place them in a vault controlled by the Receiver in order to liquidate sufficient assets to satisfy Defendant's judgment.

The SEC believes that Mr. Horwitt, Mr. Conlan, and Mr. Edwards all have the requisite experience, resources and ability to perform the tasks that are expected to be performed by a receiver.

November 27, 2018.

           *s/ Mark L. Williams*
           Nicholas P. Heinke
           Mark L. Williams
           U.S. Securities and Exchange Commission
           1961 Stout Street, Suite 1700
           Denver, CO 80294-1961
           (303) 844-1071 (Heinke)
           (303) 844-1027 (Williams)
           HeinkeN@sec.gov
           WilliamsML@sec.gov
           Attorneys for Plaintiff

- 8 -

<u>CERTIFICATE OF SERVICE</u>

      I certify that on November 27, 2018, a copy of the foregoing document was emailed to Defendant Iftikar Ahmed at IftyAhmed@icloud.com, and served via ECF upon the following:

Jonathan Harris
Reid Skibell
David Deitch
S. Gabriel Hayes-Williams
Joseph Gallagher
Harris, St. Laurent & Chaudhry LLP
40 Wall Street, 53rd Floor
New York, NY 10005
(Counsel for Relief Defendants).

                                                                     s/ *Mark L. Williams*
                                                                       Mark L. Williams