UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br>*Plaintiff*,<br>v.<br>IFTIKAR AHMED,<br>*Defendant*, and<br><br>IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents,<br><br>*Relief Defendants*. | Civil No. 3:15cv675 (JBA)<br><br>December 14, 2018 |

**SUPPLEMENTAL RULING ON REMEDIES**

The Court's Ruling on Plaintiff's Motion for Remedies and Judgment [Doc. # 955] calculated the value of the disgorgement and civil penalty awards in this case. The parties subsequently dispute whether Mr. Ahmed must turn over any interest or gains on assets used to satisfy that disgorgement award and, if so, whether he must turn over the actual gains on those assets or an amount calculated by applying the "checking account" interest rate to the disgorgement amount.

The SEC argues that 1) Defendant must turn over interest or gains on the disgorged assets under both *SEC v. Razmilovic*, 738 F.3d 14 (2d Cir. 2013), and this Court's remedies ruling; and 2)

the proper measure of that amount owed by Mr. Ahmed is the actual gains or returns on the disgorged assets, in other words, the amount by which the value of the disgorged assets has increased from the outset of the asset freeze until the time the assets are used to satisfy the judgment. Defendant and Relief Defendants argue that 1) Defendant is not obligated to turn over any interest or gains on the disgorged assets; but 2) if he is so obligated, the interest owed should be calculated by applying the "checking account" interest rate to the amount of the disgorgement award. The parties agree that, if any interest or gains are awarded, it shall be only on the disgorged assets, not on assets used to satisfy the civil penalty judgment.

In the earlier remedies ruling, the Court ruled that, "as instructed by the Second Circuit in *Razmilovic*, . . . the actual returns on the frozen assets, the amount of which have not yet been determined, must also be disgorged." ([Doc. # 955] at 14.) The *Razmilovic* court held that where

> the defendant has had some or all of his assets frozen at the behest of the government in connection with the enforcement action, an award of prejudgment interest relating to those funds would be inappropriate with respect to the period covered by the freeze order, for the defendant has already, for that period, been denied use of those assets. In such a case, after a final order of disgorgement, the funds previously frozen would presumably be turned over to the government in complete or partial satisfaction of the disgorgement order, along with any interest that has accrued on them during the freeze period.

738 F.3d at 36. The Second Circuit rejected a percentage-based interest calculation in favor of the actual "interest that has accrued" during the freeze, i.e. the amount by which the value of those assets increased during the freeze. *See id.* (rejecting district court's award of prejudgment interest at IRS underpayment rate as "inappropriate with respect to" disgorged frozen assets). Under *Razmilovic*'s reasoning, Mr. Ahmed is required to turn over the actual gains or returns on disgorged assets accrued during the asset freeze. The primary purpose of disgorgement—to "deprive violators [of securities laws] of their ill-gotten gains, thereby effectuating the deterrence

2

objectives of those laws," *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1474 (2d Cir. 1996)—also supports this result, since permitting violators of securities laws to keep the accrued interest or gains on disgorged assets would not effectively deprive them of all ill-gotten gains.

Another district court in this circuit applied *Razmilovic* and reached a similar conclusion in determining the proper measure of interest owed on disgorged assets which were frozen during an SEC enforcement action. *SEC v. Tavella*, 77 F. Supp. 3d 353 (S.D.N.Y. 2015). That court held that *Razmilovic* required the defendant turn over "any actual return on the frozen assets," reasoning that "otherwise, a defendant might perversely benefit from the asset freeze by pocketing accumulated returns on the frozen principal." *Id.* at 360-361.

In support of their arguments, Defendant and the Relief Defendants cite *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082 (2d Cir. 1972), in which the Second Circuit declined to order "the disgorging of profits and income earned on" the defendants' ill-gotten gains, finding that such an order would be an improper penalty assessment. However, as discussed below, because the reasons articulated by the Second Circuit in support of that decision do not apply to Mr. Ahmed's circumstances, the Court concludes that *Manor Nursing* does not control here.

First, the Second Circuit reasoned that disgorging more from those defendants who had "invested [their ill-gotten gains] wisely" than from those defendants who had not invested so wisely would be "artibrar[y]" and, "[i]n balance," not necessary to deter future violations of securities laws. *Manor Nursing*, 458 F.2d at 1104-05 ("While compelling the transfer of the profits on the proceeds arguably might add to the deterrent effect of the court's order, this in our view does not justify arbitrarily requiring those appellants who invested wisely to refund substantially more than other appellants."). Unlike the multiple defendants in *Manor Nursing*, Mr. Ahmed is the sole

3

defendant in this case, and thus ordering Mr. Ahmed to turn over gains accrued on disgorged assets during the asset freeze presents no similar issue of arbitrariness.

Second, the *Manor Nursing* court based its decision in part on whether an award of indirect income earned on the defendants' ill-gotten gains would be appropriate to compensate the victims of the defendants' fraud. *Id* at 1104. However, the Second Circuit's current view of disgorgement is as a remedy whose "primary purpose" is to "forc[e] the defendant to give up the amount by which he was unjustly enriched," "not to compensate" victims. *SEC v. Commonwealth Chem. Secs., Inc.*, 574 F.2d 90, 102 (2d Cir. 1978) (rejecting as "immaterial" the argument that the appropriateness of disgorgement depends on whether the unjust enrichment "came from another party to the scheme rather than from the public"); *see also SEC v. Tome*, 833 F.2d 1086, 1096 (2d Cir. 1987) (rejecting a victim restitution purpose of disgorgement, explaining that "[w]hether or not any investors may be entitled to money damages is immaterial" because the "paramount purpose of enforcing the prohibition against insider trading by ordering disgorgement is to make sure that wrongdoers will not profit from their wrongdoing"); *Razmilovic*, 738 F.3d at 31 ("Disgorgement 'is a method of forcing a defendant to give up the amount by which he was unjustly enriched.'") (quoting *Commonwealth Chem Secs.*, 573 F.2d at 102).

Given the relevant factual differences between *Manor Nursing* and this case and the Second Circuit's approach to disgorgement, the Court finds the Defendants' analogy to *Manor Nursing* unconvincing.

In support of their argument that Mr. Ahmed should instead pay interest at the "checking account rate," he and the Relief Defendants cite no authority. Instead, they argue that *Razmilovic* and *Tavella* are inapposite because in those cases, the amount of the judgment against the defendants exceeded the value of the frozen assets. However, neither court's reasoning suggests

that fact was influential in its holding, and the Court sees no reason why that factual distinction would mandate a different outcome here.

Therefore, in addition to the disgorgement of $41,920,639.00 already awarded, Mr. Ahmed is also liable for any actual interest accrued or gains earned on the frozen assets used to satisfy that disgorgement amount.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 14th day of December, 2018.