# Exhibit A

Case 2:15-cv-00675-JBA   Document 1097-1   Filed 02/05/19   Page 2 of 62

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------X

NMR E-TAILING LLC

        Plaintiff,

        -against-

OAK INVESTMENT PARTNERS, OAK
MANAGEMENT CORPORATION, OAK
INVESTMENT PARTNERS XIII, LP, OAK
ASSOCIATES XIII, LLC, ANN HUNTRESS
LAMONT, EDWARD GLASSMEYER,
FREDERIC W. HARMAN, BANDEL CARANO,
IFTIKAR AHMED,

        Defendants.

-------------------------------------------------------------------X

Index No.: _____

**VERIFIED COMPLAINT**

**E-FILING**

Plaintiff, NMR e-tailing LLC ("Plaintiff" or "NMR"), by its undersigned counsel, as and for its Verified Complaint against Oak Investment Partners, Oak Management Corporation ("Oak Corp."), Oak Associates XIII, LLC ("Oak Fund GP"), Oak Investment Partners XIII, LP (the "Oak Fund" and collectively with Oak Investment Partners, Oak Corp. and Oak Fund GP, the "Oak Entities"), Ann Huntress Lamont ("Lamont"), Edward Glassmeyer ("Glassmeyer"), Bandel Carano ("Carano"), and Fredric Harman ("Harman") (Lamont, Glassmeyer, Carano, and Harman, collectively, the "Oak Individual Partners" and with the Oak Entities, the "Oak Defendants"), and Iftikar Ahmed ("Ahmed" and collectively with the Oak Defendants, the "Defendants"), alleges as follows:

## INTRODUCTION

1.     This case is brought to recover damages incurred by investors who relied upon false representations and material omissions made by a General Partner, Managing Member,

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM INDEX NO. 656450/2017
NYSCEF DOC. NO. 2                                                    RECEIVED NYSCEF: 10/18/2017

officer, employee, and agent of the Oak Entities in investing $15 million in NoMoreRack.com, later rebranded as Choxi.com ("Choxi").

2.      Prior to fleeing the United States as a fugitive in the face of Securities and Exchange Commission allegations of fraud and insider trading, the Oak Entities' partner, officer, employee, and agent, Iftikar "Ifty" Ahmed, was an immigrant from India who, for a time, appeared to be an American success story. Ahmed, after arriving in the United States, graduated from Harvard Business School as a Baker scholar, and went on to employment at Goldman Sachs and Fidelity prior to becoming a general partner at Oak Investment Partners—one of the oldest venture capital firms in the country.

3.      Oak Investment Partners was launched in 1978 and garnered a strong performance reputation among investors and others in the financial industry, outlasting many other firms that failed to escape the carnage of the dot-com meltdown in 2000. Oak Investment Partners shifted its focus around that time to include overseas markets, and to support that strategy, recruited foreign-born persons, like Ahmed, to gain access to various emerging markets.

4.      Oak Investment Partners, its funds, and its partners market themselves as a partnership using Oak Investment Partners as the name that is highlighted on its website, in press releases, and in marketing materials. Moreover, the personnel of Oak Investment Partners refer to themselves openly as partners, including General Partners and Managing Partners, and Ahmed used the "partnership" term in his discussions with NMR to describe the organization involved in leading the various transactions with Choxi.

5.      Structurally, the Oak Entities operate together under the Oak Investment Partners umbrella, which utilized various investment professionals as its managing and general partners, various investment professionals, and at all times relevant, included Ahmed. Included under the

- 2 -

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM          INDEX NO. 656450/2017
NYSCEF DOC. NO. 2                                                                    RECEIVED NYSCEF: 10/18/2017

Oak Investment Partners partnership umbrella are the Oak Individual Partners, Oak Corp., the Oak Fund, the Oak Fund GP, and their affiliates, which in varying degrees provide the investment vehicles (including the Oak Fund) by way of limited partnerships, the limited liability companies which act as investment managers of such limited partnerships, and among other things, provide staffing and additional managerial oversight at a corporate level through Oak Corp.

6.     Through Ahmed, the Oak Entities endorsed and advocated many investment opportunities, one of which involved online Internet retailer, Choxi.  Ahmed, in his capacity as "General Partner" of Oak Investment Partners, officer of Oak Corp., and a member of its investment "team," was touted by Oak Investment Partners and Oak Corp. on their website and in press releases as the Oak Entities' expert in e-commerce—the industry in which Choxi operated.

7.     Specifically, the Oak Defendants represented, in part, that "Ifty Ahmed, General Partner, joined Oak in Jan 2004 and he . . . focuse[d] on investing across the technology sector with an active interest in Consumer Internet and Communication Services sectors."  Ahmed's portfolio companies at Oak Investment Partners included Attivio, Inc., Circle Financial, Kenet LLC, Wonga, Choxi, Airespace (acquired by Cisco), GMarket (acquired by eBay), and Kayak (acquired by Priceline).   These e-commerce successes were widely publicized by Oak Investment Partners and Oak Corp. in the financial and private equity mainstream media, including Reuters, Fortune, Bloomberg, Forbes, and CNBC, among others.

8.     In 2012, Ahmed first became involved with Choxi by leading a round of funding in which he, together with one of Oak Investment Partners' portfolio companies, invested.  For strategic reasons, as Ahmed has noted, the Oak Defendants determined not to invest directly in

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM
INDEX NO. 656450/2017
NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 10/18/2017

this initial round of funding in Choxi, but rather, utilized an Oak Investment Partners portfolio company, on which Ahmed sat as member of the board of directors as a representative of the Oak Defendants, to purchase and maintain an ownership position in Choxi.   Through this strategy, the Oak Defendants reserved for themselves an "inside track" position for the less-risky, subsequent round of funding that was to occur the following year.   Indeed, Ahmed took a position on Choxi's board of directors in connection with the initial Oak Investment Partners portfolio company's investment in 2012.   In his capacity as a representative and agent of the Oak Defendants, Ahmed concealed material facts and misrepresented others in connection with the negotiation, sale, and structure of the 2012 round of funding at Choxi, known as the Series A stock purchase.

9.      As planned, the following year, Ahmed and the Oak Entities led a second round funding process at Choxi to identify investors to join the Oak Defendants in their commitment to fund $25 million as part of a Series B share purchase in Choxi.   The Series B funding and subsequent transactions were planned to support the growth trend of Choxi, which was the basis for the exit strategy for the Oak Defendants, Choxi, and NMR.   In this regard, third parties, including Morgan Stanley, recognized that "[e]xecution of the vision has been breathtaking," that "brand awareness [was] rapidly increasing," and that Choxi had a "maniacal focus on efficiency" which led to a "profitable business model and hyper revenue growth [which were a] truly unique combination."

10.      To perpetuate the fraud that began with the Series A transaction, Ahmed deliberately fended off interested investors in the Series B offering so there would be no meaningful opposition to the demands he would make to repurchase certain Series A shares that only he knew would benefit him personally by over ten million dollars.   In avoiding an

- 4 -

institutional or venture fund co-investor that would agree to join Oak Investment Partners in this second round of funding, Ahmed, on behalf of the Oak Entities, solicited NMR to make an investment in Choxi Series B shares alongside the Oak Fund.

11.     In doing so, Ahmed and the Oak Entities utilized Ahmed's vast experience and successes in the Internet retailing space in conjunction with the "Oak" brand, reputation, and backing, to attract NMR and its members to make a $15 million investment in Choxi, along with the Oak Fund.

12.     Ahmed and the Oak Defendants, in securing NMR's investment, misrepresented and concealed, among other things: (i) the true ownership interests of Oak Investment Partners' portfolio company in Choxi Series A shares, (ii) that Ahmed was personally profiting from the Series B round of funding by transferring more than $10.8 million to his personal bank account as part of an alleged required repurchase of Series A shares, (iii) that Oak Investment Partners had not required the repurchase of Series A shares as a condition of investing in the Series B transaction as Ahmed had informed representatives of NMR and Choxi, (iv) that Oak Investment Partners previously required that its portfolio company make a larger investment in Series A at an earlier valuation as a condition for Ahmed and Oak Investment Partners to continue to be active with Choxi, (v) that Oak Investment Partners had approved a personal investment by Ahmed in Choxi, even though he was Oak Investment Partners' general partner and an officer, employee, and agent of Oak Investment Partners' affiliates, when an Oak Investment Partners portfolio company was simultaneously investing in Choxi, (vi) that Ahmed established deceptive bank accounts and utilized fraudulent practices with other Oak Investment Partners funds prior to NMR's investment, (vii) that Ahmed steered away third party investors that would not allow for his planned repurchase requirement, and (viii) that Oak Investment Partners and the Oak Entities,

- 5 -

through the Oak Individual Partners, had approved all transactions that Ahmed and Oak Investment Partners' portfolio company were engaged in with Choxi. As a result, NMR overvalued is investment in the Series B stock.

13.     Had Ahmed, or any of the Oak Defendants, disclosed any of this information to NMR, or had the Oak Defendants exercised reasonable diligence over Ahmed or implemented adequate internal controls to discover Ahmed's conduct, NMR would not have invested the $15 million. Moreover, had the Oak Defendants exercised reasonable diligence and supervision over Ahmed as a general partner, agent, officer, and employee, to the extent they were unaware, they would have discovered Ahmed's misrepresentations to NMR representatives and Choxi, as well his misconduct.

14.     Finally, had the true facts been known, NMR would have passed on the investment because of the zone of risk the company was facing due to Ahmed's misconduct with the Series A and Series B transactions. His overvaluing of the business quality of Choxi to NMR and inducement of the investment for his personal gain by concealing his fraud also caused NMR's loss because his misrepresentations and concealments foreseeably led NMR into believing they were investing in a company free of fraud and with a clean capital structure, when in reality Ahmed, acting as an agent for the Oak Entities, had perpetrated misconduct that devalued the company and put at risk its ability to pursue its business plan.

15.     Because such acts and omissions constituted a clear violation of Oak Investment Partners' and its affiliates' policies and contractual obligations in the Oak Fund governing documents with its investors regarding investing in companies in which partners of Oak Investment Partners have personally invested, Oak Investment Partners could not have co-

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM

NYSCEF DOC. NO. 2

INDEX NO. 656450/2017

RECEIVED NYSCEF: 10/18/2017

invested in Choxi, which would have precluded NMR's investment. Further, such acts and omissions as detailed herein, were the direct and proximate cause of economic harm to NMR.

16. Because of Ahmed's status at Oak Investment Partners as a General Partner, officer of Oak Corp., and agent to the Oak Entities, and due to the financial benefits he brought to the Oak Defendants, Ahmed was able to exploit the "trust-based culture" touted by Oak Investment Partners and clear lack of internal controls and supervision over his practices. In this regard, Ahmed, as the Oak Entities' agent and partner, had unchecked power in making investment, spending, and financial transactions decisions, in large measure because Ahmed was closing what the Oak Defendants believed to be financially lucrative transactions.

17. In the absence of reasonable oversight and supervision by the Oak Defendants of Ahmed, and in reasonable reliance on the representations, acts, and omissions of Ahmed acting as a General Partner of Oak Investment Partners, an officer and employee of Oak Corp., a Managing Member of Oak Fund GP, and agent, NMR made the co-investment with the Oak Fund in Choxi.

18. Not long after Ahmed and the Oak Entities induced NMR into making the $15 million investment in Choxi, Ahmed was arrested for insider trading. His arrest caused the Oak Defendants belatedly to perform diligence on their partner, employee, and agent, which process uncovered a tangled web of misrepresentations, gross negligence, self-dealing, and fraud on the part of Ahmed while he was acting as Oak Investment Partners' General Partner, an officer of Oak Corp., a Managing Member of Oak Fund LP, and an agent of the Oak Entities. Only then did Oak Investment Partners review its internal controls, policies, and procedures, and develop a plan to "enhance" them. NMR and its representatives were not aware, nor could they have been aware, of the misconduct alleged herein until, at the very earliest, the date Ahmed was arrested.

- 7 -

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM          INDEX NO. 656450/2017
NYSCEF DOC. NO. 2                                                        RECEIVED NYSCEF: 10/18/2017

19.     In the face of the investigation and resulting lawsuits, Ahmed fled to India.  The Securities and Exchange Commission filed suit against him related to his numerous transgressions, including those in connection with the Choxi investment, and the government obtained a freeze on his significant assets.  The scandal that started as an unrelated insider trading allegation has led to the discovery of the acts and omissions of a once-top-tier venture firm, and its partner, officer, employee, and agent acting on its behalf.

20.     NMR lost its entire investment in Choxi, which investment would never have occurred but for: (i) the false and concealed representations and omissions of Ahmed, acting as a partner and agent of the Oak Entities, in connection with soliciting, inducing, and securing NMR's investment, and/or (ii) the Oak Defendants' failure to supervise its partner, employee, and agent.  The loss resulted from being induced into investing in Choxi under the terms and circumstances misrepresented by Ahmed, as agent of the Oak Defendants, as well as from: (i) Choxi's inability to secure adequate capital from market participants consistent with the growth and exit strategies as soon as the fraud was discovered and the Securities and Exchange Commission filed its complaint against Ahmed to remain a going concern, (ii) Ahmed's touting of the health and stability of Choxi's business and NMR's likelihood of a significant return on its investment, knowing that he had engaged in a series of fraudulent acts and other misconduct that foreseeably undermined both the financial health of Choxi and its future marketability, (iii) Choxi's insufficient capital prior to the holiday season in 2013 due to Ahmed's deceptive elimination of $10.8 million from an expected capital raise of $40 million that was crucial to support the strategic and financial growth model for Choxi adopted by the company and its investors, including NMR, and (iv) Choxi's inability to close a transaction with a willing participant due to Ahmed's tainted and fraudulent negotiation of voting rights for the Series B

- 8 -

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM   INDEX NO. 656450/2017
NYSCEF DOC. NO. 2   RECEIVED NYSCEF: 10/18/2017

participants for his personal gain. All of these circumstances were directly attributable to and caused by the Defendants' misconduct in the Series A and Series B transactions, and with respect to oversight of Ahmed, and each of them caused Choxi to fail and the value of NMR's investment to be lost entirely.

## JURISDICTION AND VENUE

21.   This Court has jurisdiction over the Defendants pursuant to CPLR § 302(a)(1)-(3) and a written agreement between NMR and the Oak Fund signed by the Oak Fund, Oak Fund GP, and Ahmed, to which the remaining defendants are closely related with the transaction underlying the harm. Upon information and belief, the Oak Individual Partners and Oak Entities, including its agent, Ahmed, transacted business in New York and/or had agents who conducted substantial business in New York, which included, among other things, attending board meetings of Choxi and other companies on which Oak Individual Partners sit on Boards of Directors, attending other business-related meetings, soliciting investments from individuals and entities that were domiciled and/or headquartered in New York, engaging in contracts governed by New York law, and entering contracts with residents of New York. Moreover, the conduct giving rise to Plaintiff's claims occurred in New York City with the harm occurring in Ohio, the principal place of business of NMR.

22.   Venue is proper in this county pursuant to CPLR § 503(a) and a written agreement between NMR and the Oak Fund signed by the Oak Fund, Oak Fund GP, and Ahmed, to which the remaining defendants are closely related. Venue is also proper because much of the conduct giving rise to Plaintiff's claims occurred in New York City.

- 9 -

## THE PARTIES

23.    NMR is a Delaware limited liability company with its principal place of business in Pepper Pike, Ohio.  NMR was formed in 2013 by a group of investors solicited by Ahmed and the Oak Entities for the purpose of, in part, holding, managing, and directing investments in Choxi.  NMR's principal place of business was located in Ohio where its operations were undertaken, including but not limited to, the payment of the $15 million Series B investment at issue in this case.  The damages plaintiff incurred took place in Ohio.  Dan Harrington is the managing member of NMR, and Ronak Khichadia is a member of NMR who routinely communicated with Ahmed regarding the Series A, supplemental Series A, and Series B transactions, as well as efforts to find additional capital.

24.    Choxi was an online retailer offering discount brand name and non-brand name merchandise, including bed and bath goods, home décor, kitchenware, furniture, watches, jewelry, apparel, electronics, computers, sporting goods, and designer accessories, among other products.

25.    On November 10, 2016, an involuntary petition for relief was filed against Choxi under Chapter 7 of title 11 of the United States Code.  On December 9, 2016, the United States Bankruptcy Court for the Southern District of New York entered an order granting Choxi relief under chapter 11 of the Bankruptcy Code, effective as of December 5, 2016.

26.    At all times relevant to this matter, Choxi was a Delaware corporation with its principal place of business on Park Avenue in New York, New York.  Choxi's books and records were maintained in New York.

27.    Defendant Oak Management Corporation ("Oak Corp.") is a Delaware corporation with its principal place of business in Norwalk, Connecticut.  Oak Corp. regularly

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM   INDEX NO. 656450/2017
NYSCEF DOC. NO. 2                                   RECEIVED NYSCEF: 10/18/2017

transacts and conducts business in New York.  Ahmed was at all times relevant to this Complaint a Vice President of Oak Corp.

28.     Defendant Oak Investment Partners is a partnership by estoppel, consisting of General Partners and Managing Partners that oversee Oak Corp. and its affiliates.  Accordingly, "Oak Investment Partners" refers herein also to those entities and affiliates doing business as Oak Investment Partners.  Oak Investment Partners has a principal place of business in Norwalk, Connecticut, and regularly transacts and conducts business in New York.  Ahmed became a General Partner at Oak Investment Partners in 2004, and was a General Partner through his departure from Oak Investment Partners on May 18, 2015.

29.     Oak Investment Partners XIII, LP ("Oak Fund") is a Delaware limited partnership.  Its general partner is Oak Fund GP.  The Oak Fund was a co-purchaser of stock in Choxi with NMR.  The Oak Fund regularly transacts and conducts business in New York, and was a party to a Series B Preferred Stock Purchase Agreement (the "Series B Agreement") governed by New York law and for which New York was an agreed-upon venue for any disputes arising out of or related to the Series B Agreement.

30.     Oak Associates XIII, LLC ("Oak Fund GP") is a Delaware limited liability company that acts as general partner of the Oak Fund.  Ahmed was at all times relevant to this Complaint a managing member of Oak Fund GP.  Oak Fund GP regularly transacts and conducts business in New York and was a signer of the Stock Purchase Agreement, as general partner of the Oak Fund.

31.     Ann Huntress Lamont is a Managing Partner of Oak Investment Partners, a Vice President and/or President of Oak Corp., and an Executive Managing Member of Oak Fund GP at all times relevant to this Complaint.  Upon information and belief, Lamont resides in

- 11 -

Greenwich, Connecticut and regularly transacts and conducts business in New York by, among other things, participating on the board of directors of a company headquartered in New York.

32. Edward Glassmeyer is a Managing Partner of Oak Investment Partners, President of Oak Corp., and Executive Managing Member of Oak Fund GP. Upon information and belief, Glassmeyer resides in Darien, Connecticut and regularly transacts and conducts business in New York by, among other things, participating on the board of directors of a company headquartered in New York.

33. Frederic Harman is a Managing Partner of Oak Investment Partners, Chairman of Oak Corp., and Executive Managing Member of Oak Fund GP. Upon information and belief, Harman works and resides in Palo Alto, California and regularly transacts and conducts business in New York by, among other things, participating on the board of directors of a company in New York.

34. Bandel Carano is a Managing Partner of Oak Investment Partners, officer of Oak Corp., and Executive Managing Member of Oak Fund GP. Upon information and belief, Carano works and resides in Palo Alto, California and regularly transacts and conducts business in New York by, among other things, participating on the board of directors of a company headquartered in New York.

35. Iftikar Ahmed was a General Partner of Oak Investment Partners, a Vice President of Oak Corp., and Managing Member of Oak Fund GP. Ahmed, a native of Assam, India, is currently domiciled in India, having fled there on or about May 16, 2015, following his arrest. Ahmed sat on Choxi's Board of Directors, attended Board meetings in New York, attended meetings with representatives of NMR in New York, and signed the Stock Purchase Agreement in his capacity as Managing Member of Oak Fund GP, the general partner of the Oak

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM
NYSCEF DOC. NO. 2

INDEX NO. 656450/2017

RECEIVED NYSCEF: 10/18/2017

Fund. Ahmed commenced his employment at Oak Investment Partners in 2004. While at Oak Investment Partners, Ahmed was responsible for, among other things, identifying companies, such as Choxi, in which Oak Investment Partners funds might invest, recommending investments, and negotiating the terms of investments.

## FACTS COMMON TO ALL COUNTS

### Nomorerack.com and Choxi.com

36.     Choxi was an e-commerce retailer—specifically, an online shopping platform that specialized in diverse items including apparel, beauty, electronics, home goods, shoes, handbags, luggage, watches, fragrance and more. The company was founded in November 2010 (then known as NoMoreRack.com) by Deepak Agarwal ("Agarwal"), who was Choxi's chief executive officer and a member of its board of directors. Choxi's reported sales exploded from $9 million in 2011 to $340 million in 2013.

37.     In or about 2010, Khichadia met Ahmed and learned that Ahmed was a venture capitalist employed by Oak Investment Partners who had been very successful in the e-commerce sector.

38.     In or around 2011, Agarwal, whom was also known by Khichadia through a shared business contact, was soliciting investments for his e-commerce business venture, Choxi. Khichadia introduced Agarwal to Oak Investment Partners and Ahmed.

### The Series A Round of Funding

39.     Not long thereafter, Ahmed and Agarwal put together an equity raise for Choxi in the form of an issuance of Series A Redeemable Convertible Preferred Stock. The $12 million Series A investment was led by Ahmed and a pan-Asian e-commerce leader and Oak Investment Partners portfolio company, Giosis Holdings, Incorporated ("Giosis"). Ahmed was responsible

- 13 -

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM    INDEX NO. 656450/2017
NYSCEF DOC. NO. 2                                        RECEIVED NYSCEF: 10/18/2017

for identifying and negotiating the portfolio company's investment in Choxi.  This investment by Oak Investment Partners' portfolio company was approved by Oak Investment Partners in the amount of $150,000, which was transferred by wire from Giosis's Fidelity bank account ending in number x6852 on or about November 13, 2012.

40.    This investment by Oak Investment Partners, utilizing one of its portfolio companies, allowed Oak Investment Partners to have access to Choxi information so that Oak Investment Partners could be better informed for purposes of the planned Series B investment, which has been referred to by Lamont as an "inside track to co-invest."  Thus, Oak Investment Partners became a *de facto* insider without risking an investment directly from one of its own funds.

41.    Oak Investment Partners' involvement and lead, through its agents Ahmed and Oak Investment Partners' counsel, was strategically planned to allow for Oak Investment Partners to follow the progress of Choxi and to lead or invest in the planned Series B round of funding.

42.    As part of Oak Investment Partners' investment in Giosis, Ahmed held a seat on its board of directors, and in connection with Giosis's Series A investment and Oak Investment Partners' planned Series B investment in Choxi, Ahmed joined Choxi's board of directors without contest from the Oak Individual Partners.  Ahmed's joining of Choxi's board of directors was widely publicized and reported at the time, including by *BusinessWire*.

43.    Ahmed and Oak Investment Partners utilized Oak Investment Partners' long-time legal counsel to draft, document, and manage the Series A investment transaction documents in light of Giosis's involvement.  Oak Investment Partners' counsel coordinated with personnel at Oak Investment Partners with respect to the transaction and reviewed Oak Investment Partners'

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM

NYSCEF DOC. NO. 2

INDEX NO. 656450/2017

RECEIVED NYSCEF: 10/18/2017

fund documents to ensure that the investment by its portfolio company and the addition of an Oak Investment Partners general partner, Ahmed, to the Choxi board of directors was acceptable from a compliance standpoint.

44.     In addition to the investment by Oak Investment Partners' portfolio company, Giosis, in Choxi, I-Cubed Domains, LLC also invested $2 million as part of the Series A funding.   Allegedly unbeknownst to the Oak Defendants, I-Cubed Domains, LLC was a company in which Ahmed held an interest personally.   Prior to the Series B investment in October 2013, Khichadia asked Ahmed expressly if he was allowed to be invested personally in the transaction along with Oak Investment Partners' portfolio company, Giosis, and Ahmed confirmed in or about October and November 2012, that he was permitted to do so and it presented no conflict of interest or compliance concerns.

45.     Ahmed solicited other investors, in addition to himself and Giosis, to complete the Series A round.   Because Ahmed, a general partner at Oak Investment Partners with significant experience in the Internet retail industry had joined Choxi's board, and further because Oak Investment Partners led the investment through its counsel, participated in the investment through its portfolio company, and planned to participate in the Series B round of funding, other investors, including Harrington, Khichadia, and other members of NMR agreed to invest and fund the balance of the Series A offering.

46.     The Series A round was completed and closed on November 13, 2012.

47.     Oak Investment Partners' personnel continued to have direct involvement in Choxi. David Black, a senior partner at Oak Investment Partners who specialized in technology companies, assisted Choxi with various issues well before Oak Investment Partners' direct investment in the Series B round of funding through the Oak Fund.   Glassmeyer was also

- 15 -

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM

NYSCEF DOC. NO. 2

INDEX NO. 656450/2017

RECEIVED NYSCEF: 10/18/2017

involved in Choxi-sponsored social events and attended, among other things, a New Year's celebration organized by Choxi in December 2013.

48.    Other than Agarwal, none of the non-Giosis Series A investors had experience in e-commerce.

49.    Ahmed's and Oak Investment Partners' involvement in Choxi's ownership and governing board was of paramount importance to the non-Giosis investors in deciding whether to invest in Choxi, particularly because of their well-publicized successes and significant experience in the e-commerce industry, including Ahmed's involvement in the growth and sale of Gmarket, a Korean e-tailer, to eBay, and his leadership of a deal on behalf of Oak Investment Partners and its investors whereby Kayak was sold to Priceline.

50.    In this regard, on November 15, 2012, Ahmed introduced Agarwal to the CEO of Giosis and told the Giosis CEO that Oak Investment Partners invested in Choxi the prior week and that he would appreciate it if he would take Agarwal's telephone calls and emails if he ever needs help or guidance.  Ahmed also confirmed on November 1, 2012, to Agarwal and Khichadia that once the Series A funding was closed, he would "start working closely" with the company and that he could "help with technology and business strategies and business models."

51.    Ahmed also suggested that the investments could be the "swan song of [their] respective profession and personal lives . . . ," meaning that the return on an investment in Choxi could generate such enormous wealth that the investors could retire on their earnings.  To stress the importance of keeping Ahmed involved in Choxi, Ahmed's Kayak deal with Priceline was announced on November 8, 2012, and the next day, he informed Khichadia and others that he believed he could "achieve more/bigger with [Choxi]."  This sentiment was repeated to Khichadia and Harrington, as representatives of NMR, leading up to its Series B investment.

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM

NYSCEF DOC. NO. 2

INDEX NO. 656450/2017

RECEIVED NYSCEF: 10/18/2017

## The Additional Series A Investment

52.     Within days following the November 13, 2012 close of the Series A transaction, and in the midst of successful holiday sales as reported to Ahmed and other Series A investors by Choxi, Ahmed told the Series A investors, including Khichadia, that Oak Investment Partners informed him that in order for Ahmed to stay on Choxi's board of directors and for him and Oak Investment Partners to stay actively involved with Choxi, Oak Investment Partners would need to increase its interest in Choxi by having its portfolio company, Giosis, increase its prior investment by $2 million.

53.     A stockholder consent was circulated on November 27, 2012, seeking approval of this new transaction to keep Ahmed on the board "given [his] background/expertise and ability to make [Choxi] a powerhouse in the ecommerce field."   Legal counsel for the Oak Entities arranged for and obtained signatures on the stockholder and board of directors' consent for the supplemental Series A investment from Oak Investment Partners' portfolio company, Giosis, as well as from Ahmed.

54.     Ahmed also informed the Series A investors, including Khichadia, at that time that the increased investment by Oak Investment Partners' portfolio company, Giosis, had to be at the same valuation level as the original investment in the Series A stock.   This was likely because a new valuation, even just two weeks later, would have been materially higher in light of Choxi's subsequent successful holiday sales.   By using the prior valuation of the Series A transaction, Ahmed and Oak Investment Partners' portfolio company, Giosis, would reap an immediate benefit from the purchase of additional Series A shares.

55.     The non-Giosis Series A investors group reasonably relied upon and acceded to Ahmed's and Oak Investment Partners' demand for this additional $2 million investment

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM
NYSCEF DOC. NO. 2

INDEX NO. 656450/2017
RECEIVED NYSCEF: 10/18/2017

because of the goal to have both Oak Investment Partners and Ahmed with "skin in the game," together with their desire for Ahmed to continue on Choxi's board in light of his and Oak Investment Partners' expertise in e-commerce, recognizing they had no experience with e-commerce companies. Given the time that Ahmed committed to Choxi and his plans for being closely involved going forward, the demand for a larger holding of the Series A shares appeared reasonable.

56. Moreover, the non-Giosis Series A investors, including Khichadia and Harrington, wanted to ensure that Ahmed and the Oak Defendants remained motivated to create success for Choxi, which would, in turn, accrue to their benefit.

57. In reality, unbeknownst to the Series A investors, Ahmed falsely represented the true facts relating to the purchase of the additional $2 million of Series A shares. In fact, Oak Investment Partners' portfolio company, Giosis, was unaware of, and did not approve, the additional $2 million investment.

58. Instead, Ahmed secretly opened an account in Giosis' name at Fidelity in 2012, from which he made both the $150,000 and $2 million investments. Only the $150,000 investment had been authorized by Giosis.

59. After Giosis learned of the unauthorized $2 million purchase of Series A shares in late 2012 and confronted Ahmed, Ahmed claimed to Giosis that the wiring of the $2 million from the Fidelity account had been a "mistake" and that he would "take full responsibility" by personally purchasing the shares, which he did on or about June 21, 2013. This conversation was unknown to the NMR representatives at the time.

60. Ahmed secretly paid $2 million back to Giosis directly; but, he did not disclose that to NMR or Choxi, and did not disclose to Giosis that by the time he paid the $2 million back

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM          INDEX NO. 656450/2017
NYSCEF DOC. NO. 2                                          RECEIVED NYSCEF: 10/18/2017

in June 2013, Choxi's business had grown substantially and the $2 million investment Ahmed had fraudulently overseen was then worth more than $10 million.

61.      Ahmed also never revealed to Giosis that he kept the stock, which appeared as being owned by Giosis on the Choxi stock register.

62.      By the year end 2012, Choxi had approximately $100 million in revenue.  The combination of the growth in value and Ahmed's need to further conceal his prior actions caused Ahmed to launch efforts to sell the Choxi Series A shares he purchased with Giosis' money back to Choxi—or someone else.  That opportunity arose with the upcoming Series B round of funding, and Ahmed capitalized on it.

### The Series B Financing

63.      It was well understood at the time of the Series A funding that there would be a Series B round of funding involving Oak Investment Partners.  By the fall of 2013, Choxi was performing well and was attracting outside investment interest from global top tier venture capital firms such as Accel Partners, Bain Capital Ventures, and Bessemer Venture Partners. Ahmed continued to tout his ability to grow Choxi and return a significant profit for its investors.

64.      NMR did not intend to invest in the Series B Redeemable Convertible Preferred Stock equity raise because its members were not initially interested in investing at a higher valuation than their investment in the Series A shares given the company's rapid growth. Instead, the NMR members' strategy was to get in an ownership position early at a lower valuation, which they did through the Series A purchase, and allow subsequent investors in a Series B and Series C stock purchase to carry their initial investment through increased growth towards an acquisition or IPO.

- 19 -

INDEX NO. 656450/2017

RECEIVED NYSCEF: 10/18/2017

65.     Strong interest was also expressed by the Oak Individual Partners to Ahmed to "win" the deal and secure the Series B investment for the Oak Entities.

66.     Ahmed, as a general partner of Oak Investment Partners, was the Oak Entities' lead on the transaction for the Series B investors.  According to Oak Investment Partners' COO, Ames, Ahmed was "responsible for identifying and negotiating the terms of investments that an Oak Fund [XIII] made in [Choxi], an e-commerce business based in the United States."  Because of his prior involvement with certain members of NMR and his experience with e-commerce, capital raises, and Choxi, and further because of his agreement to take lead on the negotiations with Choxi for all Series B investors, NMR placed its trust and confidence in Ahmed and the Oak Entities to lead the capital raise for the Series B transaction.

67.     Consistent with Ahmed's role as the lead for investors in the Series B negotiations, Ahmed temporarily resigned from his position on the Choxi board of directors so he could negotiate on behalf of the Series B investors.

68.     As the lead on the Series B transaction, Ahmed, with Choxi's agreement, arranged for the hiring of Morgan Stanley in or about March 2013, as its exclusive placement agent for the purpose of finding an additional investor to supplement the Oak Entities' investment, for a total aggregate funding of $50 million.

69.     Ahmed spoke with Accel Partners, who was an investor in the Kayak deal with Oak Investment Partners, and Oak Investment Partners and Accel were planning on investing $25 million each in Choxi.  Ahmed and Oak Investment Partners also worked with Accel from their investment in Wonga.com.  Only Ahmed, on behalf of the Oak Defendants, had communications with potential Series B private equity venture investors.

- 20 -

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM

NYSCEF DOC. NO. 2

INDEX NO. 656450/2017

RECEIVED NYSCEF: 10/18/2017

70.    After Morgan Stanley identified certain concerns regarding Agarwal's background and prior business, Morgan Stanley declined to continue its efforts in seeking a co-investor for the Oak Entities' in the Series B funding.

71.    Subsequent to Morgan Stanley's withdrawal, a few venture firms were contacted directly in or about October 2013, including Bain Ventures and General Atlantic.  As the lead, Ahmed conducted a telephonic meeting with General Atlantic, and later represented in June 2013, to Choxi and its Series A investors, including Khichadia, that he spoke with General Atlantic about his views of: (1) Choxi's management; (2) Agarwal's background; and (3) Choxi's business prospects, and that General Atlantic passed on the deal.

72.    Choxi later ultimately received letters of intent from: (1) Bessemer Ventures; (2) Battery Ventures; and (3) Accel Partners.  Rather than negotiating with the three entities, Ahmed unilaterally steered the transaction discussion to Accel Partners.

73.    Accel Partners signed a term sheet in or about June 2013 that valued Choxi at a 5x multiple over the Series A valuation, and provided that Accel and Oak Investment Partners would each invest $25 million.  Significantly, the term sheet did not allow for any direct secondary purchases (*i.e.*, the previous investors, including Ahmed and Oak Investment Partners' portfolio company, Giosis, could not sell their existing stakes as part of the deal).  The Accel Partners term sheets also did not provide for board control for Agarwal.

74.    Accel Partners' due diligence appeared to proceed smoothly, but when the process was over, Ahmed informed the Series A investors, including representatives of NMR, that Agarwal's background again became an issue and Accel decided to pass on the deal.  NMR believes that Ahmed engineered Accel Partners' decision to pass on the deal because the term

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM   INDEX NO. 656450/2017
NYSCEF DOC. NO. 2                                             RECEIVED NYSCEF: 10/18/2017

sheet did not include any provision for direct secondary purchases, which would have prevented Ahmed from selling the Series A shares he purchased with misappropriated monies from Giosis.

75.     After the Accel discussions ended, Ahmed immediately approached NMR members to solicit an investment from NMR. This solicitation dated back to June 14, 2013, when Ahmed first solicited certain members of NMR who were Series A holders by "encourage[ing] each . . . to please consider taking the maximum of this financing round . . . ." In connection with his solicitation of NMR, he reiterated to Khichadia and NMR in June 2013 and thereafter until the closing on the Series B transaction that based on his experience and expertise in the market, and his involvement with Choxi, Choxi would provide returns greater than his prior Kayak/Priceline deal.

76.     With traditional outside venture firms pushed aside by Ahmed, he needed to induce NMR to invest so that he could have his opportunity to cause his Series A shares believed to be owned by Giosis to be purchased with funds from the Series B transaction.

77.     Without the Series B transaction funded by the Oak Entities and NMR, Ahmed could not have furthered his fraud.

78.     At the same time, on June 18, 2013, Ahmed touted a potential initial public offering for Choxi that he was "ready to spend significant time on . . . ."

79.     Harrington, Khichadia, and others were also told repeatedly in August and September 2013 that Oak Investment Partners would still participate in the transaction for the $25 million amount at the same valuation as the Accel deal, but: (1) Choxi would have to re-purchase Giosis' shares (which, in actuality, Ahmed owned) because Oak Investment Partners had a policy prohibiting it from investing in Choxi at a different valuation level than its portfolio company had; and (2) the Oak Individual Partners required NMR to invest $15 million.

- 22 -

80.     In no uncertain terms, Ahmed told Cliff Schneider at Choxi and Khichadia with NMR, on or about September 2013, that the Series B deal would not happen with the Oak Entities unless the re-purchase of the "Giosis" shares took place at the closing on the Series B shares at the current Series B valuation.

81.     Ahmed repeatedly insisted that the Series B transaction would not close without an agreement that Choxi would re-purchase the "Giosis" shares (which, in actuality, Ahmed owned) despite his knowledge that Choxi was unwilling to permit such a repurchase.  Indeed, on August 13, 2013, Khichadia specifically notified Ahmed by e-mail that Choxi wanted to delay "buying back Giosis shares" as Choxi required a higher level of "capital in the company before the start of the [2013] holiday season."

82.     Recognizing that the only way for him to cash out on the fraudulent "Giosis" buyback scheme that he had engineered was to overcome Choxi's reticence to allow for such a buyback, Ahmed set about a strategy to achieve his goal.  Having been placed by the Oak Entities and NMR in the role of lead negotiator on the Series B transaction, and having been placed, given his specialized expertise in such e-commerce private equity transactions, in a position of trust and confidence vis-à-vis NMR, Ahmed took advantage of his lead negotiator role and proceeded with a plan to manipulate NMR.

83.     To accomplish this plan, Ahmed acted as the sole negotiator with Choxi and potential investors, and thereby controlled both the flow of information provided to NMR and the terms of any Series B investment from June 2013 through October 18, 2013.  Indeed, Ahmed excluded representatives of NMR from direct communications with potential Series B investors.

84.     First, in September 2013, Ahmed informed Choxi, Khichadia, and Harrington that the "Giosis" shares had to be re-purchased by Choxi at the Series B price because the Oak

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM   INDEX NO. 656450/2017
NYSCEF DOC. NO. 2                                                    RECEIVED NYSCEF: 10/18/2017

Entities were leading the round of funding and Giosis could therefore not remain as a shareholder because as an Oak Investment Partners portfolio company, Oak Investment Partners would hold positions in two different series, with two different valuations, and potentially conflicting rights.

85.     Thus, Ahmed instructed that the re-purchase of the "Giosis" shares had to be made at the closing on the Series B round and at the Series B price.  Upon information and belief, Oak Investment Partners did not have any such policy as Ahmed had represented. Moreover, Oak Investment Partners did not require an additional $15 million investment—ultimately made by NMR.

86.     Ahmed then represented at the same time in or about September 2013 to Khichadia at NMR that Ahmed's partners at Oak Investment Partners would not invest in Choxi through the Oak Entities without ordinary and customary control rights within a voting agreement that would serve to protect investors in the event that Choxi's management engaged in acts detrimental to the company.

87.     Additionally, both NMR and the Oak Entities required board control following the closing of the Series B transaction in order to protect their investments.  Specifically, in an e-mail to Khichadia on September 14, 2013, Ahmed notified Khichadia that he could not "even go to my partnership" without the voting-right provision.  Further, Ahmed advised Khichadia that this protection was a "cornerstone" of going forward with a Series B transaction and, thus, was a "non-negotiable issue for us."

88.     In actuality, and unknown to NMR, Ahmed was indeed willing to sacrifice the voting protections that he told NMR were "non-negotiable" in exchange for achieving the ability to cash out his personal interest by obtaining the right to proceed with a buyback agreement for

- 24 -

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM   INDEX NO. 656450/2017
NYSCEF DOC. NO. 2                                                    RECEIVED NYSCEF: 10/18/2017

the "Giosis" shares.  Knowing that Choxi would not go forward with the Series B investment with the voting-right protections that accrued to the benefit of NMR, Ahmed unilaterally surrendered those protections in his capacity as lead negotiator without seeking consent in advance from NMR in order to ensure that the transaction would proceed to closing, and that he would benefit from the fraud associated with the "Giosis" buyback that he had engineered.

89.     In addition to eliminating the standard voting-right protections because his personal gain was at risk, on October 17, 2013, just hours prior to closing, Ahmed instructed NMR that, in order for the deal to proceed to closing, NMR would have to cede board control.

90.     On October 18, 2013, the Oak Fund invested $25 million directly in Choxi, in the $40 million Series B funding round, a transaction unanimously approved by the four Oak Investment Partners Managing Partners.

91.     The Oak Fund bought newly issued Series B Preferred Shares at $4.466 per share (which translated to an approximate $332 million equity value for Choxi).  NMR was induced to invest $15 million alongside the Oak Fund in complete reasonable reliance on the representations of, and concealment of material facts by, Ahmed and the Oak Entities, the disclosure of which would have caused NMR to not invest due to the materiality of the falsehoods and concealments in analyzing its investment.

92.     The Series B Preferred Stock Purchase Agreement was signed by Ahmed as managing member of Oak Fund GP, serving as general partner of the Oak Fund.  As with the Series A transaction, Oak Investment Partners' outside legal counsel acted as Series B counsel.

93.     Just days prior to the closing of the Series B transaction in October 2013, Ahmed opened a bank account at Bank of America in the name of Giosis.

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM   INDEX NO. 656450/2017

NYSCEF DOC. NO. 2                                          RECEIVED NYSCEF: 10/18/2017

94.     Based on a flow of funds memorandum generated by the Oak Entities' legal counsel, from the combined Oak Fund and NMR contributions, $10,896,193.59 was used to repurchase the "Giosis" Series A shares (approximately $8.7 million more than the original purchase price less than a year earlier) by sending the funds to "Giosis Holdings."

95.     The money paid by Choxi to Giosis was transferred to the Giosis account that Giosis was unaware of and that belonged to, and was controlled by, Ahmed.  After he received the funds in his account at Bank of America, Ahmed transferred the funds into a joint bank account that he held with his wife.

96.     As a result, without the knowledge and approval of NMR, Ahmed personally took $10.896 million from the Series B transaction.

97.     The Repurchase Agreement was signed by Ahmed as follows:  "Giosis Holdings (Attn. Iftikar Ahmed, Director) c/o Oak Investment Partners, 3 Pickwick Plaza, Suite 302, Greenwich CT 06830  Email: iahmed@oakvc.com."

98.     At the time of the Series B closing, Ahmed did not disclose, and the Oak Defendants were unaware (having not done basic diligence) that Ahmed personally owned stock through I-Cubed Domains, LLC or that he owned stock through the sham Giosis transaction.

99.     Leading up to the Series B transaction, Ahmed disclosed on June 17, 2013, to Oak Investment Partners' COO, Grace Ames, that he had "NO personal investment or any direct beneficial interest or investment in" Choxi.  The Oak Defendants failed to ask Ahmed to clarify whether he had any indirect ownership in Choxi, or make any attempt to determine the identity of the investors in the Series A and Series B transactions.

100.    Each Oak Investment Partners fund is contractually prohibited in the Oak Fund governing documents from investing in the securities of any entity in which any of the Managing

- 26 -

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM   INDEX NO. 656450/2017
NYSCEF DOC. NO. 2                                    RECEIVED NYSCEF: 10/18/2017

Members of its general partner, including Ahmed, have, or had within the preceding ninety days, an investment or other material financial interest.  Oak Investment Partners funds are also prohibited from purchasing or selling securities to or from any Managing Members of the general partner of the Oak Investment Partners funds, or any of their respective affiliates.

101.   NMR would not have made its $15 million Series B investment had it known about the following misrepresentations made or concealed by Ahmed: (1) the true ownership interests of Oak Investment Partners' portfolio company, Giosis, in Choxi, (2) that Ahmed was personally profiting from the second round of funding by transferring more than $10.8 million to his personal bank account from the Series A repurchase agreement signed in October 2013, (3) that Oak Investment Partners had not required a repurchase of Series A shares as he had represented, (4) that Oak Investment Partners previously required that its portfolio company make a larger investment in Series A at an earlier valuation in November 2012, in order for Ahmed and Oak Investment Partners to continue to be active with Choxi, (5) that Oak Investment Partners had approved a personal investment by Ahmed in Choxi, even though he was Oak Investment Partners' general partner and an officer, employee, and agent of Oak Investment Partners' affiliates, when an Oak Investment Partners portfolio company was simultaneously investing in Choxi, (6) that Ahmed deceptively used bank accounts he established to engage in fraudulent practices in connection with the Series A investment prior to NMR's investment in the Series B transaction, (7) that Ahmed steered away third party investors that would not allow for his planned repurchase requirement, and (8) that Oak Investment Partners and the Oak Entities, through the Oak Individual Partners, had approved all transactions that Ahmed and Oak Investment Partners' portfolio company were engaged in with Choxi.

- 27 -

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM
INDEX NO. 656450/2017

NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 10/18/2017

102.     Had the Oak Entities exercised reasonable control and acted with diligence in order to learn what Ahmed, as their partner, agent, and employee, was representing and doing, and, alternatively, because Ahmed's investment was a clear violation of Oak Investment Partners' policies and contractual obligations, Oak Investment Partners also would have not completed the Series B transaction. If Oak Investment Partners did not invest in the Series B transaction, NMR would not have invested its $15 million.

### Post-Series B Efforts to Raise Capital or Sell

103.     After the Series B financing was funded, Agarwal was left with control of Choxi in light of Ahmed's negotiation with Agarwal to exchange the protective voting rights and board control for the repurchase of the "Giosis" shares.

104.     In 2014, Agarwal advised NMR that it was his view that because the company had experienced hyper growth, Choxi should attempt to consummate a sale or find strategic or financial equity partners who could infuse additional equity or debt capital to fund that ongoing growth. The strategy shared by Choxi and the Series A and Series B investors, as was common in the e-commerce industry, was to increase revenue and sales, with less of a focus on margins and profitability. The shared goal was to support Choxi's growth with capital and then market the company for sale or complete an initial public offering.

105.     At the same time, in light of the spectacular rapid growth of Choxi, the managing partners at Oak Investment Partners identified Choxi as a "fund maker," which is a portfolio company that had the potential for, and showed promise of, generating outsize returns for Oak Investment Partners.

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM   INDEX NO. 656450/2017
NYSCEF DOC. NO. 2                                    RECEIVED NYSCEF: 10/18/2017

106.    In furtherance of the transaction efforts, Choxi engaged in discussions with Clearlake Capital Group and Catterton Partners, two leading late stage growth equity investors to lead a Series C round of funding.

107.    Given Choxi's scale, growth, and assets, it was slated to garner considerably more interest than other e-commerce companies in the financial sector. Choxi was the beneficiary of a growing market opportunity whereby global e-commerce was growing at over 15% annually with Choxi just beginning to penetrate the overall market. Choxi's revenue was trending almost identically to that of Zulily, an online children's clothing e-tailer, which went public with a $4.8 billion market valuation in 2013 as part of an initial public offering, when it achieved substantially similar revenue to that amount Choxi was projected to earn in 2014.

108.    A discussion began in September 2014 between Catterton Partners and NMR. Catterton Partners ultimately gave Choxi a letter of intent in September 2014, which provided that Catterton Partners would invest $125 million into Choxi at a $350 million valuation, with $25 million earmarked for Agarwal. Ultimately, Agarwal insisted that $50 million be earmarked for him and Catterton Partners ended the discussions.

109.    Because voting control of the board was conceded by Ahmed and the Oak Fund as part of the Series B transaction, NMR, Choxi, and the Oak Fund had no ability to consummate the proposed transaction or issue additional shares without Agarwal's approval due to his control of the board of directors granted to him through Ahmed's negotiation of the fraudulent Series B transaction.

110.    Following Agarwal's blocking of the Catterton Partners transaction through his control of Choxi that Ahmed obtained for him in the Series B transaction, Choxi next retained Houlihan Lokey in July 2015 in connection with the private placement of Choxi's equity, equity-

linked or debt securities, or loans. Houlihan Lokey and Choxi targeted a closing on a transaction for September 2015, with the distribution of a teaser summary and initial calls to take place in July and early August 2015.

111. As the time, Houlihan Lokey, Oppenheimer, Deutsche Bank, and Stifel all reviewed and pitched for the position as Choxi's lead banker. The bankers noted that given Choxi's strong value, customer loyalty, experienced and innovative management team, and its existing "top-tier investors with robust experience in e-commerce" transactions, it presented well for the planned transaction in the fall of 2015. Indeed, one banker commented that "robust strategic interest may present a compelling M&A alternative" to the financing.

112. Moreover, the bankers noted there was a "[b]road range of investors" who would be interested, including "public institutions, VC/growth equity, private equity" and others, and that there was an active "seller's market" with potential buyers to include "Internet/e-commerce large caps and consumer growth companies," as well as "[s]elect financial sponsors with a track record of acquiring growth assets."

**Defendants' Misconduct Caused Harm to NMR**

113. For the reasons described herein, NMR would not have invested in the Series B transaction but for the Defendants' misrepresentations and concealment. In addition, the Defendants' acts and omissions proximately caused damage to NMR and the loss of its investment because: (1) Choxi lost the use of $10.8 million of the Series B funding that was expected and would have otherwise been available for marketing and operations to sustain Choxi's growth trend and strategic plan, the absence of which caused an unanticipated undercapitalization of Choxi and led to Choxi's bankruptcy and elimination of share value; (2) Choxi was unable to attract investors for the planned Series C funding or purchase as a direct

- 30 -

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM          INDEX NO. 656450/2017

NYSCEF DOC. NO. 2                                                RECEIVED NYSCEF: 10/18/2017

result of the discovery of the fraud involving Ahmed and the Series A and Series B transactions in the financial marketplace; (3) while Ahmed touted the health and stability of Choxi's business and NMR's likelihood of a significant return on its investment, he knew that he had engaged in a series of fraudulent acts and other misconduct that foreseeably undermined both the financial health of Choxi and its future marketability, and (4) Choxi's board of directors was unable to close a transaction, including one for $125 million, for Series C funding following the Series B transaction because Ahmed surrendered control of the board from the Series A and Series B investors to Agarwal as part of his fraudulent scheme to obtain Agarwal's and Choxi's consent to the repurchase of the "Giosis" shares for Ahmed's personal benefit. Each of these events directly and proximately caused the value of Choxi's equity interests to become valueless, thereby damaging NRM.

114. NMR was induced into investing in the Series B shares through Ahmed's representations of the financial health and investment quality of Choxi. Ahmed repeatedly told Khichadia as a representative of NMR that he should expect a significant return on NMR's investment based on Ahmed's analysis of Choxi and experience in the e-commerce arena, including that Choxi was in a tremendous growth stage for an e-commerce business. Ahmed represented to Khichadia that NMR should expect an exit from the investment with a valuation of more than $2 billion, that Choxi would outperform other e-commerce company returns, including Zulily and Kayak, and that the investment return on the Series B stock would be a four to five time multiple return on the initial investment. These statements were made prior to and in connection with NMR's decision to invest in the Series B transaction, and each of them was reasonably relied upon in light of Ahmed's involvement with Choxi and experience in the financial markets and e-commerce industry.

- 31 -

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM    INDEX NO. 656450/2017

NYSCEF DOC. NO. 2                                              RECEIVED NYSCEF: 10/18/2017

115.   Ahmed's overvaluing of the business quality of Choxi to NMR and inducement of the investment for his personal gain by concealing his fraud foreseeably led NMR into believing they were investing in a company free of fraud and with a clean capital structure, when in reality Ahmed, acting as an agent for the Oak Entities, had perpetrated and was planning numerous acts of fraud that had and did devalue Choxi and its ability to raise capital needed to pursue its business plan.

116.   As for the undercapitalization, the fraud surrounding the Series A and Series B transactions proximately caused the loss of NMR's $15 million because the planned capital raise for the Series B round was $50 million initially, which got reduced to $40 million of funding; however, $10.8 million of that funding was taken by Ahmed personally as part of his fraud.

117.   It was foreseeable that the loss of this $10.8 million would negatively impact the financial and operational conduction of Choxi immediately prior to the holiday season, which it did. Choxi's model was such that both the profitability and revenue are impacted by the amount spent on marketing. Choxi's core operating expenses were low and relatively fixed, and its revenue was greatly impacted by its marketing efforts.

118.   Specifically, Choxi, as a "flash site" e-commerce website, had a direct correlation between marketing and sales. For instance, during the holiday season in 2012, Choxi achieved a 696% return on revenue from its marketing expenditures on Yahoo.com and generated $1.09 million from the sale of 45,235 items sold in just three days. As another example, in just a four-week pilot period of television advertising on DirecTV, Vh1, TLC, TNT, Oxygen, and SoapNet, Choxi turned a marketing spend of $138,890 into a 303% return in revenue of $421,898. Choxi's ability to leverage the use of its funding to generate significant sales is demonstrated by its historical performance, whereby it achieved greater than two million customers, a run-rate of

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM | INDEX NO. 656450/2017
NYSCEF DOC. NO. 2 | RECEIVED NYSCEF: 10/18/2017

$260 million in revenue, more than eight million items sold (more than 23 per minute), and a cash balance of $10 million, with only $16 million in funding. Choxi's revenue per employee underscored its efficient model and ability to scale. Choxi garnered $4,561,000 per employee during this period as compared to $932 for Google, $752 for Priceline, $691 for Amazon, and $484 for Tripadvisor.

119.    Accordingly, the $10.8 million would have enabled the company to attain additional revenue through marketing efforts during the upcoming holiday season, sustain the revenue growth trend from the prior year, and position itself as an attractive opportunity for investors or purchasers. A reduction of the marketing dollars for Choxi directly resulted in lower sales, suppressed growth, and impacted the value and sustainability of Choxi.

120.    In addition, Choxi's effort to obtain new funding or complete a transaction in the fall of 2015 to support the strategic and investor plan was directly impacted by, and traceable to, Ahmed's prior fraud in connection with the Series A and Series B transactions.

121.    E-commerce thrived with e-commerce sales reaching $1 trillion in 2014, $295 billion of which was attributable to shoppers in the United States. In the summer of 2015, activity in the technology M&A market was also above 2014 activity, with $81 billion in deal volume in just the second quarter of 2015 alone. Internet activity volume was expected to reach record levels in 2015.

122.    Just two months prior to Houlihan Lokey being retained by Choxi, however, the Securities and Exchange Commission announced its lawsuit against Ahmed, which followed its indictment of him for insider trading in April 2015.

123.    As information from the SEC lawsuit began to proliferate in the marketplace, and the identity of companies involved became known, the financial market, including Houlihan

- 33 -

Lokey's targets, responded negatively to the news. Upon the discovery that prior Choxi equity transactions were at the center of Ahmed's misconduct while at Oak Investment Partners, Choxi and NMR were informed by Houlihan Lokey and potential investors that due to the then-recent allegations of fraud surrounding Ahmed involving Choxi, investors were unwilling to make a Series C investment.

124.    There was no industry or market-wide phenomenon causing comparable losses to other e-commerce investors; but rather, NMR's losses were specific to the misconduct alleged herein. The inability of Choxi to close a Series C stock purchase, including with Catterton Partners as described above, without consent of Agarwal, to generate additional revenue from the use of the $10.8 million Ahmed had fraudulently attained, to obtain the planned capital funding from a new transaction in 2015 due to the Defendants' misconduct, and the demise of the financial health of Choxi and corresponding loss of share value, were all directly and proximately the foreseeable result of Defendants' misconduct and fraud perpetrated on NMR and Choxi, each of which caused Choxi to lose enterprise value and suffer a bankruptcy filing on November 10, 2016, thereby rendering NMR's Series B investment worthless.

125.    Choxi filed a motion to sell its business, an auction was held, and the business was sold for a future income stream with a guaranteed minimum return of approximately $3.6 million, plus the subordination of certain secured debt to unsecured creditors. The value from the sale of assets will not be sufficient to generate any recovery for equity holders, including NMR.

### The Belated Investigation of its Own Partner, Agent, and Employee

126.    In or about April 2015, Ahmed was criminally charged by indictment in the United States District Court for the District of Massachusetts with, among other things, wire

- 34 -

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM INDEX NO. 656450/2017

NYSCEF DOC. NO. 2                                                                                        RECEIVED NYSCEF: 10/18/2017

fraud, making false tax returns, and violations of federal securities laws.  He was immediately suspended with pay by the Oak Defendants.

127.    On May 6, 2015, Oak Investment Partners' problems escalated when the SEC brought a civil action against Ahmed (and his related entities) directly related to his role at Oak Investment Partners, including in connection with his dealings with Choxi and NMR.  It was revealed that while Ahmed was a partner, employee, and agent of the Oak Entities, he transferred $28 million in illegal profits to accounts under his control.

128.    The Oak Entities responded by retaining legal and forensic accounting consultants to investigate Ahmed's transactions, including transactions relating to Oak Investment Partners' XI, XII, and XIII funds.  Oak Investment Partners also released a statement to *Institutional Investor* stating that it had determined that "[a]fter [the Oak Defendants] discovered Mr. Ahmed's fraudulent conduct," the investigation began, the conclusion of which was that Ahmed was a "rogue employee" who circumvented policies, procedures, and internal controls that Oak Investment Partners vowed to "enhance."

129.    Oak Investment Partners concluded that Ahmed used fake invoices, inflated fees, and/or phony exchange rates, in certain circumstances to personally profit, and he caused others to make investments in companies based on material misrepresentations and omissions.  One of the companies identified by Oak Investment Partners' internal investigation was Choxi.

130.    While out on bail, Ahmed fled the country to India with an invalid passport, and he was arrested in India upon arrival.  Ahmed's employment was terminated by Oak Investment Partners on May 8, 2015.

- 35 -

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM   INDEX NO. 656450/2017

NYSCEF DOC. NO. 2                                                              RECEIVED NYSCEF: 10/18/2017

131.   Following the uncovering of the fraud and Ahmed's acts and omissions, Glassmeyer, on behalf of the Oak Entities, met with Khichadia and acknowledged that Ahmed perpetrated a fraud against NMR.

### FIRST CAUSE OF ACTION

**Fraudulent Misrepresentation and Concealment Against Ahmed and the Oak Entities**

132.   Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 131 as if fully set forth herein.

133.   As alleged in paragraphs 51-124, Ahmed, acting in his capacity as agent, general partner, managing member, and employee for the various Oak Entities knowingly made misrepresentations of material facts to NMR and its representatives, both by false affirmative statements and by deliberate omissions and concealments, all of which Ahmed knew were false and nonetheless made or concealed with the intent to deceive and induce NMR to take actions and forbear from taking certain actions based upon such misrepresentations, including investing in Choxi with the Oak Fund.

134.   Ahmed was under duties to disclose the information that he concealed because he had superior knowledge of essential facts that were not readily available to NMR and its representatives that rendered the nondisclosure inherently unfair, including, but not limited to, that Oak Investment Partners did not require the supplemental investment in Series A, that Ahmed was planning to personally benefit from the Series B proceeds through a repurchase agreement of shares believed to be held by "Giosis" between  Giosis and Choxi, that Oak Investment Partners did not authorize Ahmed to have a personal interest or beneficial interest in Choxi, and that Ahmed misappropriated monies from Giosis without its authorization.

- 36 -

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM
INDEX NO. 656450/2017
NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 10/18/2017

135. Ahmed also was required to disclose the concealed material facts because he knew NMR and its representatives were operating on mistaken knowledge, such as that identified in paragraphs 51-124, and further, because he made partial statements of fact that were false, deceptive and misleading without disclosure of the entire facts that Ahmed chose not to disclose. The concealed material facts referenced in the above-cited paragraphs could not have been discovered through the exercise of ordinary diligence by NMR.

136. For instance, Ahmed represented to NMR representatives, including Khichadia and Harrington, in October 2013 that Oak Investment Partners' portfolio company, Giosis, actually owned $2,150,000 of Series A shares instead of $150,000 of shares. He also informed NMR representatives, including Khichadia and Harrington, in November 2012 that Oak Investment Partners and the Oak Individual Partners mandated that its portfolio company, Giosis, invest $2 million in a supplemental Series A purchase at the initial offering valuation or that Oak Investment Partners and Ahmed could not actively participate in the Choxi investment, including Ahmed acting as a director. Ahmed also affirmatively misrepresented to Khichadia and Harrington in November 2013 that Oak Investment Partners and the Oak Individual Partners required the repurchase of the "Giosis" shares personally owned by Ahmed due to the Oak Fund's inability to invest in Choxi at a different valuation level than its portfolio company. Ahmed also falsely confirmed to Khichadia in October 2012 that Oak Investment Partners and the Oak Individual Partners approved of his I-Cubed Domains, LLC investment in which Ahmed had a personal interest. With respect to concealment of material facts, Ahmed failed to disclose that he was the owner personally of Series A shares that were believed to be owned by Giosis, and that he would profit personally from the repurchase agreement. He also fraudulently concealed that Ahmed established bank accounts into which Oak Investment Partners transferred

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM

NYSCEF DOC. NO. 2

INDEX NO. 656450/2017

RECEIVED NYSCEF: 10/18/2017

funds to which Ahmed was not entitled, that he established bank accounts into which various Oak Investment Partners portfolio companies transferred funds to which Ahmed was not entitled, that Oak Investment Partners had established obligations and policies precluding the investment in Choxi by I-Cubed Domains, LLC and the subsequent investment by the Oak Fund in Choxi due to his personal interest, and that he had been engaged in fraudulent conduct involving numerous Oak Investment Partners portfolio companies and Oak Investment Partners funds since Ahmed joined Oak Investment Partners, among other misrepresentations identified above. Further, Ahmed attended meetings and numerous conference calls with NMR representatives. These meetings and telephone calls took place, in relevant part, between November 2012 through October 2013. During each of the aforesaid meetings and teleconferences, Ahmed had the opportunity to advise the NMR representatives of the material facts he kept secret, but chose to remain silent, thereby concealing his personal interests and the true state of affairs, and deluding the NMR representatives into thinking that the actions being recommended by Ahmed and the Oak Entities were intended for the benefit of NMR when, in fact, they enhanced Ahmed's undisclosed interests.

137.    Ahmed intended to defraud NMR and its representatives by his materially false misrepresentations, omissions and concealments at NMR's expense. Ahmed knew that had NMR been advised as to the nature of the true facts surrounding the Series A share transaction, Giosis's involvement with Choxi, Ahmed's intended personal benefit, Oak Investment Partners' approvals and authorizations of Ahmed's beneficial investment, and others, NMR would have terminated the discussions surrounding the Series B investment and not purchased Series B shares with the Oak Fund.

138.   All of the representations alleged herein by Ahmed were false and Ahmed knew they were false when they were made.

139.   NMR and its representatives reasonably and justifiably relied on the representations and concealment of material facts by Ahmed in making its investment in Choxi.

140.   The Oak Defendants identified Ahmed as a "General Partner" on their website at all times relevant to this Complaint.  Ahmed also held himself out as a "General Partner" of Oak Investment Partners, which he called a partnership.  In addition, he routinely referenced his colleagues at the Oak Entities as his "partners" in that partnership.

141.   Consistent with that public disclosure by the Oak Defendants, the Oak Defendants touted Ahmed as having expertise and extensive experience identifying portfolio companies for investment purposes, with specific focus upon "Consumer Internet companies," like Choxi.

142.   Indeed, the Oak Defendants have previously judicially admitted that the Oak Defendants authorized Ahmed, as their agent, employee, and "General Partner" to, among other things, "recommend[] investments to the four senior Managing Partners of [Oak Corp.]; negotiate[] the terms of investments with portfolio companies; manag[e] the relationship with portfolio companies, which can include serving on the portfolio company's board of directors; and negotiate[e] and recommend[] the terms of Oak Investment Partners' exit from investments." This authority was broad in nature and specifically included Ahmed's work with the Choxi transactions.

143.   Here, the Oak Defendants specifically authorized Ahmed, in his capacity as a "General Partner," employee, and agent on behalf of the Oak Defendants, to: (1) interact with the Plaintiff regarding the terms of the Series A and Series B investments; (2) identify co-investors with the Oak Defendants in the Series B investment; (3) make recommendations to the Oak

- 39 -

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM

NYSCEF DOC. NO. 2

INDEX NO. 656450/2017

RECEIVED NYSCEF: 10/18/2017

Defendants to move forward with the Series B investment in Choxi, which the Oak Defendants expressly approved and ratified; (4) execute the "Series B Preferred Stock Purchase Agreement" on their behalf, in his capacity as "Managing Member" of "Oak Associates XIII, LLC," as "General Partner" of "Oak Investment Partners XIII, Limited Partnership."

144.    Thus, the Oak Defendants imbued Ahmed, in his capacity as their "General Partner" and express agent, with apparent, if not actual, authority to interact with NMR on behalf of the Oak Defendants in connection with the Series B investment at all times relevant to this Complaint.

145.    As a direct, substantial and proximate result of NMR's and its representative's reasonable and justifiable reliance on Ahmed's representations and omissions of material facts, NMR suffered damages, including the $15 million investment amount, lost accretion of value of Choxi and the share value of Choxi, and lost use of the investment funds.

146.    The actions undertaken by the Defendants were performed with an improper and evil motive, and with malice, wantonness, and dishonesty.

## SECOND CAUSE OF ACTION

### Fraudulent Inducement Against Ahmed and the Oak Entities

147.    Plaintiff repeats and alleges the allegations set forth in paragraphs 1 through 146 as if fully set forth herein.

148.    As alleged in paragraphs 51-124, Ahmed, acting in his capacity as agent, general partner, managing member, and employee for the various Oak Entities knowingly made misrepresentations of material facts to NMR and its representatives, both by false affirmative statements and by deliberate omissions and concealments, all of which Ahmed knew were false and nonetheless made or concealed with the intent to deceive and induce NMR to take actions

- 40 -

and forbear from taking certain actions based upon such misrepresentations, including investing in Choxi with the Oak Fund.

149.    Ahmed was under duties to disclose the information that he concealed because he had superior knowledge of essential facts that were not readily available to NMR and its representatives that rendered the nondisclosure inherently unfair, including, but not limited to, that Oak Investment Partners did not require the supplemental investment in Series A, that Ahmed was planning to personally benefit from the Series B proceeds through a repurchase agreement of shares believed to be held by "Giosis" between  Giosis and Choxi, that Oak Investment Partners did not authorize Ahmed to have a personal interest or beneficial interest in Choxi, and that Ahmed misappropriated monies from Giosis without its authorization.

150.    Ahmed also was required to disclose the concealed material facts because he knew NMR and its representatives were operating on mistaken knowledge, such as that identified in paragraphs 51-124, and further because he made partial statements of fact that were false, deceptive and misleading without disclosure of the entire facts that Ahmed chose not to disclose.  The concealed material facts referenced in the above-cited paragraphs could not have been discovered through the exercise of ordinary diligence by NMR.

151.    For instance, Ahmed represented to NMR representatives, including Khichadia and Harrington, in November 2012 that Oak Investment Partners' portfolio company, Giosis, actually owned $2,150,000 of Series A shares instead of $150,000 of shares.  He also informed NMR representatives, including Khichadia and Harrington, in November 2012 that Oak Investment Partners and the Oak Individual Partners mandated that its portfolio company, Giosis, invest $2 million in a supplemental Series A purchase at the initial offering valuation or that Oak Investment Partners and Ahmed could not actively participate in the Choxi investment, including

- 41 -

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM    INDEX NO. 656450/2017
NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 10/18/2017

Ahmed acting as a director.    Ahmed also affirmatively misrepresented to Khichadia and

Harrington in November 2013 that Oak Investment Partners and the Oak Individual Partners

required the repurchase of the "Giosis" shares personally owned by Ahmed due to the Oak

Fund's inability to invest in Choxi at a different valuation level than its portfolio company.

Ahmed also falsely confirmed to Khichadia in October 2012 that Oak Investment Partners and

the Oak Individual Partners approved of his I-Cubed Domains, LLC investment in which Ahmed

had a personal interest.    With respect to concealment of material facts, Ahmed failed to disclose

that he was the owner personally of Series A shares that were believed to be owned by Giosis,

and that he would profit personally from the repurchase agreement.    He also fraudulently

concealed that Ahmed established bank accounts into which Oak Investment Partners transferred

funds to which Ahmed was not entitled, that he established bank accounts into which various

Oak Investment Partners portfolio companies transferred funds to which Ahmed was not entitled,

that Oak Investment Partners had established obligations and policies precluding the investment

in Choxi by I-Cubed Domains, LLC and the subsequent investment by the Oak Fund in Choxi

due to his personal interest, and that he had been engaged in fraudulent conduct involving

numerous Oak Investment Partners portfolio companies and Oak Investment Partners funds since

Ahmed joined Oak Investment Partners, among other misrepresentations identified above.

Further, Ahmed attended meetings and numerous conference calls with NMR representatives.

These meetings and telephone calls took place, in relevant part, between November 2012

through October 2013.    During each of the aforesaid meetings and teleconferences, Ahmed had

the opportunity to advise the NMR representatives of the material facts he kept secret, but chose

to remain silent, thereby concealing his personal interests and the true state of affairs, and

deluding the NMR representatives into thinking that the actions being recommended by Ahmed

and the Oak Entities were intended for the benefit of NMR when, in fact, they enhanced Ahmed's undisclosed interests.

152.    Ahmed intended to defraud NMR and its representatives by his materially false misrepresentations, omissions and concealments in order to enrich himself at NMR's expense. Ahmed knew that had NMR been advised as to the nature of the true facts surrounding the Series A share transaction, Giosis's involvement with Choxi, Ahmed's intended personal benefit, Oak Investment Partners' approvals and authorizations of Ahmed's beneficial investment, and others, NMR would have terminated the discussions surrounding the Series B investment and not purchased Series B shares with the Oak Fund.

153.    All of the representations alleged herein by Ahmed were false and Ahmed knew they were false when they were made.

154.    NMR and its representatives reasonably and justifiably relied on the representations and concealment of material facts by Ahmed in making its investment in Choxi and entering into the Series B Preferred Stock Purchase Agreement.

155.    The Oak Defendants identified Ahmed as a "General Partner" on their website at all times relevant to this Complaint

156.    Consistent with that public disclosure by the Oak Defendants, the Oak Defendants touted Ahmed as having expertise and extensive experience identifying portfolio companies for investment purposes, with specific focus upon "Consumer Internet companies," like Choxi.

157.    Indeed, the Oak Defendants have previously judicially admitted that the Oak Defendants authorized Ahmed, as their agent, employee, and "General Partner" to, among other things, "recommend[] investments to the four senior Managing Partners of [Oak Corp.]; negotiate[] the terms of investments with portfolio companies; manag[e] the relationship with

- 43 -

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM
NYSCEF DOC. NO. 2

INDEX NO. 656450/2017

RECEIVED NYSCEF: 10/18/2017

portfolio companies, which can include serving on the portfolio company's board of directors; and negotiate[e] and recommend[] the terms of Oak Investment Partners' exit from investments." This authority was broad in nature and specifically included Ahmed's work with the Choxi transactions.

158.   Here, the Oak Defendants specifically authorized Ahmed, in his capacity as a "General Partner," employee, and agent on behalf of the Oak Defendants, to: (1) interact with the Plaintiff regarding the terms of the Series A and Series B investments; (2) identify co-investors with the Oak Defendants in the Series B investment; (3) make recommendations to the Oak Defendants to move forward with the Series B investment in Choxi, which the Oak Defendants expressly approved and ratified; (4) execute the "Series B Preferred Stock Purchase Agreement" on their behalf, in his capacity as "Managing Member" of "Oak Associates XIII, LLC," as "General Partner" of "Oak Investment Partners XIII, Limited Partnership."

159.   Thus, the Oak Defendants imbued Ahmed, in his capacity as their "General Partner" and express agent, with apparent, if not actual, authority to interact with NMR on behalf of the Oak Defendants in connection with the Series B investment at all times relevant to this Complaint.

160.   As a direct, substantial and proximate result of NMR's and its representative's reasonable and justifiable reliance on Ahmed's representations and omissions of material facts, NMR entered into the Series B Preferred Stock Purchase Agreement and suffered damages, including the $15 million investment amount, lost accretion of value of Choxi and the share value of Choxi, and lost use of the investment funds.

161.   The actions of Ahmed were undertaken and performed with an improper and evil motive, and with malice, wantonness, and dishonesty.

- 44 -

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM          INDEX NO. 656450/2017

NYSCEF DOC. NO. 2                                           RECEIVED NYSCEF: 10/18/2017

## THIRD CAUSE OF ACTION

### Gross Negligence Against Ahmed and the Oak Entities

162.    Plaintiff repeats and alleges the allegations set forth in paragraphs 1 through 131 as if fully set forth herein.

163.    As alleged in paragraphs 51-124, Ahmed, acting in his capacity as agent, general partner, managing member, and employee for the various Oak Entities acted with reckless indifference to the rights of NMR.

164.    Ahmed and the Oak Entities had a special relationship with NMR and its representatives in that Ahmed and the Oak Entities held unique and special expertise in the e-commerce industry and related investment transactions. In addition, Ahmed and the Oak Entities had a special relationship because Ahmed and the Oak Entities led the Series A and Series B investment transaction and NMR placed them in a position of trust and confidence. Moreover, there existed a duty to disclose accurate and material information to NMR because Ahmed had superior knowledge of essential facts that were not readily available to NMR and its representatives that rendered the nondisclosure inherently unfair, including, but not limited to, that Oak Investment Partners did not require the supplemental investment in Series A, that Ahmed was planning to personally benefit from the Series B proceeds through a repurchase agreement of shares believed to be held by "Giosis" between  Giosis and Choxi, that Oak Investment Partners did not authorize Ahmed to have a personal interest or beneficial interest in Choxi, and that Ahmed misappropriated monies from Giosis without its authorization.

165.    Ahmed also had a duty owed to NMR because he knew NMR and its representatives were operating on mistaken knowledge, and further because he made partial statements of fact that were false, deceptive and misleading without disclosure of the entire facts.

- 45 -

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM    INDEX NO. 656450/2017
NYSCEF DOC. NO. 2                                    RECEIVED NYSCEF: 10/18/2017

Thus, Ahmed had a duty to exercise reasonable care to impart complete, correct, and accurate information to NMR and its representatives.

166.    Ahmed and the Oak Entities failed to exercise even slight care or diligence in communicating accurate, complete, and true information in connection with the Series A and Series B transactions.  Ahmed and the Oak Entities had a duty of care, and then grossly failed to exercise due care, and acted in reckless disregard of their duties by misrepresenting and omitting material facts from discussions, negotiations, and transactions with NMR and its investors, and as further alleged in paragraphs 51-124.

167.    The Oak Defendants identified Ahmed as a "General Partner" on their website at all times relevant to this Complaint.

168.    Consistent with that public disclosure by the Oak Defendants, the Oak Defendants touted Ahmed as having expertise and extensive experience identifying portfolio companies for investment purposes, with specific focus upon "Consumer Internet companies," like Choxi.

169.    Indeed, the Oak Defendants have previously judicially admitted that the Oak Defendants authorized Ahmed, as their agent, employee, and "General Partner" to, among other things, "recommend[] investments to the four senior Managing Partners of [Oak Corp.]; negotiate[] the terms of investments with portfolio companies; manag[e] the relationship with portfolio companies, which can include serving on the portfolio company's board of directors; and negotiate[e] and recommend[] the terms of Oak Investment Partners' exit from investments." This authority was broad in nature and specifically included Ahmed's work with the Choxi transactions.

170.    Here, the Oak Defendants specifically authorized Ahmed, in his capacity as a "General Partner," employee, and agent on behalf of the Oak Defendants, to: (1) interact with the

NYSCEF DOC. NO. 2

Plaintiff regarding the terms of the Series A and Series B investments; (2) identify co-investors with the Oak Defendants in the Series B investment; (3) make recommendations to the Oak Defendants to move forward with the Series B investment in Choxi, which the Oak Defendants expressly approved and ratified; (4) execute the "Series B Preferred Stock Purchase Agreement" on their behalf, in his capacity as "Managing Member" of "Oak Associates XIII, LLC," as "General Partner" of "Oak Investment Partners XIII, Limited Partnership."

171.    Thus, the Oak Defendants imbued Ahmed, in his capacity as their "General Partner" and express agent, with apparent, if not actual, authority to interact with NMR on behalf of the Oak Defendants in connection with the Series B investment at all times relevant to this Complaint.

172.    As a direct, substantial and proximate result of NMR's and its representative's reasonable and justifiable reliance on Ahmed's representations and omissions of material facts, NMR suffered damages, including the $15 million investment amount, lost accretion of value of Choxi and the share value of Choxi, and lost use of the investment funds.

173.    The actions of Ahmed were undertaken and performed with an improper and evil motive, and with malice, wantonness, and dishonesty.

## FOURTH CAUSE OF ACTION

### Negligent Misrepresentation Against Ahmed and the Oak Entities

174.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 131, 162-173 as if fully set forth herein.

175.    Ahmed and the Oak Entities had a special relationship with NMR and its representatives in that Ahmed and the Oak Entities held unique and special expertise in the e-commerce industry and related investment transactions, while NMR had no such expertise.

- 47 -

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM

NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 10/18/2017

Ahmed and the Oak Entities were aware that NMR was in fact relying on that unique and specialized expertise, which Ahmed and the Oak Entities supplied to NMR.  Indeed, because Ahmed and the Oak Entities led the Series B investment transaction and NMR appropriately placed them in a position of trust and confidence.  Moreover, there existed a duty to disclose accurate and material information to NMR because Ahmed had superior knowledge of essential facts that were not readily available to NMR and its representatives that rendered the nondisclosure inherently unfair, including, but not limited to, that Oak Investment Partners did not require the supplemental investment in Series A, that Ahmed was planning to personally benefit from the Series B proceeds through a repurchase agreement of shares believed to be held by "Giosis" between  Giosis and Choxi, that Oak Investment Partners did not authorize Ahmed to have a personal interest or beneficial interest in Choxi, and that Ahmed misappropriated monies from Giosis without its authorization.

176.    Ahmed also had a duty owed to NMR because he knew NMR and its representatives were operating on mistaken knowledge, and further because he made partial statements of fact that were false, deceptive and misleading without disclosure of the entire facts.  Thus, Ahmed had a duty to exercise reasonable care to impart complete, correct, and accurate information to NMR and its representatives.

177.    As alleged in paragraphs 51-124, Ahmed failed to exercise reasonable care and negligently and carelessly made misrepresentations of material facts to NMR and its representatives, both by false affirmative statements and by omissions of material facts, thereby denying NMR and its representatives the opportunity to make reasoned and informed decisions.

178.    Ahmed was under duties to disclose accurate material information because he had superior knowledge of essential facts that were not readily available to NMR and its

- 48 -

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM   INDEX NO. 656450/2017
NYSCEF DOC. NO. 2                                     RECEIVED NYSCEF: 10/18/2017

representatives that rendered the nondisclosure inherently unfair, including, but not limited to, that Oak Investment Partners did not require the supplemental investment in Series A, that Ahmed was planning to personally benefit from the Series B proceeds through a repurchase agreement of shares believed to be held by "Giosis" between  Giosis and Choxi, that Oak Investment Partners did not authorize Ahmed to have a personal interest or beneficial interest in Choxi, and that Ahmed misappropriated monies from Giosis without its authorization.

179.    Ahmed also was required to disclose the accurate and material information because he knew NMR and its representatives were operating on mistaken knowledge, such as that identified in paragraphs 51-124, and further because he made partial statements of fact that were inaccurate, deceptive and misleading without disclosure of the entire facts.  The accurate and material facts and information referenced in the above-cited paragraphs could not have been discovered through the exercise of ordinary diligence by NMR.

180.    For instance, Ahmed represented to NMR representatives that Oak Investment Partners' portfolio company, Giosis, actually owned $2,150,000 of Series A shares instead of $150,000 of shares.  He also informed NMR representatives that Oak Investment Partners and the Oak Individual Partners mandated that its portfolio company, Giosis, invest $2 million in a supplemental Series A purchase at the initial offering valuation or that Oak Investment Partners and Ahmed could not actively participate in the Choxi investment, including Ahmed acting as a director.  Ahmed also affirmatively misrepresented that Oak Investment Partners and the Oak Individual Partners required the repurchase of the "Giosis" shares personally owned by Ahmed due to the Oak Fund's inability to invest in Choxi at a different valuation level than its portfolio company.  Ahmed also misrepresented to NMR representatives that Oak Investment Partners and the Oak Individual Partners approved of his I-Cubed Domains, LLC investment in which Ahmed

- 49 -

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM

NYSCEF DOC. NO. 2

INDEX NO. 656450/2017

RECEIVED NYSCEF: 10/18/2017

had a personal interest. Ahmed failed to disclose that he was the owner personally of Series A shares that were believed to be owned by Giosis, and that he would profit personally from the repurchase agreement. He also did not reveal that he established bank accounts into which Oak Investment Partners transferred funds to which he was not entitled, that he established bank accounts into which various Oak Investment Partners portfolio companies transferred funds to which Ahmed was not entitled, that Oak Investment Partners had established obligations and policies precluding the investment in Choxi by I-Cubed Domains, LLC and the subsequent investment by the Oak Fund in Choxi due to his personal interest, and that he had been engaged in misconduct involving numerous Oak Investment Partners portfolio companies and Oak Investment Partners funds since Ahmed joined Oak Investment Partners, among other misrepresentations identified above.

181. Further, Ahmed attended meetings and numerous conference calls with NMR representatives. These meetings and telephone calls took place, in relevant part, between November 2012 through October 2013. During each of the aforesaid meetings and teleconferences, Ahmed had the opportunity to advise the NMR representatives of the material and accurate facts, but negligently and carelessly remained silent, thereby failing to disclose material information to NMR.

182. NMR reasonably and justifiably relied on Ahmed's representations and omissions of material facts.

183. The Oak Defendants identified Ahmed as a "General Partner" on their website at all times relevant to this Complaint

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM
NYSCEF DOC. NO. 2

INDEX NO. 656450/2017
RECEIVED NYSCEF: 10/18/2017

184.   Consistent with that public disclosure by the Oak Defendants, the Oak Defendants touted Ahmed as having expertise and extensive experience identifying portfolio companies for investment purposes, with specific focus upon "Consumer Internet companies," like Choxi.

185.   Indeed, the Oak Defendants have previously judicially admitted that the Oak Defendants authorized Ahmed, as their agent, employee, and "General Partner" to, among other things, "recommend[] investments to the four senior Managing Partners of [Oak Corp.]; negotiate[] the terms of investments with portfolio companies; manag[e] the relationship with portfolio companies, which can include serving on the portfolio company's board of directors; and negotiate[e] and recommend[] the terms of Oak Investment Partners' exit from investments." This authority was broad in nature and specifically included Ahmed's work with the Choxi transactions.

186.   Here, the Oak Defendants specifically authorized Ahmed, in his capacity as a "General Partner," employee, and agent on behalf of the Oak Defendants, to: (1) interact with the Plaintiff regarding the terms of the Series A and Series B investments; (2) identify co-investors with the Oak Defendants in the Series B investment; (3) make recommendations to the Oak Defendants to move forward with the Series B investment in Choxi, which the Oak Defendants expressly approved and ratified; (4) execute the "Series B Preferred Stock Purchase Agreement" on their behalf, in his capacity as "Managing Member" of "Oak Associates XIII, LLC," as "General Partner" of "Oak Investment Partners XIII, Limited Partnership."

187.   Thus, the Oak Defendants imbued Ahmed, in his capacity as their "General Partner" and express agent, with apparent, if not actual, authority to interact with NMR on behalf of the Oak Defendants in connection with the Series B investment at all times relevant to this Complaint.

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM    INDEX NO. 656450/2017
NYSCEF DOC. NO. 2                                   RECEIVED NYSCEF: 10/18/2017

188.    As a direct, substantial and proximate result of NMR's reasonable and justifiable reliance on Ahmed's representations and omissions of material facts, NMR suffered damages, including the $15 million investment amount, lost accretion of value of Choxi and the share value of Choxi, and lost use of the investment funds.

## FIFTH CAUSE OF ACTION

### Grossly Negligent Supervision Against the Oak Entities

189.    Plaintiff repeats and alleges the allegations set forth in paragraphs 1 through 131 as if fully set forth herein.

190.    The Oak Entities failed to exercise any reasonable diligence over Ahmed, acting in his various capacities as their general partner, officer, managing member, employee and agent, or investigate any of his actions, until such time that Ahmed was arrested in April 2015, even though he repeatedly and brazenly engaged in numerous acts of financial misconduct and manipulation.

191.    Indeed, Ahmed's misconduct was part of a decade-long period of free rein at Oak Investment Partners involving no less than 10 companies in which Oak Investment Partners' funds invested.    Ahmed accomplished these transgressions by, among other things, misrepresenting exchange rates on pricing for a deal, misrepresenting the financial condition of the company and its valuation, and fabricating or altering invoices for expenses in connection with a purchase transaction.    Remarkably, Oak Investment Partners' COO, Grace Ames, conceded in prior testimony that the Oak Defendants had no procedures in place for confirming whether an accurate exchange rate was used in a transaction.

192.    Ahmed's misconduct while an agent of the Oak Entities commenced soon after he arrived in 2004, when he caused one Oak Investment Partners portfolio company to pay a

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM   INDEX NO. 656450/2017

NYSCEF DOC. NO. 2   RECEIVED NYSCEF: 10/18/2017

$650,000 "management fee" directly to an Ahmed-owned bank account.  In July 2006, Ahmed transferred $3 million from Oak Investment Partners IX, LP on account of advisory services that the fund allegedly owed to an investment bank.  Oak Investment Partners wired the money at Ahmed's request even though the actual invoice from the investment bank was only $1.2 million. Ahmed transferred the balance of $1.8 million into his personal account.

193.    Thereafter, Ahmed obtained a payment from Oak Investment Partners for $6.6 million to allegedly cover capital gains taxes that Ahmed suggested were due to the same Oak Investment Partners fund.    Without  reviewing  a  tax  return  or  requesting  supporting documentation, Oak Investment Partners obliged and transferred Ahmed $6.6 million, which he promptly deposited into his personal bank account.

194.    Presumably  because  it  was  so  easy  to  obtain  monies  from  Oak Investment Partners given its lack of controls and supervision, just seven months later, Ahmed told Oak Investment Partners that the very same Oak Investment Partners fund was obligated to reimburse $800,000 in transaction fees owed to a foreign tax authority.  Oak Investment Partners blindly wired the $800,000, which Ahmed again deposited into his personal bank account.

195.    More brazenly, Ahmed recommended that Oak Investment Partners purchase 20 million shares of a company for a total price of 17 million Euros.  Ahmed claimed that the conversion rate made this investment valued at $22.1 million, even though the true exchange rate that was publicly available to Oak Investment Partners resulted in a purchase price of $20.74 million.  Ahmed instructed Oak Investment Partners XI, LP to make two wire payments, one to the company's account for $20.74 million and the other to an account held by Ahmed "doing business as" the company for the balance of $1.36 million.  Oak Investment Partners never

- 53 -

INDEX NO. 656450/2017
RECEIVED NYSCEF: 10/18/2017

examined the payee bank account to question why the account was titled in such a way and why the payment needed to be split.

196.    There were numerous other instances in which a company owed an Oak Investment Partners fund dividend payments that were diverted to Ahmed's personal bank accounts instead of the Oak Investment Partners fund, as set forth in the Second Amended Complaint (Dkt. No. 208) filed by the SEC in case number 3:15-cv-00675 pending in the United States District Court for the District of Connecticut.

197.    Insufficient reconciling of terms of investments, if any, was performed by the Oak Defendants, including post-transfer confirmation of receipts of funds.

198.    Similarly, the "basis of trust that's required" among partners, according to Oak Investment Partners' COO, did not relieve the Oak Defendants of their obligations to supervise Ahmed.  Even a basic level of due diligence would have revealed Ahmed's misconduct.  As an example, Ahmed, through Oak Investment Partners, invested $20 million for a $2 million stake in a Hong Kong-based online retailer.  Ahmed, according to the government, pocketed the $18 million difference.  Certain Oak Individual Partners later testified that they did not learn of the actual $2 million sale price until after Ahmed's arrest, even though the seller disclosed the actual sale price in a news release contemporaneous with the transaction.

199.    Additionally, Ahmed did not hide that he purchased a $9.6 million residence in Greenwich, and a luxury condominium in New York for approximately $8.6 million.

200.    In 2014, Ahmed brought a supplemental investment to Oak Investment Partners to follow its $25 million investment in the form of a proposed purchase of Choxi stock from an entity called I-Cubed Domains LLC.  The Oak Fund paid $7.5 million to I-Cubed to buy its Choxi shares that I-Cubed purchased for $2 million.  Had the Oak Defendants done a minimal

- 54 -

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM
NYSCEF DOC. NO. 2

INDEX NO. 656450/2017
RECEIVED NYSCEF: 10/18/2017

level of investigation, it would have determined that the entity from which it bought the additional $7.5 million in Choxi shares was owned by Ahmed.

201.    Oak Investment Partners acknowledged that Ahmed circumvented its internal controls and that it took steps post-facto to enhance them.  Remarkably, having turned a blind eye to Ahmed's misconduct by failing to exercise any diligence over their agent, or put in place reasonable internal controls and checks and balances so that the Oak Defendants would be in a position to uncover misconduct on the part of Ahmed, Oak Investment Partners had lobbied in 2009 against stricter oversight and greater accountability of venture limited partnerships, part of an effort to keep venture funds from being categorized as potentially systemic risks.  Such stricter oversight and greater accountability would have uncovered Ahmed's misconduct.

202.    The Oak Defendants knew or reasonably should have known with the exercise of basic due diligence and implementation of internal controls of Ahmed's propensity for misconduct prior to the Series B investment by NMR because, as detailed herein, Ahmed had been engaged in misconduct well-prior to the misconduct pertaining to Choxi.  Had the Oak Defendants put in place and adhered to reasonable internal controls and checks and balances, the misconduct alleged in this Count that pre-dated the Series B investment by NMR would have been discovered.

203.    Additionally, in light of the ease with which Ahmed's misconduct could have been uncovered, including through confirming accurate exchange rates, professional fees, dividend amounts owed to Oak Investment Partners, and purported tax obligations, the transferees of wire payments made by Oak Investment Partners, and the purchase prices involving transactions that were widely publicly reported, the Oak Defendants were in a position to have known and thus should have known that Ahmed was engaging in fraudulent transactions,

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM

NYSCEF DOC. NO. 2

INDEX NO. 656450/2017

RECEIVED NYSCEF: 10/18/2017

and had a propensity for doing so in light of the number of improprieties belatedly uncovered and the fact that the misconduct was taking place utilizing Oak Investment Partners' funds, bank accounts, information systems and portfolio companies.

204.    Ahmed and the Oak Defendants had a special relationship with NMR and its representatives in that Ahmed and the Oak Defendants held unique and special expertise in the e-commerce industry and related investment transactions that was relied upon by NMR and its representatives.  In addition, Ahmed and the Oak Defendants had a special relationship because Ahmed and the Oak Entities led the Series A and Series B investment transactions and NMR placed them in a position of trust and confidence in that position, and deferred to the Oak Defendants' lead role in arranging and negotiating those transactions.  Moreover, there existed a duty to disclose accurate and material information to NMR because Ahmed, as agent of the Oak Entities, had superior knowledge of essential facts that were not readily available to NMR and its representatives that rendered the nondisclosure inherently unfair, including, but not limited to, that Oak Investment Partners did not require the supplemental investment in Series A, that Ahmed was planning to personally benefit from the Series B proceeds through a repurchase agreement of shares believed to be held by "Giosis" between  Giosis and Choxi, that Oak Investment Partners did not authorize Ahmed to have a personal interest or beneficial interest in Choxi, and that Ahmed misappropriated monies from Giosis without its authorization.

205.    Ahmed, as agent of the Oak Entities also had a duty owed to NMR because Ahmed knew NMR and its representatives were operating on mistaken knowledge, and further because he made partial statements of fact that were false, deceptive and misleading without disclosure of the entire facts.  Thus, Ahmed and the Oak Entities had a duty to exercise

- 56 -

INDEX NO. 656450/2017
RECEIVED NYSCEF: 10/18/2017

reasonable care to impart complete, correct, and accurate information to NMR and its representatives.

206.    The Oak Entities failed to exercise even slight care or diligence in the supervision of Ahmed and the establishment of internal controls over his activities and the activities of the Oak Entities.   The Oak Entities, having a duty of care, failed to supervise and control their employee, agent, partner, and Managing Member, and then grossly failed to exercise due care, and acted in reckless disregard of their duties.

207.    With respect to the misconduct arising from acts and omissions alleged herein, at all relevant times, Ahmed was an employee and agent of the Oak Entities and under their control, supervision, and management.

208.    Having acted in a reckless and grossly negligent manner in failing to properly supervise and control the actions of its agent, who the Oak Entities imbued with authority to act on their behalf in connection with the transactions with NMR, the Oak Entities' acts and omissions constituted a breach of the duty of care owed to NMR.

209.    As a direct, substantial and proximate result of NMR's and its representative's reasonable and justifiable reliance on Ahmed's representations and omissions of material facts that were caused by the Oak Entities' grossly negligent supervision of Ahmed, NMR suffered damages, including the $15 million investment amount, lost accretion of value of Choxi and the share value of Choxi, and lost use of the investment funds.

## SIXTH CAUSE OF ACTION

**General Partnership Liability Pursuant to Common Law and New York's Partnership Law § 27 against Oak Fund GP and Oak Individual Partners**

210.    Plaintiff repeats and alleges the allegations set forth in paragraphs 1 through 209 as if fully set forth herein.

- 57 -

INDEX NO. 656450/2017

NYSCEF DOC. NO. 2

RECEIVED NYSCEF: 10/18/2017

211.    At all times relevant, the Oak Individual Partners publicly held themselves out to be partners of one another, partners of Ahmed, and partners of the Oak Entities, and collectively operated as a partnership.

212.    Specifically, Oak Investment Partners, its funds, managers, and partners collectively marketed and publicly identified themselves as a partnership using the name "Oak Investment Partners" and highlighted on its website, in press releases, and in marketing materials that it operated as a collective group of partners.  Included under the Oak Investment Partners umbrella are the Oak Individual Partners (which, at all times relevant, included Ahmed), Oak Corp., and its affiliates, which in varying degrees provide the investment vehicles (*e.g.*, the Oak Fund) by way of limited partnerships, the limited liability companies which act as investment managers of such limited partnerships, and among other things, provide staffing and managerial oversight.  In electronic communications, Oak Investment Partners utilized an email sender address of "Oak General Partners," to further bolster the existence of a partnership.

213.    Ahmed, by virtue of his misconduct, is liable to NMR.  Ahmed was acting as an agent of the Oak Fund, Oak Fund GP, Oak Corp. and the Oak group of partners.  Oak Fund GP is the general partner of the Oak Fund.  As Ahmed's partners, the Oak Individual Partners are liable to NMR for the actions of their partner, and Oak Fund GP, as general partner, is liable for the conduct of the Oak Fund and its agent, Ahmed.

214.    Ahmed, Glassmeyer, Lamont, Carano, and Harman, who collectively operated as "Oak Investment Partners," are estopped from denying the liabilities created by their partnership.  As a result, the Oak Individual Partners, individually, have personal liability for the debts of the other Oak Individual Partners, including Ahmed, as well as the Oak Investment Partners partnership, including liability to NMR which suffered damages, encompassing the $15 million

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM          INDEX NO. 656450/2017
NYSCEF DOC. NO. 2                                         RECEIVED NYSCEF: 10/18/2017

investment amount, lost accretion of value of Choxi and the share value of Choxi, and lost use of the investment funds.

WHEREFORE, Plaintiff, NMR, requests that judgment be entered against Defendants as follows:

(i)     On the First Cause of Action, awarding damages, including the $15 million investment amount, lost accretion of value of Choxi and the share value of Choxi, and lost use of the investment funds in an amount not less than $20,640,000 million to be determined at trial, plus punitive damages in an amount not less than treble the compensatory damages as determined by the Court, against Ahmed and the Oak Entities, jointly and severally;

(ii)    On the Second Cause of Action, rescinding the terms of the Series B Preferred Stock Purchase Agreement and awarding damages, including the $15 million investment amount, lost accretion of value of Choxi and the share value of Choxi, and lost use of the investment funds in an amount not less than $20,640,000 million to be determined at trial, plus punitive damages in an amount not less than treble the compensatory damages as determined by the Court, against Ahmed and the Oak Entities, jointly and severally;

(iii)   On the Third Cause of Action, awarding damages, including the $15 million investment amount, lost accretion of value of Choxi and the share value of Choxi, and lost use of the investment funds in an amount not less than $20,640,000 million to be determined at trial against Ahmed and the Oak Entities, jointly and severally;

(iv)    On the Fourth Cause of Action, awarding damages, including the $15 million investment amount, lost accretion of value of Choxi and the share value of Choxi, and lost use of the investment funds in an amount not less than $20,640,000 million to be determined at trial against Ahmed and the Oak Entities, jointly and severally;

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM   INDEX NO. 656450/2017
NYSCEF DOC. NO. 2                                    RECEIVED NYSCEF: 10/18/2017

(v)     On the Fifth Cause of Action, awarding damages, including the $15 million investment amount, lost accretion of value of Choxi and the share value of Choxi, and lost use of the investment funds in an amount not less than $20,640,000 million to be determined at trial against the Oak Entities, jointly and severally;

(vi)    On the Sixth Cause of Action, awarding damages, including the $15 million investment amount, lost accretion of value of Choxi and the share value of Choxi, and lost use of the investment funds in an amount not less than $20,640,000 million to be determined at trial, plus punitive damages in an amount not less than treble the compensatory damages as determined by the Court, against the Oak Individual Partners, jointly and severally;

(vii)   Awarding punitive damages, in an amount to be determined at trial; and

(viii)  Awarding such other and further relief as the Court deems just and proper.

Dated: New York, New York
       October 18, 2017

                            HALPERIN BATTAGLIA BENZIJA, LLP

                            By:_____/s/_____
                               Scott A. Ziluck, Esquire
                               40 Wall Street, 37th Floor
                               New York, NY 10005
                               sziluck@halperinlaw.net
                               Tel: (212) 765-9100
                               Fax: (212) 765-0964

Of Counsel:

WHITEFORD, TAYLOR & PRESTON L.L.P
Kevin G. Hroblak, Esquire
Edward M. Buxbaum, Esquire
Ioana Kastellorizios, Esquire
Aaron Nichols, Esquire
Seven Saint Paul Street
Baltimore, Maryland 21202
khroblak@wtplaw.com
Tel: (410) 347-8700
Fax: (410) 223-4305
*2262313*

- 60 -

FILED: NEW YORK COUNTY CLERK 10/18/2017 05:27 PM   INDEX NO. 656450/2017
NYSCEF DOC. NO. 2                                      RECEIVED NYSCEF: 10/18/2017

## VERIFICATION

STATE OF OHIO        )
                        ) SS.:
COUNTY OF Cuyahoga  )

        DANIEL HARRINGTON, being duly sworn, deposes and states:

        I am the manager of plaintiff NMR e-tailing LLC.  I have read the foregoing Verified Complaint and know the contents thereof; that the same is true to my knowledge, except as to the matters stated to be alleged upon information and belief, and that as to those matters I believe them to be true.  The grounds of my belief as to matters not stated to be upon my knowledge are based upon a review of documents, correspondence, communications with members of NMR e-tailing LLC, and other relevant data in the files of NMR e-tailing LLC.

                                                        DANIEL HARRINGTON

Sworn to before me this
18th day of October 2017

Notary Public

BETH LENE BAKER
NOTARY PUBLIC
STATE OF OHIO
Recorded in
Cuyahoga County
My Comm. Exp. 5/16/2022