**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>IFTIKAR AHMED<br><br>Defendant, and<br>and<br><br>IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUNITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends, IFTIKAR and SHALINI AHMED, his parents; I.I. 3, a minor child, by and through his next friends, IFTIKAR and SHALINI AHMED, his parents<br><br>Relief Defendants. | Civil Action No.<br>3:15-cv-675-JBA |

**REPORT OF RECEIVER**

Jed Horwitt, Esq. (the "Receiver"), in his capacity as the Court-appointed receiver of the "Receivership Estate," as that term is defined in the Appointment Order,[1] through his undersigned counsel, Zeisler & Zeisler, P.C., respectfully provides, pursuant to Paragraph 29 of the Order Appointing Receiver [Doc. No. 1070] (the "Appointment Order"), the following report (the "Report") containing the Receiver's proposal for the liquidation of assets of the Receivership Estate (the "Receivership Assets") to continue to secure pending appeal the judgment entered by

[1] Unless expressly defined otherwise in this report, the definitions of terms set forth in the Appointment Order are incorporated herein by reference.

this Court as the same has been modified and amended (the "Judgment"), including "interest and gains" realized on the disgorged assets. The Report also proposes to establish a reserve for the potential claims against and anticipated expenses arising from the Receivership Estate. Appended hereto as **Exhibit A** is the Receiver's proposed plan for the liquidation of Receivership Assets (the "Plan of Liquidation"). The Plan of Liquidation sets forth the following: (i) the specific Receivership Assets proposed to be liquidated; (ii) a calculation of the interest and gains on disgorged assets and of post-judgment interest; and (iii) the Receiver's present assessment of what assets are not needed to secure the Judgment. The Receiver's proposed Order Authorizing and Establishing Procedures Concerning Sale of Real Estate and Ownership Interests in the Receivership Estate (the "Liquidation Order") incorporating his proposal set forth herein is submitted herewith for this Court's consideration.

## **Introduction**

Following the entry of the Judgment in favor of the United States Securities and Exchange Commission (the "Commission"), the Receiver was appointed on December 20, 2018, pursuant to the Appointment Order. The Receiver was appointed to undertake the valuation, liquidation, and (if necessary and appropriate) distribution of Receivership Assets in the Receivership Estate that could be used to satisfy the Judgment. Since the Receiver's appointment, he and his counsel have provided all entities known to the Receiver to have possession, custody, or control of any Receivership Assets (as well as any entities known to the Receiver to have information concerning such assets) with the Appointment Order along with a cover letter highlighting the most pertinent provisions therein and providing guidance for compliance therewith. The Receiver has collected information and documentation from the noticed entities, including account statements, contracts, operating agreements, and other materials, related to, *inter alia*, the present and historical value and current liquidity of the Receivership Assets.

Paragraph 29 of the Appointment Order directs the Receiver to submit a report reflecting:

> (i) the existence, value, and location of assets of the Receivership Funds and all other assets of the Receivership Estate which are liquid or could be liquidated with relative ease, including but not limited to publicly traded securities and brokerage accounts;
>
> (ii) the Receiver's proposal for securing the judgment using additional assets of the Receivership Estate, including the Receiver's recommendations as to which additional assets should be valued for possible liquidation and placement into a Court Registry Investment System ("CRIS") account and the order in which the Receiver proposes to liquidate such assets; and
>
> (iii) the Receiver's estimate regarding the dollar amount which should ultimately be placed into such account to fully secure the judgment, taking into consideration the amount of the judgment in this case, the costs of the receivership and administration of the Receivership Estate, and any other relevant factors.

(Appointment Order ¶ 29.)

Having analyzed all information received from entities with knowledge of, or in the possession, custody, or control of, Receivership Assets, pursuant to paragraph 29 of the Appointment Order, the Receiver now submits this Report and the accompanying Plan of Liquidation to this honorable Court for its consideration. As explained more fully herein, the Receiver presently estimates that the amount required to fully secure the Judgment and potential claims against and anticipated expenses of the Receivership Estate (collectively, the "Required Amount") will equal $70,520,834.69;[2] provided, however, that this sum is subject to adjustment before the final Required Amount is determined by this Court. This amount reflects the Receiver's best estimate at this time; the actual Required Amount cannot be finally determined until sufficient assets have been liquidated and items such as interest and gains on the "Disgorgement Assets" (as

[2] As discussed below in Part V(d), no allocation has been made in this figure for potential tax liabilities, which is the subject of the Motion for Advice for Tax Purposes Concerning Precise Scope of Receivership that the Receiver intends to file shortly after the submission of this Report.

defined below) have been fixed as of the date of liquidation.

In summary, to obtain the proceeds necessary to secure the Required Amount based on the Receiver's present analysis and estimates, the Receiver proposes (as set forth in detail in the Plan of Liquidation) to liquidate a significant majority of the bank and brokerage accounts within the Receivership Estate as such assets are liquid or could be liquidated easily. The Receiver further proposes to liquidate the two residential condominiums located at 530 Park Avenue (hereinafter "Apartment 12A" and "Apartment 12F"), which also constitute Receivership Assets.

Because the Required Amount will continue to fluctuate until the liquidation is complete and because other potential claims against the Receivership Estate may need to be addressed, the Receiver proposes a two-stage process to properly secure the Judgment and receivership-related claims and expenses. That two-stage process would be as follows: (i) this Court first provide its authority for the Receiver to liquidate the identified Receivership Assets in a manner determined by this Court and subject to its resolution of various issues identified herein by the Receiver; and (ii) that this Court hold a subsequent hearing where the Receiver will provide the Court and all interested parties with a report on the amounts actually realized from such liquidation, his final calculation of the Required Amount for this Court's approval, and the status, priority, and estimation of any claims against the Receivership Estate.

## I. The Existence, Value, and Location of Assets of the Receivership Estate that are Liquid or Could be Liquidated Easily.

The following Receivership Assets are either liquid or could be liquidated with relative ease.[3]

[3] All amounts stated here have been confirmed in writing directly with the corresponding financial institution or otherwise. The dollar values for the underlying securities held in many of the accounts set forth below reflect the currently available information that the Receiver possesses. Such dollar values as well as other balances stated are subject to modification until liquidation as a result of market value changes, deposits from privately held interests and rental properties, and other discrete transactions.

| SEC No.[4] | Asset & Account No. | Description[5] | Value |
|---|---|---|---|
| 1 | E*Trade x6818 / Receiver's Account[6] | Cash | $904,402.82 |
| 2 | HSBC: x2984 | Cash | $9.50 |
| 3 | Northern Trust: x5218 | Cash | $5,359,620.19 |
| 5 | Northern Trust: x0901 | Cash | $ 0.02 |
| 6 | Northern Trust: x5226[7] | Cash | $132,426.35 |
| 7 | Northern Trust: x5234[8] | Cash | $2,019,046.80 |
| 8 | Northern Trust: x3781 | Cash | $81,056.74 |
| 9 | Northern Trust: x7193 | 30.5% money market, 69.5% equity | $892,014.06 |
| 10 | TD Bank: x5279 | Cash | $19,378.86 |
| 11 | TD Bank: x8551 | Cash | $8,193.19 |
| 12 | Fidelity: x8133[9] | Cash | $0.31 |
| 13 | Fidelity: x7417[10] | Cash | $2.83 |
| 14 | Fidelity: x9637 | Cash | $831.98 |
| 15 | Circle Bitcoin Wallet | 27.60520050 Bitcoin | $138,273.07 |
| 25 | MetLife Insurance Policy (Iftikar Ahmed) | Surrender value of insurance policy | $1,321,218.40 |
| 36 | Oak Distributions[11] | Cash | $947,815.00 |
| 40 | Bank of America: x9566 | Cash | $4,184.54 |
| 41 | Bank of America: x0482 | Cash | $221,043.68 |
| 42 | Bank of America: x3754 | Cash | $171,322.46 |
| 43 | Chase Bank: x9065[12] | Cash | $20,610.77 |

[4] This number corresponds to the numbers designated in the schedule of these assets that appears in the Court's docket, Doc. No. 888-1.

[5] Where provided, cash and equity percentages are approximate.

[6] On January 15, 2019, the Receiver transferred $943,048.36 from E*Trade x6818 (SEC No. 1) to the Receiver's deposit account created pursuant to Paragraph 26 of the Order (the "Receiver's Account") to fund routine expenses of Receivership Estate assets, such as property taxes, insurance premiums, and utility bills. While the funds held in the Receiver's Account may be used to satisfy the judgment, should it be affirmed on appeal, the precise amount in the Receiver's Account may decrease as assets in the Receivership Estate continue to incur routine expenses in the time period before such assets are liquidated or released from the Receivership Estate.

[7] Representing 50% of the actual cash balance corresponding to the Defendant's 50% interest in The Essell Farms LLC.

[8] Representing 60% of the actual cash balance corresponding to the Defendant's 60% interest in The Essell Group LLC.

[9] Representing 50% of the actual cash balance corresponding to the Defendant's 50% interest in The Essell Farms LLC.

[10] Representing 60% of the actual cash balance corresponding to the Defendant's 60% interest in The Essell Group LLC.

[11] This represents distributions from Defendant's vested, non-forfeited interests.

[12] The amount of $10,500 was withdrawn from Chase Bank x9065 on May 8, 2015, shortly after the temporary restraining order was issued in this matter. The Receiver has not yet determined the present

| 44 | Chase Bank: x9001 | Cash | $14,370.82 |
|---|---|---|---|
| 45 | Northern Trust: x5188 | Cash | $451,673.37 |
| 46 | Northern Trust: x3934 | 99.4% equity, .6% cash/short term investments | $11,260,948.37 |
| 47 | Northern Trust: x3935 | 88.8% equity, 4.4% fixed income, 6.8% cash/short term investments | $12,084.80 |
| 48 | Northern Trust: x0895 | 99.4% equity, .6% cash/short term investments | $3,137,663.10 |
| 57, 59 | Gold bars and coins in safe deposit box 1332 | 333.7805 ozt of gold | $432,269.11 |
| 61 | Bank of America: x4199 | Cash | $2,442.44 |
| 62 | Bank of America: x3831 | Cash | $79,191.65 |
| 65 | Bank of America: x7632 | Cash | $121,130.34 |
| 67 | Bank of America: x8384 | Cash | $2,540.00 |
| 69 | Aldrich Capital | Cash | $3,078,631.27 |
| 73 | Bank Check | Cash-equivalent | $14,560.00 |
| 71 | TD Ameritrade: x7686 | 38.2% cash, 61.8% securities | $6,623,735.83 |
| 74 | Fidelity: x8965 | 38% cash, 62% securities | $9,597,626.72 |
| 75 | Fidelity: x7540 | 70% cash, 30% securities | $13,639,043.65 |
| 76 | Fidelity: x5070 | Cash-equivalent | $5,950.87 |
| 77 | Fidelity: x5760 | Cash-equivalent | $390.79 |
| 78 | Pershing: x0166 | 76% cash, 24% bonds | $885,594.16 |
| 80 | Cash (Held by HSC LLP) | Cash | $55,223.93 |
| 81 | Cash (Held by Murtha Cullina LLP) | Cash | $25,000.00 |
| 86 | Fidelity: x1895 | Cash | $95,175.34 |
| 87 | Fidelity: x8036 | 98% cash, 2% securities | $95,663.51 |
| 88 | Fidelity: x9441 | Cash | $85,096.13 |
| 89 | TD Ameritrade: x7666 | 22% cash, 78% stock | $1,082,880.22 |
| 90 | TD Ameritrade: x7674 | 12.1% cash, 87.9% stock | $1,203,929.35 |

location or the present recoverability of these funds. Given the assets that remain in the Receivership Estate and relatively *de minimus* amount at issue, the Receiver submits that further investigation into this issue is not necessary at this time.

| | | | |
|---|---|---|---|
| 91 | TD Ameritrade: x7700 | 16.3% cash, 83.7% stock | $331,210.19 |
| 92 | Bank of America Trust: x4104 | Cash | $5,002.81 |
| 93 | Bank of America Trust: x0070 | Cash | $5,002.83 |
| 94 | Bank of America Trust: x5699 | Cash | $5,004.04 |
| | | **TOTAL** | $64,590,487.21 |

As explained below in Sections II and III, the Receiver does not propose to liquidate all of the above-listed accounts. The Receiver proposes to liquidate Apartment 12A and Apartment 12F to provide additional proceeds to secure the Judgment pending appeal and obtain other necessary amounts. At this time, neither party has objected to the sale of these two properties. The likely aggregate sale proceeds to be realized from the sale of Apartment 12A and Apartment 12F will allow the Receiver to avoid liquidating other assets, such as the UTMA accounts (SEC Nos. 86-94), and a substantial portion of the Iftikar A. Ahmed Family Trust account (SEC No. 71).

## II. Additional Assets of the Receivership Estate that Should be Valued and Liquidated, and the Proposed Order of Liquidation.

In addition to various bank and brokerage accounts, the following two assets should be liquidated as soon as possible to secure the judgment and associated expenses.

| SEC No. | Asset | Description | Contemplated Listing Price[13] |
|---|---|---|---|
| 63 | Apt. 12A, 530 Park Ave., New York, NY | Real Estate | $8,200,000.00 |
| 66 | Apt. 12F, 530 Park Ave., New York, NY | Real Estate | $8,000,000.00 |

The Receiver does not believe that a formal appraisal providing a pre-listing/pre-sale valuation of these two assets is necessary or in the interest of the Receivership Estate because: (i) their valuation range is readily determinable; (ii) no party has objected to their sale as of the date

[13] These contemplated listing prices are based upon the Receiver's knowledge and information at this time. The actual listing price will only be determined after consultation with the Receiver's real estate broker, if and when employed with this Court's authority, and after further consultation with the Commission, the Defendant and the Relief Defendants.

of this Report; and (iii) and the Receiver anticipates employing a real estate broker to advise as to the initial listing price and marketing strategy to realize fair market value. Furthermore, the Judgment and receivership-associated claims and expenses will only be safely secured upon the actual sale of Apartment 12A and Apartment 12F. Thus, a pre-listing/pre-sale valuation of these assets will add little to no benefit and will delay the eventual sales, while imposing an unnecessary risk of market loss and cost to the Receivership Estate.

The Receiver has stated above his contemplated listing price for each of the apartments. Obviously, the net value ultimately realized from the sale of these Receivership Assets may be different (reflecting the actual sale price and the costs of sale).

The Receiver intends to file promptly after the submission of this report an Application to Employ FTI Consulting, Inc. The Receiver plans to request approval from the Court to employ FTI Consulting, Inc. ("FTI"), to provide, *inter alia*, real estate broker services in connection with the sale of Apartment 12A and Apartment 12F. The Receiver proposes to be authorized to list for sale, market and solicit offers to purchase the apartments. The Receiver anticipates entering into, subject to this Court's approval, a Purchase and Sale Agreement with the person who, in the Receiver's opinion, has offered the highest and best offer under the circumstances including, but not limited to, the terms and conditions offered, and the duration of the marketing efforts up until that time. The Receiver would thereafter file, pursuant to the Appointment Order and to satisfy the requirements of 28 U.S.C. §§ 2001, 2002, and any other applicable statutes, a motion to obtain this Court's authority to sell such apartment in accordance with the Purchase and Sale Agreement.

## III. Estimate of Dollar Amount Needed to Secure the Judgment, the Cost of the Receivership, and the Administration of the Receivership Estate.

The dollar amount needed to secure the Judgment and other required amounts depends on a number of factors, each of which is addressed by the Receiver below. Once again, the amounts

stated below are estimates based on currently available information. The actual amounts necessary to calculate the final Required Amount will not be known until all necessary assets have been liquidated and the proceeds have been deposited into the CRIS account.

a. Amount Needed to Secure the Judgment

i. *Principal Disgorgement Award*

Pursuant to Judgment, the Defendant is liable to the Commission for $41,920,639 representing the principal[14] amount to be disgorged. As described in the Judgment, this disgorgement amount represents the "profits gained as a result of the conduct alleged in the Second Amended Complaint that occurred within five years of the initiation of this case." (Amended Final Judgment Against Defendant and Relief Defendants [Doc. No. 1054], at 4.)

ii. *Interest and Gains on Disgorgement Amount*

This Court further ordered the disgorgement of "the actual returns on the frozen assets." (*Id.*, at 14.) As stated by the Second Circuit in *SEC v. Razmilovic*, 738 F.3d 14, 31 (2d Cir. 2013), the "amount of disgorgement ordered need only be a reasonable approximation of the profits causally related to the fraud." Recognizing the difficulties inherit in in calculating the profits to be disgorged, the Second Circuit further stated that "[s]o long as the measure of disgorgement is reasonable, any risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty." *Id*. (citations and internal quotation marks omitted).

In accordance with the Judgment and applicable law, the Receiver identified—to the greatest extent possible—the assets which constituted the proceeds of the Defendant's fraud so that the Receiver could then calculate the interest and gains realized upon such proceeds. Shortly after the Receiver's appointment, the Receiver asked and the Commission advised the Receiver

[14] Although, admittedly, the term "principal" does not precisely fit, it conveys the meaning sought which is the amount to be disgorged other than interest and gains which this Court in the Amended Final Judgment addressed separately and, accordingly, the Receiver addresses separately below.

that, based upon its investigation, the funds representing the proceeds of the Defendant's fraudulent conduct could be traced primarily to the following assets:

(i) Apartment 12A (SEC No. 63);

(ii) Apartment 12F (SEC No. 64);

(iii) Fidelity x8965 (SEC No. 74);

(iv) Fidelity x7540 (SEC No. 75), and

(v) A portion of Northern Trust x3934 (SEC No. 46).

(Collectively, the "Disgorgement Assets"). The Receiver then presented through counsel this list of Disgorgement Assets to the Defendant and the Relief Defendants and asked whether they agreed with such characterization to avoid the time and expense of independently confirming the Commission's determination. As this Court held previously, consistent with applicable Second Circuit authority, the Commission is not required to engage in a tracing analysis. (Ruling on Plaintiff's Motion for Remedies and Judgment [Doc. No. 955], at 19, 24 n. 20.)

Moreover, in other contexts, this Court had already found that the Fidelity x7540 was funded by "the proceeds of the Defendant's Company B fraud," *SEC v. Ahmed*, 343 F. Sup. 3d 16, 34 n.19 (D. Conn. 2018), and that funds derived from Defendant's activity concerning Company C were deposited into Fidelity x8965, also known as the GRAT account. (Ruling on All Parties' Motions for Summary Judgment on Liability [Doc. No. 835], at 13). (*See also* Ruling and Order Granting Preliminary Injunction [Doc. No. 113], at 10-14.)

The Receiver has not independently verified that the Disgorgement Assets constitute the proceeds of the fraudulently obtained funds which are the subject of this civil action. Despite repeated requests and extensive good faith discussions with the Defendant and Relief Defendants' counsel over the course of the past three and a half months, the Defendant and Relief Defendants have not, as of the submission of this Report, responded to the Receiver's proposal with respect to

the identity of the assets which constitute the proceeds of the fraudulent conduct.

Should this Court so direct, the Receiver shall promptly proceed to independently verify the position that the Disgorgement Assets primarily constitute the traceable proceeds of the Defendant's fraudulent conduct. If required to do so, the Receiver intends to engage FTI to provide forensic accounting services, as further discussed in the Application to Employ FTI Consulting, Inc. which the Receiver intends to file shortly after the filing of this Report.

Based upon the premise that that the Disgorgements Assets constitute the proceeds of the Defendant's fraud, the Receiver has calculated that the following interest and gains (as of approximately the submission of this Report) have been realized upon the Disgorgement Assets

| SEC No. | Asset & Description | Appreciation | Note |
|---|---|---|---|
| 63 | Apt. 12A, 530 Park Ave., New York, NY | $0 | Although the actual amount realized from the sale of this asset will not be known until the sale closes, this apartment may sell for less than its original purchase price and, thus, no interest and gains are attributable to this asset. *See generally* Doc. No. 955; *SEC v. Razmilovic*, 738 F.3d 14 (2d Cir. 2013); *SEC v. Tavella*, 77 F. Sup. 3d 353, 361 (S.D.N.Y. 2015). |
| n/a | Rent received from Apt. 12A | $923,894.62 | Apt. 12A rent through to 9/30/18, net of sublet fee, repairs, common charges, insurance, and taxes. Note: this amount is subject to further adjustment, pending further analysis of bank records. |
| 66 | Apt. 12F, 530 Park Ave., New York, NY | $0 | Although the actual amount realized from the sale of this asset will not be known until the sale |

| | | | |
|---|---|---|---|
| | | | closes, this apartment may sell for less than its original purchase price and, thus, no interest and gains are attributable to this asset. *See generally* Doc. No. 955; *SEC v. Razmilovic*, 738 F.3d 14 (2d Cir. 2013); *SEC v. Tavella*, 77 F. Sup. 3d 353, 361 (S.D.N.Y. 2015). |
| n/a | Rent received from Apt. 12F | $430,821.90 | Apt. 12F rent through to 2/15/19, net of sublet fee, legal (renting) fees, common charges, building mgmt. fee, real estate cleaning fee, insurance, and taxes. Note: this amount is subject to further adjustment, pending further analysis of bank records. |
| 74 | Fidelity: x8965 | $1,156,236.55 | Appreciation received from freeze date (excluding court-approved distributions). |
| n/a | Court-approved distributions from x8965 | $202,443.31 | No interest applied to this amount. |
| 75 | Fidelity: x7540 | $807,933.62 | Appreciation received from freeze date (excluding court-approved distributions and Goldman Sachs shares not subject to asset freeze and dividends earned on said shares). |
| n/a | Court-approved distributions from x7540 | $525,467.74 | No interest applied to this amount. |
| | **TOTAL** | $4,046,797.74 | |

Therefore, the Receiver estimates that the Defendant must additionally disgorge $4,046,797.74, representing the interest and gains earned upon the Disgorgement Assets from the date of the freeze order until approximately the date of this Report. This amount will need to be revised to account for subsequent accruals of interest and gains and expenses incurred through the actual date of

liquidation.

iii. *Pre-Judgment Interest*

Pursuant to the Judgment, the Defendant is liable for $1,491,064.01 in pre-judgment interest.

iv. *Penalty Amount*

Pursuant to the Judgment, the Defendant is liable for a penalty of $21,000,000.00.

v. *Post-Judgment Interest*

Pursuant to 28 U.S.C. § 1961 and the 1-year average maturity Treasury yield for the week prior to September 27, 2018, (the "Judgment Date") the applicable post-judgment interest rate is 2.58%. Post-judgment interest is to be applied to the full Judgment. *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) ("The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered"); *see also SEC v. Forest Resources Management Corp.*, 2010 U.S. Dist. LEXIS 50203, at *6 n.2 (S.D.N.Y. May 18, 2010) (applying post-judgment interest to disgorgement and pre-judgment interest amounts).

It is the Receiver's understanding that the Commission's general practice is not to seek post-judgment interest on a judgment to the extent funds have been deposited by a defendant on account of such judgment into the CRIS account. Such principle appears to the Receiver to be appropriate, fair and equitable. Accordingly, the Receiver does not propose that post-judgment interest should accrue on amounts that have been deposited into the CRIS accounts toward the Judgment.

The Plan of Liquidation includes an estimate of the post-judgment interest from the Judgment Date to July 1, 2019, the date by which the Receiver estimates the significant majority of the liquid or easily liquidatable Receivership Assets can be sold and the proceeds of said sales deposited in the CRIS account. With respect to Apartment 12A and Apartment 12F, which will

likely take more time to liquidate, the Plan of Liquidation provides for post-judgment interest on the estimated proceeds of these assets to run from the Judgment Date to December 31, 2019. The precise amount of post-judgment interest to be paid will likely have to be adjusted based upon the actual date funds are actually deposited into the CRIS account.

In total, the Receiver estimates that $1,462,333.94 should be reserved to satisfy applicable post-judgment interest.

vi. *Required Amount to Secure Judgment*

In total, the Receiver estimates that the amount necessary to fully secure the judgment as of the submission of this Report equals approximately $70,520,834.69. This Required Amount is subject to further revision based on a number of factors, primarily as a result in fluctuations in the value of securities pre-liquidation, which would have the potential effect of increasing or decreasing the interest and returns on the disgorgement amount, as well as the ultimate sale price (and date) of the residential condominiums, which likewise may impact the interest and returns on the disgorgement amount and the amount needed to secure post-judgment interest.

b. Cost of Receivership and the Administration of the Receivership Estate

The Receiver estimates that, as of the submission of this Report, the total amount that should be reserved to secure the anticipated cost of the receivership and to administer the Receivership Estate should be $600,000.[15] The Receiver has taken into consideration the work performed and expenses incurred since the Court issued the Appointment Order, the remaining anticipated time and expense required to liquidate the assets in the Receiver's proposed Plan of Liquidation (set forth below), and an estimated amount of additional professional fees and

[15] This figure, which includes $500,000 in fees and expenses for the Receiver and his counsel, assumes minimal future contested litigation and motion practice in this receivership proceeding including concerning the Receiver's Report, Plan of Liquidation, and the liquidation process itself. This proposed reserve may need to be revised depending on the actual amount of fees and expenses incurred going forward.

expenses arising out of post-liquidation activity (including periodic reports to the Court and any other administrative activities that may arise).

The Receiver has also included, in his estimate, an amount to satisfy any unknown Receivership Estate expenses that may arise, primarily during the period between the ultimate approval of the Plan of Liquidation and when sufficient funds to secure the Judgment have been liquidated and placed in the CRIS account. This would include expenses incurred in managing Receivership Assets that require expenditures, such as the real estate, as well as for any Court-approved professional services (excluding real estate broker fees, which will be taken from the gross sale proceeds of the real estate, and potentially tax reporting and related fees, depending upon the Court determination regarding the Receiver's responsibility to prepare and file tax returns and to pay such taxes out of the Receivership Estate).

The proposed reserve amount would be held by the Receiver in the Receivership account established pursuant to paragraph 26 of the Appointment Order, rather than deposited into the CRIS account, subject to further Orders of this Court.

**IV. Proposed Plan of Liquidation**

The Receiver proposes to liquidate the particular assets in the Plan of Liquidation attached hereto as **Exhibit A** which the Receiver submits will result in sufficient funds being segregated to fully secure the Judgment and all estimated claims and anticipated expenses. The Receivership Assets selected for liquidation represent both the Disgorgement Assets and those assets that the Receiver has determined can be liquidated with the greatest speed and least expense thereby limiting the Receivership Estate's exposure to any further market risk or unnecessary cost of administration and liquidation. Material additional disclosures are provided in the column "Receiver's Notes" in **Exhibit A** to guide this Court and all parties-in-interest as to the Receiver's analysis.

All values stated in the Plan of Liquidation have been verified in writing by the corresponding financial institution or otherwise confirmed to the best of the Receiver's ability. Such values will need to be "trued-up" after the liquidation of each Receivership Asset to ensure that sufficient funds have been secured and to account for various factors including, but not limited to, market fluctuations and appropriate debits and credits.

## V. Additional Proposed Terms of Liquidation

To facilitate the appropriate, fair, and efficient liquidation of Receivership Assets and the payment of allowed claims and expenses, the Receiver further proposes to incorporate the following provisions into this Court's Liquidation Order authorizing the liquidation of the Receivership Assets.

a. Further Reporting by the Receiver and Post-Liquidation Finalization of the Required Amount

Pursuant to paragraph 30 of the Appointment Order, the Receiver respectfully proposes that the Court direct the Receiver to file an updated Report of Receiver within ninety (90) days of the entry of the Liquidation Order, in which the Receiver will: (i) update the Court and the parties on the progress of liquidation and the transfer of the proceeds realized to the CRIS account; (ii) provide an updated estimate as to the Required Amount, which will reflect the then-realized value of liquidated Receivership Assets and any associated changes to the post-judgment interest values and/or the amount to be appropriately awarded for interest and gains on Disgorgement Assets; (iii) report on the Receiver's analysis, conclusions and proposals with respect to any claims of any governmental agencies including any tax reporting related expenses and tax liabilities; (iv) any proposed modifications to the Liquidation Order that are necessary and appropriate; (v) a proposal from the Receiver regarding the next date when a meaningful further updated Report of Receiver should be filed; and, (vi) any other disclosures that the Court directs.

b. Authority to Make Transfers to the CRIS Account

To streamline the liquidation process, the Receiver respectfully proposes that the Liquidation Order grant the Receiver authority to transfer the proceeds of any Receivership Assets performed pursuant to the Liquidation Order to the CRIS account. Under such authority, the Receiver would transfer liquidation proceeds as soon as possible to the CRIS account following the liquidation of a Receivership Asset.

c. Asset Freeze to Remain in Place Until the Required Amount is in the CRIS Account

While the Receiver executes the Liquidation Order and deposits all liquidation proceeds into the CRIS account, the asset freeze should remain in full force and effect subject to further orders of this Court. This will provide additional security to the Commission should the Receivership Assets that are liquidated pursuant to the initial Liquidation Order be insufficient to fully secure the Required Amount.

d. Potential Claims Held by Governmental Agencies

This Report and the proposed Plan of Liquidation contain no allocation for any claim of a government or quasi-governmental agency against the Receivership Estate. Such potential claim(s) may also have priority over satisfaction of the Judgment in this matter. At this time, other than the potential tax reporting and payment liabilities discussed below, the Receiver does not know of any such claims. However, pursuant to 31 U.S.C. § 3713(b), the Receiver is *personally liable* for any "claim of the Government" against the Receivership Estate that is not satisfied prior to the payment of "any part of a debt of the person or estate" for which the Receiver has been appointed. Keeping in mind the Court's inclusion of certain language in the Appointment Order protective of the Receiver's good faith actions which nevertheless result in harm, the Receiver nevertheless requests additional time from the Court to investigate this complicated and important issue further and to report back to this Court. Given that distributions to the Commission are not contemplated at this time, the Receiver submits that investigating and analyzing the most

appropriate way to address potential claims held by governmental agencies will in no way delay or impair the Receiver's ability to fulfill his duties, nor will it create undue expense for the Receivership Estate.

For example, no allocation has been made in this Report or the proposed Plan of Liquidation for any current tax liabilities that may be payable by the Receivership Estate, with the exception of the establishment of a reserve for capital gains taxes payable as a result of the liquidation of the Disgorgement Assets. To more fully explain the tax issues, the Receiver intends to file shortly after the submission of this Report his Motion for Advice for Tax Purposes Concerning Precise Scope of Receivership seeking guidance from this Court so the Receiver may be guided accordingly with respect to his tax reporting obligations and the Receivership Estate's tax liabilities. Accordingly, the Liquidation Order should ultimately account for all amounts needed to be reserved or paid for the Receivership Estate's tax liabilities and other claims of government agencies.

e. Post-Liquidation Hearing

Once the Receiver believes that the liquidation of Receivership Assets has generated sufficient proceeds to fully secure the Required Amount, the Receiver will submit his final Report of Receiver articulating his basis for such conclusion. In addition to anything the Court may require, the final Report of Receiver will include: (i) an itemization of the Receivership Assets liquidated, including for each the date liquidated, the amounts realized and deposited into the CRIS account, and the date of such deposit; (ii) a complete accounting of the Receiver's determination of the Required Amount; (iii) confirmation of amounts held by the Receiver as a reserve toward ongoing costs of the Receivership and the administration of the Receivership Estate; and (iv) any further recommendations or disclosures deemed as necessary and appropriate by the Receiver or required by this Court.

## **Conclusion**

Based upon the foregoing, the Receiver respectfully submits his Report of Receiver. In summary, the Receiver proposes the sale of real estate and ownership interests in the Receivership Estate as set forth herein and in the Plan of Liquidation submitted herewith, in order to secure the Judgment and the anticipated claims and estimated expenses of the Receivership Estate. In furtherance thereof, the Receiver also submits herewith his proposed Liquidation Order consistent with the findings and recommendations set forth herein, for this Court's consideration.

Dated: April 3, 2019
Bridgeport, Connecticut

Respectfully submitted,

JED HORWITT, ESQ., RECEIVER

*/s/ Jed Horwitt*
Jed Horwitt, Esq., Receiver (ct04778)

By: */s/ Stephen M. Kindseth*
Stephen M. Kindseth (ct14640)
Christopher H. Blau (ct30120)
Zeisler & Zeisler, P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604
Telephone: 203-368-4234 X 236
Facsimile: 203-549-0903
Email: cblau@zeislaw.com;
skindseth@zeislaw.com
His attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on April 3, 2019, a copy of the foregoing Report was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Stephen M. Kindseth*
Stephen M. Kindseth (ct14640)