UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br>    *Plaintiff*,<br>v.<br>IFTIKAR AHMED,<br>    *Defendant*, and<br><br>IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUNITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents,<br><br>    *Relief Defendants*. | Civil No. 3:15cv675 (JBA)<br><br>May 21, 2019 |

**RULING ON MOTIONS TO LIFT LITIGATION STAY**

Non-party NMR e-tailing, LLC ("NMR") and non-party Oak Management Corporation ("Oak") move separately for orders lifting the litigation stay imposed by the Order Appointing Receiver ([Doc. # 1070]). For the reasons that follow, both NMR's Motion to Intervene and Lift Litigation Stay [Doc. # 1097] and Oak's Motion to Lift Litigation Stay [Doc. # 1132] are granted.

**I.     Background**

On December 20, 2018, Jed Horwitt, Esq. of Zeisler & Zeisler, P.C. was appointed to serve as receiver for the assets subject to the Court's ongoing asset freeze order to "value the frozen assets and avoid over-freezing, to secure the judgment for the SEC, to manage and maximize the value

of frozen assets under the guidance of a neutral third party, and to take necessary steps toward effectuating the judgment." (Order Appointing Rec. [Doc. # 1070] at 5.) In the Order Appointing the Receiver, the Court imposed a stay of "[a]ll civil legal proceedings of any nature . . . to obtain possession of property of the Receivership Estate, wherever located . . . [or] against any of the Defendants, including any wholly-owned owned subsidiaries and partnerships in which a Defendant is a general partner." (*Id.* at 13.)

### A. NMR e-tailing, LLC

Non-party NMR "was formed in 2013 by a group of investors for the purpose of investing in" an entity which is "referred to in this case as 'Company C.'" (Mem. Supp. NMR Mot. [Doc. # 1097] at 1.) "[B]ased on facts and circumstances surrounding NMR's investment in Company C," NMR "filed a lawsuit against Oak Investment Partners and its managing members, Oak Management Corporation, Oak Investment Partners XII, LP, and Oak Associates XIII, LLC (collectively, 'OIP'), and Iftikar Ahmed ('Ahmed') in the Supreme Court of the State of New York, County of New York," on October 18, 2017 (the "New York action"). (*Id.*) NMR seeks damages on claims of fraudulent misrepresentation and concealment, fraudulent inducement, gross negligence, negligent misrepresentation, grossly negligent supervision, and general partnership liability. (*Id.* at 1-2.)

Judgment entered against Mr. Ahmed in that case "on the issue of liability as a result of his failing to answer or otherwise respond to NMR's Complaint," and Mr. Ahmed "has not participated in any way in" the New York action. (*Id.* at 2.) "NMR has not taken any action to liquidate or collect its default against Ahmed at this juncture" but expects to be "involv[ed] in the Fair Funds process as a victim of Ahmed's conduct." (*Id.*) NMR's claims against Mr. Ahmed in the New York action are therefore "isolated from its remaining claims against OIP," which have

"proceeded with discovery" and have a trial date of December 2, 2019 set by the New York court. (*Id.*) The parties in that case have "engaged in written discovery, produced thousands of documents, attended several compliance conferences to resolve discovery disputes, and, importantly, negotiated a detailed scheduling order, which was approved by the [New York] Court." (*Id.*)

NMR moves to intervene "in this matter for the limited purpose of lifting the existing litigation stay in order to continue" litigating the New York action "to continue its pursuit of claims against" Oak entities which are not parties to the instant case. (NMR's Mot. to Intervene and Lift Stay [Doc. # 1097] at 1.) NMR intends the New York action to "proceed against OIP" and does not seek leave to litigate against Mr. Ahmed. (Mem. Supp. NMR Mot. at 2-3.)

### B. Oak Management Corporation

Oak Management Corporation was Mr. Ahmed's employer "from early 2004 through May 18, 2015." (Mem. Supp. Oak Mot. [Doc. # 1133] at 2.) Oak moves to lift the litigation stay "so it may commence an arbitration proceeding against Ahmed to recover the damages it suffered as a result of" his conduct. (*Id.*) Specifically, Oak "intends to bring claims in an AAA arbitration for breach of fiduciary duty, breach of contract and the covenant of good faith and fair dealing, and common law fraud." (*Id.*) Oak represents that the "conduct that serves as the basis of [its] claims is largely the same conduct that" underlies this case. (*Id.* at 2-3.) Oak "seeks compensatory damages in an amount not less than $20 million, plus interest; consequential damages in an amount not less than $15 million, plus interest; punitive damages in the amount to be determined at the arbitration hearing and such other relief as the arbitrator deems just and equitable." (*Id.* at 3.) Oak explains that these "damages were not sought by, or awarded to, the SEC in its action against Ahmed." (*Id.*)

## II. Discussion

"[D]istrict courts may appoint receivers as part of their broad power to remedy violations of federal securities laws," and "[a]n anti-litigation injunction is simply one of the tools available to courts to help further the goals of the receivership." *S.E.C. v. Byers*, 609 F.3d 87, 92 (2d Cir. 2010). "The modification of a litigation stay is subject to a three-pronged test first articulated by the Ninth Circuit in *Wencke*," which

> identified three factors for determining whether, in a receivership context, an injunction against litigation should be lifted: '(1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim.'

*S.E.C. v. Illaramendi*, No. 3:11CV78 (JBA), 2012 WL 234016, at *4 (D. Conn. Jan. 25, 2012) (quoting *S.E.C. v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984)). "The first *Wencke* factor balances the interests of the Receiver in preserving the status quo against the interests of the moving party." *Id.* at *5. To satisfy the third factor, the movant need only have a "colorable claim that entitle[s] them to a trial on the merits," and courts should not attempt to "decide the merits" of the movant's claim when considering a motion to lift a litigation stay. *Wencke*, 742 F.2d at 1232. "The burden is on the movant to prove that the balance of the factors weighs in favor of lifting the stay." *Id.* at *4 (internal quotation omitted).

### A. NMR e-tailing, LLC

NMR argues that all three *Wencke* factors support its motion to lift the litigation stay. (Mem. Supp. NMR Mot. at 4.) The Receiver "takes no position as to" NMR's motion because it does "not impact the Receiver's ability to complete his duties under the Order Appointing Receiver" given that "NMR seeks relief to proceed against parties other than the Defendant and

4

Relief Defendants." (Stmt. of Rec. re. NMR [Doc. # 1115] at 1-2.) The SEC does not oppose NMR's motion. (NMR's Mot. at 2.) Defendant and Relief Defendants oppose NMR's motion. (Def.'s Opp. to NMR [Doc. # 1114]; Rel. Defs.' Opp. to NMR [Doc. # 1116].) Mr. Ahmed asks that NMR's motion be denied "until (i) the value of the Defendant's *non-forfeited* assets have been properly determined *via* an evidentiary hearing; and (ii) the Second Circuit Court of Appeals has decided on the Defendant's appeal with respect to **all** of his assets at Oak since before the commencement of the Asset Freeze, whether deemed *forfeited* by this esteemed Court or not." (Def.'s Opp. to NMR at 6.) Relief defendants ask that NMR's motion be denied "until such time as the Court and the Receiver have made a determination as to the assets for securing the judgment and also have released the excess of what is needed to secure the judgment." (Rel. Defs.' Opp. to NMR at 2.)

First, NMR argues that lifting the stay to permit the New York action to proceed "will not affect the status quo of the receivership" because "OIP is not a defendant in the instant case and OIP does not have any assets frozen under the Receiver's control." (Mem. Supp. NMR Mot. at 4.) "NMR's requested lift of the litigation stay . . . is limited to its pursuit of claims against non-parties," (NMR's Reply [Doc. # 1118] at 1), and "NMR's claims, *with respect to OIP*, do not seek to disturb the frozen assets under the Receiver's control," (Mem. Supp. NMR's Mot. at 4).

Mr. Ahmed disputes that he is "a proper party" to the New York action because he "has never been served any papers nor was he made aware of any pending litigation against him in any state court." (Def.'s Opp. to NMR at 1.) Because the litigation stay applies to actions seeking assets of the Receivership Estate and actions against the Defendant, Mr. Ahmed's contention, if accurate, would actually weigh in favor of NMR's motion.

Mr. Ahmed argues next that NMR's position that there is a "clear distinction between NMR's claims against OIP and the assets controlled by the Receiver," (Mem. Supp. NMR's Mot. at

5

5), is "entirely false" for several reasons, (Def.'s Opp. to NMR at 2-6). Mr. Ahmed represents that he "has substantial interests at Oak – by way of significant assets belonging to the Defendant in the possession of Oak including assets that are deemed *forfeited* and those that are deemed *non-forfeited* by this esteemed Court – that would be directly implicated by [] NMR's request." (*Id.* at 2.) Because these "*non-forfeited* Oak assets are under the Receivership Order and are part of the Receiver Estate," Mr. Ahmed argues, the Receiver is tasked with "making sure that the[ir] value" is "managed and maximized." (*Id.* at 3.) Moreover, Defendant argues, "[t]here is a material dispute of fact surrounding Defendant's Oak *non-forfeited* assets and such value must be determined *via evidentiary hearing*,"[1] which he argues must be decided before any "interference from non-parties." (*Id.* at 3-4.) Mr. Ahmed argues that any "litigation that threatens the determination of this value impacts the judgment amount rendered against the Defendant (and Relief Defendants)." (*Id.* at 4). He also argues that "any assets deemed to have been *forfeited* by this Court" including those held by Oak "are now under the jurisdiction of the Second Circuit Court of Appeals." (*Id.*) Defendant concludes that "[c]ontrary to NMR's assertions, Oak *has* assets belonging to the Defendant that are currently frozen and under this Court's Receivership Order." (*Id.* at 5.)

Relief Defendants make a similar argument, noting that the "value of the *non-forfeited* Oak assets (which this Court has ruled can be used to satisfy judgment) has not yet been clearly

---

[1] Mr. Ahmed misrepresents the Court's position on this issue by stating that the "esteemed Court explicitly agreed with the Defendant" that an evidentiary hearing is necessary. (*See* Def.'s Opp. to NMR at 3-4.) Defendant cites the Court's effort to understand Mr. Ahmed's argument, which does not constitute an "explicit[] agree[ment]" with that argument. (*See* Tr. of Nov. 9, 2018 Hearing at 16:16-19 ("THE COURT: Okay. So the valuation of assets that Oak holds is a disputed issue that will require an evidentiary hearing; is that what you're saying? THE DEFENDANT: Yes. Yes, Your Honor."))

determined." (Rel. Defs.' Opp. to NMR at 2.) They suggest it would be a "waste of resources (especially money and time) for the Receiver to have to defend these assets, as they would be impacted by any litigation against Oak." (*Id.*)

Defendant and Relief Defendants fail to explain, however, why assets "belonging to the Defendant" which are held by Oak would be impacted by the continuation of the New York action against Oak or would be in need of defending by the Receiver. Specifically, they do not offer any support for the suggestion that, should NMR prevail against Oak in the New York action, Oak could or would *use* assets which "belong[] to" Mr. Ahmed to pay any judgment against Oak simply because "Oak *has* assets belonging to the Defendant." (*Id.*) Given NMR's explicit representation that it does not seek "assets controlled by the Receiver," (Mem. Supp. NMR Mot. at 5), and the Receiver's position that permitting the New York action to continue would not "impact [his] ability to complete his duties under the Order Appointing Receiver," (Stmt. of Rec. re. NMR at 1-2), which include maintaining the assets of the Receivership Estate, Defendant and Relief Defendants' argument that assets of the Receivership Estate will be impacted by the New York action is unavailing.

NMR argues that it would "suffer substantial injury if the Pending New York Action is prohibited from moving forward" because "considerable time, effort and expense have clearly been invested in the Pending New York Action," and "much of the work required to get [that] litigation into its current advanced posture will be negated" if it is "forced to stop in its tracks." (Mem. Supp. NMR's Mot. at 4.)

Mr. Ahmed responds that he "does not have an opinion on how much 'time, effort, and expense' have been invested in the New York action, it is undisputable that much 'time, effort and expense' have clearly been invested in this instant matter." (Def.'s Opp. to NMR at 5 (internal

7

citation omitted).) "Just as NMR wants 'its day in court,'" Mr. Ahmed argues, "so too does the Defendant want his appeal to be heard at the earliest and **all** his Oak assets to be appropriately credited towards any disgorgement award." (*Id.*) But this argument fails to address the critical question under the first *Wencke* factor: whether the movant would suffer substantial injury if the litigation stay is not lifted. He makes no attempt to dispute that NMR would be prejudiced by a lengthy delay in the New York action. (*See generally* Def.'s Opp. to NMR.)

Second, as to the "the time in the course of the receivership at which the motion for relief from the stay is made," NMR explains that "the timing of the instant Motion is inconsequential because . . . there is no concern that [the] Receiver would be forced into court to defend or protect the frozen assets" because NMR does not seek any assets under the Receiver's control. (*Id.*) Neither Mr. Ahmed's nor the Relief Defendants' opposition addresses this second factor. (*See generally* Def.'s Opp. to NMR; Rel. Defs.' Opp. to NMR)

"Where the motion for relief from the stay is made soon after the receiver has assumed control over the estate, the receiver's need to organize and understand the entities under his control may weigh more heavily than the merits of the party's claim." *Superior Motels v. Gould*, 622 F.2d 1363, 1373-74 (2d Cir. 1980). Here, the receivership has been in place since December 2018. The Receiver's Report makes clear that he has had sufficient time to organize and understand the entities now under his control. (Rep. of Rec. [Doc. # 1130].) Moreover, the Receiver does not oppose NMR's motion. (Stmt. of Rec. re. NMR at 1-2.)

Third, according to NMR, the "merits of NMR's claims have been substantiated by the fact that they have survived a motion to dismiss in the pending New York Action." (*Id.*) Defendant "cannot comment on the merits of NMR's pending lawsuit in the NY state litigation." (Def.'s Opp. to NMR at 2.)

8

All three *Wencke* factors weigh in favor of lifting the litigation stay. First, because NMR does not seek assets of the Receivership Estate and the Receiver does not anticipate that the New York action would impact the performance of his duties, maintaining the stay as to the New York action is not necessary to preserve the status quo of the Receivership Estate. Given the advanced posture of the New York action, NMR would likely suffer injury if that action were now stayed indefinitely. In weighing the interests of the Receiver and the movant, this factor supports lifting the stay. Second, the Receiver has had sufficient time to understand the assets of the Receivership Estate and does not oppose NMR's motion. Third, NMR appears to bring at least a colorable claim in the New York action. The litigation stay imposed in the Order Appointing Receiver is lifted for the limited purpose of permitting the New York action to proceed against the Oak entities named as defendants in that case.

### B. Oak Management Corporation

Oak argues that all three *Wencke* factors support its motion to lift the litigation stay. (Mem. Supp. Oak Mot. at 3-5.) The Receiver represents that lifting the litigation stay as Oak requests "do[es] not impact the Receiver's ability to complete his duties under the Order Appointing Receiver" because "OMC is not attempting to 'disturb the asset freeze or take priority over the SEC's claim to any of the frozen assets." (Stmt. of Rec. re. Oak [Doc. # 1144] at 2 (quoting Mem. Supp. Oak Mot. at 40.) "Therefore, the Receiver takes no position as to the Motion at this time." (*Id.*) For the same reason, the SEC "does not object to Oak's motion." (SEC's Resp. to Oak's Mot. [Doc. # 1145] at 2.) Mr. Ahmed opposes Oak's motion.[2] (Def.'s Opp. to Oak [Doc. # 1143].) Relief

---

[2] Oak points out that "[m]uch of Mr. Ahmed's response focuses on topics that are not relevant to assessing whether the Court should lift the litigation stay to permit OMC to commence

Defendants also oppose Oak's motion, arguing that Oak's arbitration against Mr. Ahmed "should be stayed until the time that the receivership is concluded, the pending appeals are resolved, and the asset freeze is lifted." (Rel. Defs.' Opp. to Oak [Doc. # 1142] at 7.)[3]

First, Oak argues that its "arbitration will not disrupt the status quo of the receivership" because it "does not seek to disturb the asset freeze or take priority over the SEC's claim to any of the frozen assets" and because the arbitration will not "require the Receiver to expend any additional time or money since the arbitration does not involve any issue germane to the Receiver's duties." (Mem. Supp. Oak's Mot. at 3-4.) Oak concludes that its arbitration "can move forward in parallel with the receivership while allowing the Receiver to fulfill its duties without interruption." (*Id.* at 4.)

As in his opposition to NMR's motion, Mr. Ahmed discusses at length the "*non-forfeited and allegedly forfeited assets*" which are held by Oak. (Def.'s Opp. to Oak at 5-8, 10.) Relief Defendants make a similar argument, contending that "Oak has not met its burden of satisfying the" *Wencke* test "especially since the value of non-forfeited Oak assets (which this Court has ruled can be used to satisfy judgment) have not yet been determined and there can be little doubt that

---

an arbitration against him." (Oak's Reply [Doc. # 1154] at 1.) The Court addresses herein only those arguments by Defendant which are relevant under *Wencke*.

[3] Relief Defendants also moved for leave to file a response to the SEC's response to Oak's motion. (*See* Rel. Defs.' Mot. for Leave to File [Doc. # 1158].) That motion is granted to permit Relief Defendants the opportunity to respond to new legal arguments not raised in Oak's motion. However, Relief Defendants' filing focuses entirely on the portion of the SEC's response which indicates that the SEC "has no objection to a process by which third parties may seek to secure any 'residual assets' prior to their release to Defendant or Relief Defendants," (SEC's Resp. to Oak.'s Mot. at 2; *see* Ex. A (Rel. Defs.' Proposed Opp.) [Doc. # 1158-1]), which is not relevant to this ruling on the motions to lift the litigation stay. The Court therefore does not address herein the additional arguments made by Relief Defendants in their response to the SEC.

these assets would most likely be impacted by an arbitration between Oak and Mr. Ahmed." (Rel. Defs.' Opp. at 2.) But as with the New York action, Defendant and the Relief Defendants fail to explain how, when Oak "is not attempting in any way to disturb the asset freeze or take priority over any claim by the SEC to any of the frozen assets," (Oak's Reply at 2), Oak's arbitration could disturb the status quo of any assets of the Receivership Estate, especially in light of the Receiver's position that Oak's arbitration will not impact his ability to perform his duties.

Oak also argues that it "stands to suffer substantial injury if prevented from bringing an action against Ahmed at this time" because it would "face[] the prospect of being unable to satisfy any future award it wins against Ahmed because the frozen assets available to it to secure that award" are the "sole known source of any recovery against Ahmed" and will "likely be dissipated" once the asset freeze in this case is lifted. (*Id.*) Oak explains that "to the extent that there will be an overage," i.e. assets of the Receivership Estate which will not be necessary to satisfy the judgment against Mr. Ahmed, "once the SEC's judgment is satisfied and if the freeze is lifted, the risk of dissipation is a certainty given Ahmed's status as a fugitive from justice." (Oak's Reply at 3.) In order to "have standing to seek prejudgment relief to protect against dissipation," Oak argues, "its arbitration must be filed and pending" before those assets are dissipated. (*Id.*)

Mr. Ahmed responds that all his "assets continue to be frozen," and so "there can be no danger of 'dissipation.'" (Def.'s Opp. to Oak at 3; *see also* Rel. Defs.' Opp. to Oak at 2 (arguing that Oak's concern of dissipation is "belied" by the current asset freeze).) This argument runs contrary to Defendant's and Relief Defendants' repeated requests to this Court to release funds from the asset freeze and to the Court's stated intention to "value the assets and avoid over-freezing" after "secur[ing] the judgment for the SEC." (Order Appointing Rec. at 5.)

11

Second, Oak argues that the time in the course of the receivership also weighs in favor of granting its motion because "the Receiver has been working toward organizing and understanding the assets and entities under his control for months and has now submitted a report outlining its findings and recommendations" and because the arbitration would "in no way distract from the Receiver's continuing efforts . . . since the arbitration will not involve the Receiver in any way." (Mem. Supp. Oak Mot. at 4.)

Mr. Ahmed argues that the "Receivership has recently commenced" and "[a]ny action by Oak, contrary to their statements, *directly distracts* the Receiver from understanding these interests." (Def.'s Opp. to Oak at 6-7.) Similarly, Relief Defendants argue that "because the Receiver was recently appointed a short time ago . . . and has not completed his assigned tasks[,] . . . it would be premature and inappropriate to grant Oak's motion." (Rel. Defs.' Opp. at 5.) The Receiver disagrees, explaining that permitting Oak's arbitration would "not impact [his] ability to complete his duties under the Order Appointing Receiver." (Stmt. of Rec. re. Oak at 2.)

Third, Oak argues that its claim is meritorious, or at least sufficiently colorable, because "the conduct underlying" its arbitration claims "is largely the same conduct at issue in this proceeding and for which this Court has found for the SEC on liability, noting that the 'record demonstrates without question that Defendant's fraud was directed towards [the OMC] Funds.'" (Mem. Supp. Oak. Mot. at 5 (quoting Ruling on All Parties' Mots. for Summ. J. on Liability [Doc. # 835] at 34).)

Mr. Ahmed "will not comment on the merits, or lack thereof, of Oak's potential arbitration against him, but to state for the record that the Defendant has submitted to this Court evidence to support that Oak was contributorily negligent and was complicit in all of the allegedly fraudulent transactions." (Defs.' Opp. to Oak at 2.) Relief Defendants argue that to find Oak's claims

12

sufficiently meritorious would "completely ignore[] the pendency of the Defendant's and the Relief Defendants' appeals." (Rel. Defs.' Opp. at 7.) But it is not the role of this Court to decide the merits of Oak's claims against Mr. Ahmed. Rather, the Court need only determine whether Oak has a "colorable claim" to bring against him. *Wencke*, 742 F.2d at 1232. Given this Court's findings on liability in this case, it cannot be said that Oak does not have a colorable claim against Mr. Ahmed.

All three *Wencke* factors weigh in favor of lifting the litigation stay. First, because Oak "is not attempting in any way to disturb the asset freeze or take priority over any claim by the SEC to any of the frozen assets," (Oak's Reply at 2), and the Receiver represents that granting Oak's motion would not impact his ability to perform his duties, maintaining the stay as to Oak's desired arbitration is not necessary to preserve the status quo of the Receivership Estate. Given the possible dissipation of assets if and when the Court releases assets after the SEC's judgment has been secured, Oak would likely suffer injury if unable to timely commence its arbitration against Mr. Ahemd. In weighing the interests of the Receiver and the movant, the first factor supports lifting the stay. Second, the Receiver has had sufficient time to understand the assets of the Receivership Estate and does not oppose Oak's motion. Third, Oak appears to have at least a colorable claim against Mr. Ahmed. Therefore, the litigation stay imposed in the Order Appointing Receiver is lifted for the limited purpose of permitting Oak to pursue the arbitration it seeks to bring against Mr. Ahmed.

Case 3:15-cv-00675-JBA   Document 1167   Filed 05/21/19   Page 14 of 14


## III. Conclusion

For the foregoing reasons, NMR's Motion to Intervene and Lift Litigation Stay [Doc. # 1097] and Oak's Motion to Lift Litigation Stay [Doc. # 1132] are GRANTED.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 21st day of May 2019.