UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>  Plaintiff,<br><br>v.<br><br>IFTIKAR AHMED<br><br>  Defendant, and<br>and<br><br>IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUNITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends, IFTIKAR and SHALINI AHMED, his parents; I.I. 3, a minor child, by and through his next friends, IFTIKAR and SHALINI AHMED, his parents<br><br>  Relief Defendants. | Civil Action No.<br>3:15-cv-675-JBA |

**RECEIVER'S LIMITED OBJECTION TO MOTION OF HARRIS, ST. LAURENT & CHAUDHRY LLP TO WITHDRAW FROM REPRESENTATION OF RELIEF DEFENDANTS, AND FOR PAYMENT OF OUTSTANDING ATTORNEYS' FEES, AND, IN THE ALTERNATIVE, FOR RELIEF FROM THE STAY OF <u>LITIGATION AS TO RELIEF DEFENDANTS</u>**

Jed Horwitt, Esq., in his capacity as Court-appointed receiver of the Receivership Estate[1] (the "Receiver"), through his undersigned counsel, respectfully submits this limited objection (the "Limited Objection") to the Motion of Harris, St. Laurent & Chaudhry LLP to Withdraw from Representation of Relief Defendants, and for Payment of Outstanding Attorneys' Fees, and, in the

---

[1] Unless expressly defined otherwise in this report, the definitions of terms set forth in the Report of Receiver [Doc. No. 1135] (the "Report") are incorporated herein by reference.

1

Alternative, for Relief from the Stay of Litigation as to the Relief Defendants [Doc. No. 1152] (the "Motion"), filed on May 10, 2019. In support thereof, the Receiver respectfully represents as follows.

> **I.  The Receiver Has No Objection to the Withdrawal of Harris, St. Laurent & Chaudhry LLP as Counsel to the Relief Defendants**

The Receiver does not object to the Motion to the extent it seeks an order permitting Harris, St. Laurent & Chaudhry LLP ("HSC") to withdraw from its representation of the Relief Defendants. Murtha Cullina, LLP ("MC") has apparently assumed full responsibility for legal representation in this matter on behalf of the Relief Defendants, which is confirmed by the Motion's statement that the Relief Defendants have instructed HSC to not perform any work in connection with the Receivership. (Motion, at 4.) As a result, the Receiver believes that the withdrawal of HSC as counsel for the Relief Defendants will not have any prejudicial impact on the Receiver's ability to execute his duties under the Appointment Order.

> **II.  The Receiver Objects to Unfreezing Receivership Assets to Pay Fees and Expenses Claimed by Harris, St. Laurent & Chaudhry LLP and Berenzweig Leonard, LLP**

> *a.  The Motion Mischaracterizes the Receiver's Report as to Residual Assets*

As a threshold matter, the Motion mischaracterizes the Receiver's conclusion stated in the Receiver's Report concerning the potential existence of Receivership Assets that are not needed to secure the Required Amount ("Residual Assets"). Contrary to HSC's statements and as the Report makes clear, the ultimate extent of Residual Assets, if any, presently remains unknown in large part because the exact dollar amount of the Judgment — which continues to accrue various interest, gains, and other items — cannot be fixed until assets securing it have been actually liquidated and deposited into the CRIS account, and because the amount to be realized from such assets will also not been determined until they are actually liquidated. Accordingly, until the liquidation process is complete and the Required Amount is fully secured by deposits into the

CRIS account, there are no Receivership Assets that, in the Receiver's view, are truly excess. HSC's characterization of the Receiver's conclusion that there has been a definitive determination that the Receivership Estate includes $18.6 million in Residual Assets is simply inaccurate.

      b. *The Motion Mischaracterizes the Receiver's Report as Proposing a General Claims Process*

The Motion similarly mischaracterizes the Receiver's Report with respect to whether it proposes a general claims process. It does not.

The purpose of the Receivership as clearly set forth in the Appointment Order is to secure the Judgment through the liquidation of Receivership Assets and deposit of the proceeds realized into the CRIS account pending appeals. To accomplish this objective, the Receiver proposed a two-stage process, whereby the Court would first provide authority to the Receiver to liquidate identified Receivership Assets and deposit the proceeds into the CRIS account to secure the Judgment and then hold a hearing where the Receiver would provide to the Court and all parties with an accounting of the amounts actually realized from the liquidation, his final calculation of the Required Amount (corresponding to the deposits made into the CRIS account) for the Court's approval, and the status, priority and estimation of any claims incurred by the Receiver in his management and operation of the Receivership Estate (such as utilities, professional fees, insurance, and similar items). The Receiver has not been directed to and did not propose a process to pay the Defendant's other liabilities (let alone the Relief Defendants' liabilities).

      c. *The Receiver Objects to Unfreezing Assets Given Ongoing Uncertainty with Respect to Liquidation Process and His Ability to Secure the Required Amount*

The Receiver filed his Report on April 3, 2019. The Plan of Liquidation contained therein contemplated a prompt liquidation process that, with the exception of Apartment 12A and Apartment 12F, would be completed on or before July 1, 2019. However, the Relief Defendants have delayed the liquidation process by their Emergency Motion for Extension of Time to Respond

to Receiver's Report [Doc. No. 1136] that resulted in an extension to June 3, 2019. The Relief Defendants have since filed their Emergency Motion to Modify Asset Freeze Order to Release Funds to Pay Murtha Cullina's Fees and Disbursements Since Appointment of Receiver, or in the Alternative, to Withdraw the Appearance of Counsel [Doc. No. 1171], which seeks an *additional* thirty (30) to ninety (90) days to respond to the Report. Even after the Relief Defendants file their response, there presumably will need to be a hearing. Further briefing would possibly then be required followed by time sufficient for this Court to render a decision. The Defendant and the Relief Defendants may thereafter, in the event of an adverse decision, file appeals and seek stays pending those appeals. Based upon these possibilities which appear to the Receiver — especially considering how this case has proceeded thus far — to be a real possibility, the completion of the liquidation process is neither "close" or "rapidly approaching" as asserted by HSC.

The delayed liquidation process imposes significant uncertainty in the Receiver's ability to fully secure the Required Amount by deposits into the CRIS account. It is well-recognized that the equity markets in the United States of America have experienced the longest bull market in its history. The Receiver believes that it is fair to say that, at some point in the future, in all likelihood, the equities bull market will come to an end. The real estate market may also experience at some point a more significant decline in values. The Receivership Estate's exposure to all market risks increases in lockstep with delays in the completion of the liquidation process.

Additionally, as the liquidation process is further delayed, the Receivership Estate incurs more priority expenses in the form of upkeep, real estate taxes, and insurance, as well as fees for the Receiver and his professionals in managing the Receivership Estate and responding to filings such as the Motion.[2] The large sum sought by HSC and BL — approximately $1.87 million — is

---

[2] It is well-settled that fees and expenses incurred in preserving the Receivership Estate as well as fees and expenses due the Receiver and his professionals are entitled to priority. *See generally SEC v. HKW Trading*

also a significant factor considered by the Receiver in his evaluation of the risk of prejudice to the Receivership Estate. To permit immediate payment of HSC's and BL's claim may, in combination with an unforeseen downturn in equity markets or other adverse events, render the Receiver unable to fully secure the Required Amount and thus frustrate his ability to execute his duties under the Appointment Order. On this basis, the Receiver objects to the Motion to the extent it seeks an order unfreezing Receivership Assets to allow for the immediate payment of fees and expenses due HSC and BL.

Additionally, as a secondary matter, the Receiver objects to the Motion in that HSC recommends that it "be paid from the proceeds of Relief Defendants' Aldrich Capital investment." (Motion, at 6.) HSC does not identify any authority, and the Receiver knows of none, that grants HSC the power to select the specific Receivership Asset used to pay its fees. Moreover, in that the $3,078,631.27 held by Aldrich Capital Partners (SEC No. 69, the "Aldrich Asset") is in cash, it represents one of the most liquid Receivership Assets. Consistent with the Receiver's obligation under the Appointment Order, the Report and associated Plan of Liquidation looked first to Receivership Assets that "are liquid or could be liquidated with relative ease;" Appointment Order, at 15; including the Aldrich Asset. The Aldrich Asset is not an insignificant portion of the Plan of Liquidation. If over $1.8 million of the Aldrich Asset is used to satisfy the fees claimed by HSC and BL, it will be necessary to revise the Plan of Liquidation. Such revisions and modifications to the Plan of Liquidation would likely only cause further delays to the orderly liquidation of Receivership Assets, exacerbating the uncertainty created by the Relief Defendants' extensions.

Therefore, the Receiver opposes the immediate release of Receivership Assets to satisfy the amounts due HSC and BL as such a sizable immediate release has the potential of prejudicing

---

*LLC*, Docket No. 8:05-cv-1076-T-24-TBM, 2009 U.S. Dist. LEXIS 77215, at *7-8 (M.D. Fla. Aug. 14, 2009); *In re Indian Motorcycle Litigation*, 307 B.R. 7, 15 (D. Mass. 2004); *FTC v. Fortune Hi-Tech Marketing*, Docket No. 13-123-KSF, 2013 U.S. Dist. LEXIS 117475, at *8 (E.D. Ky. Aug. 20, 2013).

the Receiver's ability to fully secure the Required Amount in the CRIS account and compound the possible deleterious impact of further delays in the liquidation process.

### III. Relief from the Litigation Stay Should Expressly Preclude any Action Against Receivership Assets Without Further Order of this Court

While the Motion states, at page 2, that HSC seeks "relief from the litigation stay to permit [HSC] to commence and prosecute an action for non-payment to receiver attorneys' fees from the Relief Defendants *and the Receivership Estate*," (emphasis added) the Memorandum of Law filed in support of the Motion argues only for lifting the stay to pursue the Relief Defendants.

During a discussion with the undersigned counsel to the Receiver, Attorney S. Gabriel Hayes-Williams at HSC represented that HSC is not seeking to lift the litigation stay to proceed against the Receivership Estate separate from the instant action. Instead, should the Court lift the litigation stay as to the Relief Defendants and HSC subsequently obtains a judgment, HSC intends to file a motion with this Court in this action seeking payment of the judgment amount owed to HSC from assets that are not otherwise needed to fully secure the Required Amount.

Regardless, the Receiver proposes that any order issued by the Court lifting the litigation stay to permit HSC and/or BL to pursue their claims against the Relief Defendants for the payment of past-due fees and expenses should expressly provide that HSC and BL continue to be precluded from taking any action, enforcement or otherwise, against the Receivership Assets and the Receivership Estate absent further order from this Court. Such an order would ensure that the Receivership Estate and the Receiver's ability to execute his duties under the Appointment Order are not prejudiced. The Receiver does not otherwise object to this Court lifting the stay for HSC and/or BL to pursue the Relief Defendants directly.

**WHEREFORE**, for these foregoing reasons, this Court should sustain the Receiver's limited objections to the Motion, specifically, his objections to the unfreezing of Receivership Assets for the immediate payment of amounts due HSC and BL, and to granting HSC and/or BL relief from the litigation stay without specific language precluding any action by them against the Receivership Estate or Receivership Assets, and grant such other and further relief as this Court deems just and proper.

Dated May 31, 2019, at Bridgeport, Connecticut.

Respectfully submitted,
JED HORWITT, ESQ., RECEIVER

 /s/ *Christopher H. Blau*
Stephen M. Kindseth (ct14640)
Christopher H. Blau (ct30120)
Zeisler & Zeisler, P.C.
10 Middle Street, 15th Floor
Bridgeport, CT  06604
Telephone: 203-368-4234 X 236
Facsimile: 203-549-0903
Email: cblau@zeislaw.com;
skindseth@zeislaw.com
*Counsel to the Receiver*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 31, 2019, a copy of the foregoing Limited Objection was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System. Furthermore, a copy of the foregoing was sent via email to the Defendant, Iftikar A. Ahmed, at iftyahmed@icloud.com.

       /s/ *Christopher H. Blau*
       Christopher H. Blau (ct30120)