UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>      Plaintiff,<br><br> v.<br><br>IFTIKAR AHMED,<br><br>      Defendant, and<br><br>IFTIKAR AHMED SOLE PROP; *et al*<br><br>      Relief Defendants. | Civil Action No. 3:15-cv-675 (JBA)<br><br><br><br>July 26ᵀᴴ, 2019 |

**DEFENDANT'S CONSOLIDATED REPLY IN OPPOSITION TO THE RECEIVER'S [DOC. #1237] AND THE SEC'S [DOC. #1238] OBJECTIONS TO RELIEF DEFENDANTS' MOTION TO RENT THE TWO NYC APARTMENTS [DOC. #1220]**

  The *pro se* Defendant files this consolidated Reply in opposition to the Receiver's [Doc. #1237] and the SEC's [Doc. #1238] Objections to the Relief Defendants' Motion to Immediately Rent the Two NYC Apartments [Doc. #1220].  The Defendant reserves all rights to all issues.

  The Court should overlook the Receiver's and the SEC's Objections and grant the Relief Defendants' Motion to immediately rent the NYC apartments, as the Receiver's Objection makes no economic sense, is directly contradictory to the Defendant's and Relief Defendants' wishes, makes confused and contradictory statements, and uses an affidavit of a real estate agent who does not have the necessary qualifications, experience, or credentials to maximize any realizable value for these apartments should the Court order a monetization of the apartments – a point that the Defendant has made repeatedly to the Receiver.

1

The SEC's Objection misleads this Court as to statements that the Defendant has made and presents no real or substantive reason as to why the apartments should not be rented pending a decision by this Court or the appellate Courts.

### REPLY TO RECEIVER'S OBJECTIONS

*First*, the Receiver's Objection makes no economic sense, as keeping the apartments empty without renting them deprives the Estate of significant rental income and directly diminishes the value of the Estate, in direct contravention of this Court's clear and direct instructions [Doc. #1070]. Indeed, by keeping the apartments vacant, the Receiver *presumes* that the Court will order an immediate liquidation of such assets. Just for that presumption, the Receiver is keeping the apartments vacant *at a significant cost of the Estate*. This is completely contrary to the Court's Order that the Receiver is to "maximize the value of frozen assets" [Doc. #1070 at 4] because if the apartments are not rented, the costs to maintain the apartments are currently borne by the Estate. Because it is indisputable that the value of the Estate is far greater than the judgment amount,[2] that means that any cost to maintain these apartments by not renting them is coming from the Defendant's assets and **_further penalizes the Defendant_** because any cost of carrying these apartments without renting them comes from *his* assets over the judgment amount.[3]

The Court <u>cannot</u> allow the Receiver to manage the Defendant's assets <u>over and above the judgment amount</u> or use those assets to maintain the Receiver assets up to the judgment amount. As the Defendant has already stated in a prior Motion – "while the Receiver *may* be

---

[2] The Defendant has addressed this point multiple times in his submissions and the Receiver's own Report [Doc. #1130] confirms this.

[3] The Defendant assumes that there will be an accounting at the end of this action whereby any amount paid from him/his assets to maintain these apartments will be paid back to him.

[5] These assets are to be the specific subject (amongst others) of an appeal. As the counsel for the Trustee for the Trust has stated "[T]he availability of these assets to satisfy the SEC's Judgment has been questioned by the Second Circuit Court of Appeals in a previous appeal and will be an issue on appeal to

immune to personal liability on assets up to the amount of judgment, the Receiver will be personally liable for any assets that are over and above the judgment amount…" [Doc. #1183 at 23].

The Court further ordered that the Receiver was to maximize the "realizable" value of such assets, while *at the same time* "minimizing the expense charged thereto [the Receivership Estate]" [Doc. #1070 at 7]. The Court very clearly states that the Receiver has the "***dual objects*** of maximizing the value of the assets of the Receivership Estate and ***minimizing the expenses*** charged thereto…" (emphasis added) *Idem.* The Receiver has to *balance both of these instructions* of the Court. Instead, the Receiver has *only* focused on one side of the instruction and that too, based solely on the advice of a real estate broker who does not have the necessary credentials, experience or qualifications to represent apartments of this nature and value.

The Defendant has already maintained that these assets are typical investment properties and having a tenant already renting the property adds to the value of the apartment, provides for income to the Estate, and thereby covers the cost of the assets. "[R]enting both apartments would bring in around $45,000 in combined monthly rental income, even if the Court were to order monetization of these assets" [Doc. #1209-1 at 4]. In particular, the Defendant has also stated that "[R]enting the apartments does not preclude a sale of these assets; nor does it hinder them. While any sale would honor any rental lease in place, apartments of this caliber are usually investment properties (similar to why Ms. Ahmed purchased them [Doc. 905 at 19 (Ex. 1, at 113:24 – 114:10; Ex. 2 at 96:4-25; 98:22-99:22; Ex. 2 at 106:29 – 107:10)]) and it is the Defendant's understanding that having a tenant in an investment property is more valuable to a prospective buyer than one that is empty. An added benefit is that renting the unit adds to the amount of assets frozen and covers the costs of the apartments while they are on the market for sale, should the Court order as such, pre-appeal" [Doc. #1209-1 at 4, n.7].

3

It makes no economic sense to keep the apartments vacant, pending a decision by this Court. Even if the Court were to order monetization, there is no guarantee that a vacant apartment will "sell for more money in a shorter period of time" [Doc. #1237 at 3] and the apartments should be rented pending any decision by this Court or the appellate Courts on this case.

*Second*, the Receiver has completely ignored the wishes of the Defendant and the Relief Defendants. The Court instructed the Receiver to "tak[e] into consideration the wishes of Defendant and Relief Defendants" [Doc. #1070 at 7]. The Receiver has blatantly ignored the wishes of the Defendant and Relief Defendants – that of keeping the apartments rented – in making his unilateral decision to keep the apartments vacated. The Receiver also does not ask the Court for guidance in this matter, nor did the Receiver inform the Court that a lease of the tenant in Apartment 12F was expiring on July 15, 2019. Indeed, the Receiver did not even consider a yearly lease or even a shorter period lease, which would have been fine with the Defendant and the Relief Defendants, as long as the apartments were generating rental income during the course of this case, including appeals.

*Third,* the Receiver makes flagrantly contradictory statements. On one hand, he claims that "[B]y liquidating both of the Apartments, and assuming the value of the other Receivership Assets remains the same or increases, the Receiver believes he will be able to fully secure the Required Amount without liquidating the UTMA Accounts and liquidating only a portion of the Trust Account." [Doc. #1237 at 2]. This statement is premature and contradictory for several reasons. There is no reason for the Receiver to use any of the UTMA or Trust Accounts to secure the SEC's judgment. The Court has not yet decided on a Required Amount (which could very well be significantly lower than the unsupported and aggressive amount proposed by the

4

Receiver) and the value of the other Receivership Assets has increased since then (thus negating any reason to use the Family Trust or UTMAs to secure the judgment).

Not only that, the Receiver has contradicted himself yet again. In one motion, he has asked the Court to allow him to "liquidate all securities held in the Trust and UTMA Accounts"[5] [Doc. #1203 at 8], which the Defendant and Relief Defendants have strongly opposed [Doc. #1209-1 at 9; Doc. #1212]; yet here, the Receiver says he does not need *any* of the UTMA Accounts and "only a portion of the Trust Account" [Doc. #1237 at 2]. The Receiver makes contradictory statements only in an all too obvious attempt to support his theory when it suits him at that point. The Defendant has already pointed out the multiple times the Receiver has repeatedly done this since his appointment and the Court should be wary of relying on the Receiver's statements that are self contradictory and made only to suit his convenience.

In this Motion, the Relief Defendants simply ask for the apartments to be rented, pending a decision by this Court and by the Court of appeals. Defendant agrees with this. By renting the apartments, even for short time periods, the value of the Estate and the assets are maximized and the expenses are minimized.

*Fourth*, the Receiver makes an erroneous statement that "the sale process is more difficult (and thus more likely to result in larger expenses to the Receivership Estate) if a tenant is in place because tenants generally have no interest in assisting with the sale process and making the property attractive to prospective buyers." [Doc. #1237 at 3]. The Defendant does not understand how there are larger expenses to the Receivership Estate with a tenant in place – if anything, the expenses are minimized as the rent covers the cost of the apartment(s) while it is listed for sale,

---

[5] These assets are to be the specific subject (amongst others) of an appeal. As the counsel for the Trustee for the Trust has stated "[T]he availability of these assets to satisfy the SEC's Judgment has been questioned by the Second Circuit Court of Appeals in a previous appeal and will be an issue on appeal to the Court of Appeals going forward." [Doc. #1180 at 2].

should the Court order as such.  Also, real estate brokers are paid a commission based upon the selling price of the apartment, not based on how long the apartment stays listed for.  If anything, having a tenant in the unit minimizes the costs of the apartments and makes it more attractive to a potential buyer[6] as it is currently occupied – either because it was desirable enough to be rented by someone or because it is generating investment income.  In addition, tenants who rent apartments of this caliber are sophisticated tenants[7] and understand that they must work with the unit owner if an apartment is to be listed for sale.

*Fifth*, the Defendant has repeatedly expressed his **strongest opposition** to the potential retention of Compass as a firm, and to Ms. Stacy Froelich in particular, of Compass, as a potential real estate seller's broker for these apartments, whether the Court should decide to lease or monetize the apartments, pending appeal. The Receiver continues to blatantly ignore the Defendant's wishes on this point, contrary to the Court's clear order that he consider the Defendant's and Relief Defendants' wishes in the management of the assets [Doc. #1070 at 7]. While the Receiver has relied on Ms. Froelich "expert" opinion [Doc. #1237 at 3], she is definitely not an expert on apartments of this stature and value and her opinions should not be considered as to these particular apartments.[8]

It is indisputable that the Defendant and the Relief Defendants have the *most incentive* of *any party* to maximize the value of any asset of the Estate. The fact that the Estate is significantly greater than the value of the judgment only supports that fact.  The use of any

---

[6] Potential buyers for units of this caliber are likely to be searching for an investment property. Even if a potential buyer were looking to purchase a unit for her own use, she would likely rent it first to see if she likes it before purchasing it for her own residence.

[7] These apartments have each rented for anywhere from approximately $22,000 to $34,000 per month. These apartments are significantly higher in value than the ones that Ms. Froelich has experience with and the nature of the tenants between the values of the apartments represented/sold by Ms. Froelich and those owned by Ms. Ahmed are different.

[8] In her affidavit, Ms. Froelich does not give any reasons for her opinions, simply stating them to be based on her "training, experience and research." [Doc. #1237-1 at 3].  What is obvious is that Ms. Froelich clearly lacks any qualification, experience, or training to be even considered for apartments of this nature.

outside party to lease or monetize the apartments, without the considered agreement of the Defendant and Relief Defendants, unfairly penalizes them and minimizes the value of an asset that could be realized. In particular, the Defendant has strongly opposed the potential retention of Compass and Ms. Stacy Froelich for a number of reasons.

> 1. As per Ms. Froelich's own website,[9] she has never sold an apartment with a value greater than $3.9MM and the highest value apartment she is currently representing is only $2.65MM, significantly lower than the values of the two NYC apartments owned by the Relief Defendants, and most of her current listings are below $1MM.  Recommending Ms. Froelich to represent the two NYC apartments is like asking a used car salesman selling Kia Rios to go and sell Ferrari collectibles. An $8.5-10.0 MM value apartment, such as the ones owned by the Relief Defendants in this litigation, are of a different stature than any apartment that Ms. Froelich has ever sold before – there is a significant difference in selling sub $1MM apartments and an $8.5-10.0 MM apartment. Ms. Froelich's website is attached as **EXHIBIT 1**.
>
> 2. The Defendant agrees with Relief Defendants and prefers that Sotheby's be the broker for any lease or monetization of the apartments [Doc. #1182 at 20-21]. Sotheby's is familiar with these units and they have significant relevant experience in transactions involving high-value investment real estate properties.  However, if the SEC or the Receiver for any reason would prefer another broker, the Defendant would be fine with a firm *of the same or*

---

[9] *See* https://www.compass.com/agents/nyc/stacey-froelich/ - accessed on 26th July 2019 and attached as **EXHIBIT 1**.

*higher caliber than Sotheby's.*[10]  The Defendant has repeatedly made clear to the Receiver that Compass is **not** of that caliber or market standing necessary to sell or rent apartments like the ones in question here.  Compass is a *start-up technology company providing tools to agents in the real estate market*[11] and primarily focuses on domestic clients,[12] which means that a significant portion of the potential target buyers – international in nature – would not be considered, either for renting or purchasing these apartments.

Not only that, **Compass has been accused of stealing intellectual property and pilfering trade secrets and poaching agents and is involved in litigation with other real estate companies** [*see* **EXHIBITS 2** and **3**].[13]  For the Defendant, as he has made clear to the Receiver multiple times, the appointment of a real estate broker is a business decision and one should be made where the value of the property is maximized and not for any other reason.  As a firm involved in such purported illegal activity, there is significant business risk to be associated with a firm such as Compass under current litigation exposure and a sensible business decision would be to stay as far away as possible from conducting business with Compass.

---

[10] Subject to the agreement of the Defendant and the Relief Defendants.
[11] https://geekestateblog.com/the-problem-with-compass-were-about-the-agent/ - this article makes it clear that **Compass is all about the agent and not the customer**.  Compass is a pre-IPO technology **startup** that is attempting to disrupt the real estate market. The use of such a startup company is not appropriate in this instance and the Defendant opposes the suggestion or appointment of this company to either rent or monetize the apartments.
[12] **Compass only has domestic offices and no international offices or presence**. This is a severe weakness when trying to rent or monetize $8.5-10.0 MM value apartments. https://www.compass.com/about/offices. Even Ms. Froelich, in her own affidavit, admits that Compass is a "national" **and thus is not an international firm**. [Doc. #1237-1 at 3].
[13] GeekWire article at https://bit.ly/2Y4Vbwd and WSJ article at https://on.wsj.com/2ZhmPmg .  *See* **EXHIBITS 2** and **3**.

3. The Receiver's adamant insistence on using Compass and Ms. Froelich reeks of underhand and private deals between the Receiver and FTI/Compass. One wonders whether there is any financial or *quid pro quo* arrangement between the Receiver, FTI and Compass? The fact that the Receiver has been having conversations with FTI Consulting *itself* raises red flags when it is FTI who recommends the use of Ms. Froelich.

Should the Receiver continue to insist on the retention of Compass and Ms. Froelich, and this Court allow for such, it would be a flagrant exhibition of serious and unacceptable nepotism. Even considering a firm like Compass is akin to asking one's kindergarten teacher to be one's PhD dissertation expert, no matter how nice the kindergarten teacher is, he is just not qualified to be a PhD guide. Period. The same with Compass and the two NYC apartments.

## REPLY TO SEC'S OBJECTIONS

*First,* the Defendant had earlier requested that the apartments be rented to pay for certain expenses associated with the Relief Defendants. However, the Defendant is right now only asking the Court for the NYC apartments to be rented immediately to *cover their carrying costs* pending a decision by the Court and the appellate Courts. By ordering an immediate rental of these apartments, the Court ensures that the Estate is maximized pending judicial decisions and that the Defendant is not *further penalized* by having to pay for the apartment expenses out of his (or Relief Defendants') assets over and beyond the judgment amount.

*Second,* contrary to the SEC's (mis)assertion, the Court has not rejected any request of renting the apartments – the Court has simply declined to address that request in its Order Appointing Receiver. The Court should be aware that both of the apartments are now vacant when they could be generating income for the Estate as well as covering their costs simply by renting the apartments. Indeed, the Relief Defendants request to immediately rent the apartments

is in line with the Court's Order that the value of the Estate be "maximized" while the expenses to the Estate are "minimized." Not only that, the SEC fails to even address that the Receiver is to proceed while "taking into considering the wishes of Defendant and Relief Defendants" [Doc. #1070 at 7] as well as with "due regard for the interests of the Defendant and the Relief Defendants." [Doc. #1070 at 14].

*Third,* the SEC's comical and racist assertions that India is some remote country in outer space where no current news about the United States reaches it, is simply hilarious and astounding. The Defendant is fully informed on the current New York real estate market and believes that an immediate rental of these units, for whatever timeframe the Court believes is appropriate, is warranted and makes economic sense while decisions are pending before this Court, the appellate Courts, and even the US Supreme Court [*see* Doc. ##1187; 1223; and 1224]. Even *if* the Court were to order monetization of the apartments, the Receiver himself admits that the apartments "will likely take more time to liquidate" [Doc. #1130 at 13-14] and having the apartments rented while any such process is in place is consistent with this Court's orders.

As it is, the two NYC apartments belong to the Relief Defendants. These have always managed by Ms. Ahmed and she alone knew all prior tenants. Not once has the Defendant ever spoken with or been in touch with any of the tenants of the two apartments. The Defendant agrees with the Relief Defendants that the apartments should be rented immediately, not only to enhance their value to potential purchasers (should the Court order as such), but also to cover their costs and add income to the Estate while decisions are pending by the various Courts.

**WHEREFORE**, for the reasons stated in this Reply, the Defendant respectfully requests that the Court allow for the immediate rental of the two NYC apartments, by Sotheby's (or a firm of equal *or* higher caliber and standing), pending any decision of this Court and the appellate Courts.

                                                                         Respectfully submitted,

Dated:       July 26TH, 2019       /s/ Iftikar Ahmed

                                                                         Iftikar A. Ahmed
                                                                         C/O Mr. Anil Sharma, *Esq*.
                                                                         Government Place East
                                                                         Kolkata 700 069, India
                                                                         Tel: +91-983-008-9945
                                                                         email: iftyahmed@icloud.com
                                                                         *Pro Se*

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and served by electronic mail to:

| | |
|---|---|
| MR. NICHOLAS P. HEINKE, *ESQ.*<br>U.S. Securities and Exchange Commission<br>Byron G. Rogers Federal Building<br>1961 Stout Street, Ste. 1700<br>Denver, CO 80294<br>(303) 844-1071<br>e-mail: heinken@sec.gov | MR. MARK L. WILLIAMS, *ESQ.*<br>U.S. Securities and Exchange Commission<br>Byron G. Rogers Federal Building<br>1961 Stout Street, Ste. 1700<br>Denver, CO 80294<br>(303) 844-1027<br>e-mail: williamsml@sec.gov |
| MR. PAUL E. KNAG, *ESQ.*<br>Murtha Cullina, LLP<br>177 Broad Street, 4th Floor<br>Stamford, CT 06901<br>(203) 653-5400<br>Fax: (203) 653-5444<br>e-mail: pknag@murthalaw.com | MS. KRISTEN LUISE ZAEHRINGER, *ESQ.*<br>Murtha Cullina, LLP<br>177 Broad Street, 4th Floor<br>Stamford, CT 06901<br>(203) 653-5406<br>Fax: (860) 240-5758<br>e-mail: kzaehringer@murthalaw.com |