UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>       Plaintiff,<br><br>v.<br><br>IFTIKAR AHMED<br><br>       Defendant, and<br>and<br><br>IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends, IFTIKAR and SHALINI AHMED, his parents; I.I. 3, a minor child, by and through his next friends, IFTIKAR and SHALINI AHMED, his parents<br><br>       Relief Defendants. | Civil Action No.<br>3:15-cv-675-JBA |

**RECEIVER'S OBJECTION TO DEFENDANTS' EMERGENCY MOTION FOR THE IMMEDIATE REMOVAL OF JED HORWITT AS RECEIVER AND TERMINATION OF RECEIVERSHIP DUE TO THE GROSS MISMANAGEMENT OF AND FALSE STATEMENTS MADE REGARDING THE ILLEGAL OCCUPANCY BY FORMER TENANT IN NYC APARTMENT #12F OWNED BY RELIEF DEFENDANTS**

Jed Horwitt, Esq., in his capacity as Court-appointed receiver of the Receivership Estate[1]

(the "Receiver"), through his undersigned counsel, respectfully objects (the "Objection") to the

Defendant's Emergency Motion for the Immediate Removal of Jed Horwitt as Receiver and

Termination of Receivership Due to the Gross Mismanagement of and False Statements Made

---

[1] Unless expressly defined otherwise, the Receiver incorporates by reference the definitions of terms set forth in the Report of Receiver [Doc. No. 1135] (the "Report").

1

Regarding the Illegal Occupancy by Former Tenant in NYC Apartment #12F Owned by Relief

Defendants [Doc. No. 1244] (the "Motion"), filed on July 30, 2019.

## I.   Introduction

Through misstatements of fact and law, feigned ignorance, incorrect assumptions and

contrived outrage, the Defendant attempts to establish the basis for the removal of the Receiver

and termination of this receivership. As explained fully below, the Receiver managed and

continues to manage the New York apartments in a reasonable and cost-effective manner fully in

accordance with the Appointment Order.

## II.   Facts Relative to Apartment 12F

As this Court is aware, Apartment 12F is located at 530 Park Avenue in New York City.

This Court previously determined that Apartment 12F "was purchased nearly entirely with the

proceeds of two allegedly fraudulent transactions transferred by Mr. Ahmed into an account in

Mrs. Ahmed's name." (Ruling and Order Granting Preliminary Injunction [Doc. No. 113], at 11.)

Following the purchase of Apartment 12F, tenants have rented the property at various

times. The current occupants of Apartment 12F (the "12F Occupants") include a husband and wife

and their young child. As is relevant to the Motion, the 12F Occupants previously rented the

property for a period of one year from July 15, 2016, to July 14, 2017, which was later extended

to July 14, 2018, and then extended again to July 14, 2019. Pursuant to the lease governing the

July 14, 2018 to July 14, 2019, term (the "Lease"), the 12F Occupants were paying $22,000 per

month in rent to DIYA Real Holdings LLC ("DIYA Real Holdings"), in addition to certain utilities.

The Lease also provides that the tenants "shall obtain a contents and liability insurance

policy."  The Receiver has obtained written confirmation that such insurance remains in place.

Furthermore, the Relief Defendants' insurance policies issued by Chubb Personal Risk Services

and AIG Property Casualty Company (which the Receiver has also obtained and reviewed) provide

additional coverage for Apartment 12F.

Upon the Receiver's appointment on December 20, 2018, he began collecting monthly rent and other amounts due under the Lease from the 12F Occupants. All funds collected from the 12F Occupants are held in DIYA Real Holdings' bank account at Bank of America (ending x7632, SEC No. 65), which is frozen pursuant to the Appointment Order.

In his Report, the Receiver proposed to "liquidate … Apartment 12F to provide additional proceeds to secure the Judgment pending appeal and obtain other necessary amounts." (Report, at 7.) The Receiver proposed the liquidation of Apartment 12F as, in the Receiver's view, the property "could be liquidated with relative ease" (Appointment Order, at 15) and such liquidation would hopefully permit the Receiver "to avoid liquidating other assets, such as the UTMA accounts (SEC Nos. 86-94), and a substantial portion of the Iftikar A. Ahmed Family Trust account (SEC No. 71)" (Report, at 7), which is consistent with the desires of the Defendant, the Relief Defendant, and Daniel G. Johnson as trustee. (*See* Doc. Nos. 1178 at 4, 1180 at 3, 1182 at 25-26.)

On April 3, 2019, the 12F Occupants, by the husband and father, Mr. David Schulhof ("Mr. Schulhof"), made an offer to purchase Apartment 12F for $3 million, an amount that the Receiver viewed as so significantly below market value that the Receiver did not provide a counteroffer or move for permission to sell the property to the 12F Occupants pursuant to paragraph 28 of the Appointment Order and 28 U.S.C. § 2001. Instead, the Receiver's counsel explained to Mr. Schulhof that the offer was insufficient. Mr. Schulhof continued to express his desire to purchase Apartment 12F.  The Receiver thereafter continued to receive rent payments pursuant to the Lease through the end of its term on July 14, 2019.

On April 24, 2019, the Receiver's counsel toured Apartment 12F. At that time, Apartment 12F appeared to be in good condition with no signs of damage or decay, and a water leak in the kitchen ceiling appeared fully resolved. The property featured modern appliances that appeared to

be in good condition.

On June 17, 2019, a representative of Classic Realty LLC ("Classic")—the company that manages the 530 Park Avenue building—contacted the Receiver's counsel to inquire as to the status of any lease extension and obtain a copy of the renewal lease, if any. As no such extension was in place, the Receiver's counsel did not respond to Classic's request. On July 26, 2019, a representative of Classic contacted the Receiver's counsel again, renewing their request for a copy of the renewal lease. Approximately two hours after this renewed request, the Receiver's counsel advised Classic that "[t]he Receiver will provide a copy of the renewal lease if such a renewal lease is entered into."

On July 3, 2019, the Relief Defendants filed a Motion to Immediately Rent the Two NYC Apartments [Doc. No. 1220] (the "RD Rental Motion"), requesting "that the Court order the immediate rental of the two NYC apartment units," including Apartment 12F. (*Id*. at 3.) On July 24, 2019, the Receiver filed his Objection to Relief Defendants' Motion to Immediately Rent the Two NYC Apartments [Doc. No. 1237] (the "Receiver Rental Objection"), to which the Defendant replied in the Defendant's Consolidated Reply in Opposition to the Receiver's and the SEC's Objections to Relief Defendants' Motion to Rent the Two NYC Apartments [Doc. No. 1239] (the "Defendant Rental Reply"). In the Receiver Rental Objection, the Receiver articulated his view that the Receivership Estate would realize a higher sale price, more quickly, and with less cost if the Apartments were sold without tenants in place, based on the expert opinion provided by Compass Real Estate and, in particular, Ms. Froelich.

Contemplating that the 12F Occupants would vacate Apartment 12F since the term of their lease had just days earlier ended (on July 14, 2019), and that the other apartment was already vacant, the Receiver stated that he "believes it is in the best interest of the Receivership Estate to keep the Apartments vacant pending an order from this Court concerning the liquidation of the

Apartments." (*Id*. at 4.) The phrase "keep the Apartments vacant" simply reflected the Receiver's expectation that Apartment 12F would be vacant—along with the other apartment—in the near future and during the period of time the apartments would be on the market for sale.

At or about this time, the 12F Occupants delivered a check dated July 9, 2019, in the amount of $22,000 to the Receiver's counsel. They had separately requested the ability to rent the apartment on a month-to-month basis until they figured out if they could buy it at a price acceptable to the parties and this Court, or voluntarily vacate the apartment (saving the Receivership Estate the expense of commencing a legal proceeding in New York to evict them). In response, the Receiver declined to enter into any tenancy and expressly accepted the payment as "use and occupancy only." The Receiver's counsel specifically responded on July 26, 2019, by stating the following in an email to Mr. Schulhof:

> I understand your desire to buy the property, and rent the property month to month until that purchase is complete, and I will communicate your position to the Receiver and report back as soon as I can. For the time being, the Receiver will deposit the check you provided for use and occupancy only, and we will note that the check is for use and occupancy on the check itself. Please note that the Receiver accepting this check for use and occupancy does not create a tenancy.

The Receiver's counsel then informed the Relief Defendant's counsel[2] of the status of the 12F Occupants, the $22,000 payment made by them, the Receiver's position that it constituted a "use and occupancy" payment, not rent, and the Receiver's intent to deposit it into the DIYA Real Holdings bank account (which he then did).

Initially, considering (i) the Relief Defendants' pending motion before this Court to compel the Receiver to rent the Apartments (and the possibility that, if this Court granted the motion, Apartment 12F would very likely be re-rented to the 12F Occupants who at that time occupied Apartment 12F and wanted to re-rent it), (ii) the 12F Occupants' ongoing desire to purchase

---

[2] Although this is not notice to the Defendant directly, it seems a virtual certainty that Shalini Ahmed conveyed to her husband material developments concerning assets in the Receivership Estate.

Apartment 12F and request for time to come up with a better offer (which was repeatedly communicated to the Relief Defendants' counsel), and (iii) the economic benefit to the Receivership Estate of receiving use and occupancy for Apartment 12F in the interim period while this is all sorted out, the Receiver did not immediately (with days of July 14th) locate and then move to retain New York counsel to commence an eviction action.[3] Instead, on July 26, 2019, the Receiver's counsel again spoke to Mr. Schulhof to: (i) obtain immediately his highest and best offer to purchase Apartment 12F; (ii) insist that the 12F Occupants promptly vacate Apartment 12F if an agreement cannot be reached for its purchase and sale to them (subject to consultation with the Relief Defendants and the Defendant, and this Court's authority); and (iii) advise him, once again, that any monies they paid to the Receiver for their use and occupancy would be for use and occupancy only and would not create a tenancy.

During the Receiver's counsel's conversations with Mr. Schulhof on July 26th, the Mr. Schulhof explained that he and the other 12F Occupants remained interested in purchasing Apartment 12F. In response, the Receiver's counsel told Mr. Schulhof that unless they were willing to offer a significantly greater sales price in an amount consistent with the range of fair market values that the Receiver articulated in his Report, the Receiver did not see further sale discussions with the 12F Occupants to be worthwhile.  Mr. Schulhof asked for one more week to compile his final offer.

On July 30, 2019, the Defendant filed the Motion seeking the Receiver's removal and the termination of this receivership due to his alleged mishandling of Apartment 12F and the 12F Occupants.

At some point during this period, the Receiver's counsel fully explained these

---

[3] On August 1, 2019, the Relief Defendants requested that the Receiver commence eviction proceedings as to the 12F Occupants, seemingly reversing the position taken in the RD Rental Motion demanding that the Receiver immediately rent both apartments.

developments to the Relief Defendant's counsel, and said that he would follow up the Mr. Schulhof. On August 1, 2019, the Receiver's counsel spoke to Mr. Schulhof and requested his final offer to purchase Apartment 12F and when he intended to vacate the property voluntarily if an agreement could not be reached.  On Monday, August 5th, Mr. Schulhof conveyed another, yet higher, offer to purchase the apartment which he represented at the time to be his highest and best offer. Thereafter, on Wednesday, August 14, 2019, Mr. Schulhof conveyed an offer that was 10% higher than the offer he made on August 5. The Receiver's counsel promptly communicated Mr. Schulhof's August 14 offer to both the Defendant and counsel to the Relief Defendants. In the Receiver's view, the amount ultimately offered by Mr. Schulhof falls well short of what he believes and what the Relief Defendants have expressed to be the property's fair market value. The 12F Occupants also requested to continue to occupy the apartment for a period of time longer than the Receiver believes is reasonable and, therefore, the Receiver is in the process of locating counsel in New York to be retained, subject to this Court's authority, to commence an action to evict the 12F Occupants.

### III.    The Receiver did not Re-Rent Apartment 12F

Contrary to the Defendant's passionately articulated and repeatedly made contention that the Receiver "unilaterally" and "illegally" reached an agreement with the 12F Occupants to lease Apartment 12F after the end of the term of the Lease on July 14, 2019, the Receiver did not enter into any such agreement. (Motion, at 3, 5, and 7.) The 12F Occupants simply on their own continued to occupy the apartment after July 14th. In fact, to prevent any such tenancy from even being implied, the Receiver made clear in writing to Mr. Schulhof that any payment made by the 12F Occupants would be accepted as "use and occupancy only" and that "accepting th[e] check for use and occupancy does not create a tenancy."

New York law expressly addresses the issue of the status of a holdover tenant, and provides

that a landlord's acceptance of "rent" creates a month-to month tenancy (unless the parties agree otherwise). New York Real Property Law § 232-c provides:

> Where a tenant whose term is longer than one month holds over after the expiration of such term, such holding over shall not give to the landlord the option to hold the tenant for a new term solely by virtue of the tenant's holding over. In the case of such a holding over by the tenant, the landlord may proceed, in any manner permitted by law, to remove the tenant, or, if the landlord shall accept rent for any period subsequent to the expiration of such term, then, unless an agreement either express or implied is made providing otherwise, the tenancy created by the acceptance of such rent shall be a tenancy from month to month commencing on the first day after the expiration of such term.

The Receiver repeatedly made clear to the 12F Occupants that he was not accepting "rent." The Receiver accepted funds from the 12F Occupants for "use and occupancy only" so as to preserve all rights of the Receivership Estate and not affirmatively create a tenancy under § 232-c. "A landlord's entitlement to receive, and an occupant's obligation to pay a reasonable fee for use and occupancy, is not contingent upon an underlying contract." *Garden v. Cent. Physical Therapy*, 2015 N.Y. Misc. LEXIS 5478, *5 (N.Y. Sup. Ct., Trial Term, Dec. 10, 2015) (citation omitted) (a copy of this decision is appended hereto as **Exhibit A**). "Liability for use and occupancy is not liability for rent under the lease." *Id*.

> Section 232-c of the Real Property Law changes the common-law rule relating to creation of a holdover tenancy. It provides that the mere holding over by a tenant whose term is longer than one month does not allow the landlord to create a holdover tenancy without his acceptance of rent from the holding over tenant. The language in the statute 'unless an agreement either express or implied is made providing otherwise' refers only to extension of the duration of the holdover tenancy beyond a tenancy from month to month. In this case the landlord did not accept any rent and, indeed, none was offered. Hence, no holdover tenancy was created and the landlord's remedy is limited to removal of the tenant and damages, both incidental and for use and occupation.

*Jaroslow v. Lehigh Valley R. Co.*, 23 N.Y.2d 991, 992-93, 298 N.Y.S.2d 999, 246 N.E.2d 757 (1969).

Thus, the Receiver acted perfectly in accord with New York law and the Appointment Order. Such conduct also, apparently, is perfectly consistent with the Defendant and the Relief

Defendants' most recently articulated desire not to re-rent Apartment 12F to the 12F Occupants.

IV.     **There is No Additional Risk of Harm to the Receivership Estate Arising from the Holdover Occupants**

With similar drama and outrage, the Defendant claims that the Receiver has placed the "Estate in severe jeopardy facing serious liability," and that "there are serious liability and insurance issues with keeping a tenant illegally in a unit." (Motion, at 3, 5.) Of course, these assertions are unsubstantiated and entirely unfounded.

A tenant who continues to reside in the premises after the expiration of the tenancy is not, for this reason alone, guilty of a crime. Mr. Schulhof and his wife and child are not criminals because they continue to occupy Apartment 12F. The consequence of the holdover is that the occupants are subject to eviction and liable for use and occupancy.

The expiration of the Lease also does not result in the termination of applicable insurance coverage. The Receiver's counsel has reviewed the currently applicable insurance policy provided by the 12F Occupants. There is no provision for its termination based upon the expiration of the term of their lease and the expiration date of the policy is well into 2020. Similarly, the insurance policies obtained by the Defendant and Shalini Ahmed providing additional coverage for events arising out of, *inter alia*, Apartment 12F does not terminate based upon the expiration of the lease term. The Defendant never explained why he believes there exists an "insurance issue."

Another threatened peril asserted by the Defendant is that "building management" could "decide that the unit cannot be rented" because the Receiver has not provided a renewal lease to the management company. (Motion, at 8.) Counsel to the Receiver has had multiple discussions with Classic representatives, who have confirmed that there is no risk of the Receiver or the Relief Defendants being unable to continue renting Apartment 12F based upon the 12F Occupants continued to possess the apartment provided (a) the Receiver pays the standard $2,000 annual

9

sublet fee[4] and (b) the 12F Occupants do not remain in the property for more than six months without a new, formal lease extension. Setting aside these representations, any affirmative action by Classic that impacts the Receiver's or the Relief Defendants' ability to rent Apartment 12F would be a *per se* violation of the Appointment Order (specifically paragraphs 19, 22, and 23 thereof) and the Receiver has reminded Classic of such provisions of the Appointment Order. In response, Classic has confirmed that it has no intention to terminate or impair the Receivership Estate's rights and interests in Apartment 12F.

To comply with Classic's request and to manage the Receivership Estate in the most efficient and cost-effective manner possible, the Receiver intends to pay the $2,000 annual sublet fee to Classic, and, as explained above, the Receiver intends to move forward with the eviction of the 12F Occupants.

V.     **The Receiver's Expressed Desire to Keep the Apartments Vacant was Entirely Truthful**

The Receiver's position that he sought to keep the apartments vacant so they may be staged as part of the marketing effort and sold to the most likely buyer—someone who would want to reside promptly at the property instead of an investor who sought an income producing property— was entirely truthful. The missing detail the Defendant makes so much about arises from the Receiver contemplating the eviction of the 12F Occupants thereby rendering the Apartment 12F vacant in the coming months. At that time, the Receiver desired to keep the apartments vacant for their sale to maximize their value—which was his point.

The Receiver never represented that both apartments were currently vacant and the Relief

---

[4] The Receiver initially declined to pay the $2,000 annual sublet fee because, at that point in time, the Receiver's understanding was that such amount was due when a renewal lease was executed and, since no renewal lease had been executed, there was no obligation to pay the sublet fee. The Relief Defendants shared this understanding, advising the undersigned on July 26, 2019, that "[t]here is no reason for that payment right now as there is no renewal of the lease for [Apartment 12F]." Now that Classic has clarified that the sublet fee is due once a year, the Receiver intends to pay the $2,000 sublet fee.

Defendants and, presumably, the Defendant through conversations with his wife, knew full well the status of the tenant residing at Apartment 12F at all relevant times. They could not have honestly thought that Mr. Schulhof continued throughout to negotiate the purchase of Apartment 12F while at the same time (i) preparing to move and then moving out promptly on July 14, 2019, and (ii) while moving out, paid $22,000 for the use and occupancy of Apartment 12F for the following month.

## VI.    Conclusion

All of the Defendant's contentions are groundless. At all relevant times, the Receiver has reasonably and appropriately managed Apartment 12F. This Court should sustain the Receiver's objection, deny the Motion, and grant such other and further relief as the Court deems just and proper.

Dated August 15, 2019, at Bridgeport, Connecticut.

Respectfully submitted,
JED HORWITT, ESQ., RECEIVER


/s/ Stephen M. Kindseth
Stephen M. Kindseth (ct14640)
Christopher H. Blau (ct30120)
Zeisler & Zeisler, P.C.
10 Middle Street, 15th Floor
Bridgeport, CT  06604
Telephone: 203-368-4234 X 236
Facsimile: 203-549-0903
Email: cblau@zeislaw.com;
skindseth@zeislaw.com
*Counsel to the Receiver*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 15, 2019, a copy of the foregoing Objection was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System. Furthermore, a copy of the foregoing was sent via email to the Defendant, Iftikar A. Ahmed, at iftyahmed@icloud.com.

*/s/ Stephen M. Kindseth*
Stephen M. Kindseth (ct14640)