UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>IFTIKAR AHMED,<br><br>Defendant, and<br><br>IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents,<br><br>Relief Defendants. | Civil Action No. 3:15cv675 (JBA) |

**PLAINTIFF UNITED STATES SECURITIES AND EXCHANGE COMMISSION'S RESPONSE IN OPPOSITION TO DEFENDANT'S EMERGENCY MOTION FOR THE IMMEDIATE REMOVAL OF JED HORWITT AS RECEIVER AND TERMINATION OF RECEIVERSHIP**

Plaintiff United States Securities and Exchange Commission ("SEC") hereby files this response in opposition to Defendant's motion requesting that "the Court (1) immediately terminate Jed Horwitt as the Receiver in this matter; and (2) order the immediate vacancy of the illegal current occupancy of Apt. #12F by the former tenant." (Doc. # 1244 ["Motion"] at 9). Defendant's Motion should be denied.

Defendant's Motion is simply a request for this Court to reconsider its prior Order [Doc. # 1070] Appointing Receiver, which was entered over Defendant's objection. Defendant's claim that the Court should reconsider its ruling because the Receiver engaged in misconduct is both baseless and disingenuous. In actuality, Defendant's Motion is yet another unnecessary filing seeking to re-litigate issues already decided.

<u>First</u>, Defendant's Motion is premised on his erroneous belief that the tenant (and the Receiver) have engaged in unlawful activity. Defendant argues that the tenant in Unit 12F is "an illegal squatter" (Motion at 5 n. 5) who is "**living in Apt. 12F illegally**" (*id*. at 5) (emphasis in original) and that the "illegal occupancy" was "approved by the Receiver" (*id*. at 6), presumably because the Receiver did not forcibly remove the tenant, lockout the tenant, or take a similar measure to prevent him from occupying Unit 12F immediately upon the expiration of the lease. *See, e.g.*, *id*. at 3 ("[T]he tenant's lease expired on July 14th, 2019. The apartment should have been vacated latest on July 15th, 2019."). In actuality, the tenant is not engaging in criminal activity by staying in Unit 12F after the expiration of the lease, but rather is a "holdover" with certain rights under New York City law because he had legally occupied the unit for at least 30 days. *See* N.Y.C. Admin. Code § 26-521. Under New York City's Illegal Eviction Law (*id.*), the Receiver is prohibited from engaging in the activity that Defendant apparently believes should have taken place, and is instead required by law to initiate a "holdover case." *See, e.g.*, https://nycourts.gov/courts/nyc/housing/startingholdover.shtml.[1] Put simply, Defendant's claim that the Receiver should be removed because he "engaged in and approved" the "illegal occupancy" is wholly erroneous (Motion at 6), and Defendant's assertion that the Receiver has

---

[1] Given the difficulties of removing a tenant in New York City, it is hardly surprising that "Apartment 12F will be able to achieve materially higher sales prices and/or be sold more quickly and at lower cost if [it is] vacant during the sale process." Doc. # 1237-1 at ¶8

2

"plac[ed] the Estate is serious jeopardy" because the Receiver has abided by New York City law speaks volumes and only reinforces the need for a Receiver in this case.

<u>Second</u>, and relatedly, Defendant misconstrues the Receiver's decision not to engage in unlawful self-help to remove the tenant as a "unilateral and illegal agreement" to allow the tenant to remain in Unit 12F. (Motion at 7). As noted above, the Receiver was prohibited from removing the tenant from Unit 12F or preventing him from accessing the unit. The SEC has confirmed with the Receiver that it has not entered into lease with the tenant of Unit 12F, and is in fact is preparing to initiate an eviction action to remove the tenant as required by New York City law. The SEC understands that in the meantime, the Receiver has collected funds from the tenant for his "use and occupancy only" so as to not affirmatively create a tenancy. Put simply, the Receiver has done exactly what it was ordered to do: manage this asset (and others) with the dual objective of maximizing its realizable value and minimizing the expense charged thereto. *See* Order Appointing Receiver [Doc. 1070] at 7. This is hardly grounds for his removal.

<u>Third</u>, Defendant's claim that the Receiver misled this Court, and the parties, by requesting that the Court keep Units 12A and 12F "vacant until this Court rules on the Receiver's proposed Plan of Liquidation" (Doc. # 1237 at 3) is baseless. The SEC did not interpret this statement to reference the current or past leases, much less be a representation that the tenant had not held-over. The SEC has no reason to believe that either Defendant or Relief Defendants had such an understanding regardless of Defendant's claims to the contrary. In fact, the nefarious motive Defendant attributes to the Receiver – that he "conveniently did not [disclose the tenant had held-over] since that information would directly contradict his opposition to the Motion to rent the two NYC apartments" (Motion at 2) – is nonsensical. The fact that a tenant has refused

to vacate after the expiration of his lease would only bolster the argument that Units 12A and 12F should not be re-rented if they are to be sold in the near future because this, or any other, tenant would drive down the sale's price.  Regardless, given that Defendant referenced the "use and occupancy agreement" that is currently in place between the Receiver and tenant, it is difficult to believe that Defendant did not have knowledge of the holdover tenant prior to filing his Motion.

<u>Lastly</u>, the Court should decline to order the tenant to immediately vacate Unit 12F.  Though understandably frustrating, the SEC understands that New York City law requires a landlord to initiate a holdover case in order to remove a holdover tenant.  The SEC understands the Receiver is in the process of initiating such an action.  Given that there is no accusation of the tenant damaging Unit 12F or otherwise diminishing the value of the asset, and because the tenant is paying for his use and occupancy, there is no reason for this Court to order the tenant to immediately vacate Unit 12F.

For these reasons, Defendant's' Motion should be denied.

DATED: August 20, 2019.

        Respectfully submitted,

        <u>s/ Mark L. Williams</u>
        Nicholas P. Heinke (Colorado Bar No. 38738)
        Mark L. Williams (New York Bar. No. 4796611)
        United States Securities and Exchange Commission
        1961 Stout St., Suite 1700, Denver, CO 80294
        E-mail:       HeinkeN@sec.gov
                         WilliamsML@sec.gov

        Attorneys for Plaintiff:

        UNITED STATES SECURITIES AND
        EXCHANGE COMMISSION

<u>CERTIFICATE OF SERVICE</u>

I certify that on August 20, 2019, a copy of the foregoing document was emailed to Defendant Iftikar Ahmed at IftyAhmed@icloud.com, and served via ECF upon the following:

Jonathan Harris
Reid Skibell
David Deitch
Alexander Sakin
S. Gabriel Hayes-Williams
Joseph Gallagher
Harris, St. Laurent & Chaudhry LLP
40 Wall Street, 53rd Floor
New York, NY 10005
(Counsel for Relief Defendants)


Christopher H. Blau (ct30120)
Stephen M. Kindseth (ct14640)
Zeisler & Zeisler, P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604
(Counsel for Receiver, Jed Horwitt, Esq.)

                                            *s/ Mark L. Williams*
                                            Mark L. Williams