UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

        Plaintiff,

   v.

IFTIKAR AHMED,
        Defendant, and

IFTIKAR AHMED SOLE PROP; *et al*
        Relief Defendants.

Civil Action No. 3:15-cv-675 (JBA)

August 26TH, 2019

**DEFENDANT'S REPLY TO RECEIVER'S OBJECTION [DOC. #1250] TO DEFENDANT'S EMERGENCY MOTION [DOC. #1244] FOR THE IMMEDIATE REMOVAL OF JED HORWITT AS RECEIVER AND TERMINATION OF RECEIVERSHIP**

The *pro se* Defendant files this Reply to the Receiver's Objections [Doc. #1250, or the "Objection"] to the Defendant's Emergency Motion for the Immediate Removal of Jed Horwitt as Receiver and Termination of Receivership Due to the Gross Mismanagement of and False Statements made Regarding the Illegal Occupancy by former tenant in NYC Apartment #12F owned by Relief Defendants [Doc. #1244, or the "Motion"]. The Defendant reserves all rights.

**I.   Introduction:**

The Defendant is entirely perplexed and increasingly concerned as to how an alleged arm of the US Court, who is supposed to be a neutral party[1] and who is supposed to make completely

---

[1] In a bid to discredit the Defendant, the Receiver has stated that the Defendant has engaged in "misstatements of fact and law, feigned ignorance, incorrect assumptions and contrived outrage" [Doc. #1250 at 2] and engaged in "similar drama and outrage." [Doc. #1250 at 9]. This statement itself is tantamount to admission of guilt by the Receiver. The Defendant is simply stating the truth to this Court and all parties as to the Receiver's behavior in allegedly managing the Defendant's (and Relief Defendants') Estate. **The Defendant has every right to make the Court aware of the situation and**

1

truthful statements, continues to make false statements and continues to pursue an agenda that is completely contrary to this Court's orders.

While the Defendant has already stated many times that he does not believe a Receiver or Receivership is even necessary in this case, the Defendant takes issue with the Receiver and the Receivership for two specific reasons in this Motion:

1. The Receiver made false statements to *all parties, including the Court*, on the facts surrounding an asset in the Receivership Estate – specifically Apt. #12F; and

2. The Receiver has not managed the asset of Apt #12F in accordance with either the Defendant or the Relief Defendants' wishes – in fact, the Receiver has not even inquired, leave alone considered, about the wishes of the Defendant and the Relief Defendants before it was brought to the notice of the Court *via* Defendant's Motion.

## II.     Defendant's Objections to Receiver's "Facts Relative to Apartment 12F":

In this Section in his Objection, the Receiver lists the supposed "facts" surrounding Apt. #12F (or "12F"). The Defendant was not aware of any fact that involved any offer for the purchase of 12F [April 3, 2019, Doc. #1250 at 3] or for the continued and illegal occupancy by the squatter (which still continues to date) in 12F.

---

**bring to the attention of the Court that the Receiver deliberately and knowingly lied to this Court, and if doing so by the Defendant constitutes "misstatements of fact and law, feigned ignorance, incorrect assumptions and contrived outrage," so be it.  But the Receiver lied to this Court and that is the truth. The Receiver does not even refute and makes no showing to dispute that he lied to this Court and to all parties involved.**

The Receiver is supposed to be neutral and fair; however, he and his counsel have been anything but in this case. Indeed, the Receiver's counsel has called the Defendant "**rogue**," "**a loose cannon**," and "**a wild man**."  Surely such cannot be the words of a neutral and fair party, especially one who is supposed to be an "arm" of the Court. The Court has never, to Defendant's knowledge – ever referred to the Defendant in any such derogatory terms. Indeed, even the SEC – Defendant's fierce adversary in this dispute – has not referred to the Defendant in any vile and indecent terms. That the Receiver's counsel believes it can do so publicly is fundamentally against the mandate of a Receiver and against the decorum and professionalism of this Court.

*First*, the Receiver is not empowered to entertain any offer for 12F without the express authorization and Order of this Court and must take into account the "interests of the Defendant and the Relief Defendants" ("***If*** subsequently ordered by this Court, pursuant to such procedures as may be required by this Court and additional authority… and with due regard for the interests of the Defendant and the Relief Defendants, the Receiver will be authorized to lease or to sell…" (emphasis added) [Doc. #1070 at 14].

There is no Court order that has authorized the Receiver to make any enquiry or to unilaterally respond to any alleged purchase offer by the former tenant or to allow the Receiver to let the former tenant stay in 12F until the former tenant "compile[d] his final offer." [Doc. #1250 at 6]. The Receiver never informed the Defendant of any such offer in April 2019 or on August 5, 2019 (which were non-starters to begin with), nor did the Receiver discuss with the Defendant his wishes with respect to 12F, nor did the Receiver even ask if the Defendant (or the Relief Defendants) agreed with letting the former tenant stay in12F to "compile his final offer."

*Second*, the Receiver himself admits that he stated that he "believes it is in the best interest of the Receivership Estate to keep the Apartments vacant pending an order from this Court concerning the liquidation of the Apartment." [Doc. #1250 at 4-5]. That specific assertion "keep the Apartments vacant" meant that the Apartments ***were already vacant.*** **The Receiver lied to this Court.**

Indeed, the lease of 12F ended on July 14th, 2019 and as there was no motion put in front of the Court to extend the lease, it is understood and expected that 12F would be vacant after July 14th, 2019 and the Receiver's own words indeed underscore that point. The Receiver and the former tenant all knew that the lease ended on July 14th, 2019. There is absolutely NO provision allowing for an extension of the lease or the continued illegal occupancy by the former tenant (now an illegal squatter) in the lease that ended on July 14th, 2019. The Receiver never

3

brought to the attention of the Court that the former tenant was still illegally living in 12F. The Receiver never even confirmed that the former tenant was going to leave, as he was simply "[C]ontemplating that the 12F Occupants would vacate Apartment 12F since the term of their lease had just days earlier ended" [Doc. #1250 at 4]. That is absolutely not the way these assets are supposed to be managed. A Receiver is not supposed to "*contemplate*" what is occurring with the asset, especially one that is worth many millions of dollars. This Receiver does not know and has indeed, demonstrated his complete lack of knowledge of how to manage assets in the Estate.

*Third*, the Receiver unilaterally accepted a check for the continued illegal occupancy of 12F. There is no provision for a "use and occupancy" agreement either in the lease that had already expired, nor was there any authorization by the Defendant/Relief Defendants or an order of this Court. The Receiver should have rejected that check, rejected the request, and *immediately brought to the attention of the Defendant and the Relief Defendants **and the Court*** the situation with 12F. The Receiver has acted beyond his mandate and **lied to this Court**.

*Fourth*, it was the Relief Defendants who independently found out that 12F was still occupied by the former tenant and indeed, immediately inquired through their counsel as to the status of 12F on Monday, July 29th, 2019. It was ***only after this inquiry by the Relief Defendants that the Receiver finally admitted that the former tenants were still illegally occupying 12F.***

This is contrary to the statement that "[T]he Receiver's counsel then informed the Relief Defendant's counsel of the status of the 12F Occupants…" [Doc. #1250 at 6]. The counsel only informed the Relief Defendants' counsel **after the Relief Defendants inquired** why the former tenant, whose lease had expired on July 14th, 2019, was still occupying 12F as of July 29th, 2019. **The Receiver has lied to this Court.**

**The Receiver has demonstrated that he has mismanaged these assets and he has also not complied with the terms of the Court's Order, indeed having lied to this Court.**

4

**III.	Objections to Receiver's contention that "Receiver did not Re-rent Apartment":**

In this Section in his Objection, the Receiver simply pushes away any responsibility on allowing the former tenant to continue to occupy 12F.

*First*, all parties are well aware that the lease for 12F expired on July 14th, 2019. However, instead of proactively managing the situation, the Receiver states that "[T]he 12F Occupants simply on their own continued to occupy the apartment after July 14th" [Doc. #1250 at 8]. The Defendant is simply flabbergasted that the Receiver, who is supposed to be managing these assets as per the Court's Order [Doc. #1070], just "simply" allows the former tenant to "on their own continue[] to occupy the apartment" – how can a tenant just continue to occupy the apartment once the lease had expired? Clearly, **the Receiver is taking a blasé tone towards a contested asset worth many millions of dollars and that is under Second Circuit jurisdiction.  Clearly, the Receiver is mismanaging the asset** and is instead simply paying lip service to his mandate.

However, the Receiver then tries to justify his actions by bringing in New York law. Even this does not absolve the Receiver of his responsibility.  Indeed, the New York law cited by the Receiver [Doc. #1250 at 8] is ***not applicable*** here:

1. The Court has not allowed or authorized the Receiver to "accept" the "rent" and neither have the Defendant or Relief Defendants, who are the "landlord" here, agreed to accept it.

2. The Receiver himself says that "he was not accepting "rent"," but New York Real Property Law §232-c cited by the Receiver explicitly states that "if the landlord shall accept rent for any period subsequent to the expiration of such term…" [Doc. #1250 at 8]. If the Receiver did not accept "rent" as he states, but New York Real Property Law says it is "rent" then what is it?

*Second*, the case cited by the Receiver [Doc. #1250-1] is not applicable to this situation where the **Court has not ordered a "use and occupancy"** and where the Defendants and Relief Defendants were not even aware nor did they agree to such a situation. The case cited [Doc. #1251-1] simply grants the landlord value for the "use and occupancy" of the premises as it is "undisputed that all of the defendants continued to use and occupy the subject premises … subsequent to the expiration of the lease … without payment of the fair market value of the use of said premises as reasonable compensation to plaintiff" [Doc. #1250-1 at 3-4]. Not only that, the Plaintiff in that case, until the rent was increased, continued to accept the former tenant as a "use and occupancy" tenant. No such agreement was entered into, either explicitly or implicitly, here. The expired lease itself does not allow for such a provision either.

*Third*, the Receiver cites another case stating that "[L]iability for use and occupancy is not liability for rent under the lease." [Doc. #1250 at 8]. Then what is it? What is the liability for use and occupancy? Who undertakes that liability? Who is responsible? The Defendant has already shown that "use and occupancy" agreements are to be written and are to be used when a property is purchased [Doc. #1244 at 8-9] – neither of which has occurred in this case. The Receiver claims that he is not accepting "rent" but he has accepted payment and as per his citation of *Jaroslow v. Lehigh Valley R. Co.* has created a "holdover tenancy" by accepting payment from the former tenant, completely contrary to the Defendant and the Relief Defendants' wishes and without express authorization and order from this Court.

**IV.    Objections to Receiver's contention that "There is No Additional Risk of Harm to the Receivership Estate Arising from the Holdover Occupants":**

*First*, the Receiver demonstrably does not understand even the basic fundamentals of insurance issues; and hence astoundingly calls these "assertions [as] unsubstantiated and entirely

6

unfounded." [Doc. #1250 at 9] As such, the Defendant and the Relief Defendants do not take any liability for any issues or events that occur beyond July 14th, 2019.

The whole point is that without any written agreement between the owner of the 12F and the former tenant for any type of occupancy beyond the expiration of the lease, who is responsible for any issue that may arise? For example, if there were to be a fire in 12F and it led to the loss of life of a visitor or a domestic helper for example, is it the squatter who is responsible? Or the owner? Or the building? If there is an issue with equipment in 12F, who is responsible? If the former tenant damages 12F (beyond the paltry security deposit amount), who would be responsible? The Receiver apparently claims that he is not taking "rent" and that there is no "holdover tenancy" – so what is it then?

The truth is that the Receiver has left the Estate open to significant liability from the actions of a squatter who has no written agreement to be in 12F and who is apparently not paying any "rent."

*Second*, the former tenant is now living illegally in 12F and is a squatter. That is Defendant's point. As such, they must leave or be evicted immediately. This, and the motion practice on this issue, is yet another unnecessary drain on the Estate's resources and costs the Estate money – both for the Receiver's time, the Relief Defendants' counsel time and any counsel that may be needed to immediately evict the former tenant. The Receiver claims that "[T]he consequence of the holdover is that the occupants are subject to eviction and liable for use and occupancy." [Doc. #1250 at 9]. The increase in costs related to this is solely due to the Receiver's mismanagement, with the result that now an eviction must be pursued – yet another unnecessary cost to the Estate.

**The Receiver is unnecessarily costing the Estate money in his mismanagement of the Estate assets.**

*Third,* the Defendant has every reason to believe that the ""building management" could "decide that the unit cannot be rented" because the Receiver has not provided a renewal lease to the management company" [Doc. #1250 at 9] since that was explicitly stated by the building management. That they will not now do so, simply because it would be a violation of the Appointment Order has not been conveyed either to the Defendant or the Relief Defendants.

*Fourth*, the Receiver is now (yet again) contradicting himself. The Receiver had earlier stated that he "would not pay the $2,000 sublet fee;" however, "the Receiver [now] intends to pay the $2,000 sublet fee" [Doc. #1250 at 10, n. 4] even though "the Receiver intends to move forward with the eviction of the 12F Occupants."[2] [Doc. #1250 at 10]. So, the Receiver has unnecessarily cost the Estate and the asset an additional $2,000 expense (in addition to others) that would not have been incurred had the tenant left 12F prior to the lease expiration. The Receiver has mistakenly stated, "the sublet fee is due once a year." [Doc. #1250 at 10, n. 4]. <u>The annual sublet fee is not due if the apartment is not rented or occupied.</u> **The Receiver has placed the asset Apt. #12F <u>in the worst position</u> of (i) having to pay the $2,000 sublet fee even though there will be no tenant; (ii) having to incur additional costs to deal with this situation; and (iii) having to incur additional costs to evict the former tenant.**

*Fifth*, the Receiver misstates Ms. Ahmed's statements in saying that the Relief Defendants "share the understanding [that the $2,000 annual sublet fee was not due because there was no renewal lease.]" [Doc. #1250 at 10, n. 4]. That is a false statement and perhaps the Receiver should check with the Relief Defendants (and Defendant) before misstating facts. The Relief Defendants stated that "[t]here is no reason for that payment right now as there is no

---

[2] The Receiver continues to be vague about his intentions on 12F. It is already almost the end of August and the Defendant and Relief Defendants have repeatedly stated their desire to have the former tenant immediately evicted. There is no justification for the illegal occupation of 12F and the squatter must be evicted immediately.

8

renewal of the lease for [Apartment 12F]" *because there is no tenant and 12F is vacant*. Indeed, neither the Relief Defendants nor the Defendant would have ever have even envisioned a situation whereby the former tenant would be illegally squatting in 12F.

V.      **The Receiver was NOT truthful to this Court and the parties:**

The Receiver tries to paint a picture whereby he allowed the former tenant to illegally squat in 12F by "use and occupancy" and where he did not accept "rent" but he did accept payment. It is not a "holdover tenant" situation; neither the Defendant or the Relief Defendants were made aware of the situation (leave alone consent to it) nor did the Court order it.

*First,* the Receiver never informed the Defendant or the Relief Defendants that "the Receiver contemplat[ed] the eviction of the 12F Occupants thereby rendering the Apartment 12F vacant in the coming months." [Doc. #1250 at 10]. It should not have even come to this point of eviction and it is astounding that the Receiver casually calls this the "missing detail the Defendant makes so much about." [Doc. #1250 at 10]. This is **a significant detail in the management of 12F** and the Defendant has lost all confidence in the Receiver to manage any of the Estate's assets pending appellate review of this case.

*Second*, the Receiver again misstates to the Court that he "did not represent that both apartments were currently vacant" [Doc. #1250 at 10] even though he stated that "it is in the best interest of the Receivership Estate to keep the Apartments vacant" [Doc. #1237 at 2] and that he has "elect[ed] to keep the Apartments vacant until this Court rules." [Doc. #1237 at 3]. Clearly, the Receiver is misstating his own statements to the Court and to all parties. **The Receiver has repeatedly lied to this Court.**

*Third*, the Receiver has absolutely no right to "presume" anything about (i) the Defendant's "conversations with his wife" [Doc. #1250 at 11]; or (ii) what the Defendant knows about the status of the former tenant. The truth is that the Receiver did not keep the Defendant

9

informed about any issue with 12F. And upon information and belief, the Relief Defendants did not know at all, let alone "full well the status of the tenant residing at Apartment 12F at all relevant times." [Doc. #1250 at 11]. As the Defendant has already stated within, it was only after being asked by the Relief Defendants at the end of July if 12F was still occupied well after the lease expired, that the Receiver admitted to the situation now before the Court. **The Receiver did not, at all, inform the Relief Defendants or the Defendant of the situation until the Defendant filed his Motion on July 30th, 2019.** Instead **the Receiver continues to lie to this Court.**

Neither the Relief Defendants nor the Defendant knew that:

1. 12F was occupied beyond the expiration of the lease on July 14th, 2019;
2. the former tenant was even contemplating an offer to purchase 12F;
3. the Receiver was contemplating receiving such offer, even without Court authorization and Order; and
4. the former tenant paid $22,000 to continue to occupy 12F beyond the lease.

## VI. Conclusion:

The Receiver has proven himself to be a partial party to the detriment of the Estate in this case. He has not managed the assets of the Estate in "a manner to maximize[e] the value of the … Estate and minimiz[e] the expenses relating thereto" [Doc. #1070 at 14]. The current example of 12F only supports the Defendant's point.

**WHEREFORE**, for all the reasons originally stated in the Motion and now also reiterated in this Reply, the Defendant respectfully requests that the Court (1) immediately terminate Jed Horwitt as Receiver in this case; and (2) order the immediate eviction of the former tenant illegal from Apartment #12F.

Respectfully Submitted,

Dated:    August 26TH, 2019        /s/ Iftikar Ahmed
                                            _____
                                            Iftikar A. Ahmed
                                            C/O Advocate Anil Sharma
                                            Government Place East
                                            Kolkata 700069, India
                                            Tel: +91.98.30.089.945
                                            Email: iftyahmed@icloud.com
                                            *Pro Se*

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and served by electronic mail to:

| | |
|---|---|
| MR. NICHOLAS P. HEINKE, *ESQ*.<br>U.S. Securities and Exchange Commission<br>Byron G. Rogers Federal Building<br>1961 Stout Street, Ste. 1700<br>Denver, CO 80294<br>(303) 844-1071<br>e-mail: heinken@sec.gov | MR. MARK L. WILLIAMS, *ESQ*.<br>U.S. Securities and Exchange Commission<br>Byron G. Rogers Federal Building<br>1961 Stout Street, Ste. 1700<br>Denver, CO 80294<br>(303) 844-1027<br>e-mail: williamsml@sec.gov |
| MR. PAUL E. KNAG, *ESQ*.<br>Murtha Cullina, LLP<br>177 Broad Street, 4th Floor<br>Stamford, CT 06901<br>(203) 653-5400<br>Fax: (203) 653-5444<br>e-mail: pknag@murthalaw.com | MS. KRISTEN LUISE ZAEHRINGER, *ESQ*.<br>Murtha Cullina, LLP<br>177 Broad Street, 4th Floor<br>Stamford, CT 06901<br>(203) 653-5406<br>Fax: (860) 240-5758<br>e-mail: kzaehringer@murthalaw.com |