UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>  Plaintiff,<br><br>  v.<br><br>IFTIKAR AHMED,<br><br>  Defendant, and<br><br>IFTIKAR AHMED SOLE PROP; *et al*<br><br>  Relief Defendants. | Civil Action No. 3:15-cv-675 (JBA)<br><br><br><br>August 26TH, 2019 |

**DEFENDANT'S REPLY TO THE SEC'S RESPONSE [DOC. #1254] IN OPPOSITION TO DEFENDANT'S EMERGENCY MOTION [DOC. #1244] FOR THE IMMEDIATE REMOVAL OF JED HORWITT AS RECEIVER AND TERMINATION OF RECEIVERSHIP**

The *pro se* Defendant files this Reply to the SEC's Response in Opposition [Doc. #1254, "Opposition"] to Defendant's Emergency Motion for the Immediate Removal of Jed Horwitt as Receiver and Termination of Receivership Due to the Gross Mismanagement of and False Statements made Regarding the Illegal Occupancy by former tenant in NYC Apartment #12F owned by Relief Defendants [Doc. #1244, "Motion"]. The Defendant reserves all rights to all issues.

As is the SEC's usual stance, they have decided to call the Defendant's position "a re-litigation of issues already decided." [Doc. #1254 at 2]. It is no secret and the Defendant has made it clear that no Receiver is needed in this case and has already presented his reasons why in multiple filings. The Defendant has every right to update this Court and all parties of any mismanagement of assets and any false statements made by the Receiver.  The Receiver has in

1

this instance, gone beyond his mandate and has made blatantly false misstatements to this Court and to the parties about a disputed asset that is worth millions of dollars and has not followed Court Order.  Contrary to the SEC's usual and tired refrain of any Motion that the Defendant submits, this is most definitely not "a re-litigation of issues already decided." [Doc. #1254 at 2]

  *First*, it is entirely astounding that the SEC would not question why the Receiver did not act well ahead of time (as he should have if he was managing Apt. #12F properly) to enquire of the illegal tenant in Apt. #12F. All parties knew that the lease expired on July 14th, 2019 and indeed, the Receiver himself admitted to receiving an email from the building management on June 17th, 2019, well before the expiration of the lease, "inquir[ing] as to the status of any lease extension..." [Doc. #1250 at 4] and did not even "respond to [the building management's] request." [Doc. #1250 at 4].

  Indeed, the Receiver – in his mismanagement of the asset – did not even inquire of the tenant ahead of time, simply being content to let things stand and be complicit in the continued illegal occupancy of Apt #12F, without the knowledge or consent of the Defendant and Relief Defendants and without express authorization from this Court.  The Receiver completely ignored that the lease was expiring and did not even sound out the former tenant that the lease was expiring and that the apartment was expected to be vacant on July 14th, 2019.   This is a gross mismanagement of Apt #12F. There is absolutely no reason why there should even be a "holdover tenant" or "use and occupancy" – this situation should never have even arisen and has led to unnecessary waste of time and money, especially of the Estate, to now deal with this situation.

  *Second*, the SEC claims that the Receiver cannot legally evict the former tenant because he is "a "holdover" with certain rights under New York City law because he had legally occupied the unit for at least 30 days." [Doc. #1254 at 2]. The SEC misstates N.Y.C. Admin. Code § 26-

521, which is for "Unlawful eviction" – the Defendant is not asking the Receiver to unlawfully evict the illegal tenant or to use any physical force.  Contrary to the SEC's false assertions of the Defendant's Motion, the Defendant has nowhere said that the Receiver is to "engage in unlawful self-help to remove the tenant" [Doc. #1254 at 3] nor has the Defendant ever suggested such.  By all means, the Receiver must go through the proper process of eviction – whatever that involves – a Notice, the courts, etc., but this process should have started well before now and to the Defendant's knowledge, the Receiver has not even begun the process of removing or evicting the illegal tenant through legal means: "the Receiver *intends* to move forward with the eviction of the 12F Occupants." (emphasis added) [Doc. #1250 at 10].  Contrary to the SEC's assertions that the "Receiver has abided by New York City law," [Doc. #1254 at 3], the Receiver *has not even started the legal process* of evicting the illegal tenant.

Not only that, contrary to N.Y.C. Admin. Code § 26-521, the former tenant has not "lawfully occupied the dwelling unit for thirty consecutive days or longer"[2] – the lease expired on July 14th, 2019 and it is now the end of August 2019 – that is illegal occupancy of well over thirty days – indeed nearly forty-five (45) days – now.

*Third*, the SEC claims that keeping the apartments vacant would allow "Apartment 12F [to]… achieve materially higher sales prices and/or be sold more quickly and at lower cost"; [Doc. #1254 at 2, n.1] however, we are in this situation solely because of the Receiver's mismanagement of the process.  The Relief Defendants' former tenant in Apt. #12A vacated the apartment prior to the expiration of her lease on October 1, 2018, due to Ms. Ahmed's proper management of the process and timely communications with the former tenant of Apt. #12A.  There was no eviction or need to evict the former tenant in Apt #12A.  This current situation in

---

[2] https://law.justia.com/codes/new-york/2006/new-york-city-administrative-code-new/adc026-521_26-521.html

Apt #12F is **due solely to the mismanagement and lack of communication of the Receiver** with the illegal tenant in Apt #12F. Indeed, the Receiver's acceptance of the rental check on or around July 24, 2019 [Doc. #1250 at 5] may have even complicated the current situation. Contrary to the SEC's (again) mis-assertion that the "tenant has refused to vacate after the expiration of his lease," [Doc #1254 at 3-4], the reality of the situation is that **the Receiver allowed the former tenant to continue to illegally occupy Apt #12F**.

Also, contrary to the SEC's assertions, having tenants does not "drive down the sale's *[sic]* price" [Doc. #1254 at 4], rather having tenants makes the apartment more attractive to prospective buyers versus having an empty apartment. The fact that the Receiver has mismanaged Apt #12F and the tenant is still illegally occupying Apt #12F simply means and is enough evidence that the Receiver is not qualified to manage these multi-million dollar assets and has nothing to do with having tenants if a sales process eventually is in place.

*Fourth,* the SEC shockingly claims that "the Receiver has done exactly what it was ordered to do: manage this asset (and others) with the dual objective of maximizing its realizable value and minimizing the expense charged thereto." [Doc. #1254 at 3]. The Receiver never spoke with the former tenant prior to July 14th, 2019 about his vacating Apt. #12F, never responded back to building management on their email dated June 17th, 2019 concerning a potential lease extension, never kept the Relief Defendants or the Defendant apprised of the situation, and has collected funds from the tenant so that he can continue to illegally stay in Apt #12F! How do these actions "maximize[e] [the]… realizable value and minimize[e] the expense charged thereto?" If anything, these actions detract from the value of the asset and cost both the asset and the Estate significant expenses, directly against the "dual objective" stated by the Court in managing these assets.

And now the Receiver, through his gross and utter mismanagement of the entire process, has to initiate an eviction. These actions (or lack of) hardly constitute the Receiver managing the asset with the "dual objective of maximizing its realizable value and minimizing the expense charged thereto." These unnecessary expenses are now substantially higher than they would have been had the Receiver been proactive in managing Apt #12F and in keeping all parties informed of the situation.

Who will pay for the eviction? Who will pay for the Receiver's time spent on this because he did not take the necessary precautions well ahead of time?

Because the SEC believes that the Receiver has "minimized the expense charged thereto," the Court should order that the SEC should pay for the time and money spent on rectifying this current situation and should not burden the Estate when it is solely due to the mismanagement of the asset and the vacate process by the Receiver.

*Fifth*, the SEC has left the management of the assets to the Receiver, who is supposed to be managing these assets "subject to consultation with the Defendant and the Relief Defendants" [Doc. #1070 at 14]. Not only did the Receiver not consult either the Defendant or the Relief Defendants, the Receiver clearly and unambiguously lied to the Court and to the parties about the status of Apt #12F. Had the Receiver even referenced the current situation in his Opposition to Rent the Apartments [Doc. #1237] (which he did not), Defendant would have asked him about it. The Receiver clearly did not even allude to the fact that Apt #12F was not vacant, because it directly contradicted his position that "it is in the best interest of the Receivership Estate to keep the Apartments vacant" [Doc. #1237 at 2]. Not only did the Receiver not allude to the situation with Apt #12F, he also deliberately hid it from the Court and the parties until the Relief Defendants – upon learning from an independent source at the end of July 2019 that Apt #12F was still occupied – actively confronted the Receiver about it.

The Defendant filed his Motion on July 30, 2019, just one day *after* he learned about the "use and occupancy" situation. And contrary to the SEC's claims – neither the Defendant nor the Relief Defendants had **any reason** to believe that Apt. #12F was not vacant, especially given the Receiver's repeated comments about "[K]eeping the Apartments Vacant" [Doc. #1237 at 2] and "[I]n electing to keep the Apartments vacant…" [Doc. #1237 at 3] and his repeated and adamant statements opposing the Relief Defendants Motion to Rent the Apartments [Doc. #1220].

*Lastly*, the Court should order the tenant to immediately vacate Apt. #12F. The lease extension for July 15th, 2018 to July 14th, 2019 is clear that "[T]he extension of the Lease is subject to Condominium approval and court approval of this Lease." In addition, Section 23(E) of the Lease Agreement clearly states that "If Landlord takes possession of the Unit by Court order, or under the Lease, Tenant has no right to return to the Unit." This Court can order that the Landlord can take possession of this Unit by Court Order. And if this Court cannot do so, then the Court must order that the Receiver promptly initiate eviction proceedings and to keep all parties apprised of the situation.

The SEC astoundingly states that "[G]iven that there is no accusation of the tenant damaging Unit 12F or otherwise diminishing the value of the asset, and because the tenant is paying for his use and occupancy, there is no reason for this Court to order the tenant to immediately vacate Unit 12F." [Doc. #1254 at 4]. It is beyond clear that the SEC entirely misses the point by their very short-sighted statement and jaundiced prejudice to oppose anything and everything that the Defendant submits to this Court. While the *physical* attributes of Apt. #12F may be fine (as per the Receiver), the illegal tenant is clearly diminishing *the value of the asset and of the Estate* – by not leaving voluntarily, *there are additional costs being expended to evict the illegal tenant*.

## CONCLUSION

**Wherefore**, for the Reasons stated in the Motion and this Reply, the Defendant respectfully requests that the Court (1) immediately terminate Jed Horwitt as Receiver in this case; and (2) Order the immediate eviction of the illegal current occupancy of Apt. #12F by the former tenant.

Respectfully submitted,

Dated: August 26TH, 2019  /s/ Iftikar Ahmed

Iftikar A. Ahmed
C/O Advocate Anil Sharma
Government Place East
Kolkata 700069, India
Tel: +91-983-008-9945
Email: iftyahmed@icloud.com
*Pro Se*

**CERTIFICATE OF SERVICE**

       I hereby certify that a copy of the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and served by electronic mail to:

| | |
|---|---|
| MR. NICHOLAS P. HEINKE, *ESQ*.<br>U.S. Securities and Exchange Commission<br>Byron G. Rogers Federal Building<br>1961 Stout Street, Ste. 1700<br>Denver, CO 80294<br>(303) 844-1071<br>e-mail: heinken@sec.gov | MR. MARK L. WILLIAMS, *ESQ*.<br>U.S. Securities and Exchange Commission<br>Byron G. Rogers Federal Building<br>1961 Stout Street, Ste. 1700<br>Denver, CO 80294<br>(303) 844-1027<br>e-mail: williamsml@sec.gov |
| MR. PAUL E. KNAG, *ESQ*.<br>Murtha Cullina, LLP<br>177 Broad Street, 4th Floor<br>Stamford, CT 06901<br>(203) 653-5400<br>Fax: (203) 653-5444<br>e-mail: pknag@murthalaw.com | MS. KRISTEN LUISE ZAEHRINGER, *ESQ*.<br>Murtha Cullina, LLP<br>177 Broad Street, 4th Floor<br>Stamford, CT 06901<br>(203) 653-5406<br>Fax: (860) 240-5758<br>e-mail: kzaehringer@murthalaw.com |