**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

            Plaintiff,

    v.                                                  Civil Action No. 3:15-cv-675 (JBA)

IFTIKAR AHMED,

            Defendant, and

IFTIKAR AHMED SOLE PROP; *et al*

            Relief Defendants.                          September 03ᴿᴰ, 2019


**DEFENDANT'S RESPONSE IN OPPOSITION TO THE "SECOND INTERIM
APPLICATION FOR PROFESIAL *[SIC]* FEES AND EXPENSES INCURRED BY
THE RECEIVER AND HIS PROFESSIONALS" [DOC. #1249]**


The *pro se* Defendant submits this Response in Opposition ["Second Opposition"] to the

Receiver's "Second Interim Application for Profesial *[sic]* Fees and Expenses Incurred by the

Receiver and his Professionals." [Doc. #1249, or the "Second Application"]. The Defendant

reserves all rights to all issues and fully incorporates his Opposition [Doc. #1183 or the "First

Opposition"] and Sur-Reply [Doc. #1222-1 or the "Sur-Reply"] to the Receiver's First

Application for Fees and Expenses [Doc. #1160 or the "First Application"] into this Opposition.

The Court must deny the Second Application for the same reasons as the Defendant

outlined in his First Opposition to Receiver's First Application:  the Receiver's fees are

excessive, duplicative, unreasonable and unjustified; the Receiver has not provided any benefit at

all to the Receivership Estate to justify such excessive and unjustified expenses; the Order

Appointing Receiver is under appeal; the Receiver is proven beyond any reasonable doubt to be

1

a biased party and an agent of the Plaintiff; the Court has no jurisdiction to impose additional penalties on the Defendant alone and thus create a perverse incentive by paying the Receiver out of funds or assets above the judgment amount; it is inequitable for the Court to pay a Receiver who solely benefits the public (and not the Defendant) out of funds belonging to the Defendant when the Court has repeatedly denied funds for counsel to the Defendant (in violation of his due process rights)  and even for his medical treatment for cancer despite the Receiver's own confirmation of tens of millions of dollars of assets over and above the judgment amount.

The Defendant reserves all rights to all issues and does not waive any right by way of this Second Opposition or his earlier First Opposition or Sur-Reply.


## I.       FIRST OPPOSITION AND SUR-REPLY.

The Defendant incorporates his complete First Opposition [Doc. #1183] and Sur-Reply [Doc. Doc. #1222-1] into this Opposition.  For the convenience of the Court, the Defendant does not repeat the arguments here (and fully incorporates those arguments from his First Opposition and refers the Court to his First Opposition), but the Defendant opposes the Receiver's Second Application for the same reasons as outlined in his First Opposition and Sur-Reply and also addresses additional reasons in this Second Opposition.


## II.      THE RECEIVER'S FEES ARE NOT JUSTIFIED IN THIS CASE.

The Defendant incorporates and reiterates his position that a Receiver was not needed in this instant case and the Receiver's Fees are not justified in this case [First Opposition at 1-7]. As the Defendant further explains in this Second Opposition, the Receiver has created no economic

2

benefit to the Estate during the time period under the Second Application, but has rather cost the Estate money and the Court must look at attorney's fees as a loss to the Estate.[1]

"[A]mong the factors considered by the Court in exercising its discretion to determine the appropriate award of fees is the cost-efficiency of the Receiver's work in terms of assets recovered for victims, *see* **SEC BILLING INSTRUCTIONS** at 26, "the complexity of problems faced, the benefits to the receivership estate, the quality of the work performed, and the time records presented," *SEC v. Fifth Ave. Coach Lines, Inc.*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973)." See *SEC v. Illarramendi*, Civil No. 3:11CV78 (JBA), at *3 (D. Conn. Dec. 5, 2013). Under these factors, the Receiver's fee request is outrageously excessive and unjustified.

*First*, the Receiver did not have to recover any assets for the alleged victim, as by his own admission, there are more assets that the Judgment amount and *indeed, more assets than even this Court's own Order of the maximum amount of assets that can be frozen.* This Court – prior to ordering a Judgment – had ordered that a maximum of $89 million[2] in assets be frozen [Doc. #829] and the Receiver, using conservative estimates and not even ascribing a value to certain frozen assets, now depicts a value of frozen assets under the Receiver of $89,851,899.48[3] [Doc. #1249-5 at 5]. Not only is the value of the frozen assets greater than the Judgment amount by tens of millions of dollars, it is now greater than this Court's own order of freezing a maximum of $89 million in assets. While this Court legally cannot keep assets over and above the Judgment amount frozen, it surely cannot keep assets above its own order of a maximum permissible freeze amount frozen.

---

[1] "…receivership… where the goal is…to manage the estate in such a way as to maximize recovery while minimizing loss, including losses caused by attorney's fees." (emphasis in original) See *SEC v. Aquacell*
[2] The Court froze "[t]he assets, funds or other property held by or under the direct or indirect control of Defendant and Relief Defendants… up to the amount of $89,000,000. [Doc. #829 at 5]
[3] This does not include the value of Defendant's Oak assets of approximately $40 million, which continue to remain frozen and under Second Circuit jurisdiction while an appeal is pending.

**_This Court must immediately release the excess of funds over its own Order of a maximum permissible freeze amount of $89,000,000[4] directly to the Defendant.[5]_**

_Second_, as the Defendant has made clear, there is no complexity in managing assets that are mostly liquid and real estate (and additional assets that are managed by others) and that are tens of millions of dollars above the Judgment amount. Indeed, the Receiver _himself_ should be alerting this Court and all parties when the value of the frozen assets is greater than even this Court's own Freeze Order.  However, selfishly, the Receiver is content to simply let the value of assets continue to be tens of millions of dollars greater than the Judgment amount and even greater than this Court's own order of a permissible maximum asset freeze. This is yet another example of the Receiver's inefficiency and severely jaundiced bias against the Defendant, which continues to prejudice the Defendant and adversely affect him.  Instead, the Receiver astonishingly invoices $94,677.89 to the Defendant and has done nothing to provide _any_ economic benefit to the Estate during this time.  _The Receiver has not provided any benefit to the Estate during this time, but has rather lost value to the Estate by way of requesting his excessive and unjustified fees and by deliberately keeping mum about the value of the assets frozen under the Receiver._

_Third_, the Receiver and his counsel continue to double (and at times even triple!) bill on their time records, continue to be inefficient with the management of their time in this matter, and continue to invoice the Defendant for matters that have nothing to do with this case or that are premature to deal with at this time.  The Defendant provides his objections to the time

---

[4] As Defendant has detailed in his Motion for Mistrial [Doc. #1157 at 4-6], this freeze amount is erroneous and should instead be a maximum of $85 Million with the disgorgement amount as presently determined by this Court itself.

[5] Defendant will work with the Receiver to transfer the funds directly to the Defendant.

records throughout this Second Opposition and gives additional detail in **Section IX** of this Second Opposition, titled "**Specific Items and/or Groups of Items.**"

It is clear that the Receiver has done nothing during the Second Application that has provided any economic benefit to the Estate and his application for fees must be denied on this basis alone.

### III.    THE RECEIVER'S FEES CONTINUE TO BE EXCESSIVE FOR THE DUTIES PERFORMED.

The Defendant incorporates, reiterates and adds to his argument that the Receiver's Fees are Excessive for the Duties Performed [First Opposition at 8-10].  It is well known that the Receiver and his hired professionals "must exercise proper billing judgment in seeking fees from the receivership estate, and should limit their work to that which is reasonable and necessary."[6] The Receiver has not only improperly billed the estate, but he has performed work that is unnecessary and frivolous only to line his own pockets.

*First*, any increase in the value of assets under the Receivership is a direct result of the investment decisions made by parties other than the Receiver (such as the Defendant and Relief Defendant Ms. Ahmed) and that were put into place years prior to any asset freeze. The Receiver just cannot take any credit for any increase in the value of assets during this (or any other) time period.

*Second,* the Receiver stated in his First Application that "the extent of fees and expenses incurred for the first Compensation Period of the receivership will not necessarily correspond to future applications due to the extent of initial start-up work required to secure and investigate the assets and submit the Report of Receiver." [First Application at 27]. However, the actual fees

---

[6] *Aquacell Batteries*, 2008 WL 276026, at *2. ("Part of 'determining the nature and extent of the services rendered'…includes an analysis as to the reasonableness of the services rendered," and the expenses for which reimbursement is sought must have been "actual and [] necessarily incurred.").

and expenses in the Second Application not only belie that statement, but also support the fact that the Receiver is simply paying lip-service to his claims of efficiently managing his and his counsel's fees and expenses and is only indulging in an attempt to line his own pockets.

For example, the Receivership continues to be inefficiently managed just by analyzing the numbers. In the First Application, there was a total of 646.3 hours worked over 96 days, which means that someone was working on this case for an astounding **7 (seven) hours every day** since the appointment of Receiver.  Either the Receiver has very little of anything else to do on any day, or mistakes the Receivership Estate to be his own "TARP program" for full employment package for everyone in his firm.   This is absolutely unacceptable and egregious for this case and it is astonishing how the Receiver blatantly submits excessive and unnecessary billing to this Court and the parties, to be paid for by the Defendant!

As the Defendant has pointed out in his First Opposition, that is excessive for the facts of this case and the Court should take particular notice of this, especially because this has simply continued into the time duration covering the Second Application.

***In the Second Application, the same inefficiency of management of assets continues*:** there was a total of 441.90 hours worked over 65 working days[7], which again means that someone was working on this case for **7 (seven) hours[8] every working day** during the time period covered by the Receiver's Second Application.  Not only did the Receiver say that expenses would be front-loaded (i.e. not continue at the same rate), but again, these expenses and fees are excessive in a situation where there are mostly liquid and near-liquid assets frozen,

---

[7] Calculated as the number of weekdays between April 1, 2019 to June 30, 2019, and does not account for holidays such as Easter and Memorial Day, which would further increase the amount of hours spent on this case per working day.
[8] Calculated as 441.90 hours divided by approximately 65 business days for the time period covering the Application.

where there is no real active management that needs to happen and where there are tens of millions of dollars of assets frozen above the judgment amount.

**These invoices are all clearly unrealistic and excessive and a complete and unnecessary drain on the Estate with no corresponding value produced.  There is absolutely no justifiable reason why and no realistic scenario where the Receiver and his counsel are working nearly seven (7) hours every day on this matter.**

*Third*, it is clear that the Receiver is inefficiently managing the Estate. It is simply inconceivable that the Receiver is invoicing his Second Application at a run-rate of over $30,000[9] per month! That is highly excessive and completely unnecessary given the facts of this case and is contrary to the Receiver's statement that fees and expenses would be "front-loaded." ***Invoicing over $30,000 a month in this case is clearly excessive and unjustified*** where again, there are mostly liquid and real estate assets frozen, there are tens of millions of dollars frozen above the Judgment amount and no real active management of these assets is needed.

*Fourth*, the Receiver has simply outsourced the administration of the Estate to his counsel, who are charging exorbitant fees. As the Defendant has already explained, the Receiver is providing legal services to himself. As such, there is no need for additional counsel for the Receiver, who is himself a lawyer and providing legal services.  Indeed, the Defendant, who is *pro se,* has been denied counsel throughout this entire litigation and has had to be and continues to be *pro se.*  It is just ***outrageously inequitable*** for the Court to provide counsel to the Receiver (a lawyer with many decades of experience) and pay them (and him) from the Defendant's assets

---

[9] Calculated as $92,879.20 divided by three months.

when the Court has denied the Defendant (who has no legal background at all) the use of his own legally earned funds for the retention of counsel for himself.[10]

*Fifth*, the Defendant is *pro se* and explains his opposition to certain groups or classifications of the Receiver's Fee Application throughout this Second Opposition, but also specifically in **SECTION IX** of this Second Opposition, which is titled "SPECIFIC ITEMS AND/OR GROUPS OF ITEMS." This opposition to certain classifications or groups does not waive the Defendant's position that the Receiver's fees should be substantially reduced, but as in the First Opposition, is an addition to help the Court in understanding the Defendant's opposition to the payment of Receiver fees as requested in the Second Application.

## IV.   THE RECEIVER'S FEES MUST BE PAID FROM THE JUDGMENT AMOUNT AND THE ORDER IS UNDER APPEAL.

The Defendant reiterates his position [First Opposition at 11-14] that if the Court believes that the Receiver should be paid his fees, then they must be paid from within the Judgment amount and not be an additional penalty on the Defendant.  It also renders a preserve incentive – as has already been depicted – whereby "the possibilities for abuse [are] limited only by the size of the estate" *SEC. v. Northshore Asset Mgt.*, 05 Civ. 2192 (WHP), at *3 (SDNY Sep. 29, 2009).

As the Defendant has also already stated, it is highly inequitable for the Court to be paying the Receiver from the Defendant's legally earned funds when the Defendant himself has been denied the use of those funds for his own purposes,[11] including for the retention of counsel.

---

[10] The Defendant's **MOTION FOR MISTRIAL** is fully briefed and remains pending. (Docs. ##1135, 1146, 1147 and 1157).

[11] *See Almeida v. Holder*, 588 F.3d 778, 788 (2d Cir. 2009) ("The rights and benefits of property ownership are, after all, many... [T]hey include not only the right to actual possession of a thing, but also the right to exclude others from possessing it, the right to use it and receive income from its use, the right to transmit it to another...").

Not only that, the Receiver Order (and additional rulings) are under appeal [First Opposition at 14-15] and appellate rulings could very well render a different outcome than the current situation. Not only would the Receiver be personally liable for the management of assets above the judgment amount (and the judgment could be reduced based on the appellate courts' rulings), the appellate courts could rule that the Receiver must be paid from within the Judgment amount for reasons including but not limited to: he does not represent the Defendant's interests.

## V.    THE RECEIVER IS A BIASED PARTY AND DOES NOT REPRESENT THE DEFENDANT, BUT RATHER HAS IRREVERSIBLY HURT AND DAMAGED THE DEFENDANT'S INTERESTS.

The Receiver continues to be a partial party in this matter.  The Defendant incorporates and reiterates his position [First Opposition at 18-22] that the Receiver is not a neutral party, contrary to his mandate and the reason why a Receiver is appointed.

*First*, not only has the Receiver been unprofessional towards the Defendant [Doc. #1258 at 1-2, n. 1], the Receiver has taken positions that are directly contrary to the Defendant's interests in every single submission during this time period covering the Second Application.  ***It is simply inequitable to force the Defendant to pay for someone who takes an adverse position to his own interests.***  For example, the Receiver has opposed Defendant's request for information regarding his private investments [Doc. #1141][12], which is ludicrous as the Defendant not only has legally binding investor's right to financial information regarding his own investments, the Receiver is also not intending to use the Defendant's private investments towards securing the SEC's judgment. [listing these assets under "**Assets not needed to pay Judgment at this time**" Doc. #1130-2 at 3-4]. The Receiver has also opposed [Doc. #1156] the

---

[12] For example, see SMK entry on 4/22/2019 "Revise objections to defendant's motion for access to information." [Doc. #1249-4 at 9]; and see CHB entry on 4/23/2019 "Review objection to IAA motion re private investments" [Doc. #1249-4 at 10]

Defendant's Motion to Sanction the SEC [Doc. #1139]; and objected [Doc. #1216] to the Defendant's Motion to Stay in Light of Petition to the US Supreme Court [Doc. #1187].  The Receiver has even objected [Doc. #1240] to the Defendant's Motion for Arbitration [Doc. #1225].  These issues have absolutely nothing to do with the Receiver or with the Receivership Estate, but have everything to do with the conduct of the parties to this case, the merits of this case, or with the Defendant's assets that are still frozen and under Second Circuit jurisdiction but apparently not under the Receiver.  Indeed, the Receiver has taken the position contrary to the Defendant's interests ***each and every time.***  The Receiver wants the Defendant to pay for his adversary's bills! And at the same time, the Defendant has been denied the use of his own legally earned funds for ***his own legal defense.***   It just cannot get more perverse or ludicrous as to render this process a complete and utter sham, highly inequitable and unjust.

Second, the Receiver continues to have substantial discussions with the SEC, the Defendant's adversary in this case, on various issues in this matter and on the Receiver's positions on his responses before even filing his submissions to the Court.  The Defendant should not be paying for the Receiver's conversations with the SEC to guide them on how to respond. Until this Court orders otherwise, the Defendant has every right to review and opine on the Receiver's fees, especially as the Court has *not released any funds that Defendant legally earned that are above the judgment amount* for Defendant to retain *legal counsel for himself* in any of his matters, but is instead using the Defendant's own legally earned funds – which Defendant strongly opposes – to pay the Receiver who *does not in any way benefit the Defendant.*

During this time period under the Second Application, the Receiver has spoken with the SEC for a total of **28 hours** and at a cost of $7,408.[13]  Indeed, if the Defendant is paying for the

---

[13] In all instances in this Opposition where Defendant provides hours and costs, the Defendant has eyeballed the invoice entries and has estimated these hours and amounts based on the description in the

Receiver's fees and expenses (i.e. coming from above the Judgment amount), then the Defendant is the Receiver's client.  And the Defendant cannot and does not agree with the Receiver speaking with his adversary – the SEC – without his approval.

Not only that, the Receiver clearly depicts his partiality as he runs his position on various filings and issues by the SEC multiple times *before* filing his own submissions to the Court:

(i)     4/1/2019     CHB/SMK     **Multiple** calls with the SEC "re Receiver Report and liquidation proposal;" "[E]xchange correspondence with SMK re updated liquidation plan, draft correspondence to MW and NH re same." [Doc. #1249-4 at 2]. The Receiver's Report was filed on 4/3/2019. [Doc. #1130].

(ii)    4/2/2019     CHB   Call with MW (SEC) re remaining issues in liquidation. [Doc. #1249-4 at 34]. The Receiver's Report was filed on 4/3/2019 [Doc. #1130]

(iii)   4/23/2019    CHB/SMK     Telephone conversation with SEC re: response to defendant's motion for access [Doc. #1249-4 at 10].  The Receiver's Response was filed the next day on 4/24/2019 [Doc. #1141].

(iv)    5/10/2019    CHB          Call with NH (SEC) re recent IA filings, draft correspondence re same to SMK [Doc. #1249-4 at 15].

(v)     5/13/2019    SMK          Telephone conference with SEC re: motion for contempt and appointment of receiver.  The Response was "review[ed] and revis[ed]" [Doc. #1249-4 at 15] that day and the Receiver's Response was filed that day [Doc. #1156].

(vi)    5/30/2019    SMK          Conference call with SEC re: most recent filings by HSC and Ahmed [Doc. #1249-4 at 19].

(vii)   6/5/2019     SMK          Telephone conference with SEC to discuss opposition to receiver's report and MC's motion for payment of fees and retainer or to withdraw [Doc. #1249-4 at 20].

(viii)  6/17/2019    SMK          Conference call with Mark Williams re: remaining issues with receiver's report. [Doc. #1249-4 at 22].  On same day, "[I]nitial revisions to reply to responses to receiver's report" and "[R]eview and revise latest draft and reply to responses to receiver's report." *Idem*.  The Response was filed that day [Doc. #1203].

---

various line items of the four invoices submitted and reserves the right to update them if new information emerges.

It is telling that the Receiver has ***not once*** discussed *any* filing with the Defendant. It is clear that the Receiver is simply aiming to please their masters, the SEC, and that the SEC is their client, a fact that is supported by the positions taken by the Receiver since his appointment here as well as by the fact that the Receiver runs his positions by the SEC before filing his submissions to the Court.   And so it is only logical that the masters (the SEC) should pay their piper (the Receiver) for playing their tunes.  It is only equitable that the client (the SEC) should pay their agent (the Receiver) and not the Defendant.

This extreme partiality and bias, which has been depicted multiple times since the Receiver's Appointment, is against the mandate of this Court ("to manage and maximize the value of frozen assets under the guidance of a ***neutral*** third party" (emphasis added) [Doc. #1070 at 5]) and the reason why a Receiver is appointed in the first place.

## VI.    THE SEC'S SUPPORT FOR RECEIVER'S PAYMENT MUST BE IGNORED.

The Defendant incorporates and reiterates his position [First Opposition at 15-18] that the SEC's support for payment to the Receiver must be ignored.  Typically, "[O]pposition or acquiescence by the SEC to the fee application will be given great weight." *Byers*, 590 F. Supp. 2d at 644 (quoting *First Ave. Coach Lines*, 364 F. Supp. at 122). However, courts have stated that "[N]o statute compels such a conclusion, however, nor do[es] [the Court] believe such great deference is warranted in this instance." *In re Alpha Telcom, Inc.*, No. CV 01-1283-PA, at *6 (D. Or. Oct. 27, 2006).

This Court should decline to give any weight to the SEC's opinion in this Second Fee Application, as the SEC's opinion should be considered only in a situation where the amount of assets collected is less than judgment amount or if this Court reimburses the Receiver from funds encompassed within the judgment (within the $64.4MM amount). Otherwise, only the Defendant

and the Relief Defendant's opinion must be given "entire weight," if any payment is coming from them and their assets above the judgment amount.

As in the First Application, the Receiver has confirmed "[T]he Commission has expressed that it does not oppose the relief requested in this Second Application" [Second Application at 2]. This is to be expected, given the Court's rulings that simply incentivize the SEC to "rubber-stamp" the Receiver's Fee Applications.  The Court must decline to give any weight to the SEC's opinions on this Application.

## VII.    THE RECEIVERSHIP MUST BE TERMINATED IMMEDIATELY.

The Defendant incorporates and reiterates his position [First Opposition at 22-26] that the Receivership must be terminated immediately.  The Defendant has expressed multiple times that the Receiver was not needed in this case and the Receiver is "costing" the Estate money, not generating the Estate *any* value. Indeed, it is this Court that has stated that "fees requested are justified by the net economic benefit that they will provide to the estate." *SEC v. Illarramendi*, Civil No. 3:11cv78 (JBA), at *1 (D. Conn. Jan. 16, 2014). The Court must also look at the Receiver's fees as a loss to the Estate.[14] ***There was absolutely <u>NO</u> economic benefit to the Estate during this period – indeed, there were only significant and unnecessary expenses that the Receiver imposed on the Estate.***

The Defendant will go into more detail in **SECTION IX** titled "SPECIFIC ITEMS AND/OR GROUPS OF ITEMS" of this Second Opposition, but two significant examples are:

(i)    The billing to the Estate of the potential appointment of the Receiver in an unrelated case (the MA Civil Matter). This is a business expense of the Receiver's firm and should absolutely not be charged to the Estate. Based on the invoices

---

[14] "…receivership… where the goal is…to manage the estate in such a way as to maximize recovery while minimizing loss, including losses caused by attorney's fees." (emphasis in original) See *SEC v. Aquacell Batteries* Case No. 6:07-cv-608-Orl-22DAB, at *9 (M.D. Fla. Jan. 31, 2008)

submitted, the Defendant has estimated this to be nearly **$9,000** in unnecessary expenses to the Estate.

(ii)     The billing to the Estate of any amount spent on preparations to liquidate the apartments. The Court has made it clear that only "*[I]f* subsequently ordered by this Court…" (emphasis added) [Doc. #1070 at 14]. It is entirely premature for the Receiver to speculate and indeed highly presumptuous for the Receiver to take actions related to the potential monetization of the apartments without any order from this Court and without "due regard for the interests of the Defendant and the Relief Defendants" *Idem.*  Based on the invoices submitted in this Second Application, the Defendant has estimated this amount in premature and unnecessary expenses to be approximately **$9,800**.

Just these two examples alone ***are approximately 20% of the total amount*** requested in the Second Application. The fact that the Receiver even billed for these actions shows the mismanagement and abuse that ensues with the appointment of a Receiver whereby "the possibilities for abuse [are] limited only by the size of the estate." *SEC. v. Northshore Asset Mgt.*, 05 Civ. 2192 (WHP), at *3 (SDNY Sep. 29, 2009). This Court should not allow that to happen.

## VIII.     IN THE ALTERNATIVE, IF THIS COURT IS INCLINED TO GRANT FEES TO THE RECEIVER, IT MUST REDUCE THE FEES SUBSTANTIALLY AND IMPOSE A 100% HOLDBACK UNTIL ALL APPEALS ARE CONCLUDED.

The Defendant believes that the Receiver should not be paid at all. Or that if he is paid, he should be paid from within the Judgment amount and by those parties who are benefiting from the Receiver – namely the Judgment and/or the SEC.

In this Second Opposition, the Defendant incorporates and reiterates his position in the First Opposition [First Opposition at 26-29] that "if this Court is inclined to grant the Receiver's fees (which the Defendant vehemently opposes), the Court should apply a minimum of a 50% discount to the requested fees and withhold 100% of the amount" as Courts have discretion to award the amount of compensation that can or will be awarded to a court-appointed receiver. See

14

*SEC v. Byers*, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008); *United States v. Code Prods. Corp.*, 362 F.2d 669, 673 (3d Cir. 1966).

The Court should also hold any payment to the Receiver in abeyance until the final conclusion of this matter when all appeals have been heard (if the Court keeps the Receivership that long), as even the Receiver himself stated that "[O]verall results can be determined only at the conclusion of the Receivership Proceeding." [Doc. #1249 at 27]  This case does not justify the award of fees or expenses to the Receiver until any benefit that the Estate receives from him is determined.

Courts have allowed the "Receiver [to] apply for those fees at the conclusion of this litigation. Withholding fees until the conclusion of the lawsuit assists the Court in achieving its continuing goal of preserving funds held in the receivership estate for the compensation of the investors. This approach is common in SEC civil enforcement actions because it allows the Court to withhold fees until it is absolutely clear that a receiver's efforts will ultimately benefit the receivership estate. See *SEC v. Byers*, 590 F. Supp. 2d at 648. The Court derives the authority to award such reduced fees from its power to "fix the compensation" of receivers and their attorneys. Drilling, 69 F.2d at 418." *SEC v. Small Bus. Capital Corp*. Case No. 5:12-CV03237 EJD, at *4 (N.D. Cal. Aug. 7, 2014).  As such, the Court should wait until the conclusion of all appeals before any fees or expenses are awarded to the Receiver so that any net economic benefit (if any) from the Receiver's actions can be determined and assessed.

## IX.    SPECIFIC ITEMS AND/OR GROUPS OF ITEMS ON EXHIBITS TO THE SECOND APPLICATION.

As in his First Opposition, the Defendant contests all of the Receiver's bills in his Second Opposition, but because he is *pro se* and uncertain of the proper procedure regarding line items,

the Defendant only gives some examples below to support his opposition of the payment of any fees or expenses to the Receiver. Should the Court request a line item audit by the Defendant, the Defendant would provide such to the Court. The Defendant reserves the right to bring additional issues on these invoices and exhibits, or any other matter regarding the Receiver's applications for fees and expenses, to the Court's attention at a later date in time.

1.     **Doc. #1249-3, or Exhibit C:**

*First*, as in his First Opposition, the Defendant opposes all items in Doc. #1249-3 or Exhibit C in this Second Opposition. These items that the Receiver is looking to have reimbursed include: PACER expenses, online research expenses, title search, certified copies expenses, Federal Express expenses, copying expenses, travel charges, postage, and conference call expenses.

With respect to PACER and online research expenses, the Receiver does not explain what documents he accessed from PACER and what online research resulted in these invoices. Further, as indicated in the emails transmitting electronic filings in this case, the PACER system permits parties to download for free a copy of all case-related documents. Further, the Court denied the same relief that the Defendant requested toward payment of a $28.50 PACER bill, stating that "[S]hould Defendant desire the additional benefit of viewing documents in other cases or viewing documents in his case multiple times, he must bear that expense himself." [Doc. #773]. The Court must treat the Receiver the same way.

*Second*, the Receiver does not specify the need for such other services, such as copying. In addition, because this Court also denied Defendant any amount for travel expenses, any aid with conference call expenses and any aid with any of his attempts to litigate this case, any and all expenses that the Receiver is requesting reimbursement for on Exhibit C (Doc. #1249-3) must

16

also likewise be denied or removed.  The denial of these same or similar expenses for the

Defendant *has severely prejudiced the Defendant and has adversely impacted him as he was not*

*able to properly litigate his case(s).* The Court cannot allow the reimbursement of these expenses

to the Receiver.

2.    **Doc. #1249-4, or Exhibits D-1 to D-4 (in its entirety):**

*First*, concerning and indicative of the way the Estate is being managed, there are

multiple errors in the invoicing wherein the same activity is being billed twice by the same

person. There are multiple examples of this throughout the invoices, but the Defendant provides

only a few examples[15] for the Court's benefit below:

(i)    *See* CHB entry on 4/1/2019 "Exchange correspondence with SMK re updated
liquidation plan, draft correspondence to MW and NH re same" [Doc. #1249-4 at
2] versus CHB entry on 4/1/2019 "Exchange correspondence with SMK re
updated liquidation plan, draft correspondence to MW and NH re same" [Doc.
#1249-4 at 3]

(ii)    *See* SMK entry on 4/3/2019 "Read report before filing; coordinate filing" [Doc.
#1249-4 at 4] versus SMK entries on 4/3/2019 "Review plan of liquidation before
filing" and another entry on 4/3/2019 "Review proposed order before filing"

Presumably the two entries later that day are the same as the first entry as "read
report before filing" is equivalent to "review plan of liquidation before filing" and
"review proposed order before filing" and the two later time entries (0.40 and
0.30 hours) add up to the first time entry (0.70 hours)

There is an additional time entry on 4/3/2019 "Review and revise proposed order
approving Receiver's Report."  There is significant duplication of the same action
by the same person on the invoice.

(iii)    *See* JED entry on 4/8/2019    "Review/strategize/research/edit Motion for Advice
re: tax issues" for 4.7 hours versus JED entry on 4/8/2019 "Conference with SMK
and CB re: Motion to Advice" for 2.9 hours.  So which one is it? There is
definitely overlap between these two entries, but the Receiver has billed for both
separately.

---

[15] Should the Court want a line-by-line audit of each time that the same entry is entered twice on the
invoice, Defendant would be happy to provide such for the benefit of the Court.

(iv)     *See* SMK entry on 4/24/2019 "Conference call with Paul Knag re: B of A transfer, payment of legal fees and sale of apartments" [Doc. #1249-4 at 10] versus SMK entry on 4/24/2019 "Telephone conference with Attorney Paul Knag re: sale of apartments and release of funds for legal fees" [Doc. #1249-4 at 10]

(v)      *See* SMK entries on 6/17/2019 "revisions to reply to responses to receiver's report;" "review and revise latest draft and reply to responses to receiver's report;" and "final review and finalize omnibus reply to responses to receiver's report" [Doc. #1249-4 at 22].  Clearly there is some overlap in these entries that deal with the same issue and add up to a total of 10.5 hours on the same day

These items must be reconciled and only billed once.  You cannot have the same person billing twice for the same action on the same invoice and the fact that this occurs multiple times is simply evidence of the fraudulent time and record keeping indulged in by this Receiver in order to simply line his own pockets.

*Second*, and already addressed in the First Opposition, the Receiver does not explain why two people were needed on any conversation with the Defendant or the Relief Defendants, and why two attorneys were needed for any communication, meeting, or discussion with any other party. Courts have reduced any fees by the amount charged for other people who attended a conversation, hearing or dealt simultaneously with the same issue. See *In re 29 Brooklyn Avenue, LLC*, US Bankruptcy Court, EDNY, April 27, 2016 (reducing fees paid when more than one attorney was present). Assuming no more than one person was required, given at least two attorneys were always doing the same work, the fee total must be reduced by at least 50% if not more for this reason alone.

This continues to be concerning as the Receiver himself testified that his firm would not "double-bill, even if it's legitimate double-billing, in the sense of if two of us are dealing with the same issue we only bill for one person's time" [Doc. #1043 at 24:17-19, "Nov 28 Hr. Trans."]; and yet when the bills are submitted, the Invoices show the exact opposite of what he said.

18

As in the Receiver's First Application, there are multiple instances of bills for multiple attorneys for the same issue (each meeting, conference call, etc.), in the Second Application, but the Defendant provides just a few examples[16] for the Court's benefit below:

(i) *See* SMK entry on 4/1/19 "Call with SEC to address various issues with report and plan of liquidation" for 1.20 hours versus CHB entry on 4/1/19 "Additional call with Mark Williams (SEC) and SMK re Receiver Report and liquidation proposal" for 1.20 hours [Doc. #1249-4 at 2]

(ii) *See* SMK entry on 4/2/19 "Telephone conference with Paul Knag and Shalini Ahmed" for 0.60 hours versus CHB entry on 4/2/19 "Call with PK and SA regarding outstanding liquidation questions" for 0.60 hours

(iii) *See* JED entry on 4/8/19 "Conference with SMK and CB re: Motion to Advice" for 2.9 hours [Doc. #1249-4 at 5]. Not only did the Receiver bill for his time on this issue, so too did SMK and CB on the same day[17], resulting in ***triple billing for the same issue*** in a <u>*total cost of $2,354.80 just for this one meeting alone when the bill should have just been for one person alone – perhaps CB at $652.50*</u>. This is completely contradictory to the Receiver's testimony in Court whereby he clearly stated that "if two of us are dealing with the same issue we only bill for one person's time" [Doc. #1043 at 24:17-19, "Nov 28 Hr. Trans."] and is yet another blatant example of the inefficiency, mismanagement and wastage by the Receiver. .

(iv) *See* SMK entry on 4/23/2019 "Telephone conference with SEC re: response to defendants motion for access, inspection of apartments" versus CHB entry on 4/23/2019 "Call with MW/NH regarding outstanding issues in the receivership" [Doc. #1249-4 at 10]

(v) *See* SMK entry on 4/24/2019 "Meet with FTI in NYC" versus CHB entry on 4/24/2019 "Meeting with apartment broker and tour of apartments" – each of these entries was billed at 3.80 hours, *for a total of $2,135.60.* There is double billing for the same line entry by both attorneys.

(vi) *See* SMK entry on 5/6/2019 "Conference call with SEC re: motion to withdraw by MC, fee report" versus CHB entry on 5/6/2019 "Call with NH/MW and SMK re outstanding receivership estate issues" [Doc. #1249-4 at 13]

---

[16] Should the Court want a line-by-line audit of each time that an entry is being double or triple billed, Defendant would be happy to provide such for the benefit of the Court.

[17] *See* SMK entry on 4/8/2019 "Conference re: scope of receivership estate and motion for advice" [Doc. #1249-4 at 5]; *see* CHB entry on 4/8/2019 "Discuss/revise motion for advice with JH and SMK (2.9)" [Doc. #1249-4 at 6]

(vii)   *See* SMK entry on 5/7/2019 "Telephone conference with Nic Heinke and Mark Williams re: misc. pending issues" versus CHB entry on 5/7/2019 "…call with NH/MW re [RD Motion for discovery]…" [Doc. #1249-4 at 13]

(viii)   *See* SMK entry on 5/23/2019 "Conference call with SEC" versus CHB entry on 5/23/2019 "Call with NH/MW (SEC) regarding outstanding receivership issues" [Doc. #1249-4 at 18]

*Third*, the Defendant corrects an entry on the invoice. See SMK entry on 6/12/2019 "Conference call with defendant, relief defendants and Knag" [Doc. #1249-4 at 21].  The Defendant did not arrange the call nor was he on the call.  The Defendant has not had a single conversation with the Receiver or his counsel during the time period covered by this Application. This is yet another demonstration that the invoices provided by the Receiver are fraudulent and a farce.   They are simply produced to line the Receiver's pockets.

 In contrast, the SEC has had multiple conversations and correspondences with the Receiver and/or his counsel during this time period for a total of 28 hours and whereby the Receiver has billed the Defendant $7,408 for it.  The Defendant strongly opposes this and reiterates that he should not be paying for the time the Receiver has spoken or corresponded with his adversary, the SEC.

*Fourth*, the Receiver's attorneys have charged for travel time.  As they are providing a public service, the Receiver and his counsel should not be paid for travel time.[18]  See SMK entry on 4/24/2019 "Travel to NYC" and CHB entry on 4/24/2019 "Travel to NYC" [Doc. #1249-4 at 35] – this is a total of $843 that has unnecessarily been billed to the Defendant.  Not only is travel "dead-time," the Receiver's counsel has billed for two people, whereby the Receiver had

---

[18] Just as the Receiver has not billed for travel time in another Receivership, he should voluntarily waive all travel expenses and charges in this case.  "In order to minimize expenses to the Receivership Estate, the Receiver and Z&Z have not requested reimbursement for travel charges during the Compensation Period associated with trips to Boston to meet with the Commission and to New York City to meet with defendant Mark J. Varacchi ("Varacchi") and his counsel." *SEC v. Varacchi*, Case 3:17cv-00155-VAB; Doc. 27, Filed 08/14/17, at 4. The Receiver should not bill for travel time here either "in order to minimize expenses to the Receivership Estate."

testified that they "only bill for one person's time."  The Court should completely remove these charges from the invoice, especially as the Receiver does not charge for travel time in other Receiverships.

*Fifth*, the Receiver has billed for his consideration of an appointment in the MA Civil Matter, which has nothing to do with this matter and which is an unbelievable abuse of the Estate assets. Any consideration of an appointment in an unrelated matter is a business decision for his law firm and cannot be paid for from the Estate. The Receiver has had multiple internal discussions and multiple discussions with the SEC on the MA Civil Matter, all of which are extraneous to this matter and have nothing to do with this Receivership mandate. The Receiver has billed ***an unbelievable 33 hours and nearly $9,000*** (or approximately 10% of the requested amount for this Application) for this matter alone.  This amount should be removed in its entirety.  This is especially concerning as the SEC and the Defendant had engaged in settlement talks in the MA Civil Matter and yet, the SEC continued to have conversations with the Receiver on this issue.

In addition, the Receiver has billed 2.8 hours and $943.60 for his appointment as receiver in another matter. *See* SMK entry dated 5/15/2019 "Review and revise motion pursuant to paragraph 5(J) of appointment order re: his appointment as receiver in ***SEC v./Canada***" [Doc. #1249-4 at 16]. This too is a business decision for the Receiver's law firm and has nothing to do with this instant matter.  There is also no detail on what motion this entry refers to. This entry must be removed from this invoice.  This is the **sixth** such example of excessive and unnecessary invoicing and a complete sham of time and record keeping.

*Sixth*, the Receiver has billed a substantial amount of time and money to sell the apartments, which is entirely premature at this point and is against the "wishes of the Defendant and Relief Defendants." [Doc. #1070 at 7] This Court has made it clear that only "***[I]f***

subsequently ordered by the Court… and with due regard for the interests of the Defendant and the Relief Defendants…" [Doc. #1070 at 14]. The Receiver unbelievably continues to usurp judicial functions from the Court. *See Weil v. Neary*, 278 U.S. 160 (1929). (Condemning undisclosed fee sharing arrangement as taking the judicial function from the court).

The Receiver continues to misunderstand his mandate and erroneously maintains that the "primary objective of this receivership is to liquidate assets…" [Doc. #1249 at 17] – this is simply one of the objectives of the Receivership, but certainly not the *primary* objective. Nowhere has the Court ever stated that any liquidation is the *primary* objective of the Receivership and it is simply astonishing that the Receiver unilaterally presumes so.  In addition, the Receiver unbelievingly unilaterally "concluded that he should begin the process of liquidating the apartments subject ultimately to this Court's approval of a plan of liquidation" [Doc. #1249 at 17].  There are multiple complex issues involved in the briefing of the Receiver's Report and the Receiver cannot just "conclude" that he should begin the process of "liquidating the apartments" without Court Order.  Especially since the Court had made that clear.  The Receiver has billed 40 hours at a cost of nearly $9,800 to the Estate to "begin the process of liquidating the apartments," but the Court has not ordered any such process of liquidating!

The Court must remove these charges from the invoice as they simply unnecessarily drain the assets of the Estate, especially before the Court has made any liquidation rulings.

The Receiver also appears to have had extensive conversations with a real estate broker at Compass.  The Defendant (and Relief Defendants) strongly opposes both Compass and Ms. Froelich as a real estate broker candidate and has made it amply clear that not only are such discussions premature prior to any court order, neither Compass nor Ms. Froelich are a suitable or acceptable real estate broker for apartments of this caliber  [Please see Doc. #1239 at 6-9 for

the Defendant's reasons why he opposes such firm and broker] by any stretch of imagination. There is clearly some nefarious activity between the Receiver and Compass/Ms. Froelich.

The Defendant has also addressed his serious concerns with the continued conversations with FTI Consulting, especially on real estate issues.  FTI is not even a real estate broker and as such, has no business discussing a potential sale of any real estate.  There is no reason why there should be any involvement, let alone any "possible involvement of … FTI Consulting" [Doc. #1249 at 17] in the apartment process.

*Seventh*, the Receiver has spent a great deal of time responding to the Relief Defendants' counsel regarding fees, etc. The Relief Defendants' counsel has nothing to do with the Estate or with the Defendant and the Defendant contests any amount of time the Receiver has spent on this issue.  The Receiver has *billed a total of 40 hours and a cost of $10,637 (or nearly 12% of the requested Second Application fees) for just this issue alone*.  The Defendant should not be paying for this *at all*. The Defendant has already stated his Opposition to the payment of certain fees to certain of the Relief Defendants' counsel and there is no reason why the Receiver should be paying any attention to this issue when it is the Defendant's assets that are being considered for this – the Defendant makes the sole decision on his assets, especially on those amounts over the Judgment amount.[19]

The Receiver has also billed 28 hours and a cost of $7,408 for speaking and corresponding with the SEC in the Second Application.  As Defendant has stated, he has not approved any of these conversations nor does he know what they consist of.  The Defendant has not spoken with the Receiver or his counsel and has only minimally corresponded via email during the time period under the Second Application.  Indeed, the Receiver himself states that he

---

[19] Should it be determined that these assets belong to the Relief Defendants (as the Defendant has always maintained), then the Relief Defendants are free to do whatever they wish with their assets.

"endeavored to resolve the various issues… primarily with counsel for the SEC and counsel for the Relief Defendants…" [Doc. #1249 at 13] and that he "continued discussions with counsel for the Commission and the Relief Defendants…" [Doc. #1249 at 14].  Nowhere is the Defendant mentioned in any of these conversations.  It is clear that the Receiver does not understand that no consensus can be reached on any issue **without the Defendant.**  Yet, the Receiver persists in wasting resources by talking only to the Relief Defendants and the SEC; and in billing the Defendant for it! As such, since the SEC is the Defendant's fierce adversary in this matter, and Defendant has not authorized the Receiver to speak with the SEC, the Defendant strongly contests this amount.

Eighth, the Receiver has spent an unnecessary amount of hours on tax issues when he has "already concluded that he is not required to submit separate tax returns for the Defendant or the Relief Defendants"  [Doc. #1160 at 24].  If the Receiver has already concluded this, then why is he continuing to unnecessarily incur additional charges for tax research?

The Receiver is presumably experienced as a Receiver and there is no need, once he has concluded that he does not need to file taxes for the Defendant and Relief Defendants, that he continues to have discussions, research, and draft motions on such topic and continue to bill the Defendant for it.  In the Second Application, the Receiver and his counsel have spent approximately 40 hours at a cost of $10,400 for this issue alone.  This amount must be removed from the invoicing.  Yet another example of an unnecessary and unjustified full-employment activity for his firm designed to line Receiver's own pockets.

The Receiver has also continued to bill for conversations with FTI Consulting ("FTI"), which is a forensic accounting firm and has even charged to "[D]raft revised FTI application to employ for tax advisory and forensic accounting services" [See CHB entry on 5/10/2019 on Doc. #1249-4 at 15].  The Defendant continues to be astounded that the Receiver is still talking to FTI

on (and invoicing for) tax and forensic services for ***this case***, where no tracing has been ordered and there are more than sufficient assets available to satisfy the judgment.  This is simply a waste of Estate assets, as <u>there is ***no*** need to employ FTI in this case</u>. Therefore, all entries with FTI for any reason – both real estate, tax or forensic – must be removed from the invoices.

<u>Lastly</u>, even the proposed Plan of Liquidation (which does not benefit the Estate, but rather certain parties to this case) has taken **121 legal hours** for an estimated cost of $33,200 in the Receiver's First Application. The Receiver has spent an additional approximate **95 hours** and $25,492 in the briefing of this Report and Plan in the Second Application.  That amount alone is over 25% of the requested fee payment for the Second Application.  That means that the ***<u>Receiver has spent a total of 216 hours at a cost of $58,692 just to brief the Report and Plan</u>***. Yet, the Plan simply recommends using cash, marketable securities, and two apartments to secure the judgment; simply mirroring the plan the Defendant submitted on multiple instances. The amount of fees invoiced for this is excessive and unjustified.  If the Court still feels that this should be paid, then it must be paid from the within the Judgment and/or paid by the SEC.

These are just many examples of why the Defendant opposes any payment of fees to the Receiver. *See Code Prods. Corp.*, 362 F.2d at 673 ("In allowing fees the considerations are the time, labor and skill required, but not necessarily that actually expended, in the proper performance of the duties imposed by the court upon the receivers, the fair value of such time, labor and skill measured by conservative business standards, the degree of activity, integrity and dispatch with which the work is conducted and the result obtained.").  A full (but expensive and unnecessary) audit of the Receiver's timekeeping and records – which the Defendant is happy to do himself for the Court should the Court order for it – will likely reveal many such excessive and unnecessary invoicing and unjustified expenses incurred by the Receiver in order to line his own pockets.

## CONCLUSION

This Court should not allow the payment of excessive and unjustified fees to the Receiver for all the reasons stated herein.  This Court has also been clear that "it recognizes the parties concerns regarding the potential cost of a receiver and shares their desire to avoid unnecessary or high receivership costs" [Doc. #1070 at 5].  As the Defendant continues to reiterate, courts have been very careful when granting attorney fee motions, especially those of a Receiver, who is supposed to be retained for the benefit of the public. As stated by a Circuit Court on excessive Receiver fees:

> "The $12,000 fee allowed appellee is more than the salary of a United States District Judge for an entire year. It is more than the salary of the most of the Governors or Judges of the Supreme Courts in the respective states of this country. In our judgment [sic] it is so exorbitant that its allowance must be held to be an abuse of the court's discretion. That there has grown up a judicial abuse in the allowance of excessive fees to masters, receivers, and attorneys in receivership cases cannot well be denied. The Supreme Court of the United States has called attention to this and sounded a note of caution and warning to the judges of the federal courts in the case of *In re Gilbert*, 276 U.S. 294, 296, 48 S. Ct. 309, 310, 72 L. Ed. 580, as follows: "We were desirous of making it clear by our action that the ***judges of the courts, in fixing allowances for services to court officers, should be most careful***, and that vicarious generosity in such a matter could receive no countenance." And in *Newton v. Consolidated Gas Co.*, 259 U.S. 101, 42 S. Ct. 438, 439, 66 L. Ed. 844, in passing on the compensation of a master the Supreme Court points out that, ***"The rights of those who ultimately pay must be carefully protected.*** There seems to have developed an idea that lawyers are entitled to more compensation when employed in a receivership case than they would think of charging if employed by a private client for similar services. There is no reason for any difference in charges. Counsel should be allowed fair and reasonable compensation in receivership matters. There is no reason why they should be overpaid." (emphasis added).
>
> > *Federal Oil Marketing Corporation v. Cravens*, 46 F.2d 938, 943 (8th Cir. 1931).

The same is absolutely true in this instant case. The Receiver has not shown that the fees and expenses he incurred from April 1, 2019 through June 30, 2019 were a productive use of the Estate's assets, or that they were cost-efficient and ultimately beneficial to the Estate.  Instead, it

26

has been shown that the Receiver has cost the Estate with overbilling and unnecessary billing. Given the Court's understanding and desire to "avoid unnecessary or high receivership costs," the Court should deny the Receiver's Second Application.

**WHEREFORE**, the Defendant humbly requests the esteemed Court deny the Receiver's Second Application; or in the alternative, impose an additional 50% discount and a 100% holdback until the conclusion of all appeals in this case, and for any such fees to be paid from within the judgment by those parties that are benefiting from the appointment of Receiver and not the Defendant.

Respectfully Submitted,

Dated:          September 03RD, 2019          /s/ Iftikar Ahmed

_____

Iftikar A. Ahmed
C/O Advocate Anil Sharma
Government Place East
Kolkata 700 069, India

Tel:    +91-983-008-9945
e-mail: iftyahmed@icloud.com

*Pro Se*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and served by electronic mail to:

MR. NICHOLAS P. HEINKE, *ESQ*.
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1071
e-mail: heinken@sec.gov

MR. MARK L. WILLIAMS, *ESQ*.
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1027
e-mail: williamsml@sec.gov

MR. PAUL E. KNAG, *ESQ*.
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5400
Fax: (203) 653-5444
e-mail: pknag@murthalaw.com

MS. KRISTEN LUISE ZAEHRINGER, *ESQ*.
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5406
Fax: (860) 240-5758
e-mail: kzaehringer@murthalaw.com