UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>        *Plaintiff,*<br><br>                *v.*<br><br>IFTIKAR AHMED,<br><br>        *Defendant*, and<br><br>IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents,<br><br>        *Relief Defendants.* | Civil No. 3:15cv675 (JBA)<br><br><br><br>September 11, 2019 |

**RULING DENYING DEFENDANT'S MOTION TO TERMINATE RECEIVERSHIP**

Defendant Iftikar Ahmed moves for the removal of Jed Horwitt as Receiver and for the termination of the receivership in this case.[1] (Mot. to Terminate [Doc. # 1244].) The SEC and the Receiver oppose that motion. ([Docs. # 1250, 1254].)

---

[1] Mr. Ahmed also requests that the Court "[o]rder that the former tenant who is currently illegally occupying Apt. #12F to immediately vacate the apartment." (Mot. to Terminate at 1.) Because Mr. Horwitt has been authorized to employ Mitofsky, Shaprio, Neville & Hazen, LLP as counsel to the Receiver for the purpose of representing him in the eviction of the current tenants of Apartment 12F, (Ruling Granting Mot. for Authority to Employ [Doc. # 1275]), the Court will not address that request in this ruling.

I.      **Background**

Two apartments at 530 Park Avenue in New York City are among the assets of the
Receivership Estate. (Appointment Order [Doc. # 1070] at 7, 11.) Mr. Horwitt proposes to sell both
apartments as part of his plan to liquidate assets of the Receivership Estate to secure the judgment
in this case. (Receiver's Report [Doc. # 1130] at 7.) Apartment 12F was leased to a family ("the
Tenants") as of July 15, 2016. (Def.'s Mot. at 2.) That lease was extended twice, and the most recent
lease agreement with the Tenants expired on July 14, 2019. (*Id.*) The Tenants currently still reside
in Apartment 12F and have continued paying rent at the monthly rate set out in their most recent
lease, which the Receiver has accepted for "use and occupancy only" in an effort to avoid creating
a new tenancy under New York housing law. (Receiver's Opp. [Doc. # 1250] at 5, 7-8.) While the
Tenants remain in the apartment, their liability insurance policy "remains in place." (*Id.* at 2.)

The Tenants and the Receiver have engaged in discussions about the purchase of
Apartment 12F. (*Id.* at 3.) Those discussions began in April 2019 and continued through the
Tenants' communication to the Receiver in August 2019 of an offer to purchase the apartment.
(*Id.* at 3-7.) Because the Tenants' latest purchase offer "falls well short of what [the Receiver]
believes and what the Relief Defendants have expressed to be the property's fair market value," (*id.*
at 7), the Receiver has taken steps to ensure the removal of the Tenants from Apartment 12F, (*see*
Mot. for Authority to Employ MSNH (discussing possible stipulated judgment of eviction or filing
eviction proceedings against the Tenants)).

On June 17, 2019, a representative of Classic Realty LLC ("Classic"), which manages the
building at 530 Park Avenue, "contacted the Receiver's counsel to inquire as to the status of any
lease extension." (Receiver's Opp. at 4.) The Receiver did not respond "[because] no such extension
was in place." (*Id.*) On July 26, 2019, a representative of Classic again contacted the Receiver's

counsel and requested a copy of any renewal lease. (*Id.*) "Approximately two hours after this renewed request, the Receiver's counsel advised Classic that '[t]he Receiver will provide a copy of the renewal lease if such a renewal lease is entered into.'" (*Id.*)

On July 3, 2019, Relief Defendants moved for an "order that the two NYC apartments owned by the Relief Defendants be rented immediately." (Mot. to Immediately Rent at 1.) In his opposition brief, the Receiver stated his belief that "it is in the best interest of the Receivership Estate to keep the Apartments vacant pending order from this Court concerning the liquidation of the Apartments" in order to maximize the possible sale price and efficiency. (Receiver's Opp. to Mot. to Immediately Rent [Doc. # 1237] at 4.)

## II.   Discussion

Mr. Ahmed alleges that Mr. Horwitt (1) engaged in "gross mismanagement" of Apartment 12F, an asset of the Receivership Estate; (2) made "repeated false statements to this Court and other parties regarding the now illegal occupancy by the former tenant" of that apartment; and (3) "flagrantly violated" orders of this Court. (Mot. to Terminate at 1, 3; *see* Reply to Receiver [Doc. # 1258] at 2.) Defendant's argument focuses on Mr. Horwitt's handling of the tenants of Apartment 12F and his statements about the status of that apartment. He also asserts generally that Mr. Horwitt has displayed "extreme bias . . . against the Defendant," giving Mr. Ahmed "reason to believe that negotiations and deals are occurring without the knowledge of the rightful owners of the Apartment or the approval of this Court" and causing the Receiver to "los[e] all trust and credibility to manage the assets in a neutral manner." (*Id.* at 5.)

First, Mr. Ahmed argues that Mr. Horwitt should be terminated for "gross mismanagement" of Apartment 12F because he permitted the Tenants to remain in the apartment beyond the expiration of their lease, leaving "the Estate open to significant liability" and insurance

issues and increasing the cost of removing the Tenants from the apartment. (Reply to Receiver at 3-7.)

Mr. Ahmed describes the continued presence of the Tenants in the apartment as "illegal occupancy as engaged in and approved by the Receiver," (*id.* at 6), and argues that Mr. Horwitt "completely ignored that the lease was expiring" and was "simply . . . content to let things stand and be complicit in the illegal occupancy," (Reply to SEC [Doc. # 1259] at 2). "There is absolutely no reason," Defendant argues, "why there should even be a 'holdover tenant'" and "this situation should never have even arisen." (*Id.*) He contends that the "current situation in Apt # 12F is **due solely to the mismanagement and lack of communication of the Receiver** with the illegal tenant in Apt # 12F." (*Id.* at 3-4.)

Mr. Horwitt responds that the Tenants "simply on their own continued to occupy the apartment after" their lease ended, without any authorization and despite his "repeatedly ma[king] clear to the 12F Occupants that he was not accepting 'rent.'" (Receiver's Opp at 7-8.) He argues that his decision not to immediately evict the Tenants once their lease ended was reasonable given "(i) the Relief Defendants' pending motion before this Court to compel the Receiver to rent the Apartments[;] . . . (ii) the 12F Occupants' ongoing desire to purchase Apartment 12F and request for time to come up with a better offer (which was repeatedly communicated to the Relief Defendants' counsel)[;] and (iii) the economic benefit to the Receivership Estate of receiving use and occupancy [checks] for Apartment 12F in the interim period." (*Id.* at 5-6.) Moreover, upon his request, Mr. Horwitt has been authorized by the Court to employ Mitofsky, Shaprio, Neville & Hazen, LLP as counsel to the Receiver for the purpose of representing him in the eviction of the current tenants of Apartment 12F. (Ruling Granting Mot. for Authority to Employ.)

Mr. Ahmed also contends that "the Receiver demonstrably does not understand even the basic fundamentals of insurance issues," (Reply to Receiver at 6), and that "without any written agreement between the owner of the 12F and the former tenant for any type of occupancy beyond the expiration of the lease," it is unclear who would be "responsible for any issue that may arise," putting the Receivership Estate at risk, (*id.*at 7). He also argues that the "illegal occupancy" is "***unnecessarily costing the Estate money***," (*id.*), due to the costs inherent in pursuing the Tenants' eviction. Mr. Horwitt responds that based upon his review of the Tenants' insurance policy, the "expiration of the Lease [] does not result in the termination of applicable insurance coverage," which continues "well into 2020." (Receiver's Opp. at 9.) He notes that Mr. Ahmed has not "explained why he believes there exists an 'insurance issue.'" (*Id.*)

Considering the Relief Defendants' expressed desire to have the apartment rented, the continuing income to the Receivership Estate while the Tenants remain in the apartment, and the potential benefit to the Estate from continuing purchase discussions with the Tenants, the Receiver's handling of the Tenants and Apartment 12F does not constitute "gross mismanagement" of the Receivership Estate. Mr. Ahmed's disagreement with Mr. Horwitt's management decisions is not a ground for termination of the receivership or removal of Mr. Horwitt.

Second, Mr. Ahmed argues that Mr. Horwitt should be terminated for "submit[ing] false statements to this Court and to all parties" regarding the apartment. (Mot. to Terminate at 2.) Specifically, Defendant contends that the Receiver "blatantly *falsely stated to the court that the apartments are vacant*," (*id.* at 7), by stating in the Receiver's opposition to the Relief Defendants' motion to rent the apartments that he "believes it is in the best interest of the Receivership Estate to keep the Apartments vacant pending order from this Court concerning the liquidation of the

Apartments," (Receiver's Opp. to Mot. to Immediately Rent at 4), even though he knew at the time that Apartment 12F was not actually vacant.

The Receiver responds that his use of the "phrase 'keep the Apartments vacant' simply reflected the Receiver's expectation that Apartment 12F would be vacant—along with the other apartment—in the near future and during the period of time the apartments would be on the market for sale" because the lease on Apartment 12F would end soon after that submission. (Receiver's Opp. at 5.) Mr. Horwitt's statement was made in the context of his opposition to a motion to immediately rent the apartments and based on his opinion that the apartments would sell more quickly or for a higher price if vacant. (Receiver's Opp. to Mot. to Immediately Rent at 4.) In that context, it is clear that Mr. Horwitt's statement was not intended to mislead the Court as to the current status of Apartment 12F but rather to indicate his position that after the Tenants' lease expired, no new rental agreements should be entered. Although this position could perhaps have been stated more clearly by Mr. Horwitt, the Court does not agree with Mr. Ahmed that this statement represents an effort by the Receiver to mislead or lie to the Court or the parties.

Third, Mr. Ahmed argues that the Receiver has violated this Court's orders. Specifically, he suggests that Mr. Horwitt "has usurped judicial functions from the Court" by negotiating with the Tenants regarding their lease and potential purchase of the apartment without seeking or acquiring the approval of the Court, the Defendant, or the Relief Defendants. (Mot. to Terminate at 6.) Mr. Ahmed contends that "the Receiver is not empowered to entertain any offer for 12F without the express authorization and Order of this Court and must take into account the 'interests of the Defendant and the Relief Defendants.'" (Reply to Receiver at 3.)

But the Appointment Order does not prohibit Mr. Horwitt from "entertain[ing] any offer for 12F" without express authorization, as Mr. Ahmed suggests. Rather, it prohibits the receiver

from leasing or selling any real property of the Receivership Estate without further order from this Court. (Appointment Order at 14.) Thus Mr. Ahmed's argument that the Receiver violated orders of this Court simply by engaging in negotiations about or receiving offers for the lease or purchase of Apartment 12F without prior authorization is unavailing.

Mr. Ahmed also alleges that Mr. Horwitt has violated the Appointment Order's requirement that the Receiver act "with due regard for the interests of the Defendant and Relief Defendants" in leasing or selling real property of the Receivership Estate. (Appointment Order at 14.) This allegation appears to rest solely on management decisions by the Receiver which differ from the wishes of the Defendant or the Relief Defendants. (*See* Mot. to Terminate at 8; Reply to SEC at 5.) Mr. Ahmed makes no allegation suggesting that Mr. Horwitt improperly declined to hear or consider the positions of the Defendant or Relief Defendants. Rather, Mr. Ahmed argues simply that Mr. Horwitt has failed to show due regard for their wishes because he has ultimately disagreed with their positions on several issues related to the apartments and because Mr. Ahmed alleges that the Receiver did not timely inform Mr. Ahmed of certain developments in his discussions with the Tenants. (Reply to Receiver at 9.) That disagreement, without more, is insufficient to establish that Mr. Horwitt has violated the Appointment Order by failing to show due regard for the interests of the Defendant or the Relief Defendants.

### III.     Conclusion

For the foregoing reasons, Defendant's Motion to Remove Jed Horwitt as Receiver and Terminate the Receivership [Doc. # 1244] is DENIED.

IT IS SO ORDERED.

_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 11th day of September, 2019.