UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>IFTIKAR AHMED,<br>　　　　　　　　　Defendant, and<br><br>IFTIKAR ALI AHMED SOLE PROP; *et al*<br>　　　　　　　　　Relief Defendants. | No. 3:15-CV-675 (JBA)<br><br><br><br><br><br><br><br>September 17TH, 2019 |

**DEFENDANT'S EMERGENCY MOTION FOR A RULING
ON DEFENDANT'S APPELLATE FEES, IN LIGHT OF THE COURT'S RECENT
RULING ON DEFENDANT'S RULE 59(e) MOTION**

The *pro se* Defendant requests that the Court issue a ruling on his pending Emergency Motion for Appellate Fees [Doc. #1061, or the "Appellate Fee Motion"] in light of the Court's recent ruling denying the Defendant's Rule 59(e) Motion [Doc. #1263]. The Defendant reserves all rights and incorporates his Appellate Fee Motion and Reply [Doc. #1102, or the "Reply"] in this Motion.

**BACKGROUND**

The Defendant assumes familiarity with the background of the issue of his appellate fees, but provides the following summary for the Court's benefit:

1. The Court issued an amended Judgment against the Defendant and the Relief Defendants on December 14, 2018. [Doc. #1054].

1

2. The Defendant filed an Emergency Motion for the release of appellate fees on December 17, 2018, which is now fully briefed and which remains pending [Doc. ##1061, 1096, 1102].

3. The Defendant filed a Rule 59(e) Motion on January 11, 2019, [Doc. #1086], which the Court denied on September 4, 2019 [Doc. #1263].

4. The Defendant filed a timely notice of appeal on February 8, 2019 [Doc. #1101].[1]

5. The Second Circuit had stayed the appeal(s), pending the District Court's ruling on Defendant's Rule 59(e) Motion. As the Court has now ruled on the Motion, the stay is lifted and Defendant must now, within 14 days from the date of the ruling (September 4, 2019), take certain procedural steps (which Defendant needs to determine) – which means that the Defendant must act by September 18, 2019.

6. Defendant has asked the Court for a ruling allowing up to $500,000 so that he may retain legal counsel for his appeal.

7. Defendant is currently *pro se* in the Court of Appeals and is severely disadvantaged.

## ARGUMENTS

The Defendant files this Emergency Motion to request a ruling on his Appellate Fee Motion. As the Court has now ruled on Defendant's Rule 59(e) Motion, the appellate process in the Second Circuit Court of Appeals has commenced and the Defendant has 14 (fourteen) days in which to take various required procedural steps.[2] *See* Fed. R. App. Proc. 10(b) and 2d Cir. R. 31.2(a).

**I.     The Equities Favor a Release of Appellate Fees for the Defendant to Retain Appellate Counsel.**

As the Defendant has detailed in his Appellate Fee Motion, the equities favor a release of appellate fees for the Defendant.

---

[1] The Defendant has filed multiple notices of appeal in this case.

[2] A Notice of Appeal filed after the entry of judgment but before the last of the motions listed (including 59(e) Motions) is decided is treated as filed when the order determining the last of the motions is entered. Fed. R. App. Proc. 4(a)(4). The Defendant now has 14 days from the day the Rule 59(e) Motion was decided (September 4, 2019) to take various required procedural steps, which means that the Defendant has until September 18, 2019 to file a briefing schedule for his appeal and take other procedural steps.

*First,* the Defendant is not a lawyer and has no legal background, education or training, which has put him at a severe disadvantage against the power and the unlimited resources of an agency of the United States Government in this court and will continue to do so in the appellate courts. In particular, the Second Circuit Court of Appeals (or the "Second Circuit") ***only*** deals with matters of law and legal questions. The *pro se* Defendant has no legal training or education whatsoever to present the issues in a legal framework. The Defendant needs the guidance and the assistance of qualified counsel to be able to articulate and present legal arguments in a manner and form acceptable to the Second Circuit. Without qualified appellate counsel, the Defendant would be severely prejudiced in his appeal.

In addition, this Court has denied the Defendant any access to the investigative file,[3] which has severely prejudiced him in this proceeding and which will continue to prejudice him in his appeal as he cannot access the evidence to present such to the appellate courts. The Court should allow the Defendant to retain appellate counsel, so that she may access the record and effectively present the arguments to the appellate courts. It would be highly inequitable to preclude the Defendant from appellate representation in this situation.

In a situation where there are many tens of millions of dollars at stake and where the Court has not returned the Defendant to *status quo* (amongst other issues) in ordering disgorgement, the equities weigh in favor of releasing the funds for the Defendant to retain appellate counsel and to present a thorough argument on the legal merits of the case. But the

---

[3] While the SEC will surely oppose and state that this is because the Defendant is not in the jurisdiction, what they will leave out is that they have opposed, in each instance, any legal fee request of the Defendant to be able to effectuate a manner to return to the jurisdiction [Doc. #1102 at 2-3], even though there are many tens of millions of dollars of assets frozen above the court's judgment of $64.4MM and now, assets even above the Court's own maximum allowable asset freeze order.

Defendant can only do that if he has qualified and experienced appellate counsel to represent his interests and who has access to the evidence in this case.

*Second*, the Receiver has shown an amount of assets greater than not only this Court's judgment of $64.4MM, but also of this Court's own asset freeze order of $89MM, and which does not even include various other assets which the Receiver found it unnecessary to value[4] (*see* Doc. #1249-5 at 5, where the Receiver depicts a value of assets frozen as nearly $89.9MM[5]). Hence, a release of up to $500,000 from this amount[6] for the Defendant to retain appellate counsel will not affect the security of the SEC's judgment, especially as the Court has ordered that the asset freeze is to continue on the assets, pending appeal, to serve as the "functional equivalent of a supersedeas bond" [Doc. #1052 at 7].

*Third*, while the Court has ordered the maximum permissible asset freeze to be $89MM, that amount should in reality be $85MM, as the SEC erroneously added in the $2MM cost of a Company C transaction in this calculation of $89MM. Thus, the amount should be lowered by $4MM.[7]  Hence, there is even more reason to release the requested fee amount for the Defendant to be able to fairly pursue his appeal against a significantly more powerful and experienced adversary of an agency of the United States government with an army of lawyers at their disposal.

---

[4] The Receiver has identified more than $18.7MM in assets above and beyond *his estimated amount* (which the Defendant strongly contests) necessary to secure the SEC's judgment, etc.  This Court has recognized that the Second Circuit forbids over-freezing of assets to secure a judgment. *Ahmed*, 123 F. Supp. 3d 301, 312 (D. Conn. 2015) (citing *S.E.C. v. Unifund*, 910 F.2d 1028, 1041 (2d Cir. 1999) and *S.E.C. v. Maillard*, No. 13-CV-5299, 2014 WL 1660024, at *4 (S.D.N.Y. Apr. 23, 2014)).  Consequently, the release of funds is especially appropriate here because the SEC is over secured.

[5] This amount is conservative, does not ascribe a value to certain assets and also does not include the Defendant's allegedly forfeited assets at Oak. The Defendant does not waive his rights to these assets by way of this statement.

[6] The Defendant will identify appellate counsel and the amount needed to retain that counsel (of up to $500,000) to the Receiver (to effectuate the transfer of funds directly to counsel) once the Court approves his request and such counsel agrees.

[7] The $2MM cost plus $2MM maximum civil penalty, for a total reduction of $4MM in the maximum permissible freeze amount.

Here, the equities favor a release of up to $500,000 for the Defendant to retain appellate counsel. This will ensure that the Defendant, who has been denied access to the investigative file and access to any evidence, and in a situation where there are assets not only above the Court's judgment, but also above the Court's own asset freeze, has his appeal heard in the Second Circuit and has an opinion rendered based on the presentation of all the relevant evidence instead of an appeal where Defendant cannot even access the evidence to present the merits of his appeal to the appellate courts.

### II.     There is No Basis for Objecting to Defendant's Emergency Motion.

The SEC has already objected to the Defendant's request for appellate fees. There is no basis in any of their objections.

*First*, the SEC will likely claim that this is a reconsideration of Defendant's earlier fee requests for counsel. However, this is the first time that Defendant has requested fees for the retention of *appellate counsel*. The Court has not ruled yet on a release of fees for the Defendant for such counsel but has ordered the release of funds for the Relief Defendants to retain appellate counsel [Doc. #1287].

*Second,* the SEC wants to disadvantage the Defendant by asking for unnecessary information on who the Defendant's appellate counsel is and what work they would do. To Defendant's limited legal knowledge, the counsel would present the Defendant's appeal to the appellate courts. Anything more than that is protected under "attorney/client communications" and "work-product privilege" and it is inequitable (and, very likely, illegal) for the SEC to even inquire further about the work that the Defendant's appellate counsel would do. Unfortunately, due to the extensive asset freeze in this case, the Defendant has been unable to get any counsel to agree to represent him without the evidence that he will be able to pay for their services. As such,

were the Court to order the availability (and release) of such funds appropriate for the appeals process to pay appellate counsel's fees, the Defendant would then reach out to qualified counsel to represent the Defendant at the Second Circuit and will keep the Court apprised of such counsel so that the funds can be transferred directly to them.

*Third*, the SEC will claim that the Defendant does not have enough assets to fulfill the judgment if the Second Circuit finds on the issue of ownership for the Relief Defendants. While the Court of Appeals could very well find for the Relief Defendants, that does not mean that the SEC can continue to freeze nearly $90MM in assets[8] for "potential" ruling by the higher courts if they use this argument as a reason to not release funds for the retention of Defendant's appellate counsel. Should the SEC truly think that this is a possibility, then the SEC must release the assets that belong to the Relief Defendants while keeping those assets that indisputably belong to the Defendant frozen. In this scenario, the SEC is willing to even consider the addition of the Defendant's "forfeited" Oak assets already seized by the alleged victim [Doc. #1096 at 3]. Yet, the SEC fails to consider that any assets seized by the alleged victim would be offset against disgorgement, thus lowering the total judgment rendered.

Nonetheless, it is also possible that the appellate courts could find for the Defendant *and* the Relief Defendants - and such ruling would support the issue that the Court has severely prejudiced the Defendant by not releasing his own legally earned assets for his own defense. The higher courts can rule in any manner and it is only fair that the Court give the Defendant a fair chance in appealing this Court's rulings with counsel who can view the evidence, when

---

[8] This amount does not include the nearly $40MM of Defendant's assets already seized or under the exclusive control of the alleged victim, Oak. Such assets continue to remain frozen and are under the jurisdiction of the Second Circuit. These are disputed assets and have been unilaterally seized by the alleged victim for the same alleged conduct in this case.

Defendant was not given a chance to view, use and/or present such evidence in his defense in this Court.

*Fourth*, the Receiver himself has stated in his "no objection" response to the release of appellate fees for the Relief Defendants that "in light of the current cumulative value of Receivership Assets, the Receiver does not believe that a disbursement of $350,000 to JB will adversely impact the Receiver's ability to fulfill his primary obligation in this receivership - to fully secure the Required Amount through the liquidation of Receivership Assets - or to execute in any other regard his duties pursuant to the Appointment Order. Therefore, the Receiver takes no position with respect to the relief requested by the Motion." [Doc. #1282 at 3].  As such, and because this Court has effectively ruled that these assets belong to the Defendant (as they are being used to secure the SEC's judgment), the Court should allow up to $500,000 for the retention of appellate counsel for the Defendant.

*Fifth*, there is merit in the Defendant's request in being represented by counsel in his appeal. In particular, the Receiver has stated "JB, as appellate counsel, would represent the Relief Defendants in connection with ongoing litigation, which may impact the Receivership Estate and the Receiver's duties under the Appointment Order." [Doc. #1282 at 4].  The same is true with any appellate counsel retained by Defendant in his appeal as "ongoing litigation… may impact the Receivership Estate and the Receiver's duties under the Appointment Order…" and such is more critical in Defendant's case, as he is the *Defendant* – who may have different issues under appeal than the Relief Defendants – and who has also been denied access to the evidence at the same time.

### III.     There is Good Cause for the Court to Consider this Motion on an Expedited Basis.

Pursuant to District of Connecticut Local Rule 7(a)(6), the Defendant has designated this Motion as an "emergency" Motion and seeks expedited consideration of the same by this Court. The Defendant respectfully represents that good cause exists for such expedited consideration due to the lift of the stay of appeal by the Second Circuit, based on this Court's recent ruling of Defendant's Rule 59(e) Motion.  Should the Court deny the Defendant's Emergency Motion for Appellate Fees or not rule on such Motion, the Defendant would have to proceed *pro se* without the benefit of legal counsel, with absolutely no knowledge of appellate procedure and protocols, and without access to the evidence and investigative file to present his case to the appellate courts.  While Defendant has been proceeding *pro se*, he is not a lawyer and has no legal background, and this has already prejudiced Defendant and put him at a severe disadvantage against the power and the resources of an agency of the United States Government in this Court. This should not be allowed to continue in the appellate courts, especially given "the current cumulative value of Receivership Assets" [Doc. #1282 at 3] as per the Receiver himself.

Similar to the Relief Defendants, the Defendant believes that he must take various procedural steps relating to the Second Circuit Court of Appeals no later than September 18, 2019, or 14 days after this Court's ruling on his Rule 59(e) Motion on September 4, 2019.  The Defendant has no idea of the procedures that are required by the Court of Appeals and cannot effectively present his case to the appellate courts because he has been denied access to the evidence and significant documents have been redacted before being given to him.

The Defendant believes that it is in the interest of all parties that counsels in the Second Circuit Court of Appeals represent the Defendant and have the merits of the case heard by the appellate courts.  In a situation where there are ample assets above this Court's judgment and now above this Court's own maximum asset freeze order and where the Defendant has been

8

denied the use of the evidence, the Defendant respectfully submit that good cause exists for this Court to consider and grant this Motion on an expedited basis.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Defendant requests that the Court grant the Motion, so that the Defendant may secure counsel for purposes of prosecuting the various appeals arising out of this case.

Respectfully Submitted,

Dated: September 17TH, 2019

/s/ Iftikar Ahmed

Iftikar A. Ahmed
C/O Advocate Anil Sharma
Government Place East
Kolkata 700 069, India

Tel: +91-983-008-9945
e-mail: iftyahmed@icloud.com

*Pro Se*

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and served by electronic mail to:

| | |
|---|---|
| MR. NICHOLAS P. HEINKE, *ESQ.* <br> U.S. Securities and Exchange Commission <br> Byron G. Rogers Federal Building <br> 1961 Stout Street, Ste. 1700 <br> Denver, CO 80294 <br> (303) 844-1071 <br> e-mail: heinken@sec.gov | MR. MARK L. WILLIAMS, *ESQ.* <br> U.S. Securities and Exchange Commission <br> Byron G. Rogers Federal Building <br> 1961 Stout Street, Ste. 1700 <br> Denver, CO 80294 <br> (303) 844-1027 <br> e-mail: williamsml@sec.gov |
| MR. PAUL E. KNAG, *ESQ.* <br> Murtha Cullina, LLP <br> 177 Broad Street, 4th Floor <br> Stamford, CT 06901 <br> (203) 653-5400 <br> Fax: (203) 653-5444 <br> e-mail: pknag@murthalaw.com | MS. KRISTEN LUISE ZAEHRINGER, *ESQ.* <br> Murtha Cullina, LLP <br> 177 Broad Street, 4th Floor <br> Stamford, CT 06901 <br> (203) 653-5406 <br> Fax: (860) 240-5758 <br> e-mail: kzaehringer@murthalaw.com |