# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>        Plaintiff,<br><br>v.<br><br>IFTIKAR AHMED<br><br>        Defendant, and<br>and<br><br>IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUNITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends, IFTIKAR and SHALINI AHMED, his parents; I.I. 3, a minor child, by and through his next friends, IFTIKAR and SHALINI AHMED, his parents<br><br>        Relief Defendants. | Civil Action No.<br>3:15-cv-675-JBA |

## RECEIVER'S REPLY TO THE DEFENDANT'S AND RELIEF DEFENDANTS' RESPONSES IN OPPOSITION TO RECEIVER'S SECOND APPLICATION FOR FEES

Jed Horwitt, Esq., in his capacity as Court-appointed receiver of the Receivership Estate[1]

(the "Receiver"), through his undersigned counsel, respectfully replies (the "Reply") to the

Defendant's Response in Opposition to the Second Interim Application for Professional Fees and

Expenses Incurred by the Receiver and His Professionals [Doc. No. 1261] (the "Defendant's

---

[1] Unless expressly defined otherwise, the Receiver incorporates by reference the definitions of terms set forth in the Report of Receiver [Doc. No. 1135] (the "Report") and the Second Interim Application for Professional Fees and Expenses Incurred by the Receiver and his Professionals [Doc. No. 1249] (the "Second Application").

Response") and the Relief Defendants' Response in Opposition to Receiver's Second Application for Fees and Expenses [Doc. No. 1264] (the "Relief Defendants' Response" and, with the Defendant's Response, the "Responses").[2] In support thereof, the Receiver respectfully represents as follows.[3]

## I.    Incorporation of Receiver's Previous Filings

The Receiver replies substantively to the issues raised in the Responses in the following pages. However, the Defendant "incorporate[d] his complete First Opposition [Doc. # 1183] and Sur-Reply [Doc. # 1222-1] into" the Defendant's Response.  Accordingly, the Receiver likewise incorporates by reference the Receiver's First Interim Application for Profes[s]ional Fees and Expenses Incurred by the Receiver and His Professionals [Doc. No. 1160] (the "First Application") and the Receiver's Reply to the Defendant's and Relief Defendants' Responses in Opposition to Receiver's Application for Fees [Doc. No. 1218] (the "Reply to Opposition to First Application").

## II.    The Fees and Expenses Incurred by the Receiver Advanced the Goals of this Receivership as Directed by the Appointment Order

The primary purpose of this Receivership is "to value the frozen assets and avoid over-freezing, to secure the judgment for the [Commission], to manage and maximize the value of frozen assets under the guidance of a neutral third party, and to take necessary steps toward

---

[2] The Relief Defendants' Response merely joins the Defendant's response, and thus all citations are to the Defendant's Response.

[3] The Appointment Order directs that, "[a]t least thirty (30) days prior to filing a finalized [fee application] with the Court, the Receiver will serve upon counsel for the parties and Defendant Ahmed a complete copy of the proposed [a]pplication, together will all exhibits and relevant billing information…." (Appointment Order, ¶ 35.) In compliance with this directive, the Receiver circulated a complete copy of the Second Application, including all exhibits thereto, to the Defendant, counsel for the Relief Defendants, and counsel for the Commission on April 15, 2019. At no point between April 15, 2019, and the filing of the Second Application 30 days later did either the Defendant or counsel for the Relief Defendants communicate any of their issues to counsel for the Receiver. Consequently, the Defendant and Relief Defendants did not provide the Receiver and his counsel with the opportunity to attempt to resolve any of their issues and narrow for this Court the scope of controversy.

effectuating the judgment." (Appointment Order, at 5.) The Receiver respectfully submits that his and Z&Z's services have been entirely consistent with and furthered these fundamental purposes.

Most significantly, the Receiver prepared and timely submitted the Report proposing the liquidation of the Receivership Assets to secure the judgment, and then defended such Report in the face of voluminous objections. The Receiver and his counsel have also worked to manage the Receivership Estate, monitor Receivership Assets to guard against avoidable decreases in the value of Receivership Assets and other harms, oppose requests that may have impaired or prejudiced the Receivership Estate, and prepare to be in a position to take the steps necessary to liquidate Receivership Assets in the most efficient manner possible to secure the Judgment.

In advancing their objections, the Defendant and Relief Defendant erroneously assume the applicability of other purposes for this Receivership to then argue that the Receiver's efforts have not advanced these goals. For example, the Defendant points out that "the Receiver did not have to recover any assets for the alleged victims." (Defendant's Response, at 3.) But asset recovery was never a purpose of this Receivership. Similarly, the Defendant argues that "any increase in the value of [Receivership Assets] is a direct result of investment decisions made by parties other than the Receiver… [and] the Receiver just cannot take credit for any increase…." (*Id*. at 5.) The Receiver has not attempted to take such credit. The Defendant contends that "there is no complexity in managing [Receivership Assets]." (*Id*. at 4.) This is true to a limited extent but misses the point.

The Defendant and Relief Defendants simply premise their arguments upon a distorted characterization of the purposes of this Receivership. The Receiver has not been appointed to recover additional assets (such as by commencing litigation) or engage in speculative investment decisions to maximize appreciation. It is worth repeating that the purposes of this Receivership are

3

"to value the frozen assets and avoid over-freezing, to secure the judgment for the [Commission], to manage and maximize the value of frozen assets under the guidance of a neutral third party, and to take necessary steps toward effectuating the judgment." The Receiver and his counsel have reasonably and appropriately advanced these goals during the Compensation Period as evidenced by the Second Application.

### III.      Concurrent Billing by the Receiver, Attorneys, and Paraprofessionals

The Responses are critical of various instances where multiple persons billed for participating in the same event, such as conference calls or meetings. (Defendant's Response, at 4-5 & 17-20.) As the Receiver testified at the November 28, 2018, hearing before the Court, the Receiver and Z&Z "often do not double-bill, even if it's legitimate double-billing, in the sense of if two of us are dealing with the same issue we only bill for one person's time." (Nov. 28 Hr. Trans, at 24:17-19.) In numerous instances during the Second Compensation Period, the Receiver and his counsel and paraprofessionals did not bill for the same event. Due to the absence of a billing entry, these instances are not reflected in the time entries contained at Exhibits D-1 through D-4 to the Second Application.

Where multiple billing persons billed for participating in the same event during the Second Compensation Period, the same was reasonable, necessary, and appropriate given the complexity of the issues presented and the benefit conferred upon the Receivership Estate. While, to minimize legal fees, Attorney Christopher H. Blau, an associate attorney at Z&Z, has taken the laboring oar representing the Receiver in this case, in various regards he needed to be supervised by a senior attorney and such senior attorney needed to be involved in aspects of this matter to provide informed guidance. Multiple attorneys working together must then necessarily occur. Such does not render the services provided unreasonable or unnecessary.

4

IV.     **The Receiver's Fees are Not Excessive**

The Defendant renews his argument, (Defendant's Response, at 5-8), that the Receiver's and Z&Z's fees are excessive and evidence an "inefficiency of management" by the Receiver. The Defendant attempts to support these conclusions through his various calculations of time spent by the Receiver and his counsel. His analysis is inaccurate and misleading.

In the First Application, as stated in the Reply to Opposition to First Application at page 29, the Receiver and Z&Z seek compensation in the amount of $155,452.75 for a total of 640.7[4] hours of time spent by the Receiver and Z&Z during the 67 business days between December 20, 2018, and March 31, 2019 (the "First Compensation Period" and, with the Second Compensation Period, the "Compensation Periods"). This results in an average of 9.6 hours per business day of time for the Receiver, Z&Z attorneys, and Z&Z paraprofessionals together.

In the Second Application, the Receiver and Z&Z seek compensation in the amount of $92,879.20 for a total of 362.9 hours of time spent by the Receiver and Z&Z during the 63 business days during the Second Compensation Period. This results in an average of 5.8 hours per business day of time for the Receiver, Z&Z attorneys, and Z&Z paraprofessionals together. Importantly, while the Second Application accurately reports that the Receiver and Z&Z spent a cumulative 441.9 hours during the Second Compensation Period, as stated in footnote 3 and footnote 4 of the Second Application the Receiver and Z&Z are not seeking compensation for all of that time.

As an initial matter, the projection made by the Receiver at page 27 of the First Application – that "the bulk of the effort and expense is frontloaded" – has proven to be accurate as between the two Compensation Periods that have passed thus far. Indeed, the Receiver seeks compensation

---

[4] The First Application makes reference to 646.3 hours, but 5.6 hours of this figure were written off by the Receiver.

for 277.8 fewer hours, totaling $62,573.55, for Second Compensation Period compared to First Compensation Period, while the two periods contained a similar number of business days (63 and 67 days, respectively). This decrease of approximately 40% demonstrates that, thus far, the time spent by the Receiver and Z&Z have indeed been frontloaded towards the earlier portion of the Receivership.

The majority of the time spent by the Receiver and Z&Z during the Second Compensation Period fall within three categories that demonstrate that the fees sought are not excessive. First, the Receiver and Z&Z spent approximately 79 hours drafting the First Application and responding to the Defendant's 42-page Response in Opposition to the Receiver's Application for Fees and Expenses [Doc. No. 1183], for which neither the Receiver nor Z&Z are seeking compensation. Second, the Receiver and Z&Z spent approximately 57 hours analyzing and responding to the Defendant's and Relief Defendants' multiple complex filings,[5] time that would otherwise not have been spent but for the Defendant's and Relief Defendants' initiation of such motion practice. Finally, the Receiver and Z&Z spent approximately 79 hours during the Second Compensation Period, in part, finalizing the Report (which was filed three days into the Second Compensation Period), and, largely, analyzing and replying to the intricate issues raised in the responses to the Report filed by the Defendant, the Relief Defendants, and Daniel G. Johnson as Trustee, which in aggregate spanned more than fifty-five pages. The approximately 136 hours the Receiver and Z&Z

---

[5] Such filings include Defendant's Motion for Access to All Information Acquired by the Receiver on his Private Investments and Holdings [Doc. No. 1129]; Defendant's Emergency Motion for Declaration of Mistrial [Doc. No. 1135]; Defendant's Emergency Motion and Memorandum of Law to Find and Sanction the SEC for Contempt of Court Order [Doc. No. 1139] and the Relief Defendant's Memorandum in Support of Defendant's Motion to Find and Sanction the SEC for Contempt of Court Order [Doc. No. 1140]; Motion of Harris, St. Laurent & Chaudhry LLP to Withdraw from Representation of Relief Defendants, and for Payment of Outstanding Attorneys' Fees, and, in the Alternative, for Relief from the Stay of Litigation as to Relief Defendants [Doc. No. 1152]; and, Relief Defendants' Emergency Motion to Modify Asset Freeze Order to Release Funds to Pay Murtha Cullina's Fees and Disbursements Since Appointment of Receiver, or in the Alternative, to Withdraw the Appearance of Counsel [Doc. No. 1171].

spent addressing the Defendant's and Relief Defendants' various motions as well as their responses to the Report constitute more than 37% of the time for which the Receiver and Z&Z seek compensation during the Second Compensation Period.

Finally, the Receiver appropriately allocated work between professionals and paraprofessionals based on the issues presented by each particular task as well as its potential impact upon the administration of the Receivership Estate. The Receiver did so consistent with the Appointment Order's directive to minimize expenses charged to the Receivership Estate. Indeed, the time spent by Attorney Blau, whose hourly rate equals that of other associates as the lowest in the firm and whose discounted rate is $25 per hour less than Attorney Jed Horwitt's discounted rate for legal work, represents approximately 45% of the First Compensation Period and approximately 52% of the Second Compensation Period. Thus, the Receiver allocated work appropriately among Z&Z attorneys and in a manner consistent with the Appointment Order.

### V.     This Court Has Already Determined the Source of Funds to Pay for Receivership

The Responses argue that the Court should deduct any funds used to pay the fees and expenses sought in the First Application from the Judgment amount. (Defendant's Response, at 8-9.) However, this Court has already determined that, "[i]n the absence of any authority in support of the Defendants' position that the SEC should pay for the costs of a receiver, all costs of the receivership in this case will be paid from among the assets of the Receivership Estate." (Appointment Order, at 5.) As a result, and consistent with the Appointment Order's directive to analyze the Judgment amount and "the costs of the Receivership and administration of the Receivership Estate" separately, the source of the funds to pay the Second Application is a settled issue and re-litigation of the same, in the Receiver's view, only serves to increase expenses incurred by the Receivership Estate. (Appointment Order, at 15.)

### VI.    The Receiver and Z&Z have been Impartial and Neutral

At every stage in this Receivership, the Receiver and Z&Z have remained impartial and neutral as between the interests of the Commission, the Defendant, and the Relief Defendants. Moreover, where possible, the Receiver and his counsel have sought to build consensus amongst the parties on various issues and work towards results that would ultimately benefit all concerned. In addressing each issue during the Receivership, the Receiver has analyzed and responded with the best interests of the Receivership Estate in mind. While this analysis has resulted in the Receiver opposing certain relief sought by the Defendant, such opposition is not a reflection of bias but rather the product of the Receiver's best objective judgment in determining how to plot a course that, in the Receiver's view, is most consistent with this Court's directives set forth in the Appointment Order and otherwise. In each of the filings referenced in the Defendant's Response at pages 9 and 10, the Receiver has explained his analysis and the potential impact of the relief sought on the Receivership Estate and the Receiver's abilities to execute his duties under the Appointment Order.

Contrary to the Defendant's claims at pages 10 through 12 of the Defendant's Response, the time records submitted as Exhibits D-1 through D-4 to the Second Application underscore the Receiver's impartiality. For example, the Defendant "eyeballed" the amount of time the Receiver and Z&Z spent communicating with counsel to the Commission and estimated that the Receiver and Z&Z spent "28 hours at a cost of $7,408." (Defendant's Response, at 10.) While the Receiver is not privy to the underpinnings of the Defendant's estimation, the Receiver's own analysis indicates that he and his counsel spent approximately 22.8 hours[6] communicating with counsel to

---

[6] This hourly figure is an estimate based on the Receiver's review of Exhibits D-1 through D-4, including a breakdown of certain "block billed" entries that, while permissible under Section D(4) of the SEC

the Commission during the Second Compensation Period. The Receiver spent approximately 21 hours[7] communicating with the Defendant and counsel to the Relief Defendants during the same period.  This time included numerous email exchanges with the Defendant.[8]

Beyond the cumulative total of hours spent communicating with the Defendant and Relief Defendants, the substance of those communications also underscores the Receiver's impartiality. Throughout Exhibits D-1 through D-4 there are entries reflecting counsel to the Receiver's telephonic conferences and written correspondence to the Defendant and counsel to the Relief Defendants concerning a multitude of important issues, which counsel to the Receiver engaged in to solicit the input of the Defendant and counsel to the Relief Defendants pursuant to the Receiver's obligations under the Appointment Order and in furtherance of the equitable management of the Receivership Estate. In many instances, the Receiver incorporated their perspectives into the positions he advanced.

### VII.    The Receivership Should not be Terminated Immediately

The Responses assert that the Receivership must be terminated immediately. (Defendant's Response, at 13-14.) However, the Receiver's duties under the Appointment Order are not yet complete. The Receiver's purpose pursuant to the Appointment Order is, *inter alia*, to "valu[e], liquidat[e], and, if necessary, distribut[e] assets in satisfaction" of the Judgment. (Appointment Order, at 2.) As such, the Receiver respectfully submits that his continued service in this matter and the execution of his remaining duties under the Appointment Order remains necessary to accomplish the purposes of his appointment.

---

Guidelines, do not contain an exact figure reflecting the time spent communicating with counsel to the Commission.

[7] The same limitations articulated above at footnote 6 apply to this estimate.

[8] Much of the Receiver and Z&Z's communication with the Defendant took place through email as a result of the time difference and the Defendant's reported difficulty participating in telephonic communication from India.

The Responses assert that the Receivership should be terminated because the Receiver and Z&Z seek compensation from the Receivership Estate for work concerning (a) the Civil Insider Trading Case and (b) preparations to liquidate the Apartments. As a preliminary matter, the Receiver disputes the Defendant's estimation of the time spent by the Receiver and Z&Z addressing the Civil Insider Trading Case and preparing to liquidate the Apartments. Regardless, the Receiver and Z&Z's services addressing these two matters have provided significant benefit to the Receivership Estate.

With respect to the Civil Insider Trading Case, the Receiver and Z&Z's services focused on ensuring that the contemplated asset freeze in the amount of $4.4 million and appointment of a receiver in no way adversely impacted the Receivership Estate of the Receivership Assets. The Receiver and his counsel reviewed pending matters in the Civil Insider Trading Case, analyzed various structures to determine and compare their impact, and proposed language and procedures to avoid any prejudice in his ability to fulfill his duties in this Receivership and provide appropriate notice to various parties-in-interest including this Court. Furthermore, as the Receiver stated in his Motion Pursuant to Paragraph 5(j) of the Order Appointing Receiver Regarding His Possible Appointment as Receiver in *SEC v. Kanodia*, et al. [Doc. No. 1169], the Receiver recognized the efficiencies and judicial economy inherent in his appointment as receiver in the Civil Insider Trading Case because the Receiver's dual appointment would have decreased the likelihood of conflict and ensured that the priorities established in this Receivership took precedence.[9]

---

[9] The Defendant's response asserts that Attorney Kindseth billed for another matter: "SEC v./Canada." (Defendant's Response, at 21.) This is simply a data entry error. The time entry refers to the civil action *SEC v. Kanodia*, which is the Civil Insider Trading Case. Z&Z appropriately billed this time to this Receivership.

Likewise, the efforts of the Receiver and Z&Z in preparing to liquidate the Apartments – with an aggregate value exceeding $15 million – were in the interest of the Receivership Estate and benefited the same. As this Court is aware, the Apartments make up a substantial percentage of the Receivership Estate in terms of value. Additionally, the Receiver's directive pursuant to the Appointment Order is to, *inter alia*, "secure the judgment for the SEC." (Appointment Order, at 5.) Given the fluctuating and – according to publicly available news reports and market data – decreasing value of real estate in New York City, in the Receiver's view (and subject to further order of this Court), the significant proportion of the Receivership Estate's value held in the Apartments as well as the decreasing value of the same presents a seemingly inescapable conclusion that the Apartments will need to be liquidated to fully secure the Required Amount, including the Judgement. At no point has the Defendant or the Relief Defendants presented a feasible alternative to liquidating the Apartments to secure the Required Amount.

Additionally, and for many of the same reasons, if and when this Court orders the Receiver to proceed with the liquidation of the Apartments, it is in the best interest of the Receivership Estate for the Receiver to act quickly and put the Apartments on the market without delay. As a result, in the time period before the Court rules on the Report and the Receiver's proposals contained therein, the Receiver reasonably believed it best to do what he could to prepare for the liquidation of the Apartments, including speaking with potential brokers, entertaining preliminary offers from the occupants of Apartment 12F, and discussing the potential liquidations with various parties to this action. As a result of these and other efforts, the Receiver will be able to place the Apartments on the market with minimal delay.

**VIII.   A 50% Reduction and 100% Holdback are Inappropriate**

There is absolutely no basis for any blanket reduction and full holdback of fees. In light of the reasonable and necessary services provided by the Receiver during the Second Compensation Period and the clear and significant benefit of such work to the Receivership Estate, a further 50% reduction in the fees to be paid to the Receiver beyond the 25% public interest deduction already voluntarily in place is entirely unjustified. This Court has already addressed the appropriate discount rate and holdback percentage in the Appointment Order. Nothing in the Responses justifies altering the compensation structure established by this Court.

Finally, there is no stay in effect with respect to the Receiver's appointment or the execution of his duties under the Appointment Order. As such, the Responses' assertion that "[t]he Court should… hold any payment to the Receiver in abeyance until the final conclusion of this matter when all appeals have been heard" is inconsistent with the procedural posture of this matter. (Defendant's Response, at 15.) The Receiver and his counsel are entitled to be paid promptly for the services they provided fully in accordance with the Appointment Order.

**IX.   Specific Objections to Certain Expenses and Time Entries**

*A.   Expenses (Second Application Exhibit C)*

The Responses oppose all expenses incurred by the Receiver, totaling $5,106.17, reflected in Exhibit C to the First Application. (Defendant's Response, at 16-17.) With respect to PACER charges, while the Receiver avoided it wherever practical, the Receiver incurred PACER expenses viewing filings made after his appointment. Often, accessing a document (and even more so a string of associated documents linked on the Court's electronic CM/ECF docket) directly from the Court's docket is quicker and, due to counsel's hourly rate, ultimately a more cost-effective way to access documents. In a case such as this, with 1215 discrete docket entries plus associated

exhibits as of the end of the Second Compensation Period, accessing the parties' filings on the Court's docket, which includes the descriptions and inter-related links, is consistent with this Court's directive of minimizing the expenses charged to the Receivership Estate.

Similarly, as during the First Compensation Period, the Receiver had no choice but to incur online research expenses from Lexis in addressing the myriad of complex legal issues that arose during the Second Compensation Period. Other expenses, such as filing fees, Federal Express expenses, copying charges, and travel expenses were all incurred in a manner consistent with the SEC Guidelines and the Appointment Order and were necessarily incurred in the best interests of the Receivership Estate.

### B.  Counsel Appropriately Billed for Distinct Services

The Responses assert that the Receiver and his counsel, in various instances, billed twice for the same activity. This occurred once (for .2 hours) apparently due to a data entry error.  In all other respects, the time entries reflect distinct services provided.

Attorney Blau's entry of April 1, 2019, where he charged a .2 for "Exchange correspondence with SMK re updated liquidation plan, draft correspondence to MW and NH re same," was inadvertently billed twice. Attorney Blau's own time records include only one billing entry with this language, but Z&Z's billing system somehow duplicated the entry. The Receiver, therefore, withdraws the request for .2 of Attorney Blau's time.

Attorney Kindseth's entries of April 3, 2019, referenced on page 17 of the Defendant's Response, concern separate documents: one entry is for "[r]ead[ing] the Report," one entry is for "[r]eview[ing] plan of liquidation," and the third is for "[r]eview[ing] proposed order." As this Court is aware, the Receiver submitted these three discrete documents on April 3, 2019, in

compliance with paragraph 29 of the Appointment Order. Attorney Kindseth's entries were properly billed.

Attorney Horwitt's time entries on April 8, 2019, are self-explanatory and appropriate. Attorney Horwitt first reviewed, strategized, researched, and edited the Motion for Advice the Receiver intended to file regarding certain tax issues, which dealt with exceedingly complex receivership and state and federal tax matters, for 4.7 hours. Next, Attorney Horwitt met with Attorney Blau and Attorney Kindseth on this matter. The Defendant's attempt to claim that some overlap existed is unavailing.

Attorney Kindseth's entries on April 24, 2019, reflecting his multiple calls with Attorney Knag, counsel for the Relief Defendants, are also self-explanatory. Attorney Kindseth had multiple calls with Attorney Knag on April 24, and it is entirely appropriate under the Appointment Order and the SEC Guidelines to bill such calls separately.

Attorney Kindseth's time entries on June 17, 2019, merely reflect a long day of diligent work on the Receivership and, specifically, the Receiver's omnibus response to the more than fifty-five pages of briefing submitted in opposition to the Report. Indeed, on June 17, Attorney Kindseth has the following entries:

| Narrative | Time |
|---|---|
| Conference call with Mark Williams re: remaining issues with receiver's report | .5 |
| Initial revisions to reply to responses to receiver's report | 4.3 |
| Review and revise latest draft and reply to responses to receiver's report | 4.1 |
| Final review and finalize omnibus reply to responses to receiver's report | 2.1 |
| Review motion to enlarge page limit | .1 |
| **Total** | 11.1 |

14

While 11.1 hours is certainly a significant amount of time for one day, a great deal of work had to get done that day. The time spent by Attorney Kindseth is reasonable in light of the volume of briefing to which the Receiver was responding in the Omnibus Reply to the Responses to the Receiver's Report Filed by Defendant, Relief Defendants, and Daniel G. Johnson as Trustee and Custodian [Doc. No. 1203] and is even more reasonable given the complex issues inherent in this Receivership and the issues raised in the parties' various responses to the Report. The Appointment Order or SEC Guidelines do not limit how long an attorney can spend in a given day working on a receivership matter.

### C.  Conference Call on June 12, 2019

The Defendant disputes a June 12, 2019 time entry because it makes reference to him being on the conference call when he did not participate in it. (Defendant's Response, at 20.) It is unclear why the entry reads this way but this simply is a distinction without a difference. There is no dispute that Attorney Kindseth participated in a conference call on June 12, 2019, with the Relief Defendants and their counsel, and that such services were reasonable and necessary.

### D.  Analysis of Tax Issues

In the days prior to the filing of the Report and proposed Plan of Liquidation, the Receiver spent a significant amount of time analyzing, discussing, and researching the complex tax issues presented by the Receivership. Understanding the Receiver's tax obligations was essential to the proper administration of the Receivership Estate and integral to a complete Report and actionable Plan of Liquidation.

A receiver's obligation to file federal tax returns and pay federal taxes is governed by the Internal Revenue Code, 26 U.S.C. § 1 *et. seq.* (the "Tax Code") and the regulations promulgated thereunder (the "Treasury Regulations") by the United States Internal Revenue Service (the

"IRS"). The Receivership Estate itself is not a separate taxable entity. 26 C.F.R. § 1.641(b)-2(b).

Therefore, the Receiver had to analyze the Tax Code and Treasury Regulations to determine

whether the Receiver had an obligation to file tax returns on behalf of the Defendant and/or any

one or all of the Relief Defendants given the scope of the Receivership Estate.

 Where a receiver has possession of "all or substantially all the property or business of a

corporation," the Tax Code provides that the receiver "shall make the return of income for such

corporation." (26 U.S.C. § 6012(b)(3); *see also* 26 C.F.R. § 1.6012-3(b)(4).) As to an individual,

a receiver need not file a return where he or she is the receiver for "only part of the property of

an individual." (26 U.S.C.S. § 6012(b)(2); *see also* 26 C.F.R. § 1.6012-3(b)(5); IRS Field

Service Advisory 1996-0622-3 ("a receiver who has all of the property of an individual stands in

the place of that individual and must file a return for him, but a receiver who has anything less

than all the property of an individual is not required to file a return").)

 With these legal principles in mind, and after exhaustive analysis, the Receiver concluded

that the limited scope of the Receivership Estate meant that the Receiver had no obligation to

submit tax returns on behalf of the Defendant. For similar reasons, the Receiver concluded that

he had no obligation to submit tax returns on behalf of Mrs. Ahmed. Finally, based on

representations (albeit, still subject to verification) by the Relief Defendants, their counsel, and

their accountant that all taxable events involving the remaining Relief Defendants flow through

to either the Defendant or Mrs. Ahmed's individual returns, the Receiver concluded (assuming

he receives the requested verification) that he had no obligation to submit tax returns on behalf of

the Relief Defendants.

 Ultimately, this tax analysis was necessary before the Receiver could submit his Report

and proposed Plan of Liquidation. The Receiver performed this analysis with the least impact on

16

the Receivership Estate as possible under the circumstances and avoided the additional expenses of employing a separate professional.

### X.      Conclusion

For the forgoing reasons and as more fully set forth in the Second Application, the Receiver respectfully requests that this Court grant the Second Application and that the Receiver and Z&Z be awarded an allowance of $92,879.20 in professional and paraprofessional fees and $0.00 in Receiver fees for services rendered during the Compensation Period, and $1,798.69 for the reimbursement of expenses, subject to a 20% holdback applicable to fees for services; and such other and further relief as this Court deems just and proper.

Dated: September 23, 2019, at Bridgeport, Connecticut

By:  */s / Stephen M. Kindseth*
      Stephen M. Kindseth (ct14640)
      Christopher H. Blau (ct30120)
      Zeisler & Zeisler, P.C.
      10 Middle Street, 15th Floor
      Bridgeport, CT  06604
      Telephone: 203-368-4234 X 236
      Facsimile: 203-549-0903
      Email: cblau@zeislaw.com;
      skindseth@zeislaw.com
      His attorneys

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 23, 2019, a copy of the foregoing Reply was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System. Furthermore, a copy of the foregoing was sent via email to the Defendant, Iftikar A. Ahmed, at iftyahmed@icloud.com.

<i>/ s / Stephen M. Kindseth</i>
Stephen M. Kindseth (ct14640)