UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | No. 3:15-CV-675 (JBA) |
| Plaintiff, | |
| v. | |
| IFTIKAR AHMED, | |
| Defendant, and | |
| IFTIKAR ALI AHMED SOLE PROP; *et al* | November 10TH, 2019 |
| Relief Defendants. | |

**DEFENDANT'S EMERGENCY MOTION TO ENJOIN THE ENFORCEMENT OF THE DEFAULT JUDGMENT OBTAINED IN VIOLATION OF THIS COURT'S INJUNCTION AND TO IMPOSE SANCTIONS ON NMR OR IN THE ALTERNATIVE, TO IMPOSE SANCTIONS ON NMR, RELEASE FEES TO RETAIN COUNSEL IN THE NEW YORK STATE PROCEEDING[1] TO DEFEND AGAINST THE DEFAULT JUDGMENT AND NMR E-TAILING'S ALLEGED CLAIMS AND TO STAY THE NMR CASE PENDING APPELLATE REVIEW**

The *pro se* Defendant humbly requests *via* this emergency Motion requesting the Court enjoin the enforcement of the default judgment obtained in violation of this Court's Preliminary Injunction and to Impose Sanctions on NMR e-Tailing LLC ("NMR") or in the Alternative, to Impose Sanctions on NMR, release fees so Defendant can retain counsel to defend against NMR in the New York State Supreme Court case of *NMR e-Tailing vs. Oak, et al*, Index Number 656450/2017 ("NMR Case"), and to stay the NMR Case pending Appellate review of the appeal filed on the ruling allowing the NMR Case to proceed. The Defendant reserves all rights.

---

[1] New York State Supreme Court, INDEX NO. 656450/2017.

1

# BACKGROUND

The Defendant provides the following summary for the Court's benefit:

1. The Court has frozen the Defendant and the Relief Defendants' assets since May 6, 2015 and further ordered a Preliminary Injunction, which says that "…[N]o person or entity, including the Defendant, Relief Defendants, or any creditor or claimant against the Defendant or any of the Relief Defendants, or any person acting on behalf of such creditor or claimant, shall take any action to interfere with the asset freeze, including, but not limited to, the filing of any lawsuits, liens, or encumbrances, or bankruptcy cases to impact the property and assets subject to this order; provided, however, that any party or non-party may seek leave from this order upon a proper showing." [Doc. #113 at 21].

2. NMR filed a lawsuit – the "NMR Case" – against the Defendant (and others) and his assets in October 2017.

3. The Defendant was unaware of the filing of this lawsuit.

4. There was a default judgment entered against the Defendant in the NMR Case in March 2018, as Defendant as unaware of such action.

5. The Defendant was unaware of the entry of the default judgment.

6. The Court also issued an Order Appointing Receiver [Doc. #1070] which states that "22. As set forth below, the following civil proceedings are stayed until further Order of this Court: All civil legal proceedings of any nature… (a) against the Receiver… (b) to obtain possession of property of the Receivership Estate… (c) against any of the Defendants…" [Doc. #1070 at 13].

7. NMR e-Tailing ("NMR") filed a motion in this Court for leave to proceed against Oak entities [Doc. #1097] in a NY State Supreme Court case, as per the Receiver Order.  The Defendant became aware of the NMR Case by the filing of this motion in this Court.

8. The Court granted NMR's Motion [Doc. #1167].

9. The Defendant filed a Notice of Appeal on the Court's ruling [Doc. #1277], which the Court has certified [Doc. #1278].

10. The Defendant has submitted a request to the NY Supreme Court for a waiver of any fees or expenses associated with filing motions in that case.

11. The Defendant received an email from the NY Supreme Court chambers, stating that the Court is unable to process his request [EXHIBIT A].

**ARGUMENTS**

The Defendant moves the Court to Enjoin the Enforcement of the Default Judgment obtained in Violation of this Court's Preliminary Injunction and to Impose Sanctions on NMR or in the Alternative, to Impose Sanctions on NMR, release fees so Defendant can retain counsel to defend against NMR in the NMR Case, and to stay the case pending appellate review of the ruling allowing the NMR Case to proceed.

**ARGUMENTS**

**I.    The Court Should Enjoin the Enforcement of Default Judgment Obtained in Violation of this Court's Order.**

This Court froze the Defendant and Relief Defendants' assets on May 6, 2015, and further extended the freeze via Preliminary Injunction. That Preliminary Injunction Order clearly stated that: "…[N]o person or entity … shall take any action to interfere with the asset freeze, including, but not limited to, the filing of any lawsuits, liens, or encumbrances, or bankruptcy cases to impact the property and assets subject to this order; provided, however, that any party or non-party may seek leave from this order upon a proper showing." [Doc. #113 at 21].

NMR filed their lawsuit against the Defendant (and others) on October 18, 2017, over two years after the Preliminary Injunction ruling, which is still in effect.  NMR <u>did not seek</u> leave from this Court for permission to file that lawsuit. As such, the filing of that lawsuit and the resulting Default Judgment in the NMR Case on the Defendant are in violation of this Court's Preliminary Injunction Order and both should be dismissed with prejudice as to the Defendant or in the alternative, the Court should enjoin the enforcement of the default judgment against the Defendant, which was obtained in violation of the Court's injunction.

**II.     This Court Must Impose Sanctions on NMR for Violating the Court's Order.**

Disobedience of a federal court's orders carries heavy costs. "If the meaning of the order is clear, the issue is whether it has been violated." See *Abbott Laboratories v. Apotex, Inc.*, 455 F. Supp. 831, 833 (N.D.Ill. 2006) (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 93 L.Ed. 599 (1949); *Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc.*, 154 F.3d 1345, 1353 (Fed.Cir. 1998). "If it has been [violated], even if in good faith, that is a civil contempt." *Id*. The Defendant need only prove that NMR has failed to comply with a valid court order. See *Heinold Hog Market Inc. v. McCoy*, 700 F.2d 611, 615 (10th Cir. 1983). A district court does not have to find that the violation was "willful" or intentional. See *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949). Intent is not at issue, the only question is whether a party has complied with the court's order. See *McComb,* 336 U.S. at 191; SEC v. McNamee, 481 F.3d 451, 456 (7th Cir. 2007); *In re General Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995); *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983), cert denied, 464 U.S. 1040 (1984).

A contempt sanction may be issued for the purpose of coercing a contemnor info future compliance with the Court's Orders, compensating the complainant for losses stemming from the contemnor's past noncompliance, or both. See *A.V. by Versace, Inc.*, 2002 WL 2012618 at *7. The Second Circuit has noted that "[s]o far as the first of these [contempt] functions is concerned, the district judge, sitting in equity, is vested with wide discretion in fashioning a remedy." *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir. 1979).

The Defendant also brings to this Court's attention that the filing of the NMR Case lawsuit, and any default judgment or judgment against the Defendant or the Receivership Estate is in violation of this Court's orders.[2]

NMR did not seek leave from this Court to proceed against the Defendant and his assets and as such, any entry of judgment, default or not, is invalid and the filing of the lawsuit itself on October 18, 2017 is in violation of this Court's orders and the Preliminary Injunction. NMR cannot claim that they were unaware of this Order as the SEC is fully aware of the Order and NMR has stated that they "have conferred with the SEC." [Doc. #1097 at 8].  Oak is also fully aware of the Order as they used that Order to stay an arbitration by the Defendant against them in May 2018.  Either NMR is explicitly in violation of that Order or neither Oak nor the SEC saw fit to inform NMR and the NY Supreme Court of the existence of the Preliminary Injunction Order which explicitly prohibits any action against the Defendant's assets, (though NMR, Oak, and the SEC all know that the assets are frozen *via* the Preliminary Injunction Order).

It is indisputable that NMR has violated the Court's Preliminary Injunction Order by both the filing of a lawsuit against the Defendant and his assets without obtaining leave of the Court and also by seeking a Default Judgment against the Defendant and his assets again without seeking leave of the Court.  This Court must find NMR in criminal and civil contempt of Court Order[3] and must impose sanctions on NMR for their willful violations of this Court's Orders.

---

[2] The Defendant reserves the right to seek damages due to NMR's violations of this Court's Orders and any resulting prejudice to him based on NMR actions.

[3] It is indisputable that NMR is liable for a finding of contempt and the imposition of sanctions: 1) the Court's Preliminary Injunction Order is clear; 2) NMR knew about the Order as it is in "discussions with the SEC," asked for leave to litigate against Oak under the Receiver Order and is well-aware that the Defendant's assets are frozen under the Preliminary Injunction Order; and 3) NMR disobeyed the Order. In addition, Oak has been involved in this litigation and is well aware of the Preliminary Injunction Order (as they used it to stay the Defendant's arbitration against them in May 2018 and know that the Defendant's Oak assets are frozen under this Order) and did not inform NMR about such Order when the

The Court should also dismiss the NMR Case with prejudice against the Defendant as the case has proceeded against this Court's orders.

**III.      In the Alternative, the Court Should Still Impose Sanctions on NMR, and Release Fees so Defendant can obtain Counsel, and also Stay the Proceedings during Appellate Review so Defendant is not Prejudiced and Appellate Jurisdiction is Preserved**

As stated earlier, the Court must still impose sanctions on NMR both for filing the lawsuit and for seeking and obtaining a default judgment without leave of the Court.

The Court should also release fees for the Defendant to retain counsel to defend against the default judgment and NMR's alleged claims, and to stay this case pending appellate review of the ruling allowing the litigation to proceed so that the Defendant is not prejudiced and appellate jurisdiction is preserved.

**A.  It appears that NMR intends to move against Receivership Assets.**

In their Motion for leave to continue litigation against Oak, NMR specifically claimed that "a judgment against Ahmed was entered on the issue of liability as a result of his failing to answer or otherwise respond to NMR's Complaint. Simply stated, Ahmed has not participated in any way in the Pending New York Action" [Doc. #1097 at 5].

In addition, NMR also stated that "NMR has not taken any action to liquidate or collect its default against Ahmed at this juncture. NMR, however, has made the SEC aware of the status of the Pending New York Action and its expected involvement in the Fair Funds process as a victim of Ahmed's conduct." *Id.*

---

NMR Case was filed against the Defendant and themselves.  The Court must also find Oak in violation of the Preliminary Injunction Order.

This Court granted NMR's request for leave to litigate against Oak, "[G]iven NMR's explicit representation that it does ***not*** seek "assets controlled by the Receiver"" [Doc. #1167 at 7] (emphasis added).

However, it has come to the Defendant's attention that NMR is indeed looking to seek assets that are controlled by the Receiver and as such, the Defendant has every right to defend the action against his assets and to bring this to the Court's immediate attention.

*First,* NMR has only made it clear that "*with respect to OIP"* (emphasis in original) NMR does "not seek to disturb the frozen assets under the Receiver's control," [Doc. #1097 at 7] but NMR did not also explicitly state that they do not seek to disturb the assets in the Receivership Estate "with respect to the *Defendant.*"

*Second,* there is a second NY State Court action against Oak only[4] (and ***not*** the Defendant) where Oak apparently sought to consolidate the two NY State cases. In their opposition to such consolidation, NMR stated that "[S]hould frozen funds be released back to Mr. Ahmed before NMR perfects a liquidated judgment, there is a very small likelihood that NMR will be able to collect on its judgment against Mr. Ahmed at all." (**EXHIBIT B** at 4) Therefore, ***NMR does intend to move against frozen assets that are currently under the Receiver's control*** and apparently not as part of the Fair Funds process, as it has represented in its Motion to this Court [Doc. #1097 at 5]. NMR has misrepresented its position to suit its own convenience, and has misled this Court and parties into believing that it will seek the judgment amount from the Fair Funds process when in reality, it is seeking to fulfill its judgment from assets over and above that amount from assets that are currently frozen under the Receiver's custody.

---

[4] New York State Supreme Court, INDEX NO. 651157/2019.

**B. The Defendant has Every Right to Defend Against the Default Judgment and NMR's Alleged Claims.**

The Defendant was not even aware that such action against him was progressing until NMR filed its Motion for leave to lift litigation stay in this Court in February of this year. The Defendant has every right to fight the default judgment and litigate against NMR's allegations and has significant defenses in that case. Indeed, the Fourteenth Amendment guarantees a right to "equal protection of the laws" and that no "state [shall] deprive any person of life, liberty, or property, without due process of law." In particular, equal access to the civil courts was among the Fourteenth Amendment's primary objectives: "that they should have like access to the courts of the country for the protection of their persons and property…" (*Truax v. Corrigan*, 257 U.S. 312, 334).

However, the Defendant needs counsel to be able to make an appearance and file motions, as New York State Supreme Court rules mandate that certain documents be notarized and hand-delivered to the Court and to the parties and to appear before the Court. The Defendant is unable to follow those procedures and needs counsel to represent him in those matters.[5]

In addition, the Defendant is not able to proceed *pro se* in that court nor is he able to file documents electronically without grant of indigent status by the New York State Supreme Court. However, the Defendant cannot even get those documents to the New York State Supreme Court and even if he were able to, they have stated that they cannot accept any foreign notary. Thus, the Defendant needs the help of counsel to effectuate moving the New York Supreme Court for relief and to defend against the alleged claims of NMR.

---

[5] The Defendant cannot get any papers, including any fee waivers, dispensing with appearances, the notices of appeal or other motions in front of the New York Court. As such, the Defendant needs counsel to represent him.

The Defendant has already sent various papers to the New York Supreme Court, but the New York Supreme Court is unable to process them unless certain procedures are followed.[6] (*see* **EXHIBIT A**). The Defendant's only two options are that he either retain counsel to represent him or he appear in person for any proceedings. The Defendant does not have the means to retain counsel due to this Court's asset freeze order and he is unable to appear in person, due to his bail conditions in India.

Hence, the Defendant requests that the Court release funds up to $350,000 (Three Hundred & Fifty Thousand Dollars) to be paid directly by the Receiver to a counsel representing the Defendant in the NMR Case. It is likely that the Defendant will need to return to the Court for the release of additional funds if the NMR Case is not dismissed against the Defendant and if he will need to participate in future proceedings with the NY Supreme Court in the NMR Case. The Defendant has had multiple discussions and there are counsels ready and willing to represent the Defendant in the NMR Case once funds are available to be paid to them by the Court's order. The protocols for the release of these funds would be exactly identical to the release of funds to the counsels to the Relief Defendants in the appellate process.

### C. Granting Defendant's Motion aids the Receivership Estate.

As NMR has clearly stated that it intends to move against the Receivership Estate for the Defendant's assets to satisfy any default judgment, granting the Defendant's motion so that he may litigate against NMR's alleged claims and the default judgment (as only the Defendant knows all the facts) will aid the Receivership Estate.

---

[6] The Defendant cannot even submit papers for waiver of any fees or expenses or to notify the New York Court that there is a notice of appeal on the ruling allowing the NMR litigation to proceed.

### D. Even though the Defendant has filed a Notice of Appeal on the ruling, the NMR Case is still proceeding, and the Court must Issue a Stay Pending Appellate Review to Preserve Appellate Jurisdiction.

The Defendant has filed a Notice of Appeal on the Court's ruling allowing NMR to continue litigation against Oak. The filing of a notice of appeal has now transferred the jurisdiction of the continuation of that case to the Second Circuit Court of Appeals.

The "filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of... control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)(*per curiam*). Once a notice of appeal has been filed, a district court may take actions only "in aid of the appeal or to correct clerical errors," *Leonhard v. United States*, 633 F.2d 599, 609-10 (2d Cir. 1980), cert. denied, 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981).

As such, the NMR Case cannot continue until it has been heard by the Second Circuit and any continuation of that case severely prejudices the Defendant and violates Supreme Court ruling. However, neither NMR nor Oak[7] has informed the NY State Supreme Court that there is a Notice of Appeal on this Court's ruling; thus, litigation has continued in that case, even though the merits of such are under appeal under Second Circuit jurisdiction.  As explained, the Defendant himself is unable to inform the NY State Supreme Court.  The NMR Case is continuing despite now being under Second Circuit jurisdiction, and the Defendant fully intends to bring this to the attention of the Second Circuit.

In addition, district courts only have the power to grant such relief as may be necessary to preserve the *status quo* pending an appeal. *Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. E. Air Lines*, Inc., 847 F.2d 1014, 1018 (2d Cir. 1988). As such, the NMR case cannot

---

[7] Both NMR and Oak are also parties to the appeal of that ruling.

proceed and a stay of proceedings is appropriate while an appeal of the order allowing the NMR case to proceed is pending because proceeding with the case interferes with the appellate court's jurisdiction to reserve, modify or affirm the ruling allowing the case to proceed.

Given that the issue is now with the Second Circuit, the Defendant respectfully requests an Order from the Court simply stating that the NMR Case is stayed, pending appeal. Such would maintain the *status quo* of the NMR case, is an action "in aid of the appeal," and ensures that the Second Circuit's jurisdiction of this issue is not interfered with during their consideration of the issue under appeal.

### IV.     The Defendant Retains the Right to Adjust the Judgment in this case.

This Court has ruled that disgorgement in this case is equitable.[10] As such, there cannot be multiple judgments on the Defendant for the same underlying acts. This Court has already ordered disgorgement on the specific transaction(s) pertaining to Company C that NMR claims liability on. NMR cannot have a judgment or collect on any default judgment against the Defendant when any disgorgement has already been ordered by the Court or collected by the SEC on the same underlying transaction(s).

Courts have refused to subject defendants to liability both to the SEC for disgorgement and private parties for the recovery of damages or any actions taken to mitigate their losses as to do so would make disgorgement punitive.[11] *e.g., SEC v. Texas Gulf Sulpur Co.*, 446 F.2d 1301, 1308 (2d Cir.) (terming disgorgement "remedial relief" while rejecting the contention that

---

[10] The Defendant reserves all rights and does not waive any rights to appeal this ruling, including (and not limited to) that disgorgement is punitive.

[11] By this or any other statement in this or any other brief or filing, the Defendant does not waive his rights that disgorgement is a penalty in this or in any other proceeding and reserves all rights with respect to his claims on the classification of disgorgement and the impact of *Kokesh v. SEC*, 137 S.Ct. 1635 (2017), or other proceedings, on the various actions he is involved with.

disgorgement constituted a "penalty assessment," by noting that the [defendants] are protected "against double liability [in that] any private judgments against these [defendants] arising out of the events of this case are to be paid from" the amount disgorged to the SEC), *cert. denied*, 404 U.S. 1005, 92 S. Ct. 561, 562, 30 L. Ed. 2d 558 (1971); *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 734 F. Supp. 1071, 1076 (S.D.N.Y 1990) (explaining that a securities law violator will not be subject to liability to both the SEC and private parties because such liability would be "clearly punitive in its effect and would constitute an impermissible penalty assessment"). See *SEC v. Penn Cent. Co.*, 425 F. Supp. 593, 599 (E.D.Pa.1976) ("To the extent that defendants have [paid the victims], the amounts paid would serve to offset part or all of a[n] [SEC] judgment for disgorgement.")

If the Defendant cannot retain counsel to defend himself in the NMR Case and the New York default judgment continues on the Defendant, the Defendant retains the right to request adjustment of disgorgement (and corresponding judgment) in this instant case by whatever amount of judgment is rendered in the NMR Case against him.

V.  **There is Good Cause for the Court to Consider this Motion on an Expedited Basis.**

Pursuant to District of Connecticut Local Rule 7(a)(6), the Defendant has designated this Motion as an "emergency" one and seeks expedited consideration of the same by this Court. The Defendant respectfully represents that good cause exists for such expedited consideration due to the fact that despite the Defendant filing a Notice of Appeal on the Ruling allowing the lift of stay of litigation, the NMR action continues to proceed, interfering with appellate jurisdiction of the appeal of that ruling. As such, it is the Defendant *and* the Receivership Estate that are prejudiced by the continuation of that litigation without Second Circuit consideration and

without allowing Defendant fees to retain legal counsel so that he may defend against the alleged claims and the default judgment in that NY case.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Defendant requests that the Court grant the Motion immediately.

Respectfully Submitted,

Dated:   November 10TH, 2019   /s/ Iftikar Ahmed
_____
Iftikar A. Ahmed
C/O Advocate Anil Sharma
Government Place East
Kolkata 700 069, India

Tel:   +91-983-008-9945
e-mail: iftyahmed@icloud.com

*Pro Se*

## **CERTIFICATE OF SERVICE**

   I hereby certify that a copy of the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and served by electronic mail to:

Mr. Nicholas P. Heinke, *Esq.*
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1071
e-mail: heinken@sec.gov

Mr. Mark L. Williams, *Esq.*
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1027
e-mail: williamsml@sec.gov

Mr. Paul E. Knag, *Esq.*
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5400
Fax: (203) 653-5444
e-mail: pknag@murthalaw.com

Ms. Kristen Luise Zaehringer, *Esq.*
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5406
Fax: (860) 240-5758
e-mail: kzaehringer@murthalaw.com