UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br>    *Plaintiff*,<br>v.<br>IFTIKAR AHMED,<br>    *Defendant*, and<br><br>IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUNITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents,<br><br>    *Relief Defendants*. | Civil No. 3:15cv675 (JBA)<br><br>November 26, 2019 |

**RULING ON DEFENDANT'S MOTION TO STAY**

Defendant moves to stay the proceedings in this case in light of the Supreme Court's recent grant of the writ of certiorari in *Liu v. SEC*. Relief Defendants support that request, but the Receiver and the SEC oppose.

**I.**     **Background**

The Court assumes the parties' familiarity with the facts and procedural history of this case. Of particular relevance to Defendant's Motion to Stay, on December 14, 2018, the Amended Final Judgment was entered against Defendant and Relief Defendants in this case, ordering, among other things, that the defendant "is liable for disgorgement of $41,920,639, representing profits gained

as a result of the conduct alleged in the Second Amended Complaint." ([Doc. # 1054] at 4.) Defendant moved previously for a stay of the enforcement of the judgment while his appeals to the Second Circuit Court of Appeals remain pending, (Mot. to Set Aside J. [Doc. # 1012].) In order to "avoid any irreparable harm which might result from distribution of assets [in satisfaction of the judgment] while appeals are pending," the Court granted that motion in part and "stay[ed] enforcement of the judgment only as to distribution of assets in satisfaction of the judgment." (Ruling on Def.'s Rule 60(b) Mot. [Doc. # 1052] at 7.) But the "process of preparing for any post-appeal distribution of assets to satisfy the judgment, including but not limited to appointment of a receiver or other process for valuing and liquidating frozen assets, the valuation of those assets, and any liquidation of illiquid frozen assets needed to secure the judgment" was not stayed. (*Id.*) Attorney Jed Horwitt was subsequently appointed as Receiver, (Appointment Order [Doc. # 1070]), and his proposed plan of liquidation remains pending, (Receiver's Plan of Liquidation [Doc. # 1130]).

Defendant moved previously to stay all proceedings in this case because a petition for a writ of certiorari had been filed in *Liu v. SEC*. That motion was denied because Defendant's basis for the requested stay was "too speculative . . . to justify staying these proceedings given the risks inherent in delaying the liquidation of assets." (Ruling Denying Def.'s Mot. for Stay [Doc. # 1267] at 3.)

On November 1, 2019, the Supreme Court granted the petition for a writ of certiorari in *Liu v. SEC*, No. 18-1501, which presents the question whether "the Securities and Exchange Commission may seek and obtain disgorgement from a court as 'equitable relief' for a securities law violation even though [the Supreme] Court has determined that such disgorgement is a penalty" in *Kokesh v. SEC*, 137 S. Ct. 1635, 1639 (2017), which held that "[d]isgorgement in the

securities-enforcement context is a 'penalty' within the meaning of [28 U.S.C.] § 2462)." On November 21, 2019, the Second Circuit granted Defendant's motion to hold the appeals of this Court's rulings "in abeyance pending the Supreme Court's decision in *Liu v. SEC*." *SEC v. Ahmed*, No. 18-2903, slip op. at 1 (2d Cir. Nov. 21, 2019).

## II. Discussion

Defendant argues that any decision by the Supreme Court in *Liu v. SEC* could "have a dramatic and significant impact on the judgment" in this case, as it could "materially change the amount of judgment in this dispute and have implications on what assets can be frozen or used to secure any judgment." (Mot. to Stay [Doc. # 1308] at 1-2.) Thus Defendant asks the Court to stay the proceedings in this case until such decision is issued. He notes that unlike his earlier request for stay based on *Liu v. SEC*, the prospect of an impactful Supreme Court decision is no longer speculative. (*Id.* at 2-3.) Defendant also argues that "no prejudice will be caused to any party by a grant of stay as the asset freeze is in place as the equivalent of a *supersedeas* bond" to secure the judgment. (*Id.* at 3.)

Relief Defendants "support and consent to the Defendant's motion requesting a stay of enforcement." (Rel. Defs.' Resp. [Doc. # 1337] at 1.) They argue that a stay is the proper method to "preserve[] the *status quo* in a situation where irreparable harm would occur to the Relief Defendants if the case is not stayed." (*Id.* at 2.) "In particular and for example," Relief Defendants argue that a stay is necessary to protect certain assets which "can never be recovered if monetized," to avoid "sizable capital gains on any stock or bond sails," and to avoid "actions with respect to any irrevocable trusts and/or UGMAs [which] can never be reversed." (*Id.* at 2-3.) Relief Defendants argue that this "irreparable harm would be substantial and irreversible if this case is not stayed," *i.e.*, if the liquidation of frozen assets sufficient to secure the judgment amount proceeds according

3

to the Receiver's Plan of Liquidation. (*Id.* at 3.) Relief Defendants also note that the continuing asset freeze "fully protect[s]" the judgment in favor of the SEC. (*Id.*)

The Receiver opposes the requested stay. (Receiver's Opp. [Doc. # 1333].) He "declines to comment at this time upon the potential impact on this case" of any decision in *Liu v. SEC* as "such speculation would serve no purpose and would be beyond his mandate as articulated in the Appointment Order." (*Id.* at 2.) But the Receiver argues that the Court should deny Defendant's motion because the stay would "prolong the Receivership Estate's exposure to market risk putting the primary purpose of this receivership—securing fully the Judgment entered by this Court pending the appeals—in jeopardy." (*Id.*) The Receiver asserts that it is "fair to say that, at some point in the future, the equities bull market will come to an end," and that the "real estate market may also experience, at some point, a more significant decline in values," which could decrease the value of certain assets of the Receivership Estate. (*Id.*) Thus the Receiver argues that a delay in the liquidation process "may result in the Receiver being unable to fulfil his obligations under the Appointing Order." (*Id.*)

The Receiver also argues that the request to stay should be denied because a stay "would preclude the Receiver from taking the action necessary to protect and preserve Receivership Assets and otherwise comply with the Appointment Order and other orders entered by this Court."[1] (*Id.*

---

[1] "By way of a handful of the many examples, a complete stay would (a) preclude the Receiver from making monthly disbursements of living expenses to the Relief Defendants or paying other amounts due such as insurance premiums; (b) prevent the Receiver from paying necessary federal, state, and local taxes for certain entities such as The Essell Group LLC and The Essell Farm LLC; (c) bar the Receiver from ensuring that no actions are taken against various Receivership Assets, such as the recent attempt by Bank of America to close certain safe deposit boxes holding hundreds of thousands of dollars in personal property and transfer such property to a less secure, or unsecure, location; (d) stop the Receiver from facilitating the orderly management of certain investments held by entities within the Receivership Estate, such as the

at 3.) And for that reason, if a stay is granted, the Receiver argues that the stay should be "limited to a stay of the liquidation process only," not a stay of any and all proceedings in this case. (*Id.* at 4.) He argues that although such limitation "would still expose the Receivership Estate to market risk," it would "also permit the Receiver to perform his management and oversight duties under the Appointment Order," allowing him to manage the estate and "facilitate the unimpeded functioning of the various constituent elements" of the Receivership Estate. (*Id.*)

The SEC opposes Defendant's motion to stay. It argues that a stay is unnecessary in light of the Second Circuit's stay of the appeals in this case pending the Supreme Court's decision in *Liu v. SEC*, which ensures that "*if* the *Liu* decision has any impact on the judgment in this case, Defendant will have recourse on appeal." (SEC Opp. [Doc. # 1336] at 4.) The SEC argues that "in light of the continued risk that frozen assets could decline significantly in value, . . . the most prudent course in these proceedings is to deny the Motion, permit the Receiver to proceed with liquidation, and then lift the asset freeze once the SEC's judgment is secured." (*Id.*)

---

recent exchange of Clues Network, Inc. shares for Qoo10 Pte. Ltd. shares or the distribution of funds from Ribbit Capital to frozen accounts in the Receivership Estate; and (e) impede the Receiver's ability to enforce the Asset Freeze, such as when recent unauthorized trading activity occurred in certain Fidelity accounts and the Receiver corrected Fidelity's mistaken settings that permitted such activity and the Receiver began his ongoing investigation into such unauthorized activity.

Additionally, the Receiver is involved in an ongoing eviction proceeding with respect to the occupants of Apartment 12F. A complete stay of these proceedings would presumably result in the stay of the eviction proceeding, which would impede the Receiver's ability to "maximize the realizable value" of Apartment 12F in that the occupants would continue to not pay rent during the stay and the Receiver would be unable to take action during the stay to remedy that nonpayment or otherwise remove the occupants from the property." (Receiver's Opp. at 3-4.)

The SEC shares the Receiver's concerns about exposure of the assets of the Receivership Estate to "continued market risk." (*Id.* at 5.) The SEC also argues that "Defendant will not be materially prejudiced by any liquidation, as the Court has already ordered that any distribution to Defendant's victims will be stayed until the resolution of Defendant's appeal," asserting that "[s]imply liquidating stocks and investment real estate and placing the proceeds in a cash account will not materially prejudice Defendant, and indeed will also protect Defendant from the risk that those assets decline in value." (*Id.*) Finally, the SEC argues that denying the Defendant's motion will "benefit all parties, as it will secure the SEC's judgment and, to the extent there are assets remaining, will permit the asset freeze to be lifted." (*Id.* at 5-6.)

Contrary to the Receiver's request, the SEC argues that if the Court does grant Defendant's motion to stay, the Court should "make clear that the stay applies to all pending litigation, including motions for releases of money from the asset freeze," in order to "ensure the corpus of assets are not significantly dissipated before the SEC's judgment is secured." (*Id.* at 6.)

The "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). Deciding whether to grant such a stay "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at 254-55.

The Supreme Court's decision to grant certiorari in *Liu v. SEC* suggests that there is some possibility that it will determine that disgorgement is not a proper penalty in securities enforcement actions. And such a decision would have a substantial impact on the amount of the judgment in this case, a majority of which represents the disgorgement award, (*see* Amended Final

J.), and thus would also likely affect which assets are available and/or necessary to satisfy the ultimate judgment amount.

To support their argument that proceeding with the planned liquidation of assets would cause them irreparable harm, Defendant and Relief Defendants point to a number of assets which are unique or whose liquidation cannot be reversed. The Court must balance that risk of harm, which cannot be undone and which could prove unnecessary following the Supreme Court's decision in *Liu v. SEC*, against the potential harm asserted by the SEC and the Receiver, particularly the risk that assets of the Receivership Estate decline in value to a degree which jeopardizes the security of the judgment in this case. Although the Receiver has made clear his position that until assets are liquidated, he cannot guarantee that the assets of the Receivership Estate are sufficient to secure the judgment amount, (*see* Receiver's Plan of Liquidation at 4), the Court notes that the Receiver estimates that the amount required to secure the judgment will be $70,520,834.69, (*id.* at 3), and that the current value of the assets of the Receivership Estate likely exceeds that required amount, (*see id.* at 7).

The asset freeze and the Receiver's prudent management of the Receivership Estate will minimize somewhat the SEC's and Receiver's concerns regarding securing the judgment amount and the risk that assets of the Receivership Estate could decline in value. Although the risk remains that some assets will decline in value due to market fluctuation, the Court must weigh that possibility against the Defendant's and Relief Defendants' substantial risk of irreparable harm resulting from the liquidation of assets which cannot be retrieved even if those assets ultimately prove unnecessary to satisfy the judgment. In weighing these competing risks, the Court determines that the balance of interests currently weighs in favor of staying the liquidation process in this case until the Supreme Court issues its decision in *Liu v. SEC*. To allow the Receiver to

7

continue to perform his other duties and because a stay of liquidation will suffice to protect against the potential harms asserted by Defendant and Relief Defendants, all other proceedings in this case aside from the liquidation of assets shall not be stayed.

### III.   Conclusion

For the reasons stated above, Defendant's Motion to Stay [Doc. # 1308] is GRANTED as to the liquidation of assets and DENIED as to all other proceedings.

IT IS SO ORDERED.

/S/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 26th day of November, 2019.