# Re: URGENT: SEC v. Ahmed, et al. - FW: ACTION REQUIRED (The Essel Group, LLC): ShopClues Merger

9 November 2019 at 8:17 pm

From Ifty Ahmed

To Stephen Kindseth

Cc Christopher Blau, Jed Horwitt, "Paul E. Knag", "jaideep@amritrajassociates.com", Young Ku, Shalini Ahmed, Deborah Accurso, Nicholas Heinke, "williamsml@SEC.GOV", Ifty Ahmed

---

Steve -
      Your personal misperceptions aside, what I wrote was not a threat at all.  Your interpretation is totally incorrect.  "If you harm me, I shall sue you" is not a threat - it is a statement of intent and my rights, not a threat.
      You bring up unrelated issues only to confuse the matter.   I never said the Receiver should not do his job, quite to the contrary.  And at all times, I maintained that I shall also abide and comply by his instructions, while retaining the right to take legal action if harmed.
      _First_, that the valuation has gone down is irrelevant.  Valuations of securities do go up or down all the time; I can only feel sorry that you did not know that.
      _Second_, Mr. Ku is a passive shareholder in The Essell Group.  And I have no idea what he owns or does not own in the acquiring company.  He is not the acquirer, he is simply the CEO of the acquiring company.  Big difference.  Also, his investment in Essell Group, and hence in ShopClues, was publicly disclosed prior to the transaction.
      Again, you bring up these two issues only to muddle the conversation.
      The fact remains that I did not threaten anyone, leave alone the Receiver.  If you believe that I threatened the Receiver, you **must** go to the Court and inform the Honorable Judge of such conduct.  I know you will not and you cannot because I was simply stating my rights to pursue legal action, as is my right under the laws of the United States of America, and you have wrongly accused me of threatening the Receiver.
      Your failure to apologize or acknowledge being in the wrong for accusing me of "threatening" the Receiver is unprofessional but expected.  Such is defamatory and a false accusation, and I stand by my opinion and my right to sue the Receiver if the exchange is not implemented in time or if there is any harm that ensues on any of these assets by way of any of the Receiver's actions or non-actions.

Iftikar

---

On 7 November 2019 at 7:01 pm, Stephen Kindseth <SKindseth@zeislaw.com> wrote:

> Iftikar,
>
> To answer your question, "were that to happen because of your explicit instructions below, the Receiver will be personally and directly liable for all losses caused to The Essell Group LLC," and "the Receiver will be personally and directly liable  for all losses caused to The Essell Group LLC," unequivocally constitute threats. These statements should also be taken in context where, among many other facts in this case, we were presented with a transaction involving an asset previously valued at $2,365,998.35 being transferred for shares stated to be worth $668,552.72, the individual behind the acquirer in the merger is the same person who holds a 40% interest in The Essell Group, LLC, and you hold (subject to the Asset Freeze and Appointment Order) the other 60%, and the Receiver only sought to conduct expedited due diligence to verify the legitimacy and appropriateness of the proposed transaction, which we did and then timely filed the necessary emergency motion to effectuate the transaction.

Steve

**From:** Ifty Ahmed <iftyahmed@icloud.com>
**Sent:** Wednesday, November 6, 2019 9:02 PM
**To:** Stephen Kindseth <SKindseth@zeislaw.com>
**Cc:** Christopher Blau <cblau@zeislaw.com>; Jed Horwitt <JHorwitt@zeislaw.com>; Paul E. Knag <PKNAG@murthalaw.com>; jaideep@amritrajassociates.com; Young Ku <ybku@qoo10.com>; Shalini Ahmed <shalini.ahmed@me.com>; Deborah Accurso <DAAccurso@zeislaw.com>; Nicholas Heinke <HeinkeN@sec.gov>; williamsml@SEC.GOV
**Subject:** URGENT: SEC v. Ahmed, et al. – FW: ACTION REQUIRED (The Essel Group, LLC): ShopClues Merger

Steve  -
I demand to know from you as to **_when_** and **_how_** I "threatened" anyone in my emails to Mr. Blau below – the Receiver or anyone else for that matter.  I demand to know.   Else, please be man enough to tender an apology for making false accusations and casting negative aspersions on me for no reason.
I do take this very seriously.
If I do not hear from one way or the other by the end of this week, I shall file a motion with the CT Court to sanction you for falsely accusing me of threatening anyone, leave alone the Receiver, and take any other step as necessary.
I shall await your response.
Sincerely,
Iftikar

---

On 6 November 2019 at 9:27 pm, Ifty A Ahmed <iftyahmed@icloud.com> wrote:

> Steve – I can only wonder and question your understanding of the English language given your pretty poor interpretation of a simple email laying out of my / our positions.
>
> Merriam Webster, an authority on the English language, defines "threat" as "an expression of intention to inflict evil, injury, or damage".    Please let me know where in my email to Mr. Blau I "threatened" anyone.
>
> I simply laid out my/our position clearly and directly.   It is our right to hold someone personally liable in a court of law if our rights and assets are harmed by either inaction of wrong actions.  I only put that fot the record and stand by it.
>
> If you or the Receiver feels threatened, please approach the Honorable Judge and or file a case against me.   Else, stop making such sick and nonsencial statements that I threatened anyone.
>
> Thanks and regards,
> Iftikar

---

Tpyos are unintentional – fat fingers.

On Nov 6, 2019, at 9:14 PM, Ifty A Ahmed <iftyahmed@icloud.com> wrote:

> Steve –
> I am in no position to threatean anyone.
> Please mind your language – it's thoroughly unprofessional and unbecoming of you.
> I was and always will plainly state my positions.  I am not scared of you.
> Please save yourself the trouble of responding in wasteful ways.
> Iftikar
>
>
> _____
> Tpyos are unintentional – fat fingers.
>
> On Nov 6, 2019, at 7:43 PM, Stephen Kindseth <SKindseth@zeislaw.com> wrote:
>
>> Iftikar,
>>
>> Notwithstanding your threats and demands, the Receiver will independently investigate the bona fides of the proposed transaction first presented to us yesterday morning, in fulfillment of his obligations under Appointment Order. He will then take action as appropriate. We understand the stated time constraints and will take that into consideration as well.
>>
>> Steve
>>
>> _____
>>
>> **From:** Ifty A Ahmed <iftyahmed@icloud.com>
>> **Sent:** Wednesday, November 6, 2019 8:41 AM
>> **To:** Christopher Blau <cblau@zeislaw.com>
>> **Cc:** Jed Horwitt <JHorwitt@zeislaw.com>; Paul E. Knag <PKNAG@murthalaw.com>; jaideep@amritrajassociates.com; Young Ku <ybku@qoo10.com>; Shalini Ahmed <shalini.ahmed@me.com>; Stephen Kindseth <SKindseth@zeislaw.com>; Deborah Accurso <DAAccurso@zeislaw.com>; Nicholas Heinke <HeinkeN@sec.gov>; williamsml@SEC.GOV
>> **Subject:** Re: SEC v. Ahmed, et al. – FW: ACTION REQUIRED (The Essel Group, LLC): ShopClues Merger
>>
>> For the record Mr. Blau, I also strongly dissgaree with your interpretation – i am not selling anything, I am not transferring anything to anyone else, I don't control ShopClues.   The company is being merged and The Essell Group is a very small minority shareholder whose shares are being EXCHANGED for new shares.   Both illiquid and no cash is coming to me or abyone else.   So I believe The Essell Group is fully within its rights to execute the agreements.

While I shall fully comply with your instructions, the Receiver will be held personally liable and responsible for any loss caused to the Essell Group and we retain the rights to litigate against him personally.

IMHO even the SEC would quickly consent to this agreement to be signed as the new asset will also remain frozen and within the Receivership estate.

Thanks and my best regards.
Iftikar

_____
Tpyos are unintentional - fat fingers.

On Nov 6, 2019, at 7:00 PM, Ifty A Ahmed <iftyahmed@icloud.com> wrote:

> Dear Mr. Blau:
>
> You're the lawyer, not me.  So, I shall fully abide by your instructions.
>
> However, please do bear in mind that (1) there is a 11th November 2019 6 PM IST (plesse confirm) deadline for the consents / papers to be submitted for the new shares to be issued to The Essell Group worth significant real value (around $700,000-800,000); failing which (2) The Essell Group will be left with worthless and illiquid shares in a company that no longer exists - and were that to happen because of your explicit instructions below, the Receiver will be personally and directly liable  for all losses caused to The Essell Group LLC and we reserve all rights to take action against the Receiver.
>
> However, as you have instructed, The Essell Group will not take any action on the below request from the Company.
>
> Thanks and regards.
> Iftikar
>
> _____
> Tpyos are unintentional - fat fingers.
>
> On Nov 6, 2019, at 6:45 PM, Christopher Blau

<cblau@zeislaw.com> wrote:

Mr. Ahmed,

As the Receiver interprets the Order Appointing Receiver, specifically paragraph 28 thereof, an order from the Court permitting the transaction is required. Further, under the Order Appointing Receiver including paragraphs 3 and 4, the Receiver should sign the documents in the event the Court permits the transaction to take place. Therefore, please do not take any further action with respect to effectuating this transaction at this time.

Thank you,

Chris

Christopher H. Blau, Esq.
ZEISLER & ZEISLER, P.C.
10 Middle Street
15th Floor
Bridgeport, CT 06604
Phone: (203) 368-5465
cblau@zeislaw.com

**From:** Ifty Ahmed <iftyahmed@icloud.com>
**Sent:** Tuesday, November 5, 2019 9:06 PM
**To:** Christopher Blau <cblau@zeislaw.com>
**Cc:** 'Paul E. Knag' <PKNAG@murthalaw.com>; 'jaideep@amritrajassociates.com' <jaideep@amritrajassociates.com>; Young Ku <ybku@qoo10.com>; Shalini Ahmed <shalini.ahmed@me.com>
**Subject:** Re: SEC v. Ahmed, et al. – FW: ACTION REQUIRED (The Essel Group, LLC): ShopClues Merger

Dear Sir:

My Indian counsel, Mr. Amritraj, has advised me that he has confirmed with Mr. Y B Ku that he consents to this agreement of ShopClues being merged with another entity.  I also consent to the agreement – it is a done deal and was already publicly known here in India even prior to the company sending the documents to us.

However, I would like to request the following information / documents from ShopClues if possible.

1. A cap table of the merged entity showing what percent of the merged entity the 77,267 shares to be received by The Essell Group (EG) constitutes.

2. Since the merged entity does not appear to be a publicly traded company, what information rights, if any, The Essell Group will have.   Will EG, for example, get annual financial statements from the merged entity?

3. What rights would the shares have – specifically with respect to transfer rights, co-sale rights, and rights to participate in any future financing of the merged entity?

As for next steps, I do not know and my Indian counsel has not been able to confirm as to whether I or he can sign the documents and send to the Company.   If you want to do it, you have our consent.  If you want me to take care of it here, please do let me know.

Thanks and best regards,
Iftikar

_____

On 6 November 2019 at 3:26 am, Christopher Blau <cblau@zeislaw.com> wrote:

> All –
>
> We received the below and the attached this morning. We are evaluating this with the Receiver, but we would welcome any input you may have with respect to next steps.
>
> Best,
>
> Chris
>
>
> Christopher H. Blau, Esq.
> ZEISLER & ZEISLER, P.C.
> 10 Middle Street
> 15th Floor

Bridgeport, CT 06604
Phone: (203) 368-5465
cblau@zeislaw.com

---

**From:** Shopclues Investor Relations <PL2019@shopclues.com>
**Sent:** Tuesday, November 5, 2019 2:00 AM
**To:** Christopher Blau <cblau@zeislaw.com>
**Cc:** dbelt@fenwick.com; jaideep@amritrajassociates.com; Michael Dicke <mdicke@fenwick.com>
**Subject:** ACTION REQUIRED (The Essel Group, LLC): ShopClues Merger

To,
 The Essel Group, LLC

**Action Required:** Please completed and return executed copies of the following:
1. *Letter of Transmittal (Signatures on Page 7)*
2. *Exhibit A – Share Application Form*
3. *Exhibit B - KYC Client Declaration Form*

Dear ShopClues Stockholder,

We wish to inform you that Clues Network, Inc. ("**ShopClues**"/"**CNI**"/ the "**Company**") has entered into an agreement to be acquired by Qoo10 Pte. Ltd., a SE Asian e-commerce cum logistics player (the "**Buyer**" and this transaction, the "Merger").

Qoo10 is a leading eCommerce platform in South East Asia. Qoo10 services small and medium enterprises (SMEs) via its localized online marketplaces in Singapore, Indonesia, Malaysia, China, Hong Kong etc and plans to expand into more Asian

countries. This partnership presents new strategic opportunities for both companies as it opens up cross border opportunities for consumers and sellers across Asia.

ShopClues has built a differentiated position as a value-for-money marketplace with a thriving eco-system of small merchants. The plan is for merchants on ShopClues to be able to access to global markets via Qoo10's presence in South East Asia. Similarly, Qoo10s merchants and its cross border logistics business to be able to access to the large Indian market.

The CNI board of directors has discussed and considered various factors in connection with the merger including: (i) the market for the Company's products and services and competition among current and potential providers of such products and services; (ii) the business, operations, financial condition, competitive position and prospects of the Company; (iii) current economic, industry and market conditions affecting the Company; (iv) the prospects of the Company as a stand-alone entity; (v) the ability of the Company to carry on its business if the merger is not consummated; (vi) the potential for other third parties to enter into strategic relationships with the Company; (vii) the consideration proposed to be paid or issued by Buyer in the merger; (viii) the Board's fiduciary duties to the stockholders of the Company; (ix) the potential impact of the Merger on the Company's

employees, users and customers; (x) the terms of the merger agreement, and the related agreements and transactions, including, among others, the indemnification obligations and the conditions to the parties' obligations to consummate the merger; (xi) the likelihood of realizing superior benefits through alternative business strategies (including continuing as a privately-held stand-alone entity, other merger prospects or consummating an initial public offering of the Company's securities, and the associated risks of delay, non-consummation or unavailability thereof); and (xii) the risks involved with the merger, including (a) the possibility that the consideration for the merger might be reduced due to indemnification claims; (b) the possibility that the merger might not be consummated; and (c) the risk that the other benefits sought to be achieved by the Merger might not be achieved.

After careful consideration and extensive discussions, the board of directors and stockholders holding more than 80% of the outstanding shares of the Company have duly approved the Merger and believe that it is in the best interests of the Company and the stockholders to proceed the transaction. The convertible note holders of CNI have also consented to this transaction. The stockholder consent approving the transaction and related matters may be accessed as per the

instructions in the Letter of Transmittal – Exhibit E.

The transaction is structured as a typical US reverse triangular merger structure. Buyer has created a US merger sub which will merge into CNI and all CNI securityholders (includes stockholders, optionholders and warrant holders) will receive Buyer shares or Buyer options as consideration at closing, in accordance with the terms of the Merger Agreement, which you may access as per the instructions in the attached Letter of Transmittal– Exhibit E.

From a ShopClues perspective, the value of the aggregate consideration for the merger being provided to the CNI securityholders is significantly less than obligations owed by CNI to holders of the convertible notes issued by the Company (which notes are senior to preferred stock and all other stock of the Company) and <u>had the convertible note holders insisted on receiving the amounts legally due to them, none of the merger proceeds would be available for distribution to any of the stockholders or securityholders of the Company in respect of their preferred stock, common stock, warrants or stock options</u>.

Nevertheless, after taking into account multiple factors such as capital invested, timing of investment, financial support provided to the company during a period of emergency, etc., the convertible note holders, the Major Preferred Holders of CNI (who

collectively hold more than 88% of the outstanding preferred stock of the Company) and co-founders of the Company, Sanjay (CEO) and Radhika (CBO), have agreed that all existing contractual rights of the convertible note holders to receive agreed priority payments and all liquidation preference rights of preferred stockholders will be waived and the proceeds of the merger with the Buyer will be re-distributed in a manner such that all classes of securityholders of the Company including all Common stockholders, all investors holding preferred stock of the Company, all holders of warrants to purchase stock and almost all holders of stock options, will receive a share of the proceeds.

Pursuant on the above re-distribution, all consideration set aside for distribution to stockholders (other than the convertible noteholders and Major Preferred Holders of CNI) will be distributed on an inter-se pro-rata basis amongst such stockholders (based on their respective ownership of stock of the company).

Accordingly, you will receive redeemable convertible preference shares of the Buyer, which have economic rights similar to the ordinary shares of the Buyer in an exit. These Buyer shares are being provided to you as aggregated consideration for all the securities (preferred stock and common stock) owned by you in the Company. All Major Preferred Holders of CNI will receive

redeemable convertible preference shares of the Buyer which is the same class of shares as the class you will receive.

You will be subject to obligations under the Buyer's constitutional documents in connection with the Buyer shares you receive. The Buyer's constitutional documents may be accessed as per the instructions in the Letter of Transmittal - Exhibit E.

As a CNI securityholder (similar to all other securityholders of CNI including the Major Preferred Holders of CNI), your consideration will be subject to pro-rata indemnification obligations under the merger agreement on a 'several' basis for customary matters such as breach of the Company's representations, covenants, etc. The Company has provided fundamental representations (such as corporate existence, power, authority, non-contravention, total liabilities, etc.) The survival period for all Fundamental Representations is 72 months. This applies to Tax, IT and IP as well. All other reps are subject to a 36 month survival period. No claims can be made on the CNI securityholders unless the claims aggregate to at least 2% of the merger consideration value. Indemnities are capped at 20% of the consideration you receive for all matters other than breach of Fundamental Representations and fraud /wilful misconduct of the Company or the stockholder representative. The Buyer's sole recourse to any CNI securityholder with respect to satisfaction of any indemnity claims is Buyer's ability to redeem shares granted to such CNI securityholder as

part of the merger on a pro-rata basis. In no event is any CNI securityholder liable for any claims beyond the Buyer shares received by such securityholder.

Major Preferred Holders of CNI are institutional investors (and their affiliates) holding preferred stock of the Company and holding at least 4.5% of the outstanding shares of the Company.

In order to receive your consideration under the merger agreement, you will be required to execute the attached Letter of Transmittal and also provide the necessary documents required by the Buyer under the merger agreement/Letter of Transmittal.

Subject to the terms of the merger agreement, the Letter of Transmittal and related documents, the total number of Buyer shares you are entitled to is **77,267**. Each Buyer share has been valued at US$ 8.6525 in accordance with the Merger Agreement. *Every security holder's tax situation is different and you should speak with your own tax or financial advisor to better understand the tax consequences of receiving these shares.*

Needless to say, the contents of this letter, the merger agreement and all related documents are strictly confidential and cannot be disclosed to any person without prior written consent from the Company. The Company reserves all rights and remedies and the right to initiate appropriate legal proceedings if you make any

unauthorized disclosure of such information.

Representative details:

c/o Clues Network Pvt. Ltd.
Plot No. 112, Sector – 44
Gurgaon, Haryana - 122003
India
Attention: Kanchan Kukreja
E-mail: PL2019@shopclues.com

Delivery of the attached Letter of Transmittal, the Share Application Form (if applicable), the KYC Information (if applicable) and your Certificates should be properly completed, executed and delivered to the Representative (who shall thereafter send the foregoing to Buyer), in any event **no later than 6:00 PM (Indian Standard Time) on November 11, 2019**.

Questions and requests for assistance may be directed to the Kanchan Kukreja at PL2019@shopclues.com or +91-124-677-7050.


Thank you
ShopClues

---

**Total Control Panel**                    Login

To: cblau@zeislaw.com          Allow this sender
From: pl2019@shopclues.com     Allow shopclues.com

*This message was identified as spam because the sender is not on your allow list.*

---

**Total Control Panel**                                                                 Login

To: cblau@zeislaw.com          Remove icloud.com from my allow list

From: iftyahmed@icloud.com

*You received this message because the domain icloud.com is on your allow list.*

&lt;Order Appointing Receiver - Ahmed.pdf&gt;

**Total Control Panel**                                                                 Login

To: skindseth@zeislaw.com          Remove this sender from my allow list

From: iftyahmed@icloud.com

*You received this message because the sender is on your allow list.*

**Total Control Panel**                                                                 Login

To: skindseth@zeislaw.com          Remove this sender from my allow list
From: iftyahmed@icloud.com

*You received this message because the sender is on your allow list.*