UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br>    *Plaintiff*,<br>    *v.*<br>IFTIKAR AHMED,<br>    *Defendant*, and<br><br>IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents,<br><br>    *Relief Defendants*. | Civil No. 3:15cv675 (JBA)<br><br>January 9, 2020 |

# RULING GRANTING DEFENDANT'S MOTION FOR APPELLATE ATTORNEY FEES

Defendant moves for the release of funds from the Receivership Estate for payment of attorneys' fees in connection with appeals in this case which are currently pending before the Second Circuit Court of Appeals. (First and Second Mots. for Appellate Attorneys' Fees [Docs. # 1061, 1288].) The Relief Defendants consent to Defendant's request. (Rel. Defs.' Resp. [Doc. # 1292].)

In support of his request, Defendant argues that the "[b]alance of equity warrants the release of funds for counsel's fees" because he "has no legal training," "needs the guidance and assistance of qualified counsel," and "would be severely prejudiced" without such guidance. (First

Mot. for Fees at 2.) Defendant also argues that the release of funds is appropriate because, he asserts, "significantly more assets" are frozen than are necessary to satisfy the judgment against him. (*Id.*; Second Mot. for Fees at 4.)

Defendant states that he is "unable to get any counsel to agree to represent him without the evidence that he will be able to pay for their services," but "informal discussions would lead him to believe an amount of $500,000 . . . would be sufficient for the Defendant to be able to retain qualified counsel." (First Mot. for Fees at 3.) Mr. Ahmed also declines to provide any additional "unnecessary information," including "who the Defendant's appellate counsel is and what work they would do." (Second Mot. for Fees at 5.) He argues that "[a]nything more" than the knowledge that "the counsel would present the Defendant's appeal to the appellate courts" is "protected under 'attorney/client communications' and 'work-product privilege' and it is inequitable (and, very likely, illegal) for the SEC to even inquire further about the work that the Defendant's counsel would do." (*Id.*)

Daniel G. Johnson, in his capacity as trustee of the Iftikar A. Ahmed Family Trust and as the custodian of the UTMA accounts for the benefit of the Ahmeds' three minor children, objects to any release of funds which would use "assets from the trust or the UTMA accounts for the appellate legal fees" of the Relief Defendants or Defendant. (Johnson Resp. [Doc. # 1296] ¶ 4.)

Receiver Jed Horwitt "takes no position with respect to the release of up to $500,000 from the Receivership Estate to pay fees incurred by the Defendant's appellate counsel." (Receiver Resp. [Doc. # 1294] at 2.) The Receiver "feels compelled, once again, to correct the mischaracterization of the Report concerning the existence of Receivership Assets that are not needed to secure the Required Amount," explaining that, contrary to Defendant's assertions, "the ultimate extent of any

Residual Assets, if any, presently remains unknown" and will remain unknown until assets securing the judgment have been liquidated. (*Id.*)

Notwithstanding that ambiguity as to the existence and amount of any Residual Assets, the Receiver "does not believe that a disbursement of up to $500,000 to Appellate Counsel," subject to certain conditions and procedures, would "adversely impact the Receiver's ability to . . . fully secure the Required Amount through the liquidation of Receivership Assets." (*Id.* at 3.) "Therefore, the Receiver takes no position with respect to the relief requested by" Defendant's motion. (*Id.*) But the Receiver did note that he "may oppose further distributions until the Required Amount" has been liquidated, "depending upon the facts and circumstances presented at that time," in consideration of the estimated value of the Receivership Estate and the Residual Assets. (*Id.* at 4.) The Receiver also urged the Court to impose conditions upon any release of funds which mirror the conditions placed by the Court on the release of funds to pay Relief Defendants' appellate counsel. (*See id.* at 5 (citing Ruling Grating Rel. Defs.' Appellate Fees [Doc. # 1267] at 4).)

The SEC opposes Defendant's motion for several reasons. (SEC Opp. [Doc. # 1291].) First, the SEC argues that Mr. Ahmed's "claimed predicament – to be without access to funds because of the continued asset freeze – is entirely of his own making" because he "fled the United States, repeatedly sought to violate this Court's ordered asset freeze, and remains a fugitive." (*Id.* at 3 (internal citation omitted).) The SEC also argues that Defendant is responsible for his current lack of access to funds, because he urged the Court to continue the asset freeze after judgment entered against him, contrary to the SEC's request to liquidate assets sufficient to satisfy the judgment and release any remaining assets, which could then have been used to pay attorneys' fees. (*Id.* at 3-4.) Second, the SEC argues that Defendant's motion should be denied because he "has not shown that he depends on the release of funds to hire appellate counsel" and because, the SEC suggests, the

circumstances of Mr. Ahmed's life in India suggest some current access to funds. (*Id.* at 4.) The SEC also points out that neither it "nor the Court has any way to sufficiently verify that the Defendant depends on the release of funds to hire counsel, since the Defendant has fled the jurisdiction and remains a fugitive" and thus cannot be questioned under oath or held accountable for violating any order of the Court. (*Id.* at 4-5.) Third, the SEC notes that "unlike Relief Defendants, the Defendant is permitted to proceed *pro se* in any appeal in this case" and thus does not require representation by counsel. (*Id.* at 5-6.) Fourth, the SEC argues that because Relief Defendants have retained appellate counsel and "have essentially litigated this case on behalf of the Defendant," Mr. Ahmed himself does not particularly need his own counsel. (*Id.* at 6.) Fifth, the SEC objects to the "vague and excessive" nature of Defendant's request. (*Id.*)

Several key changes have occurred since Defendant's earlier motions for the release of funds to retain counsel, (*see, e.g.*, Mot. to Modify Asset Freeze [Doc. # 95]; Mot. for Reconsideration to Modify the Asset Freeze [Doc. # 325]). First, the amount of the judgment against Mr. Ahmed has now been determined. (*See* Amended Final Judgment [Doc. # 1054].) Second, the Receiver has provided to the Court a neutral accounting of the assets of the Receivership Estate, which indicates that some Residual Assets will likely remain after assets are liquidated to satisfy the judgment. (*See* Report of Receiver [Doc. # 1130].) Third, in light of the stays granted by this Court and the Second Circuit Court of Appeals pending the decision of the Supreme Court in *Liu v. SEC,* No. 18-1501, that liquidation, and the subsequent release of any Residual Assets which might have been used to pay attorneys' fees, has been significantly delayed. (*See* Orders Granting Stays [Docs. ## 1339, 1346].)

It may be true that Defendant's claimed lack of access to counsel is, in part, a situation of his own making, given his decision to flee this jurisdiction and his continued opposition to

proposals to liquidate assets sufficient to secure the judgment amount, after which any remaining assets could be released and used to retain counsel without the need for the Court's approval. But the Court disagrees with the SEC's suggestion that those choices should prevent Defendant from accessing funds which the Receiver expects will likely not be necessary to satisfy the judgment and thus would eventually be released. And although the Defendant's and Relief Defendants' interests in this case often overlap, the Court cannot say that Mr. Ahmed is not entitled to retain counsel simply because Relief Defendants have done so. The Court also recognizes that the appellate process in this case may benefit from the participation of counsel on behalf of Mr. Ahmed.

Thus Defendant's Motions for Appellate Attorneys' Fees [Docs. # 1061, 1288] will be granted with modification. The SEC, Mr. Johnson, and the Receiver raise legitimate concerns about the nature and scope of Defendant's current request. Therefore no funds will be released at this time, and any release of funds from the asset freeze to pay appellate counsel retained by Mr. Ahmed will be subject to certain conditions.

First, Defendant shall notify the court within twenty-one days of retaining appellate counsel. That notice shall include the name of counsel retained by Mr. Ahmed and an estimate by that counsel of the cost of pursuing Mr. Ahmed's appeals before the Second Circuit.

Second, invoices for such representation shall be submitted to this Court for approval, and no funds shall be released by the Receiver absent such approval. Any invoice submitted for the Court's approval shall be accompanied by documentation of Defendant's inability to pay counsel absent release of funds from the Receivership Estate, including a detailed, sworn affidavit from Mr. Ahmed demonstrating his inability to pay the fees. Any request for the release of funds which does not comply fully with this requirement will not be approved by this Court. Upon approval by the Court of any such invoice, the Receiver shall determine which assets of the Receivership Estate

should be used to pay that invoice and shall inform the Court and the parties of his determination, but no funds from the Iftikar A. Ahmed Family Trust or the UTMA accounts shall be used for this purpose.

This authorization shall terminate once the judgment is secured in the CRIS account, and residual assets, if any, have been released from the asset freeze. This authorization also shall terminate should the Court determine that the value of the assets of the Receivership Estate has changed such that the continued release of funds would place undue risk upon the security of the judgment.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 9th day of January, 2020.