UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>IFTIKAR AHMED,<br><br>　　　　　Defendant, and<br><br>IFTIKAR AHMED SOLE PROP; *et al*<br><br>　　　　　Relief Defendants. | Civil Action No. 3:15-cv-675 (JBA)<br><br><br><br>January 13ᵀᴴ, 2020 |

## **DEFENDANT'S EMERGENCY MOTION FOR RELEASE OF FUNDS FOR LIVING EXPENSES**

The *pro se* Defendant submits this Emergency Motion for Release of Funds for Living Expenses.  The Defendant reserves all rights.

## **ARGUMENTS**

The *pro se* Defendant requests an immediate release of funds for his living expenses. There is good cause for the Court to grant this Motion.

### **I.**　**The Defendant meets the criteria for release of funds for his living expenses.**

The *pro se* and indigent Defendant has met the criteria for an immediate release of funds for his living expenses as (i) all his assets are restrained by Court Order; and (ii) as a result of this restraint, he is now unable to pay his living expenses.

**1. The Defendant's Assets Are Frozen by Court Order.**

The Court has frozen the entirety of the Defendant's assets. On multiple occasions, the Court has already determined that the Defendant is indigent; for example, approving the Defendant's *in forma pauperis* standing for appellate courts [Doc. #1038]. The Court has also recognized the Defendant's inability to pay legal fees and has allowed, with certain conditions, a release of funds for him to retain appellate counsel in the Second Circuit Court of Appeals [Doc. #1405].

**2. The Defendant is unable to pay his living expenses as a result of the Asset Freeze.**

As the Defendant has explained multiple times, he is indigent as a result of the asset freeze ordered by this Court. He is a cancer patient who has had no tests and medical treatment for over 4 years now; he is unable to get any employment in a foreign country as he is stateless and without any legal status and papers held in India; and he is now in a dire and precarious situation where he needs living expenses simply to survive. The Defendant has been sleeping on various friends' couches, yet such generosity is neither sustainable nor guaranteed.

**II.    The frozen assets significantly exceed the judgment.**

The Receiver has confirmed over $91MM of frozen assets, not including assets he deemed "not necessary to value" and not including the allegedly forfeited Oak assets[1] [Doc. #1330-5 at 6]. The Court has ascertained a judgment of $64.4MM, which is currently under appeal. It is indisputable that there are several tens of millions of dollars of assets frozen above the judgment and both law and equity favor a release of funds for the Defendant for his living

---

[1] The Defendant does not waive any rights to any of his Oak assets, whether allegedly forfeited or not, by way of this statement. The Defendant expressly reserves all rights to all issues and assets.

expenses. The Court itself has noted that that "the current value of the assets of the Receivership Estate likely exceeds that required amount [of judgment]" [Doc. #1346 at 7] and the Receiver has stated the value of frozen assets to be \$91.9MM,[2] [Doc. #1330-5 at 6] for a judgment of \$64.4MM. Thus, there is a significant over-freezing[3] of assets to secure the SEC's judgment.

In addition, the Court itself "disagrees with the SEC's suggestion that [opposing liquidation] should prevent the Defendant from accessing funds which the Receiver expects will likely not be necessary to satisfy the judgment and thus would be eventually released" [Doc. #1405 at 5] and has granted the Defendant's motion for the release of appellate fees for his Second Circuit representation. The request for living expenses is no different, though significantly lesser in quanta, if not more critical and urgent. While this Court has regularly allowed for significantly greater amounts by way of payments for the annual premiums of life insurance policies on the Defendant, the Court must not and cannot deny access to lesser amounts of funds necessary for the Defendant to live. The irony should not be lost on the Court.

### III. The Law and Equity both favor a release of funds for the Defendant to have living expenses.

Courts have released funds for living expenses as "[I]t is well settled that this Court has authority to freeze personal assets temporarily and the corollary authority to release frozen personal assets, or lower the amount frozen." *Securities and Exchange Commission v. Duclaud Gonzalez de Castilla*, 170 F. Supp. 2d 427, 429 (S.D.N.Y. 2001) (Sweet, J.) (citing *Securities*

---

[2] This does not include assets the Receiver deemed not necessary to value, and it also does not include the Defendant's allegedly forfeited assets at Oak. The Defendant does not waive his rights to any of his assets, including his allegedly forfeited Oak assets, by way of this statement.

[3] The Defendant does not waive any rights regarding this over-freezing and is simply making a factual representation.

and Exchange Comm'n v. Unifund SAL, 917 F.2d 98 (2d Cir. 1990); *Securities and Exchange Comm'n v. American Board Of Trade, Inc.*, 830 F.2d 431, 438 (2d Cir. 1987); *Securities and Exchange Comm'n v. Manor Nursing Centers, Inc.*, 458 F.2d 1082 (2d Cir. 1972)).

Courts, especially in a complete asset freeze of this nature, examine "the disadvantages and possible deleterious effect of a freeze … weigh[ing] [it] against the considerations indicating the need for such relief" *S.E.C. v. Duclaud*, supra, at 429 (quoting *S.E.C. v. Manor Nursing*, supra, 458 F.2d at 1105) and Courts have released funds for living expenses *even when* the amount frozen is far lower than the alleged wrongdoing. ("A district court may exercise its discretion to release frozen funds to pay living expenses or attorney fees, even in instances where the profit from the alleged wrongdoing exceeds the amount of the frozen funds." *Securities and Exchange Comm'n v. Petters*, 2009 WL 3379954, at *2 (D. Minn. Oct. 20, 2009) (citing *Securities and Exchange Comm'n v. Dowdell*, 175 F. Supp. 2d 850, 854 (D. W. Va. 2001); *Commodity Futures Trading Comm'n v. Noble Metals*, 67 F.3d 766, 775 (9th Cir. 1995))).

Also *see Securities and Exchange Comm'n v. Schiffer*, 1998 WL 307375, at *7 (S.D.N.Y. Jun. 11, 1998) (despite finding that "all of [defendant movant's] accounts and funds are of a suspect nature", and before defendant provided a court-ordered accounting, court ordered "release of funds . . . to meet [movant's] living expenses . . . and . . . attorneys' fees", also noting that the government was already voluntarily releasing $5,000 per week for movant's living expenses since the issuance of the initial freeze order).

Here, in a situation where the Receiver has confirmed that the value of frozen assets is tens of millions of dollars over the judgment amount, and where the Court has noted that "the amount of judgment … has been now been determined" and "[the Receiver's] neutral accounting of the assets of the Receivership Estate… indicates that some Residual Assets will likely remain

4

after assets are liquidated to satisfy the judgment…" [Doc. #1405 at 4], the law and equity both weigh in favor of a release of funds for the Defendant's living expenses.

### IV. The amount requested is a minimal fraction of the frozen assets.

The *pro se* Defendant requests an amount of $1,000 (One Thousand Dollars only) per month for his living expenses (food and lodging), which represents an amount of 0.0010% of the $91.9M of frozen assets (not including additional assets not valued or the Oak assets)[4]. The Defendant will work with the Receiver to facilitate a process for receipt of the funds for his living expenses once approved by the Court.

The amount requested is not only reasonable, it is beyond *de minimis* – especially in light of the fact that this Court has approved the continuing expense just for the storage of dead animal skin (shoes and handbags belonging to the Relief Defendants that are clearly not even required or necessary for the satisfaction of any judgment), and the Receiver has invoiced many tens of thousands of dollars for absolutely basic clerical work done by highly qualified lawyers at their firm – work that can be done (even better) by minimum wage interns and was done for free by the Relief Defendants prior to the appointment of the Receiver.

### V. There is Good Cause for the Court to Consider this Motion on an Expedited Basis.

Pursuant to District of Connecticut Local Rule 7(a)(6), the Defendant has designated this Motion as an "emergency" Motion, and seeks expedited consideration of the same by this Court.

---

[4] The amount of $12,000 for a full year would represent 0.013% of the $91.9M of frozen assets (not including additional assets not valued or the Oak assets).

The Defendant respectfully represents that good cause exists for such expedited consideration[5] due to the fact that he now needs funds to pay for his living expenses, and he is now in imminent danger of being left without the ability to afford or obtain food or shelter.[6]  Furthermore, the Defendant is in desperate need of medical treatment and is suffering from various medical conditions that just a general medical practitioner can no longer evaluate.

## CONCLUSION

**WHEREFORE**, for the reasons in his Motion and within, the *pro se* Defendant respectfully requests that the Court grant his emergency request for an Order that $1,000 (One Thousand Dollars Only) be released to him monthly to pay his living expense; and humbly begs the Court to rule on this Motion expeditiously and urgently.

Respectfully submitted,

Dated:          January 13TH, 2020           /s/ Iftikar Ahmed

_____

Iftikar A. Ahmed
C/O Advocate Anil Sharma
Government Place East
Kolkata 700 069, India

Tel:    +91-983-008-9945
e-mail: iftyahmed@icloud.com

*Pro Se*

---

[5] Unfortunately, the *pro se* Defendant is in an extremely precarious and urgent situation and if the Court is unable to rule in a timely manner, the Defendant will be forced to seek relief from the appellate courts, as he is in imminent danger of not being able to secure food and shelter for himself.

[6] The Defendant has been staying with various friends and sleeping on their couches. He has been told in no uncertain terms that such an arrangement can no longer continue.

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and served by electronic mail to:

| | |
|---|---|
| MR. NICHOLAS P. HEINKE, *ESQ*.<br>U.S. Securities and Exchange Commission<br>Byron G. Rogers Federal Building<br>1961 Stout Street, Ste. 1700<br>Denver, CO 80294<br>(303) 844-1071<br>e-mail: heinken@sec.gov | MR. MARK L. WILLIAMS, *ESQ*.<br>U.S. Securities and Exchange Commission<br>Byron G. Rogers Federal Building<br>1961 Stout Street, Ste. 1700<br>Denver, CO 80294<br>(303) 844-1027<br>e-mail: williamsml@sec.gov |
| MR. PAUL E. KNAG, *ESQ*.<br>Murtha Cullina, LLP<br>177 Broad Street, 4th Floor<br>Stamford, CT 06901<br>(203) 653-5400<br>Fax: (203) 653-5444<br>e-mail: pknag@murthalaw.com | MS. KRISTEN LUISE ZAEHRINGER, *ESQ*.<br>Murtha Cullina, LLP<br>177 Broad Street, 4th Floor<br>Stamford, CT 06901<br>(203) 653-5406<br>Fax: (860) 240-5758<br>e-mail: kzaehringer@murthalaw.com |