UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br>*Plaintiff,*<br>v.<br>IFTIKAR AHMED,<br>*Defendant,* and<br><br>IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents,<br><br>*Relief Defendants.* | Civil No. 3:15cv675 (JBA)<br><br>January 22, 2020 |

**RULING GRANTING RECEIVER'S MOTIONS FOR FEES**

Receiver Jed Horwitt moves for the payment of fees and expenses incurred on behalf of the Receivership Estate. (Mots. for Fees [Docs. # 1160, 1249, 1330].) Defendant opposes, (Def.'s Opps. [Docs. # 1183, 1261, 1354]), and Relief Defendants join that opposition, (Rel. Defs.' Opps. [Docs. # 1185, 1264, 1362]). Plaintiff Securities and Exchange Commission does not oppose the Receiver's motions. For the reasons that follow, the Receiver's Motions for Fees are granted.

**I.     Background**

The Court assumes the parties' familiarity with the facts and history of this case. Receiver Jed Horwitt was appointed on December 20, 2018. (Appointment Order [Doc. # 1070].) The

Receiver and persons retained to assist in his administration of the Receivership Estate are "entitled to reasonable compensation and expense reimbursement from the Receivership Estate," subject to "prior approval of the Court" and according to predetermined hourly billing rates. (*Id.* at 16.) The Receiver "shall apply to the Court for compensation and expense reimbursement from the Receivership Estate" within forty-five days after the end of each calendar quarter. (*Id.*). All such fee applications are "interim" and "subject to cost/benefit and final reviews at the close of the receivership." (*Id.*) The "Quarterly Fee Applications are subject to a holdback in the amount of 20% of the amount of fees and expenses for each application," but the "total amounts held back during the course of the receivership may be paid out at the discretion of the Court as part of the final fee application." (*Id.* at 15-16.) The Appointment Order set out certain requirements for the content of each fee application. (*Id.* at 17.)

## II.    Discussion

The Receiver moves for the payment of fees for the following periods: 1) December 20, 2018 through March 31, 2019, (First Mot. for Fees [Doc. # 1160]); 2) April 1, 2019 through June 30, 2019, (Second Mot. for Fees [Doc. # 1249]); and 3) July 1, 2019 through September 30, 2019, (Third Mot. for Fees [Doc. # 1330]). The First Motion represents 646.3 hours worked and seeks payment in the amount of $157,547.50 for professional and paraprofessional fees, $5,425.00 for Receiver fees, and $3,307.48 for expenses. The Second Motion represents 441.9 hours worked and seeks payment in the amount of $92,879.20 for professional and paraprofessional fees and $1,798.69 for expenses. The Third Motion represents 165.5 hours worked and seeks payment in the amount of $39,925.45 for professional and paraprofessional fees and $1,1555.33 for expenses.

The "fees assessed reflect the hours worked by the Receiver and [Zeisler & Zeisler, P.C. "(Z&Z)"] attorneys and paraprofessionals, and the hourly rates applicable at the time that they

rendered their services, as modified by the significant discounts provided by the Receiver and Z&Z" for this matter. (First Mot. at 3.[1]) The Receiver represents that the fee applications

> take into account all relevant circumstances and factors as set forth in the Connecticut Rules of Professional Conduct and the SEC Guidelines, including the nature of the services performed, the amount of time spent, the experience and ability of the professionals and paraprofessionals working on this engagement, the novelty and complexity of the specific issues involved, the time limitations imposed by the circumstances, and the responsibilities undertaken by the Receiver and Z&Z under the Appointment Order.

(*Id.*) The applications include narrative descriptions of the services provided via attached time records and summaries of the Receiver's administration of the Receivership Estate. (*Id.*) The Receiver does not seek "reimbursement for secretarial, word processing, proofreading or document preparation expenses (other than by professionals or paraprofessionals), data processing and other staff services (exclusive of paraprofessional services), or clerical overtime." (*Id.* at 4.) The fee applications reflect the substantial public service discounts determined at the time of the Receiver's appointment, including a 25% discount to regularly applicable hourly rates for all legal professionals and paraprofessionals. (*Id.*) For services provided primarily in his capacity as Receiver (rather than primarily legal services), the Receiver further reduced his hourly rate to $250 per hour. (*Id.*) Pursuant to the SEC Guidelines, the Receiver and Z&Z categorized fees incurred by certain "activity categories." (*Id.* at 6.) The Receiver provided a detailed description of the activities of the Receivership Estate during each billing period. (*Id.* at 11-24; Second Mot. for Fees at 11-24; Third Mot. for Fees at 13-24.)

---

[1] Where the Receiver's motions contain significant overlap in content, the Court cites only to the First Motion for Fees.

Defendant offers a variety of objections to the Receiver's motions, all of which are joined by the Relief Defendants. Generally, Defendant argues that the Receiver's fees are "excessive, duplicative, unreasonable, and unjustified" because the Receiver "has not provided any meaningful benefit to the Receivership Estate" and the receivership itself is improper. (Def.'s Opp. to First Mot. [Doc. # 1183] at 1.[2]) The Court will address Defendant's objections in turn.

### A. General Objections to Receivership

Many of Defendant's objections to the fee motions are best described as general objections to the disposition of this case, the continued existence of the asset freeze and the receivership, and the continued appointment of Mr. Horwitt as Receiver. (*See, e.g.,* Def.'s Opp. to First Mot. at 4-8 (arguing that Receiver was unnecessary or only minimally necessary and has provided no economic benefit to Receivership Estate), 14-15 (arguing that fees should not be paid while appeals of the Appointment Order are pending), 18-22 (arguing that the "Receiver is not a neutral party and cannot be relied on to make any fair and impartial determinations"), 22-26 (arguing that a receivership "is not necessary in this case and thus, the Receivership should be terminated immediately"); Def.'s Opp. to Second Mot. at 3-8 (arguing that excess assets should be released from freeze and receivership does not economically benefit assets of Receivership Estate), 9-12 (arguing that the Receiver is biased against Defendant), 13-14 (arguing that receivership must be terminated); Def.'s Opp. to Third Mot. at 3-8 (arguing that the Receiver is unnecessary, does "nothing," and has not benefitted the Receivership Estate), 10-11 (arguing that the Receiver is biased against Defendant), 12-14 (arguing that receivership should be terminated immediately).)

---

[2] Where Defendant's responses contain significant overlap in content, the Court cites only to his opposition to the First Motion for Fees.

4

The Court has repeatedly addressed these arguments, (*see, e.g.*, Appointment Order; Ruling Denying Def.'s Mot. to Terminate Receivership [Doc. # 1276]), and Defendant's oppositions to the Receiver's motions for fees are not the proper vehicles for attempting to relitigate those decisions.

## B. General Reduction and Holdback

Defendant argues that despite the 25% hourly rate reduction and 20% holdback provision, the fees charged by the Receiver and his counsel are "excessive, unreasonable, and not justified," and thus, he argues, the Court should impose "a minimum of a 50% discount to the requested fees" and the holdback "must be increased to" 100%. (Def.'s Opp. to First Mot. at 28.) He contends that there would be "no economic hardship on the Receiver's firm, which looks to be a 13-professional firm of which 9 (nine) are partners." (*Id.*) Defendant argues that the 50% reduction and 100% holdback are justified because

> (i) there is no justification for having a Receiver; (ii) the fees requested are excessive and unreasonable; (iii) there has been only marginal benefit to the Estate; (iv) the SEC has no incentive to "police" the Fee Application; (iv) there are more liquid and near-liquid assets than the judgment amount; (v) there are tens of millions of dollars of assets frozen above the judgment amount; (vi) the Defendant has been denied the use of his own legally earned funds for his own defense in this (and other) matters; and (vii) there is an appeal pending, including on the instant issue of Appointment of Receiver (which includes any payment to such Receiver).

(*Id.* at 28-29; *see also* Def.'s Opp. to Second Mot. [Doc. # 1261] at 14-15.)

The Receiver responds that the "complex factual and procedural history" of this case, the need for the Receiver to "tak[e] control of the Receivership Estate and assess[] Receivership Assets" in order to fulfill his duties under the Appointment Order, the complex task of managing the Receivership Estate, and the other tasks required by the Appointment Order all make clear that his and Z&Z's services were necessary and justified and thus should not be further reduced as Defendant argues. (Reply Supp. First Mot. [Doc. # 1218] at 2-10.)

The Receiver's fee motions make clear the effort involved in the management of the Receivership Estate and describe in detail the tasks undertaken by the Receiver and Z&Z to comply with the requirements of the Appointment Order. And the Receiver's appointment by the Court was motivated, at least in part, by his fee structure, which was "the most cost-efficient of those proposed by the four receiver candidates." (Appointment Order at 6.) The Court declines to further reduce or holdback the Receiver's fees based on the Defendant's disagreement with the Court's decision to appoint a receiver, the duties and responsibilities assigned to the Receiver, or the Receiver's management of the Receivership Estate.

### C. Specific Objections

Defendant "contests all of the Receiver's bills" but "gives some examples" of specific billing entries to which he is opposed "to support his opposition to the payment of ***any*** fees or expenses to the Receiver." (Def.'s Opp. to First Mot. at 29.) For example, Defendant opposes all "PACER expenses, online research expenses, filing fees, Federal Express expenses, copying expenses, travel charges, expenses to *subpoena* documents, service fees for *subpoenaing* documents, [and] conference call expenses" because "the Receiver does not explain what documents he accessed from PACER and what online research resulted in these invoices," and because "the Receiver does not specify the need for such other services, such as copying." (*Id.* at 30-31; *see also* Def.'s Opp. to Second Mot. at 16; Def.'s Opp. to Third Mot. at 16-17.) Defendant opposes "the breakup and classification of the fees into" the "activity categories" despite that the Receiver engaged in that categorization process in order to comply with SEC guidelines because "the SEC has no incentive to *police* the Application for fees" and because the categorization "is inefficient as the Defendant has to comb through each of these five fee breakups and also go back and forth between the five different fee invoices to make sure that there is no duplicate billing between each of these five

6

categories." (Def.'s Opp. to First Mot. at 31.) Defendant disputes the categorization of certain activities as legal work, as opposed to administrative work, and the subsequent billing of those activities at legal hourly rates, arguing that many activities do not require legal knowledge. (*Id.* at 32-33.) Defendant disputes that "two people were needed" for "any conversation with the Defendant or the Relief Defendants" or for "any communication, meeting, or discussion with any other party," arguing that only one person should have billed for any such activity. (*Id.* at 34; *see also* Def.'s Opp. to Second Mot. at 18-19.) Defendant argues that the Receiver and his counsel should not have "charged at a legal rate for their travel time." (Def.'s Opp. to First Mot. at 35.) Defendant contends that certain entries reflect unnecessary work, (*id.* at 36, 38), while other entries are "vague and lack specificity" or contain errors, (*id.* at 36-37).

In response to Defendant's concern about the billing of travel time, the Receiver explained that there was "an oversight in applying the" billing instruction for travel time "in certain instances." (Reply Supp. First Mot. at 20.) In order to fully comply with the billing instructions regarding travel time, the Receiver agreed to reduce the fees sought in the First Motion by $2094.75, (*id.* at 21), and to reduce the fees sought in the Third Motion by $85.20, (Reply Supp. Third Mot. at 12).

The Receiver responded to each of Defendant's concerns about specific billing entries to provide clarification or explain why each challenged activity was necessary. (*See* Reply Supp. First Mot. at 11-26; Reply Supp. Second Mot. at 4-7, 12-16; Reply Supp. Third Mot. [Doc. # 1378] at 3-12.) After reviewing these responses and the exhibits to the Receiver's three fee motions, the Court agrees with the Receiver that as to the rest of the billing entries, the Receiver and Z&Z provided sufficient detail about the activities conducted and did not engage in excessive billing or unnecessary work.

Defendant also argues that the Receiver's fees should be paid from within the judgment amount, not from any additional assets of the Receivership Estate. (*Id.* at 11; Def.'s Opp. to Second Mot. at 8-9.) He argues that in cases where receivership fees are paid from the receivership estate, that estate is valued at *less* than the judgment amount. (Def.'s Opp. to First Mot. at 11.) Where, as here, the value of the Receivership Estate may exceed the judgment amount, Defendant argues that fees of the receivership estate should be paid from the judgment amount. (*Id.*) Defendant argues that "this Court does not have any legal authority or jurisdiction on assets over the amount of judgment" and because receiver fees "necessarily come at the expense of compensating victims of the fraud." (*Id.* (internal quotation omitted).) Defendant contends that he and the Relief Defendants do "not benefit[] from the appointment of the Receiver," that the SEC and the Receiver have no incentive to keep fees low, and that the Court "cannot impose another penalty on the Defendant by requiring him to pay for the Receiver at no benefit to the Defendant." (*Id.* at 13.)

The Receiver responds that this Court has already determined the proper source of funds to pay the Receiver's fees. (Reply Supp. First Mot. at 10-11 (citing Appointment Order at 5 ("In the absence of any authority in support of the Defendants' position that the SEC should pay for the costs of a receiver, all costs of the receivership in this case will be paid from among the assets of the Receivership Estate.")).)

But the Court previously rejected the suggestion by Defendant that *the SEC* should pay for the cost of the receivership, and has not yet directly addressed the question of whether the cost of the receivership should count against the amount of the judgment against Defendant. No party has fully briefed this issue at this time, and the outcome of the Receiver's fee applications do not depend on the resolution of this question, as any fees paid to the Receiver could later be credited toward the judgment against Defendant if he is entitled to such a credit. Any party who wishes to address

8

the Court on this question may file an indication of its position and supporting memorandum of law within twenty-one days of the date of this ruling.

### III.  Conclusion

For the foregoing reasons, the Receiver's Motions for Fees [Docs. # 1160, 1249, and 1330] are GRANTED as modified by the Receiver's First and Third Replies with regard to the appropriate billing for travel time. Within seven days of the date of this ruling, the Receiver shall submit a proposed order which reflects the final amounts to be distributed to the Receiver and his counsel and identifies the assets of the Receivership Estate from which those amounts will be paid.

IT IS SO ORDERED.

/S/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 22nd day of January, 2020.