UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br>    *Plaintiff*,<br>*v.*<br>IFTIKAR AHMED,<br>    *Defendant*, and<br><br>IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents,<br><br>    *Relief Defendants*. | Civil No. 3:15cv675 (JBA)<br><br>January 29, 2020 |

**RULING ON RELIEF DEFENDANTS' COUNSEL'S MOTIONS FOR FEES AND WITHDRAWAL**

Harris, St. Laurent & Chaudry LLP ("HSC"), counsel for the Relief Defendants since July 2015, moves for permission to withdraw its attorneys' appearances in this case, for the release of $1,860,367.53 from the Receivership Estate for payment of its attorneys' fees incurred on behalf of the Relief Defendants, and for the release of $9,065.64 to Berenzweig Leonard, LLP ("BL"). (HSC Mot. for Fees and to Withdraw [Doc. # 1152].) In the alternative, HSC moves for relief from the litigation stay so that they may litigate to recover unpaid fees. (*Id.*) Defendant does not oppose HSC's request to withdraw but does oppose its request for fees. (Def.'s Resp. to HSC [Doc. # 1174]

at 3.) The Relief Defendants consent to the request to withdraw and to some payment to HSC but dispute the requested amount. (Rel. Defs.' Resp. to HSC [Doc. # 1192] at 2.) The Receiver does not oppose the request to withdraw but does oppose the request for fees. (Receiver's Resp. to HSC [Doc. # 1175] at 7.) The SEC moves to strike HSC's motion, (Mot. to Strike HSC Mot. [Doc. # 1176]), and opposes both the request to withdraw and the request for fees, (SEC's Resp. to HSC [Doc. # 1177]). For the reasons that follow, HSC's motion is granted in part.

Murtha Cullina ("MC"), also counsel for the Relief Defendants since July 2015, moves for a release of $350,000 from the Receivership Estate for payment of attorneys' fees incurred on behalf of the Relief Defendants and as a retainer for future payment of fees. (MC Mot. for Fees [Doc. # 1171].) In the alternative, MC moves for permission to withdraw its appearance. (*Id.*) The Receiver takes no position with regard to either the request for release of $350,000 or the request to withdraw. (Receiver's Resp. to MC [Doc. # 1195] at 2.) The SEC opposes both requests, (SEC Resp. to MC [Doc. # 1197]), and moves to strike MC's motion, (SEC Mot. to Strike MC Mot. [Doc. # 1196]).

I. Background

The Court assumes the parties' familiarity with the facts and history of this case. In January 2017, this Court modified the asset freeze in this case "to permit the release of funds for payment of Relief Defendants' attorney's fees and expenses that derive from the rental proceeds on [the] two New York City apartments" and from certain accounts which are among the frozen assets. (Omnibus Order [Doc. # 387] at 2.) Pursuant to that order, distributions were made periodically to both HSC and MC in partial payment for their services as counsel for the Relief Defendants. (*See, e.g.,* Order Granting Mot. for Release of Funds [Doc. # 838].) But "[c]ounsel for Relief Defendants have not received any payment for their work since April 2018." (HSC Mem. Supp.

2

Mot. for Fees and to Withdraw [Doc. # 1152-1] at 1.) Relief Defendants have instructed HSC "not to communicate on their behalf with the Receiver or perform any work in connection with the receivership," (*id.* at 4), and MC has primarily acted on behalf of the Relief Defendants since approximately January 2019, (*see* MC Mot. for Fees at 8).

II. Discussion

   A. Fees

HSC argues that funds should be released for payment of their fees because "the Judgment has been fixed and the determination has been made that the value of the Assets substantially exceeds the amount needed to secure the Judgment." (HSC Mem. at 5.) HSC explains that "[t]his case has been a huge burden on counsel for Relief Defendants, involving complex and novel issues of law and fact in difficult circumstances" which have required counsel to "appear[] multiple times before this Court," to "conduct[] full discovery," and to "brief[] multiple motions involving significant issues of constitutional law and the authority of the SEC." (*Id.*) HSC also argues that "substantially all of the burden of the litigation has fallen on counsel for Relief Defendants" because "Defendant has appeared *pro se*." (*Id.*) HSC also represents that "for nearly two years, Relief Defendants' counsel have relied upon the Court's orders that allow a portion of their fees to be paid using rental proceeds from the apartments" and that they "undertook substantial work during this period, and would not have remained in the case but for this framework of payment." (Mem. Supp. Rel. Defs.' Post-Remedies Ruling Mot. for Payment [Doc. # 970-1] at 4.)

MC argues that funds should be released for payment of their fees because the value of the Receivership Estate is such that the release "will not prejudice the SEC since its judgment will remain secured" and because of the Relief Defendants' "interest in being represented by counsel in these proceedings." (MC Mot. at 5.)

Defendant argues that funds should not be released to pay HSC because "this esteemed Court has indeed determined . . . that substantially all of the assets frozen in this instant matter do belong to the Defendant . . . then this esteemed Court definitely lacks any authority to release any assets to pay anyone for any services that may have been rendered that did not benefit the Defendant." (Def.'s Resp. to HSC at 2.) But when Relief Defendants recently sought the release of funds to pay their appellate counsel, Defendant consented to their request, (Def.'s Resp. to Rel. Defs.' Emerg. Mot. for Appellate Fees [Doc. # 1283]), directly contradicting his suggestion that this Court "lacks authority to release any assets" for payment of services for the Relief Defendants. Defendant also did not file any opposition to MC's motion for fees, further suggesting that he does not oppose the use of Receivership Estate assets to pay for services for the Relief Defendants.

The Receiver reiterates his position that "the ultimate extent of Residual Assets, if any, presently remains unknown" and will remain unknown until assets are liquidated in satisfaction of the judgment and placed in a CRIS account. (Receiver's Resp. to HSC at 2.) Because of the "large sum" sought by HSC, the Receiver fears that such payment "may, in combination with an unforeseen downturn in equity markets or other adverse events, render the Receiver unable to fully secure the Required Amount." (*Id.* at 5.) For that reason, the Receiver objects to HSC's "sizable" request. (*Id.*) But the Receiver takes no position with respect to MC's request for fees, explaining that the relief sought by MC is different than that sought by HSC because "MC currently represents and would . . . continue to represent the Relief Defendants" but "HSC effectively does not currently represent the Relief Defendants and is not proposing to represent them going forward." (Receiver's Resp. to MC at 3.) The Receiver also notes an "appreciable difference in the amounts sought -- $350,000 versus $1.8 million." (*Id.*)

The SEC "objects to the release of a substantial amount of frozen assets before the SEC's judgment has been secured" and reiterates Defendant's suggestion that the Relief Defendants "do not have standing to request access [to] funds that do not belong to them." (SEC Resp. to HSC at 2-3; *see* SEC Resp. to MC at 2-3.) But contrary to that suggestion, throughout this litigation the Court has released funds for payment of Relief Defendants' counsel, Relief Defendants' living expenses, (*see, e.g.*, Order Appointing Receiver [Doc. # 1070] at 7), and Relief Defendants' appellate counsel. Moreover, the SEC has previously not opposed the release of funds from the Receivership Estate for payment of services for the Relief Defendants, contradicting its present assertion that the Relief Defendants do not have standing to request the release of funds. (*See, e.g.,* SEC Resp. to Rel. Defs.' Mot. for Appellate Fees [Doc. # 1286] at 5-6 ("In sum, the SEC is not necessarily opposed to the release of funds to Relief Defendants for appellate counsel fees, but this should occur only after a sufficient showing that Relief Defendants in fact rely on the release to hire appellate counsel . . . . [If] the Court [were] to release funds to Relief Defendants . . . the Court should decline to release monies from" funds which "Defendant obtained through fraud" and which the "Receiver has already earmarked . . . to be used to satisfy the judgment" but rather should order funds released from other accounts of the Receivership Estate which "have not been earmarked to satisfy the judgment in this case.").)

The Court acknowledges the services provided by HSC and MC throughout this litigation and the reasonable reliance by those firms on the Court's previously established mechanism for releasing rental funds from the New York apartments to pay counsel for the Relief Defendants. Thus, the Court will release some funds from the Receivership Estate for payment to both firms. The firms seek payment in full of all unpaid fees, but because of the Receiver's concerns regarding security of the judgment and because the previously established payment mechanism did not

5

provide for payment of all outstanding fees, the Court declines to grant the firms' requests in full. Rather, the Court will authorize the release of funds for partial payment of fees in accordance with the sums which counsel for the Relief Defendants could reasonably have expected and relied upon in continuing their representation of the Relief Defendants. The Court estimates that over the relevant time period, approximately $31,000 per month could reasonably have been expected to become available for payment of Relief Defendants' counsel from the apartments' net rental income.[1] Therefore, $279,000 will be released to HSC, to reflect $31,000 per month from the last release of funds for Relief Defendants' counsel in April 2018 through December 2018, and $155,000 will be released to MC, to reflect $31,000 per month from January 2019 through May 2019, the date of MC's fee motion. The requested $9,065.64 will also be released to BL. The Court declines to issue any funds for a retainer as requested by MC but will consider a motion for fees incurred since May 2019 at that monthly rate.

### B. Withdrawal

#### a. HSC and BL

HSC and BL move to withdraw from this case because they "have performed extensive work in this matter but have received no compensation for it in over one year," and because "no substantive work remains for HSC or BL to do." (HSC Mem. at 3.) Those firms argue that there is no remaining work for them to do because "there is a final judgment in the District Court, and because HSC and BL have not been retained to prosecute any appeal and have been further

---

[1] The Receiver estimates that from the beginning of the asset freeze in August 2015 to around April 2019, the net rental income generated by Apartment 12A was $923,894.62, and the net rent generated by Apartment 12F was $430,821.90. (Report of Receiver [Doc. # 1130] at 11-12.) Therefore, the apartments jointly generated net rental income of approximately $1,354,716.52 over a period of 44 months, or approximately $30,789 per month.

instructed by Relief Defendants not to communicate with the Receiver or perform any work in connection with the receivership." (*Id.* at 4.) Because there remains no work for HSC and BL to do on behalf of the Relief Defendants, the firms argue that the Relief Defendants will suffer "no prejudice" from their withdrawal. (*Id.*)

Defendant and the Receiver do not object to the withdrawal of HSC and BL. (Def.'s Resp. to HSC at 3; Receiver's Resp. to HSC at 2.)

The SEC opposes and moves to strike HSC's request for withdrawal. It argues that the withdrawal request "fails to comply with this Court's rules and the rules of professional responsibility regarding withdrawal, and indeed fails to provide basic information such as whether the Relief Defendants themselves consent to the withdrawal or the other relief sought" and also is improper because HSC filed a motion on its own but "has not been granted leave to withdraw or intervene." (Mot. to Strike HSC Mot. at 2.) The SEC argues that HSC's motion fails to comply with the requirement of Local Rule 7(e) that motions to withdraw "normally will not be granted except upon a showing that other counsel has appeared or that the party whose counsel seeks to withdraw may and has elected to proceed without counsel, and that the party has received actual notice of the motion to withdraw." But the Relief Defendants did receive notice of the withdrawal request and do "consent to the withdrawal of HSC and [BL],"[2] (Rel. Defs.' Resp. to HSC at 2), and MC continues to appear in this case and litigate on behalf of the Relief Defendants.

The SEC also argues that HSC's motion is improper because that firm "continues to be counsel of record for the Relief Defendants" but the motion "purport[s] to be filed by the law firm

---

[2] Relief Defendant Shalini Ahmed entered a Notice of *Pro Se* Appearance "for the limited purpose of responding to" HSC's motion, ([Doc. # 1191]), and filed the Relief Defendants' response to that motion *pro se*, (Rel. Defs.' Resp. to HSC at 1 n.1).

itself." (Mot. to Strike HSC Mot. at 3.) Therefore the SEC describes HSC's motion as "bizarre and unauthorized" as HSC has not "moved to or been granted permission to intervene in this matter." (*Id.* at 3.) The Court recognizes the SEC's procedural concerns about HSC's filings. But the substance of Local Rule 7(e)'s requirements for the withdrawal of counsel have nonetheless been met, and thus HSC's and BL's motion for withdrawal is granted, and the SEC's motion to strike HSC's motion is denied.

### b. MC

MC moves to withdraw "[i]f the Court is unwilling at this time to grant fees to Murtha as requested, . . . because Murtha is unable to effectively represent its clients or continue to fund this litigation" absent such payment. (MC Mot. at 6.) But MC noted that it would "much prefer that the Court authorize partial payment of fees in the amount of $350,000" so that it need not withdraw from representing the Relief Defendants. (*Id.* at 8.)

The Receiver takes no position on this withdrawal request. (Receiver's Resp. to MC at 2.) The SEC opposes the withdrawal request, arguing that it "does not comport with the local rules or the Connecticut Rules of Professional Responsibility." (SEC Resp. to MC at 2.) But the SEC "may not necessarily object to [MC's] withdrawal" generally, depending upon the resolution of the various motions affecting Relief Defendants' counsel. (*Id.*) As with the HSC motion, the SEC moves to strike MC's motion for failure to comply with the local rules. (SEC Mot. to Strike MC Mot. at 2.)

MC's request for withdrawal does indicate that MC has "advised the Relief Defendants . . . [that] Relief Defendants other than Relief Defendant Shalini Ahmed may not be able to appear *pro se* but that if . . . withdrawal of counsel is granted, she would appear *pro se*." (MC Mot. at 8.) But the motion does not indicate whether the Relief Defendants consent to that arrangement, and they

8

have neither entered a general *pro se* appearance nor engaged other counsel to represent them. In light of the Court's decision to grant in part MC's request for payment of attorneys' fees, the Court concludes that MC has not demonstrated the good cause for withdrawal required by the local rules. *See* Local Rule 7(e) (Providing that motions for withdrawal "normally will not be granted except upon a showing that other counsel has appeared or that the party whose counsel seeks to withdraw may and has elected to proceed without counsel, and that the party has received actual notice of the motion to withdraw. In cases where the party has failed to engage other counsel or file a personal appearance, where good cause exists for permitting the withdrawal by the appearing counsel, the Court may grant the motion to withdraw the appearance after notice to the party . . . ."). Therefore, MC's motion to withdraw its appearance in this case is denied. The SEC's motion to strike is also denied.

### C. Litigation Stay

"[I]f the Court denies in whole or in part HSC's motion for attorneys' fees," then HSC asks the Court to "lift the litigation stay now in place to allow HSC to bring an action against the Relief Defendants" for payment of fees. (HSC Mot. at 6.) This Court previously imposed a stay of "[a]ll civil legal proceedings of any nature . . . to obtain possession of property of the Receivership Estate . . . [or] against any of the Defendants." (Order Appointing Receiver at 13.)

"[D]istrict courts may appoint receivers as part of their broad power to remedy violations of federal securities laws," and "[a]n anti-litigation injunction is simply one of the tools available to courts to help further the goals of the receivership." *S.E.C. v. Byers*, 609 F.3d 87, 92 (2d Cir. 2010). "The modification of a litigation stay is subject to a three-pronged test first articulated by the Ninth Circuit in *Wencke*," which

9

> identified three factors for determining whether, in a receivership context, an injunction against litigation should be lifted: '(1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim.'

*S.E.C. v. Illaramendi*, No. 3:11CV78 (JBA), 2012 WL 234016, at *4 (D. Conn. Jan. 25, 2012) (quoting *S.E.C. v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984)). "The first *Wencke* factor balances the interests of the Receiver in preserving the status quo against the interests of the moving party." *Id.* at *5. To satisfy the third factor, the movant need only have a "colorable claim that entitle[s] [it] to a trial on the merits," and courts should not attempt to "decide the merits" of the movant's claim when considering a motion to lift a litigation stay. *Wencke*, 742 F.2d at 1232. "The burden is on the movant to prove that the balance of the factors weighs in favor of lifting the stay." *Id.* at *4 (internal quotation omitted).

HSC argues that the first and second factors of the *Wencke* test both weigh in favor of lifting the litigation stay. As to the first factor, HSC argues that it "faces serious prejudice" if prevented from litigating against the Relief Defendants due to the "real risk that the Assets will be dissipated once unfrozen" and that "it will lose priority in its claim should other creditors be able to reduce their claims to a judgment while HSC is prevented from doing so." (*Id.* at 8.) As to the second factor, HSC argues that the stay should be lifted because the "Receiver has already completed his initial assessment of the Assets and has concluded that they substantially exceed the amount required to secure the Judgment" and because, HSC assumes, "the Receiver is getting close to liquidating and releasing assets." (HSC Mot. at 7.) But this Court has since stayed liquidation pending the decision of the Supreme Court in *Liu v. SEC*, No. 18-1501, and thus this second factor does not weigh in favor of lifting the stay as HSC suggests.

HSC contends that the third *Wencke* factor also weighs "overwhelmingly" in favor of lifting the stay because "HSC's claims against the Relief Defendants are essentially unimpeachable, as documented by contemporaneous time and billing reports pursuant to written agreements with the Relief Defendants." (*Id.*)

Defendant argues that HSC's request to lift the litigation stay is "astoundingly shocking" because "such an action [would] be toxic and hostile" and "an alarming case of judicial malpractice akin to a surgeon actually threatening to kill a patient inside an operating room for delayed or non-payment of fees." (Def.'s Resp. to HSC at 3.) Defendant also argues that HSC's fees are "excessive and unreasonable." (*Id.*)

The Receiver "proposes that any order issued by the Court lifting the litigation stay to permit HSC and/or BL to pursue their claims against the Relief Defendants for the payment of past-due fees and expenses should expressly provide that HSC and BL continue to be precluded from taking any action, enforcement or otherwise, against the Receivership Assets and the Receivership Estate absent further order from this Court." (Receiver's Resp. to HSC at 6.) He argues that such a limitation on any lift of the litigation stay "would ensure that the Receivership Estate and the Receiver's ability to execute his duties under the Appointment Order are not prejudiced." (*Id.*) The Receiver does not object to a lifting of the litigation stay which incorporates such a limitation. (*Id.*)

The SEC objects to HSC's request to lift the litigation stay because that "request expressly seeks permission to proceed against the Receivership Estate – which presumably could affect assets of the Receivership Estate necessary for the satisfaction of the SEC's judgment." (SEC Resp. to HSC at 4-5.) The SEC contrasts HSC's request to lift the stay with similar requests by other third parties

who have previously "explicitly made clear that . . . they did not seek to interfere with the Receivership Order or the satisfaction of the SEC's judgment." (*Id.* at 4.)

Relief Defendants "oppose any litigation by HSC (and BL) against the Relief Defendants for past due amounts, as Ms. Ahmed is not willfully withholding payment, this matter has not concluded with an appeal pending," and because, Relief Defendants argue, there are "ample assets" beyond the amount required to satisfy the judgment. (Rel. Defs.' Resp. to HSC at 6.) They argue that to "allow HSC to pursue litigation against the Relief Defendants at this point is not only premature but also unnecessary and will result in additional wastage of time and energy, resources that the Relief Defendants do not have." (*Id.*) Relief Defendants also argue that the stay should not be lifted because they "do not have access to funds required to defend themselves in such a litigation with their attorneys." (*Id.* at 7.) Relief Defendants' response does not address the application of the *Wencke* factors to HSC's request to lift the litigation stay.

The Court concludes that the first and third *Wencke* factors do weigh in favor of lifting the litigation stay, at least in part, to permit HSC to seek payment of unpaid attorneys' fees. As to the first factor, HSC is likely to suffer some prejudice if unable to litigate against the Relief Defendants. HSC is now withdrawing from this action and therefore will no longer be able to seek payment of its fees through its representation of the Relief Defendants before this Court, and thus HSC would be without a legal mechanism for seeking payment of its fees if unable to litigate against the Relief Defendants. Given the possible dissipation of assets if and when the Court releases assets after the judgment has been secured, HSC also faces a risk that it would not ever recover its unpaid fees from the Relief Defendants if forced to wait to pursue its claims for payment until after the resolution of this case. Moreover, because the litigation stay can be lifted in part such that any subsequent litigation will not jeopardize the security of the judgment in this case, a refusal to lift

the litigation stay is not necessary to maintain the status quo of the Receivership at this time. And as to the third factor, the straightforward and documented nature of HSC's claims against the Relief Defendants demonstrates that their claims for fees do likely have merit, with the proper amount left to be quantified. Although the second factor, the time in the course of the receivership, does not particularly support HSC's request, it also does not weigh against its request, especially in light of the Receiver's indication that he does not oppose a limited lift of the litigation stay.

Thus, HSC's motion to lift the litigation stay so that HSC may bring an action against the Relief Defendants for payment of attorneys' fees is granted in part. HSC may litigate against the Relief Defendants, but any resulting judgment will necessarily be secondary to the judgment in this case, and HSC may not seek to recover from any assets of the Receivership Estate until assets of the Receivership Estate have been liquidated such that the judgment in this case is fully secured and satisfied, or until further order of this Court.[3]

### III.     Conclusion

For the foregoing reasons, Harris, St. Laurent and Chaudry's, Berenzweig Leonard's, and Murtha Cullina's motions for release of funds for payment of attorneys' fees [Docs. # 898, 925, 970, 1152, 1171, and 1252] are GRANTED in part. The Receiver is directed to release funds from the Receivership Estate in the amount of $279,000 to HSC, $9,065.64 to BL, and $155,000 to MC.

---

[3] The Court has previously authorized a limited lifting of the litigation stay where the relief sought did not jeopardize the assets of the Receivership Estate or the security of the judgment in this case. (*See* Ruling on Mots. to Lift Lit. Stay [Doc. # 1167] at 9, 13 (permitting third party to litigate against Oak where that third party did "not seek assets of the Receivership Estate and the Receiver does not anticipate that [the limited lifting of the litigation stay] would impact the performance of his duties," and permitting Oak to litigate against Defendant because Oak did not "attempt[] in any way to disturb the asset freeze or take priority over any claim by the SEC to any of the frozen assets.").)

Harris, St. Laurent and Chaudry's and Berenzweig Leonard's motion to withdraw is GRANTED, and all attorneys from those firms who have entered appearances in this case are permitted to withdraw those appearances. Harris, St. Laurent and Chaudry's motion to lift the litigation stay is GRANTED, subject to the limitation that HSC may not seek to recover from any assets of the Receivership Estate until assets of the Receivership Estate have been liquidated such that the judgment in this case is fully secured and satisfied, or until further order of this Court. Murtha Cullina's alternative motion to withdraw is DENIED. The SEC's motions to strike [Docs. # 1176, 1196] are DENIED.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 29th day of January, 2020.