UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br>*Plaintiff,*<br>v.<br>IFTIKAR AHMED,<br>*Defendant,* and<br><br>IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents,<br><br>*Relief Defendants.* | Civil No. 3:15cv675 (JBA)<br><br>January 29, 2020 |

## RULING DENYING DEFENDANT'S MOTION FOR FEES TO RETAIN COUNSEL FOR CRIMINAL MATTER

Defendant moves for the release of funds from the Receivership Estate "so that he can retain legal counsel in his MA criminal matter."[1] (Def.'s Mot. [Doc. # 1332] at 2.) For the reasons that follow, Defendant's motion is denied.

---

[1] Defendant seeks funds for representation in *United States v. Iftikar Ahmed,* No. 1:15-cr-10131-NMG (D. Mass. filed April 1, 2015), the insider trading case. Also pending against Defendant is *United States v. Iftikar Ahmed*, No. 1:16-cr-10154-DPW (D. Mass. filed August 3, 2015), the money laundering case.

## I. Background

The Court assumes the parties' familiarity with the background of this case. Pending against Defendant are two criminal prosecutions in the District of Massachusetts, for insider trading and money laundering. In the insider trading case, No. 1:15-cr-10131-NMG, the complaint was filed on April 1, 2015, and Mr. Ahmed was indicted on May 28, 2015. On April 23, 2015, Mr. Ahmed and Relief Defendant Shalini Ahmed "executed a warranty deed on their Greenwich residence to secure the defendant's compliance with the terms and conditions" of the bail order of the court in the insider trading case. (Memo. and Order on Bond Forfeiture, No. 1:15-cr-10131-NMG, Doc. # 307, at 2 (D. Mass Nov. 7, 2019)). In that case, the government sought a declaration "that Mr. Ahmed's secured appearance bond is forfeited because he is a fugitive" in light of his decision to flee to India and his ongoing absence. (*Id.*) The court in that case concluded that "Mr. Ahmed has deliberately flouted his bail conditions" in that he "has failed to appear in court, has not reported to a probation officer and is a fugitive" and his "refusal to return to Massachusetts has prevented the government from prosecuting him." (*Id.* at 4.) Thus, that court "declare[d] the bail forfeited" in accordance with 18 U.S.C. § 3146(d) and Federal Rule of Criminal Procedure 46(f)(1). (*Id.*)

## II. Discussion

Defendant seeks the release of funds from the asset freeze in this case for payment of counsel in the Massachusetts insider trading case. Defendant's motion indicates that he "has no means to retain legal counsel without a release of funds from his frozen assets." (*Id.* at 1.) Defendant argues that funds should be released because "there are tens of millions of dollars of assets frozen above the judgment amount" and because Defendant "has a Sixth Amendment

constitutional right to retain legal counsel of his choice using his own untainted assets." (*Id.* at 2-3.)

Defendant has moved previously for the release of funds from the asset freeze for payment of counsel in those cases, arguing that he was entitled to such release of funds under the protections of the Sixth Amendment, (Mot. for Release of Funds [Doc. # 95]; Mot. for Release of Funds [Doc. # 325]), and the Court denied those motions, (Ruling on Def.'s Mot. for Release of Funds [Doc. # 191]; Ruling Denying Def.'s Mot. for Reconsid. [Doc. # 392]). Thus, the Court interprets Defendant's current Motion for Fees to Retain Counsel as a motion for reconsideration of those rulings. "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Schrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

Relief Defendants consent to Defendant's motion. (Rel. Defs.' Resp. [Doc. # 1361] at 1.)

The Receiver "feels compelled, once again, to correct the mischaracterization of the Report concerning the existence of Receivership Assets that are not needed to secure the Required Amount ('Residual Assets')." (Receiver's Resp. [Doc. # 1372] at 2.) He explains that "the ultimate extent of Residual Assets, if any, presently remains unknown in large part because the exact dollar amount of the Judgment — which continues to accrue various interest, gains, and other items — cannot be fixed until assets securing it have been actually liquidated and deposited into the CRIS account, and because the amount to be realized from such assets will also not be determined until they are actually liquidated." (*Id.*) Thus, until assets are liquidated and the judgment is secured, "there are no Receivership Assets that, in the Receiver's view, are truly excess." (*Id.*) Because of that uncertainty and the recent requests for and release of funds from the Receivership Estate for

payment of various fees, "the Receiver is generally opposed to any further release of funds from the Receivership Estate to pay for the Defendant and Relief Defendants' counsel as such payments may compromise the Receiver's ability to perform his duties under the Appointment Order and fully secure the judgment." (*Id.* at 3-4.)

The SEC characterizes Defendant's motion as "yet another improper request for reconsideration because the Court previously denied [Docs. ## 191, 392] this same request on two separate occasions." (SEC Resp. [Doc. # 1374] at 1-2.)

In ruling on Defendant's first request for release of funds for payment of attorneys' fees in his criminal cases, the Court determined that it would be "premature to release any frozen assets" because although his Sixth Amendment right had attached upon indictment in at least one pending criminal case, no criminal case pending against Defendant had reached a "critical stage" for which the Sixth Amendment guarantees the right to counsel. (Ruling on Def.'s Mot. for Release of Funds at 9.) The Court declined to unfreeze assets to fund Mr. Ahmed's defense in "a criminal proceeding which may never take place" due to his decision to flee the United States. (*Id.* at 12.) The Court indicated that the "issue of unfreezing assets" for payment of attorneys' fees "may be revisited" if Defendant "returns or is returned." (*Id.*)

In ruling on Defendant's second request for release of funds for payment of attorneys' fees in his criminal cases, the Court declined to alter its earlier decision because "[t]hat which Defendant claims to be new evidence" meriting the release of funds to pay for counsel in his criminal cases, "i.e., that he has now been indicted on a second criminal case, does not require different analysis than that previously set out in the Court's initial Ruling." (Ruling Denying Def.'s Mot. for Reconsid. at 2 (citing Ruling on Def.'s Mot for Release of Funds).) Because "there are still no foreseeable 'critical stages' related to Defendant's first criminal case while he remains outside

4

the jurisdiction of the United States," the Court concluded that Defendant was still not entitled under the Sixth Amendment to the release of funds to pay for counsel in his first criminal case. (*Id.* at 3.)

Defendant now contends that his Sixth Amendment rights have attached to the Massachusetts criminal cases "as he has been indicted in both of" those cases, and because "it appears as if the MA insider trading matter [No. 1:15-cr-10131-NMG] is moving forward, as the government has sought and obtained a declaration of bond forfeiture in that matter, even without the Defendant's knowledge." (*Id.* at 2.) Defendant argues that he is therefore entitled to the release of funds to pay counsel in that insider trading case, despite the Court's prior rulings.

But Defendant had already been indicted in the insider trading case at the time of the Court's prior rulings, and the Court acknowledged that his Sixth Amendment rights had already attached. Because Defendant's Sixth Amendment rights have attached, the question then becomes what protections the Sixth Amendment guarantees to him at this time, and whether those protections require this Court to release funds from the asset freeze so that Defendant may retain counsel in the insider trading case. The Court's two previous rulings on Defendant's requests for funds for this purpose directly addressed that question, concluding that because the criminal cases against Mr. Ahmed have not yet reached "critical stages" due to his absence, the Sixth Amendment does not yet guarantee him access to untainted frozen funds for payment of counsel. (Ruling on Def.'s Mot. for Release of Funds at 12; Ruling Denying Def.'s Mot. for Reconsid. at 3.)

Thus, the only new development asserted by Defendant which could support a request for reconsideration of the Court's earlier rulings is that "the government has sought and obtained a declaration of bond forfeiture in" the criminal insider trading case. (Def.'s Mot. at 2.) That development entitles Defendant to reconsideration of the Court's prior rulings and to the release

5

of funds for his criminal defense only if the "declaration of bond forfeiture" constitutes a "critical stage" of the proceeding such that Defendant's Sixth Amendment rights guarantee him the assistance of counsel in connection with that forfeiture.

A "critical stage" of a criminal proceeding which implicates the Sixth Amendment is one which "h[olds] significant consequences for the accused." *Bell v. Cone*, 535 U.S. 685, 696 (2002). "The core of this right has historically been, and remains today, 'the opportunity for a defendant to consult with an attorney and to have him investigate the case and prepare a defense for trial.'" *Kansas v. Ventris*, 556 U.S. 586, 590 (2009) (quoting *Michigan v. Harvey*, 494 U.S. 344, 348 (1990)).

The "critical stage" formulation was crafted by the Supreme Court in "recognition of the[] realities of modern criminal prosecution": that "today's law enforcement machinery involves critical confrontations of the accused by the prosecution at pretrial proceedings where the results might well settle the accused's fate and reduce the trial itself to a mere formality." *United States v. Wade*, 388 U.S. 218, 224 (1967). In particular, "the period from arraignment to trial [is] 'perhaps the most critical period of the proceedings.'" *Id.* at 225 (quoting *Powell v. State of Alabama*, 287 U.S. 45, 57 (1932)). Thus, critical pretrial stages which trigger Sixth Amendment protections include "the type of arraignment . . . where certain rights might be sacrificed or lost," *Wade*, 388 U.S. at 225 (citing *Hamilton v. State of Alabama*, 368 U.S. 52, 54 (1961)), statements made by the defendant within earshot of law enforcement at a meeting with a confidential informant arranged without notice to counsel, *Massiah v. United States*, 377 U.S. 201 (1964), and custodial interrogation, *Miranda v. State of Arizona*, 384 U.S. 436 (1966). In determining when the Sixth Amendment applies, Courts must "scrutinize any pretrial confrontation of the accused to determine whether the presence of his counsel is necessary to preserve the defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him and

to have effective assistance of counsel at the trial itself." *Wade*, 388 U.S. at 227. Courts must "analyze whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice." *Id.*

Bail hearings, which determine "whether a defendant will be allowed to retain, or forced to surrender, his liberty during the pendency of his criminal case" and which "fit comfortably within the sphere of adversarial proceedings closely related to trial," are "critical stages" for purposes of the Sixth Amendment. *Higazy v. Templeton*, 505 F.3d 161, 173 (2d Cir. 2007) (citing *Coleman v. Alabama*, 399 U.S. 1 (1970)). But the Court can find no binding precedent which directly addresses the question of whether bond *forfeiture* proceedings constitute a "critical stage" of the proceedings such that the Sixth Amendment right to counsel applies to those proceedings. Thus, the Court must determine whether the bond forfeiture proceedings at issue in Defendant's criminal matter are such that the absence of counsel at those proceedings would jeopardize Defendant's right to a fair trial, to meaningfully cross-examine witnesses, or to have effective assistance of counsel at trial.

It cannot fairly be disputed that the Defendant has violated the conditions of his bond in the District of Massachusetts, and the Massachusetts court simply determined the impact, as a matter of law, of Mr. Ahmed's flight to India and absence. The Court can see no way in which these bond forfeiture proceedings could affect Defendant's right to a fair trial or to meaningfully cross-examine witnesses. Nor can the Court conclude that the outcome of the bond forfeiture proceeding might effectively "settle the accused's fate and reduce the trial itself to a mere formality." *Wade*, 388 U.S. at 224. Unlike at other critical pretrial stages, like arraignment, plea negotiations, or plea hearings, the outcome of the bond forfeiture does not implicate Mr. Ahmed's guilt or innocence, nor does it impact his access to a fair trial or zealous defense upon his return from India. In considering the purpose of applying Sixth Amendment protections to "critical stages" of criminal

proceedings and comparing the types of interactions which constitute "critical stages," the Court concludes that the insider trading case against Mr. Ahmed has not yet reached a critical stage, despite the bond forfeiture proceeding occurring in that case. Thus, as before, the Sixth Amendment does not entitle Defendant to the release of funds from the Receivership Estate at this time.

### III. Conclusion

For the reasons set forth above, Defendant's Motion for Fees to Retain Counsel [Doc. # 1332] is DENIED.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 29th day of January, 2020.