## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | |
| v. | Civil Action No. 3:15-cv-675 (JBA) |
| IFTIKAR AHMED, | |
| Defendant, and | |
| IFTIKAR AHMED SOLE PROP; *et al* | |
| Relief Defendants | January 31ST, 2020 |

**DEFENDANT'S RESPONSE TO THE RECEIVER'S NOTICE [DOC. #1412] REGARDING DEFENDANT'S APPARENT FAILURE TO COMPLY WITH APPOINTMENT ORDER RELATIVE TO UNAUTHORIZED ACTIVITY IN FIDELITY <u>x7540 AND FIDELITY x8965</u>**

The *pro se* Defendant humbly submits this Response to the Receiver's Notice [Doc. #1412 or the "Notice"] regarding the Defendant' apparent failure to comply with the Appointment Relative to Unauthorized Activity in Fidelity (Accounts) x-7540 and x-8965. The Defendant reserves all rights to all issues.

The Receiver's conclusion in his Notice is simply false and flawed; it is based on inconclusive and irrelevant data and is driven by factors that have nothing to do with the purported trades. The Notice unfairly accuses and harasses the Defendant[1] when the Defendant has clearly and truthfully articulated that **he did not make those purported trades**. Contrary

---

[1] The Defendant reserves the right to sue the Receiver personally for, *inter alia,* defamation, etc.

to the Receiver's attempts to depict the Defendant as the person to make the trades, the Defendant is neither stupid nor an idiot to violate Court orders in this dispute that is now just weeks shy of entering its sixth (6th) year since its start.

The Defendant humbly presents the following facts in Response to the Receiver's rather strange and flawed conclusion(s) in the Notice.

***First and foremost***, the Receiver submits that the purported trades were executed at 12:22 PM US Eastern Daylight Time (EDT).  On that particular day, Monday, the 09TH of September 2019, the equivalent time that the said trades were executed would have been 21:52 Hours (or, 09:52 PM) Indian Standard Time (IST) the same day.   Please *see* **EXHIBIT 1** for confirmation of that time and date in India.

As it turns out, checking his whereabouts at that time on that day, the Defendant can confirm that he was hospitalized for the treatment of certain ailments that evening in a local hospital with intravenous intervention.  The Defendant is prepared to present non-redacted evidence of his hospitalization record to the esteemed Court for in-camera review if the Court so demands.  Given the repeated attempts by the partners of Oak to terrorize the family members of the Defendant over the last five years; the repeated attempts by Oak's hired goons and assassins in India to physically harm the Defendant; and the documented threats by their counsel, Mr. David K. Momborquette of the law offices of McDermott, Will & Emery, against the Indian counsel of the Defendant; for fear of life and limb, the Defendant is forced to redact all identifying content that could be used by the goons and assassins hired by Oak.

Please see redacted record of hospitalization and treatment of the Defendant  (submitted as **EXHIBIT 2**) at that time/day which completely vindicates the Defendant.   The Defendant simply ***could not*** and ***did not*** executes those trades.

Not only did the Defendant not execute those trades, he just could not have done so as he had no access to a computer that night (Indian Standard Time) whilst being heavily sedated in a hospital at that exact time the trades are alleged to have occurred.  The Defendant is not submitting anything for the public record as it pertains to his medical condition which is both privileged and confidential and to which he is entitled total privacy; and given past threats and attempts on his life by (likely) agents of Oak, it is a matter of safety for the Defendant not to submit such documents for public consumption, including by Oak and their hired goons in India.

The Defendant just cannot be accused of any "apparent failure" for an act that he ***did not*** commit.  And more importantly, the Defendant cannot be accused of any "apparent failure" for an act that he simply ***could not*** commit given the Receiver's own submissions of the date, the time, and the scheme deployed to execute those trades.

***<u>Second</u>***, the Receiver needs to take a step back and ask himself – before submitting totally unsupported and biased accusations unbefitting a supposedly "neutral" party – *why* would the Defendant even make those trades?

It is the Defendant who has been shouting from the rooftops from Day One that <u>**no**</u> <u>**assets**</u>, leave alone Ms. Ahmed's assets, should be liquidated.  It makes absolutely no sense that the Defendant would initiate or execute any trades or liquidate any assets when <u>***he***</u> has been the one to oppose any liquidation of any asset of any kind at any time.  Not only that, why would the Defendant only trade in one security when there were many more in those accounts with the similar financial outcome?

The Receiver also fails to realize that the Defendant wanted ***to invest all the cash into ETFs*** [Doc. #816], entirely the opposite of liquidation by trading *out of* securities into cash, which is what the Receiver accuses the Defendant of doing.  Indeed, had the Defendant's Motion

[Doc. #816] been granted by this Court, the Estate would have been greater in value to the tune of several million dollars.

Instead of recklessly and unnecessarily accusing the Defendant in order to cover up for the Receiver's own failure and unjustified errors in not confirming that trades could not be made in any of the brokerage accounts in the first place, the Receiver should first think carefully about his own failures and neglect.   The Notice by the Receiver is simply an admission of his own failures in discharging his responsibilities.

It is clear that the Defendant has no incentive or motive to execute the trades. The indigent Defendant did not get a dime; the Defendant does not own those assets; the Defendant stood to gain absolutely ***nothing*** from those trades. There is no apparent or real motive that the Receiver can point to for the Defendant to have initiated or executed those trades.

The Defendant has been dealing with quotidian demands of basic survival (*see* Doc. #1407) and had and has no business initiating and executing trades with no real or apparent benefit to him.  He has been struggling to figure out his next meal and has been facing imminent jeopardy to his life and limb – far removed from trading in securities with no benefit to him.

***Third***, *if* the Defendant wanted to liquidate any assets, he would have done what the record will show he has done in the past.  And that is he would have sought the approval of the Court and the consent of the SEC before doing so. The Defendant had done exactly that with his assets at Northern Trust[2] [Doc. #389] and he would have done so here if he wanted to request a trade of any holding in the Fidelity accounts, which he has repeatedly affirmed he has

---

[2] The Defendant notes that he only owns a minor portion of the Rakitfi Holdings asset and that it is majority owned by the Iftikar A. Ahmed Family Trust.  However, as per agreement with the Trust, the Defendant manages the Rakitfi Holdings asset solely for the benefit of the Trust.

4

no control or ownership of.  The Defendant has no reason to make any trades or liquidate any assets without approval of the Court and the fact that the Receiver unilaterally and flagrantly "concludes" that Defendant made those trades is just additional evidence of the Receiver's extreme bias against the Defendant.

_**Fourth**_, the detailed trail the Receiver lays out with respect to the Seattle based servers and the purported use of VPN (Virtual Private Networks) fails to establish anything to do with the Defendant.  The fact is that anyone could have been using any computer from India or the United States or anywhere in the world to execute a scheme to implicate and harm the Defendant with this endeavor.  The tracing of IP addresses and VPN networks do not and cannot establish that the Defendant executed those trades, because he simply did not.

As a threshold matter, as communicated to the Court in many earlier submissions, the Defendant does not currently own a computer (either a desktop or a laptop) and he is able only to access a computer at the offices of his counsel in India (who is representing him *pro bono*) or from commercial public internet kiosks.  At that hour of the nighttime of the particular day in India, both the law offices and commercial public internet kiosks would be closed; and, in any event, the Defendant did not visit either place at that time that night to have been able to execute the trades.

It is most likely that the agents of Oak are behind this in a bid to frame the Defendant to further their obvious attempts to harm and hurt the Defendant.  Their counsel, Mr. David K. Momborquette is a self-professed technology guru who is most likely the mastermind behind this entire scheme to try and frame the Defendant.

_**Fifth**_, all the data and the exhibits on cookies and IP addresses presented by the Receiver amounts to a pitiful, pettifogging rigmarole with no context or substance - all that it proves is that *a* computer (be it a desktop or a laptop) used to both access the accounts and

execute the trades had a certain kind and version of browser.  That computer could belong to the Receiver or one of his people or it could belong to anyone for that matter.  That person is definitely not the Defendant and cannot be the Defendant.   As any lawyer worthy of being in that profession would understand that the logic presented by the Receiver makes zero sense.  Just because the browser type or version and cookies matched the details associated with the trades and access to the Fidelity accounts on other dates, the Receiver's claims that the person executing the trades has to be the Defendant is just a naive exposition of what is commonly known as "***informal fallacy***" because of the falsity or irrelevance of one of more of its premises.   The premises and the conclusion of the Receiver are totally disconnected.

The Receiver's logic follows the same construct as below:

> **Premise 1**:    Half of all adult humans grow beards.
>
> **Premise 2**:    Sophia is an adult human female.
>
> **Conclusion**:   There is a 50% chance Sophia can grow a beard.

That flawed logic, even as it may sound compelling at first to any casual observer, is not just self-serving; it is basically utter nonsense.

That information presented by the Receiver cannot and does not identify *any one person* nor does it distinguish *between multiple* users of the same or even similar computer/browser configurations within, say, an intranet (or a set of computers connected together).  Multiple users could be associated with the same browser version (a commodity) and cookies if they were sharing a computer network and none of that data presented by the Receiver even remotely, leave alone uniquely, be relevant in identifying who executed the trades, leave alone the Defendant.   The Defendant does not own a computer and only occasionally uses a computer that belongs to others or to public internet kiosks.

6

In addition, the Defendant's email account has been hacked multiple times and he has been followed and physically threatened while this litigation has been ongoing, most likely by agents hired by Oak.  Most public internet networks are not secure; and it is not uncommon for cookies and passwords to be stolen.  For example, in any public coffee shop, airport, internet kiosk, or many other places that offer free, unencrypted Wi-Fi access to the internet, this means that anyone with a computer attached to that network can easily capture the cookie, read it, copy it and use it pretending to be someone else. The cookie itself is sent across the internet with zero protection and definitely no encryption.  Once someone else has the cookie, they can pretend to be another node in the network. They can access other person's accounts, post messages as if they were the other person, change some aspects of the other person's profile, and do many other things.  Just because the cookie data is the same across various days and times, does not and cannot point to the Defendant having executed those trade.

Anyone with basic understanding of networking technologies and hacking protocols would confirm that such a data set as presented by the Receiver cannot be attached to activity performed by the Defendant, assuming he even had a dedicated computer for his exclusive use.

It is the Receiver who should have confirmed the "no-trade status" for the various brokerage accounts.  And now, his Notice [Doc. #1412] is yet another example of a wasteful activity, wherein the Receiver will now try and charge the Defendant tens of thousands of dollars of the Defendant's own money to go on some wild goose hunt searching for a needle in a haystack so that the Receiver can cover his own mistakes and error, and blame the Defendant to get the focus off of the Receiver's failures and onto the Defendant.

The irony of this should not be lost on the Court. The Receiver is charging the Defendant tens of thousands of dollars to accuse the Defendant.[3]  Surely, this cannot be the justice system of the United States of America!

**_Sixth_**, this Court is very well aware that both the Defendant and Ms. Ahmed, and their family members, have been repeatedly harassed and intimidated throughout the pendency of this dispute. This is no different than that harassment.  It is very highly likely and quite possibly someone at Oak who orchestrated this whole shenanigan in order to pin blame and taint the Defendant in order to further their own perverse agenda.

The Defendant has already informed the Court and the SEC that his email account has been hacked multiple times.  _That itself is criminal_.  The Court should deal with this situation just as the Court dealt with the earlier harassment – which amount to intimidation of witnesses and parties, clear federal offenses punishable by law – presented to the Court by the Defendant's Indian lawyer, Mr. Amritraj on or around February 26, 2018.

**_Seventh_**, part of the Receiver's mandate is to "maximize [the value of the Receivership Estate]" [Doc. #1070]. However, the Receiver has done anything _but_ maximize the value.  This situation is no different.  Not only has the Receiver cost the Estate significant amounts of money in fees since his appointment, he has also not "reversed" the trade (subject to Ms. Ahmed's and the Court's approval).  The Defendant submits the following to the Court so that the Court understands the economics behind the alleged unauthorized activity that the Defendant had nothing to do with in the first place.   The Receiver conveniently, of course, fails to explain that to the Court in this Notice.

---

[3] The Defendant does not waive any rights by way of this statement and maintains that he should not be paying for the Receiver, whose appointment he has opposed throughout and continues to oppose in this litigation and whose appointment hurts, and not benefit, the economic interests of the Defendant.

The Receiver submits that a total of 12,000 units of Plains All American Pipeline, L.P. ("PAA") were sold at $21.24 each.  That sale would have yielded a cash outcome of **$254,880**.

At the end of trading on 30TH January 2020, PAA closed at a price of $16.99 per unit.   If the Receiver was indeed interested in maximizing the value of the Receivership Estate, he would have simply bought back the 12,000 units at a cost of $203,880; thereby making the Estate **$51,000** (Fifty One Thousand Dollars) in gains compared to the many tens of thousands of dollars that the Receiver actually wasted in his witch-hunt against the Defendant for no real purpose or good[4].  Please *see* **EXHIBIT 3**.

The Receiver has already cost the Estate many hundreds of thousands of dollars in losses, for which he will indeed one day soon be held personally liable and accountable[5].  Rather than reversing the trade, which can be done quite easily by simply repurchasing the same number of units of PAA, if he were so concerned with complying with the Appointment Order which mandates him with "maximize[ing] the value of the Receivership Estate," which he clearly is not, the Receiver instead ends up spending, and hence wasting, several tens of thousands of dollars in this witch-hunt with the only objective of harassing, intimidating, and accusing the Defendant of something he had absolutely nothing to do with.

**_Finally_**, the Notice proves one and one thing only - that this Receiver is not only biased, but he is now angry and illogical at best; and consumed by irrational hatred at worst.

---

[4] If the securities were to instead increase in value, the Defendant retains every right to litigate against the Receiver personally to recover such losses to the Receivership Estate as a result of his obvious dereliction of care and duty in discharging his responsibility by failing to ensure there is a non-trading restriction on all brokerage accounts.
[5] The Defendant further reserves all rights to seek any damages, etc. of any kind from the Receiver personally for any harm to him, his assets, or the Estate by way of the Receiver's actions, (non) actions, and/or filings, inclusive and not limited to this Notice [Doc. #1412] or any other filing related to this or any other matter.

This Notice not only highlights the Receiver's total failure in discharging his duties, but also brings into serious question his current state of mind and his cognitive ability to continue to discharge his duties impartially and dutifully. Hence, the Receiver should be promptly discharged and relieved of his duties.

The Notice must be disregarded; and the Court may decide to simply order the Receiver to reverse the trades if it deems appropriate and to instruct the Receiver to ensure that no further trades can be executed in any of the brokerage accounts without prior Court order, which the Receiver should have done on his own volition when he was appointed over a year ago.

Respectfully Submitted,

Dated:          January 31ST, 2020                    /s/ Iftikar Ahmed

_____

Iftikar A. Ahmed
C/O Advocate Anil Sharma
Government Place East
Kolkata 700 069, India

Tel:     +91-983-008-9945
e-mail: iftyahmed@icloud.com

*Pro Se*

10

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and served by electronic mail to:

MR. NICHOLAS P. HEINKE, *ESQ.*
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1071
e-mail: heinken@sec.gov

MR. MARK L. WILLIAMS, *ESQ.*
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1027
e-mail: williamsml@sec.gov

MR. PAUL E. KNAG, *ESQ.*
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5400
Fax: (203) 653-5444
e-mail: pknag@murthalaw.com

MS. KRISTEN LUISE ZAEHRINGER, *ESQ.*
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5406
Fax: (860) 240-5758
e-mail: kzaehringer@murthalaw.com