# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | |
| v. | Civil Action No. 3:15-cv-675 (JBA) |
| IFTIKAR AHMED, | |
| Defendant, and | |
| IFTIKAR AHMED SOLE PROP; *et al* | |
| Relief Defendants | February 12TH, 2020 |

## DEFENDANT'S MOTION TO OFFSET RECEIVER'S FEES AND EXPENSES AGAINST THE FINAL JUDGMENT, IF ANY

The *pro se* Defendant respectfully submits this Motion in response to the Court's invitation to "address… the question [of crediting any payment of Receiver's fees and expenses towards the judgment against Defendant]." [Doc. #1415 at 8].

For the reasons within, the Court must allow any payment towards the Receiver's fees and expenses to come from within the judgment amount or be offset against the judgment amount.[1]  The Defendant reserves all rights to all issues.

---

[1] The Court specifically asked for briefing regarding the crediting of any payment of Receiver's fees and expenses against the judgment amount. Given the currently pending issue of the Court's authority to (1) appoint and (2) to pay the Receiver at this time from the Defendant's assets, given Second Circuit jurisdiction and pendent appellate review, the Defendant analogizes any credit of such payment with the payment coming directly from the judgment amount – disgorgement, pre-judgment interest and civil penalty – itself.  By briefing this topic, the Defendant does not waive any rights to issues, *inter alia,* in particular pertaining to the appointment of Receiver, etc.

# ARGUMENTS

**I.**     **The Court Does Not Have Any Jurisdiction on Assets Above the Judgment Amount.**

The esteemed Court is one of limited jurisdiction and does not have jurisdiction on assets above the judgment amount.

"Federal courts are courts of limited jurisdiction." *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994).

In addition, the Second Circuit has prohibited over-freezing of assets and explicitly limited the extent of an asset freeze to those "funds in an amount sufficient to cover not just the profits that might have to be disgorged but [also] the civil penalty." *SEC v. Unifund SAL,* 910 F.2d 1028, 1041 (2d Cir. 1990) (amount of freeze limited to judgment); *S.E.C. v. Maillard*, No. 13-CV-5299, 2014 WL 1660024, at *4 (S.D.N.Y. 2004) (amount of asset freeze order only "sufficient to preserve its disgorgement remedy as well as assets necessary to pay civil monetary payment").

That amounts to $64.4MM in this case (disgorgement of $41.9MM, pre-judgment interest of $1.5MM and civil penalty of $21MM).  Neither the Supreme Court nor the Second Circuit have allowed for additional amounts or assets to be frozen.  That is the limit to this Court's jurisdiction on assets – simply those that are in the amount to secure a judgment ("…the asset freeze in this case serves to secure the judgment against the Defendant…") [Doc. #1435 at 5].[2]

The Court cannot freeze or use assets over this amount at its discretion. Courts can only freeze assets that are up to the amount of liability and cannot over-freeze assets above any judgment amount, which in and of itself limits the jurisdiction of the Court (and the Receiver) to those assets in the amount of judgment only. *See De Beers Consol. Mine v. U.S.*, 325 U.S. 212

---

[2] While not the subject of this briefing, the Defendant does not waive any rights by way of this statement, *inter alia,* regarding applicability of FRCP v. FDCPA, state exemption laws, etc. [Doc. #1057].

(1945) (ruling that assets beyond those needed to satisfy a judgment cannot be the subject of a freeze).

"The general federal rule of equity is that a court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment." *In re Fredeman Litig.*, 843 F.2d 821, 824 (5th Cir. 1988) (setting aside the injunction as an improper exercise of the Court's equitable powers). Also *see De Beers Consolidated Mines, Ltd. v. United States*, 325 U.S. 212, 222-23 (1945) (concluding that the injunction exceeded the court's powers, stating that every plaintiff in an action for a judgment would apply for a "so-called injunction sequestrating his opponent's assets pending recovery and satisfaction of a judgment … No relief of this character has been thought justified in the long history of equity jurisprudence.") Also see *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 322, 329 (1999) (Supreme Court's articulation of its "cautious approach to equitable powers," stating that equity is "confined within the broad boundaries of traditional equitable relief").

## II.     The Receivership Estate Can Only Be Up to the Amount of Judgment.

As the esteemed Court has already stated, "the amount of judgment against Mr. Ahmed has now been determined" [Doc. #1405 at 4] and the jurisdictional principle that a court's equitable powers do not extend to property unrelated to the underlying litigation applies with equal force to receiverships.

A court lacks jurisdiction to impose a receivership over property that is not the subject of an underlying claim, controversy or judgment. *See Cochrane v. W.F. Potts Son & Co.*, 47 F.2d 1026, 1029 (5th Cir. 1931). Here, the judgment amount has been determined and the Receiver only has jurisdiction on those assets up to that amount of judgment, as the "asset freeze in this

case serves to secure the judgment against the Defendant" [Doc. #1435 at 5][3] and thus, the Court can only have jurisdiction over the assets upto the amount of judgment. Where the court appointing a receiver had no jurisdiction, it cannot claim jurisdiction over that property and pay costs and expenses of the receivership therefrom. *See Hawes v. First Nat. Bank*, 229 F. 51 (1915).

### III.    The Receivership is an Equitable Remedy.

A receivership is an equitable remedy and equity does not allow a receivership to be imposed over property that was not the subject of the underlying dispute or that is not needed for a judgment.  Here the amount of judgment "has now… been determined" [Doc. #1405 at 4] – disgorgement, pre-judgment interest and civil penalty – and the Receiver has jurisdiction only over that amount of assets.  Thus, the Receiver's fees and expenses must be paid from within the assets over which he can have jurisdiction – which is the amount that is used to satisfy the eventual final judgment.[4]  Neither the Court nor the Receiver have any jurisdiction on any assets in excess of the judgment amount and the owners of those excess assets did not request for a

---

[3] The Court's Orders have frozen assets in an amount to disgorgement, pre-judgment interest and civil penalty [Doc. #113, 829].  Even the Second Circuit, in oral arguments, explicitly told the SEC that "$118MM is the maximum of what [the SEC] could freeze" (the $118MM representing *at that time*, the maximum allowable amount of potential judgment consisting of disgorgement, pre-judgment interest and civil penalty **only** in 2016, *pre-Kokesh*) which the SEC explicitly acknowledged and agreed to. (*See SEC v. I-Cubed Domains, LLC*, 15-2658-cv (2d Cir. 2016) - Second Circuit oral argument audio link for Case number 15-2658 http://www.ca2.uscourts.gov/decisions/isysquery/e6315038-ac50-4417-80a1-c3c9ebdd2c4c/141-150/list/ at minutes 20:55-21:35. The Defendant was unable to get a written transcript of the hearing and, hence, provides the publicly available audio link and minutes to the Court). Post-*Kokesh*, that figure is currently equivalent to a freeze of a total of $64.4MM in this case – the amount of judgment of disgorgement, pre-judgment interest, and civil penalty.

[4] Subject to the pending Supreme Court case *Liu v. SEC* and pending appeals, which could substantially reduce or even eliminate the judgment.

Receiver, did not appoint the Receiver, did not benefit from the Receiver, and should not be forced to pay his fees and expenses.

The Court has continued the asset freeze, even on assets that "the Receiver expects will likely not be necessary to satisfy the judgment…" [Doc. #1405 at 5][5]; however, the Receiver cannot be paid from those assets as he does not have the jurisdiction over those assets that are beyond the amount needed to secure the SEC's judgment.

The Receiver is not a party to this dispute between the SEC and the Defendant. While the Receiver has been appointed to secure the SEC's judgment, the Receiver is essentially a non-party in this litigation who has no claims in this underlying matter.  To impose the payment of the Receiver's fees and expenses on the Defendant is wholly inequitable and would amount to an additional (and illegitimate) penalty on the Defendant; and the Court should instead offset the Receiver's fees and expenses from the Judgment as the Receiver does not benefit the Defendant or the Relief Defendants, but is there only to secure the Judgment.


**IV.    The Receiver Only Benefits the SEC and the Judgment.**

The Defendant has no responsibility for any other parties' legal bills, including the Receiver, who is not there for his benefit; but was rather appointed at the SEC's request and for the benefit of the Judgment. It is clear that the Receiver is not there for the Defendant's benefit, as he has repeatedly opposed the Defendant's motions in this Court and has accused the Defendant of violating this Court's Orders and has acted in a purely and solely adversarial capacity towards the Defendant.

---

[5] The Defendant does not waive any rights by way of this statement.

5

If anything, the Defendant has repeatedly demonstrated the Receiver's blatant partiality and bias towards the SEC and against the Defendant numerous times in his various filings. It is amply clear that the Receiver is not benefiting the Defendant; and for the Defendant to pay for the Receiver out of his own assets **over and above the judgment amount,** *especially* **when the Court repeatedly denied the use of such legally earned funds to the Defendant** *for his own defense***,** is against both law and equity.

The Receivership is only up to the amount of the judgment and it is the SEC's responsibility to "monitor the reasonableness of the legal fees being charged to the Receivership. If the SEC abdicates this duty, the *public interest* is not fully protected." *SEC v. Illarramendi*, Civil No. 3:11CV78 (JBA), at *3 (D. Conn. Dec. 5, 2013) (emphasis added). The Receiver is appointed for the *public interest* ("…the receivership was undertaken in the *public interest* for the benefit of … investors" (*Id*) (emphasis added)) who only have any interest in the amount of judgment and no more.  Thus, it is only appropriate that the public interest – i.e. the Judgment – pay for the fees and expenses of the Receiver.

It is clear that neither the Defendant nor the Relief Defendants are benefitting from the appointment of the Receiver.  The Receiver continually has stated that the "primary objective of this receivership [is] to liquidate assets to secure the Judgment" [Doc. #1249 at 17] and the Receiver has also clearly stated that "the limited scope of the Receiver's primary duty [is to]… value assets and liquidate such assets as directed by the Court to secure the Judgment" [Doc. #1330 at 26]; thus, it is clear that the Receiver believes that he is only appointed to secure the Judgment and not for any other reason. These statements are entirely contrary to the Court's statements of utilizing a Receiver to "potentially act on investment opportunities that would enhance the value of the existing assets while they remain frozen" [Doc. #1042 at 35:24-25 to 36:1-2] and "is there something that we could have a receiver-type entity, a third party, do while

we await the outcome of the appeal that might maximize the value of the asset in the event investment opportunities arose?" [*Id* at 36:24-25 to 37:1-2].

Further, the fact that the Receiver believes he is appointed to secure the Judgment and for no other reason, is confirmed by the Receiver's actions and non-actions related to the Estate assets that have harmed the assets and the value of the overall Estate, such as keeping the Apartment 12A vacant (and losing a substantial stream of income of the rental proceeds that would increase the value of the entire Estate)[6] and by stating that "[T]he Receiver interprets [the]… language ["to maximize[e] the realizable value" in the Order Appointing Receiver]… to [mean] maximize the amount realized from such liquidations [to secure the Judgment]" [Doc. #1378 at 10] and *not to* maximize the value of the entire Estate itself,[7] which actually harms the Defendant and the Relief Defendants as the value of the frozen assets is tens of millions of dollars above the Judgment Amount.

In addition, the Receiver has clearly interpreted the meaning of "Receivership Estate" to mean the Judgment. For example, the Receiver claims that "it is in the best interest of the *Receivership Estate* to keep the Apartments vacant" (emphasis added) [Doc. #1237 at 2], but what he means is that "it is in the best interest of the [*Judgment*] to keep the Apartments vacant." *No* **reasonable** person would think that it is in the best interests of *anyone* to keep apartments

---

[6] This understanding is not only against what the Defendant and Relief Defendants understood from the Nov 9, 2018 teleconference with the Court, but it is also against the Order Appointing Receiver, where the Court appointed a Receiver to, *inter alia,* "manage and maximize the value of frozen assets" [Doc. #1070 at 5] and explicitly instructed the Receiver to "[T]o manage… and taking into consideration the wishes of Defendant and Relief Defendants" [Doc. #1070 at 7]. It is clear that the Defendant and the Relief Defendants would have managed their assets differently and with a view to increasing the value of the overall Estate (for example, renting out Apt 12A) – as their goal is to maximize the Estate in its entirety (which, given the value of the overall Estate, only serves to further secure the judgment).

[7] The Defendant(s) reserves all rights to seek any relief from the Receiver personally due to, *inter alia,* any harmful impact of his actions or non-actions on any of the assets in the Receivership or the value of the Estate itself, pursuant to, *inter alia*, 28 U.S. Code §959.

vacant, let alone the Estate itself.  By supporting keeping the Apartments vacant (the Receiver has opposed [Doc. #1237] the Relief Defendants request to rent the apartments [Doc. #1220]), the Receiver has lost an additional substantial income stream[8] to the overall *Estate*.  The Receiver only claims, without any basis, that "[A]partments will sell for more money in a shorter period of time if they are vacant." [Doc. #1237 at 3]. Keeping the apartments vacant is **not in the best interests of the overall *Estate***, but the Receiver believes that it is in the best interests of the *Judgment.* There is a significant difference between the two and it is the Judgment – i.e. the public interest – that should be paying for the Receiver, not the Defendant or the Relief Defendants, as they are harmed by the Receiver's actions (and non-actions).

The Receiver admits as much as he again states that "the Appointment Order provides that the Receiver shall, *inter alia*, "maximiz[e] the realizable value" of Receivership Assets…. The Receiver interprets this language to direct him, in the event this Court orders the Receiver to liquidate certain assets to secure the Required Amount, to *maximize the amount realized from such liquidations*." (emphasis added) [Doc. #1237 at 3]. Yet, the Court's Order Appointing Receiver directs the Receiver "[T]o manage… taking into consideration the wishes of the Defendant and the Relief Defendants, and with the dual objects of *maximizing the value of the Receivership Estate* and minimizing the expenses charged thereto" (emphasis added) [Doc. #1070 at 7].

---

[8] By not renting Apartment 12A since October 2018, the lost rental income stream for Apartment 12A is at least $525,000 to date.  And even though the Court has "recently stayed the liquidation process," [Doc. #1378 at 10], the Receiver continues to speculate that "it is entirely *possible*… *some point in the future*… this Court *may direct* … to liquidate" and thus "it is in the best interest of the Receivership Estate to [continue to] keep the Apartments vacant… to maximize the amount realized from such [potential] liquidation." [Doc. #1378 at 9-10].  It is *not* in the Receivership Estate's "best interest" to keep the apartments vacant – and in the process losing hundreds of thousands of dollars of rental income and growing – and it is clear that the Receiver is ***only and solely favoring and benefiting the Judgment*** and ***not*** the overall Estate.

Contrary to the Court's directive, the Receiver is **_not_** maximizing the value of the _overall_ Receivership Estate by any stretch of imagination.

For example, if the Receiver was truly interested in maximizing the value of the entire Estate,[9] he would have rented the apartments.  He would have been in more communication with the Defendant and the Relief Defendants on how best to manage the assets to maximize the value of the entire Estate.[10] The Receiver also would have litigated against Oak and Oak HC/FT on Defendant's assets there, whether deemed allegedly forfeited or not.  The fact that the Receiver has absolutely no interest and deems it "not necessary" and "_ultra vires_" [Doc. #1218, n.5] means that the Receiver is only there to secure the Judgment – for the benefit of the public at the SEC's request – and for no other reason.  The Receiver, through his statements and actions/non-actions, has clearly and unequivocally demonstrated that he has absolutely no interest in maximizing the value of the overall Estate, but only and solely has an interest in securing the Judgment and is essentially representing _only_ the Judgment, to the detriment of the overall Estate.

As such, the appointment of the Receiver and his actions and (non-actions) make it clear that he _only_ benefits the Judgment, the public and the SEC and the appointment has led to the

---

[9] This Court also made it clear in the Order Appointing Receiver that the Receiver is to "ensure that there are no conflicts between the Receiver, his Retained Personnel… and the Receivership Estate." [Doc. #1070 at 8]. Given the clear conflicts, as supported by the Receiver's _own_ statements and his actions/non-actions with respect to the Estate, it is obvious that the Receiver _is only and solely_ concerned with the Judgment and not with the overall Estate.  The Receiver explicitly chooses actions that benefit only the Judgment over the benefit to the overall Estate, which is a clear conflict. It is clear that the Receiver is only benefiting the Judgment (keeping the apartments vacant "in the event this Court orders the Receiver to liquidate certain assets" [Doc. #1237 at 3]) and not the overall Estate, and the Receiver's expenses and fees must be offset against the Judgment.

[10] Both the Defendant and Ms. Ahmed are significantly more qualified – both educationally and professionally – than the Receiver to manage these assets in a way to maximize the overall value to the Estate. Indeed, the Estate is increasing in value now _solely_ due to the investment strategies that the Defendant and primarily Ms. Ahmed, implemented prior to the asset freeze on May 7th, 2015.

detriment of the overall value of the Estate (the fees and expenses of the Receiver himself, the additional costs for unnecessary litigation, the continued vacancy of Apartment 12A, the continued illegal occupation of Apartment 12F, the errors occurring on the Receiver's watch, the continued retention of the Harry Winston earrings by the Harris law firm, etc.). Thus, the Receiver has not benefited any party – either the Defendant or the Relief Defendants – but rather, only the SEC and the Judgment itself – as his actions are undertaken by him with the clear intent to benefit *only* the Judgment – and should be paid from such.

## V.     The Receiver Was Requested Only by the SEC.

Because the Court and the Receiver only have jurisdiction over assets to satisfy the Judgment, the Receiver's fees and expenses can only come from within this Judgment and cannot be an additional penalty assessed on the Defendant, especially when there was no need for a Receiver in this case in the first place.

The appointment of a Receiver is an equitable remedy. As such, the payment of the Receiver's fees and expenses must be within equity and cannot be an additional penalty assessed on the Defendant. Because the Receiver is there at the SEC's request[11] and to secure the SEC's Judgment – i.e. for the benefit of the public – the Receiver's fees and expenses must be paid for from the Judgment or by the SEC.

In addition, though this Court has "previously rejected the suggestion by the Defendant that *the SEC* should pay for the costs of the receivership," (emphasis in original) [Doc. #1415 at

_____

[11] To the extent that the SEC now were to state that they did not want a Receiver or that their request for a Receiver was conditional, that would be belied by the SEC's explicit request for the appointment of a Receiver in their Summary Judgment for Damages briefing. The Defendant(s) have always maintain and continue to maintain that a Receiver was not necessary in this case, and indeed the Receiver's statements, and actions or lack thereof clearly demonstrate the harm that he has caused (and continues to cause) the overall Estate.

10

8] the Court did so based "on the absence of any authority in support [of such contention]." [Doc. #1070 at 5].

However, the Second Circuit has already, in another case, assessed the costs of the Receivership on the government pending the outcome of the litigation. "Since the benefit of the receivership is thus enjoyed by the public, it seems appropriate at this stage to impose the costs of the receivership on the government, at least pending a resolution of its charges against the defendants. If it is established that Umberto's as a corporate entity has benefited from the receivership, it might then be appropriate to reimburse the government for some, or perhaps all, of the expenses of the receiver. That is a question, however, whose answer awaits the outcome of the underlying litigation." *U.S. v. Ianniello*, 824 F.2d 203, 209 (2d Cir. 1987). It is clear that the Estate as a whole has not benefitted from the appointment of the Receiver and neither have the Defendant or the Relief Defendants. In addition, given the uncertainty of the judgment with *Liu* and the appeals pending, the SEC should bear the cost of the Receiver until all appeals have been concluded.  This is supported by the Court's statement that "[if] the appeal was totally successful, [paying for the Receiver's fees and expenses]… would not be an appropriate treatment of those frozen funds." [Doc. #1042, 36:13-15]

The Receiver was appointed *only* at the request of the SEC and *only* to secure the SEC's Judgment. As such, it is only the SEC, or the public through the Judgment, who are benefiting from the appointment of the Receiver. As such, the SEC or the Judgment[12] should bear the cost

---

[12] Given the uncertainty surrounding the judgment amount as well as the lack of clarity that there may even be a judgment amount, post *Liu* and the appeals, the SEC should pay for the Receiver in the interim should there not be any judgment for the Defendant to pay; especially in light of the fact that Oak, the purported victim, unilaterally seized and is holding on to a pot of assets worth at least $40MM and presumably a lot more, given certain recent events like the IPO (Initial Public Offering) of companies like 1Life Healthcare (NASD: ONEM), valued at over $3 Billion, where Oak was a founding investor and its stake in ONEM is worth at least $600MM or more, to the best of the Defendant's information and belief.

11

of the Receiver.  "[T]hose costs of the receivership that would not have arisen but for the appointment should be charged against the party invoking the receivership..." *Pioche Mines*, 333 F.2d at 276. Also see *U.S. v. Guess*, Case No. 04CV2184-LAB (AJB), at *10 (S.D. Cal. Jun. 28, 2005).  There has been no benefit to the Estate as a whole by the appointment of the Receiver, but rather losses through the Receiver's actions (and non-actions).

A district court has discretion to award receivership costs against the United States. *See*, e.g., *Little Earth of United Tribes, Inc. v. HUD*, 807 F.2d 1433, 1442 (8th Cir. 1986) ("After submitting itself to the court's equitable authority [by requesting a receiver], HUD cannot successfully contend that the district court was powerless to direct the terms of the receivership.")

**VI.     There is No Incentive to Contain Costs if Defendant is to Pay for the Receiver's Expenses and Fees.**

It is clear that neither the SEC nor the Receiver have any incentive to contain the costs related to the Receiver – his fees and expenses. This is confirmed by the fact that the SEC is simply "rubber-stamping" all of the Receiver's fee applications. ("The Commission has expressed that it does not oppose the relief requested in this First Application." [Doc. #1160 at 2]; "The Commission has expressed that it does not oppose the relief requested in this Second Application." [Doc. #1249 at 2]; "The Commission does not object to the relief sought herein [in the Third Application]" [Doc. #1330 at 2])

The SEC has not objected to *any* of the Receiver's requests for fees and expenses, confirming that neither the SEC nor the Receiver have any incentive to monitor or contain costs, and imposing these costs over and beyond the judgment amount penalizes the Defendant and the Relief Defendants. *See Northshore Asset Mgmt.*, 2009 WL 3122608, at *1 ("While Judge Owen

relied justifiably on the SEC to discharge its review obligation, the agency was asleep at the switch. Thus, the possibilities for abuse were limited only by the size of the estate.").” *SEC v. Illarramendi,* Civil No. 3:11CV78 (JBA), at *3 (D. Conn. Dec. 5, 2013).   Also see *SEC. v. Northshore Asset Mgt*., 05 Civ. 2192 (WHP), at *5 (S.D.N.Y. Sep. 29, 2009) (“Characteristically, the SEC does not oppose the Receiver's fee application. This Court wonders who should guard the guardians.”)

In addition, the Court has approved the Receiver's costs and fees, against the Defendant's objection.  It is inequitable and unjust and amounts to an additional penalty to make the Defendant pay for the Receiver – a non-party, who he did not request, who does not benefit him and who has harmed him and the overall Estate.

**VII.    The Court Cannot Use the Defendant's Assets to Pay for Another Party's Expenses when the Defendant Objects and When the Court Has Denied the Defendant the Use of His Own Assets for His Own Benefit.**

The Court has ***repeatedly*** denied the Defendant the use of his own funds for the retention of counsel to represent him in various matters, including this instant one. While the Court has recently granted Defendant's motion for Second Circuit appellate fees, “no funds will be released at this time” [Doc. #1405 at 5] and it was “granted with modification” and “subject to certain conditions.” *Id*.  This is despite the Court's acknowledgment that “some Residual Assets will likely remain [after the judgment is satisfied].” [Doc. #1405 at 4].  Yet, the Court has granted the Receiver's fees and expenses (under appeal) with no conditions attached. This is inequitable and the continued denial of the Defendant to the use of his own assets for his own benefit is against both law and equity.  The payment of the Receiver's fees and expenses must be offset against the Judgment.

Courts have allowed Defendant to retain counsel *even when* the assets are lower than the judgment amount. "[T]he disadvantages and possible deleterious effect of a freeze must be weighed against the considerations indicating the need for such relief." *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1106 (2d Cir. 1972). "A district court may exercise its discretion to release frozen funds to pay living expenses or attorney fees, even in instances where the profit from the alleged wrongdoing exceeds the amount of the frozen funds." *Securities and Exchange Comm'n v. Petters*, 2009 WL 3379954, at *2 (D. Minn. Oct. 20, 2009) (citing *Securities and Exchange Comm'n v. Dowdell*, 175 F. Supp. 2d 850, 854 (D. W. Va. 2001)); *Commodity Futures Trading Comm'n v. Noble Metals*, 67 F.3d 766, 775 (9th Cir. 1995). Indeed, courts have released frozen funds to pay living expenses and attorney's fees even while finding that the funds in issue are likely the proceeds of fraud (which is not even the case in this situation). *See Securities and Exchange Comm'n v. Schiffer*, 1998 WL 307375, at *7 (S.D.N.Y. Jun. 11, 1998) (despite finding that "all of [defendant movant's] accounts and funds are of a suspect nature", court ordered "release of funds . . . to meet [movant's] living expenses . . . and . . . attorneys' fees", also noting that the government was already voluntarily releasing $5,000 per week for movant's living expenses since the issuance of the initial freeze order); *see also Commodity Futures Trading Comm'n v. Velazquez*, 2004 WL 2218653, at *1 (N.D. Ill. Sept. 10, 2004) (issuing statutory restraining order against all assets of defendants and relief defendants "except that Defendant Velazquez is permitted to draw his personal funds out of accounts in his name to pay his reasonable attorney fees in this action . . . and related costs and expenses"). Yet, here the Court has continuously denied or imposed strict conditions on the use of funds – over and above the judgment amount – for the Defendant to retain counsel for himself and his own benefit from his own assets.

Thus, it is against the law and against equity for the Court to use the Defendant's assets to pay for a Receiver and his counsel, especially viewed in light of the fact that the Court has repeatedly denied requests for funds for the Defendant to retain his own legal counsel.

## VIII.  Conclusion.

Wherefore, for the reasons stated within, the Court must pay the Receiver's fees and expenses from within the Judgment amount; and cannot penalize the Defendant with a wholly inequitable and unjust penalty by way of the payment of the Receiver's fees and expenses, especially when the Receiver does not benefit him, but instead has harmed him, the Relief Defendants and the Estate.

Respectfully Submitted,

Dated:          February 12TH, 2020          /s/ Iftikar Ahmed
_____
Iftikar A. Ahmed
C/O Advocate Anil Sharma
Government Place East
Kolkata 700 069, India

Tel:     +91-983-008-9945
e-mail: iftyahmed@icloud.com

*Pro Se*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and served by electronic mail to:

MR. NICHOLAS P. HEINKE, *ESQ.*
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1071
e-mail: heinken@sec.gov

MR. MARK L. WILLIAMS, *ESQ.*
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1027
e-mail: williamsml@sec.gov

MR. PAUL E. KNAG, *ESQ.*
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5400
Fax: (203) 653-5444
e-mail: pknag@murthalaw.com

MS. KRISTEN LUISE ZAEHRINGER, *ESQ.*
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5406
Fax: (860) 240-5758
e-mail: kzaehringer@murthalaw.com