### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> IFTIKAR AHMED, <br><br> Defendant, and <br><br> IFTIKAR AHMED SOLE PROP; *et al* <br><br> Relief Defendants | Civil Action No. 3:15-cv-675 (JBA) <br><br><br> February 16TH, 2020 |

### THE DEFENDANT'S RESPONSE TO THE SEC'S INDICATION OF POSITION REDARDING OFFSETTING RECEIVER'S FEES AGAINST JUDGMENT

The *pro se* Defendant respectfully submits this Response to the SEC's indication of position regarding offsetting the Receiver's fees against the Judgment [Doc. #1473, or the "Position"].

The Defendant is compelled to correct the SEC's multiple misstatements and factual misrepresentations in the Position.  The Defendant reserves all rights to all issues.

_First_, the SEC wrongly, and unnecessarily, accuses the Defendant of "taking innumerable actions since that time to increase the costs of Receivership" [Doc. #1473 at 8].  Nothing could be further than the truth.  If anything, as the Defendant has detailed in his various Oppositions to the Receiver's fees and expenses [Doc. ##1183, 1222, 1261, 1354, 1472], the Receiver has driven up *his own fees and expenses* by way of his own mis-actions in how he is managing the

1

Estate (*for example*, dealing with the holdover ex-tenant in Apartment #12F; dealing with preparations for liquidation of assets when the Court has not even ordered it and even with the substantial uncertainty surrounding the judgment amount in light of *Liu*; dealing with the refusal of the Harris law firm to hand over the Harry Winston Earrings; demonstrated duplication of tasks; not opposing the lift of litigation stay but then opposing the release of attorney fees for the Defendant and Relief Defendants in other matters; duplication of efforts; charging for travel time, etc. etc.). The Defendant, if anything, has limited his contact with the Receiver precisely to keep costs down.

The Defendant opposed the appointment of the Receiver in the first place; the Defendant has laboriously poured over the expenses and fees submitted by the Receiver and has identified multiple instances of double billing, unrelated and unnecessary work; and misallocation of fees from other activities to this matter. All the SEC has done is to rubber stamp every submission of the Receiver's fees and expenses – and now faced with the real prospect of being burdened with the Receiver's fees and expenses, the SEC suddenly finds it very convenient to accuse the Defendant of increasing the costs of the Receivership.

*Second*, the Defendant has not filed any "frivolous filings" [Doc. #1473 at 2]. To the contrary, each filing was the direct result of the SEC's continued, consistent but illogical opposition to the Defendant's (and Relief Defendants') legitimate requests. These include, *inter alia*, requests for *de minimus* amounts; for example, the Defendant's request for a nominal $1,000 per month for living expenses (the briefing of which motion itself costs substantially

more than what the Defendant is asking for, yet would have cost nothing with a consented to motion), or the Relief Defendants *de minimus* amount of $15,600 for their accountant fees.[1]

It is, therefore, the SEC that is creating additional and unnecessary filings by way of their consistent but illogical opposition to even these minor requests that are routine matters.

The Defendant has gone through each of the docket numbers in the laundry list that the SEC lists [Doc. #1473 at 8] and *not one of them* is for a frivolous purpose.

Furthermore, in a desperate bid to make that list look even longer than it actually is, the SEC has included the Receiver's filings and responses to routine filings (such as for his fees and expenses) and also to *other parties'* filings, such as the Harris law firm, which the SEC incredibly lists amongst these filings, even though the Harris law firm clearly was not representing the Relief Defendants at that time. Indeed, many of these filings are due to the SEC's contradictory and inconsistent positions of supporting a lift of stay for ancillary proceedings but then opposing the Defendant and Relief Defendants' requests for attorney fees in those proceedings, which are completely inequitable and against any legal basis.

In addition, many of these filings are related to the Receiver's *own* filings, such as for his multiple Fee Applications. The SEC cunningly lumps all these into the laundry list of all of the Receiver filings and responses and does not break out what they are for, in order to make it seem that the Defendant (and Relief Defendants) are "frivolously filing" documents, when such is erroneous and this Court should take a stern view of and admonish the SEC for doing so. If indeed all of the Receiver's filings for fees are frivolous as the SEC would seem to indicate, then the entire discussion of how to treat the Receiver's fees is frivolous too and the Court must, then,

---

[1] Even the Receiver noted that these amounts were "*de minimus*" [Doc. #1230 at 2, Doc. #1413 at 2].

dismiss all of these fee applications by the Receiver as the SEC has certified them to be "frivolous."

*Third*, the Receiver has grossly mismanaged the Estate and has unfairly accused the Defendant in order to cover up for his own mismanagement. It is not the Defendant's responsibility; and the SEC misstates that it was the Defendant's fault for the Receiver's gross mismanagement of the Estate. [Doc. #1473].

As the SEC well knows, none of this happened in the first 3 ½ years during the time of this litigation *prior* to the Receiver being appointed.

*Fourth*, the SEC claims that the Receiver has "taken substantial steps to benefit the Receivership Estate" – their claims are a clear stretch of the truth.  The SEC cannot submit and does not submit a shred of evidence to support their statement.  And if indeed the Receiver has actually benefitted the Receivership Estate, the SEC has implicitly then agreed to pay for their Receiver from within the Judgment amount.

There were no assets to marshal, as this Court itself said "I don't know that marshaling the assets is quite within the purview, since they're all frozen" [Doc. #1042 at 35:23-24]), and this Estate is mostly cash, marketable securities and real estate.  The Receiver refuses to even investigate and determine the value of the private investments and any claims that the Estate may have on Oak, given his position that such is "not necessary" and "*ultra vires*" [Doc. #1218, n.5].

The Defendant is perplexed as to the SEC's claims that the Receiver has benefitted the Estate. The Estate was being managed quite well without the Receiver; and indeed, the SEC had absolutely no issues or problems with the way the Estate was being managed before December 20TH, 2018, prior to the Receiver's appointment.  The Receiver has done nothing above and

beyond what was being done prior to his appointment and instead, the Estate has now been burdened with the Receiver's fees and gross mismanagement, which has substantially harmed the Estate.

*Fifth*, the SEC misstates that "there is substantial work required by a neutral third party to unwind Defendant's transactions in order to effectuate the Court's judgment" [Doc. #1473 at 12]. Not only does the Court's Order *not* say that, it simply says that the "frozen assets… must be managed, valued and/or liquidated… and distributed should the SEC prevail on appeal." Nowhere in that statement is there anything about "unwind[ing] Defendant's transactions."

The SEC laughingly tries (and fails) to falsely incorporate complexity into managing an Estate that is made up of mostly cash, marketable securities, and real estate. There is absolutely nothing to *unwind*. The SEC very well knows that a Receiver was not (and is not) needed in this case.

*Sixth*, the Defendant offered to liquidate, or help, liquidate assets *when at that point*, to save money on the appointment of a Receiver, who is not needed for liquidation of these types of assets in the estate. However, it was the SEC who insisted on the appointment of a Receiver. These assets are not complicated. They comprise of substantial cash, marketable securities (in brokerage firms that could easily facilitate the sale if and when told to), or real estate (that is listed when at the point to be sold). That is it.

There is nothing more to the liquidation (or management) of these assets, if necessary at all. However, if the SEC and the Court feel that the Defendant is not the right person, then Ms. Ahmed – who is arguably more experienced in these matters – would be the right person to manage and/or liquidate (if necessary) assets necessary to secure any judgment.

Contrary to the SEC's assertions about Ms. Ahmed,[2] these are her assets; she has substantially more educational and professional experience than the Receiver; she knows these assets; and she is not the incapable person that the SEC makes her out to seem [Doc. #1473, n. 4]. The Defendant would bet that the SEC would never portray a ***man*** in that manner and the Court should note that the SEC continues in their misogynistic and sexist rant.

*Seventh,* any costs that are a result of "effectuating the Judgment" should come from the Judgment itself.  The cases that the SEC cites for the premise that "the Receiver's fees [should be] paid from the receivership assets and not offset those costs against the SEC judgment" [Doc. #1473 at 15] are inapposite and, if anything, they actually support the Defendant's position.  In particular, *Elliott,* 953 F.2d claims that "[the party] should only be charged for the benefit they actually receive." As the Defendant has fully explained numerous times, he, the Relief Defendants, and their assets have been *harmed* and have not benefitted from the Receiver's actions (or lack thereof).  It is only the Judgment (and the SEC) that has benefited from the Receiver.

In addition, the SEC only partially quotes *United States v. Paccione*, 730 F. Supp. 1237, 1239 (S.D.N.Y. 1990), which actually states that "[W]hen the *public interest* is at stake, the rationale for providing that the Government pay the costs of the monitor is self evident. If only the private interests of defendants were at stake, then such facts might well lead to a decision placing the burden of payment on defendants, in the exercise of the court's discretion. Whereas

---

[2] That the Relief Defendants' prior attorneys in this case, the Harris law firm, asked for $1MM to "liquidate only a portion of the corpus of frozen assets" [Doc. #1473, n. 4] is both outrageous and preposterous; and it directly supports that the Harris firm has billed excessively and outside the bounds of proper billing in this litigation.  There are minimal, if any, costs at all to the liquidation of these assets *if done properly*, if and when at that time. (The judgment amount subject to appeals and *Liu*).

here, however, it is the *public interest* which is at stake, a proper exercise of the court's discretion would lead to a determination that it is the Government who should pay initially." (emphasis added in both).  The case also clearly state that the Receiver's fees and expenses are to come from the judgment amount "[T]he proceeds of any sale or other disposition of property forfeited under this section and any moneys forfeited shall be used to pay all proper expenses for the forfeiture and the sale, including expenses of seizure, maintenance and custody of the property pending its disposition, advertising and court costs." (*Id*).  The forfeited amount is *only* the amount of the Judgment.  Not a penny more!  The SEC makes the case for the Defendant and, in their submission, explicitly then agrees to the position of the Defendant.

<u>*Finally*</u>, the SEC claims that they are not "seeking to add the receivership costs to the amount of disgorgement," [Doc. #1473] which renders the Receiver's costs (and any other) a direct penalty on the Defendant and is in direct contrast to the equitable nature of the Receiver, which was appointed for the benefit of the *public*.  Not the benefit of the Defendant.

Thus, such a penalty, as the SEC now admits, is not equitable or legal and, therefore, cannot be imposed by the Court on the Defendant.   The SEC's submission is an explicit admission and agreement with the position consistently maintained by the Defendant.

Respectfully Submitted,

Dated:          February 16TH, 2020          /s/ Iftikar Ahmed

_____

Iftikar A. Ahmed
C/O Advocate Anil Sharma
Government Place East
Kolkata 700 069, India

Tel:     +91-983-008-9945
e-mail: iftyahmed@icloud.com

*Pro Se*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and served by electronic mail to:

MR. NICHOLAS P. HEINKE, *ESQ.*
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1071
e-mail: heinken@sec.gov

MR. MARK L. WILLIAMS, *ESQ.*
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1027
e-mail: williamsml@sec.gov

MR. PAUL E. KNAG, *ESQ.*
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5400
Fax: (203) 653-5444
e-mail: pknag@murthalaw.com

MS. KRISTEN LUISE ZAEHRINGER, *ESQ.*
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5406
Fax: (860) 240-5758
e-mail: kzaehringer@murthalaw.com