## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

    Plaintiff,

    v.                                          Civil Action No. 3:15-cv-675 (JBA)

IFTIKAR AHMED,

            Defendant, and

IFTIKAR AHMED SOLE PROP; *et al*

            Relief Defendants                   February 21ST, 2020

## DEFENDANT'S RESPONSE IN OPPOSITION TO BROWN RUDNICK'S MOTION TO LIFT LITIGATION STAY

The *pro se* Defendant respectfully submits this Opposition to Brown Rudnick's Motion to Lift Litigation Stay [Doc. #1440, 1441].

Brown Rudnick (or "BR") does not satisfy any of the *Wencke* criteria and the request should be denied.

The Defendant never signed any engagement or representation agreement with BR. BR approached the Defendant with a very simple construct – they would represent the Defendant only in the event that the Court released funds for their work. If the Court were to not release any funds for them, the Defendant would not be responsible for any fees and expenses incurred by BR in their fishing expedition. There was no legal agreement or contract between the Defendant and BR.

The Defendant reserves all rights to all issues.

1

# ARGUMENT

In considering a motion to lift a litigation stay, courts weigh three factors: (1) whether refusing to lift the stay genuinely preserves the *status quo* or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim. *Carney v. Beracha*, 996 F. Supp. 2d 56, 73 (D. Conn. 2014) (citing *SEC v. Wencke*, 742 F.2d 1230 (9th Cir.1984)).

For the reasons detailed within, BR does not satisfy the *Wencke* criteria for lift of anti-litigation stay and this esteemed Court should deny BR's request.


## I.   Lifting the Stay Does Not Preserve the *Status Quo*.

Granting BR's requested stay does not preserve the *status quo* and instead, harms the Estate.

### A.  Lifting the Stay Harms the Estate.

#### a.  Defendant will Immediately Move for a Release of Assets to Retain Legal Counsel.

It is clear that in the aftermath of any lift of stay for litigation against the Defendant, he will move for an immediate release of assets for legal counsel in that ancillary proceeding. This will involve additional briefing in this litigation (as a direct consequence of allowing BR to commence proceedings against the Defendant); and given the demonstrated over-freezing of several tens of millions of dollars in excess of the current judgment amount (which itself is subject to both *Liu* and appellate review), both equity and law would favor a release of funds for the Defendant in this (and any other proceeding).

Indeed, contrary to the Receiver in this case, receivers in other cases have clearly stated that "[the Receiver's] interest in preserving the *status quo* is strong… [and that the] balancing of interest must also include costs for the defense of any action against Directors…[as they would] likely "pursue a claim against the Receivership Estate for attorney's fees and costs associated with defending against the Adversary Proceeding"" *SEC v. Illarramendi*, Civil No. 3:11CV78 (JBA), at *9 (D. Conn. Jan. 25, 2012).   It is exactly the same here, especially when there are several tens of millions of dollars of assets that have been over-frozen above the current judgment amount, which itself is subject to appellate review and to an imminent decision by the US Supreme Court in *Liu v. SEC*.

### b.  Relief Defendants will Defend Their Assets.

BR seeks to attach "any residual assets of the Receivership Estate" [Doc. #1441 at 2] without even identifying *what* assets they are referring to.  To the extent that BR seeks to attach any assets belonging to the Relief Defendants, it is highly likely that the Relief Defendants would also move for a release of assets from the frozen funds to retain counsel.

### c.  The SEC is an unsecured creditor and stands *pari-passu* with any of the Defendant's eventual creditors, if any.

The *pro se* Defendant is left scratching his head, completely perplexed as to all these third-party litigants' "promises" of ***not*** impacting the SEC's judgment. It is clear that the SEC is an unsecured creditor ("…the SEC's disgorgement judgment is a general unsecured judgment…" *SEC v. Spongetech Delivery Sys., Inc.*, 98 F. Supp. 3d 530, 536 (E.D.N.Y. 2015)).  Also see *F.T.C. v. Bronson Partners, LLC*, 654 F.3d 359, 374 (2d Cir.2011) ("Nor is an agency that has won a disgorgement order entitled to priority over the other creditors of the defendant… will simply permit the Commission to share with other creditors on an equal basis.").

Regardless of what these third-parties say, they will have to share with the SEC in the judgment, if any, as they stand *pari-passu* with the SEC when it comes to priority of payment. No one is a secured creditor, leaving alone the question if some particular party is even a creditor or not.

### B.  Foreign Attachment Harms the Estate and Violates this Court's Orders.

#### a.  Any Foreign Attachment Impacts the Estate.

BR brazenly seeks a lift of litigation stay against the Defendant so that it can "commenc[e] a proceeding against [the Defendant]… and seek[] a foreign attachment on any residual assets of the Receivership Estate." [Doc. #1441 at 2].  Such actions violate this Court's explicit orders and interferes with the Asset Freeze Order [Doc. #113] and the Receiver Order [Doc. #1070] of this Court.

The esteemed Court has frozen assets that are substantially greater than the current judgment amount.  While all these assets remain frozen, to allow a foreign attachment of any frozen assets, whether used for the judgment or not, violates this Court's orders, both the asset freeze [Doc. #113] and the Receiver Order [Doc. #1070], and is wholly inequitable and against the law, especially in light of the fact that the Court has repeatedly denied funds for the Defendant to retain counsel in his various matters (including this instant one), and has imposed several strict modification and conditions even on the grant of funds for the Defendant's appeal in the Second Circuit Court of Appeals.

In addition, the Receiver will have to be involved with all such proceedings in which a non-party is proceeding with foreign attachment, to ensure that the assets in the Receivership and

under the freeze order are not impacted by such attempts at attachment. As such, there will be an adverse impact on the Estate by way of significant Receiver's fees and time.[1]

### b. BR has Already Tried to Improperly Influence the Receiver.

BR has already had conversations with and tried to improperly influence the Receiver (and the SEC) "to lead or be involved with the creation of a so-called "state-law receivership" [against the assets]," [Doc. #1482 at 3] which is entirely outside the scope for **both** the SEC and the Receiver.  As such, the Receiver has already used resources and has likely billed the Estate for looking into such process and even though he "did not perceive it to be within his duties, in any regard, to lead or be involved with the creation of a so-called "state-law receivership" process," even doing the research into such or contemplating such has adversely impacted the Receivership through the Receiver's (likely) billing.  The Court should not take kindly to BR's interference and blatant attempts to influence the Receiver for other alleged creditors when it is unequivocally outside the Receiver's duties and why he was appointed by this Court.

### c. Any Foreign Attachment Proceeding Interferes with Appellate Jurisdiction.

The Judgment allowing for the SEC to collect against Relief Defendant assets is currently subject to appeal.  Allowing BR to commence with such foreign attachment interferes with and tampers with the ownership rights of the Relief Defendants, which the Court explicitly stated that "it did not mean to alter the property rights to those assets at this time." [Doc. #1019 at 2]

In addition, BR's attempts at a blanket attachment on residual assets without first stating *which* assets they seek to attach would interfere with issues that are currently under appeal and

---

[1] The Defendant does not waive any rights by way of this statement and believes and maintains that the Receiver's fees and expenses must be offset against the Judgment and/or paid by the SEC. [Doc. #1472].

jurisdiction of the Second Circuit Court of Appeals.  To allow BR to seek attachment would clearly interfere with appellate jurisdiction of those issues.

        **d.  BR Has No Standing to Bring Any Claims Against the Defendant in Connecticut State Court.**

BR states that it seeks to "bring its claim against [Defendant] in the Connecticut Superior Court" [Doc. #1441 at 6].  However, Defendant has not been a resident of Connecticut for nearly five years now as he has been detained in India.

        **C.  The Court Should Stay any Decision on BR's Motion Until the Court Renders a Decision on the Relief Defendants' Pending Motion for a Temporary Injunction Until the Impact of *Liu* Can Be Determined.**

The Court should deny BR's Motion and the *Wencke Factors* weigh in favor of denying the Motion.

However, in the alternative, should the Court be inclined to grant BR's request, any decision should be stayed.  This Court has asked for briefing on the Relief Defendants' "Emergency Motion for a Temporary Injunction on All Litigation/Arbitration Against Defendant/Relief Defendants until Ninety (90) Days after Supreme Court's Decision in *Liu v. SEC* and Its Impact on the Judgment in this Proceeding is Determined." [Doc. #1446 or "Motion for Temporary Injunction"].  Because a decision on that briefing would directly impact BR's request, the Court should stay any decision on BR's Motion until the Court has rendered a decision on the Relief Defendants' Motion.

**II.**        **The Time is Inappropriate for Granting a Lift of Stay.**

Contrary to BR's claims, the time in the Receivership[2] does not favor a lift of stay.

---

[2] The Defendant does not waive any rights by way of this statement and maintains that a Receiver was not and is not needed in this case.

### A.  The Residual Assets Have Not Been Determined and Are Under Second Circuit Jurisdiction.

The "attachment proceeding" seeks to attach assets that BR claims would be "*any* residual assets of the Receivership Estate;" (emphasis added) [Doc. #1441 at 2] however, those residual assets have not been determined yet; and BR does not specify *what* residual assets they seek to attach, simply making a blanket statement of "seeking a foreign attachment on *any* residual assets of the Receivership Estate" (emphasis added) *Idem*.

Allowing BR to proceed with their purported litigation, would grant them license to pick and choose the Residual Assets they seek to attach.  As this Court knows, the Relief Defendants own a substantial amount of assets; and they object to the use of their assets to satisfy the Defendant's judgment and that issue being under appeal, is now under the appellate jurisdiction of the Court of Appeals in the Second Circuit.

Allowing BR to commence proceedings, therefore, interferes both with appellate jurisdiction on this issue as well as with the Receiver's (albeit contradictory) statement that "until the liquidation process is complete and the Required Amount is fully secured by deposits into the CRIS account, there are no Receivership Assets that, in the Receiver's view, are truly excess."[3] [Doc. #1372 at 2]

In addition, the Court itself has stated that "since [this Court] stayed liquidation pending the decision of the Supreme Court in *Liu v. SEC*, No. 18-1501, [the Receiver is not getting close

---

[3] The Defendant does not agree with the Receiver, but given that the Receiver has stated as such (though contradicting himself and against the Court's statements) multiple times in this case in his opposition to release funds for the Defendant to retain counsel in various proceedings; the Defendant repeats the Receiver's statement here as presumably, it would apply with equal force to anyone looking to interfere with or attach Receivership Assets.  The Defendant does not waive any rights by way of quoting the Receiver here.

to liquidating and releasing assets]," [Doc. #1424 at 10] which also weighs against lifting the litigation stay.

**B.  BR Has Waived Any Claims to Any Fees, Especially as They Have Waited Years Before Making an Appearance in this Case to Seek Fees and Expenses.**

BR has known from Day One that all of Defendant's assets are frozen and that any representation is subject to a release of funds by this Court for him to retain counsel.  This Court has repeatedly denied such release of funds for the Defendant.  This legal dispute is now about to be entering the sixth (6th) year; and it is only *now* that BR has put in an appearance seeking to litigate against the Defendant for alleged outstanding fees and expenses.

As such, BR has effectively waived any claims to any alleged fees by waiting many years before making an appearance in this Court.

In addition, and as explained more fully in the next Section, BR was explicitly told by the MA Civil Court[4] to seek a release of funds from the CT Court for their fees. BR never moved this Court for such release for the MA civil matter; and have, therefore, waived their rights to seek funds from the Defendant now for "non-payment" of the alleged fees.

**III.        There is No Merit to BR's Claims.**

**A.  There Is No Engagement Letter or Agreement with BR.**

The Defendant never signed any engagement or representation agreement with BR.  BR approached the Defendant with a very simple construct – they would represent the Defendant only in the event that the Court released funds for their work.   If the Court were to not release any funds for them, they would not represent the Defendant and the Defendant would not be

---

[4] *See SEC v. Kanodia, et al.*, 15-cv-13042 (D. Mass.) ("MA Civil Court").

responsible for any fees and expenses incurred by BR.   It was a contingent arrangement subject to the Court releasing funds for their work; and if the Court did not release any funds, the Defendant would not have no liability towards BR.   And it is, therefore, incredible that BR is now claiming a sum of money that has no basis and is not supported by any contractual agreement or document.  There is absolutely zero merit to BR's claims.

BR cannot produce a single signature of the Defendant agreeing to any fees or expenses to be paid.  Without any affirmative consent by the Defendant, the law firm of BR has no standing to claim any fees or expenses from the Defendant.   They cannot produce a single shred of evidence to support any engagement between the Defendant and BR simply because there never was any agreement by the Defendant to engage BR, leave alone pay them.

In addition, it is clear that any claims that BR has against the Defendant are unenforceable. As per Rule 1.5(b) of the CONNECTICUT RULES OF PROFESSIONAL CONDUCT, there must be an engagement letter with certain details, *inter alia*, about the representation, rates and expenses. Rule 1.5(b) of the MASSACHUSETTS RULES OF PROFESSIONAL CONDUCT provide for the same. There is no engagement letter for any of the matters referenced by BR. They are simply making things up.

### B. The Defendant has Not Seen a Single Invoice; and BR's Alleged Representation was Contingent ONLY on Funds Being Released by this Court.

BR seeks an atrocious amount of "approximately $1.3 million in outstanding legal fees and expenses" [Doc. #1441 at 6], that is unsupported and unsupportable.

The Defendant never received, nor has he seen, leave alone approve a single invoice throughout the pendency of *any* litigation that BR alleges to have represented the Defendant in. As such, the Defendant has no idea how much or for what BR has billed $1.3 million to the

Defendant for, how many hours were billed, what billing rates were used, were they reasonable or excessive and who billed him for what work.

This Court allowed the Harris firm to commence an action against the Relief Defendants due to "documented nature of HSC's claims against the Relief Defendants [which] demonstrates that their claims for fees do likely have merit, with the proper amount left to be quantified." [Doc. #1424 at 13].[5]  In contrast, BR has not produced, and indeed BR  cannot produce, a single such documentation to either the Defendant or to the Court to support their claims.

To allow BR to commence proceedings against the Defendant in this situation means that any person with any perceived or fabricated grievance against the Defendant (whether justified or not) would seek leave from this Court to litigate against the Defendant, further wasting judicial resources; and simply harassing the Defendant.

In addition, BR knew that the entirety of the Defendant's assets was frozen; and they came into this proceeding (and others) with full knowledge that funds *may* not be released for the Defendant to retain counsel.  That was entirely a business decision for BR (and BR's prompt actions to withdraw from the proceedings after the Court denied the release of funds for the Defendant to have counsel directly support this submission); and the Defendant cannot be liable for a business decision that BR undertook in their own wisdom without the Defendant's explicit and written agreement.  They went on a fishing expedition and failed to catch any fish.   The Defendant is not responsible for their failure in such a fishing expedition and is not liable to pay them anything for their inability to convince this Court to release funds for them.

BR tried to have funds released by this Court to represent the Defendant; and were the Court to have released such requested funds, the Defendant would likely have engaged them for

---

[5] The Defendant does not waive his rights to oppose any payment to the Harris firm by way of this statement and only quotes the Court's Ruling to prove a point.

their services.   It was a business arrangement ***contingent*** on the release of funds by this Court; once this Court denied the release of funds, no liability accrued to the Defendant and the Defendant did not sign any engagement letter, and promptly consented to the withdrawal of BR from representing him, once BR failed in their endeavor to impress the Court to release any funds for the Defendant to retain BR as legal counsel.

### C. BR Withdrew from this instant CT Case when the Court did not Release Funds.

The purported representation by BR was simply and solely ***contingent*** on this Court releasing funds for the retention of attorneys, which this Court declined to do in February 2016 [Doc. #191].

Soon after this Court's Order denying the release of fees for the Defendant to retain counsel, the Defendant consented, and BR immediately applied to withdraw from this case; and the Court granted the withdrawal [Doc. #221].  The Defendant consented to the withdrawal of BR in this instant case ***precisely and only*** because he could not pay for counsel, absent a release of funds from the asset freeze.   It is exactly for that reason that BR did not even send a (draft) engagement letter to the Defendant; knowing all too well that there was no engagement for there to be an engagement letter; and the Defendant did not review or negotiate an engagement letter, leave alone execute one!  And now BR comes out of nowhere to claim such an exorbitant amount for work that was not authorized, not contracted and not agreed upon.  Any commercial relationship of such magnitude at the very least would involve several rounds of contract negotiations and invoicing – and neither was present in this case.

No contract.  No invoices.  No engagement letter.  Nothing!

Indeed, BR knew there was never any assurance of any payment, indeed there was never any expectation of payment and, hence, BR rightfully withdrew from the instant matter.  In their

Consented-Motion to Withdraw Appearance [Doc. #210] dated 14th April 2016, BR
acknowledged as much by stating that "[R]epresenting Mr. Ahmed, ***without any assurance that***
***those fees and costs will ever be reimbursed or paid***, has and will continue to result in an
unreasonable financial burden for the undersigned counsel." (emphasis added).  BR's Motion
now to lift litigation stay flies in the face of their own earlier submission to this Court.  Their
Motion is without any legal basis and is only additional harassment of the Defendant; and must
be denied.

      BR's withdrawal in this case has severely harmed the Defendant in this litigation.  As
such, the Defendant is not and cannot be responsible for the payment of any fees when the Court
itself did not release fees for the Defendant's representation in the first place.

      Simply put, BR went on a fishing expedition, hoping for the release of funds, and left the
field when such release did not happen.  No harm, no foul.  That was the implicit agreement
with the Defendant.

      And now they wish to litigate for an unsupported and unsupportable fee that they went
about accruing on their own jolly will and on their own volition, with no authorization or
agreement or consent by the Defendant.  BR did not and cannot produce one shred of evidence to
the contrary.

### D.  BR Did Not Seek Funds from this Court when the MA Civil Matter was Stayed or Proceeding, despite the MA Court's suggestion.

      BR attempted multiple times, to withdraw from the MA Civil Matter (which was stayed
for years) once it was clear that this Court was not releasing funds for the Defendant to retain
counsel. The Defendant supported and consented every such effort because of the contingent
arrangement that was agreed upon; that BR would try and get funds released or else would
withdraw and the Defendant  would not be responsible for their fees.  The Defendant was

12

already in India at the time BR first contacted the Defendant with their proposal to represent the

Defendant contingent on the Court releasing funds for BR to represent the Defendant.  At no

point did the indigent Defendant ever promise to pay the law firm of BR – simply because he

could not.

However, the MA Court made it clear that it was taking BR's "motion to withdraw under

advisement;" and even suggested BR to "file a fee petition with the Connecticut court" [Hearing

Transcript, March 9, 2019, p. 15:3-5].  However, BR never filed any such fee application with

this Court, and their refusal to do so would be deemed as a waiver by BR to any fees; since they

declined to seek fees from this Court for that matter despite the MA Court's instructions.

In addition, by moving to withdraw from that matter at an early stage, the Defendant was

prejudiced in any and all proceedings in that matter as BR was simply not interested in

representing the Defendant without payment.

Indeed, it was the SEC, the Defendant's adversary, and not BR, who advised the

Defendant and revised the calculation of disgorgement and penalty in that MA matter, such was

their lackadaisical and disinterested disposition.  As such, the Defendant retains all rights to and

will commence proceedings against BR for *inter alia,* negligence and malpractice, should the

Court be inclined to allow BR to commence proceedings against the Defendant at this time.

BR entered into a contingent agreement to represent the Defendant if fees were to be

released and to withdraw in the alternative.   The agreement was crystal clear and well

understood – the Defendant would not be liable for any payment unless approved and released

by the Court.   The very fact that there never was any engagement or retainer agreement signed

proves that economic arrangement.

No expense was ever authorized by the Defendant; and the Defendant cannot be

responsible for expenses incurred by a law firm he did not retain.

### E.  BR Never Made an Appearance in the Criminal Matter.

Totally contrary to BR's misrepresentations, BR actually never made a single appearance in the Defendant's criminal case and Defendant continues to be without counsel in that matter.[6]

## IV.        Conclusion

As is clear beyond any iota of doubt, (1) the purported litigation by BR is both baseless and without merit; and (2) the *Wencke* factors do not support a lift of stay for BR to commence proceedings against the Defendant; and therefore, the esteemed Court should deny BR's request to litigate against the Defendant.

In addition, the Court should stay any decision on BR's request until the Court renders a decision on the current briefing of the Relief Defendants' Motion for Temporary Injunction [Doc. #1446].

Alternatively, if the Court is inclined to grant BR's Motion, then the Defendant asks that he also should be permitted to litigate against BR, with the assistance of qualified legal counsel retained with a release of adequate funds from the asset freeze, at the same time.

Respectfully Submitted,

Dated:         February 21ST, 2020                 /s/ Iftikar Ahmed
                                                   _____
                                                   Iftikar A. Ahmed
                                                   C/O Advocate Anil Sharma
                                                   Government Place East
                                                   Kolkata 700 069, India
                                                   Tel:     +91-983-008-9945
                                                   e-mail: iftyahmed@icloud.com
                                                   *Pro Se*

---

[6] *US v. Iftikar Ahmed*, Case 1:15-cr-10131-NMG (D. Mass.)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and served by electronic mail to:

MR. NICHOLAS P. HEINKE, *ESQ.*
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1071
e-mail: heinken@sec.gov

MR. MARK L. WILLIAMS, *ESQ.*
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1027
e-mail: williamsml@sec.gov

MR. PAUL E. KNAG, *ESQ.*
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5400
Fax: (203) 653-5444
e-mail: pknag@murthalaw.com

MS. KRISTEN LUISE ZAEHRINGER, *ESQ.*
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5406
Fax: (860) 240-5758
e-mail: kzaehringer@murthalaw.com