UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION<br><br>*Plaintiff,*<br><br>*v.*<br><br>IFTIKAR AHMED<br><br>*Defendant,* and<br><br>IFTIKAR AHMED ALI AHMED SOLE PROP, *et al*.<br><br>*Relief Defendants.* | Civil No. 3:15-cv-675 JBA |

**MEMORANDUM OF LAW IN SUPPORT OF NMR E-TAILING, LLC'S
MOTION TO MODIFY LITIGATION STAY RELIEF**

NMR e-tailing, LLC ("NMR"), by its undersigned counsel, submits this Memorandum of Law in Support of its Motion to Modify Litigation Stay Relief, and states as follows:

**I.     INTRODUCTION**

1.     NMR initially filed with this Court a Motion to Lift Litigation Stay [Doc. No. 1097] in order for it to continue to pursue its claims against Defendant Iftikar Ahmed's ("Ahmed") former employer and related entities the Supreme Court of the State of New York, County of New York, Index No. 656450/2017 (the "New York Case").[1]

2.     In preparation for trial and in an attempt to address the outstanding default judgment as to liability NMR obtained against Ahmed, the issue of the entry of judgment against Ahmed and monetizing that default judgment was raised *sua sponte* by the Court in the New York Case during a recent compliance conference. In response to the Court raising the issue, NMR desires to liquidate its claim against Ahmed.

---

[1]     A copy of NMR's 60-page Verified Complaint was attached as **Exhibit A** to NMR's Motion to Intervene and Lift Litigation Stay. [Doc. No. 1097-1].

3. Specifically, NMR seeks modification of the Court's Order granting NMR's Motion to Lift Stay so that NMR can seek to sever the claims against Ahmed, which are the subject of a default judgment as to liability from the claims involving non-defaulting defendants that are scheduled for trial on May 6, 2020 pursuant to N.Y. C.P.L.R. 3215, and seek entry of judgment on damages against Ahmed in the New York Case to liquidate NMR's claim against him. NMR agrees not to interfere with the Receiver's interest to preserve Receivership assets and to not enforce any judgment NMR may obtain until seeking further relief from this Court.

## II. BACKGROUND

4. NMR e-tailing, LLC was formed in 2013 by a group of investors for the purpose of investing in Choxi.com, referred to in this case as "Company C."

5. On October 18, 2017, NMR, based on facts and circumstances surrounding NMR's investment in Company C, filed a lawsuit against Ahmed and Oak Investment Partners and its managing members, Oak Management Corporation ("OMC"), Oak Investment Partners XIII, LP, and Oak Associates XIII, LLC (collectively, "Oak"), in the New York Case.

6. On March 14, 2018, a default judgment against Ahmed was entered on liability as a result of his failing to answer or otherwise respond to NMR's Verified Complaint. To date, NMR has not taken any action to liquidate its default judgment against Ahmed. NMR, however, has made the SEC and Receiver aware of the status of the pending New York Case and its expected involvement in any distribution of proceeds from the instant case as a victim of Ahmed's conduct.

7. In response to the Receivership Order entered in this case, NMR filed a motion on February 5, 2019, requesting a lifting of the stay to proceed in the New York Case against Oak.

NMR's motion, which was unopposed by the Receiver and SEC, was granted. *See* Ruling on Motions to Lift Litigation Stay, dated May 21, 2019 (the "Ruling") (Doc. No. 1167 at p. 9).

8.  Subsequently, Oak filed a motion to lift the Court's stay to allow it to "commenc[e] an arbitration against Ahmed to recover damages it suffered in connection with [Mr. Ahmed's] fraudulent scheme…" *See* Doc. No. 1133 at p. 1.

9.  In response to Oak's motion, the Receiver reported as follows:

> The Receiver and his counsel have reviewed the Motion. Based on the Receiver's analysis at this time, the Motion and the granting thereof do not impact the Receiver's ability to complete his duties under the Order Appointing Receiver [Doc. No. 1070] because, *inter alia*, OMC is not attempting to "disturb the asset freeze or take priority over the SEC's claim to any of the frozen assets." (Memorandum of Law in Support of Non-Party Oak Management Corporation's Motion to Lift Litigation Stay [Doc. No. 1133], at 4.) Therefore, the Receiver takes no position as to the Motion at this time.

Doc. No. 1144 at p. 2.

10. In granting Oak's motion to lift stay, the Court reasoned that

> Oak is not attempting in any way to disturb the asset freeze or take priority over any claim by the SEC to any of the frozen assets… and the Receiver represents that granting Oak's motion would not impact his ability to perform his duties, maintaining the stay as to Oak's desired arbitration is not necessary to preserve the status quo of the Receivership Estate.

The Ruling at p. 13 (internal quotation marks omitted).

11. Further, the Court found that "[g]iven the possible dissipation of assets if and when the Court releases assets after the SEC's judgment has been secured, Oak would likely suffer injury if unable to timely commence its arbitration against Mr. Ahmed." The Ruling at p. 13.

12. NMR and Oak recently appeared before the court in the New York Case for a hearing on discovery and trial-preparation issues. The Court inquired about the status of the default judgment as to liability against Ahmed as trial is approaching, and further, *sua sponte*

raised the issue of NMR "monetizing" the default judgment. Accordingly, NMR seeks to liquidate its claim against Ahmed. Again, *NMR is not seeking to disturb the asset freeze or take priority over any claim by the SEC to any of the frozen assets for its judgment*.

### III. ARGUMENT IN SUPPORT OF NMR'S REQUEST FOR MODIFICATION OF LITIGATION STAY RELIEF

13. NMR seeks to modify the stay relief granted to NMR to seek relief consistent with that obtained by Oak from this Court. As noted above, NMR seeks modification to this Court's order granting NMR's Motion to Lift Stay so that NMR can seek to sever the claims against Ahmed, which are the subject of a default judgment as to liability from the claims involving non-defaulting defendants that are scheduled for trial on May 6, 2020 pursuant to N.Y. C.P.L.R. 3215, and seek entry of judgment on damages against Ahmed in the New York Case to liquidate NMR's claim against him.

14. In seeking this relief, *NMR states that it is not seeking to disturb the existing asset freeze or take priority over the SEC's judgment*.

15. The "focus" of a receivership is "to safeguard the assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary." *S.E.C. v. Vescor Capital Corp.*, 599 F.3d 1189, 1194 (10th Cir. 2010) (quoting *Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006)).

16. As these interests are not implicated by NMR's request here, NMR moves to utilize the mechanism provided in this Court's Order by which NMR can seek to lift the litigation stay for the purpose of liquidating the default judgment previously obtained against Ahmed and positioning itself from harm arising from any dissipation of assets. Indeed, "an appropriate escape valve, which allows potential litigants to petition the court for permission to

sue [*e.g.,* Doc. No. 1070, ¶23], is necessary so that litigants are not denied a day in court during a lengthy stay." *Vescor Capital Corp.*, 599 F.3d at 1194.

17. In considering a motion to lift a litigation stay in this context, Courts weigh three factors:

> (1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim.

*Carney v. Beracha*, 996 F. Supp. 2d 56, 73 (D. Conn. 2014) (citing *SEC v. Wencke*, 742 F.2d 1230 (9th Cir.1984)).

18. Consideration of these factors heavily weighs in favor of granting NMR's request. *See S.E.C. v. Universal Fin.*, 760 F.2d 1034, 1038 (9th Cir. 1985) (The *Wencke* test simply requires the district court to balance the interests of the Receiver and the moving party.").

19. **First**, NMR's request will not affect the *status quo* of the receivership because NMR is *not* seeking to take priority over the SEC's claim to any of the frozen assets, or disturb the frozen assets. Indeed, NMR only seeks to obtain a judgment against Ahmed.

20. Thus, the granting of NMR's instant Motion will not hinder the ability of the Receiver to complete his duties under the Order Appointing Receiver given the specific scope of NMR's request.

21. As this Court recognized in the Ruling, tipping the scales further in support of lifting the stay is the substantial injury that would occur if a claimant is prohibited from liquidating its judgment against Ahmed, or later attaching Ahmed's assets subject to additional relief from this Court. Indeed, NMR is at risk of suffering the same substantial injury identified by the Court in connection with Oak's motion to lift the litigation stay. Should the Court release certain currently frozen funds back to Ahmed, NMR, to the extent it is not fully compensated for

7

its injuries through its case against Oak, or from distribution of funds by the SEC/Receiver, would suffer substantial injury in that there would be no meaningful opportunity for NMR to obtain its judgment given Ahmed's status as a fugitive who fled the United States and is believed to be domiciled in India. *See* the Ruling at p. 13 ("[g]iven the possible dissipation of assets if and when the Court releases assets after the SEC's judgment has been secured, [OMC] would likely suffer injury if unable to timely commence its arbitration against Mr. Ahmed."). This is especially true where, as here, there are allegations that Ahmed has wrongfully interfered with the Receivership assets. *See generally* Receiver's Notice Regarding Ahmed's Apparent Failure To Comply With Appointment Order Relative To Unauthorized Activity In Fidelity X7540 And Fidelity X8965 (Doc. No. 1412).

22. **Second**, because NMR is only liquidating its claim to judgment, there is no concern that the Receiver would be "forced into court" to defend or protect the frozen assets. *Vescor Capital Corp.*, 599 F.3d at 1198.

23. Moreover, the timing of NMR's request does not interfere with the Receiver's duties because he already has issued a detailed and comprehensive Report [Doc. No. 1130], which demonstrates that he "has had sufficient time to understand the assets of the Receivership Estate…" The Ruling at p. 13; *cf Wencke*, 622 F.2d at 1373–74 ("Where the motion for relief from the stay is made soon after the receiver has assumed control over the estate, the receiver's need to organize and understand the entities under his control may weigh more heavily than the merits of the party's claim.").

24. **Third**, and with respect to the merits of NMR's underlying claim, NMR both obtained a default judgment against Ahmed in the New York Case and defeated a motion to dismiss the claims filed by Oak. *See Wencke*, 742 F.2d at 1232 (the court need only "determine

whether appellants had a *colorable claim*") (emphasis in original).  More to the point, there is no dispute among NMR, the SEC, the Receiver, and Oak that Ahmed engaged in fraud relating to Company C and, consistent therewith, this Court found that Ahmed engaged in fraud relating to Company C.  *See* Ruling on All Parties' Motions for Summary Judgment on Liability (Doc. No. 835 at pp. 8-13).  As a result, the "colorable claim" standard is more than sufficiently satisfied.

25. In sum, all three *Wencke* factors weigh in favor of modifying the litigation stay to allow NMR to liquidate its claim against Ahmed in the New York Case—especially considering NMR's agreement to not disturb the asset freeze or take priority over the Receiver's rights relating to any of the frozen assets.

Dated:  March 9, 2020                                              Respectfully submitted,

/s/  Edward M. Buxbaum
Kevin G. Hroblak, Esquire
  *Of Counsel*
Edward M. Buxbaum, Esquire
  *Admitted Pro Hac Vice*
WHITEFORD, TAYLOR & PRESTON L.L.P.
Seven Saint Paul Street, Suite 1500
Baltimore, Maryland 21202-1636
khroblak@wtplaw.com
ebuxbaum@wtplaw.com
Tel: (410) 347-8700

*and*

Erin Canalia, Esquire (Fed. Bar # ct30489)
WOLF, HOROWITZ & ETLINGER, L.L.C.
750 Main Street, Suite 606
Hartford, Connecticut 06103
Tel:  860-724-6667
ecanalia@wolfhorowitz.com

*Counsel for NMR e-tailing, LLC*

9

## **CERTIFICATION**

I hereby certify that on March 9, 2020, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/  Edward M. Buxbaum
Edward M. Buxbaum, Esquire
WHITEFORD, TAYLOR & PRESTON L.L.P.
Seven Saint Paul Street, Suite 1500
Baltimore, Maryland 21202-1636
ebuxbaum@wtplaw.com
Tel: (410) 347-8700

10084400