# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> IFTIKAR AHMED, <br><br> Defendant, and <br><br> IFTIKAR AHMED SOLE PROP; *et al* <br><br> Relief Defendants. | Civil Action No. 3:15-cv-675 (JBA) <br><br><br> June 05TH, 2020 |

**DEFENDANT'S RESPONSE IN OPPOSITION TO THE "FIFTH INTERIM APPLICATION FOR PROFESSIONAL FEES AND EXPENSES INCURRED BY THE RECEIVER AND HIS PROFESSIONALS" [DOC. #1555]**

The *pro se* Defendant submits this Response in Opposition ["Fifth Opposition"] to the Receiver's "Fifth Interim Application for Professional Fees and Expenses Incurred by the Receiver and his Professionals." [Doc. #1555, or the "Fifth Application"]. The Defendant reserves all rights to all issues and fully incorporates his prior Oppositions [Doc. #1183 or the "First Opposition"] and Sur-Reply [Doc. #1222-1 or the "Sur-Reply"]; [Doc. #1261 or the "Second Opposition"]; [Doc. #1354 or the "Third Opposition"] and [Doc. #1508 or the "Fourth Opposition"] into this Opposition.

The Court must deny the Fifth Application for the same reasons as the Defendant outlined in his First, Second, Third and Fourth Oppositions to Receiver's First, Second, Third and Fourth Fee Applications:  the Receiver's fees are excessive, duplicative, unreasonable and unjustified; the Receiver has not provided any benefit at all to the Receivership Estate to justify

1

such excessive and unjustified expenses but instead has caused substantial losses to the Estate by way of hundreds of thousands of dollars; the Order Appointing Receiver is under appeal; the Receiver is proven beyond any reasonable doubt to be a biased party and an agent of the Plaintiff; the Court has no jurisdiction to impose additional penalties on the Defendant alone and thus create a perverse incentive by paying the Receiver out of funds or assets above the judgment amount; it is inequitable for the Court to pay a Receiver who solely benefits the public (and not the Defendant) out of funds belonging to the Defendant when the Court has repeatedly denied funds for counsel to the Defendant (in violation of his due process rights) and even for his medical treatment for cancer despite the Receiver's own confirmation of tens of millions of dollars of assets over and above the judgment amount.

The Defendant reserves all rights to all issues and does not waive any right by way of this Fifth Opposition or his earlier Fourth, Third and Second Oppositions, his earlier First Opposition or Sur-Reply.

## I.    FIRST OPPOSITION AND SUR-REPLY, SECOND OPPOSITION, THIRD OPPOSITION AND FOURTH OPPOSITION.

The Defendant incorporates his complete First Opposition [Doc. #1183] and Sur-Reply [Doc. #1222-1], his complete Second Opposition [Doc. #1261], his complete Third Opposition [Doc. #1354] and his complete Fourth Opposition [Doc. #1508] into this Fifth Opposition.  For the convenience of the Court, the Defendant does not repeat the arguments here (and fully incorporates those arguments from his First, Second, Third and Fourth Oppositions and his Sur-Reply, and refers the Court to his First, Second, Third and Fourth Oppositions and his Sur-Reply), but the Defendant opposes the Receiver's Fifth Application for the same reasons as outlined in his First Opposition and Sur-Reply; his Second; Third and Fourth Oppositions and also addresses additional reasons in this Fifth Opposition.

2

## II.     THE RECEIVER'S FEES MUST BE PAID FROM WITHIN THE JUDGMENT AMOUNT AND THE ORDER IS UNDER APPEAL.

The Defendant reiterates his position that if the Court believes that the Receiver should be paid his fees, then they must be paid from within the Judgment amount and not be an additional penalty on the Defendant.  It also renders a preserve incentive – as has already been depicted – whereby "the possibilities for abuse [are] limited only by the size of the estate" *SEC. v. Northshore Asset Mgt.*, 05 Civ. 2192 (WHP), at \*3 (SDNY Sep. 29, 2009).

As the Defendant has also already stated, it is highly inequitable for the Court to be paying the Receiver from the Defendant's legally earned funds when the Defendant himself has been denied the use of those funds for his own purposes,[1] including for the retention of counsel. In addition, the Receiver does not benefit the Defendant, but rather has *harmed* the Defendant and his interests. ***It is simply inequitable to force the Defendant and the Estate to pay for someone who takes an adverse position to his/its' own interests.***

The Receiver continues to be a partial party in this matter and it is clear that not only has he harmed the Defendant, he has also *harmed the Estate as a whole*.  The Receiver is only and solely interested in securing the judgment amount only and does not care about the Estate as a whole. The Defendant incorporates the entirety of his and Relief Defendants' briefings here [Doc. #1471, 1472].

In addition, the Receiver has admitted that excessive motion practice incurs concomitant expense to the Estate [Doc. #1477 at 4]. Yet it is the Receiver who has created such a situation by not opposing third party litigation against the Defendant and Relief Defendants and then

---

[1] *See Almeida v. Holder*, 588 F.3d 778, 788 (2d Cir. 2009) ("The rights and benefits of property ownership are, after all, many... [T]hey include not only the right to actual possession of a thing, but also the right to exclude others from possessing it, the right to use it and receive income from its use, the right to transmit it to another...").

opposing a release of funds for the Defendant and Relief Defendants to retain counsel in those proceedings, which *harms the Estate.*

The Defendant (and Relief Defendants) have briefed this issue of payment to the Receiver coming from within the judgment amount and such is pending before the Court [Doc. #1471, 1472]. In addition, as Defendant has stated, such payment is under appeal. The Court's ability to order payment pending appellate review of, *inter alia*, the Receiver's payment has been briefed and is pending before the Court [Doc. #1454, 1457, 1460].

In addition, a ruling in the Supreme Court case *Liu v. SEC* could very well render a different outcome than the current situation. Not only would the Receiver be personally liable for the management of assets above the judgment amount (and the judgment could be reduced materially based on the appellate courts' rulings and now the Supreme Court's review of disgorgement in *Liu*), the appellate courts could rule that the Receiver must be paid from within the Judgment amount for reasons including but not limited to: ***the Receiver does not represent the Defendant's interests***, or ***the Estate's interests,*** but rather, ***only the Judgment's interests***. [Doc. #1471, 1472]

## III.    THE RECEIVER'S FEES ARE SEVERELY EXCESSIVE FOR THE WORK PERFORMED.

The Defendant incorporates and reiterates his position that a Receiver was not needed in this instant case and the Receiver's Fees are not justified in this case. In addition, the Receiver has created no economic benefit to the Estate during the time period under the Fifth Application, but has rather cost the Estate a substantial amount of money and the Court must look at attorney's fees as a loss to the Estate.[2]

---

[2] "…receivership… where the goal is…to manage the estate in such a way as to maximize recovery while minimizing loss, including losses caused by attorney's fees." (emphasis in original) See *SEC v. Aquacell Batteries* Case No. 6:07-cv-608-Orl-22DAB, at *9 (M.D. Fla. Jan. 31, 2008)

"[A]mong the factors considered by the Court in exercising its discretion to determine the appropriate award of fees is the cost-efficiency of the Receiver's work in terms of assets recovered for victims, *see* S̲E̲C̲ B̲ILLING̲ I̲NSTRUCTIONS̲ at 26, "the complexity of problems faced, the benefits to the receivership estate, the quality of the work performed, and the time records presented," *SEC v. Fifth Ave. Coach Lines, Inc.*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973)." See *SEC v. Illarramendi*, Civil No. 3:11CV78 (JBA), at *3 (D. Conn. Dec. 5, 2013). Under these factors, the Receiver's fee request is outrageously excessive and unjustified.

*First*, the Receiver's requested fees have increased substantially. While the Receiver has stated that "the extent of fees and expenses incurred for the [earlier] Compensation Period of the receivership will not necessarily correspond to future applications due to the extent of initial start-up work required to secure and investigate the assets and submit the Report of Receiver. See *Gordon v. Dadante*, 2008 WL 1805787 at *11 (N.D. Ohio, 2008) (recognizing that as is "common in cases of this nature [receiverships], the bulk of the effort and expense is frontloaded")" [Doc. #1160], the trend in the requested fees are contrary to that. The amount requested declined from the First Application to the Third Application, but have started to increase in the Fourth Application, with a drastic ***55% increase*** (from the Fourth Application) to this Fifth Application and no reason or explanation given for this drastic increase.

*Second*, this amount shows a billing of over $1,000 *per each working day* in the first quarter of 2020. Such is excessive with no apparent reason. As the Defendant has made clear, there is no complexity in managing assets that are mostly liquid and real estate (and additional assets that are managed by others) and that are tens of millions of dollars above the Judgment amount.  Yet, the Receiver astonishingly invoices ***over $71,000*** this quarter alone to the Defendant and has done nothing to provide *any* economic benefit to the Estate during this time. *The Receiver has not provided any benefit to the Estate during this time, but has rather lost*

*substantial value to the Estate by way of requesting his excessive and unjustified fees, by being reactive rather than proactive and by continuing to oppose actions that would add value to the Estate.* Defendant delves into this further later in this Opposition.[3]

*Third*, the amounts billed run contrary to this Court's directive of keeping costs low. The Receiver and his counsel continue to be inefficient with the management of their time in this matter, and continue to invoice the Defendant for, *inter alia*, matters that are premature or unnecessary to deal with at this time or that are outside of the Receiver's mandate.

It is clear that the Receiver has done nothing during the Fifth Application that has provided any economic benefit to the Estate – rather he has created significant loss to the Estate during this time – and his application for fees must be denied on this basis alone.

## IV. THE RECEIVER HAS UNILATERALLY AND WITHOUT AUTHORIZATION CHANGED HIS RATES AND THEY MUST BE REDUCED.

### a. The Receiver Has Erred on Calculation and He Must Accordingly Revise the Earlier Fee Motions

The Receiver has admitted that the $396 rate approved by the Court in the Order Appointing Receiver was only a "20% discount from the Receiver's standard hourly rate." [Fifth Application at 5] when he had stated, and the Court had assumed, that he would apply a 25% discount for his legal rates. As such, all prior fee motions must be immediately adjusted for this oversight.[4] The Defendant was never given any materials from the November 2018 hearing with the Receiver, as the Defendant was sick in the hospital and no one sent him any materials. There

---

[3] In all instances in this Opposition where Defendant provides hours and costs, the Defendant has eyeballed the invoice entries and has estimated these hours and amounts based on the description in the various line items of the four invoices submitted and reserves the right to update them if new information emerges.

[4] The Defendant reserves all rights that the Receiver should be paid from within the judgment.

is absolutely no transparency to the Defendant on what the Receiver's standard rates are or his counsel's rates, etc.

  **b.**  **The Receiver and his Counsel, etc. Have Unilaterally and Without Any Notice or Authorization, Increased Their Rates as of Jan 1, 2020.**

   The Receiver has admitted that his and his counsel's rates have changed as of January 1, 2020. "As the standard hourly rates for some Z&Z professionals and paraprofessionals changed *effective January 1, 2020*, the amount sought in this Fifth Application reflects a 25% public service discount from the *revised January 1, 2020 rates.*" (emphasis added) [Fifth Application at 5] However, there is ***no provision*** in the Order Appointing Receiver [Doc. #1070] for the allowance of any increase in rates for the Receiver and his counsel, any purported increase has not been briefed by the parties nor has any increase been approved by the Court. The Receiver and his counsel cannot just unilaterally impose some increase in rates without the express approval of this Court and the agreement of the parties to this proceeding. There is no good reason for the Receiver, who was just appointed in December 2018 to unilaterally, without the approval of this Court and the parties, to increase his rates or the rates of his counsel or any professionals. There is not even any detail on the amount of such increase and who increased their rates. Such amounts to self-dealing and the Court should order that the Receiver detail the increases and reverse any increases to the prior agreed rates in the December 2018 Order [Doc. #1070] *until and unless* the Court and the parties agree to any rate increase.[5]

---

[5] As the Defendant details later in this Opposition, the SEC's position on any of the Receiver's fees and expenses is moot until the Court orders the Receiver's payment to be made by the SEC or from within the judgment amount.

### c.   Legal vs. Non-Legal Rates of Receiver.

In addition, in three prior Applications, the Receiver had stated that he "voluntarily billed all of the Receiver's time during the [Second, Third, Fourth] Compensation Period at the reduced $250 per hour rate" [Doc. #1474 at 5]. This is presumably in response to the Defendant's Opposition wherein the Defendant noted that "[T]he Receiver has chosen to provide additional discounts in other Receiverships [by charging the administrative rate of $250 to *all* of his services, legal or administrative],"[6] [Doc. #1222-1 at 4-5]. This discount has continued to date in that other Receivership (contrary to here), as in that same other Receivership in his most recent Motion for Fees, the Receiver has stated that "Notwithstanding, as an additional discount, despite the fact that many of the services provided by the Receiver during the Compensation Period were mostly legal in nature, the Receiver and Z&Z have voluntarily applied the much more deeply discounted $250 hourly pay rate to all of the Receiver's time during this period."[7]

However, the Receiver has not done that in the Fifth Application.[8] It is clear, that in this situation in this instant case, the Receiver is taking advantage of the fact that there are excess assets in this Estate over the Judgment Amount. This is yet another example of where the Receiver does not have the interest of the Estate first and foremost and indeed, goes against the Order of the Court that "The Receiver has a continuing duty to ensure that there are no conflicts of interest between the Receiver, his Retained Personnel… and the Receivership Estate." [Doc. #1070 at 8]

It utterly defies any semblance of reasonableness, equity or fairness that the Receiver would discount his rates for another Receivership *in this District*, yet charge the full amount *in*

---

[6] *SEC v. Varacchi*, Case 3:17-cv-00155-VAB; Doc. #27 at 5, Filed 08/14/17

[7] *SEC v. Varacchi*, Case 3:17-cv-00155-VAB; Doc. #180 at 7, filed 4/24/20

[8] The Receiver has also not corrected for the fact that he did not adjust the First Application [Doc. #1160] for this difference either, which would result in an adjustment of approximately $11,724.90 back to the Estate.

*this case just because there are excess assets.* Just as he would charge reduced rates in other Receiverships and as he has for certain compensation periods in this case, he should continue with that reduced rate (and all earlier Fee Motions *must* be reduced to this rate), especially ***as there is nothing to do in this Receivership***. The assets are mostly liquid. There are excess assets frozen above the judgment amount. There are appeals pending. ***There is nothing for the Receiver to do***. This is particularly relevant as the other Receivership is in ***this*** District – in the District Court of Connecticut. It makes no sense, is entirely unsupported and inequitable for the Receiver to charge for his services – both legal and non-legal – at the lower rate of $250 for another Receivership in another case with another District Court in this district, yet bill *in this case* at the higher legal rate for his legal services.[9]

Yet, the Receiver goes back on his statement by *billing back to his legal rate*, *now increased to the revised January 1, 2020 rate*. This is particularly disturbing and unacceptable as the vast majority of the time billed is apparently "legal" in nature, even though there is nothing to do in this Receivership. For example, the ***Receiver's time spent as a Receiver in this case is less than 2% of the total amount requested***. There is no point having a Receiver who makes a big show of charging $250 for his services when it is only 2% of the total requested. In addition, there is no reason for the Receiver to have counsel if he is going to be billing at his "legal" rate.

Just as he has done in other Receiverships, the Receiver should be charging $250 for *all* of his services, else there is absolutely no reason for him to have counsel if he is providing counsel to *himself* and billing *his legal rates* for it.

This is just another example of the hypocrisy that the Receiver has depicted in this case. For example, the Receiver has testified that his firm would not "double-bill, even if it's legitimate

---

[9] Going back to the $250 rate for *all* of his services would result in an adjustment in favor of the Estate of approximately $3,630 for the Fifth Application.

double-billing, in the sense of if two of us are dealing with the same issue we only bill for one person's time" [Doc. #1043 at 24:17-19, "Nov 28 Hr. Trans."]; and yet when the bills are submitted, the Invoices show the exact opposite of what he said. The Receiver has also stated that he would not oppose the additional freeze of the assets for the SEC in an unrelated MA matter, but he completely opposes releases of funds to the Defendant and the Relief Defendants. Similarly, the Receiver states in another case (and certain of his Fee Applications here) that he will discount *all* his time to $250, but does not do so here. The Court should make a note of the Receiver's absolute change of heart when it suits him only. When the Receiver says that he won't double-bill, he should stick with what he has represented to the Court and the parties. When the Receiver says that he will bill at his Receiver rate of $250 per hour for legal services, he should stick with what he has represented to the Court. It is indisputable that the Receiver simply does what suits him best without any regard for what he has previously represented to the Court and the parties in this case.

### d.  Legal vs. Non-Legal Rates of Professionals and Counsel.

It is indisputable that counsel is not performing *all* legal work that must be billed at the legal rate. The Receiver must break out the legal vs. non-legal work of his counsel and professionals and any non-legal work must be at a lower rate. For example, it is indisputable that Stephen Kindseth and Chris Blau are doing some work that would not be considered "legal," yet *the entirety of their billing* is at the legal rate. ($5,742 for S.K. and $47,494.35 for C.B.; Application at 1555). There must be a breakout of what is considered legal and what is considered non-legal and billing must be done accordingly.

### e.  The Receiver "hides" the Number of hours billed.

The Receiver also, in an effort to show more hours that it billed for, "includes hours recorded for which no corresponding fee was charged" [Fifth Application, n. 4]. This makes the analysis of the true calculation of the amount billed per hour impossible and makes it seem that

the Receiver is billing a lower "per hour" amount when in reality, the Receiver cannot seek to bill for those hours he included. The Receiver must detail only the hours he bills and then footnote to the hours he does not bill if he wishes to.

The Court has multiple times stated its intent and desire to keep costs low and the Receiver has not followed that mandate efficiently or effectively.

## V.     THE RECEIVER CANNOT CHARGE FOR WORK DONE ON OR DEFENDING HIS FEE MOTIONS.

The Receiver "reserves the right to seek compensation for time spent addressing such motion practice [on his fees] in the future" [Application, n. 4]. However, there is no such thing as "fees on fees" and the Receiver has no right, in an SEC Action, to request payment for the preparation or defense of his fees, especially when it is expressly not allowed by SEC Guidelines and Rules. Besides the fact that American Rule states that "each party is responsible for paying its own attorney's fees," the Receiver was appointed on behalf of the judgment (and not the Estate) and he is responsible for the costs related to defending his own fees and expenses. Not the Estate. (see more in next section). Charging for defending for his fee motions, whether in this Court or the Second Circuit Court of Appeals is inappropriate, against established caselaw and also runs contrary to the Court's directive to keep costs low. The Receiver has charged an addition $6,750 for work done related to his fee motions[10] and payment and this amount *must* be removed from the billing.

---

[10] This is detailed in the next section.

## VI.    THE RECEIVER CANNOT CHARGE FOR ANY WORK IN THE SECOND CIRCUIT APPEALS.

During this period, the Receiver made an appearance in the Second Circuit Court of Appeals and has billed the Estate for such appearance. Any appearances that the Receiver has made on his own behalf for his firm and defense of his expenses *must* be removed from the billing.

*First,* the Receiver did not ask for leave from the Court to make an appearance in the Second Circuit. The Receiver is not authorized nor has he sought leave from the Court to make such an appearance *and bill the Estate* for such appearance. The Receiver has charged the Estate nearly $3,400 for any work done related to the appeals, including for defense of his own payment. Such must be removed from the billing.

*Second,* it is clear that the Receiver cannot charge the Estate for any defense of payment to himself or his counsel, etc. Courts have held that receivers are not entitled to recover fees and expenses associated with litigation involving the propriety of the fees to be awarded to them because, as the United States Court of Appeals for the Third Circuit explained, "the law imposes on a party the duty to pay [her] own fees and expenses in vindicating [her] personal interests. It is our understanding that services necessarily involved in preparing [fee] application to the district court and defending them there are not compensable." *Larchwood Gardens*, 420 F.2d at 534; *In re Imperial 400 Nat'l, Inc*., 432 F.2d 232, 239 (3d Cir.1970) ("time not legally compensable [includes] that spent in applying for or in defending interim fee awards") (footnote omitted); *Sec. & Exch. Comm'n v. W.L. Moody & Co., Bankers (Unincorporated)*, 374 F.Supp. 465, 490 (S.D.Tex.1974) (holding that a "[r]eceiver's preparation for and attendance at hearings on the fees will not be considered in setting [her] fee"); *In re Polycast Corp.*, 289 F.Supp. 712, 719 (D.Conn.1968) (denying allowance for time charged for preparing or defending the trustee's fee application); *Depositors' Comm. v. Fin. Mgmt. Task Force, Inc.*, 809 P.2d 1095, 1098

12

(Colo.Ct.App.1991) (concluding that the services rendered in defending the receiver's fee request were of no benefit to the estate—"the services rendered were for the sole benefit of the fiduciary and its counsel"). Such is no different here and the Court must order that the Receiver remove all instances of the Second Circuit appeal(s)[11] in this Fee Application related to the appeals for his payment and resubmit an amended fee application.

## VII.   THE SEC'S SUPPORT FOR RECEIVER'S PAYMENT MUST BE IGNORED.

The Defendant incorporates and reiterates his position that the SEC's support for payment to the Receiver must be ignored.  Typically, "[O]pposition or acquiescence by the SEC to the fee application will be given great weight." *Byers*, 590 F. Supp. 2d at 644 (quoting *First Ave. Coach Lines*, 364 F. Supp. at 122). However, courts have stated that "[N]o statute compels such a conclusion, however, nor do[es] [the Court] believe such great deference is warranted in this instance." *In re Alpha Telcom, Inc.*, No. CV 01-1283-PA, at *6 (D. Or. Oct. 27, 2006).

This Court should decline to give any weight to the SEC's opinion in this Fifth Fee Application, as the SEC's opinion should be considered only in a situation where the amount of assets collected is less than judgment amount or if this Court reimburses the Receiver from funds encompassed within the judgment (within the $64.4MM amount). Otherwise, only the Defendant and the Relief Defendants opinion must be given "entire weight," if any payment is coming from them and their assets above the judgment amount.

As in the First Application, Second Application, Third Application and Fourth Application, the Receiver has confirmed "[T]he Commission… has no objection to the relief sought in the Fifth Application" [Fifth Application at 2]. This is to be expected, given the Court's

---

[11] The Court must also direct that the Receiver remove any instance of and any time spent on issues related to his billing in this Court, including briefing related to jurisdictional issues related to his payment.

rulings that simply incentivize the SEC to "rubber-stamp" the Receiver's Fee Applications.  The Court must decline to give any weight to the SEC's opinions on this Application.

## VIII.   THE RECEIVER CONTINUES TO BE BIASED AGAINST THE DEFENDANT AND OVERSTEPS HIS MANDATE.

The Defendant incorporates all filings that depict the Receiver's continued bias against the Defendant. Indeed, this Fifth Application is no different. The Receiver is supposed to answer to the Court only. The Receiver is supposed to be a neutral party. The Receiver in this case is anything but neutral.

The Receiver has billed the Defendant for supporting NMR, the Defendant's adversary in another case and a non-party in this case, in pursuing damages against the Defendant.[12] This is a clear-cut case of the Receiver acting extra-judicially and overstepping his mandate. The Receiver is supposed to safeguard the assets, not support a non-party and Defendant's adversary in another matter in pursuing *damages against the Defendant.* Just who is the Receiver representing? Under what authority is he supporting NMR in pursuing damages against the Defendant? The Receiver won't defend the Estate from NMR's claims in the NY Case and opposes the release of funds for the Defendant to be represented in the NMR NY Case, but then he turns around the bills the Defendant to support NMR's pursuit of damages against the Defendant?

### Enough is enough.

The Court *must* see the Receiver's blatant bias against the Defendant. Not only should such charges (approximately $3,700) be completely removed from the billing, the Court should order the Receiver to inform all parties of his conversations with supporting NMR's pursuit of damages

---

[12] See 1555-4, *inter alia*, 3/2/2020 "Attention to issues raised by NMR – detailing with claims process;" 3/2/2020 "Exchange correspondence with NMR's counsel regarding their proposed relief in receivership;" 3/4/2020 "Start to review NMR proposed motion for support from Receiver re: pursuit of damages.

against the Defendant. This is especially critical as the Court has ordered a stay of liquidation and distribution of assets, as NMR's Motion for Lift of Stay against the Defendant is not yet fully briefed, there are other motions pending that impact such lift, NMR has violated an earlier Court Order and NMR cannot proceed with the claims process as there are still appeals pending in this case.

## IX.     THE RECEIVER'S FEES CONTINUE TO BE EXCESSIVE RELATIVE TO THE DUTIES PERFORMED.

The Defendant incorporates, reiterates and adds to his argument that the Receiver's Fees are Excessive for the Duties Performed.  It is well known that the Receiver and his hired professionals "must exercise proper billing judgment in seeking fees from the receivership estate, and should limit their work to that which is reasonable and necessary."[13]  The Receiver has not only improperly billed the estate, but he has performed work that is unnecessary and frivolous only to further invoice the Defendant. The Defendant incorporates his earlier Oppositions to this Opposition and reiterates that the Receiver is causing losses to the Estate by way of his inefficient management.

## X.     THE RECEIVERSHIP MUST BE TERMINATED IMMEDIATELY.

The Defendant incorporates and reiterates his position that the Receivership must be terminated immediately.  The Defendant has expressed multiple times that the Receiver was not needed in this case and the Receiver is "costing" the Estate money, and not generating the Estate *any* value.

---

[13] *Aquacell Batteries*, 2008 WL 276026, at *2. ("Part of 'determining the nature and extent of the services rendered'…includes an analysis as to the reasonableness of the services rendered," and the expenses for which reimbursement is sought must have been "actual and [] necessarily incurred.").

Indeed, it is this Court that has stated that "fees requested are justified by the net economic benefit that they will provide to the estate." *SEC v. Illarramendi*, Civil No. 3:11cv78 (JBA), at *1 (D. Conn. Jan. 16, 2014). The Court must also look at the Receiver's fees as a loss to the Estate.[14] ***The Receiver has provided was absolutely*** <u>***NO***</u> ***economic benefit to the Estate during this period – indeed, there were only significant and unnecessary expenses that the Receiver imposed on the Estate and significant losses by the Receiver's actions/non-actions.***

These include:

(i)    Significant billing issues, *inter alia*, the erratic and unauthorized billing to the Estate by the Receiver discounting his fees to $250 for both legal and non-legal work for another Receivership *in this District* but not doing so in this Application; the unauthorized billing of any increase to the Receiver's and others hourly fee rates as of Jan 1, 2020; etc.

(ii)   The billing to the Estate of the Receiver defending his own fees and briefing the issue of pendent appellate jurisdiction – in this district court alone – resulting in an added billing of $6,750. The Receiver *cannot bill the Estate for issues dealing with or related to the payment of his fees.* The Court must remove this from the billing.

(iii)  The billing of nearly $3,400 to the Estate for the Receiver to appear and submit motions in the Second Circuit Court of Appeals. The Receiver did not ask the Court for leave to do so and the Receiver cannot bill for any amounts related to the defense of payments to his Firm. This amount must be removed from the billing.

(iv)   The billing to the Estate for issues related to NMR – over $3,600 – including the Receiver's support for NMR to pursue damages against the Defendant. Such is entirely extra-judicial, beyond the Receiver's mandate and further establishes the bias the Receiver has towards the Defendant. Such must be removed from the billing.

(v)    The continued unnecessary billing of over $2,500 for tax issues when the Receiver has already concluded that "based upon the dollar amount and limited nature of the Receiver Estate… that he had no obligation to submit tax returns on behalf of the Defendant… [and] had no obligation to submit tax returns on behalf

---

[14] "…receivership… where the goal is…to manage the estate in such a way as to maximize recovery while minimizing loss, including losses caused by attorney's fees." (emphasis in original) See *SEC v. Aquacell Batteries* Case No. 6:07-cv-608-Orl-22DAB, at *9 (M.D. Fla. Jan. 31, 2008)

16

of the Relief Defendants or other taxable entities that are Receivership Assets."
[Doc. #1474 at 22]

(vi)    The billing to the Estate of dealing with the unauthorized trades in Ms. Ahmed's
        Fidelity accounts. *As soon as the Receiver was appointed*, he should have
        confirmed that no trades of any kind could be effectuated in any account.
        However, the Receiver clearly "dropped the ball" and had to scramble *after* the
        fact to ensure compliance with Court Order. This amount in just *this* Application
        is over $7,000. Adding this to the earlier Fee Application results in over $15,000
        *just on this issue alone*. This could have been substantially lower or even non-
        existent had the Receiver confirmed compliance with Court Order as soon as he
        was appointed.

Just these examples alone ***are nearly 35% of the total invoice amount*** (not including the

billing issues in (i) above) requested in the Fifth Application. It is clear that in this case, the

mismanagement and abuse that ensues with the appointment of a Receiver whereby "the

possibilities for abuse [are] limited only by the size of the estate" *SEC. v. Northshore Asset Mgt.*,

05 Civ. 2192 (WHP), at *3 (SDNY Sep. 29, 2009) is clearly evident. This Court must not allow

that to happen.

## XI.     THE ESTATE'S CAUSES OF ACTION.

Indeed, if the Receiver wants to be of *any* value, he should pursue a cause of action against

Oak – both the various Oak entities and separately, Oak HC/FT. There are significant merits to

both causes of action that the Defendant would be willing to share with the Receiver and that

would add significant value – millions of dollars – to the Estate. Instead, the Receiver is content

to oppose all requests by the Defendant and Relief Defendants for release of assets for their benefit

and simply state that "[G]iven the aggregate value of the other assets in the Receivership Estate

and the reported relative illiquidity of certain Oak HC/FT Assets, the Receiver has not incurred

the expense of analyzing the legal basis for Oak HC/FT's forfeiture claims or conducted an

independent valuation of the Oak HC/FT Assets. The Receiver has not waived any rights that the

17

Receivership Estate may have in the Oak HC/FT Assets." [Doc. #1550, n.5] The Defendant would not have an issue with or oppose the Receiver pursuing claims against both Oak HC/FT and the various Oak entities, including Oak Management Corporation and the Court should order such.

### XII.    THE SECOND CIRCUIT HAS JURISDICTION.

As stated previously, the Second Circuit has pendant appellate, amongst other, jurisdiction of the issue of the Receiver's fees and the payment of such. Therefore, the Court cannot grant the Receiver's motions for payment of fees, pending appeal. The Court should also grant the Defendant's motion for the return of property to the Estate [Doc. #1460] until such issue is resolved, especially as the Receiver has opposed the return [Doc. #1464] and would make it difficult for any dispersed funds to be returned to the Estate should the Second Circuit order as such. Just as the Court has stayed the distribution of funds pending appeals, so too should the Court stay the distribution of funds to the Receiver, pending appeals, to ensure that there is no harm to the Estate.

### XIII.    IN THE ALTERNATIVE, IF THIS COURT IS INCLINED TO GRANT FEES TO THE RECEIVER, IT MUST REDUCE THE FEES SUBSTANTIALLY AND IMPOSE A 100% HOLDBACK UNTIL ALL APPEALS ARE CONCLUDED.

The Defendant believes that the Receiver should not be paid at all. Or that if he is paid, he should be paid from within the Judgment amount and by those parties who are benefiting from the Receiver – namely the Judgment and/or the SEC. [Doc. # 1471, 1472]. The Receiver cannot be an added claim on top of the judgment amount and the Defendant opposes such by the Receiver [Fifth Application at 20].[15]

---

[15] The Defendant also opposes the listing of the Harris Firm's purported claim on Ms. Ahmed's Harry Winston Earrings. [Fifth Application at 20]. The Harris Firm has no claim on the Earrings and has deliberately misstated the facts to this Court and the parties on such.

In this Fifth Opposition, the Defendant incorporates and reiterates his position that "if this Court is inclined to grant the Receiver's fees (which the Defendant vehemently opposes), the Court should apply a minimum of a 60% discount to the requested fees and withhold 100% of the amount" as Courts have discretion to award the amount of compensation that can or will be awarded to a court-appointed receiver. See *SEC v. Byers*, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008); *United States v. Code Prods. Corp.*, 362 F.2d 669, 673 (3d Cir. 1966).  For the Fifth Application, the Defendant states that there should be a 60% reduction in the requested fees (as opposed to the 50% or 70% reduction in the earlier Applications).

The Court should also hold any payment to the Receiver in abeyance until the final conclusion of this matter when all appeals have been heard (if the Court keeps the Receivership that long), as even the Receiver himself stated that "[O]verall results can be determined only at the conclusion of the Receivership Proceeding." [Doc. #1474 at 27]  This case does not justify the award of fees or expenses to the Receiver until any benefit that the Estate receives from him is determined.  So far, the Receiver has only incurred substantial losses to the Estate.

Courts have allowed the "Receiver [to] apply for those fees at the conclusion of this litigation. Withholding fees until the conclusion of the lawsuit assists the Court in achieving its continuing goal of preserving funds held in the receivership estate for the compensation of the investors. This approach is common in SEC civil enforcement actions because it allows the Court to withhold fees until it is absolutely clear that a receiver's efforts will ultimately benefit the receivership estate. See *SEC v. Byers*, 590 F. Supp. 2d at 648. The Court derives the authority to award such reduced fees from its power to "fix the compensation" of receivers and their attorneys. Drilling, 69 F.2d at 418." *SEC v. Small Bus. Capital Corp*. Case No. 5:12-CV03237 EJD, at *4 (N.D. Cal. Aug. 7, 2014).  As such, the Court should wait until the conclusion of all

appeals before any fees or expenses are awarded to the Receiver so that any net economic benefit

(if any) from the Receiver's actions can be determined and assessed.

## XIV.   THE FIFTH APPLICATION.

As in his First, Second, Third and Fourth Oppositions, the Defendant contests all of the

Receiver's bills in his Fifth Opposition, and has given examples of such in this Opposition. The

Defendant reserves the right to bring additional issues on these invoices and exhibits, or any

other matter regarding the Receiver's applications for fees and expenses, to the Court's attention

at a later date in time. The Defendant also includes his Opposition to all items in Doc. #1555-3

for reasons detailed in earlier Oppositions.

The Court must see to it that the Receiver's requested fees are reasonable. *See Code

Prods. Corp.*, 362 F.2d at 673 ("In allowing fees the considerations are the time, labor and skill

required, but not necessarily that actually expended, in the proper performance of the duties

imposed by the court upon the receivers, the fair value of such time, labor and skill measured by

conservative business standards, the degree of activity, integrity and dispatch with which the

work is conducted and the result obtained.").  A full (but expensive and unnecessary) audit of the

Receiver's timekeeping and records – which the Defendant is happy to do himself for the Court

should the Court request it – will likely reveal many such excessive and unnecessary invoicing

and unjustified expenses incurred by the Receiver.

The *pro se* Defendant consents to the payment of $11,252.50 as a final and full payment

to Mitofsky, Shapiro, Neville & Hazen, LLP ("MSNH") **from the rental proceeds of

Apartment 12F only**.

XV.    <u>**CONCLUSION.**</u>

This Court should not allow the payment of excessive and unjustified fees to the Receiver for the reasons stated herein.  This Court has also been clear that "it recognizes the parties' concerns regarding the potential cost of a receiver and shares their desire to avoid unnecessary or high receivership costs" [Doc. #1070 at 5].  As the Defendant continues to reiterate, courts have been very careful when granting attorney fee motions, especially those of a Receiver, who is supposed to be retained for the benefit of the public. As stated by a Circuit Court on excessive Receiver fees:

> "The $12,000 fee allowed appellee is more than the salary of a United States District Judge for an entire year. It is more than the salary of the most of the Governors or Judges of the Supreme Courts in the respective states of this country. In our judgment [sic] it is so exorbitant that its allowance must be held to be an abuse of the court's discretion. That there has grown up a judicial abuse in the allowance of excessive fees to masters, receivers, and attorneys in receivership cases cannot well be denied. The Supreme Court of the United States has called attention to this and sounded a note of caution and warning to the judges of the federal courts in the case of *In re Gilbert*, 276 U.S. 294, 296, 48 S. Ct. 309, 310, 72 L. Ed. 580, as follows: "We were desirous of making it clear by our action that the ***judges of the courts, in fixing allowances for services to court officers, should be most careful***, and that vicarious generosity in such a matter could receive no countenance." And in *Newton v. Consolidated Gas Co*., 259 U.S. 101, 42 S. Ct. 438, 439, 66 L. Ed. 844, in passing on the compensation of a master the Supreme Court points out that, ***"The rights of those who ultimately pay must be carefully protected.***" There seems to have developed an idea that lawyers are entitled to more compensation when employed in a receivership case than they would think of charging if employed by a private client for similar services. There is no reason for any difference in charges. Counsel should be allowed fair and reasonable compensation in receivership matters. There is no reason why they should be overpaid." (emphasis added).

> *Federal Oil Marketing Corporation v. Cravens*, 46 F.2d 938, 943 (8th Cir. 1931).

The same is absolutely true in this instant case. The Receiver has not shown that the fees and expenses he incurred from January 1, 2020 through March 31, 2020 were a productive use of the Estate's assets, or that they were cost-efficient and ultimately beneficial to the Estate.  If

anything, the Receiver has mismanaged the assets, causing a significant loss to the *overall* Estate (against his clear mandate) and has been reactive instead of proactive.  Given the Court's understanding and desire to "avoid unnecessary or high receivership costs" and the Receiver's mandate to "manage and maximize the value of frozen assets" [Doc. #1070 at 5] with the "dual objects of maximizing the value of the assets of the Receivership Estate and minimizing the expenses charged hereunder…" [Doc. #1070 at 7], **which he has not done**, the Court should deny the Receiver's Fifth Application.

WHEREFORE, the Defendant humbly requests the esteemed Court deny the Receiver's Fifth Application; or in the alternative, stay the request pending appeals or impose an additional 60% discount and a 100% holdback until the conclusion of all appeals in this case, and for any such fees to be paid from *within the judgment* by those parties that are benefiting from the appointment of Receiver and not the Defendant.

Respectfully Submitted,

Dated:        June 05TH, 2020        /s/ Iftikar Ahmed

_____
Iftikar A. Ahmed
C/O Advocate Anil Sharma
Government Place East
Kolkata 700 069, India

Tel:    +91-983-008-9945
e-mail: iftyahmed@icloud.com

*Pro Se*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and served by electronic mail to:

MR. NICHOLAS P. HEINKE, *ESQ.*
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1071
e-mail: heinken@sec.gov

MR. MARK L. WILLIAMS, *ESQ.*
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1027
e-mail: williamsml@sec.gov

MR. PAUL E. KNAG, *ESQ.*
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5400
Fax: (203) 653-5444
e-mail: pknag@murthalaw.com

MS. KRISTEN LUISE ZAEHRINGER, *ESQ.*
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5406
Fax: (860) 240-5758
e-mail: kzaehringer@murthalaw.com