UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br>    *Plaintiff*,<br>    *v.*<br>IFTIKAR AHMED,<br>    *Defendant*, and<br><br>IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents,<br><br>    *Relief Defendants*. | Civil No. 3:15cv675 (JBA)<br><br>July 10, 2020 |

**RULING GRANTING RELIEF DEFENDANTS' MOTION FOR FUNDS**

Relief Defendants request a release of funds to pay tuition for Mr. and Mrs. Ahmed's three minor children for the upcoming school year. (Mot. for Funds [Doc. # 1559].) The Receiver objects to Relief Defendants' request "[i]n the absence of . . . information and documentation" in support of that request. (Receiver's Resp. [Doc. # 1570] at 2.) The SEC opposes Relief Defendants' request. (SEC Opp. [Doc. # 1572].) The parties also request sealing of certain filings related to the request for tuition payment. (Mots. to Seal [Docs. # 1557, 1560, 1568, 1571, 1581, 1586].) For the reasons that follow, Relief Defendants' Motion for Funds is granted, and the motions to seal are granted in part.

    **I.**    **Background**

The Court assumes the parties' familiarity with the history of this case, including the freeze of the Ahmeds' assets. The assets which were frozen during the pendency of this case remain frozen as the Receivership Estate, effectively serving as Defendant's supersedeas

bond to secure the judgment while that judgment is stayed pending resolution of appeals by Defendant and Relief Defendants. (Am. Final J. [Doc. # 1054] at 9.)

The Court has occasionally released funds from the asset freeze for a variety of reasons, including attorneys' fees and living expenses for Mrs. Ahmed and the minor children, but has not regularly released funds to pay their tuition costs. Mrs. Ahmed represents that she "had been borrowing funds to pay the school tuition, but has come to the point where she is unable to do so any further." (Mot. for Funds at 2.) Relief Defendants also represent that "Ms. Ahmed's self-employment efforts have not yielded income yet" and offer to "provide details of her business efforts to the Court for in-camera review . . . should the Court request." (*Id.* at 2 n.1.)

Throughout this case, the Ahmeds' children have been "ke[pt] . . . in the same school for both emotional and psychological reasons as they have been at the same school for years, where they know the teachers and have lifelong friends, and which is a safe and secure place for them." (*Id.* at 1-2.) Tuition for the 2020-21 school year is "payable in two tranches by July 1 and by December 1." (*Id.* at 2.)

## II.   Discussion

### A.  Release of Funds

Relief Defendants argue that although "the exact amount of the judgment is disputed, it is clear that there are assets frozen in excess of the judgment amount," and thus it would be "entirely reasonable under the circumstances" for the Court to release funds from the asset freeze for the tuition payments. (*Id.* at 2-3.) Relief Defendants explain that "[t]his Court sits in equity," and that "equity would favor a release of funds" so that the Ahmed children "can continue to have some semblance of continuity and stability in their lives" after having otherwise "experienced significant and severe disruption in their personal lives" in recent years." (*Id.* at 3.) Relief Defendants also argue that although the Court has previously ruled that the assets of the Iftikar A. Ahmed Family Trust are available to satisfy the judgment in

this case, the tuition payments should be funded from the frozen assets of the Trust because that trust is for the benefit of the children, and "the Trustee . . . consents to the requested release." (*Id.* at 4.)

Receiver Jed Horwitt responds that Relief Defendants' motion "contains insufficient information upon which the Receiver can reach a conclusion as to his position on the relief requested," citing the lack of "details as to (a) who Ms. Ahmed has been borrowing from or (b) why Ms. Ahmed is unable to continue borrowing" and as to "the Relief Defendants' own financial condition and the alleged inability to pay the subject school fees." (Receiver's Resp. at 2.) He also notes that the motion "provides no documentation supporting" the requested amount. (*Id.*) Thus, the Receiver concludes, "[i]n the absence of such additional information and documentation, the Receiver has no choice but to object to the Motion for Funds." (*Id.*) The Receiver also reiterates his position that the exact value of the frozen assets, and thus the existence and amount of any excess frozen assets, cannot be precisely determined until those assets are liquidated. (*Id.* at 3.) Thus, should the Court grant the Relief Defendants' request, the Receiver "respectfully submits that – as the Court has done with prior distributions from the Receivership Estate – the Court should direct the Receiver to 'determine which assets of the Receivership Estate should be used to pay [the school fees]… and inform the Court and the parties of his determination.'" (*Id.* (quoting Ruling Granting Rel. Defs.' Emerg. Mot. for Appellate Atty. Fees [Doc. # 1287] at 4).)

As it has done with previous requests for the release of funds, the "SEC opposes Relief Defendants' request for the release of money before the SEC's judgment has been secured" and characterizes the motion as "yet another request to place others before Defendant's victims and to deplete the pot of frozen assets before the SEC's judgment is secured." (SEC Opp. at 1-2.) The SEC suggests that Relief Defendants have "insiste[d] that the asset freeze remain in place" and that Mrs. Ahmed has continually "refus[ed] to obtain income producing employment," and thus argues that Relief Defendants are not entitled to the release of funds.

3

(*Id.* at 5.) The SEC also argues that Mrs. Ahmed's representation that she had previously borrowed funds to pay the children's tuition is "inconsistent with – if not directly contrary to – sworn statements and representations made in the past" in this case regarding her lack of access to non-frozen funds because "there has never before been any disclosure that Ms. Ahmed had access to borrow significant sums of money." (*Id.* at 2.) However, the SEC does "acknowledge[] that requesting funds for schooling is, on its face, more compelling than many of the prior requests for funds in this case." (*Id.*)

In response to the concerns raised by the Receiver and the SEC, Relief Defendants have provided additional information in support of their motion.  Relief Defendants have provided an invoice from the children's school which indicates that the tuition owed for the 2020-21 school year totals $133,450.00. (Exhibit 1 (Invoice) [Doc. # 1585].) However, Relief Defendants have declined to indicate "*who*[m] Ms. Ahmed has borrowed funds from and *why* she cannot borrow further," arguing that such information is "not relevant to the request" for release of funds. (Reply to Receiver [Doc. # 1583] at 2 n.3.) But Relief Defendants do represent that Mrs. Ahmed has "asked" to borrow additional funds for the upcoming tuition payment and has "been denied" and now "has no one to borrow from and is entirely reliant on the Court." (*Id.*) As to Mrs. Ahmed's efforts to earn income, Relief Defendants explain that she "has sought employment in finance, which has been unsuccessful, particularly because of the publicity related to this matter," and thus has instead "transitioned" to "self-employment efforts to teach[] women how to invest in the stock market," but "[t]o date, there has been no income for the company." (*Id.* at 2.) And as to the SEC's concerns about prior misrepresentations, Relief Defendants respond that Mrs. Ahmed was previously "able to borrow funds solely and exclusively for the minor children's education and for no other purpose." (Reply to SEC [Doc. # 1584] at 2-3.)

The Court shares the SEC's concerns about the Relief Defendants' prior lack of disclosure regarding Mrs. Ahmed's access to borrowed funds, especially in light of her earlier

sworn statements regarding an inability to pay, submitted in support of various requests for release of funds. However, the SEC has not identified—and the Court has not found—any specific prior statement by Mrs. Ahmed that is wholly inconsistent with her admission regarding borrowing funds for tuition payments. For example, Mrs. Ahmed's sworn statement in support of her request for the release of funds to pay attorneys' fees represented that "no other individual will pay or lend funds *to pay my attorney's fees*," (Mrs. Ahmed Decl. [Doc. # 1304-2] ¶ 3 (emphasis added)), is not directly contradicted by her admission that she had previously been able to borrow money "solely and exclusively for the minor children's education and for no other purpose," (Reply to SEC at 2-3). However, in this situation, Relief Defendants have clearly and unequivocally represented that Mrs. Ahmed is unable to borrow or otherwise access any funds for the tuition payments and is "entirely reliant on the Court" for access to sufficient funds. Thus, although the Court harbors concerns about Relief Defendants' prior selective disclosure of information regarding Mrs. Ahmed's access to funds outside the corpus of frozen assets, those concerns do not preclude the relief sought in the current Motion for Funds.

Moreover, as even the SEC recognizes, the Relief Defendants' current request is of an especially compelling nature. Through no fault of their own, the Ahmeds' three minor children have undoubtedly experienced difficulty and unexpected changes throughout the pendency of this case. The Court recognizes that because of the ongoing asset freeze, without the requested release of funds for tuition payments, there will likely be no choice but for the children to change schools and thereby experience further disruption and confusion. Especially in light of the value of the body of frozen assets and the one-time nature of this request,[1] the relatively small amount sought for the tuition payments is unlikely to impact the security of the judgment in this case.

---

[1] The Court expects that, in light of the Supreme Court's recent decision in *Liu v. SEC*, 140 S. Ct. 1936, 1940 (2020), the liquidation of assets will soon proceed such that the judgment will be fully secured and residual assets, if any, will be unfrozen. Thus, the Court

Therefore, Relief Defendants' Motion for Funds [Docs. ## 1559, 1562] is GRANTED with the following modifications. The Receiver is hereby authorized to release $133,450.00 from the assets of the Receivership Estate in payment of the 2020-21 school year tuition fees for the Ahmed children. As with previous releases of funds from the asset freeze, the Receiver shall determine which assets should be used to make the tuition payment and shall inform the Court and the parties of his determination. The Receiver is directed to make tuition payments *directly* to the children's school, identified in the sealed Invoice [Doc. # 1585], on the school's preferred payment schedule. Relief Defendants shall take any steps necessary to facilitate the Receiver's payment directly to the school, including but not limited to establishing necessary channels of communication or providing information to the Receiver upon his request.

### B. Motions to Seal

The parties also request sealing of various filings associated with the Motion for Funds. Relief Defendants request that the unredacted version of the Memorandum of Law in support of their Motion for Funds be sealed, along with the unredacted version of the Motion to Seal itself. (Mots. to Seal Mot. for Funds [Docs. # 1557, 1560].) Relief Defendants argue that sealing is appropriate to prevent public disclosure of "Relief Defendants' personal, private financial affairs regarding financing the children's education and concerns about the Minor Children's schooling, social life, and mental well-being." (Mem. Supp. Mot. to Seal Mot. for Funds [Doc. # 1558] at 3.) For similar reasons, Relief Defendants move to seal their unredacted replies to the Receiver and the SEC, along with the unredacted version of the Motion to Seal itself. (Mots. to Seal Replies [Docs. ## 1581, 1586].)

The Receiver moves to seal his response to the Motion for Funds "in the event the Court . . . determines that all related filings should be sealed." (Receiver's Mot. to Seal [Doc.

---

expects that no similar request will be necessary for tuition payments for any future school years.

# 1568] at 1.) Similarly, the SEC moves to seal its response to the Motion for Funds "[i]n order not to reveal information Relief Defendants have requested to be sealed . . . until the Court has ruled on the Relief Defendants' Motion to Seal." (SEC Mot. to Seal [Doc. # 1571] at 1.)

The Receiver "takes no position with respect to" Relief Defendants' sealing requests but notes that he "cannot fully respond to the Relief Defendants' Motion for Funds . . . without reference to the facts and issues that the Relief Defendants maintain are private and should be exempt from public consumption." (Receiver's Mot. to Seal at 2.)

The SEC partially opposes Relief Defendants' sealing requests, arguing that "statements about Ms. Ahmed's access to funds that are inconsistent with – if not contrary to – previous representations" should not be sealed because "the right of the public to assess these representations" outweighs any privacy concerns. (SEC Opp. at 7-8.) However, as to "much of [Relief Defendants'] request" for sealing, the SEC "takes no position." (*Id.* at 7.)

As this Court has previously held, and as is provided by Local Rule 5(e)(3), documents may not be sealed merely on consent of the parties. The Court's Standing Protective Order [Doc. # 6] explains that documents filed with the Court are "public documents" which will be sealed not automatically but "only upon motion and in accordance with applicable law." Any order to seal issued by the Court must include "particularized findings demonstrating that sealing is supported by clear and compelling reasons and is narrowly tailored to support those reasons." D. Conn. L. Civ. R. 5(e)3. For a document to be properly sealed, the Court must determine the weight of the presumption of public access to that document and balance against it any competing considerations, such as the privacy interests of those resisting disclosure. *See United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) ("the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.").

The "privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation" between the presumption of access and a request to seal. *Amodeo*, 71 F.3d at 1050. Both "financial records" and "family affairs" are among those "privacy interests" which may support sealing of documents. *Id.* at 1051. But "the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.* at 1049. "[M]atters that directly affect an adjudication" carry a particularly heavy presumption of public access. *Id.* Therefore, "documents that the judge *should* have relied upon" and "those that actually entered into the judge's decision" in adjudicating the parties' motions carry a heavy presumption of public access. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 123 (2d Cir. 2006) (emphasis in original).

In assessing the asserted privacy interests, the Court notes that the Ahmeds' "personal, private financial affairs," and specifically Mrs. Ahmed's lack of access to funds, has been well-documented in unsealed filings throughout the pendency of this case. Nonetheless, the Court weighs heavily the interests of the Ahmeds' minor children, whose identities and privacy interests have been carefully protected.

Unfortunately, the Court's adjudication of Relief Defendants' Motion for Funds relies in large part upon consideration of the wellbeing of the minor children, and thus the Court concludes that it would be improper to broadly seal any mention of "concerns about the Minor Children's schooling, social life, and mental well-being," as Relief Defendants request. Without public access to the discussion of those topics, the parties' briefing and the Court's ruling would be severely lacking in reasoning or substance. Concerns about the children's wellbeing, the cost of their education, the method of prior tuition payments, and the Ahmeds' current inability to make those payments are essential to the consideration of the relief requested and to understanding of the Court's decision. Thus, the parties' broad motions to seal will be denied.

However, the Invoice submitted in support of the Motion for Funds identifies both the names of the minor children and the school that they attend. The Court concludes that the children's privacy interest in preventing public access to that information outweighs the presumption of public access, and thus that Invoice [Doc. # 1585] shall remain under seal.

### III.    Conclusion

For the foregoing reasons, Relief Defendants' Motion for Funds is GRANTED as modified, and the parties' Motions to Seal [Docs. ## 1557, 1560, 1568, 1571, 1581, 1586] are DENIED except as to the Invoice [Doc. # 1585], which shall be sealed.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 10th day of July 2020.