UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br>*Plaintiff*,<br>*v.*<br>IFTIKAR AHMED,<br>*Defendant*, and<br><br>IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents,<br><br>*Relief Defendants*. | Civil No. 3:15cv675 (JBA)<br><br><br>July 28, 2020 |

**RULING ON DEFENDANT'S MOTIONS REGARDING OAK ARBITRATION**

Defendant moves for "leave to file any arbitration and/or continue arbitration against Oak," (Mot. for Leave to Arb. [Doc. # 1225] at 1), for "a Court Order Staying the AAA [arbitration] action that Oak has brought against the Defendant, pending appeal of the ruling allowing that action to proceed," (Mot. to Stay Arb. [Doc. # 1323] at 1), and for the release of funds "to [r]etain legal counsel in the AAA matter with Oak," (Mot. for Fees [Doc. # 1371] at 1).

## I. Background

The Court assumes the parties' familiarity with the background of this case, including the ongoing asset freeze and the nature of the relationship between Defendant and the Oak entities (collectively, "Oak"). On December 20, 2018, Jed Horwitt, Esq. of Zeisler & Zeisler, P.C., was appointed to serve as receiver for the assets subject to the Court's ongoing asset

freeze order to "value the frozen assets and avoid over-freezing, to secure the judgment for the SEC, to manage and maximize the value of frozen assets under the guidance of a neutral third party, and to take necessary steps toward effectuating the judgment." (Order Appointing Rec. [Doc. # 1070] at 5.) In the Order Appointing the Receiver, the Court imposed a stay of "[a]ll civil legal proceedings of any nature, including . . . arbitration proceedings . . . to obtain possession of property of the Receivership Estate, wherever located . . . [or] against any of the Defendants, including any wholly-owned owned subsidiaries and partnerships in which a Defendant is a general partner" (the "Litigation Stay"). (*Id.* at 13.)

Oak previously moved to lift the litigation stay "for the limited purpose of commencing an arbitration against defendant Iftikar Ahmed to recover damages it suffered in connection with the very same fraudulent scheme that is the subject of this litigation." (Oak's Mot. to Lift Lit. Stay [Doc. # 1132] at 1.) In pursuing an arbitration against Defendant, Oak did "not seek to disturb the asset freeze or take priority over the SEC's claim to any of the frozen assets." (Oak's Mem. Supp. Mot. to Lift Lit. Stay [Doc. # 1133] at 4.)

The Court granted Oak's motion to lift the litigation stay, finding that "maintaining the stay as to Oak's desired arbitration is not necessary to preserve the status quo of the Receivership Estate" and recognizing the risk of irreparable injury to Oak if unable to timely pursue its claims against Defendant due to "the possible dissipation of assets if and when the Court releases [any residual] assets after the SEC's judgment has been secured." (Ruling on Mots. to Lift Lit. Stay [Doc. # 1167] at 12 (internal quotation omitted).)

## II. Discussion

### A. Motion for Leave to Arbitrate

#### a. Legal Standard

"[D]istrict courts may appoint receivers as part of their broad power to remedy violations of federal securities laws," and "[a]n anti-litigation injunction is simply one of the tools available to courts to help further the goals of the receivership." *S.E.C. v. Byers*, 609 F.3d

87, 92 (2d Cir. 2010). "The modification of a litigation stay is subject to a three-pronged test first articulated by the Ninth Circuit in *Wencke*," which "identified three factors for determining whether, in a receivership context, an injunction against litigation should be lifted," *S.E.C. v. Illaramendi*, No. 3:11CV78 (JBA), 2012 WL 234016, at *4 (D. Conn. Jan. 25, 2012):

> (1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim.

*S.E.C. v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984). "The first *Wencke* factor balances the interests of the Receiver in preserving the status quo against the interests of the moving party." *Illaramendi*, 2012 WL 234016, at *5. To satisfy the third factor, the movant need only have a "colorable claim that entitle[s] them to a trial on the merits," and courts should not attempt to "decide the merits" of the movant's claim when considering a motion to lift a litigation stay. *Wencke*, 742 F.2d at 1232. "The burden is on the movant to prove that the balance of the factors weighs in favor of lifting the stay." *Id.* at *4 (internal quotation omitted).

**b. Arbitration Outside of the Scope of the Litigation Stay**

Defendant moves "for leave to file any arbitration and/or continue arbitration against Oak that was stayed in June 2018, based on this Court's Preliminary Injunction Order."[1] (Mot. for Leave to Arb. at 1.) Defendant now seeks to "file a counterclaim" in the arbitration proceedings initiated by Oak against him and to resume "his earlier filed arbitration . . . against Oak." (*Id.*) Defendant's Motion for Leave to Arbitrate makes no additional arguments

[1] The Court's Preliminary Injunction Order, issued near the outset of this case, prohibited "any action to interfere with the asset freeze, including but not limited to, the filing of any lawsuit . . . to impact the property and assets subject to this order." (Prelim. Inj. Order [Doc. # 113] at 21.) "As a result," Defendant explains, he "agreed to Oak's request to a stay in the arbitration he had filed against Oak and various Oak related entities in May 2018." (Mot. for Leave to Arbitrate at 2.)

in support of his request. (*See generally id.* at 1-3.) On reply, while arguing in support of his motion for leave to arbitrate against Oak, Defendant argues rather perplexingly that "[i]t is beyond the jurisdiction of this Court as well as the mandate of the SEC to have to approve or authorize *any* litigation or arbitration that the Defendant seeks to bring against his former employers," Oak. (Def.'s Reply to SEC's Opp. to Mot. for Leave to Arb. [Doc. # 1245] at 1.)

Given Defendant's lack of specificity regarding the arbitration he seeks to pursue against Oak and his assertion that this Court lacks jurisdiction to "approve or authorize" such arbitration, it is unclear to the Court what precisely Defendant seeks leave to do. Moreover, the Litigation Stay prohibits proceedings *against* Defendant and certain other entities—not including Oak—but it does not prohibit proceedings *by* Defendant. Thus it is also unclear to the Court why Defendant believes that his arbitration against Oak is subject to the Litigation Stay.

On reply, Defendant suggests without explanation that any arbitration against Oak is covered by the Litigation Stay because it "falls under the category of '(c) against any of the Defendants… partnerships in which a Defendant is a general partner…' and '(d) … against any of the Defendants' past or present officers, directors, managers, members, agents, or general or limited partners….'" (Def.'s Reply to SEC's Opp. to Mot. for Leave to Arb. at 4-5.) But in the absence of any explanation or any indication that Defendant remains a "general partner" of any Oak entity against which he seeks to arbitrate, the Court sees no way in which these provisions bring any arbitration against Oak within the scope of the current Litigation Stay.[2]

---

[2] Defendant attempts to draw an analogy to the Motion to Intervene and Lift Litigation Stay by non-party NMR e-tailing, LLC ([Doc. # 1097]), which sought leave to continue litigation against Oak entities. (*See id.* at 4 ("The SEC completely misstates the Defendant's intentions. The Defendant is seeking to arbitrate against Oak, akin to NMR's request to litigate against 'OIP' (plus additional Oak related entities and persons).").) But NMR sought leave of this Court to continue that ancillary proceeding only "in an abundance of caution"

The SEC suggests that if Defendant needs leave from this Court to pursue his arbitration against Oak, then Defendant must be seeking "to obtain possession of property of the Receivership Estate," which the Litigation Stay prohibits. Otherwise, the SEC reasons, Defendant's arbitration against Oak would fall outside the scope of the Litigation Stay, and he would not need this Court's leave to pursue it. (*See* SEC Opp. [Doc. # 1243] at 2.)

Defendant is correct in noting that the Court need not "approve or authorize" proceedings "against [Defendant's] former employers," *unless* those proceedings are otherwise covered by the terms of the Litigation Stay. Upon reviewing the provisions of the Litigation Stay, the Court agrees that if Defendant does not seek "to obtain possession of property of the Receivership Estate," then his arbitration against Oak is not prohibited by the Litigation Stay, and he need not seek this Court's leave to pursue it. Therefore, to the extent Defendant seeks leave to pursue arbitration against Oak which is not prohibited by the Litigation Stay, his Motion for Leave to Arbitrate is DENIED as moot.

**c. Arbitration Within the Scope of the Litigation Stay**

To the extent Defendant seeks leave to pursue arbitration against Oak which *is* prohibited by the Litigation Stay, the Court will consider whether lifting the Stay to permit such arbitration is proper.

Receiver Jed Horwitt objects to Defendant's request because "the Motion provides no details as to the nature of the Defendant's claims against Oak or any representation that such claims do not concern, or will not ultimately impact, any Receivership Assets or the Receivership Estate generally." (Receiver's Resp. to Mot. for Leave to Arb. [Doc. # 1240] at 2.) The Receiver explains that his counsel "requested copies of the Defendant's arbitration complaint and counterclaim from the Defendant" and "agreed to keep the requested documents confidential," but nonetheless "the Defendant declined to provide the same to the

---

and out of concern that Defendant was a party to that proceeding. (NMR's Mot. to Lift Lit. Stay at 1-2.) Thus, Defendant's analogy fails.

Receiver." (*Id.*) Thus, "[w]ithout being able to understand the nature of the Defendant's complaint and counterclaim to determine what impact, if any, the same may have on any specific Receivership Asset or on the Receivership Estate as a whole, . . . the Receiver has no choice but to object to the Motion." (*Id.* at 2-3.) The Receiver concludes that, in his view, this lack of notice as to the relief sought is a key difference between Defendant's motion and previously granted motions to lift the litigation stay, wherein the parties seeking permission to litigate assured the Court that they did not seek to disturb any assets of the Receivership Estate or jeopardize the judgment in this case. (*See id*. at 3.)

The SEC similarly opposes Defendant's motion "[o]n the current record," because "Defendant does not provide any assurance that the arbitration in which he intends to engage will not seek assets of the Receivership Estate or impact the performance of the Receiver's duties." (SEC Opp. at 1, 3.) The SEC also argues that "[g]ranting the Motion would give Defendant free rein to engage in improper litigation, such as seeking to re-litigate issues already decided by this Court or to obtain assets frozen by this Court." (*Id.* at 2.)

Non-party Oak also opposes Defendant's motion to arbitrate against it. (Oak Opp. [Doc. # 1241].) Oak argues that Defendant "provides no justification whatsoever in his motion papers for lifting the stay of litigation," "[n]or does Mr. Ahmed provide any detail concerning the claims and counterclaims he plans to pursue or concerning the remedies he seeks in the arbitration." (*Id.* at 2.) Oak posits that Defendant plans to "re-litigate certain issues that he has already litigated and lost in this action" and attempts "to gain direct possession and control of assets that, if he were to prevail in the arbitrations, are subject to the asset freeze order entered by this Court." (*Id.*) Oak explains that the arbitration Defendant seeks to pursue would "clearly violate[] the express terms of the asset freeze order entered by this Court," which "expressly directed anyone in possession or control of any funds or other assets belonging to Mr. Ahmed to 'hold and retain within their control and

prohibit the withdrawal, removal, transfer or other disposal of any such funds or other assets.'" (*Id.* at 3 (quoting Prelim. Inj. Order at 20-21).)[3]

Defendant responds that he "is perplexed why the SEC believes that the Defendant would bring a claim against his own assets under the Receiver" and "does not even understand the SEC's rather inane and strange statement" that he is "presumably seeking to engage in arbitration to obtain possession of the property of the Receivership Estate." (*Id.* at 2, 4 (internal quotations omitted).) Separately, Defendant argues that because Oak was granted leave to arbitrate against Defendant, "the only equitable result here" is to grant him leave to arbitrate against Oak. (Def.'s Reply to Oak's Opp. to Mot. for Leave to Arb. [Doc. # 1247] at 2.)

But the Court shares the parties' concerns about the nature of the arbitration Defendant intends to pursue, especially in light of his contention that he "does not need to

[3] In opposing Defendant's Motion for Leave to Arbitrate, Oak moves to seal portions of certain supporting exhibits, including a copy of Defendant's arbitration complaint, a copy of Defendant's answer and counterclaims in Oak's arbitration against him, as well as any references to the contents of those documents. (Oak's Mot. to Seal [Doc. # 1242].) Oak explains that the pleadings in those proceedings "have been designated as 'Confidential'" and that "the parties and the participating arbitrators" have deemed the information they contain "to be highly sensitive and confidential in nature." (*Id.* at 2.) No party filed any objection to Oak's Motion to Seal.

Beyond the documents' designation as confidential in the arbitration proceedings, Oak has not made any arguments in support of its request for sealing which might overcome the presumption of public access to documents filed in a federal proceeding. But the "mere existence of a confidentiality agreement, however, does not demonstrate that sealing is necessary," *Church Ins. Co. v. Ace Prop. & Cas. Ins. Co.*, 2010 WL 3958791, at *3 (S.D.N.Y. Sep. 23, 2010) (internal quotation omitted), and district courts "have consistently refused to seal the record" of arbitration proceedings, "notwithstanding the existence of" any agreement regarding confidentiality, *Aioi Nissay Dowa Ins. Co. Ltd. v. ProSight Specialty Management Co., Inc.,* 2012 WL 3583176, at *6 (S.D.N.Y. Aug. 21, 2012).

In the absence of any specific argument regarding the need for sealing beyond the confidentiality of these documents in related arbitration proceedings, the Court cannot conclude that any privacy interests at stake outweigh the public's interest in access to court proceedings, and thus Oak's Motion to Seal [Doc. # 1242] is DENIED. Oak shall file unredacted versions of Docs. No. 1241, 1241-1, and 1241-2.

give any assurance about the impact of the arbitration against the Receivership Assets because (1) Defendant is *pro se* and cannot give legal assurances and (2) these assets *already belong to the Defendant*" and in light of his continued arguments regarding whether "Oak has already seized and held onto many tens of millions of dollars of the Defendant's legally earned assets." (*Id.* at 2-3.)

Moreover, Defendant's refusal to provide details or assurances about the nature of the intended arbitration proceedings largely prevents the Court from thoroughly and appropriately analyzing his request using the applicable *Wencke* factors. But insofar as the Court is able to apply these factors, they weigh against lifting the stay. As to the first *Wencke* factor, in the absence of any assurance that Defendant does not seek to disturb the Receivership Estate, the Court concludes that "refusing to lift the stay genuinely preserves the status quo." *Wencke*, 742 F.2d at 1231. And as to the third factor, the Court cannot reach any conclusions about "the merit of" any "underlying claim" that is currently prohibited by the Litigation Stay, in the absence of any details about that claim. Thus, to the extent that the arbitration which Defendant seeks to pursue against Oak is "to obtain possession of property of the Receivership Estate, wherever located" or is otherwise governed by the terms of the Litigation Stay, Defendant's Motion for Leave to Arbitrate [Doc. # 1225] is DENIED for failure to demonstrate good cause why the Litigation Stay should be lifted.

**B. Motion to Stay Arbitration**

Defendant moves "for a Court Order staying the [American Arbitration Association] Action that Oak has brought against the Defendant, pending appeal of the ruling allowing that action to proceed now pending with the Second Circuit Court of Appeals." (Mot. to Stay Arb. at 1.)[4] Defendant argues that because he has appealed this Court's ruling, which lifted the Litigation Stay to permit Oak to proceed with that arbitration, "jurisdiction, therefore,

[4] Relief Defendants join Defendant's request to stay Oak's arbitration action. (Rel. Defs.' Resp. to Mot. to Stay Arbitration [Doc. # 1345].)

has now shifted to the Second Circuit Court of Appeals and no further action can be taken until the appellate courts have considered the merits of allowing Oak to arbitrate against the Defendant." (*Id.* at 3.) Defendant explains that "[a]llowing the arbitration to proceed while the issue is under appellate jurisdiction does not maintain the *status quo*" and would thus be inappropriate because "[d]istrict courts only have the power to grant such relief as may be necessary to preserve the *status quo* pending an appeal." (*Id.* at 3.) "As such," Defendant concludes, "the arbitration cannot proceed and a stay of proceedings is appropriate while an appeal of the order allowing arbitration is pending because proceeding with arbitration interferes with the appellate court's jurisdiction to reserve, modify or affirm the ruling allowing arbitration to proceed." (*Id.*) In doing so, Defendant appears to characterize the relief requested as declaratory in nature, suggesting that the arbitration should automatically be "stayed until the appellate courts issue a ruling on that appeal," and thus the Court should "simply stat[e] such," because Defendant "needs a Court Order stating that the AAA action is stayed" to provide to the arbitrator. (Mot. to Stay Arb. at 2 n.1.)

The SEC responds that "as outlined in Defendant's own Motion, this Court is likely without jurisdiction to grant Defendant's requested relief" because jurisdiction over this issue has shifted to the Second Circuit. (SEC Opp. to Mot. to Stay Arb. [Doc. # 1365] at 1.) The SEC also argues that the relief Defendant seeks is improper under Federal Rule of Civil Procedure 62.[5]

Rule 62(c) provides that "an interlocutory or final judgment in an action for an injunction or receivership" is not automatically stayed "even if an appeal is taken" "[u]nless the court orders otherwise." Rule 62(d) further provides:

---

[5] The Receiver takes no position as to the motion to stay because he "has concluded that the relief requested would not adversely impact the Receiver's ability to fulfill his primary obligation in this receivership—to fully secure the Required Amount through the liquidation of Receivership Assets—or to execute in any other regard his duties pursuant to the Appointment Order." (Receiver's Resp. to Mot. to Stay Arbitration [Doc. # 1359] at 2.)

> *Injunction Pending Appeal.* When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.

Rule 62(d) "has been narrowly interpreted to allow district courts to grant only such relief as may be necessary to preserve the status quo pending an appeal where the consent of the court of appeals has not been obtained." *Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Eastern Air Lines, Inc.*, 847 F.2d 1014, 1018 (2d Cir. 1988); *see also Ideal Toy Corp. v. Sayco Doll Corp.*, 302 F.2d 623, 625 (2d Cir. 1962) ("[S]ound judicial administration demands that unless the judge is satisfied that his order was erroneous he shall use his power under Rule 62(c) only to preserve the status of the case as it sits before the court of appeals.").

Under Rule 62, there are four factors that "regulat[e] the issuance of a stay" of a district court's order pending appeal of that order: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *accord Hirschfield v. Bd. of Elections in City of N.Y.*, 984 F.2d 35, 39 (2d Cir. 1993). "Although the weighing of these factors is flexible and within the Court's discretion, the movant's burden of establishing a favorable balance of these factors is a heavy one and more commonly stay requests will be denied." *Optimum Shipping & Trading, S.A. v. Prestige Marine Servs. Pte. Ltd*, 613 F. Supp. 2d 502, 503 (S.D.N.Y. 2009).

The parties dispute precisely what the "status quo pending an appeal" is in this situation. The SEC argues that because the Court "explicitly lifted . . . the litigation stay against Defendant thereby allowing Oak to pursue an arbitration, . . . the status quo is that the arbitration can proceed." (SEC Opp. to Mot. to Stay Arb. at 3.) Thus, the SEC argues, "Defendant's Motion does not seek to preserve this status quo, but rather does the opposite by improperly seeking a new order from the Court that would prevent Oak from pursuing

the arbitration while this issue is on appeal." (*Id.*) Oak agrees, arguing that "the status quo as of the date of Mr. Ahmed's appeal (challenging the Court's Order) expressly empowered Oak to proceed with its arbitration." (Oak Opp. to Mot. to Stay Arb. [Doc. # 1364] at 3.) In contrast, Defendant maintains that the "meaning of 'status quo' is to 'preserve the controversy,'" and thus that "the *status quo* is not allowing the AAA action to proceed, but rather, is interim injunctive relief (i.e. stay pending appeal)." (Reply to SEC Opp. to Mot. to Stay Arb. [Doc. # 1381] at 4.)

The Court need not resolve this dispute regarding the status quo because Defendant has otherwise failed to meet his burden of showing that the four factors which the Court must consider weigh in his favor.[6] First, Defendant's Motion to Stay makes no argument whatsoever as to his likelihood of success on the merits of his appeal, and the Court is not otherwise persuaded that Defendant has a "substantial possibility . . . of success on appeal." On reply, Defendant argues that he "has made a strong showing on the merits of granting a stay of the AAA proceeding" because a stay would "preserve the *status quo*." (Reply to Oak's Opp. to Mot. to Stay Arb. at 4, 6). However, he has failed to address the likelihood of success *of his appeal*.

[6] In lieu of the necessary legal arguments in support of his motion, Defendant generally rests on his assertion—contrary to the clear statement in Rule 62(c) that the filing of an appeal does not automatically justify a stay of the order appealed from—that "there is an appeal pending and . . . the arbitration is stayed until the appellate courts issue a ruling on that appeal." (Mot. to Stay Arb. at 3-4.) He also notes that he "is *pro se*" and asks that "[i]f the Defendant needs to adhere to a legal standard, he requests that the Court give him an opportunity to refile his Motion adhering to those standards." (Mot. to Stay Arb. at 2 n.1.)

The Court doubts whether Defendant's request, under these circumstances, falls within the scope of the leeway typically afforded to *pro se* parties. Regardless, in their oppositions to Defendant's motion, the SEC and Oak plainly identified and argued the governing standards for a motion to stay, providing Defendant ample opportunity to respond to those standards. On reply, Defendant maintained that he "believes that the fact that the 'controversy must be preserved' for appellate review is enough of a reason" for the Court to grant the requested stay, but he nonetheless endeavored to "respond[] to Oak's listing of four factors." (Reply to Oak's Opp. to Mot. to Stay Arb.[Doc. # 1382] at 4.)

Second, Defendant argues that he will be irreparably injured in the absence of a stay because "the continuation of [the arbitration] effectively renders Defendant's appeal moot" and because he "is *pro se*, does not know arbitration law and is irreparably injured without the aid of an attorney in this matter." (*Id.* at 6.) But the only risk of injury Defendant faces in the arbitration proceeding is financial; Oak plainly indicated in its Motion to Lift the Litigation Stay that in the subject arbitration, it "seeks compensatory damages in an amount not less than $20 million, plus interest; consequential damages in an amount not less than $15 million, plus interest; punitive damages in the amount to be determined at the arbitration hearing and such other relief as the arbitrator deems just and equitable." (Mem. Supp. Oak Mot. to Lift Lit. Stay [Doc. # 1133] at 3.) And "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough" to show irreparable harm. *Sampson v. Murray*, 514 U.S. 61 (1974). Defendant offers no explanation of why any such damages, if awarded, might be the type of "expenditures" which "cannot be recouped" and thus produce an "irreparable" "resulting loss." *Philip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1304 (2010). Thus the Court concludes that Defendant has not made a showing of irreparable harm, "which is always a central inquiry in assessing any motion for injunctive relief." *Optimum Shipping & Trading, S.A.*, 613 F. Supp. at 503.

Third, Defendant argues that "Oak is not harmed by stay of the AAA proceedings, pending appeal" because "[t]he assets are frozen" and "[t]herefore, there is no risk of any dissipation of the assets." (Reply to Oak's Opp. to Mot. to Stay Arb. at 7.) But the Court concluded in its ruling lifting the litigation stay that "[g]iven the possible dissipation of assets if and when the Court releases assets after the SEC's judgment has been secured, Oak would likely suffer injury if" forced to wait until the conclusion of this litigation (and thus the release of frozen assets) to commence its arbitration. (Ruling on Mots. to Lift Lit. Stay at 13.) In the absence of any new argument to the contrary, the Court concludes for the same reasons that issuance of the stay Defendant seeks would likely substantially injure Oak.

Fourth, Defendant argues that "public interest lies in seeing that litigants have their constitutional and due process rights to an appeal be preserved and heard in its entirety and not mooted." (Reply to Oak's Opp. to Mot. to Stay Arb. at 8.) Oak argues that "there is nothing in the record to suggest that the public interest cuts in favor of issuing a stay." (Oak. Opp. to Mot. to Stay Arb. at 6.) This factor does not weigh heavily in either party's favor.

In weighing these factors, the Court concludes that Defendant has not met his heavy burden to demonstrate that a stay of the Court's ruling lifting the litigation stay to permit Oak to proceed with its arbitration is warranted. Defendant's Motion to Stay Arbitration [Doc. # 1323] is DENIED.[7]

**C. Motion for Fees for Arbitration**

Defendant moves for the release of funds to retain legal counsel to defend himself in Oak's arbitration against him. (Mot. for Fees for Arb. Counsel [Doc. # 1371].) He argues that "there are tens of millions of dollars of assets frozen above the judgment amount" and thus that "both law and equity favor a release of funds for Defendant to retain counsel" in the arbitration. (*Id.* at 2.) Thus, he "is seeking a release of $350,000 . . . so that Defendant can be represented in the AAA matter with Oak," "[w]ith the right to request more if needed." (*Id.* at 3.) Defendant's motion provides no additional information, much less documentation, about his inability to pay counsel absent a release of funds from the asset freeze, the identity of any counsel he intends to hire, the source of his apparent belief that acquiring counsel in the arbitration will cost $350,000, or any other supporting information.

The Receiver "objects to the release of such funds for two reasons": first, because "utilizing Receivership Assets to retain and pay for counsel to represent the Defendant's interests in the Arbitration does not advance any interest of the Receivership Estate," and

[7] Defendant filed a notice in further support of his Motion to Stay Arbitration, which details a variety of objections to the arbitrator's decisions. (Not. Supp. Mot. to Stay Arb. [Doc. # 1601].) But this Court is not the proper venue for Defendant to raise such objections, and the Court does not consider those objections in reaching its decision here.

second, because "the aggregate value of the distributions requested by the Defendant and Relief Defendants for attorneys' fees causes the Receiver some concern given the Receivership Estate's continued exposure to market risk." (Receiver's Opp. to Mot. for Fees for Arb. Counsel [Doc. # 1398] at 2.)

The SEC also opposes Defendant's request, arguing that the Court "should decline to release assets that Defendant (and Relief Defendants) previously pledged as a *supersedeas* bond," because "it is Defendant who specifically asked for the asset freeze to remain in place since judgment was entered." (SEC Opp. to Mot. for Fees for Arb. Counsel [Doc. # 1399] at 1-2.) The SEC argues that the Court should "reject the instant request until the SEC's judgment has been satisfied" to ensure that the security of that judgment is not jeopardized by the release of funds from the asset freeze. (*Id.*) Separately, the SEC argues that "Defendant has not shown that he depends on the release of funds to hire counsel," and that even if he were to offer such assurances, "neither the SEC nor the Court has any way to sufficiently verify that the Defendant depends on the release of funds to hire counsel, since the Defendant has fled the jurisdiction and remains a fugitive," and thus "the Court would have no ability to enforce such an order or sanction the Defendant for violating it." (*Id.* at 3.) It also argues that it "is clear that the Defendant has funded his lifestyle in some manner unbeknownst to the SEC or this Court" for the several years he has lived in India since fleeing the United States. (*Id.*) Finally, the SEC argues that Defendant's request should be denied because it is "vague and excessive" in the absence of information about the identity of his counsel or "evidence that he cannot find qualified counsel for less than the $350,000 he requests." (*Id.* at 4.)

On reply, Defendant reiterates his argument that "there are tens of millions of dollars of assets over-securing the SEC's judgment" and thus that assets should be released for his arbitration counsel. (Reply to SEC's Opp. to Mot. for Fees for Arb. Counsel [Doc. # 1400] at 2.) Defendant states that "attorneys are expensive and the Defendant cannot afford any counsel without the release of his own funds to retain such counsel" because he is "indigent

as a result of the asset freeze ordered by this Court." (*Id.* at 4.) He claims that he "is a cancer patient in need of medical treatment," "is unable to get employment as he is stateless and without any legal papers held in India," and that he "is now in a precarious situation where he needs living expenses just to survive" because he "has been sleeping on various friends' couches, yet such generosity is also limited and imminently going to end." (*Id.*) Defendant also argues that he is "not confined by his choice" in India and that it is the fault of the SEC that he is "still . . . stuck in India." (*Id.*) Defendant also notes that he "has already submitted multiple affidavits that he does not have any funds to hire counsel." (*Id.* at 6.)

The Court has previously established certain requirements for Defendant's requests for release of funds from the asset freeze, and it sees no reason to deviate from those requirements as to this request. Specifically, the Court has repeatedly denied Defendant's requests for release of funds which lack any explanation for the amount requested and which fail to provide the identity of the individual or entity who will receive payment. (*See, e.g.,* Ruling Denying without Prejudice Mot. for Release of Funds for Cancer Treatment [Doc. # 1018] (denying request for release of funds for Defendant's medical treatment in the absence of documentation regarding the identity of the physician, the facility to which payment should be sent, and the anticipated fees); Ruling Denying without Prejudice Mot. for Release of Funds for Med. Treatment [Doc. # 1257] (rejecting argument that Defendant need not provide supporting documentation for his request because of "excess assets that remain frozen" and instead requiring "at least the name and address of the physician," "the location/facility to which payment is to be sent," "documentation of [Defendant's] inability to indicate the exact amount of fees to be assessed," and "the basis for his representation" regarding the necessary amount of funds); Ruling Granting Defendant's Mot. for App. Fees [Doc. # 1405] (granting with modification Defendant's vague motion for appellate fees and requiring Defendant to submit to the Court, prior to the release of any funds, identification

of the counsel to be hired, invoices from counsel, and documentation of Defendant's inability to pay counsel absent release of frozen funds).)

In the absence of any such documentation in support of the amount of his request beyond the notation that "attorneys are expensive," and in the absence of any information regarding the intended recipient of these funds, Defendant's Motion for Fees for Arbitration Counsel [Doc. # 1371] is DENIED without prejudice to renew. Any renewed motion shall include at least documentation of Defendant's inability to retain counsel without a release of funds from the Receivership Estate, the identity of the counsel Defendant intends to retain, and an estimate by that counsel of the cost of representing Defendant in the Oak arbitration.

## III. Conclusion

For the reasons set forth above, Defendant's Motion for Leave to Arbitrate [Doc. # 1225] is MOOT to the extent that he seeks leave to pursue arbitration which is not prohibited by the Litigation Stay and is DENIED to the extent that he seeks leave to pursue arbitration against Oak which is prohibited by the Litigation Stay. Defendant's Motion to Stay Arbitration [Doc. # 1323] is DENIED. Defendant's Motion for Fees for Arbitration Counsel [Doc. # 1371] is DENIED without prejudice to renew.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 28th day of July, 2020.