UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, *Plaintiff*, v. IFTIKAR AHMED, *Defendant*, and IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents, *Relief Defendants*. | Civil No. 3:15cv675 (JBA) December 14, 2020 |

**RULING GRANTING RECEIVER'S MOTIONS FOR FEES**

Receiver Jed Horwitt moves for the payment of fees and expenses incurred on behalf of the Receivership Estate. (Mots. for Fees [Docs. ## 1474, 1555, 1629].) Defendant opposes, (Def.'s Opps. [Docs. ## 1508, 1563, 1641]), and Relief Defendants join that opposition, (Rel. Defs.' Opps. [Docs. # 1511, 1565, 1629].) Plaintiff Securities and Exchange Commission ("SEC") submitted no briefing on the issue. For the reasons that follow, the Receiver's Motions for Fees are granted.

**I.      Background**

The Court assumes the parties' familiarity with the facts and history of this case, but will briefly review the background relevant to this motion. Receiver Jed Horwitt was appointed on December 20, 2018. (Appointment Order [Doc # 1070].) The Appointment

Order stated that the Receiver and persons retained to assist in his administration of the Receivership Estate are "entitled to reasonable compensation and expense reimbursement from the Receivership Estate," subject to "prior approval of the Court" and according to predetermined hourly billing rates. (*Id.* at 16.) The Receiver "shall apply to the Court for compensation and expense reimbursement from the Receivership Estate" within forty-five days after the end of each calendar quarter. (*Id.*) All such fee applications are "interim" and "subject to cost/benefit and final reviews at the close of the receivership." (*Id.*) The "Quarterly Fee Applications are subject to a holdback in the amount of 20% of the amount of fees and expenses for each application," but the "total amounts held back during the course of the receivership may be paid out at the discretion of the Court as part of the final fee application. (*Id.* at 15-16.) The Appointment Order set out certain requirements for the content of each application fee. (*Id.* at 17.)

## II.    Discussion

The Receiver moves for the payment of fees for the following periods: (1) October 1, 2019, through December 31, 2019, (Fourth Mot. for Fees [Doc. # 1474]); (2) January 1, 2020, through March 31, 2020, (Fifth Mot. for Fees [Doc. # 1555]); and (3) April 1, 2020, through June 30, 2020 (Sixth Mot. for Fees [Doc. # 1629]). The Fourth Motion represents 194.30 hours worked by the Receiver and Zeisler & Zeisler ("Z&Z") and seeks payment in the amount of $46,167.60 in professional and paraprofessional fees and $1,126 in expenses. It also represents 22.20 hours worked by Mitofsky, Shapiro, Neville & Hazen, LLP ("MSNH") and seeks the amount of $8,143.00 in professional and paraprofessional fees. The Fifth Motion represents 293.20 hours worked by the Receiver and Z&Z and seeks payment in the amount of $71,706.05 in professional and paraprofessional fees and $1,159.01 in expenses. It also represents 32.15 hours worked by MSNH and seeks the amount of $11,252.50 in professional and paraprofessional fees. The Sixth Application represents 232.20 hours worked by the Receiver and Z&Z and seeks payment in the amount of $46,249.80 in

professional and paraprofessional fees, $5,775.00 in Receiver fees, and $946.64 in expenses.

The "fees assessed reflect the hours worked by Receiver, . . . Z&Z attorneys and paraprofessionals, and MSNH attorneys and paraprofessionals, and the hourly rates applicable at the time that they rendered their services, as modified by the significant discounts provided by the Receiver and Z&Z" for this matter. (Fourth Mot. at 3.)[1] The Receiver represents that the fee applications

> take into account all relevant circumstances and factors as set forth in the Connecticut Rules of Professional Conduct and the SEC Guidelines, including the nature of the services performed, the amount of time spent, the experience and ability of the professionals and paraprofessionals working on this engagement, the novelty and complexity of the specific issues involved, the time limitations imposed by the circumstances, and the responsibilities undertaken by the Receiver and Z&Z under the Appointment Order.

(*Id.*) The applications include narrative descriptions of the services provided via attached time records and summaries of the Receiver's administration of the Receivership Estate. (*Id.*) The Receiver does not seek "reimbursement for secretarial, word processing, proofreading or document preparation expenses (other than by professionals or paraprofessionals), data processing and other staff services (exclusive of paraprofessional services, or clerical overtime." (*Id.* at 4.) The fee applications reflect the substantial public service discounts determined at the time of the Receiver's appointment, including a twenty-five percent discount to regularly applicable hourly rates for all legal professionals. (*Id.*) Pursuant to the SEC Guidelines, the Receiver and Z&Z categorized fees incurred by certain "activity categories." (*Id.* at 6-7.) The Receiver provided a detailed description of the activities of the Receivership Estate during each billing period. (*Id.* at 13-25; Fifth Mot. for Fees at 13-20; Sixth Mot. for Fees at 12-17.)

Defendant repeats many of the same arguments raised in his objections to the first three Motions for Receiver Fees. (Def.'s Opp. to Fifth Mot. at 1 ("The Court must deny the

---

[1] Where the Receiver's motions contain significant overlap in content, the Court cites only to the Fourth Motion for Fees.

Sixth Application for the same reasons as the Defendant outlined in his First, Second, Third Fourth and Fifth Oppositions to Receiver's First, Second, Third, Fourth and Fifth Fee Applications Respectively.").) The Court has already addressed and rejected the arguments raised in Defendant's First, Second, and Third Oppositions. (*See* Ruling Granting Receiver's Mots. for Fees [Doc. # 1415].) Such an attempt by Defendant to relitigate previously decided issues is considered an improper motion for reconsideration that the Court will deny. *See* Local Rule 7(c) (permitting motions for reconsideration where "the movant can point to controlling decisions or data that the court overlooked in the initial decision or order" and when the motion is filed "within seven days of the filing of the decision or order from which relief is sought"). Accordingly, the Court will not consider the following objections raised by Defendant: (1) any general objections to the receivership,[2] (*see* Ruling Granting Receiver's Mots. For Fees at 4-5); (2) any general objections that the fees charged by the Receiver, despite an hourly rate reduction and holdback, are "excessive, unreasonable, and not justified,"[3] (*see id.* at 5-6); (3) categorical objections to reimbursement of Receiver fees, including PACER expenses, online research expenses, Federal Express expenses, copying expenses, service fees, subpoena fees, copying expenses, and conference call expenses, (*see id.* at 6-8); and (4) objections to the Receivership Estate paying Receiver's fees. The Court further emphasizes that Defendant's attempts to improperly relitigate issues cause the needless accrual of additional Receiver fees and add further delay to the resolution of this case.

### A. Defendant's Opposition to the Fourth Interim Motion

In addition to incorporating the arguments from his prior objections to the Receiver's fee applications which the Court has already addressed, Defendant objects to several specific

---

[2] These general objections include objections: "to the disposition of this case, the continued existence of the asset freeze and the receivership, and the continued appointment of Mr. Horwitt as Receiver." (Order Granting Fees at 4.)

[3] The Court does consider specific objections to time entries, which it addresses *infra*.

line items from the Receiver's Fourth Motion as examples "to support his opposition to the payment of *any* fees or expenses to the Receiver." (Def.'s Fourth Obj. at 16 (emphasis added).) Defendant maintains that his status as a *pro se* litigant leaves him "uncertain of the proper procedure regarding line items" and thus "only gives some examples" of improper or otherwise excessive charges. (*Id.* at 16-17.)

As one example of improper billing, Defendant points to "a total of nearly 40 hours" billed related to the eviction of the illegal tenant in Apartment 12F. (*Id.* at 4.) Defendant maintains that the Receiver knew about the illegal tenant and allowed him to stay past the expiration of his lease, resulting in over $16,000 fees that Defendant characterizes as "unnecessary" and "wasted resources." (*Id.* at 20-21.) The Receiver views this objection as "unfounded" in light of the fact that the "[R]eceiver had no way of knowing that the Occupants would holdover at the end of the lease term. (Fourth Reply [Doc. # 1523] at 5.) The Receiver further argues that, even if he had been able to anticipate the holdover tenancy situation, "it would still have been necessary for the Receivership Estate to incur the expense associated with dealing with the same." (*Id.* at 6.) The Court finds no basis for concluding that the Receiver acted unreasonably in evicting the tenant at Apartment 12F and therefore finds that billing related to the eviction is not excessive billing or unnecessary work.

Defendant also argues that "the Receiver continues to spend an unnecessary number of hours on tax issues," noting that the Receiver billed over $2,400 on tax issues despite concluding that he does not need to file separate tax returns for Defendant or Relief Defendants related to the Receivership Estate. (Def.'s Fourth Obj. at 23). The Receiver explains that these expenses were necessary when he found discrepancies in the "tax return provided to the Receiver and the tax return as reflected by the Massachusetts Department of Revenue." (Fourth Reply at 6.) Moreover, he argues that he has a continuing duty to "confirm the absence of any tax liability for the Receivership Estate." (*Id.*) The Court finds that the Receiver's review of the Receivership Estate tax status and liability is entirely appropriate

and consistent with his duties as a receiver.

Defendant also objects to "double billing" where two attorneys' work on one issue is billed. Defendant argues that there was no clear need for two attorneys with respect to three time entries and that the Court should thus reduce compensation to the Receiver "by at least 50% if not more." (Def.'s Fourth Obj. at 18-20.) The Receiver responds that although the Receiver rarely double bills, there were several instances when billing multiple professionals was appropriate due to "the complexity of the issues presented and the benefit conferred upon the Receivership Estate." (Fourth Reply at 10.) He maintains that "[m]ultiple attorneys working together necessarily occurs in all complex proceedings as a matter of practicality, legality, and ethics[, and that s]uch does not render the services provided unreasonable or unnecessary." (*Id.*) Given the Receiver's explanations, the Court does not find these billings to constitute duplicative billing or unnecessary work.

Defendant generally objects to the Receiver's descriptions of his time entries, arguing that they are "vague" and lack sufficient detail to justify full reimbursement, citing four time entries as examples.[4] (Def.'s Fourth Obj. at 19-20.) Defendant argues that courts reduce fee awards "by 75% due to such vague entries." (*Id.* at 20.) The Receiver maintains that his "time entries . . . contain adequate detail," but nevertheless elaborates further on the work performed related to the four specific time entries to which Defendant objects. (Fourth Reply 7-10.) The Court finds the Receiver's entries and explanations provide sufficient detail about the activities conducted to enable the Court to conclude that they are reasonable and appropriate for compensation.

---

[4] Defendant argues that the following four time entries are overly vague: (1) "CHB entry on 12/10/19 'Review Iftikar Ahmed response to notice re motion' for .20 hours"; (2) "CHB entry to 12/10/19 'Attention to finalizing and filing notice re Iftikar Ahmed email' for .20 hours"; (3) "CHB entry on 12/10/19 'Review Iftikar Ahmed emails in connection with analyzing whether to draft reply to Iftikar Ahmed' for .20 hours"; and (4) "SMK entry on 12/17/19'Attention to various issues . . . response to numerous pleadings" for .30 hours." (*Id.* at 19.)

Defendant objects to the amount of time the Receiver has spent on third-party litigation, arguing that the fees are the "direct outcome of the Receiver (sic) refusal to oppose such requests by third or non-parties." (Def.'s Fourth Obj. at 20.) The Receiver maintains that "it would be wholly inconsistent with his obligations under the Appointment Order to expend Receivership Assets opposing relief sought by parties that would have no impact on the Receivership Estate." (Fourth Reply at 4.) The Court agrees.

Defendant finally argues that the Receiver inefficiently handled the transfer of the Harry Winston earrings and the unauthorized trades in Ms. Ahmed's Fidelity account. (Def.'s Fourth Obj. at 21-22.) The Receiver does not directly respond to these objections. The Court finds no basis to conclude that billing related to either of these categories amounts to excessive billing or unnecessary work, and the time entries related to these issues appear specific and appropriate.

### B.  Defendant's Opposition to the Fifth Interim Motion

In his objection to the Receiver's Fifth Application for Fees, Defendant again incorporates all the arguments from his prior objections, copying many of these objections verbatim. (Def.'s Fifth Obj. at 1-2.) Defendant raises a few objections unique to this Fifth Application which the Court will address.

Defendant argues that "the Receiver's fees are severely excessive for the work performed" pointing to a 55 percent increase in fees requested from the Fourth Application to the Fifth Application "with no reason or explanation given for this drastic increase" and "billing of over $1,000 *per each working day*" during the Fifth Application period as evidence of excessive fees. (*Id.* at 4-5.) The Receiver does not directly respond to this allegation in his Reply, but Defendant gives no explanation why increased work performed by the Receiver should not be compensated pursuant to the Appointment Order. He points to no specific time entries to support his characterization of the fees as "severely excessive." The Court finds that the Receiver's billed hours appear appropriate to the work performed.

Defendant argues that the Receiver "unilaterally and without any notice or authorization, increased their rates" and that such an increase cannot be permitted without approval by the Court.[5] (*Id.* at 7.) The Receiver responds that the phrase "standard hourly rates" stated in the Appointment Order permits these ordinary and modest fee increases, subject to the Court's approval. (Fifth Reply [Doc. # 1523] at 4.) The Court finds that the language in the Appointment Order sets a fixed rate only for Jed Horwitt and not for any other Z&Z attorney. (*See* Appointment Order at 16.) Although Mr. Horwitt's fee is fixed at $250.00 per hour for work primarily in his capacity as the Receiver and $396.00 per hour for work primarily in his capacity as a lawyer, the Court set the hourly fee for other Z&Z attorneys as a "25% discount to standard hourly rates." (*Id.*) Because standard hourly rates are adjusted from year to year and because Mr. Horwitt's fee has stayed constant, the Court finds that the Receiver's rates comply with the Appointment Order. (*See* Fifth Reply at 4.)

Defendant objects to the Receiver billing his legal rate as opposed to his lower rate for services as Receiver, noting that the "***Receiver's time spent as a Receiver in this case is less than 2% of the total amount requested***." (Def.'s Mem. at 9) (emphasis in original). Defendant maintains that the Receiver should continue to charge the reduced $250 per hour rate as he did in the Second, Third, and Fourth Applications. (*Id.* at 8.) Defendant cites the Receiver's fee applications in the unrelated case *SEC v. Varacchi* for his proposition that equity requires the Receiver to charge the reduced rate for administering this Receivership. (*Id.* at 8-9 (citing 17-cv-155-VAB, 2020 WL 6383162 (D. Conn Oct. 30, 2020).) In *Varacchi*, Judge Bolden appointed Jed Horwitt as the receiver for that securities fraud case, and it

---

[5] Defendant also argues that the Receiver's fees should be adjusted because he previously "erred on calculation and he must accordingly revise the earlier fee motions," (Def.'s Mem. at 6.), referring to the Receiver's statement that the approved hourly rate of $396 reflected only a 20% discount instead of a 25% discount. (Fifth App. At 5.) The Receiver has adjusted his rate downward to $371 to reflect a 25% discount in his hourly rate. (Fifth Reply at 3.) Since the Receiver has never billed more than $371 per hour for his time in any application for fees, (*see id.*), this miscalculation is immaterial and no adjustment is necessary.

appears that he requested $250 per hour for all the services he performed for the Receivership throughout the course of its thirteen fee applications. (*Id.*) Defendant thus argues that it is only fair for the same receiver to charge that reduced rate for all hours billed in this case. (*Id.*) The Receiver responded that although he "voluntarily reduced all of his time to $250 per hour" in his prior applications, he had and continues to have no duty to do so. (Fifth Reply at 3.) The Receiver further argues that his requested fees still fall below the approved rate in the Appointment Order and that an adjustment for this Fifth Application would thus be inappropriate. (*Id.* at 3-4.)

The Court is perplexed why the Receiver applied a discount for the prior three fee applications, which was removed without explanation or prior approval of the Court. The Court will convene a status conference with the parties to discuss this issue going forward and whether an adjustment from the twenty percent holdback should be made. For now, the Court will approve these fees as falling within the Appointment Order.

Defendant similarly objects to the Receiver's counsel charging their legal rate for "non-legal work." (Def.'s Fifth Obj. at 10.) Defendant maintains that the Receiver must "breakout . . . what is considered legal and what is considered non-legal and billing must be done accordingly." (*Id.*) However, the Appointment Order only requires the Receiver to differentiate between legal and non-legal work and states that Z&Z attorneys will provide a "25 percent discount to standard hourly rates" without more. (Appointment Order at 16.)

Defendant next asserts that the Receiver "'hides' the number of hours billed" by including hours that he has chosen not to bill and maintains that this is improper because the "Receiver must detail only the hours he bills and then footnote to the hours he does not bill if he wishes to." (*Id.* at 11.) The Receiver maintains that his detailed time entries clearly delineate "the total hours, hourly rate, and total fee for the Receiver as well as for each attorney and paraprofessional." (Fifth Reply at 5.) Indeed, the Receiver's time records are very detailed and delineate precisely the work billed and do not depict any work that was not

billed. (*See* Exhibits D-1 to D-6 to Fifth Application [Doc. ## 1555-4 – 1555-9].)

In response to the Receiver's statement in the Fifth Application that he "reserves the right to seek compensation for time spent addressing such motion practice [regarding these fees] in the future," Defendant argues that the Receiver "cannot charge for work done on or defending his fee motions." Both Defendant and the Receiver agree that the Receiver, pursuant to SEC Guidelines, shall not bill for any time spent preparing fee applications. (Fifth Reply at 5.) In accordance with that directive, the Receiver has not billed for any time spent preparing his fee applications. (*Id.*) Although the Receiver has not yet billed for his time spent defending his fee motions, he is entitled to do so because the SEC Guidelines prohibit billing only time spent preparing fee applications, not time spent defending such applications, and courts in similar SEC enforcement actions have permitted receivers to recover fees on fees, *see, e.g.*, *S.E.C. v. Lauer*, 2016 WL 3225216, at *1 (S.D. Fl. Mar. 31, 2016). Permitting the Receiver to recover fees for time he spends defending fee motions deters Defendant and Relief Defendants from asserting meritless objections.

Relatedly, Defendant argues that "the Receiver cannot charge for any work in the Second Circuit Appeals (sic)," noting that the Receiver had billed the Estate for his appearance before the Second Circuit. (Def.'s Mem. at 12.) Without citing authority, Defendant maintains that the Receiver was required to obtain leave of court to appear before the Second Circuit. (*Id.*) Defendant further argues that the fees cannot be reimbursed by the Estate because the issues before the Second Circuit pertained to the Receiver's fees. (*Id.*) The Receiver responds that only a portion of the issues argued before the Second Circuit could arguably pertain to Receiver fees, including "the briefing ordered by the Court on the issue of pendent appellate jurisdiction" and "the time associated with appearing in the appeals of the Court's order directing payment of the Receiver's first three fee applications initiated by the Defendant." (Fifth Reply at 6.) However, the Receiver maintains that even fees related to those issues are compensable because the pendent appellate jurisdiction issue was

10

tangentially related to a fee application, and barring recovery of fees would create "a perverse incentive for the Defendant and Relief Defendants to continue mounting baseless challenges to the payment of fees incurred by the Receiver." (*Id.* at 6-7.)

The Court concludes that compensating the Receiver's work defending his fee applications before the Second Circuit is within the Court's authority to award fees in SEC enforcement actions.

### C.   Defendant's Opposition to the Sixth Interim Motion

The vast majority of Defendant's opposition to the Receiver's Sixth Application for Fees is copied directly from his opposition to the Receiver's Fifth Application. The only new issues that Defendant raises in this application relate to billing of the "Fair Funds process" and "the distribution referred to by Fort Warren." (Def.'s Sixth Obj. at 14.) Specifically, Defendant argues that the Receiver's billing for time spent on the Fair Funds process is excessive since "[t]hat process has not even been authorized by the Court" and that Defendant was provided with insufficient information about the Fort Warren distribution such as the amount of the distribution and where the account is located. (Def.'s Sixth Obj. at 13-14.) The Receiver's Reply explained that the Fort Warren distribution was the result of class action settlement that yielded $192.55, an amount so "*de minimis*" that he "did not believe it was necessary to file a discrete notice concerning the Distribution." (Sixth Reply [Doc. # 1659] at 3-4.) The Receiver further explained that the related billing regarded an issue with Credit Suisse's concerns about releasing the distribution during the pendency of this action. (*Id.* at 4.) With respect to the Fair Funds process, the Receiver "acknowledges that the Court has not to date ordered him to engage in a Fair Funds process." Nevertheless, the Receiver argues that "it is entirely appropriate for him and his counsel to spend time considering the impact of a potential Fair Funds process on this action and the Receivership Estate." (*Id.* at 5.) The Court agrees that the Receiver's anticipatory work on these issues was reasonable, particularly given that the combined total amount of time spent to date is less

than four hours. (Ex. C to Sixth Application [Doc. # 1624-4].)

**III.      Conclusion**

For the foregoing reasons, the Receiver's Motions for Fees [Docs. ## 1474, 1555, 1629] are GRANTED. Within seven days of the date of this ruling, the Receiver shall submit a proposed order to reflect the amounts to be disbursed to the Receiver and his counsel, identifying the assets of the Receivership Estate from which those amounts will be paid.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 14th day of December 2020.