**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> IFTIKAR AHMED, <br><br> Defendant, and <br><br> IFTIKAR ALI MR. AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI MR. AHMED; SHALINI MR. AHMED 2014 GRANTOR RETAINED ANNUITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI MR. AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI MR. AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI MR. AHMED, his parents, <br><br> Relief Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 3:15-cv-675 (JBA) |

**NON-PARTY BROWN RUDNICK LLP'S REPLY TO OPPOSITIONS OF**
**DEFENDANT AND RELIEF DEFENDANTS REGARDING MOTIONS FOR**
**APPELLATE ATTORNEYS' FEES**

Non-Party Brown Rudnick LLP ("Brown Rudnick") files its reply (the "Reply") in

response to the Oppositions of Defendant Iftikar Ahmed and Relief Defendants (ECF Nos. 1777,

1778), regarding Brown Rudnick's Limited Opposition to Defendant and Relief Defendants'

Motions for Release of Funds for Appellate Counsel (the "Limited Opposition")[1].  (ECF No. 1758).[2]

In their Oppositions, Mr. Ahmed and Relief Defendants make little effort to address Brown Rudnick's substantive due process arguments about the current system that treats creditors of the Defendants inequitably, allowing certain creditors to receive payment while others do not. Instead, Mr. Ahmed and the Relief Defendants raise baseless procedural arguments that Brown Rudnick lacks standing to file its Limited Opposition and that the Limited Opposition constitutes a motion for reconsideration.  To the contrary, Brown Rudnick has been involved in this case for years and is being directly harmed by the Litigation Stay and the Asset Freeze.  Consequently, Brown Rudnick has standing to file its Limited Opposition.  Similarly, although Brown Rudnick did not object to the previous requests for fees to be paid to appellate lawyers, the current Preferential Payment Motions stand alone. Because Brown Rudnick continues to be subject to the Litigation Stay and the Asset Freeze while other counsel and creditors continue to be paid, and the assets that may be available to Brown Rudnick for recovery on its valid claims against Mr. Ahmed are dwindling, Brown Rudnick has asserted its Limited Opposition.

Mr. Ahmed and the Relief Defendants once again attempt to distract from the legitimate issues raised by the Limited Opposition by casting unsupported and irrelevant aspersions toward Brown Rudnick. These accusations, which will be refuted in their entirety if the Court lifts the Litigation Stay and permits Brown Rudnick to commence an action against Mr. Ahmed, have

---

[1] The Limited Opposition opposed Mr. Ahmed's Third and Fourth Motions for Release of Funds for Appellate Counsel (ECF Nos. 1737, 1738), and Relief Defendants' Motion for Release of Funds for Appellate Attorney's Fees (ECF No. 1746) (collectively the "Preferential Payment Motions").

[2] Because both Mr. Ahmed and Relief Defendants styled their pleadings as oppositions to Brown Rudnick's prior filing, Brown Rudnick submits this reply pursuant to Local Rule 7(d).  However, to the extent the Court considers this a sur-reply, Brown Rudnick respectfully seeks leave to file a sur-reply pursuant to Local Rule 7(d).

nothing to do with Brown Rudnick's entitlement to payment of its legal fees, or even the merits of Brown Rudnick's argument in support of its Motion to Lift Litigation Stay.

For the reasons set forth below and in the Limited Opposition, Brown Rudnick respectfully requests that the Court deny the Preferential Payment Motions or grant Brown Rudnick's Motion to Lift Litigation Stay, which has now been pending for over a year.  *See* ECF No. 1440.

## I.    <u>Brown Rudnick Has Standing to Oppose the Preferential Payment Motions</u>

Brown Rudnick has standing to file the Limited Opposition.  Brown Rudnick has been involved in this matter for over five years, filing its initial appearances in August 2015.  *See* ECF Nos. 92, 116, 117.  Brown Rudnick actively represented Mr. Ahmed for over 8 months in this action,[3] during which time Mr. Ahmed incurred substantial legal fees in connection with Brown Rudnick's representation.  Far from inserting itself and filing pointless and excessive motions, Brown Rudnick has made very limited and targeted filings in this action to narrowly seek relief from the Litigation Stay in order to pursue the fees to which it is entitled.

Brown Rudnick stands in the same position as Relief Defendants' prior counsel, Harris St. Laurent & Chaudhry, who after ending its representation was allowed to make "non-party" filings in an effort to recover its legal fees.  *See e.g.*, ECF Nos. 1152, 1252, 1284.[4]  Moreover, this Court has allowed and indeed granted non-party motions.  *See e.g.*, ECF No. 1167 (allowing non-party Oak to lift the lift the Litigation Stay to pursue arbitration against Mr. Ahmed). Importantly, the Court invited parties to "any and all Ancillary Proceedings" to seek leave of

---

[3] Likewise, Brown Rudnick actively represented Mr. Ahmed for over a year in related *SEC v. Kanodia et al.*, No. 1:15-cv-13042-ADB (the "Massachusetts Action") and remained counsel of record for over four years.

[4] Over the course of this matter, the Relief Defendants have changed their position with respect to whether Brown Rudnick is within the purview of this Court. Specifically, Relief Defendants moved to enjoin Brown Rudnick, among others, from proceeding to lift the Litigation Stay (ECF No. 1446), and then moved to strike its opposition, arguing that non-parties "ha[d] no standing to respond" to the Motion for Temporary Injunction.  ECF No. 1486.  As Brown Rudnick has argued in the past, Relief Defendants cannot have it both ways.

Court in order to file litigation against the Defendants.  ECF No. 1070.  At the Court's direction, Brown Rudnick has sought leave to lift the Litigation Stay, in an attempt to file a Connecticut State Court action against Mr. Ahmed to recover its legal fees.  ECF. No. 1440.

Like others, Brown Rudnick is being directly impacted and harmed by the Litigation Stay and the Asset Freeze, as certain parties, whose claims are not disputed by either Mr. Ahmed or the Relief Defendants, are able to receive payment to the detriment of others.   Such discriminatory treatment under the law imposes irreparable harm on and denies due process to such disfavored creditors who are left without effective (or any) recourse.  As a result, Brown Rudnick has standing and objects to this inequitable system.

## II.     Brown Rudnick Does Not Appeal or Seek to Overturn Any Prior Orders

Brown Rudnick is not asking the Court to reconsider any of its prior decisions, respects the Court's authority to issue an asset freeze, and does not assert any right to take priority over the SEC's claim to any of the frozen assets. Limited Opposition, at 4-5.  However, Brown Rudnick moved to lift the Litigation Stay on January 31, 2020, more than one year ago, in order to pursue its claims against Mr. Ahmed; that motion remains pending.  In that time, other counsel and creditors have repeatedly been paid from the Receivership Estate, which has created the pseudo-bankruptcy system to which Brown Rudnick is currently objecting.  Such a system has had the unintended consequence of impairing the rights of those with valid claims, and Brown Rudnick submitted its Limited Opposition challenging that system.  Contrary to Mr. Ahmed's argument, Brown Rudnick is not seeking reconsideration of its prior application for fees, and plainly does not ask the court to make any substantive determinations about the $1.3 million it is owed.  *See* ECF No. 1778, at 3-4.  In the Limited Opposition Brown Rudnick only referenced and requested the Court rule on its request to be allowed relief from the Litigation Stay to file a

state court action to establish its entitlement to fees.  During the state court proceeding, Mr. Ahmed would have the right to fully defend himself and to assert his own claims.

Brown Rudnick did not challenge prior motions for the release of funds for appellate counsel because Brown Rudnick had filed its Motion to the Lift Litigation Stay to be able to pursue its claims and protect its rights against Mr. Ahmed.  However, the current Preferential Payment Motions are yet again new requests for payment, and after waiting for more than a year, Brown Rudnick could no longer sit on its hands and watch others with equal priority deplete the assets of the Receivership Estate.[5]  As detailed in the Limited Opposition, the current system whereby some preferred creditors can be paid functions without the rules and safeguards that exist, for example, in a bankruptcy proceeding under Title 11 of the United States Code or within the rubric of a Connecticut state receivership, in place to protect all creditors.  It has been established by the Receiver and affirmed by the Court that the Receivership Estate contains funds significantly exceeding what is needed to satisfy the SEC's judgment.  *See e.g.,* ECF No. 1750 ("[T]he most recent accounting by the Receiver appears to indicate that there will be some balance of assets in excess of the ultimate judgment to be enforced.").  Given this surplus, it is inequitable to allow some creditors performing legal work to get paid while prohibiting others from doing the same and holding in abeyance their ability to protect their rights.  This was the focus of the Limited Opposition.

---

[5] Brown Rudnick takes exception to Mr. Ahmed's characterization of the Limited Opposition, to the extent he suggests Brown Rudnick has misrepresented to the Court that Mr. Ahmed is in control of Receivership Estate disbursements.  ECF No. 1778, at 3.  This is a gross distortion of Brown Rudnick's position.  Mr. Ahmed files almost daily motions and objections to nearly every docket entry. However, he has refrained from objecting to the release of funds for the parties who have actually been paid in this matter.  As Brown Rudnick clearly articulated in the Limited Opposition, "the only creditors who have been paid are those for whom Mr. Ahmed *does not deny their entitlement to compensation*."  Limited Opposition, at 12 (emphasis added). With this statement and related references throughout the Limited Opposition, Brown Rudnick was merely highlighting the inconsistency with respect to creditors who have "contested" claims and those who do not, and was in no way suggesting that Mr. Ahmed is in control of which creditors receive payment.  He is, however, in control of the objections he files and to which creditors.

The fact that Brown Rudnick's fees were not pre-approved by the Court has no bearing on its entitlement to payment. No court approval is needed to form a valid attorney-client agreement, and attorneys are entitled to payment based on fundamental principles of contract law. *See e.g.*, *Cozen O'Connor, PC v. Norman ("O'Connor II")*, No. 3:08cv1773, 2011 WL 2198311, at *6 (D. Conn. Jun. 6, 2011). Defendants' attempts to argue that without pre-approval no fees were earned or owed are meritless.

### III.     Unfreezing Assets Would Protect Third Party Claims

The unfreezing of assets and transfer to a state court receiver, described in the Limited Opposition, relates only to funds not needed to secure the SEC's recovery, and could be used to put all remaining third parties on equal footing with an avenue to litigate their claims and defenses. Limited Opposition, at 15. Such a system would protect against the inconsistent application of priority. To the extent the funds are insufficient to pay all claims, equitable principles dictate that creditors would receive their pro-rata share in partial satisfaction of their claims. *See Natural Harmony, Inc. v. Normand*, 211 Conn. 145, 149 (1989) ("Equity always looks to the substance of a transaction . . . and seeks to prevent injustice."); *Century Indem. Co. v. Kofsky*, 161 A. 101, 103 (Conn. 1932) ("Equality is equity; in other words, if the fund is not sufficient to discharge all claims upon it in full . . . equity will incline to regard all demands as standing upon equal footing and will degree a pro rate disbursement of payment."). Further, once all claims have been adjudicated and paid, any surplus would be returned to the rightful owner.

IV.    **Brown Rudnick Performed Extensive Work in Its Defense of Mr. Ahmed, None of Which Was Conditioned Upon the Court Releasing Funds for His Legal Fees**

Despite Mr. Ahmed's contention, Brown Rudnick did not file a limited appearance in this case. Instead, Brown Rudnick fully represented Mr. Ahmed through the early stages of this case. *See* ECF Nos. 92, 116, 117. Such a limited appearance was not possible, because (1) there exists no authority or mechanism upon which to do so, and (2) Mr. Ahmed needed complete representation in order to defend the pending motion for default at the time Brown Rudnick entered the case. *See e.g.*, ECF Nos. 64, 95. As Brown Rudnick has argued[6], it provided lengthy and substantive representation of Mr. Ahmed. In its state action, should the Court lift the Litigation Stay, Brown Rudnick will present ample evidence showing its substantial representation of Mr. Ahmed. However, as Brown Rudnick is not required to prove its claims in this action, out of an abundance of caution to protect client confidences, Brown Rudnick is not submitting that evidence in the context of this Limited Opposition.

Importantly, Brown Rudnick did not "immediately move to withdraw" after its initial fee application was denied. ECF No. 1778, at 4. After that decision, Brown Rudnick remained in the case for another four months, and performed extensive work on Mr. Ahmed's behalf, including preparing for and arguing the merits of the grounds for a motion to dismiss in a two hour and 15 minute Pre-Filing Conference (ECF No. 204), and then subsequently filing a 70-page Answer to the Second Amended Complaint which set forth 23 affirmative defenses, establishing the grounds for the Relief Defendants and Mr. Ahmed's Motions to Dismiss. ECF No. 218. These actions prevented Mr. Ahmed from being subject to a default judgment.

---

[6] Brown Rudnick invites the Court's attention to Brown Rudnick's Reply in Support of its Motion to Lift Litigation Stay, ECF No. 1525. In that reply, Brown Rudnick comprehensively addressed all of Mr. Ahmed's arguments regarding the work it performed and its payment arrangement, and submitted in support the Declaration of Alex Lipman, a former Brown Rudnick partner who testified to the agreed upon terms of the engagement. *See* ECF No. 1525-1.

Additionally, prior to its fee motion being denied, Brown Rudnick participated in discovery planning conferences with the SEC pursuant to Federal Rules of Civil Procedure Rule 26(f) and began to collect and review relevant discovery.

Likewise, in the Massachusetts Action, Brown Rudnick represented Mr. Ahmed for years performing countless tasks including, amongst others: (1) preparing an answer to the SEC's complaint and other initial filings; (2) engaging in significant fact and document review and discovery; (3) researching, preparing for, litigating issues surrounding, and attending depositions of certain witnesses; (4) drafting various pleadings; (5) monitoring the above captioned Connecticut action in connection with assessing the availability of funds for defense of the Massachusetts Action; and (6) preparing for and participating in extensive settlement discussions with the SEC.[7]  *See* ECF No. 1525.

In an effort to protect Mr. Ahmed's privacy, Brown Rudnick refrains from discussing the communications between the parties; however, during its State Court action Brown Rudnick will establish through client communications that the parties came to a valid fee agreement that Mr. Ahmed continuously reaffirmed.  Brown Rudnick's representation of Mr. Ahmed was in no way contingent on the Court releasing funds for his legal expenses.  In 2015, Brown Rudnick and Mr. Ahmed agreed that Brown Rudnick would be paid: (a) if any of Mr. Ahmed's assets were released from the District of Connecticut for Brown Rudnick's representation in any of the civil matters; (b) when Mr. Ahmed had access to any of the frozen assets that belonged to him; and/or (c) when there were identifiable assets that were not needed to secure the judgment in this or the

---

[7] Importantly, Brown Rudnick secured for Mr. Ahmed the ability to be deposed via videoconference. *See* Massachusetts Action, ECF No. 109, at 3.  At that time, Mr. Ahmed was unable to leave India due to pending criminal charges in that country. His inability to return to the U.S. to attend his deposition, or a later trial, could have been grounds for a default judgment against him. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129-130 (2d Cir. 2011) (holding failure to appear for a deposition or trial is sufficient grounds to support a default judgment under Rule 55).

Massachusetts Action. *See* Declaration of Alex Lipman, ECF No. 1525-1. Brown Rudnick merely acceded to Mr. Ahmed's request to delay collection until his assets were unfrozen, otherwise made available to him, and/or when there were identifiable assets not needed to secure the SEC's judgment. *Id.* Importantly, at no time did Mr. Ahmed seek to terminate Brown Rudnick's representation. To the contrary, Mr. Ahmed continually expressed his appreciation for Brown Rudnick's work and reaffirmed that it would be paid its outstanding legal fees and expenses once there was a mechanism to do so. *Id.* Contrary to his latest assertion, Mr. Ahmed was made aware of the $1.3 million in legal fees Brown Rudnick is claiming during preparation of a fee application to be submitted in the Massachusetts Action, and did not object. *Id.*

Finally, as Brown Rudnick has raised previously, in both Connecticut and Massachusetts attorneys are entitled to payment for legal representation even in the absence of a signed engagement letter. *See* ECF No. 1525; *see also O'Connor v. Norman*, No. 3: 08cv1773 (MRK), 2011 WL 219666 (D. Conn. Jan. 21, 2011) ("*O'Connor I*"); *Cozen O'Connor, ("O'Connor II")*, 2011 WL 2198311; *Daynard v. Ness, Motley, Loadhold, Richardson &Poole, P.A.*, 188 F.Supp.2d 115, 131 (D. Mass. 2002) (holding that an unwritten attorney fee agreement was enforceable, entitling attorney to agreed-upon fees, if attorney could prove unwritten agreement existed).

## CONCLUSION

For the foregoing reasons, as stated in both the Limited Opposition and this Reply, Brown Rudnick respectfully requests that the Court deny the Preferential Payment Motions or in the alternative grant Brown Rudnick's Motion to Lift Litigation Stay.

Respectfully submitted,

**BROWN RUDNICK LLP**


**By:**   /s/ Anthony J. Boccamazzo
Anthony J. Boccamazzo, Esq. (ct30747)
185 Asylum Street, 38th floor
Hartford, CT 06103
Phone: (860) 509-6500
Fax: (860) 509-6614
aboccamazzo@brownrudnick.com

March 16, 2021

**<u>CERTIFICATION</u>**

I hereby certify that on March 16, 2021, a copy of the foregoing Opposition to Defendant's Motions for Release of Funds for Appellate Counsel was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operating of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

Anthony J. Boccamazzo, Esq. (ct30747)