# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

               Plaintiff,

   v.

IFTIKAR AHMED,

             Defendant, and

IFTIKAR AHMED SOLE PROP; *et al*
             Relief Defendants

Civil Action No. 3:15-cv-675 (JBA)

MAY 03 RD, 2021

**DEFENDANT'S RESPONSE TO PLAINTIFF UNITED STATES SECURITIES AND
EXCHANGE COMMISSION'S MEMORANDUM CONCERNING DEFENDANT'S
DISGORGEMENT OBLIGATION AND REQUEST FOR ENTRY OF AN AMENDED
JUDGMENT**

Pursuant to the Court's March 16, 2021 Order [Doc. ##1801, 1813],[1] the *pro se* Defendant respectfully submits this Response to the Plaintiff SEC's Memorandum concerning the Defendant's Disgorgement Obligation and Request for Entry of An Amended Judgment [Doc. #1904, or the "SEC Limited Remand Brief"].  The Defendant incorporates the entirety of his Limited Remand Brief [Doc. #1906, or the "Defendant's Limited Remand Brief"] herein.

The Defendant reserves all rights.


## PRELIMINARY STATEMENT

*First*, the SEC requests the Court increase the Defendant's disgorgement obligation and enter an amended judgment.  However, at no point in time in its Limited Remand Brief does the SEC ever discuss or address the fundamental propriety of that request, especially given that the SEC had failed to satisfy the fundamental requirement of noticing an appeal or cross-appeal of the Final Judgment; on which basis itself the SEC's request is both untimely and improper and must be rejected.

*Second*, without a Final Judgment, the Second Circuit Court of Appeals would not have even entertained any appeals.   Not only did the Second Circuit add the appeals to the docket, the appeals were also partially briefed.  The NDAA does not apply to Final Judgments to the benefit

---

[1] The Defendant tested Covid-19 positive a week or so ago and, hence, had requested a two-week extension of time from the May 3, 2021 due date for him to file his Response brief [Doc. #1923].  The Court had granted with modification an extension for the Defendant to file his "*initial* brief" to May 11, 2021 [Doc. #1924].  The Defendant had emailed the Court twice seeking clarification that the May 11, 2021 date was for his Response brief (as his motion for extension of time requested and he had already filed his initial brief on April 19, 2021, as per Court orders).  However, as of the evening of May 3, 2021, the Defendant has not received any response to his emails nor has the Court issued any clarification of the Order #1924. As such, out of an abundance of caution and to preserve all his rights, the Defendant files this truncated and hurried Response at this time simply to be compliant with the earlier deadline.  The Defendant intends to submit a more complete Response on May 11, 2021 as granted by Order #1924.

of a party that failed to appeal the Final Judgment. Again, on this basis alone, the SEC's request cannot be entertained.

_Third_, the retroactive application of statutes to time-barred claims would render it in violation of various constitutional, statutory, and jurisdictional tenets; where the requested claims are not only time-barred but have also been conceded to be time-barred by the SEC themselves, and where the Court did not enter or even consider disgorgement for pre-2010 claims **_because_** the SEC conceded these claims were time-barred, where the final judgment was entered more than two years ago.

In particular, the SEC had made it clear that any relief for disgorgement prior to 2010 was "time-barred" and the SEC has conceded and admitted that it was seeking "relief _other than disgorgement_ for these pre-2010 violations, including injunctive relief" (emphasis added) [Doc. #667 at 10] and that "the _five-year limitations period… applies_ only for _claims for disgorgement and penalties_." (emphasis added) [Doc. #667 at 13].

And this Court agreed, specifically stating that "[t]he SEC does not dispute that the _claims for disgorgement_ tied to the transactions that occurred over five years before this case was filed _are time-barred_… the _non-disgorgement relief the SEC seeks_ for these pre-2010 violations include injunctive relief… [and] are competent background evidence for analyzing timely misconduct [only]." (emphasis added) [Doc. #835 at 29-30].

The Court did not order disgorgement for pre-2010 claims in the 2018 Final Judgment and the SEC did not appeal or cross appeal that Final Judgment, a legal requirement that is mandatory and jurisdictional.  The pre-2010 claims for disgorgement have been effectively dismissed and, therefore, as stated by this Court were and are "Final".

The Court should deny the SEC's request in its entirety and order that the NDAA cannot and does not apply to this proceeding.

3

## ARGUMENT

**I.      THE NDAA DOES NOT APPLY TO THIS PROCEEDING.**

**A.      The Second Circuit Made No Determination on the Applicability of the NDAA to this Proceeding.**

Contrary to the SEC's false assertions, the Second Circuit did not "[find] the NDAA was applicable to this case when it remanded Defendant's appeals" [SEC Limited Remand Brief at 10]. In fact, the Second Circuit made no finding. Rather, the Second Circuit – through a simple and short order – made it clear that this Court was to decide this issue in the first instance, stating "*if appropriate,* entry of an amended judgment" [Doc. #1810, or the "Remand Order"] (emphasis added). Having no legal standing behind their claims, the SEC resorts to making misleading statements, as clearly the Second Circuit Court of Appeals did not even address the merits of the appellate briefing on the SEC's request for limited remand, let alone whether or not the NDAA is applicable to this instant proceeding.

In addition, the SEC themselves conceded to the Second Circuit that "[a]ppellants raise novel statutory and constitutional arguments whose full rebuttal would require more than the 7 days and 2,600 words permitted for a reply to a motion in this Court…" [Second Circuit Case 18-2903, Doc. No. 491 at 9]. The SEC has acknowledged that the legal issues here are complex and require careful adjudication and thus, requested a limited remand so that *this* Court could make a determination in the first instance on these issues. The Second Circuit's simple remand order only confirms this, as the Second Circuit did not make any findings or even address the issues on merit before it issued a limited remand. Further, the remand order itself stated that "either party may appeal" this Court's ruling, further supporting that the Second Circuit did not make any findings or determination either way.

4

In addition, in its appellate briefing, the SEC further stated that "[T]he sheer number of such arguments and the district court's greater familiarity with their factual and procedural underpinnings (such as the availability of frozen assets and the procedural history of the disgorgement request) together suggest that the appropriate course of action here is to remand now so that [the Second Circuit] may better adjudicate them later with the benefit of the district court's informed evaluation. *See*, e.g., *Florez v. CIA*, 829 F.3d 178, 184 (2d Cir. 2016) ("It is this court's usual practice to allow the district court to address arguments in the first instance.") (quoting *Eric M. Berman, P.C. v. City of New York*, 796 F.3d 171, 175 (2d Cir. 2015) (per curiam)) (cleaned up)." *Idem*.

Clearly, the SEC argued to the Second Circuit that it was better for this Court to adjudicate these matters *first* and then raise them to the appellate court. This in no way means or even remotely suggests that the Second Circuit "found the NDAA was applicable to this case when it remanded Defendant's appeals." [SEC Limited Remand Brief at 10].

To the contrary, it simply means that the Second Circuit, as is their customary practice, remanded to this Court for its determination *in this first instance*. The Court should further note that the SEC attempts unethical gamesmanship here, by stating one thing to the Second Circuit: "[a]ppellants raise novel statutory and constitutional arguments… appropriate course of action here is to remand now so that [the Second Circuit] may better adjudicate [the issues] later with the benefit of the district court's informed evaluation" [Case 18-2903, Doc. No. 491 at 9] but then turning around and saying another thing to this Court: "the Second Circuit found the NDAA was applicable to this case when it remanded Defendant's appeals," [SEC Limited Remand Brief at 10] in an unethical attempt to avoid scrutiny by either the Second Circuit or this Court on the underlying complex legal issues dealing with the SEC's extraordinary request to apply a newly

enacted statute to time-barred and dismissed claims that violate constitutional, statutory and jurisdictional tenets.  The Court should not allow that.

    **B.**    **The NDAA Does Not Apply to This Case.**

Further, contrary to the SEC's premise, the NDAA does not apply to this instant proceeding.  As the Defendant explained in the Defendant's Limited Remand Brief (which the Defendant incorporates in its entirety here), for a variety of reasons, the NDAA is not applicable to this case and it would violate, *inter alia*, settled jurisdictional, statutory and constitutional principles to do so. In particular, *inter alia*, (i) the SEC failed to appeal or cross-appeal the final judgment, (ii) reopening a non-appealed final judgment would violate Article III of the Constitution, (iii) if the NDAA is read to reopen time-barred claims, it violates the Ex Post Facto Clause, (iv) the NDAA does not apply to Section 21(d)(5) claims and (v) to reopen time-barred claims would disturb settled expectations and increase Defendant's liability. [*See* Doc. #1906, or the "Defendant's Limited Remand Brief" incorporated in its entirety herein].

Importantly, the claims the SEC seeks to bring here are time-barred and were conceded to be time-barred by the SEC itself as they stated that "the SEC seeks relief *other* than disgorgement for these pre-2010 violations." (emphasis added) [Doc. #667 at 10].   The esteemed Court itself specifically memorialized the SEC position as "[t]he SEC does not dispute that the claims for ***disgorgement tied to the transactions that occurred over five years before this case was filed are <u>time-barred</u>***… the non-disgorgement relief the SEC seeks for these pre-2010 violations include injunctive relief… are competent background evidence for analyzing timely misconduct [only]." (emphasis added) [Doc. #835 at 29-30.]

Those claims conceded to be time-barred by the SEC were effectively dismissed for disgorgement purposes [**Exhibit A**]. The SEC did not notice any appeal or cross appeal on the final judgment entered in 2018 and thus, any changes to the disgorgement amount for pre-2010

transactions are foreclosed as appeals are mandatory and jurisdictional. This Court does not have the jurisdiction to retroactively now apply the statute to re-open time-barred claims, especially those that would increase the Defendant's liability (as further explained in Defendant's Limited Remand Brief).

The Court clearly agreed with this as the Court itself stated that "the judgment amount isn't going to go up [because the SEC did not appeal]." [Doc. #1042 at 4]. The longer statute of limitations is not applicable to disgorgement in this instant case.

That the judgment was on appeal only due to the Defendant and Relief Defendants' appeals is immaterial to the SEC's claims for pre-2010 disgorgement. The issues on appeal were related, *inter alia*, to the disgorgement then ordered by the Court of $41.9 million, *not* to any disgorgement for pre-2010 transactions that the SEC themselves conceded were time-barred and which the Court did not order in its final judgment.

The SEC could have taken an appeal on the final judgment, but it did not.  And because the SEC did not appeal the final judgment, the issues related to the pre-2010 disgorgement became final and unreviewable as of February 13, 2019; the day after the 60-day jurisdictional limit in which the SEC had to appeal ran out. Neither the Second Circuit nor this Court have the jurisdiction to review any pre-2010 disgorgement claims. Applying the NDAA here is also contrary to Second Circuit ruling that "[a]lthough an appellee who has not cross-appealed may urge alternative grounds for affirmance, it may *not* seek to enlarge its rights under the judgment *by enlarging the amount of damages or scope of equitable relief.*"  *Int'l Ore & Fertilizer Corp. v. SGS Control Servs.*, 38 F.3d 1279, 1286 (2d Cir. 1994) (emphasis added). Yet that is exactly what the SEC seeks to do here.

Applying the NDAA here is also in contradiction to the Supreme Court's ruling that a statute of limitations is a "fixed date when exposure to the specified Government enforcement

efforts ends, advancing the basic policies of all limitations provisions: repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities. Statutes of limitations are intended to promote justice by preventing surprises through the revival of claims … [t]hey provide security and stability to human affairs… [w]e have deemed them vital to the welfare of society… and concluded that even wrongdoers are entitled to assume that their sins may be forgotten." *Gabelli v. Sec. & Exch. Comm'n*, 568 U.S. 442, 448-49 (2013) (internal quotes and citations omitted)

Here, the SEC conceded the statute of limitations and accepted the pre-2010 claims to be time-barred and the Court ruled as such. The SEC's extraordinary and unconstitutional efforts to re-open stale and time-barred claims which have been effectively dismissed for disgorgement, over two years from when final judgment entered, and where the SEC did not appeal or cross-appeal, runs afoul of all equitable and legal considerations regarding the statute of limitations and its very purpose. The Defendant, the Relief Defendants and this Court had settled expectations that "the judgment amount isn't going to go up [because the SEC did not appeal]" [Doc. #1042 at 4] and the SEC's extraordinary request here is a complete surprise, foreclosed by Supreme Court ruling regarding statute of limitations.

The SEC attempts to get around this by stating that courts apply these amendments when "reviewing judgments still on appeal that were rendered before the law was enacted." (citing *Plaut*). But contrary to the SEC's assertion, *Plaut* said no such thing. *Plaut v. Spendthrift Farm*, Inc., 514 U.S. 211 (1995).  In *Plaut*, the Supreme Court struck as unconstitutional a statute expressly directing the reopening of final judgments in cases dismissed with prejudice on timeliness grounds to permit application of a longer statute of limitations. *Idem*. at 218-19. In so doing, the Supreme Court distinguished the matter of applying new rules of decision in pending appeals from reopening judgments, explaining there was a constitutionally important "distinction

between judgments from which all appeals have been forgone or completed, and judgments that remain on appeal (or subject to being appealed)." *Idem*. at 227. The Court in *Plaut* held that laws are "unconstitutional to the extent that [they] require[] federal courts to reopen ***final*** judgments entered before [their] enactment." *Idem*. at 240. (emphasis added).

Here, just as in *Plaut*, the SEC invokes a federal statute to try to reopen a finally-resolved judgment and does so to obtain relief—disgorgement beyond the five-year limitations period that this Court rightfully denied, in a situation where the SEC's "appeals have been foregone." *Idem*. at 227. That the Defendant appealed the final judgment is immaterial. The issues related to the *Defendant's* appeals are before the Second Circuit. The SEC declined to appeal the judgment and so with respect to the SEC's claims for disgorgement stretching outside the 5-year limitation period, the judgment the SEC seeks to reopen is now final, just as in *Plaut*, and it would be improper and unconstitutional to reopen it.

The Court should decline to enter an amended judgment and should instead order that the NDAA is not applicable to this case, and it is inappropriate to apply it.

## II.  ANY ENTRY OF AN AMENDED JUDGMENT IS UNCONSTITUTIONAL AND IN VIOLATION OF SETTLED JURISDICTIONAL PRINCIPLES.

### A.  The Court Does Not Have the Jurisdiction to Reopen the Final Judgment.

The Court does not have the jurisdiction to reopen a Final Judgment where the SEC did not appeal the final judgment. Not only is it inequitable for the Court to reopen a final judgment where the statute does not mandate, or even apply, a retroactive application to stale, time-barred claims, which would violate multiple constitutional clauses and readings (as detailed in Defendant's Limited Remand Brief), it would be inequitable for the Court to order such disgorgement where the SEC's time to appeal was long gone, where it would increase the

Defendant's liability, where the SEC themselves conceded the claims for disgorgement were "time-barred" and where there were settled expectations[2] that "the judgment amount isn't going to go up [because the SEC did not appeal]." [Doc. #1042 at 4]. Not only is the reopening of time-barred claims punitive, rendering it in violation of the ex post facto clause, it is unconstitutional and inequitable for this Court to do so.

**B. The Traditional Equitable Principles of Disgorgement Do Not Allow the Alleged Victim to Receive Multiple Recoveries.**

The disgorgement already ordered in this case does not conform to traditional equitable principles.[3] While the SEC claims that it is "inequitable" for the Court not to reopen the final judgment (putting aside for the moment the fact that the Court does not have jurisdiction to do so and it would be unconstitutional), it is inequitable for the Court to order disgorgement such that the alleged victim is recompensed *multiple times over*.

In particular, the SEC has already stated that Oak will receive the entire judgment via Fair Fund in this case. [Doc. #888 at 21] The final judgment is $64.4 MM. In addition, this Court has forfeited at least $40MM of Defendant's earned and vested assets to Oak, effectively giving Oak compensation of at least $104.4MM. Oak also has an arbitration award in the amount of $57MM, which if confirmed would mean that Oak would have received compensation of $161.4MM for the same alleged underlying transactions.[4] Allowing Oak to receive $161.4MM from the Defendant for a disgorgement of $41.9MM – as already ordered by this Court – is

---

[2] Indeed, the Defendant, the Relief Defendants and the Court had clearly settled expectations that there would be residual assets in excess of the 2018 Final Judgment Amount, especially as the SEC did not appeal that judgment, and the Defendant and the Relief Defendants had clearly settled expectations that any residual assets would be returned to them.

[3] On appeal.

[4] These do not even include the SDNY bankruptcy proceeding where Oak is seeking to be replaced as Plaintiff and to amend caption.

inequitable. That means that Oak would be receiving multiple times – **nearly 4x (four times!)** – the disgorgement amount *as it currently stands*. Clearly, this amount cannot stand the holdings of Supreme Court ruling in *Liu v. SEC*, 140 S. Ct. 1936 (2020) (or "*Liu*"), especially "that the wrongdoer should not be punished by pay[ing] more than a fair compensation to the person wronged." *Liu*, 140 S. Ct. at 1943 . To now reopen the final judgment and allow for an increase in disgorgement would mean that Oak would be receiving *further* multiple recovery at the Defendant's expense.[5]

In addition, nowhere does the SEC even acknowledge the fact that the Defendant made at least several hundreds of millions of dollars of investment gains for Oak[6] – *Oak benefited from the Defendant's investments*.  Even Oak cannot and does not dispute that. For example, during his tenure at Oak, the Defendant was singlehandedly responsible for several significant investment successes, *inter alia,* directing and leading investments into companies such as GMarket (acquired by eBay for $1.25 Billion compared to a $30MM valuation for Oak's investment, thereby generating over $230MM in investment gains); Kayak (acquired by Priceline (now Bookings.com) for over $2 Billion, thereby generating over $120MM in investment gains); Giosis (the Japanese business unit was acquired by eBay for over $700MM compared to Oak's investment valuation of $100MM, thereby generating over $100MM in investment gains); CDNetworks (acquired by KDDI of Japan for over $200MM compared to Oak's initial valuation of $100MM, thereby generating over $100MM in investment gains); and Circle Internet Finance

---

[5] The Defendant reserves all rights that this is already and would continue to be in violation of, *inter alia*, the Fifth Amendment's double jeopardy clause and the Excessive Fines Clause of the Eighth Amendment.

[6] Indeed, Oak constantly referred to the Defendant as a "rising star" and repeatedly put the Defendant in front of its investors as part of Oak's success story. And the Defendant's investment gains for Oak clearly support that premise.

(a private company that was valued in May 2018 at over $3 Billion or $16.23 per share; compared to Oak's initial investment valuation of $96MM or $0.9667 per share, representing a 17x increase in valuation)[7]. These investments, amongst others, have earned Oak, their investors and partners, *at least many hundreds of millions of dollars* in net investment gains. Oak has more than benefited from the Defendant's employment at Oak and these investment returns must be considered by this Court in this judgment for disgorgement to be equitable, as clearly mandated by *Liu*.

As stated, this Court has ordered a judgment of $64.4MM, the entirety of which the SEC has already stated will go to the alleged victim.  The *disgorgement already ordered* does not conform to traditional equitable principles and is in contravention of the standards set by Supreme Court ruling in *Liu*. The Supreme Court held in *Liu* that the SEC could not "seek[] an equitable remedy in excess of a defendant's net profits from wrongdoing." 140 S. Ct. at 1946 (emphasis added). To allow otherwise, the Supreme Court explained, "would be 'inconsistent with the ordinary principles and practice of courts of chancery.'" *Idem*. at 1940 (quoting *Tilghman v. Proctor*, 125 U.S. 136, 145-46 (1888)); see also *id*. at 1943.

This principle also means a defendant can be required to disgorge only unlawful gains *causally connected* to a securities-law violation, *Liu*, 140 S. Ct. at 1946, as several of the Second Circuit's pre-*Liu* precedents also make clear, *SEC v. First Jersey Sec., Inc*., 101 F.3d 1450, 1475 (2d Cir. 1996); *see* also *SEC v. Cavanaugh*, 445 F.3d 105, 116 & n.25 (2d Cir. 2006).  *See* also *idem*. at 1942 ("[e]quity courts have routinely deprived wrongdoers of their net profits from *unlawful* activity"); *idem*. at 1943 (recognizing the historical remedy "tethered to a wrongdoer's **_net_** *unlawful* profits") (emphases added)).In short, as *Liu* confirmed, a defendant may only be

---

[7] https://bit.ly/3aYReO5 - accessed from the SharesPost website on 3rd May 2021.

ordered to turn over in disgorgement only the **_net_** amount obtained "through the[ir] wrongdoing." *SEC v. Contorinis*, 743 F.3d 96, 301 (2d Cir. 2014). Nothing in the NDAA changes or alters this premise.

Not only did the Defendant return over $550MM[8] of gains to Oak by way of his investments, Oak has also seized at least $40MM of Defendant's vested and earned assets, which have not been accounted for anywhere in the judgment. These assets properly belonged to the Defendant at the time of the asset freeze [Doc. #933] and the alleged seizure is effectively equivalent to a private right of action, functionally no different than if Oak had filed suit and obtained a judgment against Defendant requiring the forfeiture of the Defendant's assets. This would clearly require an offset to disgorgement, in light of traditional equitable principles. Even the SEC has admitted that "Congress… provided that defendants in private actions may offset damages against the amounts they are required to disgorge." [Doc. #684 at 16]. Yet, that has not been done here.

In addition, the SEC has admitted that "money is fungible" [Doc. #1779 at 5] and the Second Circuit has stated that "money is the quintessential fungible." *Towers Charter & Marine Corp. v. Cadillac Ins. Co.*, 894 F.2d 516, 523 (2d Cir. 1990). As disgorgement is an "obligation to return a sum equal to the amount wrongfully obtained, rather than a requirement to replevy a specific asset," (*Securities & Exchange Commission v. Banner Fund International*, 211 F.3d 602, 617 (D.C. Cir. 2000)) the Court would have to ensure that any awards or payments to Oak are offset against the disgorgement amount here, else disgorgement is rendered punitive. In addition, Oak is also in the control of the Defendant's non-forfeited interests and those would also have to be offset against any disgorgement awarded.

---

[8] Without including another few hundred million dollars of unrealized gains from the Defendant-led investment in Circle Internet Finance.

Clearly, the judgment *already ordered* contravenes the well-settled "equitable principle," noted above, "that the wrongdoer should not be punished by pay[ing] more than a fair compensation to the person wronged." *Liu*, 140 S. Ct. at 1943. The disgorgement as already ordered is punitive and now further reopening the final judgment that the SEC did not appeal to increase disgorgement would further punish the Defendant.[9]

Here, the SEC seeks to increase the judgment, *already* at $64.4MM. The SEC has stated that Oak, the alleged victim, will receive the entirety of this amount. In addition, this Court has, without allowing for any litigation on the matter between Defendant and Oak, stated that the Defendant's earned assets worth at least $40MM, have been forfeited. Thus, Oak has taken an additional $40 MM. Also, Oak has a further $57MM arbitration award against the Defendant. This *already means that Oak would have received over $160MM (not even increasing the judgment here)* for alleged disgorgement of $41.9MM for the *same underlying alleged conduct at issue in this instant proceeding. And the SEC seeks to increase this amount to Oak!* This is beyond any "fair compensation" for any alleged "wrong" and is impermissibly punitive.

**C. The Court Would Have to Make Additional Findings.**

Contrary to the SEC's contentions, clearly, in light of Supreme Court decision in *Liu*, the Court would need to make several and significant additional findings to ensure that the disgorgement already ordered is not punitive.[10] In particular, the Court would have to ensure that it had the jurisdiction to reopen the final judgment entered over two years ago in a situation where the SEC did not appeal the judgment and where there were settled expectations. Then, if

---

[9] The SEC brings extraneous matters to their brief that are not relevant to the remand issue and [e.g. Doc. 1904 at 11] that the Defendant has already addressed in various filings with this Court and thus will not repeat them here but incorporates those filings in their entirety.

[10] The Defendant reserves all rights that the final judgment already on appeal does not conform to traditional equitable principles, as mandated by *Liu*.

the Court decided to apply the NDAA to this proceeding to reopen time-barred claims (over the Defendant's objections), the Court would have to determine the net receipts by Oak across the relevant time span from all of Defendant's activities at Oak – *inter alia*, his investment recommendations, the allegedly forfeited Oak assets, payments to effectuate any investments or wins for Oak, and any other awards such as the arbitration award – and *then* offset those total amounts from the disgorgement in this case.

This is further supported by the fact that the SEC admits that it would seek *gross* disgorgement if it could, contrary to *Liu's* holdings. The Court rightfully deducted the cost of Company C2 transaction in October 2014 by subtracting the $2MM cost basis from the shares [Doc. #955 at 11].  The SEC *themselves* did so for the Company C1 transaction in October 2013 [Doc. #208 at 41, seeking $8.9MM in disgorgement, as $2MM was cost basis of the shares]. Yet, now the SEC amazingly states that it would still seek the cost basis as disgorgement, clearly contrary to *Liu's* holdings. And contrary to the SEC's statement that the "Defendant offloaded all of his Company C shares prior to its collapse…" [SEC Limited Remand Brief, n. 2], the SEC misleadingly omits that Oak *itself* valued the company at a significantly higher level than in any of the Company C transactions at issue here. Indeed, in late 2015 or early 2016, many months after the initiation of this dispute by the SEC, Oak valued the Company C shares at a significantly higher valuation, *many months **after** the Defendant was terminated from his employment at Oak*. The Defendant has already made this clear and the SEC has conceded this fact [Doc. #617 at 10, para. 23, 24; Doc. #668 at 13-14]. Clearly, all of the SEC's requested disgorgement amounts need to be examined in detail, given their own statements.

In addition, the Defendant has appealed, *inter alia*, the denial of funds for his legal representation in this instant proceeding, which has impacted the Defendant's due process and statutory rights to mount a defense, and such is before the Second Circuit Court of Appeals. This

15

includes the summary judgment motions for liability and damages. To the extent the Court relies on those findings now, such is before the Second Circuit Court of Appeals and is an appellate issue under appellate jurisdiction.

Also, to the extent the Court, over the Defendant's objections, reopens the final judgment, the Defendant would need access to the underlying discovery, would need to be able to seek and subpoena further discovery, would have to be allowed to depose alleged witnesses, or at least would need legal counsel to adequately determine the proper amount of disgorgement, taking into consideration, *inter alia*, net receipts by Oak as well as the disgorgement amounts.

For example, the Defendant transferred a significant amount of his personal funds to an individual to co-invest in order to enable Oak's investment in **Company D**.  Without that transfer from the Defendant, the investment by Oak in Company D would not have even happened; and because of that investment, Oak made a profit of over 30x (thirty times) or over $230MM on its initial investment, entirely due to the Defendant's actions.  An initial $7.5MM investment in Company D returned at least $230MM net to Oak. Not only do the returns have to be taken into account, but so too does the Defendant's $5MM upfront payment that enabled the investment in the first place. *Liu*'s holdings mandate such.

Another example is **Company H**. There was no share repurchase in 2009 for Company H.  Rather, there was a transfer of shares due to a very bitter lawsuit between Oak and the founder of Company H where the founder of Company H was ordered by UK court to transfer his shares to Oak which is why that transaction occurred. Thus, there was no share sale or purchase here and the transaction falls outside of the scope of Federal Securities laws. Oak simply formed a new entity that included the founder's shares, as ordered by the UK Court. The Defendant was precluded from the underlying discovery, but he is sure that if the Court carefully examined the relevant documents carefully, it would show the new entity as well as the founder's

16

shares as part of that new entity, as ordered by the UK Court. This itself does not fall under SEC regulation and would have to be precluded from disgorgement. In addition, under *Liu*, the Defendant must be allowed to seek and provide to this Court evidence of payments made during the lawsuit that enabled Oak to win that lawsuit, as those are expenses that must be taken into account to adequately provide any net number that the SEC seeks to disgorge, if this Court deemed any disgorgement from this transaction.

Yet another example is **Company G**, where all transactions were undertaken with the explicit knowledge and approval of the Oak Managing Partner, Mr. Edward F. Glassmeyer, and a series of management incentive programs were instituted that allowed for carve-outs to unofficial advisors as well as substantial personal expenses incurred by the Defendant and that led to a successful Oak investment recovery and gains from that company.  Without those expenses, the total $75MM investment of Oak in Company G would have been a complete write-off.  Again, the Defendant would need to *subpoena* and depose Oak for those documents to provide evidence of payments so that the ultimate net amounts can be adequately calculated, as per *Liu*.

The Second Circuit has also recently provided guidance on identifying predominantly foreign transactions that are outside the scope of the Federal Securities Laws. The Second Circuit affirmed the dismissal of a claim under the Exchange Act, holding that a private sale of restricted shares between two companies was "so predominantly foreign" as to be impermissibly extraterritorial under the facts presented, despite a defendant's principal place of business being in New York, and the parties entering a subscription agreement that was partially signed in New York, governed by New York law and that required any resales to be registered with the SEC. *Cavello Bay Reinsurance Ltd. v. Stein*, No. 20-1371 (2d Cir. Jan. 25, 2021). The Defendant does not have the details but remembers that at least one of the transactions – **Company D** – was impermissibly foreign and was transacted with multiple foreign entities involving Luxembourg,

17

Dutch, and South Korean entities.  Under the Second Circuit's recent guidance, such transaction would be completely outside the scope of the Federal Securities laws. If the Court reopens the time-barred claims, the Defendant reserves the right to retain all defenses with respect to all transactions, especially as he was denied access to, *inter alia*, the underlying discovery, to any transcripts of depositions and to counsel who would have viewed such evidence on his behalf, an issue on appeal before the Second Circuit.

The Supreme Court was clear that disgorgement is a function of ***net*** unjust profits. The examples listed here are just some examples where the SEC has failed to net out payments made in the various transactions, which have resulted in a substantial gain for the alleged victim, Oak, and which was done with the approval of the Managing Partners. The Defendant was not a Managing Partner at Oak. In short, the SEC has not met *Liu's* mandate of ensuring that the disgorgement amounts it seeks in this case are *net* amounts related to alleged wrongdoing and has not taken out legitimate expenses associated with these alleged transactions. And the Defendant, without counsel, is unable to provide specific details of the underlying truth, as he has been precluded from viewing the evidence, deposing, or even from being able to subpoena Oak in this matter and was denied counsel in this matter who could do so on his behalf. The Defendant's due process rights in this case are under appeal.  Trying to ascertain net amounts is the equivalent of another summary judgment – after these time-barred claims for disgorgement have already been effectively dismissed in earlier summary judgment briefing. The SEC has not offered or even attempted to give net amounts for disgorgement itself – indeed, even astoundingly admitting that it would, if it could, seek the gross disgorgement amount for the **Company C2** transaction [SEC Limited Remand Brief, n. 2] – supporting the fact that these pre-2010 disgorgement amounts requested by the SEC are gross amounts and contradict *Liu's* mandate. Such requires further briefing as well as allowing the Defendant access to discovery to

be able to provide the expenses to calculate the *net* disgorgement number, if the Court believes it would apply the NDAA to reopen time-barred claims in this proceeding, else it would be in violation of *Liu's* equitable tenets.

Furthermore, in cases where the SEC has not provided net estimates for disgorgement consistent with *Liu*, courts have declined to award disgorgement.  "Because of the timing of the Supreme Court's decision [in *Liu*], the SEC argues that the Parties did not have the opportunity to conduct discovery or brief the issues presented by *Liu*. And it contends that the record is lacking with respect to what portion of the $1,757,000 constitutes Husain's net profits…. [thus] the Court finds that its imposition of a permanent injunction, seven-year officer and director and penny stock bar, and $1,757,000 civil penalty are sufficient punishment and deterrence to address [Defendant's] violations of the securities laws. Therefore, in the exercise of its broad discretion, the Court **DENIES** the SEC's request for disgorgement." *Sec. & Exch. Comm'n v. Husain*, No. 2:16-cv-03250-ODW (Ex), at *20 (C.D. Cal. Mar. 24, 2021)(emphasis in original).[11]

Similarly, in this instant proceeding, the SEC incredibly has not even attempted to revise its disgorgement calculation or calculate ***net*** disgorgement to be consistent with *Liu's* mandate, instead offering an impermissible *gross* disgorgement calculation[12] that does not take *Liu's*

---

[11] The Court has the discretion to deny disgorgement. The Court "has broad discretion … in determining whether or not to order disgorgement." *SEC v. First Jersey Sec., Inc*., 101 F.3d 1450, 1474–75 (2d Cir.1996). Just as the Court denied disgorgement in *Husain,* where the SEC did not make particular findings and which did not even deal with potential constitutional, statutory and jurisdictional violations, so too, here the SEC has not even attempted to define or cabin their pre-2010 disgorgement request to conform to *Liu's* mandate. This is further support for the Court to deny the SEC's request in its entirety.

[12] Indeed, the SEC even incredibly states and admits that it would, but for the limited nature of the remand, seek to add the cost basis of the Company C2 transaction, which this Court removed from the 2018 disgorgement calculation. Clearly the SEC has not considered or even applied *Liu's* mandate regarding a *net* disgorgement calculation here.

mandate into account, and the Court should deny to award disgorgement as the Court in *Husain* did.

### D.  The Due Process Issue is on Appeal.

In addition, this Court's orders denying the Defendant the ability to view the evidence in this case as well as denying the Defendant counsel to view the evidence on his behalf, is on appeal as a violation of the Defendant's due process rights. Indeed, a substantial portion of the Defendant's opening brief in the Second Circuit Court of Appeals is on this very issue. The SEC relies on this Court's orders based on the summary judgment rulings for its calculation of disgorgement and prejudgment interest. However, the Defendant's due process rights in this litigation, including for summary judgment rulings, are on appeal and to the extent the Court relies on those orders, it would implicate an issue already on appeal.

In addition, this Court denied the Defendant any access to any evidence, including for the amounts of any alleged transfers. This Court also did not allow the Defendant any aid by way of counsel to subpoena Oak for information during discovery, completely precluding the Defendant from evidence that he could have used in his defense. The Defendant must have access to that evidence to ascertain if the amounts alleged as disgorgement by the SEC are even correct and to adequately refute them and provide the net disgorgement amounts, as mandated by Supreme Court ruling in *Liu*.

### E.  The Disgorgement Cannot Reach Back Beyond January 1, 2011.

Even if this Court believed that the NDAA was applicable to this proceeding and decided to apply it, it should clearly order that the disgorgement would be from the date of enactment of statute, which the SEC completely ignores. As there was no §21(d)(7) when the SEC brought its claims in May 2015, any claims under that statute would have to be from the date of the statute, which is January 1, 2021. To allow the SEC to reach claims before January 1, 2011 would not

only go beyond NDAA's ten year limit but would also reopen previously conceded time-barred claims, render disgorgement punitive and would fit squarely within the definition of "punishment" under the *ex post facto* clause, especially in this case. "[A] law enacted after expiration of a previously applicable limitations period violates the ex post facto clause when it is applied to revive a previously time-barred prosecution." *Stogner v. California*, 539 U.S. 607, 632-33 (2003).

Thus, if the Court applied the NDAA, it can only go back to January 1, 2011 and this would have the effect of lowering the disgorgement amount from approximately $41,920,639 to $39,734,693, as any claims for Company I transaction in December 2010 ($2,185,946) [Doc. #829, n.3] would be removed as it is out of the statute under §21(d)(7).

**F.  The Court Should Decline to Enter An Amended Judgment.**

Application of the NDAA to reopen stale, time-barred claims that were conceded to be time-barred by the SEC and which the Court agreed were time-barred in a situation where final judgment was entered over two years ago, where the SEC did not notice an appeal and where expectations were settled[13] that "the judgment amount isn't going to go up [because the SEC did not appeal]" [Doc. #1042 at 4] violates multiple constitutional, statutory and jurisdiction tenets. Even if this Court determined that the NDAA was applicable to this case, the SEC has not provided an appropriate disgorgement obligation amount consistent with either the NDAA or *Liu's* mandate. It would be inappropriate, for the reasons discussed in the Defendant's Limited

---

[13] This is further confirmed by the Court's order, *after* the enactment of the NDAA, releasing funds for the Defendant to have counsel in his arbitration related matters wherein the Court stated that "the recent accounting by the Receiver appears to indicate that there will be some balance of assets in excess of the ultimate judgment" [Doc. #1750 at 4]. Defendant, Relief Defendants, and their counsel relied on this understanding, made explicit by the Court's statements. At no point in time did the Court give any indication that it expected the judgment to increase on account of the NDAA.

21

Remand Brief, as well as this instant Reply, for the Court to enter an amended judgment due to the enactment of the NDAA, which is inapplicable to this case, and the Court should decline to do so.

### G.  NDAA Does Not Allow for Prejudgment Interest.

#### 1.   The NDAA Does Not Allow for Prejudgment Interest

Even if the Court decided to apply the NDAA to this proceeding and increase the disgorgement amount (over Defendant's objections), the limited remand does not provide for the Court to impose any prejudgment interest. In addition, there is nothing in the NDAA that allows the SEC to seek prejudgment interest on any alleged increased disgorged amounts. In particular, the NDAA raises serious textualist doubts about whether the SEC can demand prejudgment interest, as it is silent about prejudgment interest, in stark contrast to its existing statutory counterpart that explicitly provides for prejudgment interest on disgorgement amounts ordered in SEC administrative proceedings. (Compare NDAA: "[the SEC may] require disgorgement . . . of any unjust enrichment by the person who received such unjust enrichment as a result of such violation." vs. SEC administrative proceedings: "[the SEC may] enter an order requiring accounting and disgorgement, including reasonable interest.")

#### 2.   Prejudgment Interest is Punitive in this Instance

Regardless, to seek prejudgment interest on stale and time-barred claims from beyond ten years[14] from the date of statute is punitive in nature and would "increase [the Defendant's]

---

[14] As recognized by the Supreme Court, "[u]nlike the private party who has no reason to suspect fraud, the SEC's very purpose is to root it out, and it has many legal tools at hand to aid in that pursuit." *Gabelli v. Sec. & Exch. Comm'n*, 568 U.S. 442, 451 (2013). The Defendant should not be penalized for the SEC's delay.

liability for past conduct"[15] when those claims had already been effectively dismissed as time-barred. This issue is neither insignificant nor academic. As per the SEC's own calculations, these prejudgment interest amounts are sizable and amount to a substantial percent of the amount of disgorgement itself. This means that the prejudgment interest solely for already time-barred and stale claims would be ***at an equivalent rate of 37% of the disgorged amounts for time-barred claims***.[16] [*See* **EXHIBIT B**] This is clearly punitive in nature, especially when added for time-barred claims that ***go back 16 years from the date of enactment of the NDAA***. The Court should decline to order prejudgment interest[17] on any disgorgement amount even *if* it applies the NDAA to this proceeding to reopen a final judgment where the claims have been effectively time-barred. To do otherwise renders prejudgment interest punitive and in violation of the ex post facto clause and would result in over-compensation to the alleged victim. *See, e.g., Wickham*, 955 F.2d at 834. "Awards of prejudgment interest must not result in over-compensation of the plaintiff." (*Wickham Contracting Co. v. Local Union No. 3, International Brotherhood of Electrical Workers, AFL-CIO*, 955 F.2d 834 (2d Cir. 1992)).

---

[15] Applying the NDAA to this proceeding now would attach new consequences "to events completed before its enactment" and "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed" *De Cardenas v. Reno*, 278 F. Supp. 2d 284, 291-92 (D. Conn. 2003) and would be in violation of the ex post facto clause.

[16] The SEC's requested disgorgement for pre-2010 time-barred claims (which goes beyond the 10-year statute in the NDAA) is $22.2MM and the SEC's requested prejudgment interest on this amount is approximately $8.2MM. Thus, $8.2MM divided by $22.2MM is ***equivalent to a prejudgment rate of approximately 37%***. That is clearly punitive.

[17] As discussed in more detail further in this Reply.

### 3.   The Rate Used by the SEC for Prejudgment Interest is Punitive, Especially After *Liu*.

Also, here the prejudgment interest rate that the SEC uses in its calculation is punitive for

pre-2010 claims, which are time-barred claims that have already been resolved and dismissed

with respect to disgorgement. If the Court now – over Defendant's objections – orders

disgorgement for pre-2010 claims, it should decline to give prejudgment interest on that

disgorgement. If the Court does order prejudgment interest, it should use a more reasonable rate,

as the amounts would go back to the alleged victim Oak and not only would the alleged victim

not have received rates equivalent to those requested by the SEC here, but also to give the IRS

underpayment rate requested by the SEC is punitive and in violation of *Liu's* equitable tenets.

In particular, if prejudgment interest is appropriate, the appropriate fixed rate should be

the one-year Treasury Bill rate. The Second Circuit has held that prejudgment interest "generally

'should be measured by interest on short-term, risk-free obligations,'" like Treasury Bills. *N.Y.*

*Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*, 266 F.3d 112, 131 (2d Cir. 2001). While there has

been use of the IRS underpayment rate in some disgorgement cases, *see SEC v. First Jersey*

*Securities, Inc.*, 101 F.3d 1450, 1476 (2d Cir. 1996), those cases preceded *Liu*.  "The IRS rate is

**_intentionally punitive_** to discourage taxpayers from using the government as an involuntary

banker by deferring payment of taxes." *In re Vivendi Universal*, S.A. Sec. Litig., 284 F.R.D. 144,

163 (S.D.N.Y. 2012) (emphasis added). Now that *Liu* has held that disgorgement cannot be

punitive, nothing justifies applying an "intentionally punitive" rate here. There is no reason to

apply a different and harsher rule in disgorgement cases than in an ordinary civil case. Here, the

alleged victim has been recompensed multiple times and the Court should decline to award any

prejudgment interest. If the Court does award prejudgment interest, it should use a rate like the

one-year Treasury bill rate and ensure that it does so on the proper *net* disgorgement amount as cabined by *Liu*.

### 4.   Compound Interest is Punitive, especially after *Liu.*

The Court should also decline to award compound interest, especially on these stale, time-barred claims that the Court did not order disgorgement on in the final judgment on appeal. Here, the SEC has sought prejudgment interest at the IRS underpayment rate, compounded quarterly. But after *Liu,* compounding interest is punitive and would provide Oak, the alleged victim, with a further windfall, contrary to the contention that "the aim of the [interest] awarded is to make the plaintiffs whole, but not to give them a windfall." *Algie v. RCA Global Communications, Inc.*, 891 F. Supp. 875, 899 (S.D.N.Y. 1994). Courts have declined to award interest at a compounded rate due to its punitive nature, especially in cases with large amounts or long periods of time. "Compounding prejudgment interest is harsh and oppressive, particularly where, as here, the interest would compound over a long period of time (eight years) on a substantial sum ($4,195,006.50) … [t]he Court therefore will compute prejudgment interest on a simple basis." *Int'l Transp. Mgmt. v. Brooks Fitch Apparel Grp.*, Civil Action No. 11-1921 (ES) (JAD), at *9 (D.N.J. Sep. 14, 2020) (internal cites and quotations omitted).[18] Here, the time period is even longer and the amount even greater, rendering the compounding frequency, the rate requested by the SEC and the length of the time period particularly punitive.

This is confirmed by the numbers themselves.  Here, the SEC uses the IRS underpayment rate, compounded quarterly in its request for prejudgment interest. Indeed, the SEC's

---

[18] Courts also select simple interest to "to avoid the complexities of compounding interest" and make it clear that "such awards may not penalize the defendant." *Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 619 (6th Cir. 1998); "[T]o avoid the complexities of compounding interest [,] and to insure the prejudgment rate is not punitive, the interest rate will be simple and not compound." *Butz v. Campbell*, Civil Case No.: 1:18-CV-00054-GNS, at *18 (W.D. Ky. May 2, 2019) (internal quotations omitted).

prejudgment interest amounts as a percent of the SEC's disgorgement claims for these pre-2010 time-barred claims is *over 30% for nearly all of the time-barred transactions*, and a good number of them are over ***approaching or already are over 50% of the disgorgement amount itself.*** [**EXHIBIT B**]. This is impermissibly punitive, in violation of *Liu's* equitable mandate, beyond any equitable considerations and results in over-compensation to the alleged victim.[19]

### 5. The Court Has the Discretion to Deny Prejudgment Interest and Should Do So Here.

The Court should decline to order prejudgment interest. Awarding prejudgment interest is discretionary. *Frommert v. Conkright*, 913 F.3d 101, 109 (2d Cir. 2019). In addition, no case holds that an award of disgorgement must always be accompanied by an award of prejudgment interest. "In deciding whether an award of prejudgment interest is warranted, a court should [take into account] ... considerations of fairness and the relative equities of the award, [ ] the remedial purpose of the statute involved, and/or [ ] such other general principles as are deemed relevant by the court." *Sec. & Exch. Comm'n v. Wyly*, 56 F. Supp. 3d 394, 406 (S.D.N.Y. 2014). "Those same factors also inform a district court's choice of a particular interest rate, id., which "must not result in over-compensation of the plaintiff,"" *Frommert v. Conkright*, 913 F.3d 101, 109 (2d Cir. 2019).

Here, the Court must take into account the fact that it alone has deemed the Defendant's earned Oak assets worth at least $40MM to be forfeited to Oak, it has allowed Oak to pursue a $57MM arbitration award and the SEC has already stated it will give this judgment back to the

---

[19] The Defendant maintains that the Court should not award prejudgment interest. However, if the Court was to award prejudgment interest (which it should not, as these claims are time-barred, as conceded by the SEC themselves), then the Court should use the average one year Treasury bill rate over the time period, at a simple rate. The Court can also only do so once it has determined a proper net disgorgement amount.

alleged victim, Oak. Oak has been more than overcompensated, at the expense of Defendant,[20] and a further award of prejudgment interest on time-barred claims is inequitable and punitive.

In addition, there was no expectation of disgorgement for the time-barred pre-2010 claims and there was no expectation of prejudgment interest. Thus, it would be unfair and inequitable to order it. If the Court decides to order disgorgement for pre-2010 claims (over Defendant's objections), it should decline to order prejudgment interest.

### H.  NDAA Does Not Allow for "Interest or Gains."

#### 1.  Neither the Limited Remand nor the NDAA allow the SEC to seek "interest or gains."

Even if the Court decides that it will apply NDAA to this proceeding and increase the disgorgement amount (over Defendant's objections), the limited remand does not provide for the Court to impose "interest or gains".[21]  In addition, there is nothing in the NDAA that allows for the SEC to seek "interest or gains" on any alleged disgorged amounts. This is supported by the fact that the SEC gives absolutely no information regarding "interest or gains" but simply refers to it only once in passing in the last line of its Limited Remand Brief [Doc. #1904 at 13]. Further, the SEC also made it clear and conceded in the introduction that it was **only** seeking "disgorgement… together with prejudgment interest… [and thus] [c]onsistent with the narrow purpose for the Remand Order, the Court should not alter other portions of the Judgment" [SEC Limited Remand Brief at 2]. This includes any award of "interest or gains" on disgorged assets, even for pre-2010 claims. Thus, the SEC itself concedes that it can only seek disgorgement in the

---

[20] The Defendant reserves all rights, *inter alia*, that the judgment is punitive.

[21] The issue of "interest or gains" itself is under appeal.

limited remand order and it attempts to seek prejudgment interest on those time-barred claims. The issue of "interest and gains" is not even part of the remand, *as conceded to by the SEC*.

To the best of Defendant's knowledge, this Court is the only Court to impose "interest or gains"[22] on disgorged assets,[23] which has rendered an additional penalty on the Defendant, especially after Supreme Court mandate in *Liu*. Not only does imposition of "interest or gains" render the asset freeze unlimited, which is in violation of Second Circuit ruling for limits to asset freezes, it is also an additional penalty on the Defendant and against *Liu's* equitable mandate.

**2. "Interest or Gains" is punitive and beyond "fair compensation."**

There is no provision anywhere that allows for "interest or gains" and for the Court to order it on pre-2010 disgorgement would render the judgment punitive and in violation of the *ex post facto* clause. Not only does the award of "interest or gains" punish the Defendant by awarding amounts that are entirely due to *his* (or Relief Defendants') investment savvy, in this situation where the value of assets frozen is substantially greater than the judgment amount, to award "interest or grants" allows the SEC or the Receiver to cherry pick the assets to use towards disgorgement, an outcome that is not tolerated by *Liu's* holdings. In fact, this would have the effect of allowing the SEC or Receiver to change the size of the ultimate judgment, simply by selecting those assets that have earned "interest or gains" and leaving behind residual assets that have lost value. This would never have been tolerated by courts sitting in equity and certainly not by *Liu's* holdings.

---

[22] The Second Circuit case that the District Court relied on, *SEC v. Razmilovic*, 738 F.3d 14, 36 (2d Cir. 2013), allowed for accumulated interest to be turned over in satisfaction of the already ordered judgment of disgorgement, prejudgment interest and civil penalty *because* the frozen assets were less than the judgment amount already on appeal, i.e. the Defendant owed more than the frozen amount. That is not the case here.

[23] As stated, the Second Circuit in *Razmilovic* allowed for "accumulated interest" as the Defendant owed more than the frozen amount. "Accumulated interest" is not "interest or gains" and is presumably at the bank checking rate for that particular account.

*Liu* made it clear that disgorgement is "tethered to a wrongdoer's net unlawful profits." This is supported by the premise that the SEC generally must distinguish between *legally* and *illegally* obtained amounts. "....in order to establish a proper disgorgement amount, "the party seeking disgorgement must distinguish between the legally and illegally derived profits," so that disgorgement is ordered only with respect *to those that were illegally derived*." (emphasis added) *Sec. & Exch. Comm'n v. Razmilovic*, 738 F.3d 14, 31 (2d Cir. 2013)

In addition, the SEC has stated that it will give the judgment to the alleged victim, Oak. Not only has Oak received multiple judgments for the same underlying alleged conduct, the Supreme Court ruling in *Liu* made it clear that the alleged wrongdoer should not be punished by 'pay[ing] more than a fair compensation to the person wronged.'" *Liu*, 140 S. Ct. at 1943 (quoting *Root v. Railway Co.*, 105 U.S. 189, 207 (1882), and *Tilghman v. Proctor*, 125 U.S. at 145-46). Equitable principles thus mandate that the Court cannot order "interest or gains" in this case without it being punitive. Not only would the alleged victim receive disgorgement, it may also receive some amount of prejudgment interest if this Court orders it (which Defendant opposes). To allow for *further* unspecified amount of "interest or gain" – that is *legally earned income* – is beyond what is "fair compensation" and renders such an award inequitable and punitive. It would further violate the *ex post facto* clause.

> **3. An Imposition of "interest or gains" renders the Defendant's liability unbounded and unknown and causes for an unlimited, hence inequitable and unlawful, asset freeze until the Second Circuit rules on the permissibility of such grant.**

To further order "interest or gains" is also clearly against the premise that an asset freeze is a fixed amount. This Court has said that it can freeze assets up to an amount that includes disgorgement and civil penalty. [Doc. #113 at 15]. The earlier asset freeze at the inception of this case was for $118MM [Doc. #113], which the Court subsequently lowered to $89MM [Doc.

29

#829]. The SEC now asks for disgorgement of $64,171,646.14 and prejudgment interest of $9,755,798.34. Adding those amounts up with the $21MM penalty would render a potential maximum asset freeze in the ***fixed amount* of $94.9MM**. The Court cannot freeze assets beyond this amount, *even if the Court increases the disgorgement with the addition of time-barred claims*. This is further supported by the Second Circuit's questioning of the SEC at oral hearing in the Relief Defendants' 2016 appeal:

> *Second Circuit Bench*: "Do you acknowledge that you may not freeze … assets going beyond [asset freeze amount][24]… [asset freeze amount] is the maximum that you can freeze… [including]… aggregating anything that you have frozen of the principal Defendant and the Relief Defendants…"
>
> *SEC*: "**Yes, Absolutely."** [25] (emphasis added).

Here, the Court has a judgment for $64.4MM, an asset freeze order for $89MM[26] and the SEC's unconstitutional request to increase the judgment to $94.9MM. The Court cannot freeze assets beyond that amount even *if it decided to apply the NDAA to time-barred claims to increase the judgment*. While the Court has continued the asset freeze order as a *supersedeas* bond, the asset freeze is not limitless. However, an unknown judgment of "interest or gains" is exactly that – rendering a limitless asset freeze or forcing a liquidation that may not even be necessary depending on Second Circuit review and that irreparably harms the Defendant and Relief Defendants if done, pre-appeal.

---

[24] This "asset freeze amount" is defined as disgorgement, prejudgment interest, and civil penalty *only*.

[25] *SEC v. I-Cubed Domains, LLC*, 15-2658-cv (2d Cir. 2016), oral argument minutes 21:20.

[26] The Defendant maintains that the asset freeze should have been for $85MM as it did not take into account the cost basis of the Company C transaction in October 2014. [Doc. #1157 at 5]

30

In addition, awarding "interest or gains" mandates a tracing of funds, which the SEC has not done, and has explicitly refused to do, in this case. Awarding "interest or gains" contravenes the well settled principle that disgorgement is an "obligation to return a sum equal to the amount wrongfully obtained, rather than a requirement to replevy a specific asset" (*Securities & Exchange Commission v. Banner Fund International*, 211 F.3d 602, 617 (D.C. Cir. 2000)). Not only that, this particular case is unusual in that the Defendant and Relief Defendants have invested – and not squandered – any funds *and* because the value of the frozen assets itself is substantially greater than any judgment amount. Thus, any award of "interest or gains" would allow the SEC to "choose" and to "cherry pick" those assets that have returned greater investment profits while leaving aside any residual assets that have lost investment value. This would also have the effect of changing the ultimate judgment amount depending on the assets selected to satisfy any disgorgement. Such an inequitable result cannot stand, especially after Supreme Court's ruling in *Liu* that specifically and explicitly cabined the SEC's disgorgement remedy. To allow for "interest or gains"[27] would render a highly inequitable result, again resulting in an even more extenuating punitive award against the Defendant, as it alone is punitive and more so when applied to time-barred and stale claims.

> **4. The Court's earlier grant of "interest or gains" was before Supreme Court ruling in *Liu* and *Liu* mandates that such a grant is inequitable and now, unconstitutional if there is a re-opening of time-barred claims.**

The Court's earlier grant of "interest or gains" in the 2018 final judgment was ordered before Supreme Court ruling in *Liu*. *Liu's* holdings mandate that there can be no award of "interest or gains" on disgorged assets. Indeed, the SEC is noticeably silent on this point, as they are fully aware that "interest or gains" is not permissible under the NDAA, and it is also not

---

[27] The issue of "interest or gains" itself is on appeal and was a substantial portion of the Relief Defendants' opening appellate brief filed on January 22, 2021 with the Second Circuit Court of Appeals.

permissible under *Liu*, which is why there is no further detailed discussion about awarding "interest or gains" but for a passing reference in the very last line of the SEC's Limited Remand Brief. Indeed, at least one District Court in this Circuit has expressed doubt as to if "interest or gains" can even be awarded on disgorged assets after *Liu*. *See SEC v. Yin*, No. 17-CV-972, 2020 WL 6801915, at *9 (S.D.N.Y. Nov. 19, 2020).

In *Liu*, the Supreme Court held that any disgorgement ordered in favor of the SEC must be limited to the net unjust enrichment obtained by a defendant. 140 S. Ct. 1936, 1943 (2020) Specifically, the Supreme Court explained that disgorgement is a "profit-based measure of unjust enrichment" that was "tethered to a wrongdoer's net unlawful profits" whereby "the wrongdoer should not be punished by "pay[ing] more than a fair compensation to the person wronged." Not only does this have implications for the disgorgement already ordered in this case (which itself is under appeal), this also means that "interest or gains" cannot be awarded, since it is not "tethered to a wrongdoer's net unlawful profits." Interest or gains are *legally earned amounts* and are not related in any way shape or fashion to "unlawful profits" defined as disgorgement and cabined by *Liu's* holdings.

This is further supported by the fact that courts award a specific rate of interest for prejudgment interest, which is calculable, and not some unknown amount of "interest or gains." Here, the Defendant did not have use of the frozen assets during the asset freeze and it is beyond punitive to award "interest or gains" and also prohibited by *Liu's* holdings.

The Court should decline to award any "interest or gains" especially as neither the NDAA nor *Liu* nor the limited remand allow for such, and especially because while it is punitive in and of itself, it becomes further punitive on time-barred and stale claims.

## III.     THE COURT SHOULD DENY THE ENTRY OF ANY AMENDED JUDGMENT.

As the Defendant has detailed, the SEC's pre-2010 claims are time-barred and have been effectively dismissed by order of this Court entered over two years ago and the SEC chose not to notice an appeal on that order. To retroactively apply the NDAA to revive those time-barred claims for disgorgement is punitive and in violation of constitutional, statutory and jurisdictional tenets. Therefore, the Court should decline to enter an amended judgment.

However, should the Court feel that the NDAA is applicable to this proceeding, it should still decline to apply it to enter an amended judgment, as it would be inappropriate to apply the NDAA to a Final Judgment entered over two years prior where the SEC conceded time-barred claims for disgorgement and where the SEC itself did not and failed to notice an appeal.

In the alternative, should the Court still apply the NDAA to this proceeding, it should hold that the NDAA does not apply to pre-2010 claims as the NDAA was only enacted on January 1, 2021 and can only go back ten (10) years from date of enactment to January 1, 2011. In that case, the Court should dismiss the **Company I** transaction[28] from the amended judgment. Any amended judgment also must ensure compliance with Supreme Court ruling in *Liu* – which was decided after the Court entered the 2018 Final Judgment – and make additional findings, *inter alia*, crediting, *inter alia*, the Oak forfeited and non-forfeited assets against the disgorgement amount and allowing the Defendant to net any expenses incurred from those transactions.

---

[28] The Court ordered disgorgement of $2,185,946 and pre-judgment interest of $314,336 for this transaction for **Company I** in the 2018 Amended Final Judgment entered December 14, 2018.  Even if the Court only removed this transaction from the 2018 Final Judgment, it would result in a disgorgement amount of $39,720,639 and prejudgment interest of $1,176,727.

**CONCLUSION**

The SEC is noticeably silent on the multiple violations of well-established constitutional, statutory, and jurisdictional tenets that the application of the NDAA to this instant proceeding would trigger.  Here, the SEC itself conceded the pre-2010 claims were "time-barred" and did not seek disgorgement for such claims. The Court did not order disgorgement for such claims in the Final Judgment entered in 2018, which the SEC declined and failed to appeal. The SEC's claims for pre-2010 disgorgement were effectively dismissed in the 2018 Final Judgment and the matter is final as to those claims.

Furthermore, as the Defendant has already explained in his Limited Remand Brief and this instant Response, reopening stale and time-barred claims renders a violation of, *inter alia*, the *ex post facto* clause and would contravene this Court's own statement that the "almost universal rule [is] that **statutes are addressed to the future, not to the past**" *Spinner Consulting LLC v. Stone Point Capital LLC*, Civil No. 3:19cv1341 (**JBA**), at *9 (D. Conn. Sep. 30, 2020) (emphasis added).

To the best of the Defendant's knowledge, no court has applied the NDAA to a Final Judgment that the SEC has not appealed. This Court should decline to apply the NDAA to this matter and decline to increase the disgorgement obligation already ordered over two years ago in this case.

In the alternative, if the Court awards disgorgement over the Defendant's objections, the Court should only go back ten (10) years from date of enactment of statute and ensure disgorgement is fully in compliance with *Liu's* traditional equitable holdings. If the Court awards prejudgment interest over the Defendant's objections, the Court should only do so at a one-year Treasury Bill rate without compounding.  The Court should, in any event, decline to order

34

"interest or gains" on disgorged assets, as well as stay any liquidation of assets until appellate review of all issues in this matter.

Respectfully Submitted,

Dated:        May 03RD, 2021                    /s/ Iftikar Ahmed

_____

Iftikar A. Ahmed
C/O Advocate Anil Sharma
Government Place East
Kolkata 700 069, India
Tel:     +91-983-008-9945
e-mail: iftyahmed@icloud.com

*Pro Se*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and served by electronic mail to:

MR. NICHOLAS P. HEINKE, *ESQ.*
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1071
e-mail: heinken@sec.gov

MR. MARK L. WILLIAMS, *ESQ.*
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1027
e-mail: williamsml@sec.gov

MR. PAUL E. KNAG, *ESQ.*
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5400
Fax: (203) 653-5444
e-mail: pknag@murthalaw.com

MS. KRISTEN LUISE ZAEHRINGER, *ESQ.*
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5406
Fax: (860) 240-5758
e-mail: kzaehringer@murthalaw.com