UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>         Plaintiff,<br><br>     v.<br><br>IFTIKAR AHMED,<br><br>         Defendant, and<br><br>IFTIKAR ALI AHMED SOLE PROP;<br>I-CUBED DOMAINS, LLC; SHALINI AHMED;<br>SHALINI AHMED 2014 GRANTOR RETAINED<br>ANNUITY TRUST; DIYA HOLDINGS LLC;<br>DIYA REAL HOLDINGS, LLC; I.I. 1, a minor<br>child, by and through his next friends IFTIKAR<br>and SHALINI AHMED, his parents; I.I. 2, a minor<br>child, by and through his next friends IFTIKAR<br>and SHALINI AHMED, his parents; and I.I. 3, a<br>minor child, by and through his next friends<br>IFTIKAR and SHALINI AHMED, his parents,<br><br>         Relief Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 3:15cv675 (JBA) |

**PLAINTIFF UNITED STATES SECURITIES AND EXCHANGE COMMISSION'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE OF FUNDS FOR RETENTION OF LEGAL COUNSEL IN THE NMR E-TAILING NEW YORK STATE LITIGATION**

Plaintiff United States Securities and Exchange Commission ("SEC") hereby files this opposition to Defendant Iftikar Ahmed's motion [Doc. # 1910 ("Motion")] that again seeks the immediate release of money – this time $750,000, with the ability to request the release of additional funds – to retain counsel in a litigation where the opposing party already "received a default judgment against the Defendant." *Id*. at 2. Defendant's request should be again denied.

1

First, the Court should decline to entertain requests to release assets until after it rules on the SEC's request for an amended judgment and determines whether there are sufficient assets available to satisfy that judgment. As this Court previously recognized, the "limited remand for determination of whether Defendant's disgorgement obligation will increase as a result of the passage of the National Defense Authorization Act leaves completely uncertain whether any residual assets of the Receivership Estate will remain after satisfaction of the judgment." Doc. # 1912 at 4. Given this uncertainty, the Court should decline to entertain Defendant's Motion at this time.

Second, even were the Court inclined to permit Defendant to seek the release of assets prior to ruling on the SEC's request for an amended judgment, the instant Motion is an improper request for reconsideration. Defendant previously moved [Doc. # 1324] for the release of money (then $350,000) "to be paid directly by the Receiver to a counsel representing the Defendant in the NMR Case." *Id*. at 9. The Court denied that request: "In light of the market risk to the Receivership Estate and Defendant's failure to show his inability to secure counsel, his request for a release of $350,000 is DENIED." Doc. # 1675 at 5. Defendant does not take on the SEC's earlier arguments,[1] nor does he explain what justifies reconsideration. The market risk to the receivership estate remains. Indeed, as noted above, the Court recognized the continued uncertainty regarding residual assets *after* Defendant filed the instant Motion. *See* Doc. # 1912. Moreover, Defendant does nothing to show his inability to secure counsel aside from repeating false claims that he does not have access to money, which the Court previously rejected. As outlined below, the Court's recent ruling regarding the believability of Defendant's indigence

---

[1] The SEC hereby incorporates its earlier arguments opposing Defendant's previous request. *See* Doc. # 1366 at 3-6.

2

claims does nothing to support a reconsideration request. Put simply, Defendant does not provide a valid basis to seek reconsideration. *See, e.g.*, Doc. # 1532 at 5 ("The 'standard for granting' a motion for reconsideration 'is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'") (quoting *Schrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

Third, even were the Court to reach the merits of Defendant's Motion, it should be denied because it conflicts with the Court's recent Order that even sworn representations to the Court "will not suffice as support for Defendant's" requests for money "without material and objectively verifiable corroboration." Doc. # 1930 at 4. Defendant's Motion is based entirely on his representation to be "indigent and ha[ve] no funds or access to funds to be able to retain legal counsel." Motion at 5. This is not only false, *see, e.g.,* Doc. ## 1795, 1877, but it is insufficient to obtain funds under the Court's recent Order ruling that Ahmed must provide more than his word to obtain funds because "the Court does not credit Defendant's self-attestations of his claimed indigency." Doc. # 1930 at 4.

Fourth, Defendant's request for $750,000 is facially unreasonable. Defendant previously requested $350,000 to retain counsel in the same litigation, *see* Doc. # 1324 at 9, but offers no explanation why the expected costs have more than doubled, or how this amount of money could be justifiable at this stage given NMR e-Tailing has already "received a default judgment against the Defendant" and thus Defendant will be merely "seek[ing] to vacate the default judgment." Motion at 2, 5.

Lastly, Defendant's claim that "equity and law" mandates the unfreezing of money is baseless. Motion at 3. Though disingenuously omitted from his Motion, the asset freeze that

Defendant complains of exists at his request. After the Court entered judgment, the SEC requested that assets be liquidated, the judgment be satisfied, and the asset freeze be lifted. Defendant, by contrast, urged the Court to continue the full asset freeze as a *supersedeas* bond. *See, e.g.*, Doc. # 1057 at 38 ("The Defendant, therefore, presents the following proposal. . . . ALL assets that are currently frozen will remain frozen till all appeals are over…"). Defendant continues to request – and indeed argues he has the right to – an asset freeze acting as a *supersedeas* bond. *See, e.g.*, Doc. # 1952 at 17. Thus, whatever qualm Defendant has with the asset freeze, it is of his own making.

Moreover, because the frozen assets are acting as a *supersedeas* bond, they must adequately secure the amount of the judgment at some point in the future, which continues to increase due to statutorily mandated post-judgment interest. *See, e.g.*, *Kazazian v. Bartlett & Bartlett LLP*, 03-cv-7699 (LAP), 2008 WL 2477467, at *2 (S.D.N.Y. June 19, 2008) ("[T]he supersedeas bond contemplated by Rule 62 must secure not only the total judgment, with costs and interest, but also any damages that may arise from the consequent delay in executing the judgment."). Given this, and given the value of the frozen assets at the time of liquidation cannot be known due to their fluctuation, and give that the costs associated with such liquidation cannot be known until liquidation occurs, the Court is well within its discretion to decline to release a portion of the *supersedeas* bond whether or not excess assets would exist if the judgment was satisfied today.

Further, as stated above, the Second Circuit recently remanded the appeals for determination of Defendant's disgorgement obligation, and therefore it is "completely uncertain whether any residual assets of the Receivership Estate will remain after satisfaction of the judgment." Doc. # 1912 at 4. While there was a recent increase in value to the corpus of frozen

4

assets, it stems largely from a gain on a particular asset, namely Defendant's $3 million investment into the Essell Group (which invested in Ribbit Capital, LP, which invested into Coinbase, a company that operates a cryptocurrency exchange platform). Putting aside the volatility of this asset, Defendant's investment was funded with proceeds of fraud, including the $2,101,185.45 he obtained in connection with the Company G fraud, which is now within the statute of limitations. *See* Doc. # 1904-1 at 2. Because the SEC seeks to disgorge this asset, *see id.*, the increase in value to the corpus of frozen assets may not do anything to oversecure the judgment because, consistent with the Court's earlier holding, Defendant should be liable for "any interest or gains accrued on disgorged frozen assets from the date of the Court's freeze order." Doc. # 1054 at 4. In other words, it remains uncertain whether any residual assets will remain after satisfaction of the judgment. *See* Doc. # 1912 at 4

## **CONCLUSION**

For the forgoing reasons, Defendant's Motion should be denied.

DATED: May 11, 2021

*s/ Mark L. Williams*
Nicholas P. Heinke
Mark L. Williams
Stephen G. Yoder
U.S. Securities and Exchange Commission
1961 Stout Street, Suite 1700
Denver, CO 80294-1961
(303) 844-1071 (Heinke)
(303) 844-1027 (Williams)
(202) 551-4532 (Yoder)
HeinkeN@sec.gov
WilliamsML@sec.gov
YoderS@sec.gov
Attorneys for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

      I certify that on May 11, 2021, a copy of the foregoing document was emailed to Defendant Iftikar Ahmed at IftyAhmed@icloud.com, and served via ECF upon the following:

Paul E. Knag
Kristen L. Zaehringer
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(Counsel for Relief Defendants)

Christopher H. Blau
Stephen M. Kindseth
Zeisler & Zeisler, P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604
(Counsel for Receiver, Jed Horwitt, Esq.)

                                              *s/ Mark L. Williams*
                                              Mark L. Williams