UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br>    *Plaintiff*,<br>    *v.*<br>IFTIKAR AHMED,<br>    *Defendant*, and<br><br>IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents,<br><br>    *Relief Defendants*. | Civil No. 3:15cv675 (JBA)<br><br>May 21, 2021 |

**RULING GRANTING RECEIVER'S MOTIONS FOR FEES**

Receiver Jed Horwitt moves for payment of fees and expenses incurred on behalf of the Receivership Estate. (Mots. for Fees [Docs. ## 1686, 1764]. Defendant opposes, (Def.'s Opps. [Docs. ## 1699, 1787]), and Relief Defendants join that opposition to the extent that it does not conflict with their interests, (Rel. Defs.' Opps. [Docs. # 1702, 1789]. Plaintiff Securities and Exchange Commission ("SEC") submitted no briefing on the issue. For the reasons that follow, the Receiver's Motions for Fees are granted with modification.

**I.    Background**

The Court assumes the parties' familiarity with the facts and history of this case but will briefly review the background relevant to this motion. Receiver Jed Horwitt was appointed on December 20, 2018. (Appointment Order [Doc # 1070].) The Appointment Order states that the Receiver and persons retained to assist in his administration of the Receivership Estate are "entitled to reasonable compensation and expense reimbursement

from the Receivership Estate," subject to "prior approval of the Court" and according to predetermined hourly billing rates. (*Id.* at 16.) The Receiver "shall apply to the Court for compensation and expense reimbursement from the Receivership Estate" within forty-five days after the end of each calendar quarter. (*Id.*) All such fee applications are "interim," "subject to cost/benefit and final reviews at the close of the receivership," and subject to a holdback in the amount of 20% of the amount of fees and expenses for each application, but the "total amounts held back during the course of the receivership may be paid out at the discretion of the Court as part of the final fee application. (*Id.* at 15-16.) The Appointment Order sets out certain requirements for the content of each application fee. (*Id.* at 17.)

## II. Discussion

The Receiver moves for the payment of fees for the following periods: (1) July 1, 2020 through September 30, 2020, (Seventh Mot. for Fees [Doc. # 1686] at 1); and (2) October 1, 2020 through December 31, 2020, (Eighth Mot. for Fees [Doc. # 1764] at 2). The Seventh Motion represents 244 hours worked by the Receiver and Zeisler & Zeisler ("Z&Z") and seeks payment in the amount of $52,142.13 in professional and paraprofessional fees, $4,875.00 in Receiver's fees, and reimbursement of actual and necessary expenses in the amount of $1,355.30. (Seventh Mot. at 3.) The Eighth Motion represents 351.90 hours worked by the Receiver and Z&Z and seeks payment in the amount of $78,143.35 in professional and paraprofessional fees, $3,925.00 in Receiver's fees, and reimbursement of actual and necessary expenses in the amount of $1,731.05.

The "fees assessed reflect the hours worked by Receiver, Z&Z attorneys and paraprofessionals, and the hourly rates applicable at the time that they rendered their services, as modified by the significant discounts provided by the Receiver and Z&Z" for this matter. (Seventh Mot. at 3.[1]) The Receiver represents that the fee applications

> take into account all relevant circumstances and factors as set forth in the Connecticut Rules of Professional Conduct and the SEC Guidelines, including the nature of the services performed, the amount of time spent, the experience and ability of the professionals and paraprofessionals working on this engagement, the novelty and complexity of the specific issues involved, the time limitations imposed by the circumstances, and the responsibilities undertaken by the Receiver and Z&Z under

---

[1] Where the Receiver's motions contain significant overlap in content, the Court cites only to the Seventh Motion for Fees.

2

the Appointment Order.

(*Id.*) The applications include narrative descriptions of the services provided in the time records and summaries of the Receiver's administration of the Receivership Estate. (*Id.*) The Receiver does not seek "reimbursement for secretarial, word processing, proofreading or document preparation expenses (other than by professionals or paraprofessionals), data processing and other staff services (exclusive of paraprofessional services, or clerical overtime)." (*Id.* at 4.) The fee applications reflect the substantial public service discounts determined at the time of the Receiver's appointment, including a twenty-five percent discount to regularly applicable hourly rates for all legal professionals and paraprofessionals. (*Id.*) Pursuant to the SEC Guidelines, the Receiver and Z&Z categorized fees incurred by certain "activity categories." (*Id.* at 6.) The Receiver provided a detailed description of the activities of the Receivership Estate during each billing period. (*Id.* at 12-17; Eighth Mot. for Fees at 12-20.)

Defendant repeats many of the same arguments raised in his objections to the first six Motions for Receiver Fees. (*See, e.g.*, Def.'s Opp. to Seventh Mot. [Doc. # 1699] at 1-2 ("The Court must deny the Seventh Application for the same reasons as the Defendant outlined in his First, Second, Third, Fourth, Fifth and Sixth Oppositions to Receiver's First, Second, Third, Fourth, Fifth and Sixth Applications.").) The Court has already addressed and rejected the arguments in Defendant's six prior memoranda in opposition. (*See* First Ruling Granting Receiver's Mots. for Fees [Doc. # 1415]; Second Ruling Granting Receiver's Mots. for Fees [Doc. # 1714].) Accordingly, the Court similarly rejects the following objections raised by Defendant: (1) general objections to the receivership, (Second Ruling at 4); (2) general objections to the fees charged by the Receiver,[2] despite an hourly rate reduction and holdback, as "excessive, unreasonable, and not justified," (*id.*); (3) categorical objections to reimbursement of Receiver fees, including PACER expenses, online research expenses, Federal Express expenses, copying expenses, service fees, subpoena fees, copying expenses, and conference call expenses, (*id.*); (4) objections to the Receivership Estate paying Receiver's fees, (*id.*); (5) objections to the Receiver's time spent on tax issues (*id.* at 5); (6)

---

[2] The Court does consider specific objections to time entries, which it addresses *infra*.

3

objections that the Second Circuit's pendent appellant jurisdiction divests this Court of authority to award fees (*id.* at 11-12); and (7) categorical objections to "double billing" wherein the Receiver bills more than one professional's time, (*id.* at 6). The Court regrets that Defendant's attempts to relitigate objections previously rejected through verbatim recitation of large portions of prior objections cause the needless accrual of additional legal fees.

### A. Defendant's Opposition to the Seventh Interim Motion

In addition to incorporating the arguments from his prior objections to the Receiver's fee applications which the Court has already addressed, Defendant objects to several specific activities by the Receiver identified in his Seventh Interim Motion.

Defendant challenges the Receiver's billing of "nearly $4,000 or nearly 8% of the total invoice simply for [researching issues regarding third-party creditors] *when it has been made clear that the Receiver has no responsibility nor are third party claims any of his concern*." (Def.'s Obj. [Doc. # 1699] at 13 (emphasis in original).) Defendant maintains that "[t]he Court and this Receiver are *solely* concerned with the SEC's judgment *in this case* and the Court should admonish the Receiver for wasting both time and money on this issue." (*Id.*) The Receiver believes that his efforts to "confirm the scope of his authority under the Appointment Order to address the claims of third-party creditors and assess the impact, if any, on such claims on the Receivership . . . are entirely appropriate and consistent with the Receiver's duties under the Appointment Order, especially against the backdrop of numerous third-party creditors who have sought or may seek payment from the Receivership Estate." (Receiver's Seventh Reply [Doc. # 1720] at 3-4.) The Court agrees with the Receiver that analysis of the Receiver's authority to address the claims of third-party creditors, of which there are many, to determine their impact on the Receivership Estate is consistent with the duties of the Receiver pursuant to the Appointment Order, which *inter alia*, directs the Receiver to preserve the status quo, maximize the value of the Receivership Estate, and take "action as necessary and appropriate for the preservation of the Receivership Estate." (Order Appointing Receiver [Doc. # 1070] at 7-8.)

Defendant objects to the Receiver billing approximately $4,000 researching whether Defendant violated the Litigation Stay, "[b]ut nowhere does the Receiver look to see if anyone else, like Oak, is in violation of the Receiver Order." (Def.'s Obj. at 13-14.) The Receiver

4

maintains that he has an affirmative duty under the Appointment Order to "promptly notify the Court and counsel for the parties of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order." (Receiver's Seventh Reply at 4 (quoting Appointment Order at 13.) Consistent with these duties, the Receiver maintains that he was obligated to review Defendant's 89-page complaint in *Ahmed v. Oak Management Corporation*, No. FST-CV-20-5023148-S, and his 693-page application to vacate the arbitration award in *Ahmed v. Oak Management Corporation*, No. FST-CV20-5023509-S. Again, given the Receiver's directive to notify the Court of any failure or apparent failure to comply with the litigation stay, the Receiver's time spent reviewing the litigation involving Mr. Ahmed was entirely appropriate and within the scope of his duties. Considering that the Receiver has billed significant time researching other potential violations of the litigation stay, his research on Mr. Ahmed's potential violation does not evince bias against Defendant.

Defendant next argues that the Receiver "clearly also proceeds extra-judicially," citing the $1,000 of time billed in discussing liquidation with the SEC "when the Court has clearly stated that any liquidation is stayed pending appeal." (Def.'s Obj. at 14.) The Receiver responds that he "appropriately billed a modest amount for considering a potential liquidation process" in light of the Supreme Court's recent decision in *Liu v. SEC* and Relief Defendants' pending motion for clarification regarding liquidation of assets. (Receiver's Seventh Reply at 6.) Given the Receiver's relatively modest billing on liquidation, the fact that the Court stayed liquidation pending a decision in *Liu*, which was then issued, and Relief Defendants' pending motion regarding liquidation, the Court concludes that his action was appropriate and consistent with his duty "to manage . . . the assets of the Receivership Estate . . . until such time that the Receivership can be liquidated or modified." (Appointment Order at 7.)

Defendant finally maintains that the Receiver did not adequately "explain why he needs to invoice over $4,200, or *over* 8.1%, of the total invoice, to deal with the PA in the Company C Bankruptcy proceeding," positing that "[t]here is nothing novel about the analysis." (Def.'s Obj. at 15.) Defendant does not identify which time entries he references to reach this total amount. The Receiver's invoices indicate only .6 hours spent related to Company C matters, totaling $145.80 billed. (*See* Invoice [Doc. # 1686-4] at 7.) First, reviewing the implications of the Company C Bankruptcy proceeding on the Receivership

5

Estate is reasonable and consistent with the Receiver's duties. Second, without any identification of the specific work that Defendant believes was gratuitous, the Court does not find that the amount of time spent on the matter was excessive.

### B. Defendant's Opposition to the Eighth Interim Motion

In his objection to the Receiver's Eighth Application for Fees, Defendant again incorporates all the arguments from his prior objections. (Def.'s Eighth Obj. at 1-2.) Defendant raises a few objections unique to this Eighth Application which the Court will address.

Defendant objects to the Receiver having billed any time at his higher legal rate of $371 per hour, as opposed to discounting all of his time to the reduced rate of $250 per hour as he had done in previous fee applications. (*See* Def.'s Eighth Obj. at 9.) Although the Receiver had billed all 19.5 hours of his time in the Seventh Application at the rate of $250 per hour, (Exhibit D-6 to Receiver's Seventh Mot. for Fees [Doc. # 1686-4] at 2), in his Eighth Application he billed 40.5 hours at $371 per hour and 18.1 hours at $250 per hour, (Exhibit D-1 to Receiver's Eighth Mot. for Fees [Doc. # at 1764-4] at 16; Exhibit D-3 to Receiver's Eighth Mot. for Fees at 7; Exhibit D-4 to Receiver's Eighth Mot. for Fees at 5; Exhibit D-5 to Receiver's Eighth Mot. for Fees at 3.) The Court previously noted that it "is perplexed why the Receiver applied a discount for the prior fee applications, which was removed without explanation or prior approval of the Court" and stated that it would "convene a status conference with the parties to discuss the issue going forward." (Second Ruling at 9.) However, in lieu of any status conference, the Court will reduce the Receiver's hourly rate to $250 per hour for all work billed, whether it is in a legal or non-legal capacity. Such a reduction in rate will reduce total compensation for this application period by $4,900.50. As well, this rate will apply going forward.

Defendant also objects to the Receiver "[i]nvoicing over $17,800 – nearly 25% of the entire invoiced amount for 4Q2020 – to determine the stance of the MA Action related to the alleged forfeiture of the bond" for his criminal case and cites three time entries as examples. (Def.'s Eighth Obj. at 11-12.) Defendant maintains that "[i]t does not require over 65 hours to determine this issue and this is excessive." (*Id.* at 12.) The Receiver asserts that because Relief Defendants "filed multiple items on this topic," it was appropriate for him to analyze the situation to ensure it "did not implicate the Court's orders or impede the Receiver's

6

ability to execute his duties under the Appointment Order." (Receiver's Eighth Reply [Doc. # 1820] at 4.) The Court has reviewed the challenged time entries, which consist of .8 hours billed by the Receiver to "[r]eview/revise proposed notice to Judge Arterton re: bond foreclosure to be reviewed by Head of DOJ and other parties in interest" and .3 hours to "[r]eview DOJ's proposed changes and our response and approve final version of Notice." (Ex. D-1 [Doc. # 1764-4] at 11.) These time entries are reasonable and appropriately tailored to the context of the litigation given the numerous items filed related to the bond forfeiture and do not illustrate any untoward bias against Defendant.

Defendant next argues that the Receiver excessively billed for time spent "on the various Connecticut State Court matters," billing $12,600 for over 50 hours of work. (Def.'s Eighth Obj. at 12.) Defendant does not cite any specific time entries in his objection, instead challenging the total quantity of hours billed on the matter. The Receiver responds that his duty to notify the Court of any apparent violations of the Appointment Order required him to monitor and analyze the two pending state court cases involving Defendant. (Receiver's Eighth Reply at 7.) The Court notes that monitoring related litigation is required by the Appointment Order, (Appointment Order at 13), and that none of the Receiver's time entries arising out of the state court entries appears excessive or needlessly duplicative. Defendant's objections are therefore without merit.

Defendant finally challenges the Receiver's invoicing of "nearly $5,000 to deal with deed issues related to Essell Farm, especially when the Receiver has stated his intention not to use the asset towards the judgment." (Def.'s Eighth Obj. at 12.) Again, Defendant does not object to any specific time entries, instead generally challenging the category of work. The Receiver explained that "a question arose concerning whether Essell Farms held title to a 1.3-acre property located adjacent to the main nearly 200-acre property or whether the property belonged to Donald and Elizabeth Duksa . . . , who were trying to sell the property." (Receiver's Eighth Reply at 8.) Because the Receiver has an obligation under the Appointment Order to manage and preserve the Receivership Estate, (Appointment Order at 7), a review and analysis of these potential titling issues was an appropriate exercise of his obligations.

### III.   Conclusion

For the foregoing reasons, the Receiver's Seventh Motion for Fees [Doc. # 1686] is

GRANTED and his Eighth Motion for Fees [Doc. # 1764] is GRANTED with modification consistent with the Court's direction that all of the Receiver's time should be billed at $250 per hour. Within seven days of the date of this ruling, the Receiver shall submit a proposed order to reflect the amounts to be disbursed to the Receiver and his counsel, identifying the assets of the Receivership Estate from which those amounts will be paid.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 21st day of May 2021.