UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br>    *Plaintiff*,<br>    *v.*<br>IFTIKAR AHMED,<br>    *Defendant*, and<br><br>IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents,<br><br>    *Relief Defendants*. | Civil No. 3:15cv675 (JBA)<br><br>June 16, 2020 |

**REDETERMINATION OF DEFENDANT'S DISGORGEMENT OBLIGATION**

On March 11, 2021, the Second Circuit remanded to this Court determination of Appellant's disgorgement obligation "consistent with § 6501 of the National Defense Authorization Act, and, if appropriate, entry of an amended judgment." (Mandate of USCA [Doc. # 1810] at 2.) After full briefing and oral argument, the Court's determination of Defendant's increased disgorgement obligation is set forth below.

**I.     Background**

On May 6, 2015, the Securities and Exchange Commission (SEC) filed a complaint against Defendant alleging numerous violations of Sections 10(b) and 17(a) of the Securities Exchange Act and Sections 206(1) and 206(2) of the Advisers Act and requested equitable disgorgement of the proceeds from these fraudulent transactions. (Compl. [Doc. # 1] ¶¶ 65-88.) On August 12, 2015, after a hearing, the Court ordered that Defendant and Relief

Defendants' assets be frozen "up to the amount of $118,246,186," accounting for "approximately $65 million in illicit profits to be disgorged plus prejudgment interest ($9.3 million) and civil penalties ($44 million)." (Ruling and Order Granting Preliminary Injunc. [Doc. # 113] at 3.) Under the law at that time, the SEC was authorized to seek the entirety of illegally obtained profits for disgorgement as the applicable statutes did not have temporal limitations.

On June 5, 2017, the U.S. Supreme Court held in *Kokesh v. SEC* that disgorgement sought by the SEC pursuant to the Securities and Exchange Act is subject to the five-year statute of limitations imposed by 28 U.S.C. § 2462 because it constitutes a penalty, but expressly declined to reach the question of "whether courts possess authority to order disgorgement in SEC enforcement proceedings or [] whether courts have properly applied disgorgement principles in this context." *Kokesh v. SEC*, 137 S. Ct. 1635, 1642 n.3 (2017). In response to *Kokesh* and with consent of all parties, this Court reduced the amount of Defendant's assets frozen from $118,246,186 to $89,000,000 to exclude the calculation of illegally obtained profits beyond the newly imposed five-year statute of limitations, but declined to release any funds as it found the judgment to be undersecured because the actual value of the frozen assets amounted to, at best, $87 million. (Order on Def.'s Mot. for Mod. of the Asset Freeze [Doc. # 829] at 3, 5 (representing $44 million in disgorgement, 1.5 million in prejudgment interest, and $44 million in civil penalties).)

On March 29, 2018, the Court granted the SEC's motion for summary judgment, finding Defendant liable for violations of sections 206(1) through (4) of the Advisers Act, section 10(b) of the Exchange Act, and section 17(a)(1) of the Securities Act. (Ruling on All Parties' Mots. for Summ. J. on Liability [Doc. # 835] at 34, 38, 40.) While Defendant argued for dismissal of all claims stemming from his actions prior to May 6, 2010, the Court held that, because the SEC sought equitable disgorgement *and* injunctive relief as remedies for Defendant's pre-2010 actions, *Kokesh* did not limit the Court's authority to find Defendant

*liable* for his earlier actions. (*Id.* at 31 ("Because this stage of the proceedings deals with liability, and the question of whether injunctive relief is appropriate as it relates to the otherwise time-barred conduct deals with the remedy, this question must be left to be addressed in the next phase of the proceedings. The Court therefore will not dismiss any claims under *Kokesh* at this liability stage, however it earlier modified the Asset Freeze Order [Doc. # 113] to reflect this change in law.").) The Court found that "the SEC has met its burden on summary judgment of establishing [that] Defendant acted with the requisite scienter *with respect to each act of fraud*," including those that occurred prior to May 6, 2010. (*Id.* at 42 (emphasis added).)

> Thereafter, on December 14, 2018, the Court entered judgment against Defendant
>
> (1) permanently enjoin[ing] Defendant from violating Section 17(a) of the Securities Act [], Section 10(b) of the Securities Exchange Act [], and Sections 206(1), 206(2), 206(3), and 206(4) of the Advisers Act[]; (2) order[ing] the Defendant to disgorge $41,920,639 plus prejudgment interest for the period of time prior to the asset freeze, and interest and gains returned on the frozen assets during the pendency of the freeze; and (3) impos[ing] a civil penalty of $21,000,000 against Defendant.

(Am.. Final J. Against Def. and Relief Defs. [Doc. # 1054] at 2; *see* Ruling on Pl.'s Mot. for Remedies and J. [Doc. # 955] at 17 (finding that "a civil penalty in the amount of $21 million . . . is reasonable and justified").) As required by *Kokesh*, the Court limited disgorgement to the sum of profits Defendant illegally obtained after 2010. *Kokesh*, 137 S. Ct. at 1645. Both Defendant and Relief Defendants immediately appealed the judgment. (Relief Defs.' Notice of Appeal [Doc. # 1100]; Def.'s Notice of Appeal [Doc. # 1101].)

After the Supreme Court granted certiorari on *Liu v. SEC*, 140 S. Ct. 451 (2019), to decide whether a disgorgement award greater than the net profits from the defendant's wrongdoing was appropriate under the Securities Exchange Act, this Court stayed liquidation of the frozen assets because the "irreparable harm" that could be caused by prematurely liquidating Relief Defendants' and Defendant's unique assets outweighed the "potential harm asserted by the SEC and the Receiver [that] the assets of the Receivership

3

Estate [could] decline in value to a degree which jeopardizes the security of the judgment." (Ruling on Def.'s Mot. to Stay [Doc. # 1346] at 7.) The Supreme Court ultimately held in *Liu* that § 78u(d)(5) of the Act authorizes courts to order disgorgement that "does not exceed a wrongdoer's net profits and is awarded for victims." *Liu v. SEC*, 140 S. Ct. 1936, 1940 (2020).

Once *Liu* was decided, this Court anticipated that "the liquidation of assets will soon proceed such that the judgment will be fully secured and residual assets, if any, will be unfrozen." (Ruling Denying Relief Defs.' Mots. for Funds [Doc. # 1597].) Relief Defendants requested "clarification that the assets under this Court's asset freeze order will stay frozen with no liquidation of assets pending appeals," maintaining that liquidation prior to the resolution of all appeals would be inappropriate. (Mot. for Clarification [Doc. # 1602] at 2-3.) The Court denied Relief Defendants' motion, stating,

> Following the remand by the Second Circuit, the Court will determine Defendant's disgorgement obligation in accordance with § 6501 of the National Defense Authorization Act. Thereafter, a liquidation schedule will be issued. Separately, the asset freeze order remains in effect until appeals are decided.

(Order Denying Clarification [Doc. # 1868].)

Codifying the SEC's disgorgement power, Congress passed the National Defense Authorization Act (NDAA), which modifies the Securities Exchange Act to expressly permit courts to, "[i]n any action or proceeding brought by the Commission under any provision of the securities laws, [] order [] disgorgement." 15 U.S.C. § 78u(d)(7) ("paragraph (7)").[1] The NDAA also requires that the SEC

> bring a claim for disgorgement under paragraph (7) . . . not later than 10 years after the latest date of the violation that gives rise to the action or proceeding in which the Commission seeks the claim if the violation involves conduct that violates--
> (I) section 10(b);
> (II) section 17(a)(1) of the Securities Act of 1933 (15 U.S.C. 77q(a)(1));
> (III) section 206(1) of the Investment Advisers Act of 1940 (15 U.S.C. 80b-6(1))

---

[1] *See also* Avi Weitzman & Tina Samanta, *Congress Codifies SEC Disgorgement Remedy in Military Spending Bill*, 25 WALL ST. LAWYER 1, 1 (Feb. 2021) (noting that § 6501 of the NDAA was intended to codify the rule announced in *Liu*).

4

>   (IV) any other provision of the securities laws for which scienter must be established.

15 U.S.C. § 78u(d)(8)(A). These amendments "apply with respect to any action or proceeding that is pending on, or commenced on or after" January 1, 2021. *William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021*, H.R. 6395, 116th Cong. (2020) (NDAA) § 6501(b), https://www.congress.gov/bill/116th-congress/house-bill/6395.

Upon passage of the NDAA and because the judgment remained on appeal, the SEC moved the Second Circuit

> to remand the captioned consolidated appeals for the limited purpose of recalculating Defendant-Appellant Iftikar Ahmed's disgorgement obligation consistent with recent amendments to Section 21(d) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u(d), [because] these recent amendments expand the statute of limitations from five (5) to ten (10) years with respect to disgorgement as a remedy for fraud in the Commission's enforcement actions, and they expressly apply to any action pending as of their date of enactment.

Pl. SEC's Mot. for Limited Remand at 1-2, *SEC v. Ahmed*, No. 18-2903 (2d Cir. Jan. 13, 2021), ECF No. 475. The motion for remand was granted on March 11, 2021, and the Second Circuit directed this Court to "determin[e] Appellant's disgorgement obligation consistent with § 6501 of the National Defense Authorization Act, and, if appropriate, ent[er] an amended judgment." (Mandate by USCA [Doc. # 1810] at 2.)

The SEC seeks an amended judgment that includes the entirety of illegally obtained profits within the ten-year period prior to May 6, 2015. (Pl. SEC's Mem. Concerning Def.'s Disgorgement Obligation and Request for Entry of an Am. J. [Doc. # 1904] at 2.) Defendant and Relief Defendants oppose increasing the disgorgement amount and further request that the Court stay liquidation of assets pending final determination of the Second Circuit. (Def.'s Mem. of Law Addressing the Impact of § 6501 of the NDAA on the Final Disgorgement J. [Doc. # 1906] at 1, 21; Relief Defs.' Mem. of Law in Opp. to Pl.'s Request to Recalculate

5

Disgorgement Obligation [Doc. # 1901] at 3.) The Receiver takes no position. (Receiver Mem. Regarding the Def.'s Disgorgement Obligation [Doc. # 1899] at 1-2.)[2]

## II. Discussion

### a. Application of Amendments to a "Pending" Case

The modifications authorized by the NDAA apply to "any action or proceeding that is pending on" January 1, 2021. NDAA § 6501(b). Given that a case is pending until "the last court in the hierarchy [of Article III courts] rules," *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 227 (1995),[3] and the Second Circuit had not yet ruled on Defendant Parties' appeals as of January 1, 2021, this case is "pending" and the NDAA and its attendant modifications therefore apply.[4] *See also Landgraf v. USI Film Prod.*, 511 U.S. 244, 273-74 (1994) ("[A] court should apply the law in effect at the time it renders its decision, even though that law was enacted after the events that gave rise to the suit.").

The amendments permit disgorgement to be sought for up to ten years prior to the Government's filing of the complaint for "conduct that violates—(I) section 10(b); (II)

---

[2] The SEC argues that, in remanding the matter to the District Court, the Second Circuit necessarily held that the modifications of the Act applied to Defendant's case and the District Court's only responsibility is to calculate the change in disgorgement obligation. In contrast, Defendant Parties argue that the Second Circuit intended for this Court to determine the applicability of the NDAA, as well as recalculate Defendant's disgorgement obligation. In an abundance of caution, this Court analyzes both the applicability of the NDAA and the scope of Defendant's new disgorgement obligation.

[3] This extended reasoning from the Supreme Court in *Plaut* is instructive:

> [A] distinction between judgments from which all appeals have been forgone or completed, and judgments that remain on appeal (or subject to being appealed), is implicit in what Article III creates: not a batch of unconnected courts, but a judicial department composed of "inferior Courts" and "one supreme Court." Within that hierarchy, the decision of an inferior court is not (unless the time for appeal has expired) the final word of the department as a whole. It is the obligation of the last court in the hierarchy that rules on the case to give effect to Congress's latest enactment, even when that has the effect of overturning the judgment of an inferior court, since each court, at every level, must decide according to existing laws.

514 U.S. 211, 227 (1995).

[4] The First Circuit recently noted in an analogous pending SEC case that although "[w]hen the district court ruled, a five-year limitation period applied to the SEC's claims[,] . . . [t]he changed statute of limitations [as authorized by the NDAA] does not impact this case." *SEC v. Morrone*, No. 19-2006 at 6 n.3 (1st Cir. 2021). However, because the issue on appeal to the First Circuit does not appear to reach disgorgement, the First Circuit declined to analyze the application of the NDAA beyond that which is quoted above. *Id.* This Court, squarely addressing disgorgement, concludes that the NDAA does apply to this case.

6

section 17(a)(1) of the Securities Act of 1933 (15 U.S.C. 77q(a)(1)); (III) section 206(1) of the Investment Advisers Act of 1940 (15 U.S.C. 80b-6(1)); and (IV) any other provision of the securities laws for which scienter must be established." 15 U.S.C. § 78u(d)(8)(A). In its Ruling on Liability, the Court found that Defendant "acted with the requisite scienter with respect to each act of fraud" in violating Section 10(b) of the Exchange Act. (Ruling on Liability at 42.) With the exception of $650,000 in illegal profits obtained from Company D in January of 2005, each of Defendant's acts of fraud occurred after May 2005, (*see* Ruling on Liability at 15-24), and thus are subject to disgorgement under § 6401 of the NDAA. As such, Defendant's new disgorgement obligation is $64,171,646.14. (*Id.*)

### b. *Defendant and Relief Defendant's Arguments*

Defendant Parties offer a number of reasons why the NDAA should not apply to this case, all of which are defeated by the Court's finding that this judgment remains "pending." (*See* Relief Defs.' Mem. at 1-3; Def.'s Mem. at 6-7.)

First, Relief Defendants argue that the Court may not increase the amount of disgorgement because the Second Circuit does not permit "an appellee who has not cross-appealed [to] enlarge the amount of damages or scope of equitable relief," (Relief Defs.' Mem. at 7 (quoting *Int'l Ore & Fertilizer Corp. v. SGS Control Servs.*, 38 F.3d 1279, 1286 (2d Cir. 1994)); *see also* Def.'s Mem. at 6). At the time it moved the Second Circuit for a limited remand in January 2021, the SEC had not entered a cross-appeal in this case. However, "the requirement of a cross-appeal is a rule of practice which is not jurisdictional and in appropriate circumstances may be disregarded." *Finkielstain v. Seidel*, 857 F.2d 893, 895 (2d Cir. 1988); *see also Carlson v. Principal Fin. Grp.*, 320 F.3d 301, 309 (2d Cir. 2003) (holding the same); *Rangolan v. Cty. of Nassau*, 370 F.3d 239, 254 (2d Cir. 2004) (noting that the cross-appeal rule is one of practice but also observing that "exercise of the power to disregard the failure to cross-appeal has been rare, requiring a showing of exceptional circumstances") (internal quotations omitted). To decide whether to disregard the cross-appeal requirement,

this Court applies a factor test balancing "(1) the interrelatedness of the issues on appeal and cross-appeal; (2) whether the nature of the district court opinion should have put the appellee on notice of the need to file a cross-appeal; and (3) the extent of any prejudice to the appellant caused by the absence of notice." *Lee v. Burlington N. Santa Fe Ry. Co.,* 245 F.3d 1102, 1107 (9th Cir. 2001). Here, since the amount of the judgment was directly appealed by Defendant Parties, the District Court's opinion could not have put the appellee on notice of any grounds for cross appeal because the NDAA had not yet passed, and no prejudice resulted to the appellant as the Parties had ample opportunity to brief the issue on remand. Thus, the SEC's failure to submit a cross-appeal will not limit the scope of its disgorgement remedy.

Second, Defendant and Relief Defendants argue that expanding disgorgement necessarily would either reopen a final judgment or unconstitutionally attempt to revive time-barred claims as prohibited by the ex post facto clause. (Def.'s Mem. at 10-13, Relief Defs. Mem. at 17-18.)

Mem. at 11-14, 18-19.) However, as discussed above, the NDAA applies to *pending* cases, the judgments of which are not yet considered final under *Plaut*, but the substance of which have already been brought before the Court. *See Plaut*, 514 U.S. at 227 (noting the constitutionally important "distinction between judgments from which all appeals have been forgone or completed, and judgments that remain on appeal (or subject to being appealed)").[5] Because the SEC does not seek permission to initiate suit against Defendant for previously time-barred claims, but rather intends only to obtain disgorgement of proceeds obtained from violations for which Defendant has already been found liable and the judgment of which is still pending, the ex post facto clause does not apply to this case. The

---

[5] Defendant Parties argue that, because the SEC consented to the five-year limitation and declined to appeal the judgment, the judgment should be viewed as "final" as applied to the SEC; however, no Defendant Parties support this contention with any legal authority or meritorious rationale. (Def.'s Mem. at 10-13; Relief Defs.' Mem. at 12-14.)

8

Court does not therefore address the punitive nature of the disgorgement and its interaction with the ex post facto clause. (*See* Relief Defs.' Mem. at 18-19; Def.'s Mem. at 17-18); *see also SEC v. Sidoti*, 2021 WL 1593253 at *6-*7 (C.D. Cal. Mar. 19, 2021) (holding that the five-year limitation of 28 U.S.C. § 2462 applies to disgorgement sought for non-scienter-based violations of the Securities Exchange Act because of its penal nature).

Third, Relief Defendants and Defendant argue that the amendments do not apply to this case because the NDAA "left § 21(d)(5) unaltered, while creating a new subparagraph – § 21(d)(7)" and thus this action, which they argue granted remedial action only pursuant to § 21(d)(5), is unaffected by the modifications because the new "limitations period [] governs only claims for disgorgement under paragraph (7)" and "'paragraph (7)' did not exist before January 2021." (Relief Defs.' Mem at 3, 19-20; *see also* Def.'s Mem. at 18-19.) However, the Court did not rely solely on § 21(d)(5) of the Act to authorize disgorgement in its initial ruling. (*See* Ruling on Pl.'s Mot. for Remedies and J. at 10 ("Second Circuit precedent [recognizes] that disgorgement is a proper equitable remedy.") (citing *SEC v. Cavanaugh*, 445 F.3d 105, 116 (2d Cir. 2006))). Moreover, the SEC did not, as Defendant claims "ma[k]e it clear that it was bringing its claims for disgorgement, and had authority to do so, only under § 21(d)(5)," (Def.'s Mem. at 19 n.14), but rather relied on the common law injunctive power of the district courts, (Pl. SEC's Opp. to Def.'s Emerg. Mot. to Stay in Light of *Kokesh* [Doc. # 684] at 6-7 ("[D]istrict courts in Commission actions have for decades used their injunctive authority under Section 21(d)(1) of the Exchange Act to order defendants to disgorge profits that they acquired through violations of the securities laws. . . . Disgorgement is *also* authorized by Section 21(d)(5). . . .") (emphasis added)). Thus, Relief Defendants' contention that the amendments do not reach the subsection on which this Court grounded its decision is incorrect. Moreover, as discussed above, even though paragraph (7) did not exist until January 2021, because the litigation was still pending at that time, the Court must apply the

9

new law to the present case and may therefore order disgorgement in accordance with the newly-minted paragraph (7).[6]

Because the judgment was still pending at the time the NDAA went into effect, disgorgement is properly ordered to be $64,171,646.14.

### c. Prejudgment Interest

In its Amended Final Judgment, the Court awarded $1,491,064.01 of "prejudgment interest [on the disgorgement award] for the period of time prior to the asset freeze." (Am. J. [Doc. # 1054] at 2, 4.) The SEC now seeks an increased prejudgment interest award of $9,755,798.34 to reflect the increased disgorgement amount. (SEC's Mem. at 9; Disgorgement and Prejudgment Interest Summary, Ex. A to SEC's Mem [Doc. # 1904-1] at 1-4.) Relief Defendants request that, to the extent the Court decides to award prejudgment interest on any increased disgorgement award, such interest "not be computed using the IRS underpayment rate or compounded at a quarterly rate" as requested by the SEC, but instead be computed using "the one-year Treasury Bill rate." (Relief Defs.' Mem. at 7, 8.)

The Court has already determined that an award of prejudgment interest on disgorged assets calculated using the SEC's methodology is appropriate, and there is no reason why it should not similarly award prejudgment interest on the increased disgorgement award. (*See* Order Granting Pl.'s Mot. for J. and Remedies at 13.) Although Relief Defendants contend that the SEC's proposed method for calculating prejudgment interest is "punitive" and would overcompensate the SEC, (*id.* at 8-9), no court has found prejudgment interest compounded quarterly based on the same interest rate the IRS uses to be "punitive" or to otherwise result in overcompensation to the plaintiff. To the contrary, numerous courts have affirmed, even after *Liu*, that this method is appropriate because the

---

[6] Defendant and Relief Defendants further argue that "§ 21(d)(8)(A)(ii)'s ten-year limitations period, if it were applicable, can only apply to conduct and transactions occurring after January 2011 given that Congress enacted the NDAA in January 2021. However, the statute itself states that actions must be brought "not later than 10 years *after the latest date of the violation* that gives rise to the action" and thus the argument is without merit. 15 U.S.C. § 78u(d)(8)(A) (emphasis added).

10

IRS's "rate of interest 'reflects what it would have cost to borrow the money from the government and therefore reasonably approximates one of the benefits the defendant derived from its fraud.'" *SEC v. Faulkner*, No. 3:16-CV-1735-D, 2021 WL 75551, at *10 (N.D. Tex. Jan. 8, 2021) (quoting *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1476 (2d Cir. 1996)); *see also SEC v. Skelley*, No. 18cv8803 (LGS) (DF), 2021 WL 863298, at *7-*8 (S.D.N.Y. Feb. 25, 2021) (holding that prejudgment interest calculations should apply the IRS underpayment rate and compound quarterly); *SEC v. Owings Group, LLC*, No. RDB-18-2046, 2021 WL 1909606, at *5-*6 (D. Md. May 12, 2021) (holding that a prejudgment interest award in accordance with "the SEC's prejudgment interest calculator[,] which uses the same rate as the Internal Revenue Service, 26 U.S.C. § 6621(a)(2), and compounds interest quarterly" is appropriate); *SEC v. Dang*, No. 3:20-cv-01353 (JAM), 2021 WL 1550593, at *7 (D. Conn. Apr. 19, 2021) (holding that an award of prejudgment interest calculated in the same manner the IRS uses for tax underpayments is appropriate); *SEC v. Premier Holding Corp.*, No. SACV 18-00813-CJC(KESx), 2021 WL 1048565, at *3 (C.D. Cal. Jan. 20, 2021) (same); *SEC v. Montgomery*, No. SA-20-CA-598-FB, 2021 WL 210749 (W.D. Tex. Jan. 20, 2021) (same); *SEC v. Blockest, LLC*, No. 18CV2287-GPB(MSB), 2020 WL 7488067, at *4 (S.D. Cal. Dec. 15, 2020) (same); *SEC v. Erwin*, No. 13-cv-03363-CMA-KMT, 2020 WL 7310584, at *5 (D. Colo. Dec. 11, 2020) (same); *SEC v. Curatives Biosciences, Inc.*, No. 8:18-cv-00925-SVW, 2020 WL 7345681, at *6 (C.D. Cal. Oct. 22, 2020) (same); *SEC v. Mizrahi*, No. CV 19-2284 PA (JEMx), 2020 WL 6114913, at *4 (C.D. Cal. Oct. 5, 2020) (same).

Consistent with the Court's prior award of prejudgment interest on disgorgement, the judgment is hereby amended to reflect an increased prejudgment interest award of $9,755,798.34.

### d. Liquidation

Despite the fact that the Court had already explained that liquidation would proceed following recalculation of the disgorgement award, (Order Denying Clarification), Defendant

11

and Relief Defendants elected to argue again in their briefs that a liquidation schedule should not issue, (*see* Relief Defs.' Mem. at 21; Def's Mem. at 29-32). The Court construes Defendant and Relief Defendants' request to stay liquidation pending appeal as a motion for reconsideration. Because Defendant and Relief Defendants filed their briefs twelve days after the Court issued its Order Denying Clarification on April 7, 2021, their motions for reconsideration are untimely and must be denied. *See* D. Conn. L. R. Civ. P. 7(c) (Motions for reconsideration must be filed "within seven days of the filing of the decision or order from which such relief is sought."). Moreover, Defendant and Relief Defendants have not identified any "controlling decisions or data that the court overlooked in the initial decision or order," as the Court issued its prior order after the Second Circuit issued its limited remand in light of the NDAA. *See id.*

Regardless, Defendant and Relief Defendants' arguments that liquidation should be stayed pending appeal are unavailing. Given the enlarged disgorgement award of $64,171,646.14 and the corresponding increased prejudgment interest award of $9,755,798.34, the asset freeze no longer serves the same function as a *supersedeas* bond, which is designed to protect judgment creditors as fully as possible where there is a reasonable likelihood that the judgment debtor will unable or unwilling to satisfy the judgment in full. *See Rand-Whitney Containerboard Ltd. Partnership v. Town of Montville*, 245 F.R.D. 65, 67 (D. Conn. 2007).

The total judgment against Defendant now stands at $94,927,444.40, exclusive of gains on any assets used to satisfy the judgment since the asset freeze order. Although the most recent valuation by the Receiver estimates that the Receivership Estate is worth $123,771,402.92, that amount has fluctuated over the course of the Receivership, initially reflecting a value of $89,377,509.22 on May 5, 2019, (First Mot. for Atty Fees [Doc. # 1160-5] at 6), and decreasing to a low of $84,959,536.01 on May 15, 2020, (Fifth Mot. for Atty Fees [Doc. # 1555-11] at 4), before reaching the present valuation. Given the relatively illiquid

12

nature of some assets in the Receivership Estate and the documented fluctuations in value (the lowest of which would leave the judgment undersecured by approximately $10 million), the unliquidated Receivership Estate does not adequately secure judgment. While Defendant "strongly believes the value of the invested assets will continue to increase" and thereby fully secure the judgment, (Def.'s Mem. at 31), there is no guarantee that this is the case, and the risk of a decrease in value should not be borne by the victims of Defendant's fraudulent scheme.

Defendant and Relief Defendants insist that pre-appeal liquidation will result in irreparable harm since "certain assets are real assets that can never be recovered if monetized," "there will be sizable capital gains taxes on any stock or bond sales," and "actions with respect to any irrevocable trusts and/or UGMAs may not be reversible." (Relief Defs.' Mem. at 22; *see also* Def.'s Mem. at 29.) Although it is possible that irreversible harm could be borne by Defendant and Relief Defendants should any decision by this Court be reversed by the Second Circuit, this risk can be substantially mitigated through a carefully timed liquidation plan that, *inter alia*, liquidates unique assets last and only if necessary to satisfy the judgment.

Liquidation is also favored as it will allow full security of the judgment and permit release of any excess frozen assets to Defendant and Relief Defendants. After excess assets are returned, there will be no further need to continually litigate over the release of frozen assets for Defendant and Relief Defendants' various purposes. Liquidation thus promotes judicial economy.

Accordingly, the Receiver is directed to propose a liquidation schedule upon which all Parties may comment. The Receiver is directed to file this proposed schedule with the Court no later than July 15, 2021. Comments will be received until July 29, 2021.

### III.     Conclusion

For the foregoing reasons and in accordance with the Second Circuit's directive on remand [Doc. # 1801], Defendant's disgorgement obligation is increased to $64,171,646.14 with a prejudgment interest award of $9,755,798.34. The Clerk shall amend the judgment accordingly.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 16th day of June 2021.