UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>      Plaintiff,<br><br>v.<br><br>IFTIKAR AHMED<br><br>      Defendant, and<br>and<br><br>IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends, IFTIKAR and SHALINI AHMED, his parents; I.I. 3, a minor child, by and through his next friends, IFTIKAR and SHALINI AHMED, his parents<br><br>      Relief Defendants. | Civil Action No.<br>3:15-cv-675-JBA<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>July 23, 2021 |

**RECEIVER'S OBJECTION TO DEFENDANT'S MOTION FOR THE RELEASE OF FUNDS FOR ARBITRATION COUNSEL**

Jed Horwitt, Esq., in his capacity as Court-appointed receiver of the Receivership Estate[1] (the "Receiver"), through his undersigned counsel, hereby objects (the "Objection") to the Defendant's Second Motion for the Release of Funds for Arbitration Counsel [Doc. No. 2010] (the "Motion"). The Receiver primarily objects to the Motion because (a) as this Court determined in its Redetermination of Defendant's Disgorgement Obligation [Doc. No. 1997] (the "Disgorgement

---

[1] Unless expressly defined otherwise, the Receiver incorporates by reference the definitions of terms set forth in the Report of Receiver [Doc. No. 1130] (the "Report").

1

Order"), the Receivership Estate does not possess sufficient assets to adequately secure the judgment entered by this Court and (b) the Defendant's sworn representations fail to satisfy this Court's requirements to establish the justification for the Receivership Estate to pay the Defendant's legal fees incurred in a separate proceeding.[2] In support of his Objection, the Receiver respectfully states as follows.

I.  **Background**

On February 5, 2021, this Court outlined a procedure by which the Defendant could seek the release of up to $750,000 from the Receivership Estate to pay counsel who are representing him in connection with his dispute with his former employer and the primary victim of the Defendant's securities fraud. (Order Granting with Modification Release of Funds for Defendant's Arbitration Defense Counsel [Doc. No. 1750] (the "Authorization Order")). This Court expressed concern "with the unverifiable nature of [the Defendant's] declaration of indigency since his representations under penalty of perjury are a functional nullity because the Court lacks jurisdiction over him to sanction any perjurious representations…." (*Id*., at 4). However, in the Authorization Order this Court permitted the release of funds from the Receivership Estate subject to certain conditions. Specifically, this Court stated that

> Defendant's counsel will be required to submit invoices to the Court for approval, and no funds will be released by the Receiver absent such approval. Any invoice submitted for the Court's approval shall be accompanied by detailed, verifiable documentation of Defendant's inability to pay counsel absent release of funds from the Receivership Estate. Any request for the release of funds that does not comply fully with this requirement will not be approved by the Court.

---

[2] The Receiver also questions certain elements of the invoice submitted by the Defendant with the Motion. For example, there is an unexplained $2,216.57 "consulting" fee and a $1,657.50 entry for "Connecticut counsel fees," despite the fact that no invoices from such Connecticut counsel are attached to the Motion. (Invoice [Doc. No. 2010-1], at 3). However, as the Receiver objects to the Motion in its entirety for separate reasons, the Receiver need address these issues in more detail.

2

(*Id*., at 4-5). Furthermore, this Court ordered, *inter alia*, that "[t]his authorization [for the release of funds to the Defendant's counsel] shall… terminate should the Court determine that the value of the assets of the Receivership Estate has changed such that the continued release of funds would place undue risk upon the security of the judgment." (*Id*., at 5).

On April 30, 2021, this Court issued its Order Denying Defendant's Motion for Living Expenses [Doc. No. 1930] (the "Living Expense Order"). In the Living Expense Order, this Court held that certain facts surfaced by the Commission indicating that the Defendant was a "director of a registered business" in India "underscore the dubious reliability of Defendant's uncorroborated, extra-territorial representations, which are not assessed on a clean slate." (*Id*., at 3). Thus, in denying the Defendant's request for living expenses from the Receivership Estate, this Court held that the "Defendant's 'sworn' representations to this Court without material and objectively verifiable corroboration will not suffice as support for Defendant's motion as the Court does not credit Defendant's self-attestations of his claimed indigency." (*Id*., at 4).

On June 16, 2021, this Court issued its Disgorgement Order. Therein, this Court increased the Defendant's disgorgement obligation from $41,920,639 to $64,171,646.14, resulting in a "total judgment against Defendant … [of] $94,927,444.40, exclusive of gains on any assets used to satisfy the judgment since the asset freeze order." (*Id*., at 3, 7, 12). In light of this increased judgment amount, this Court held that "[g]iven the relatively illiquid nature of some assets in the Receivership Estate and the documented fluctuations in value… the unliquidated Receivership Estate does not adequately secure the judgment. (*Id*., at 12-13).

Now, the Defendant moves "[p]ursuant to this Court's [Authorization Order]" for a release of $64,828.27 from the Receivership Estate to pay counsel's fees and expenses. In support of his request, the Defendant submits an invoice from Holwell Shuster & Goldberg LLP ("HSG") and a document captioned Declaration of Indigence by Defendant, Iftikar A. Ahmed, in which the

Defendant avers, *inter alia*, that he (1) does "not have sufficient funds or income to pay [his] arbitration defense counsels since all [his] assets are frozen as per orders of this Court, (2) is "not currently working or earning any income or salary," and (3) is "unable to pay the arbitration defense counsels' fees and expenses absent a release of funds from the Receivership Estate." (Doc. No. 2010-2, at 1). For the reasons set forth below, the Receiver objects to the Motion.

### II. The Receiver Objects to the Motion Because the Judgment is Presently Under-Secured and Consequently the Court's Preliminary Authorization for the Release of Funds has Been Terminated

As a threshold matter, this Court's Authorization Order provides that this Court's authorization for the release of up to $750,000 from the Receivership Estate to pay for the Defendant's counsel "shall… terminate should the Court determine that the value of the assets of the Receivership Estate has changed such that the continued release of funds would place undue risk upon the security of the judgment." (Authorization Order, at 5). This Court effectively made this determination in the Disgorgement Order, explaining that "[g]iven the relatively illiquid nature of some assets in the Receivership Estate and the documented fluctuations in value… the unliquidated Receivership Estate does not adequately secure the judgment." (Disgorgement Order, at 12-13).

Moreover, based upon the best information available to him, the Receiver calculates that even the present *liquidated* value of the Receivership Estate is unlikely to be sufficient to fully satisfy the entire judgment entered by this Court. (*See* Receiver's Liquidation Plan [Doc, No. 2022], at 11, 14 (estimating that, as of the date of the filing of the Receiver's Liquidation Plan, the total judgment is between *at least* $121.4 million and $128.6 million, depending on the method this Court selects to calculate the interest and gains portion of the judgment, compared to a Receivership Estate valued at approximately $119.9 million). Therefore, it appears to the Receiver that this Court's authorization for the Defendant to seek further disbursements from the

4

Receivership Estate to pay his counsel's invoices pursuant to the procedure set forth in the Authorization Order has been automatically terminated. This Court should deny the Motion on this basis alone.

Additionally, even if the authorization granted to the Defendant in the Authorization Order has not been automatically terminated, the Receiver objects to the release of funds sought in the Motion because it appears that this Court's judgment is already presently under-secured. Any additional release of funds from the Receivership Estate to pay for the Defendant's counsel will necessarily further jeopardize the security of the judgment. Thus, in furtherance of his obligation under the Appointment Order to "secure the judgment for the SEC" to the greatest extent possible, the Receiver objects to the release of funds sought in the Motion. (Appointment Order, at 5).

### III. The Receiver Further Objects to the Motion Because the Defendant Does Not Adequately Support the Relief Sought Therein

Setting aside the fact that this Court's judgment is presently under-secured by the Receivership Estate, the Receiver further objects to the Motion because the Defendant has again failed to support his request with "detailed, verifiable documentation of [his] inability to pay counsel absent release of funds from the Receivership Estate" as ordered by this Court. (Authorization Order, at 4). This Court warned that "[a]ny request for the release of funds that does not comply fully with this requirement will not be approved by the Court." (*Id.*, at 4-5).

The Motion is unaccompanied by any type of "detailed, verifiable documentation" and instead contains nothing more than the Defendant's conclusory attestations of his inability to pay counsel's fees and expenses. (*See* Doc. No. 2010-2). This Court has previously rejected similar filings by the Defendant as insufficient, holding that the "Defendant's 'sworn' representations to this Court without material and objectively verifiable corroboration will not suffice as support" for Defendant's request because "the Court does not credit Defendant's self-attestations of his claimed

indigency." (Living Expense Order, at 4). Therefore, consistent with this Court's prior determinations as to the Defendant's credibility and that of his "sworn" representations, the Receiver objects to the release of funds sought in the Motion.

## IV.   Conclusion

For the foregoing reasons, the Receiver respectfully requests that his Court sustain his objection, deny the Motion, and grant such other and further relief as this Court deems just and proper.

Respectfully submitted,
JED HORWITT, ESQ., RECEIVER

 /s/ Christopher H. Blau
Christopher H. Blau (ct30120)
Zeisler & Zeisler, P.C.
10 Middle Street, 15th Floor
Bridgeport, CT  06604
Telephone: 203-368-4234
Facsimile: 203-549-0903
Email: cblau@zeislaw.com;
ehenzy@zeislaw.com
*Counsel to the Receiver*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 23, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System. Furthermore, a copy of the foregoing was sent via email to the Defendant, Iftikar A. Ahmed, at iftyahmed@icloud.com and i3siam@protonmail.com.

                                                 */s/ Christopher H. Blau*
                                                 Christopher H. Blau (ct30120)