UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>                      Plaintiff,<br>v.<br><br>IFTIKAR AHMED,<br><br>                      Defendant, and<br><br>IFTIKAR AHMED SOLE PROP; *et al*<br><br>                      Relief Defendants. | Civil Action No. 3:15-cv-675 (JBA)<br><br>December 21ST, 2021 |

**DEFENDANT'S FILING TO ENSURE PROPER COMMUNICATION
OF HIS THOUGHTS ON ISSUES RAISED BY THE COURT**

The *pro se* Defendant respectfully provides this filing to the Court regarding his thoughts on issues discussed at the hearing on December 20TH, 2021 regarding the Receiver's proposed liquidation plan. The Defendant is *pro se,* is not a lawyer, and simply provides this filing so as to ensure that his thoughts on the various issues discussed were properly communicated to the esteemed Court, especially in light of the fact that the Court requested the Defendant to speak more slowly and may have had difficulty hearing the Defendant due to technical glitches.

The Defendant reserves all rights.

I.      **UNIQUE VS. NON-UNIQUE ASSETS.**

The Court requested the Defendant's thoughts on the definition of unique versus non-unique assets. The Defendant believes that the Receiver has erroneously equated the definition of *non-unique* with *liquid*. The Defendant's definition of unique is something that cannot be

1

replaced with the same characteristics and attributes as before. For example, the parties agree that the MetLife Insurance policy is a unique asset. Similarly, the Family Trust and UTMAs are unique assets, as they cannot be replaced if these entities are "wound down" as the Receiver proposes in his liquidation plan, and are harmed by the proposal. It also appears that the SEC has already conceded that the Family Trust and UTMA accounts are unique assets:

> "…the Court explicitly acknowledged the arguments that "certain assets are real assets that can never be recovered if monetized," "there will be sizable capital gains taxes on any stock or bond sales," and "*actions with respect to any irrevocable trusts and/or UGMAs may not be reversible*." Id. at 13 (quoting Relief Defs.' Mem. [Doc. # 1901] at 22). *The Court addressed those arguments by ruling that certain unique assets would only be liquidated "last and only if necessary to satisfy the judgment."* Id. at 13." (emphasis added in both) [Doc. #2075 at 7-8]

In addition, to the Defendant's best recollection, he and Ms. Ahmed used a portion of their lifetime gifting tax exemption towards amounts given to the Family Trust and UTMA accounts and the loss of this exemption is irreplaceable – neither the Defendant nor Ms. Ahmed will ever get that portion of the lifetime gifting exemption back. It is only equitable for the Court to move these assets to the "unique" category, especially given the irreparable loss and the SEC's concession.

In addition to the arguments made in Defendant's brief [Doc. #2065], businesses and business opportunities are considered unique and the Defendant believes that the various other entities, such as Trusts and LLCs, are also unique assets as they cannot be replaced if and once the liquidation and transfer of any proceeds occurs.

It is also possible, as per the Court's order Doc. #1997, that certain assets with sizable capital gains, such as the Bitcoins (BTCs) and certain stock investments, are unique assets, as they can never be replaced with the cost basis that they currently have. Such would have to be determined on an asset by asset basis to make an assessment of which assets have substantial

capital gains, and these should also be classified as unique assets, and the liquidation on these assets should be deferred to a later point in time.

## II.     TAX ANALYSIS BEFORE LIQUIDATION.

The esteemed Court also inquired about having a tax analysis done **_before_** the Receiver's proposed Phase I versus _after_ Phase I. The Defendant strongly believes that a tax analysis should be done before any liquidation, as there needs to be a plan and roadmap in place before liquidation that minimizes the tax impact of liquidation. The fact that the Receiver himself stated that he does not know when a "QSF" (Qualified Settlement Fund) was established in this case makes it imperative to determine factual issues that impact how to minimize the tax impact of liquidation. The Receiver states that it may be at the inception of the asset freeze or even when the Receiver was appointed or when the cash is actually transferred to a CRIS account. The Defendant is not a lawyer nor a taxation expert, but believes that a Fund pursuant to Section 162(f) of the Internal Revenue Code has not been established yet and that such fund needs to be established **in the same year that assets are put into the fund and any gains realized**, as well as follow the certain requirements of such Section 162(f) to ensure that the deductions can be taken against any assets contributed to the fund. Furthermore, an analysis of the reversibility of such placement of funds is critically important, if the Second Circuit reverses on certain issues on appeal. Again, tax expertise is needed here.

Furthermore, contrary to the SEC's and Receiver's contentions, the losses of the NYC apartments and farm are not enough to offset the gains that have been generated by the assets in the Estate, even if done in the same calendar year. Also, there may be losses in the Defendant's

Oak assets, and the Receiver has stated in the hearing that such analysis – of valuation and potential tax impact – needs to be assessed and should be done ***before*** liquidation.

In short, having a plan of action with respect to taxes before liquidation is essential to ensure that liquidation happens in a manner that can minimize taxes. It cannot happen after, as the Receiver had proposed. Once the liquidation happens, it cannot be undone to capture any tax reductions or benefits that were there before liquidation, itself irreparable harm that can and should be minimized by having a tax minimization plan *before* liquidation.

The Defendant reiterates for the Court that he and the Relief Defendants filed their opening appellate brief on November 15, 2021, the SEC's responding brief is due mid-February 2022, and the Defendant and Relief Defendants' reply is due three weeks after the filing of the SEC's response. Oral arguments are likely soon thereafter and a decision by the Second Circuit should ensue after oral arguments.

### III.   LIVING EXPENSES FOR THE RELIEF DEFENDANTS.

The Court also questioned the SEC and Receiver on their opposition to the continuation of living expenses for Ms. Ahmed and the minor children. The Defendant strongly believes that the Court should allow for continued living expenses and educational expenses for the minor children. While the SEC has stated that it will support a release of excess assets to the Defendant and Relief Defendants once its' judgment is secured in this case, that is contradicted by the SEC's own statement:

> "The SEC also believes the release of "Excess Assets" should be held in abeyance for some period of time to allow creditors – including the SEC which has a multi-million dollar judgment against Ahmed stemming from allegations of insider trading – an opportunity to freeze or secure assets that have been frozen for the benefit of the judgment in this case." [Doc. #2075, n. 8]

This is also contradicted by the SEC's own positions supporting other alleged creditors to obtain judgments against the Defendant and Relief Defendants, as well as other alleged creditors' statements stating they will move against excess assets, i.e. DRS seeking to be paid [Doc. #1113], Brown Rudnick seeking an attachment [Doc. #1441], Oak seeking any released assets [Doc. #1132], the IRS placing liens [Doc. #1919], NMR e-Tailing stating it will seek assets above the judgment [Doc. #1097]. It is only equitable for the Court to allow living expenses and children's educational expenses to continue pending the conclusion of this case. Furthermore, the Second Circuit would have ruled on the Relief Defendants' nominee issue and it will be known only when the Second Circuit issues a ruling what assets belong to the Relief Defendants and cannot be attached by any of the Defendant's alleged creditors.

### IV.   CHANGE IN TITLE.

The Court also requested more clarification on the issue of change in title and why that is relevant. The *pro se* Defendant believes that once title has changed on an asset, especially once given to a fund pursuant to Section 162(f), that it may not be able to be reversed, or that there may be expenses to such reversal and multiple steps to do so. Furthermore, the *pro se* Defendant defers to the Relief Defendants on their appellate issue, but believes that any change in status or title on Relief Defendant assets is intertwined with the nominee issue under appellate jurisdiction.

### V.   CALCULATION OF INTEREST/GAINS.

The Court also requested thoughts on jurisdiction of calculating interest/gains. The Defendant is not a lawyer, but believes that this is now under appellate jurisdiction, as the issue

of interest/gains was part of the Relief Defendants' opening appellate brief. Furthermore, though it now appears the SEC concedes it no longer seeks interest/gains beyond the judgment dates, that issue is also on appeal. The SEC's change in stance introduces substantial complications regarding valuation of assets as of a particular judgment date. Furthermore, there is an issue of what is the correct judgment date to use, and again that is an issue already before the Second Circuit in the Relief Defendants' opening appellate brief. In addition, the SEC's Extrapolation Method is a change from the Court's order allowing interest/gains that is already on appeal.

## VI. AN ALTERNATIVE LIQUIDATION PROPOSAL.

In the hearing, the SEC expressed frustration that the Defendant has criticized the Receiver's proposal, but not offered any alternative. The SEC and Receiver are simply concerned with the ***ends*** (i.e. cash), while the Relief Defendants and Defendant are concerned with the ***means*** (how to get there with minimal prejudice). The Defendant would be willing to work with the Relief Defendants to propose an alternative proposal for the consideration of the esteemed Court and would address the various issues in a manner that would be acceptable to all parties with minimal prejudice to achieve the same objective as the SEC and the Receiver.

## VII. THE ISSUE OF LIQUIDATING PRE-APPEALS.

The Defendant, as he has outlined in his brief, believes that there are too many complications associated with liquidating assets at this time, before appellate ruling on the various issues, even for the allegedly *non-unique* assets. This case itself is complex and the resulting tax issues specific to this case introduce more complexity here. Furthermore, at the hearing, the Receiver stated the value of the Estate to be worth between $128-130 MM (and

confirmed by Doc. #2106-5, where the Receiver values the Estate at over $131MM, ***not*** including assets he deemed not necessary to value or the allegedly forfeited Oak assets, and without yet conducting an assessment of the true valuation of the Oak non-forfeited assets, as he stated he would do during the hearing). Given that the appeals are expected to conclude by mid-2022, waiting for a short six months for more clarity on the various appellate issues that will impact a liquidation plan of $94.9 MM and save many millions of dollars in potential tax impact as well as the hassles of reversal (if even possible once assets are liquidated) in a case where assets have been frozen as *status quo* for over 6.5 years and counting, is the most prudent and economical choice to make, which will accomplish judicial efficiency without prejudice to anyone.

## CONCLUSION

The *pro se* Defendant respectfully prays that this filing conveys his thoughts on the various issues in a more efficient and effective manner than he was able to do at the hearing.

Respectfully Submitted,

Dated: December 21ST, 2021

/s/ Iftikar Ahmed

_____
Iftikar A. Ahmed
C/O Advocate Anil Sharma
Government Place East
Kolkata 700 069, India
Tel:    +91-983-008-9945
e-mail: iftyahmed@icloud.com
*Pro Se*

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and served by electronic mail to:

| | |
|---|---|
| MR. NICHOLAS P. HEINKE, *ESQ.* <br> U.S. Securities and Exchange Commission <br> Byron G. Rogers Federal Building <br> 1961 Stout Street, Ste. 1700 <br> Denver, CO 80294 <br> (303) 844-1071 <br> e-mail: heinken@sec.gov | MR. MARK L. WILLIAMS, *ESQ.* <br> U.S. Securities and Exchange Commission <br> Byron G. Rogers Federal Building <br> 1961 Stout Street, Ste. 1700 <br> Denver, CO 80294 <br> (303) 844-1027 <br> e-mail: williamsml@sec.gov |

MR. PAUL E. KNAG, *ESQ.*
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5400
Fax: (203) 653-5444
e-mail: pknag@murthalaw.com