UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>        Plaintiff,<br>v.<br><br>IFTIKAR AHMED,<br><br>        Defendant, and<br><br>IFTIKAR AHMED SOLE PROP; *et al*<br><br>        Relief Defendants. | Civil Action No. 3:15-cv-675 (JBA)<br><br>January 24TH, 2022 |

**DEFENDANT'S RESPONSE TO RECEIVER'S APPLICATION FOR AUTHORITY TO EMPLOY VERDOLINO & LOWEY, P.C. *NUNC PRO TUNC* TO NOVEMBER 29, 2021 AS TAX AND FORENSIC ACCOUNTING PROFESSIONALS FOR THE RECEIVER**

The *pro se* Defendant respectfully files this Response to the Receiver's Application for Authority to Employ Verdolino & Lowey, P.C. *Nunc Pro Tunc* to November 29, 2021 as tax and forensic accounting professionals for the Receiver. [Doc. #2141, or "Application"]. The *pro se* Defendant reserves all rights.

**ARGUMENTS**

The Defendant opposes the Application, *inter alia*, as the need for a tax professional here should be limited in scope, there is no need for a forensic accountant in this case, the Receiver has not specified where the amounts to pay such tax counsel would come from, there should be a limit to any representation which can be revisited if need be, the tax professional should be retained on behalf of the Estate and not the Receiver, the Court should allow for privileged communication between the Receiver, tax professional, Defendant and Ms. Ahmed on tax related issues, and the

1

Receiver never informed the parties at the December 20, 2021 hearing (or "Hearing") that he had already discussed matters with a tax professional.

**I.        Retaining a Tax Professional in this Case Must be Limited in Scope.**

The *pro se* Defendant is extremely concerned about the cost of retaining yet more professionals without any limits on expenses of such professionals. Thus, the retention should be limited in scope and fees with the ability to expand that scope and/or fees later on, if need be.

*First*, this Court ordered liquidation of assets before any tax analysis was done on how to minimize the impact of such liquidation. The *pro se* Defendant has filed a motion to the Court on a potential way to legally avoid any taxes on the liquidation [Doc. #2150]. In the interest of time and money, the services by a tax professional should be limited to this issue of creation of Qualified Settlement Fund ("QSF") and how to do such so that all taxes on liquidation can be minimized or deducted. If the QSF is structured properly, there will be little need, if any, to pay any type of taxes due to liquidation and any need for tax professional should be limited in scope to this issue *first*. The only other reason for the tax professional is for the Receiver to pay the taxes that have been incurred on income generated during the asset freeze and have accrued back to the asset freeze. The Receiver has not stated any other need for why a tax professional is necessary and at this point, there is no other need to incur unnecessary expenses for any other reason. Should there be another reason, that can be revisited at a later point.

*Second*, there are two core tax issues in this case: (i) the payment of taxes on income accrued to the asset freeze during the pendency of this litigation and (ii) minimization of taxes due to liquidation. The Defendant and Ms. Ahmed have continually requested the Court to allow for payment of taxes incurred on income accrued to the asset freeze during the pendency of this litigation. The Court has not addressed this specifically, but said that "the Court directs the

Receiver to pay any tax liability generated by the Receivership Assets from the value of those assets." [Doc. #2147 at 18]. The *pro se* Defendant reads that to mean that the Receiver can and should pay tax liabilities that have accrued during the pendency of the asset freeze. Given that the Receiver is liable to the extent of any taxes that are not paid on income accrued to the frozen assets, these outstanding and accrued taxes between 2015-2021[1] should be addressed and paid at the earliest.

For example, the DRS has a tax amnesty program in place that expires January 31, 2022. It would be best for the Estate for the Receiver to reach out to the DRS right away to request such amnesty for any taxes due to the DRS from the frozen assets from 2015-2021, so that the Estate can realize the benefit of reduced tax payment on these accrued and outstanding taxes. Specifically, the DRS states: "Now through January 31, 2022, the program provides a 75% reduction in interest and waives penalties." This would significantly lower any outstanding amounts due to the DRS from 2015-2021 and the Receiver should ensure right away that the Estate can participate in this program.[2] The Receiver should also check if the IRS has such amnesty program.

Regarding the second issue, as taxes due to liquidation can be minimized by the proper creation and transfer of assets to a QSF, in the interest of cost and efficiency, the issues for a tax professional should be limited to that *first*. Only if it is determined that a QSF is not the proper vehicle here, *then* the tax professional should research alternative methods of minimizing taxes incurred due to liquidation.

---

[1] 2021 tax returns have not been prepared or filed yet. The Defendant reserves all rights.

[2] https://portal.ct.gov/DRS/Press-Room/Press-Releases/2021/State-Launches-Amnesty-Program

*Third*, there is no need for a comprehensive tax analysis. The process for a QSF should be determined first, along with the requisite steps, and if it makes sense and allows for tax minimization and deductions, one should be structured. If anything, there needs to be an understanding of how such tax deductions can be taken once the QSF is structured to ensure that no taxes are due to be paid upon liquidation. Furthermore, the Court has already ordered that any taxes due to liquidation should be paid from those assets; [Doc. #2147 at 27] thus, a "comprehensive analysis of such tax obligations" [Application at 4] is not needed to "facilitate this Court's decision in this regard" and would be a waste of time and Estate resources.

*Fourth*, the Court has ordered the Extrapolation Method for interest and gains and thus, no forensic services are needed. The Court itself alluded to this, by stating that "the extrapolated method likely results in material cost savings because the Receiver would not need the assistance of a forensic accountant to identify each disgorged asset." [Doc. #2147 at 26]. Thus, there is no need for any forensic services at all.

*Fifth*, with the proper structuring of a QSF, there may not be any tax liabilities associated with liquidation, as stated above in the first point above.

*Sixth*, the Defendant believes that neither his nor Ms. Ahmed's personal tax returns are needed for tax minimization due to liquidation. The Defendant has proposed a method whereby, if structured properly, no taxes would be owed as the amount of deductions would offset any taxes due to liquidation. Those deductions are equal to the value of assets transferred to the QSF. The Receiver's contention that the Defendant's and Ms. Ahmed's "past income tax returns [is] essential to this tax analysis [of minimizing taxes due to liquidation] because any tax analysis requires knowledge of their various tax attributes (income, expenses, deductions, losses, etc.)" [Application, n. 2] is patently wrong. With the establishment of a QSF which allows for the

deductibility of taxes in an amount equal to the value of assets transferred to such fund that year, there is no need at all for any past tax returns and it is a waste of Estate resources to undergo a tax analysis that may not be needed in the first place, especially as tax returns may change depending on Second Circuit ruling.

Also, while the Defendant and Ms. Ahmed are both in the process of amending their tax returns, income has accrued to the frozen assets during the litigation and those taxes must be paid.

The Defendant believes that it would be most helpful for the Court to allow for the Defendant and Ms. Ahmed to have tax counsel or professional dealing with their personal tax returns and tax issues in this case, who can interface directly with the tax professional retained on behalf of the Estate, or who can discuss tax matters under common interest privilege. While the Defendant understands that the Court has stated that the tax professional will render an "objective assessment," the *pro se* Defendant believes that does not provide for privileged and confidential communication with the tax professional. If the Court were to allow for and specifically order privileged and confidential communication between V&L, the Defendant, and Ms. Ahmed[3] solely on tax issues in this case, that would lead to significant efficiencies in terms of time and money, would benefit the Estate and the parties and would aid in establishing trust between these parties,[4] who all seek a common goal of minimizing taxes incurred.

---

[3] Ms. Ahmed has stated that she is *pro se* on issues related to taxes.

[4] The Defendant understands that this litigation has been contentious and does not agree with the actions/non-actions taken by the Receiver during this case and reserves all rights. However, in recognition that the Court has ordered liquidation, and that it benefits the Estate and all parties to minimize taxes in this case, the *pro se* Defendant believes that it would be most beneficial for the Estate and all parties for the Court to allow for privileged and confidential communication between V&L, the Receiver, the Defendant and Ms. Ahmed only, on all tax related issues, so that these can be addressed in the most cost effective and efficient manner, with the aim of achieving a common goal of minimization of liabilities, and humbly requests the Court to allow facilitation of such.

Thus, the *only* potential need for a tax professional at this point is to evaluate the use of a QSF to minimize taxes incurred upon liquidation and to pay the outstanding and accrued taxes and the Court should appropriately limit the retention of any tax professional for these purposes only. The Court should also order that such tax professional provide any analysis under seal to the Court, the Defendant and the Relief Defendants.

**II.     The Receiver Has Not Specified Where the Tax Professional Would be Paid From and Such Amount Should be Limited.**

**A. Where the Fees Would be Paid From.**

The Court has stated it will release excess assets to the Defendant and the Relief Defendants. The Receiver has not specified where the tax professional would be paid from. As the Defendant and Relief Defendants are entitled to their assets above the judgment amount ($94.9 million, with the amount for interest and gains to be confirmed upon briefing of such amount),[5] the Court should order that any amount paid for the tax professional should come from the judgment amount itself.  The Court has already adhered to this premise, as it ordered the payment of counsel retained on behalf of Relief Defendant Diya Real Holdings to be offset from any interest and gains from that asset as it stated that "The fees and expenses paid to MSNH… shall be counted against the "interest and gains" attributable to Apartment 12F..." [Doc. #1275]. Similarly, any payment to any tax professional should be offset from within the SEC's judgment of $94.9 million.

**B. Limit to the Amount Allowed.**

In addition, the Receiver himself sought a limit to the amount of payment to Diya Real Holdings' counsel MSNH, which was then subsequently revisited. [Doc. #1260] The Court

---

[5] The Receiver contends that such amount is $121 million, [Doc. #2022 at 14] but the Defendant opposes such amount, no calculation has been given for such and there must be briefing on that topic first.

specifically ordered that "MSNH shall not incur any fees or expenses *in excess of $10,000* in this matter without prior authorization from this Court." (emphasis added) [Doc. #1275].

Given that "the possibilities for abuse [are] limited only by the size of the estate" *SEC. v. Northshore Asset Mgt.*, 05 Civ. 2192 (WHP), at *3 (SDNY Sep. 29, 2009), the Court should order the same or similar limit for the tax professional, which can be revisited if need be.

**III.     The Retention Should Not be Allowed to be *Nunc Pro Tunc.***

As the *pro se* Defendant understands, the Receiver wants to retain the tax professional as of November 29, 2021. This is inequitable and also unfair, as the Receiver never informed the Court or the parties at the Hearing that he was speaking to such professional – indeed, there was no indication at the Hearing or anything that would even lead anyone to believe that the Receiver had been speaking to such tax professional and would seek to retain him *Nunc Pro Tunc.* Had the Defendant known, he would have requested that such tax professional be present at the Hearing, so that he could answer the Defendant's questions on tax issues, *especially*, as those issues are relevant to liquidation and as the Court itself asked questions regarding the timing of such tax analysis. Such tax professional would have been able to answer such questions more effectively and real-time before the Court and the parties and the Defendant was deprived of any opportunity or ability to question such tax professional on the various tax issues before this Court ordered liquidation. This is particularly egregious, as apparently, "V&L commenced providing services to the Receiver relative to this Action on November 29, 2021, and since that time professionals at V&L have conferred with the Receiver regarding various tax issues" [Doc. #2141-1 at 5, para. 14]. The Defendant has not had the benefit of being able to confer with tax professionals at all himself, and was also deprived of the opportunity to question V&L on various tax issues, including, *inter alia*, timing of such analysis vis-à-vis timing of liquidation,

the process related to a QSF, and as to *why* his personal tax returns are needed, especially as the Receiver seeks the Defendant's personal tax returns for reasons unknown to the Defendant.

This deprivation and lack of transparency makes it totally inequitable for the Court to grant any *Nunc Pro Tunc* representation. If any retention occurs, the Court should allow for a *prospective* retention.

**IV.     The Receiver Has Not Clarified How the Tax Professional Would Provide an "Objective Assessment."**

The Court stated that "a tax professional retained by the Receiver shall render an objective assessment" [Doc. #2147 at 18]; however, presumably a tax professional retained by the Receiver will submit recommendations that benefit the *Receiver*, not the Defendant or the Relief Defendants, or even the Estate. If anything, the tax professional should be retained on behalf of the *Estate*, not the Receiver. Furthermore, as the Defendant understands, neither the Defendant nor the Relief Defendants will have a privileged and confidential relationship with the tax professional, who will simply make recommendations for the interests of the Receiver. Thus, the Defendant believes that it is most efficient for the Court to order that the tax professional make recommendations for the interests of the *Estate* which is retaining the tax professional, and not the Receiver. Also, the Court should allow for a privileged and confidential relationship under a common interest privilege between V&L, the Receiver, Ms. Ahmed and the Defendant, to allow for more efficient communication on the tax issues.

**V.      The Court Should Allow for Open Communication on Tax Issues Between the Defendant, Ms. Ahmed, the Receiver and V&L.**

In addition, the Court has stated it will release excess assets to the Defendant and Relief Defendants. Thus, the Defendant and Relief Defendants have the most motivation to ensure that the value of the Estate is maximized and any expenses minimized. As stated earlier, the Court should allow for not only open communication between the Defendant, the Receiver, Ms. Ahmed

and V&L on any tax related issues, but also privileged and confidential communication under common interest privilege, to ensure that taxes are minimized with the least harm, so that the value of the Estate can be maximized.

### VI.     The Use of Four Professionals at V&L is Severely Excessive.

Given the limited scope of representation – that of QSF analysis – the use of four professionals at V&L is excessive, especially as these four individuals appear to be senior-level professionals. Furthermore, it appears as if V&L specializes in bankruptcies; however, this Court has specifically rejected that premise [Doc. #2147]. The Defendant could not identify any of the four professionals who has experience in analysis and setting up a QSF, though it was alluded to in the declaration. [Doc. #2141-1 at 5, para. 4] Whichever professional was instrumental in that particular case for the analysis and establishment of a QSF would be the proper individual here.

Such analysis on if a QSF is the proper vehicle in this case and how to structure the QSF should be done first, with the involvement of the Defendant and Relief Defendants and tax professionals retained on their behalf.

### VII.    Potential Conflicts.

A potential conflict check was done only against the Receiver, the SEC, the Defendants and the Relief Defendants. [Doc. #2141-1 at 5, para. 9]. The Court should also order that V&L check for any conflicts with any Oak related or affiliated entities and all persons affiliated with Oak entities. While Oak is not a proper party in this case, it professes to be an alleged victim and has freely participated in this case. Also, the declaration does not define "parties-in-interest" and the Defendant requests that V&P define such term. [Doc. #2141-1 at 5, para. 10]

## VIII. The Proposed Order.

The Defendant opposes the proposed order [Doc. #2141-2] to the extent it does not address the issues here and provides a separate proposed order (**EXHIBIT 1**).

## IX. Conclusion.

In sum, the Defendant requests, *inter alia*, that the Court limit the scope of the representation by tax professional to a determination of the QSF possibility, explicitly order the payment of accrued and outstanding taxes on income accrued to the frozen assets during the pendency of the asset freeze, order the Receiver to contact the DRS for inclusion in the tax amnesty program for taxes from 2015 to present, order the Receiver to see if the IRS has such an amnesty program, order for a certain amount only to be allowed for fees of such tax professional which can be revisited if needed, order a conflict check for any Oak related entities and persons affiliated with any Oak related entities, deny the request for *Nunc Pro Tunc* representation, limit the representation to only one tax senior professional, allow the retention of such individual on behalf of the Estate and not the Receiver, allow for and explicitly order privileged and confidential communication between the Receiver, Defendant, Ms. Ahmed and V&L professionals under a common interest privilege arrangement for any tax issues, offset such fees of tax professionals against the SEC's judgment and order the Receiver to explain how the tax professional would provide an objective assessment.

        Respectfully Submitted,

Dated:  January 24TH, 2022        /s/ Iftikar Ahmed

        _____
        Iftikar A. Ahmed
        C/O Advocate Anil Sharma
        Government Place East
        Kolkata 700 069, India
        Tel:    +91-983-008-9945
        e-mail: iftyahmed@icloud.com

        *Pro Se*

## **CERTIFICATE OF SERVICE**

  I hereby certify that a copy of the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and served by electronic mail to:

MR. NICHOLAS P. HEINKE, *ESQ.*
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1071
e-mail: heinken@sec.gov

MR. MARK L. WILLIAMS, *ESQ.*
U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700
Denver, CO 80294
(303) 844-1027
e-mail: williamsml@sec.gov

MR. PAUL E. KNAG, *ESQ.*
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(203) 653-5400
Fax: (203) 653-5444
e-mail: pknag@murthalaw.com