UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>IFTIKAR AHMED,<br><br>Defendant, and<br><br>IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents,<br><br>Relief Defendants. | Civil Action No. 3:15cv675 (JBA) |

**PLAINTIFF UNITED STATES SECURITIES AND EXCHANGE COMMISSION'S OPPOSITION TO RELIEF DEFENDANTS' EMERGENCY MOTION FOR RELEASE OF FUNDS TO FIX MOLD ISSUE AT 505 NORTH STREET**

Plaintiff United States Securities and Exchange Commission ("SEC") hereby files this opposition to Relief Defendants' emergency motion [Doc. # 2151] seeking the release of $26,812 for purported "cleaning and remedying of mold issues in the main home and the poolhouse" ("Motion"). As outlined herein, because a release of funds will likely cause a larger portion of the judgment to go unsatisfied, because Ms. Ahmed continues to refuse to produce her

1

tax returns, because it is unlikely that Ms. Ahmed is unable to pay these expenses, and because a release of monies may be unnecessary, the Motion should be denied.

## BACKGROUND

On July 6, 2021, following the Second Circuit remand of the case, the Court entered [Doc. # 2011] its Redetermined Final Amended Judgment whereby Defendant's disgorgement obligation was increased to $64,171,646.14 and the prejudgment interest award was increased to $9,755,798.34. With the $21 million in civil penalties previously ordered, this increased the total judgment against Defendant to "$94,927,444.40, exclusive of gains on any assets used to satisfy the judgment since the asset freeze order." Doc. # 1997 at 12.

On December 20, 2021, the Court held a hearing on the Receiver's plan of liquidation. During that hearing the Court directed Relief Defendants (and Defendant) to furnish the Receiver with their income tax returns, which the Receiver had repeatedly requested.

On January 11, 2022, the Court entered [Doc. # 2147] its Order granting, with modification, the Receiver's motion to approve his proposed plan of liquidation. Therein, the Court reminded Relief Defendants (and Defendant) that it had previously directed them "to furnish the Receiver with their income tax returns" and directed the "Receiver to apprise the Court if and when those documents have been produced." *Id.* at 18. The Court further directed the Receiver "to pay any tax liability generated by the Receivership Assets from the value of those assets." *Id*.

On January 21, 2022, Ms. Ahmed filed [Doc. # 2158] a motion for a protective order stating that she was "in the midst of amending her tax returns" and that she would provide only her amended tax returns to the receiver. *Id*. at 2-3. Although she is represented by counsel in this case, Ms. Ahmed claimed to be "*pro se* on tax matters." *Id*. at 3 n. 2. On February 3, 2022, the

2

Receiver filed [Doc. # 2170] a notice that Ms. Ahmed had produced copies of her amended tax returns, which were dated January 24, 2022. The SEC understands that Ms. Ahmed will not produce her original tax returns to the Receiver. Mr. Ahmed has not produced any tax returns.

## ARGUMENT

The Court should deny the Motion on the current record.

First, the Court should decline to release monies that will be needed to satisfy the judgment, especially when Defendant and Relief Defendants previously pledged this same money to act as a *supersedeas* bond securing the judgment. *See, e.g.*, Doc. ## 1308 at 3; 1337 at 3. In setting out its plan of liquidation, the Receiver noted that the sale of all frozen assets is not expected to return sufficient funds to satisfy the total judgment, Doc. # 2022 at 14, which was *before* the Court ordered the payment of taxes from the corpus of frozen assets. Doc. # 2147 at 18. Thus, it is highly unlikely that the liquidation of assets will satisfy the total outstanding judgment. Because any funds released from the asset freeze will likely cause a larger portion of the judgment to go unsatisfied, the Court should decline to release funds at this juncture. At a minimum, the Court should await the conclusion of Phase 1 of the liquidation plan so that both the value of the frozen assets and the size of the total judgment (including the appreciation award) can be better ascertained.

Second, the Court should decline to consider requests for the release of funds until Mr. and Ms. Ahmed produce their tax returns. The docket is replete with representations from Mr. and Ms. Ahmed stating that they do not have access to any money or income because all of their assets have been frozen. As noted above, the Court directed the both Mr. and Ms. Ahmed to produce their tax returns more than six weeks ago. Mr. and Ms. Ahmed have refused to produce their tax returns making privacy claims, and instead suddenly – and suspiciously – stated that

3

they would amend their tax returns for the 2015–2020 tax years and produce those instead. *See* Doc. ## 2158, 2159. The Ahmeds' purported privacy concerns are unconvincing given the SEC has (and provided to the Court) the Ahmeds' earlier filed tax returns. *See* Doc. # 888-2. Further, because of requirements under the asset freeze (Doc. # 113) and Order appointing receiver (Doc. # 1070), there should be no income or assets contained in the tax returns that the Receiver, SEC, and Court do not already know about. Further adding to the SEC's suspicions, Ms. Ahmed's counsel of record appears to be attempting to distance himself from this subject by claiming to have not been "retained to advise on tax related matters, and thus, is not advising Ms. Ahmed on such, and Ms. Ahmed is *pro se* on tax matters." Doc. # 2158 at 3 n.2. Of course, Ms. Ahmed's representations to this Court about having no income or access to money, and the Court's Order directing her to produce her tax returns to assist with the liquidation process, are neither "tax matters" nor are they outside the scope of this litigation.

Given the instant Motion is premised on Ms. Ahmed's familiar claim to not have access to any money, the Court should be similarly skeptical of her refusal to produce her tax returns and sudden desire to amend those returns. The Court should therefore decline to consider this – or any further – request for the release of funds until, at a minimum, Defendant and Relief Defendants have produced their original tax returns as previously ordered by the Court.

Third, Ms. Ahmed has not made any (much less a sufficient) showing that she cannot pay these expenses herself. Because the house is not an asset that can be liquidated to satisfy the judgment,[1] the Court should hesitate to release funds for its upkeep, especially when Ms. Ahmed

---

[1] The SEC understands the United States Attorney's Office for the District of Massachusetts has a declaration of bond forfeiture and judgment secured by the house, which is on appeal. *See SEC. v. Ahmed*, Case No. 21-1193 (1st Cir.). The SEC further understands that judgment will be enforced against the house if the district court's decision is affirmed.

appears to have access to some undisclosed sources of money. In addition to refusing to produce her tax returns, she continues to refuse to obtain income producing employment (in the midst of a labor shortage). Nonetheless, she has, during the pendency of this case, had the ability to pay more than $100,000 per year to send her children to private school while taking family trips to India to vacation with her fugitive husband.[2] The Court should therefore decline to release funds on the current record.

    Lastly, even if the Court was inclined to grant the relief, it should first Order Ms. Ahmed to make an insurance claim and then release funds only for necessary repairs. Relief Defendants do not provide any evidence that they made an insurance claim that was denied. While they claim the "home insurance policy does not cover damage due to flooding and seepage," Motion at 1 n.2, even if this is true, they admit that they do not know why water was leaking prior to a storm. *Id*. at n.1 ("In addition, the invoices reflect amounts to determine the source of water leak behind a basement wall prior to the storm"). Further, repairs to the "pool house," including replacing a dehumidifier that costs $3,595, should not be entertained.

## **CONCLUSION**

    For the forgoing reasons, Relief Defendants' Motion should be denied.

---

[2] While the 2020-21 and 2021-22 tuition was paid for using funds the Court released, Ms. Ahmed was somehow able to pay tuition for the four prior years without additional funds released by this Court. *See* Doc. # 1597 at 2 ("Mrs. Ahmed represents that she 'had been borrowing funds to pay the school tuition, but has come to the point where she is unable to do so any further'") (quoting Doc. # 1559 at 2).

DATED: February 8, 2022                    *s/ Mark L. Williams*
                                           Nicholas P. Heinke
                                           Mark L. Williams
                                           U.S. Securities and Exchange Commission
                                           1961 Stout Street, Suite 1700
                                           Denver, CO 80294-1961
                                           (303) 844-1071 (Heinke)
                                           (303) 844-1027 (Williams)
                                           (202) 551-4532 (Yoder)
                                           HeinkeN@sec.gov
                                           WilliamsML@sec.gov
                                           Attorneys for Plaintiff

CERTIFICATE OF SERVICE

      I certify that on February 8, 2022, a copy of the foregoing document was emailed to Defendant Iftikar Ahmed at IftyAhmed@icloud.com, and served via ECF upon the following:

Paul E. Knag
Kristen L. Zaehringer
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(Counsel for Relief Defendants)

Christopher H. Blau
Stephen M. Kindseth
Zeisler & Zeisler, P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604
(Counsel for Receiver, Jed Horwitt, Esq.)

                                                *s/ Mark L. Williams*
                                                Mark L. Williams