UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, )<br><br>Plaintiff, )<br><br>v. )<br><br>IFTIKAR AHMED, )<br><br>Defendant, and )<br><br>IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUNITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents, )<br><br>Relief Defendants. ) | Civil Action No. 3:15cv675 (JBA) |

---

**PLAINTIFF UNITED STATES SECURITIES AND EXCHANGE COMMISSION'S CONSOLIDATED OPPOSITION TO RELIEF DEFENDANTS' [DOC # 2158] AND DEFENDANT'S [DOC. # 2159] MOTIONS FOR PROTECTIVE ORDER**

Plaintiff United States Securities and Exchange Commission ("SEC") hereby files this consolidated opposition to Relief Defendants' [Doc. # 2158] and Defendant's [Doc. # 2159] motions for a protective order over their tax returns ("Motions"). Defendant's claim that he has not been ordered to produce his tax return to the receiver is baseless, and his alternative request, joining Relief Defendants' request for entry of their proposed protective order, is unnecessary because a protective order was already entered by this Court at the outset of this case. *See* Doc. #

1

6. Moreover, the Motions seek to impose draconian restrictions – such as limiting the use of the tax returns "solely" to the calculation of tax liability of the frozen assets – that could have the effect of precluding the Receiver from carrying out his duties and, indeed, alerting this Court or the SEC if he believes, based on the review of the tax returns, that the asset freeze has been violated or Defendant or Relief Defendants have made inaccurate statements about assets or income. The Motions should be denied, and Defendant and Relief Defendant should promptly produce *all* relevant tax returns (not simply newly "amended" returns) to the Receiver.

## BACKGROUND

On December 20, 2021, the Court held a hearing on the Receiver's plan of liquidation. During that hearing the Court directed Defendant and Relief Defendants to furnish the Receiver with their income tax returns, which the Receiver had repeatedly requested.

On January 10, 2022, the Court entered an Order [Doc. # 2146] conditionally granting Defendant's and Relief Defendants' motions for extension of time to respond to the Receiver's motion to employ tax professionals. Therein, the Court made clear that at the December 20 hearing it had "directed Defendant and Relief Defendants to produce their income tax returns for the Receiver's use in his assessment of the tax liabilities attendant to liquidation, which the Receiver has previously requested." *Id*. at 2 (citing Min. Entry [Doc. # 2132]). Because the Receiver "ha[d] not received the tax returns which the Court ordered produced," and "[t]o encourage prompt compliance with the Court's directive," the motions for extension of time were granted, "but only if the Receiver reports to the Court that he has received their requested tax returns before January 24, 2022." *Id.* at 2. However, rather than produce their tax returns and receive the additional time they claim they needed, both Defendant and Relief Defendant chose to simply respond to the Receiver's motion on the original due date. *See* Docs. ## 2160, 2161.

On January 11, 2022, the Court entered [Doc. # 2147] its Order granting, with modification, the Receiver's motion to approve his proposed plan of liquidation. Therein, the Court again reminded Defendant and Relief Defendants that it had previously directed them "to furnish the Receiver with their income tax returns" and directed the "Receiver to apprise the Court if and when those documents have been produced." *Id.* at 18. The Court further directed the Receiver "to pay any tax liability generated by the Receivership Assets from the value of those assets." *Id*.

On January 21, 2022, Ms. Ahmed filed [Doc. # 2158] the instant motion for a protective order stating that she was "in the midst of amending her tax returns" and that she would provide only her amended tax returns to the receiver. *Id*. at 2-3. Although she is represented by counsel in this case, Ms. Ahmed claimed to be "*pro se* on tax matters." *Id*. at 3 n. 2. The following day, Defendant filed [Doc. # 2159] the instant "Motion regarding his personal tax returns" stating that he too was "amending his tax returns for the years 2015-2020," claiming that he "does not understand the esteemed Court at the Hearing to [have] direct[ed] the turning over of his personal tax returns to the Receiver," and requesting the Court not order him "to turn over his personal tax returns to the Receiver" until he seeks "guidance from tax counsel." *Id*. at 3-4. "In the alternative," Defendant asks the Court to "enter and apply to him the Protective Order as proposed by Ms. Ahmed." *Id*. at 4.

On February 3, 2022, the Receiver filed [Doc. # 2170] a notice that Ms. Ahmed had produced copies of her *amended* tax returns, which were dated January 24, 2022, but had not produced her original tax returns to the Receiver. To date, Mr. Ahmed has not produced any tax returns.

On February 10, 2022, Relief Defendants filed [Doc. # 2176] a reply brief in support of their most recent motion for a release of funds. Therein, Ms. Ahmed for the first time disclosed that she has previously amended her tax returns,[1] purportedly "due to the asset freeze," but did not state whether those amendments resulted in refunds that would unquestionably have been frozen under this Court's asset freeze and would further render false her sworn representations to not have access to money because of the asset freeze. *See* Doc. # 2176 at 3 ("Ms. Ahmed, because she is *pro se* on tax matters, has already amended her returns several times during the pendency of this litigation due to the asset freeze.")

## ARGUMENT

While the SEC does not object, in principle, to a protective order applying to the tax returns, the Motions should be denied because a protective order is already in place. Defendant's and Relief Defendants' attempts to impose more restrictive protections to the tax returns are inappropriate, and should be rejected by this Court. Defendant's and Relief Defendants' attempts to further delay the production of their tax returns – and not just recently-amended tax returns – should not be condoned.

<u>First</u>, Defendant's claim that he does not understand the Court to have ordered him to produce his tax returns to the Receiver is not credible. The Court was clear at the December 20 hearing that, while Defendant was free to seek tax counsel (but would not be appointed tax counsel), he was to provide his tax returns to the Receiver. Whatever ambiguity existed, it was

---

[1] On February 11, 2022, SEC counsel inquired with counsel for the Receiver whether Ms. Ahmed had disclosed to the Receiver that she previously amended her tax returns. According to the Receiver's counsel, the Receiver was not made aware of any tax amendments, aside from the amended tax returns dated January 24, 2022 that were recently produced. The SEC understands the Receiver is in the process of attempting to obtain all of the Ahmed's tax returns, including original and amended tax returns, as well as determining whether any amendments resulted in tax refunds.

eliminated by the Court's subsequent Orders. *See, e.g.*, Docs. ## 2146 at 2 ("At the hearing the Court held on December 20, 2021 regarding the Receiver's proposed Liquidation Plan, the Court directed Defendant and Relief Defendants to produce their income tax returns for the Receiver's use in his assessment of the tax liabilities attendant to liquidation, which the Receiver has previously requested"); 2147 at 18 ("[A]t the December 20 hearing, the Court directed Defendant and Relief Defendants to furnish the Receiver with their income tax returns").

At best, Defendant's request that the Court allow him to "seek guidance from tax counsel … before ordering the Defendant to turn over his personal tax returns to the Receiver" is a motion for a reconsideration of the Court's order directing him to produce his tax returns. *See* Doc. # 2159 at 4. It should be denied as both untimely (having been filed well more than 7 days after the hearing in which the Court directed the production of the returns) and meritless (failing to raise "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice"). *See* Doc. # 2099 (setting forth the standard for motions for reconsideration); D. Conn. L. Civ. R. 7(c) (setting forth the timeliness requirement).

Even were the Court to entertain Defendant's belated arguments, they are meritless. Regardless of how high the standard is to obtain tax returns, it is easily met here because the Receiver has been "direct[ed]…to pay any tax liability generated by the Receivership Assets from the value of those assets," Doc. # 2147 at 18, and Defendant's and Relief Defendants' tax returns are unsurprisingly needed to effectuate the Court's Order. *See, e.g.*, Doc. # 2171 at 2-3. Defendant's claim that he "firmly believes that no taxes may be due" upon liquidation is outlandish, and even if it were true, the Receiver would still need the tax returns so that a tax professional – rather than the defendant – can opine on what if any taxes are owed. Doc. # 2159

at 2. Moreover, given the Receiver has been ordered to control "all assets subject to the Court's asset freeze order" and to "take possession" of such assets, Doc. # 1070 at 6-7, the review of Defendant's and Relief Defendants' tax returns are necessary to ensure all assets have been located and placed under the Receiver's control, especially following Ms. Ahmed's recent disclosure that she "amended her returns several times during the pendency of this litigation due to the asset freeze." Doc. # 2176 at 3. Furthermore, Defendant and Relief Defendants have put their tax returns at issue by repeatedly representing to the Court – under oath – that they do not have any income or access to money or assets aside from that frozen under the Court's asset freeze. They cannot now complain that they are to produce their tax returns that will corroborate (or contradict) these sworn representations. *See, e.g.*, *SEC v. Collector's Coffee Inc.*, 464 F. Supp. 3d 665, 670 (S.D.N.Y. 2020), *objections overruled sub nom. SEC v. Kontilai*, 2020 WL 4496764 (S.D.N.Y. Aug. 4, 2020) (ordering defendant "who put his income at issue" to turn over tax returns).

Second, a protective order is already in place that applies to Mr. and Mrs. Ahmed's tax returns that have been requested by the Receiver and ordered produced by this Court. The Court's Standing Protective Order [Doc. # 6] allows parties to designate documents confidential, and requires that such confidential information "will be held and used by the person receiving such information solely for use in connection with the action, in which this Order issued." *Id.* at 1. Such a protective order is sufficient to protect any legitimate privacy interests Mr. or Mrs. Ahmed may have in their tax returns. Indeed, Relief Defendants have recently acknowledged as much: "Any tax returns that have been or are produced in this litigation are subject to the Standing Protective Order [ECF No. 6] and are confidential by law. Ms. Ahmed would expect

that the SEC and Receiver will abide by the confidentiality provisions on such documents." Doc. # 2176 at 3 n. 3.

Third, the Court should not condone Mr. and Mrs. Ahmed's attempt to restrict the tax returns "solely for use in determination of taxes arising from the frozen assets or liquidation of such assets, as ordered by the Court." Doc. # 2158-1 at 2; *see also* Doc. # 2159 at 4 (Defendant joining Relief Defendants' request for a protective order "which would make clear that such tax returns are to be used solely for the purposes of any tax determination from the frozen assets"). The Receiver has obligations under the receivership order [Doc. # 1070], and indeed as an officer of the Court, and should not be bound by a draconian restriction to limit the use of the tax returns solely for purposes of tax determinations. If, for example, the originally-filed or previously amended tax returns indicated that there are tax refunds, assets, or other sources of income that were not previously disclosed to this Court, or that were inconsistent with previous representations to this Court, it would be entirely inappropriate to shield that information from this Court under the guise of the proposed protective order.

Fourth, and for similar reasons, the SEC objects to Defendant's and Relief Defendants' attempts to use the proposed protective order preclude the SEC from receiving the tax returns. *See* Doc. # 2158-1 at 2 ("… no document or information produced with respect to or derived from these tax returns may be disclosed to any other person or entity, but only to Ms. Ahmed and Receiver or to their designated counsel …"); Doc. # 2159 at 3 (arguing that the "SEC … ha[s] [no] reason to seek Defendant's tax returns."). The SEC may choose to seek production of the tax returns for various legitimate reasons, including to assess whether tax refunds have been dissipated in violation of the Court' asset freeze and whether prior representations to the SEC and this Court about assets and income were accurate. The SEC reserves the right to seek the tax

returns, and in fact intends to do so, and the Court should not preclude the SEC from doing so by entering the proposed protective order.

<u>**CONCLUSION**</u>

Defendant's claim that he has not been ordered to produce his tax return to the Receiver is meritless, and any request for reconsideration baseless. Moreover, another protective order is unnecessary because the Court has already put into place a protective order [Doc. # 6] sufficient to protect any legitimate privacy interests that Defendant or Relief Defendants may have in their tax returns, as recently acknowledged by Relief Defendants. Their current attempts to impose more draconian – and suspicious – restrictions on the Receiver's use of the tax returns should not be condoned; the Motions should be denied and Defendant and Relief Defendants should promptly produce *all* relevant tax returns to the Receiver.

DATED: February 11, 2022

*s/ Mark L. Williams*
Nicholas P. Heinke
Mark L. Williams
U.S. Securities and Exchange Commission
1961 Stout Street, Suite 1700
Denver, CO 80294-1961
(303) 844-1071 (Heinke)
(303) 844-1027 (Williams)
(202) 551-4532 (Yoder)
HeinkeN@sec.gov
WilliamsML@sec.gov
Attorneys for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

I certify that on February 11, 2022, a copy of the foregoing document was emailed to Defendant Iftikar Ahmed at IftyAhmed@icloud.com, and served via ECF upon the following:

Paul E. Knag
Kristen L. Zaehringer
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(Counsel for Relief Defendants)

Christopher H. Blau
Stephen M. Kindseth
Zeisler & Zeisler, P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604
(Counsel for Receiver, Jed Horwitt, Esq.)

<u>*s/ Mark L. Williams*</u>
Mark L. Williams