UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br>    *Plaintiff*,<br>    *v.*<br>IFTIKAR AHMED,<br>    *Defendant*, and<br><br>IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents,<br><br>    *Relief Defendants*. | Civil No. 3:15cv675 (JBA)<br><br>February 25, 2022 |

**ORDER GRANTING WITH MODIFICATION THE RECEIVER'S APPLICATION FOR AUTHORITY TO EMPLOY VERDOLINO & LOWEY, P.C. *NUNC PRO TUNC* TO NOVEMBER 29, 2021 AS TAX AND FORENSIC ACCOUNTING PROFESSIONALS FOR THE RECEIVER**

The Receiver requests authorization to employ tax professionals Verdolino & Lowey, P.C. ("V&L"). (Receiver's Appl. [Doc. # 2141].) Plaintiff SEC supports the Receiver's application [Doc. # 2163] while Defendant and Relief Defendants oppose it [Docs ## 2160-61].

In granting with modification the Receiver's Liquidation Plan, the Court directed the Receiver to conduct an analysis with respect to tax liabilities that the Receivership Estate would be obligated to pay upon liquidation and "direct[ed] the Receiver to pay any tax liability generated by the liquidation of Receivership Assets from the Receivership Assets." (Order Granting with Modification the Receiver's Mot. to Approve His Proposed Plan of Liquidation ("Liquidation Order") [Doc. # 2147] at 6-7, 27 (summarizing the Liquidation

Plan).) The Order Appointing Receiver permits him "[t]o engage and employ persons in his discretion, as reasonably necessary, consistent with the dual objects of maximizing the value of the assets of the Receivership Estate and minimizing the expenses charged thereto, to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, accountants [and] attorneys." (Order Appointing Receiver ("Appointment Order") [Doc. # 1070] at 7.) The Appointment Order requires the Receiver to seek the Court's authorization before retaining such persons. (*Id.* at 15-16.) In accordance with these Orders, the Receiver seeks to retain V&L as tax professionals so that he may effectuate the Liquidation Plan.

The Receiver maintains that the retention of tax professionals is necessary to fulfill his duty to calculate the tax liabilities that must be satisfied prior to satisfaction of the Total Judgment. (Receiver's Appl. at 4.) The Receiver also emphasizes that it is necessary for him to seek advice from tax professions about his potential personal liability for unpaid claims by the Government against the Receivership Estate pursuant to 31 U.S.C. § 3713(b). (*Id.* at 4.)[1] Finally, the Receiver contends that his chosen tax firm, V&L, is "highly qualified" to serve these purposes. (Receiver's Appl. at 6.)

Defendant opposes the Receiver's Application, raising numerous arguments. (*See* Def.'s Resp. at 2, 6, 7-9.) First, Defendant argues that retaining a tax professional should be limited in scope. Specifically, Defendant proposes that the Court create a Qualified Settlement Fund ("QSF") and that the tax professional's services should be limited to

---

[1] In his initial application, the Receiver argued that the retention of forensic accounting professionals was necessary in the event that the Court ordered a precise calculation method for measuring post-judgment interests and gains. (*Id.*) Following the Receiver's application, the Court directed the Receiver to calculate post-judgment interests and gains using the extrapolated method, rather a than precise calculation. (Liquidation Order at 25-26.) Given this directive, the Receiver, Defendant, and Relief Defendants are in agreement that retention of a forensic accounting professional is no longer necessary at this stage. Accordingly, the Court will not approve the employment of V&L for this purpose.

2

evaluating the viability of that process. (*Id.* at 2.) In Defendant's view, the QSF would eliminate the need to conduct a comprehensive tax analysis or to review his and Ms. Ahmed's personal income tax returns. (*Id.* at 4-5.) Next Defendant argues that "the Court should order that any amount paid for the tax professional should come from the judgment amount itself" and that sum should be limited. (*Id.* at 6-7.) Defendant further argues that a tax professional should be retained not by the Receiver, but "on behalf of the Estate" and that the "Court should allow for not only open communication between the Defendant, the Receiver, Ms. Ahmed and V&L on any tax related issues, but also privileged and confidential communication under common interest privilege." (*Id.* at 8-9.) Additionally, Defendant argues that the proposed "use of four professionals at V&L" is excessive because the scope of the tax analysis should be limited. (*Id.* at 9.) Defendant also requests that the Court "order that V&L check for any conflicts with any Oak related or affiliated entities and all persons affiliated with Oak entities." (*Id.*) Finally, Defendant argues that the Court should not grant the application *nunc pro tunc* because the Receiver did not inform the Court or the parties that he solicited V&L's services dating back to November 29, 2021. (*Id.* at 7.) The Relief Defendants join Defendant's arguments "to the extent [they] do[] not conflict with the Relief Defendants' currently pending motions before the Court." (Relief Def.'s Resp. at 1.)

Upon a review of Defendant's arguments, it does not appear that Defendant and Relief Defendants oppose the retention of V&L as tax professionals. Instead, Defendant's and Relief Defendants' concerns lie with the scope of such professionals' services, the source and amount of payment for those services, and issues of confidentiality and conflicts of interest. The Court does not find that any of Defendant's objections are grounds to deny the Receiver's Application.

First, the breadth of the Receiver's use of tax professionals is appropriately limited by the Court's orders. The Court's directive to the Receiver requires him to assess and fulfill tax obligations associated with the liquidation of the Receivership Assets. (Appointment Order

3

at 7.) More specifically, the Court directed the Receiver to retain a tax professional, if necessary, to "render an objective assessment" of the Receiver's obligations to "pay any tax liability generated by the Receivership Assets from the value of those assets."[2] (Liquidation Order at 18.) To facilitate that duty, the Court has authorized him to solicit tax professionals. (Appointment Order at 7.) Defendant's argument is not that these Orders do not go far enough, but that the Receiver should focus his efforts on establishing a QSF. While a tax professional may agree that establishing a QSF is appropriate in this matter, the Court will not direct such result. That decision will be left to the discretion of the Receiver and his retained professionals within the parameters set forth in the Court's previous Orders. Thus, there is no need for further restrictions or conditions on the employment of tax professionals.

Next, the Receiver has adequately addressed Defendant's billing concerns. Although the Receiver reports that V&L cannot provide an estimate for the total cost of its services, the two have agreed "that V&L will not incur fees in excess of $50,000 without further approval by this Court."[3] (Receiver's Reply at 8.) Moreover, "V&L has agreed to comply with the Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission, and maintain billing records setting forth complete and detailed activity descriptions, including a time allotment billed in increments of one-tenth of an hour."

---

[2] The Court directed an "objective assessment" which would "eliminat[e] the duplicative use of Receivership Assets to retain [the Relief Defendants'] own tax counsel." *Id.* This reasoning applies to tax experts retained on behalf of the Receivership Estate, as the Receiver's retained professional is already acting on behalf of the Estate by virtue of the Receiver's charge articulated by the Court's Appointment Order.

[3] In fact, according to the Receiver: "while V&L's total fees may ultimately be materially higher or lower than $50,000, this initial limit is an appropriate and fair accommodation of the Defendants' request while avoiding a situation where the Receiver is burdening this Court with otherwise preventable requests to increase V&L's fee limit, which would only slow the liquidation process and the tax analysis described in the Liquidation Plan." (Receiver's Appl. at 9.)

(*Id.* at 9.) The Receiver intends to include requests for compensation on behalf of V&L in the quarterly fee applications submitted to the Court pursuant to the Appointment Order. (*Id.*) This billing arrangement will allow the Court to make the final determination as to reasonable fees for V&L's services.

Relatedly, the Court acknowledges Defendant's confusion as to why the Receiver's Application seeks to employ V&L *nunc pro tunc* dating back to November 29, 2021. While the Receiver maintains that he did not alert the Court to his discussions with V&L during the December 20 hearing due to a strategic decision to focus on preparing for that hearing, the Court inquired whether the Receiver had retained a tax professional during the hearing. (*See* Tr. [Doc. # 2173] at 12:6-9.) Curiously, the Receiver represented that he had not but that a tax professional "doesn't need to be retained prior to the commencement of liquidation." (*Id.* at 13:20-25.) Because liquidation commenced pursuant to the Court's Order issued on January 11, 2022, any consultation prior to that date seemingly contradicts the Receiver's representations to the Court. Accordingly, the Court will determine whether retroactive fees are appropriate after conducting an evaluation of the nature and extent of V&L's services rendered prior to liquidation.

Finally, there are satisfactory confidentiality measures in place and there appears to be no conflict of interest involved in the retention of V&L. As an initial matter, the Receiver maintains a "continuing duty to ensure that there are no conflicts of interest between the Receiver, his Retained Personnel (as that term is defined [in the Appointment Order]), and the Receivership Estate." (Appointment Order at 8). Additionally, Keith D. Lowey, the President of V&L represents that "V &L neither holds nor represents any interest adverse to the Receiver, the Receivership Estate (as that term is defined in the Appointment Order), the Defendant, the Relief Defendants or any other parties-in-interest in this Receivership." (Decl. of Keith D. Lowey, Receiver's Ex. A [Doc. # 2141-1] ¶ 10.) Thus, there is no need for the Court to require further conflict checks.

As the Defendant and Relief Defendants do not raise arguments that persuade the Court that V&L would be an inappropriate choice to assist the Receiver in his duties, the Receiver's Application [Doc. # 2141] is GRANTED with modification reserving the decision to grant fees related to pre-liquidation services after an evaluation of those billing records.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 25th day of February 2022.