**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

|  |  |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> IFTIKAR AHMED, <br><br> Defendant, and <br><br> IFTIKAR AHMED SOLE PROP; *et al* <br><br> Relief Defendants. | Civil Action No. 3:15-cv-675 (JBA) <br><br><br> September 05TH, 2022 |

**DEFENDANT'S RESPONSE IN OPPOSITION TO THE "FOURTEENTH INTERIM APPLICATION FOR PROFESSIONAL FEES AND EXPENSES INCURRED BY THE RECEIVER AND HIS PROFESSIONALS" [DOC. #2306]**

The *pro se* Defendant submits this Response in Opposition [or the "Fourteenth Opposition"] to the Receiver's "Fourteenth Interim Application for Professional Fees and Expenses Incurred by the Receiver and his Professionals." [Doc. #2306, or the "Fourteenth Application"].

The Defendant fully incorporates his prior Oppositions [Doc. #1183 or the "First Opposition"] and Sur-Reply [Doc. #1222-1 or the "Sur-Reply"]; [Doc. #1261 or the "Second Opposition"]; [Doc. #1354 or the "Third Opposition"]; [Doc. #1508 or the "Fourth Opposition"]; [Doc. #1563 or the "Fifth Opposition"]; [Doc. #1641, or the "Sixth Opposition"]; [Doc. #1699, or the "Seventh Opposition"]; [Doc. #1787, or the "Eighth Opposition"]; [Doc. #1989, or the "Ninth Opposition]; [Doc. #2082, or "Tenth Opposition"]; [Doc. #2113, or "Eleventh Opposition"]; [Doc. #2207, or "Twelfth Opposition"] and [Doc. #2258, or "Thirteenth Opposition"] into this Opposition.

1

The Court must deny the Fourteenth Application for the same reasons as the Defendant outlined in his earlier oppositions and within: the Receiver's fees are excessive, duplicative, unreasonable and unjustified; the Receiver has not provided any benefit at all to the Receivership Estate to justify such excessive and unjustified expenses but instead has caused substantial losses of over $3.2 MM dollars to date to the Estate; the Receiver is not providing any value to the Estate; the Court should pay the Receiver out of the judgment amount only and not out of funds or assets above the judgment amount; it is inequitable for the Court to pay a Receiver who solely benefits the public[1] (and not the Defendant) out of funds belonging to the Defendant when the Court has repeatedly denied funds for the Defendant's own use and benefit despite the Receiver's own confirmation of tens of millions of dollars of assets over and above the judgment amount. In addition, the Receiver has, in violation of this Court's order, spoken with the SEC and the IRS about Mr. Ahmed and Ms. Ahmed's tax returns and has taken actions without their knowledge, consent or even any briefing before this Court. Furthermore, the Receiver's actions with respect to the dissolution of marriage proceeding between Mr. Ahmed and Ms. Ahmed are unauthorized and contravene binding Second Circuit caselaw. The Courts should remove these billings from the Receiver's request and the Court should decline to pay the Receiver the amounts he requests for the reasons stated within.

---

[1] "[T]he receivership was undertaken in the public interest..." *SEC v. Northshore Asset Mgt.*, 05 Civ. 2192 (WHP), at *7 (S.D.N.Y. Sep. 29, 2009). Here, that is equivalent to the judgment and the Receiver was appointed at the SEC's behest and for the benefit of the public. Thus, the Receiver's fees and expenses should be borne by the judgment, which he is clearly partial to, at the expense of even the Estate itself.

The Defendant reserves all rights to all issues and does not waive any right by way of this Fourteenth Opposition or his earlier oppositions and fully incorporates all earlier oppositions and issues into this instant one.[2]

## I.   INTRODUCTION.

The Receiver has continuously stated that his "*primary* duty [is] (to liquidate assets to secure the Judgment) pursuant to the Appointment Order" [Doc. #1160 at 25] (emphasis added) and "[the liquidation plan] accomplishes the *primary* purpose of this Receivership – to secure the Total Judgment." [Doc. #2022 at 5] (emphasis added). At no point in time has the Receiver ever admitted that his primary duty is to *protect* the Estate.

The Court should decline to release any fees to the Receiver and should wait for the conclusion of this case to determine the Receiver's impact on the Estate. In addition, the Court should remove fees where the Receiver has violated the Court's order and where he has acted without authority and in contravention to binding Second Circuit caselaw. The Court should then discount the remaining fees here by at least 60%. The Receiver has not increased the value of the Estate (which is solely due to Ms. Ahmed and Defendant's investment strategies), but has rather allowed interest and penalty to accrue, and to continue accruing, on taxes that have not been paid on income that has accrued to the asset freeze over which the Receiver has control. This is especially egregious as the Defendant and Relief Defendants made it clear *over a year ago* that the *Receiver* is responsible for paying these taxes, and ever since the Receiver has disclaimed any responsibility for paying these taxes and *now* states that he may have liability. The Receiver has also refused to research amnesty programs, when they were available and the Relief

---

[2] The Defendant reserves all rights that the Receiver is personally liable for the management of assets.

Defendants made him aware of these programs, which has led to an unnecessary continuation of increasing interest and penalty. The Court should assess these costs on the Receiver, as he through his own decisions and actions, has allowed these amounts to continue to accrue without even entertaining reaching out to the IRS and DRS on the amnesty programs, clearly stating that "…***many of the Defendants' arguments—such as an investigation of "amnesty" programs offered by taxing authorities relative to taxes arising out of activity in 2015-2021 are <u>irrelevant</u>*** and the Receiver will ***not*** address them further in this Reply." [Doc. #2172, n. 2] (emphasis added in all)

Not even including, *inter alia*, these increased interest and penalty amounts, the Receiver has lost the Estate at least over $3.2MM of value to date – with a lost rental of over $2.0MM to date (just of the two NYC apartments) and the Receiver's fees of *over $1,100,000.* If the Court feels that the Receiver should be paid some amount, then the Court should remove the invoices where the Receiver has violated the Court's order and acted without authority and then heavily discount the remaining fees at no less than 60% and offset it against the judgment. Courts have the power to do so:

> ""[C]ourts have recognized that it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application. These courts have endorsed percentage cuts as a practical means of trimming fat from a fee application." *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983); see also *United States ex rel. Miller v. Bill Harbert Int'l. Constr. Inc.*, 601 F. Supp. 2d 45, 50 (D.D.C. 2009) ("the Court can also reduce fees by a reasonable amount without providing an item-by-item accounting").

*SEC. v. Northshore Asset Mgt.*, 05 Civ. 2192 (WHP), at *9 (S.D.N.Y. Sep. 29, 2009) (applying an additional 20% percentage deduction to the fees, where the Receiver actually added value to

the Estate,[3] but provided an excessive fee application, did not seek Court approval to bill at higher rates for himself or his counsel, did not differentiate between legal and non-legal work, and sought fees for 28% of time spent on defending fees).

## II. THE RECEIVER HAS NOT MAXIMIZED THE VALUE OF THE ESTATE, AND HIS ACTIONS HAVE HARMED, AND CONTINUE TO HARM, THE ESTATE.

A Receiver is appointed to "protect the value of an asset that is the subject of litigation" *U.S. v. Ianniello*, 824 F.2d 203, 205 (2d Cir. 1987). However, here the Receiver is <u>only and solely interested in securing the judgment</u> and has not taken any actions to maximize the value of the Estate as a whole, for example, by, *inter alia*, not renting the apartments or farm to generate a further income source to the Estate, by billing excessively, by not paying taxes and thereby allowing interest and penalties to accrue, by not seeking to protect the Estate by engaging in tax amnesty programs, by unilaterally and *ex-parte* and without any briefing or Court order establishing a qualified settlement fund, by not protecting the assets, and by churning fees in unauthorized actions against binding Second Circuit caselaw related to the dissolution of marriage proceeding between Mr. Ahmed and Ms. Ahmed.

### A. The ***Receiver*** is Responsible for the Payment of *All* Taxes.

As the Defendant and the Relief Defendants have stated *time and time again,* the *Receiver* is responsible for the payment of **all** taxes. Not only has all the income from 2015 to current accrued – and continuing to accrue – to the asset freeze, over which the Receiver has sole control, the Receiver pushed for liquidation of the assets, and *he* is responsible for all taxes. *See*

---

[3] Furthermore, the Receiver in that case also deducted "…75% of all expenses attributable to LexisNexis or Westlaw research; … 100% of time billed by librarian or clerical staff;… 100% of time billed by attorneys who billed less than thirty hours in a twelve month calendar year; … [deducted] 100% of all attorney non-productive travel time [and additional deductions]." *SEC v. Northshore Asset Mgt.*, 05 Civ. 2192 (WHP), at *3-4 (S.D.N.Y. Sep. 29, 2009). The Court should order similar deductions for the Receiver here.

*U.S. v. F.D.I.C.*, 899 F. Supp. 50, 55 (D.R.I. 1995) ("It is widely recognized that taxes that become due during administration of a receivership are operating expenses for which the receiver is liable.") (collecting cases); *see Hennepin County, Minn. v. M.W. Savage Factories*, 83 F.2d 453, 455 (8th Cir. 1936) ("To escape the obligation to pay such taxes, a receiver must, within a reasonable time, repudiate the property as a burden upon the estate. He cannot accept the benefits and escape the burdens of operation."); *see SEC v. S P Natl. Corp.*, 360 F.2d 741, 752 (2d Cir. 1966) ("The issue raised of effecting a tax saving is a serious one and may involve a substantial sum of money") (remanding for further consideration of estimated tax savings of "as much as $1 million"); *see MacGregor v. Johnson-Cowdin-Emmerich, Inc.*, 39 F.2d 574, 577 (2d Cir. 1930). ("[T]he receivers having once chosen to accept the property, the taxes were an expense of operation, regardless of the outcome."). Under 31 USC §3713, any government claims, particularly taxes, must be paid first. A receiver who pays debts to others before the government is *personally* liable to the extent of those payments.

However, despite clear caselaw and statute, and this Court ordering that "in keeping with the equitable nature of the Receivership, the Court directs the Receiver to pay any tax liability generated by the Receivership Assets from the value of those assets," [Doc. #2147 at 18], the Receiver still refuses to pay the taxes that have accrued from 2015-2020 (and to date) to the benefit of the Estate during the asset freeze. In fact, the Receiver states that "[he] does not interpret the Liquidation Order to direct the Receiver to satisfy the Defendants' individual tax obligations for the period of 2015 to 2021... As such, ***many of the Defendants' arguments— such as an investigation of "amnesty" programs offered by taxing authorities relative to taxes arising out of activity in 2015-2021 are irrelevant*** and the Receiver will not address them further in this Reply." [Doc. #2172, n. 2] (emphasis added). These are not the Defendant or Ms.

Ahmed's "individual" tax obligations – they never had control or dominion over this income, which accrued to the asset freeze and for which the *Receiver* has control, and both Defendant and Ms. Ahmed have amended their returns to reflect such and to be consistent with Supreme Court ruling in *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 431 (1955) (defining income to require "undeniable accessions to wealth, clearly realized, and over which the taxpayers have complete dominion."). Here, neither Defendant nor Ms. Ahmed had any dominion, let alone "complete dominion" over this income, and these taxes are owed by the Estate.

However, in stating that he does not have to satisfy these obligations, which are an obligation of the *Estate,* and refusing to research and take advantage of various amnesty programs that would only benefit the Estate, the Receiver has and is continuing to allow for penalty and interest to accrue on these outstanding amounts, **which harms the Estate and is against the Receiver's mandate to minimize expenses.**[4] *See In re China Village, LLC*, 10-60373-ASW, at *1 (B.A.P. 9th Cir. Jan. 4, 2012) (stating that "[Receiver has] a duty … to pay the taxes timely **to avoid the accrual of interest and penalties**" and because the Receiver did not do so, the Court surcharged the amount of "interest and penalties that accrued when the taxes were not paid timely" on the Receiver) (also stating that "**A court-appointed fiduciary may be surcharged for failure to pay taxes due in operating the business of an estate**." (internal quotation omitted) (emphasis added in all))

***To date, the Receiver has not looked into further amnesty or settlement options with the IRS and DRS on these past due amounts and the Court should assess these costs on the Receiver personally*** (as detailed *infra*).

---

[4] The Defendant reserves all rights to hold the Receiver personally liable for any interest and penalty that has accrued due to non-payment of any tax liability arising from frozen income.

While the Receiver finally reached out on March 29, 2022, to Defendant and Ms. Ahmed for consideration of payment of those 2015-2021 taxes, he stated he would only consider payment of these outstanding taxes *only if Defendant and Ms. Ahmed re-amended their tax returns to those returns before January 24, 2022.* [**EXHIBIT 1**] However, to do so would run afoul of Supreme Court ruling in *Commissioner v. Glenshaw Glass Co.* Here, neither the Defendant nor Ms. Ahmed had any dominion or control over these amounts that are frozen that accrued to the asset freeze. The *Receiver* is responsible for any tax filings and tax payments of these amounts, *not* the Defendant or Ms. Ahmed. Yet, the Receiver *still* believes, contrary to clear caselaw and statute, that the Estate and Receiver are not responsible for payment of taxes on income accrued to the asset freeze. The Receiver is wrong, and his erroneous positions are costing the Estate continued interest and penalty assessments, which clearly harm the Estate.

Furthermore, as stated, the Receiver has declined to investigate amnesty programs or seek a lower amount that could be paid on taxes due *by the Estate* from 2015-2021, etc. Neither the Defendant nor Ms. Ahmed nor the Estate should be punished for the Receiver's actions. In fact, courts have assessed any interest and penalty payment on the Receiver **personally** if taxes on the assets are not paid in a timely manner:

> "Because Robb Evans was the receiver responsible for operating the property, Robb Evans had a fiduciary obligation to pay the second installment of the 2009-2010 real estate taxes. Id. ("Receivers are obligated to pay all taxes on real property in their possession which fall due during the time they are in possession as receivers."). As a result, **Robb Evans had a duty either to obtain confirmation of Redwood's intent to pay or to pay the taxes timely to avoid the accrual of interest and penalties. It did neither. For this lapse, the receiver** will be surcharged the amount of $17,875.24, *which represents the amount of interest and penalties that accrued when the taxes were not paid timely*."

*In re China Village, LLC*, 10-60373-ASW, at *1 (B.A.P. 9th Cir. Jan. 4, 2012). (emphasis added in all).

The Court should order the Receiver to determine the amount due from 2015 to 2021, *see* if a settlement can be reached with the DRS and IRS on those payment amounts *and immediately pay that amount to the IRS and DRS.*  The Court should also surcharge any penalty and interest amounts on those taxes outstanding on the *Receiver* personally*,* as the court did in *In re China Village, LLC.* The Court should reserve paying the Receiver any fees at all until the Receiver has personally paid for all interest and penalty that has accrued on the outstanding taxes from 2015-2021. The Receiver's refusal to pay these amounts *has already harmed and continues to directly harm the Estate.*

**B.    The Receiver Has Not Informed the Defendant or Relief Defendants of his Thoughts on the Tax Issues, but Only the SEC, and those Amounts Must be Removed from the Invoices.**

Both Mr. Ahmed and Ms. Ahmed have sought to work collaboratively with the Receiver on tax issues. However, the Receiver has refused to keep either Mr. Ahmed or Ms. Ahmed apprised of his thoughts on taxes, instead continually interfacing with *the SEC* and V&L for tax related issues, when the SEC, by this Court's order, is not even allowed to know the substance of or have any access to Mr. Ahmed or Ms. Ahmed's tax returns. *See* Doc. #2197, Order stating that "If the SEC seeks any portion of these confidential tax return documents [of Mr. Ahmed and Ms. Ahmed], it must obtain leave of the Court by motion detailing its purposes and justifications for such disclosure." Yet, in violation of this Court's order, the Receiver has had conversations with the SEC about tax issues and the impact of Mr. Ahmed and Ms. Ahmed's amended returns.

In particular, the Receiver reached out to Mr. Ahmed and Ms. Ahmed on February 2, 2022, on tax issues. However, given logistical hurdles and past misunderstandings, Mr. Ahmed and Ms. Ahmed both requested communications *via* email [**EXHIBIT 2**]. However, neither Mr. Ahmed nor Ms. Ahmed heard back from the Receiver on the issue of taxes from the liquidation

and what the Receiver and V&L were thinking after that point. Obviously, Mr. Ahmed and Ms. Ahmed are the most impacted by the Court's orders and the Receiver's actions. Instead of keeping either Mr. Ahmed or Mr. Ahmed apprised of the tax situation, the Receiver has decided to unilaterally only keep the SEC apprised. Those amounts must be removed from the invoicing.

Furthermore, this Court has prohibited the SEC from knowing any information or from seeing Mr. Ahmed and Ms. Ahmed's tax returns. *See* Doc. #2197, Protective Order on Tax Returns. So, the Receiver **must** answer what exactly was the Receiver discussing with the SEC *and* V&L regarding "amended tax returns"? [Doc. 2306-9, entries for 4/5/2022 for both K. Lowey and W. Hurley, stating "Call with S. Kindseth, C.Blau, [V&L], SEC and IRS calls *regarding tax payment and amended tax returns*."] (emphasis added)

Further entries reflecting the Receiver's conversations with the SEC on tax issues are in the next section, along with unauthorized correspondences/communications/calls with the IRS.

**C.    The Receiver Has Not Been Authorized to Speak to the IRS <u>or</u> the SEC on Mr. Ahmed or Ms. Ahmed's Tax Returns, is in Violation of this Court's Protective Order, and Those Amounts Must be Removed from the Invoicing.**

The Court has stated that "income tax returns and tax information… must remain confidential by statute. See 26 U.S.C. § 6103" [Doc. #2197]. The Receiver is not authorized and cannot speak with the IRS on Mr. Ahmed and Ms. Ahmed's tax returns without Mr. Ahmed and Ms. Ahmed's knowledge and explicit authorization. To do so is also in violation of the statute on confidentiality of tax returns and this Court's protective order that states "The Receiver may not disclose Ms. Ahmed's and Defendant's income tax returns, or "tax information" as that term is defined in 26 U.S.C. § 6103(b)(2), which the Receiver has obtained from Ms. Ahmed or Defendant or those acting on the behalf of either party, to anyone who is not necessary to aid the Receiver in effectuating his obligations under the Appointment Order **and** who is not employed

or retained by the Receiver for that purpose *unless he obtains the Count's prior permission*."

[Doc. #2197] (emphasis added in all). The Receiver has not retained or employed the IRS, nor

has he received the Court's prior permission to discuss Mr. Ahmed and Ms. Ahmed's tax returns,

or amendments, with the IRS without their authorization. In fact, neither Mr. Ahmed nor Ms.

Ahmed even knew that the Receiver was speaking with IRS on their amended returns, which is

in violation of 26 U.S.C. § 6103 and the Court's protective order. All entries related to any

correspondence and conversation with the IRS and/or the SEC by either the Receiver or V&L

*must* be removed.

| Receiver Calls with IRS, SEC and/or V&L | | | | |
|---|---|---|---|---|
| 4/1/22 | CHB | 0.2 | 52.5 | call with SEC on tax call with IRS |
| 4/4/22 | SMK | 0.9 | 225 | call with IRS AND SEC on tax |
| 4/4/22 | SMK | 0.4 | 100 | Call with SEC on tax liabilities |
| 4/4/22 | CHB | 0.6 | 157.5 | Prep for IRS Call |
| 4/4/22 | CHB | 0.9 | 236.25 | Call with IRS |
| 4/5/22 | V&L (Lowey, K) | 0.8 | 386.25 | Call with SEC and IRS and Receiver regarding tax payment and amended tax returns |
| 4/5/22 | V&L (Hurley, W) | 0.8 | 386.25 | Call with SEC and IRS and Receiver regarding tax payment and amended tax returns |
| 4/7/22 | CHB | 1.4 | 367.5 | Prepare correspondence to IRS |
| 4/7/22 | CHB | 0.2 | 52.5 | Further correspondence with IRS |
| 4/20/22 | CHB | 0.1 | 26.25 | Further correspondence with IRS |
| 4/21/22 | CHB | 0.2 | 52.5 | Further correspondence with IRS |
| 5/13/22 | CHB | 0.3 | 78.75 | Call with SEC and V&L on tax cost basis |

Note: All entries from Doc. #2306-4, except for the two 4/5/22 entries, which are from Doc. #2306-9.

### D. The Receiver is Raking Up Fees by his Unauthorized and Unwarranted Involvement in the Dissolution of Marriage Proceeding Between Mr. Ahmed and Ms. Ahmed.

Ms. Ahmed has filed for dissolution of marriage from Mr. Ahmed[5] and they have finally

agreed on a settlement, which Ms. Ahmed filed in the Connecticut Family Court on April 28,

---

[5] *Ahmed v. Ahmed*, Case No. FST-FA22-5026169-S in the Connecticut Family Court ("Dissolution Proceeding").

2022 ("Dissolution Agreement"). The Receiver – who was appointed by a Federal Court in a Federal case – has, at every instance, sought to prevent the entry of that Dissolution Agreement as judgment. The Receiver is not only ___**not**___ authorized to intrude on a state court proceeding on marital issues between Mr. Ahmed and Ms. Ahmed only, _**but also**_ binding Second Circuit caselaw does not allow a Federal District Court and by extension its' appointed Receiver, to interfere with marital proceedings in state court.

Here, the Receiver has acted without any authority and has interfered in the state court Dissolution Proceeding. The Receiver is solely tasked with managing and liquidating assets in this case. In addition, Second Circuit caselaw requires the Federal District Court to abstain from exercising jurisdiction over proceedings that are matrimonial in nature and can be fully and fairly resolved by state courts. _See American Airlines, Inc. v. Block_, 905 F.2d 12, 14 (2d Cir. 1990) (stating that "federal courts may properly abstain from adjudicating [matrimonial] actions in view of the greater interest and expertise of state courts in this field" and "[A] federal court presented with matrimonial issues or issues 'on the verge' of being matrimonial in nature should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination in state courts."); _See also Deem v. DiMella-Deem_, 941 F.3d 618, 621 (2d Cir. 2019) (Federal Court abstained from hearing claims that are "at least 'on the verge of being matrimonial in nature' and are capable of being fairly resolved in state court" and confirming that "American Airlines continues to be the law of this Circuit").

In addition, the Receiver cannot opine on **any** aspect of the Settlement Agreement or preclude the entry of the Settlement Agreement as judgment. _See In re Spong_, 661 F.2d 6, 9 (2d Cir. 1981) ("United States courts have no jurisdiction over divorce or alimony allowances….

[T]here is no federal law of domestic relations… the *whole subject of [which] belongs to the laws of the States*.") (emphasis added in all) (citations omitted).

However, despite no authority to do so and despite very clear and binding caselaw to the contrary, the Receiver *still* has raked up unnecessary fees by moving to intervene in the Dissolution Proceeding, has clearly stated his opposition to the entry of the Settlement Agreement as judgment; *and* in the August 22, 2022 Family Court hearing, incredibly stated his intention to further brief the Family Court on issues related to contract law and marital law if he was permitted to intervene. The Receiver's actions are in direct violation to well-established caselaw that expressly prohibits Federal Court intervention – including through its' appointed receiver – in matrimonial issues that are the exclusive domain of state courts.

The Receiver has billed an excessive amount of over $11,750 – or over 15% of his requested fees – in this quarter alone just related to actions taken related to the Dissolution Proceeding and trying to preclude the entry of Dissolution Agreement as judgment [**EXHIBIT 3**]. The Receiver cannot do so, and his actions are simply churning up fees that this Court should remove entirely from the fee request. The Court should also note that the Receiver is billing the Estate, where Mr. Ahmed and Ms. Ahmed (and children) have interests in the assets, and yet precluding Mr. Ahmed and Ms. Ahmed from the entry of judgment in the Dissolution Proceeding. ***That*** is inequitable and the Court should remove all fees and expenses billed by the Receiver for any work done on the Dissolution Proceeding, especially given binding Second Circuit caselaw and the fact that the Receiver is not the SEC's counsel and has nothing to do with the dissolution of marriage between Mr. Ahmed and Ms. Ahmed.

### E.   Duplicate Billing Must be Removed.

The Defendant respectfully requests the Court remove the duplicate billing from the invoices. There is no need for the Receiver to bill twice – for his time and for his counsel's time. That is inequitable and results in windfall to the Receiver *and* to V&L. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 469 (2d Cir. 1974)  (holding that courts must exercise discretion to avoid even the appearance of a windfall).

| Duplication in V&L Invoicing, Doc. 2306-9 | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 4/5/22 | W. Hurley | | 0.8 | 309.00 | *vs.* | 4/5/22 | K. Lowey | 0.8 | 309.00 | Discussion with SEC/Receiver on tax and amended returns |
| 5/5/22 | W. Hurley | | 0.7 | 270.38 | *vs.* | 5/5/22 | K. Lowey | 0.3 | 115.88 | Essell Group distribution |
| 5/12/22 | W. Hurley | | 0.1 | 38.63 | *vs.* | 5/12/22 | K. Lowey | 0.1 | 38.63 | Discuss basis issue |
| 6/3/22 | W. Hurley | | 1.3 | 502.13 | *vs.* | 6/3/22 | K. Lowey | 0.8 | 309 | call re: Phase I Report |
| 6/23/22 | W. Hurley | | 6.1 | 2356.13 | *vs.* | 6/23/22 | K. Lowey | 1 | 386.25 | call re: Phase I Report |

| Duplication in Receiver Invoicing, Doc. 2306-4 | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/1/22 | CHB | 0.9 | 236.25 | *vs.* | **6/1/22** | DAB | 0.9 | 185.63 | *vs.* | 6/1/22 | SMK | 0.9 | 225 | Conf. w/ SMK/CHB/DAB on divorce proceeding |
| 6/8/22 | CHB | 0.2 | 52.50 | *vs.* | 6/8/22 | DAB | 0.2 | 41.25 | | | | | Conf. divorce proceeding |
| 6/21/22 | CHB | 0.7 | 183.75 | *vs.* | 6/21/22 | DAB | 0.7 | 144.38 | | | | | Conf. divorce proceeding |

## III.   INTERACTIONS REGARDING TAX ISSUES FROM LIQUIDATION.

### A.   The Source of V&L Payments.

The Receiver has pushed the issue of the source of V&L payments to his various fee motions. *See* Doc. #2172 at 7, stating "the Receiver respectfully submits that the specific source of funds used to compensate V&L can be addressed in connection with the Receiver's quarterly applications seeking compensation for him and his professionals."  *But then see* Doc. #2305, stating that "The Receiver intends to continue seeking to use this same source of funds [of Ms. Ahmed's Aldrich Investment]" to pay V&L. [Doc. #2305 at 5].

The Court should determine the issue of source of payment. V&L has advised the Receiver in a manner such that neither the Defendant nor Relief Defendants, nor even this Court, knew that the Receiver had established a qualified settlement fund [Doc. #2311]. The Defendant did not agree to transfer any amounts to such a fund, and he does not know the impact of such fund and transfers to him or to the Relief Defendants. Clearly, the Receiver acted in an *extra-judicial* manner and *ex-parte.*

Nor can the Receiver state that he tried to contact the Defendant and Ms. Ahmed, because when he did, they clearly wrote back to him **and the Receiver never responded to them, instead preferring to speak only to the SEC, V&L, and the IRS about the tax issues, leaving the Defendant and Ms. Ahmed completely in the dark.** [**Exhibit 2**].

The Court must offset the V&L fees from the SEC's judgment. The Court has done so with earlier counsel payments for the Estate. *See* Doc. #1275, stating "The fees and expenses paid to MSNH… shall be counted against the "interest and gains" attributable to Apartment 12F..." The Court should offset V&L fees from the SEC's judgment of $94.9 million. The *SEC* wanted liquidation and the *SEC* wanted a Receiver who wanted tax counsel. Furthermore, tax counsel has apparently advised the Receiver on issues that are completely contrary to the Defendant's interests and knowledge and for which there was no briefing *whatsoever. See* Doc. #2311, on the issues related to qualified settlement fund and questions on how it could have been established with no briefing or even Mr. Ahmed or Relief Defendants' *knowledge.* Clearly, there are multiple issues with the advice the V&L is giving and with what the Receiver is selectively disclosing – or not disclosing at all – to the Court, and to Mr. Ahmed and the Relief Defendants *when all these actions directly impact Mr. Ahmed and the Relief Defendants.*

**B.  The Defendant has had *No* Communication at all with V&L**

There was *no* communication at all between the Defendant and V&L, even though the Defendant and Ms. Ahmed wrote back to the Receiver and requested he communicate with them via email on tax matters, given logistical issues and to prevent any misunderstanding. [**Exhibit 2**]. After sending that email to the Receiver, neither Mr. Ahmed nor Ms. Ahmed heard from the Receiver *on any tax issue related to liquidation or what V&L was advising.* In fact, *not once* has any tax professional from V&L interacted with the Defendant or even been copied on emails related to *any* tax matters with the Defendant. To date, the Defendant has not had *any* communication with *any* tax professionals from V&L.

Regarding the taxes in income from 2015 onwards, the Receiver sent an email to Ms. Ahmed on March 29, 2022, asking her to re-amend her tax returns. Ms. Ahmed refused to re-amend her tax returns, as that would be in violation of the Supreme Court ruling in *Commissioner v. Glenshaw Glass Co.*, and because she never received that income. After sending that email, neither Ms. Ahmed nor Mr. Ahmed heard back from the Receiver, either on the 2015-onwards taxes on income *or* on any issues related to taxes due to liquidation.

Clearly, the Receiver has no intention of keeping either Mr. Ahmed or Ms. Ahmed informed on any tax matters, even though these issues directly impact them. However, the Receiver has no issue keeping the SEC informed – though the SEC is prohibited by this Court's protective order and statute from having any information or knowing about Mr. Ahmed and Ms. Ahmed's tax returns – and the Receiver has no issue communicating with the IRS, even though neither Mr. Ahmed nor Ms. Ahmed have authorized him to, and this Court's protective order does not allow him to.

16

The Court should inquire of the Receiver as to his actions and should preclude the payment of invoices related to these actions.

**C.  Tax Issues Due to Liquidation.**

The Defendant will address the various tax issues due to liquidation in his response to the Receiver's Phase I Report, but incorporates his motion Doc. #2311 regarding qualified settlement fund herein, because the Defendant does not know how the Receiver and V&L can invoice for such issues when these issues have not even been briefed in this Court, when neither the Defendant nor the Relief Defendants had any knowledge of it, and as they do understand the impact of such actions. In fact, the Receiver is fine keeping both Mr. Ahmed and Ms. Ahmed in the dark, as clearly, he has discussed with V&L and presumably the SEC on "matters relating to a… QSF… including… tax consequences… for both the Receivership Estate *and the Defendants*" [Doc. #2306 at 17] (emphasis added). But the *Defendants* don't know the tax consequences and were never made aware of any tax consequences.

Any invoicing related to QSF and any transfers should be removed.

**IV.    RECEIVER'S INVOICES TO DEFEND HIS FEE APPLICATIONS.**

Furthermore, the compensation to the Receiver for defending his fee motions or keep payments does not inure to the benefit of the Estate, but rather to the Receiver's personal benefit. The Defendant, without waiving any rights and solely for the benefit of the Estate, requests that there be further discounting – by at least 50% - for any time that the Receiver or his professionals spend in defending their fee motion or payments made to them. For example, the Receiver and his professionals discount any travel time by 50%. This discount will also support the Court's directive that the Receiver keep costs low and further preserve the Estate's value.

While this Court stated that it allowed the Receiver to invoice to defend his motions as it

"deters Defendant and Relief Defendants from asserting meritless objections" [Doc. #1714 at 10], the Court should also rule to its corollary and remove billing where the Receiver has acted without authority, *extra-judicially, ex-parte,* in violation of Court order and where he has impacted the Estate negatively, i.e. any invoicing for the Receiver's unauthorized actions and against binding caselaw related to the dissolution proceeding; any interactions with the SEC on the Defendant's and Ms. Ahmed's tax returns; any unauthorized interactions with the IRS on Mr. Ahmed and Ms. Ahmed's tax returns; any invoicing for issues related to a QSF; for allowing additional accruing interest and penalty payments and for deliberately refusing to seek amnesty for these amounts when amnesty programs were available, etc.

In the alternative, the Defendant would have no opposition to the Receiver seeking compensation for time spent defending his fee motion or payments, provided that the Receiver's fees and expenses are offset against the judgment amount.

## V.   THE RECEIVER SHOULD BE PAID FROM WITHIN THE JUDGMENT AMOUNT.

The Defendant reiterates his position that if the Court believes that the Receiver should be paid his fees, then they must be paid from within the Judgment amount and not be an additional penalty on the Defendant.  It also renders a preserve incentive – as has already been depicted – whereby "the possibilities for abuse [are] limited only by the size of the estate" *SEC. v. Northshore Asset Mgt.*, 05 Civ. 2192 (WHP), at *3 (SDNY Sep. 29, 2009).

As the Defendant has repeatedly stated, it is highly inequitable for the Court to be paying the Receiver from the Defendant's legally earned funds when the Defendant himself has been denied the use of those funds for his own purposes, including for retention of legal counsel in

this instant matter.[6]  In addition, the Receiver does not benefit the Defendant, but rather has multiple times *harmed* the Defendant and his interests.

**_It is simply inequitable to force the Defendant and the Estate to pay for someone who takes an adverse position to his/its' own interests._**

The Receiver has requested that his fees and expenses be paid from "cash held in the Receivership Accounts" [Fourteenth Application at 28]. The Court should offset the Receiver's fees and expenses from the SEC's judgment.

The Defendant has no objection to the Receiver being paid from the judgment amount of $94.9 million itself, but objects to *any* amounts over and beyond that to be paid to the Receiver. Furthermore, the Court should impose a set amount of capped fees for the Receiver, like the Court has done for the Defendant. The Receiver had stated an estimate of $500,000 for his fees and expenses in this case but has clearly gone well beyond that and has now invoiced ***over $1,100,000***. Given the size of the Estate and the tens of millions of dollars of assets above the judgment amount of $94.9 MM that are frozen, this renders a perverse incentive for the Receiver to invoice as much as possible, at the expense of the Defendant and rendering a further impermissible penalty on the Defendant. This is clear with the amount of unauthorized activity by the Receiver on the dissolution proceeding alone, especially given that he cannot interfere in state court proceedings related to marital issues. Furthermore, the Receiver's fee request is against the "rule of moderation" applied by courts for a Receiver's compensation. The Receiver

---

[6] *See Almeida v. Holder*, 588 F.3d 778, 788 (2d Cir. 2009) ("The rights and benefits of property ownership are, after all, many... [T]hey include not only the right to actual possession of a thing, but also the right to exclude others from possessing it, the right to use it and receive income from its use, the right to transmit it to another...").

has billed over $1,100,000 to date, substantially greater than his estimate of $500,000, while continuing to harm the Estate.

> ""In considering applications for compensation by receivers and their attorneys, the courts have long applied a rule of moderation, recognizing that 'receivers and attorneys engaged in the administration of estates in the courts of the United States . . . should be awarded only moderate compensation.'" *Byers*, 590 F. Supp. 2d at 645 (quoting *In re New York Investors, Inc*., 79 F.2d 182, 185 (2d Cir. 1935)). "Courts must exercise discretion to avoid even the appearance of a windfall." *S.E.C. v. Goren*, 272 F. Supp. 2d 202, 206 (E.D.N.Y. 2003); see also *Byers*, 590 F. Supp. 2d at 645."

> *SEC. v. Northshore Asset Mgt.*, 05 Civ. 2192 (WHP), at *7 (S.D.N.Y. Sep. 29, 2009).

## VI.   CONCLUSION.

The Receiver has charged the Estate over $1,100,000 to date[7], mostly for monitoring ancillary proceedings, seeking to intervene where he does not have any authority to do so and against binding Second Circuit caselaw, and objecting to the Defendant's motions, and for losing value to the Estate. The Receiver's *sole* objections and decisions have ***lost the Estate over $3.2 MM*** – just in the way of lost rental income and his fees and expenses[8] alone (not even including for other losses/harms).

Receiver "fees requested are justified by the net economic benefit that they will provide to the estate." *SEC v. Illarramendi*, Civil No. 3:11cv78 (JBA), at *1 (D. Conn. Jan. 16, 2014).

Yet, in this case, the Receiver has provided absolutely no net economic benefit to the Estate but has rather cost and continues to cost the Estate a substantial sum of money. This is

---

[7] This is significantly beyond the Receiver's own estimate of $500,000 for his fees and expenses. It is more than six times (6x) over their estimates.

[8] "…receivership… where the goal is…to manage the estate in such a way as to maximize recovery while minimizing loss, including losses caused by attorney's fees." (emphasis in original). *See SEC v. Aquacell Batteries* Case No. 6:07-cv-608-Orl-22DAB, at *9 (M.D. Fla. Jan. 31, 2008).

especially troubling, as there was no Receiver during the pendency of this litigation and the assets were just fine and secure.

The Court should deny the Receiver's fees and expenses, or wait until the conclusion of the appeals, as a loss of at over \$3.2MM[9] and continuing is substantial and should not be borne by the Estate, but by the judgment itself as the Receiver was appointed for the benefit of the judgment *only* and at the SEC's sole request.

Given the Court's understanding and desire to "avoid unnecessary or high receivership costs" and the Receiver's mandate to "manage and maximize the value of frozen assets" [Doc. #1070 at 5] with the "dual objects of maximizing the value of the assets of the Receivership Estate and minimizing the expenses charged hereunder…" [Doc. #1070 at 7], **which he has not done**, the Court should deny the Receiver's Fourteenth Application, or wait until the conclusion of appeals to determine what, if any, benefit the Receiver has provided to the Estate.

**WHEREFORE**, the Defendant humbly requests the esteemed Court deny the Receiver's Fourteenth Application; or in the alternative, stay the request pending appeals or remove the amounts as requested within and impose an additional 60% discount and a 100% holdback on the remaining amounts until the conclusion of all appeals in this case, and for any such fees to be paid from ***within the judgment*** by those parties that are benefiting from the appointment of Receiver and not the Defendant.

---

[9] This consists of over \$2.1MM in lost rental income as well as over \$1,100,000 in Receiver invoicing for his fees and expenses and does not include other losses or harms, *inter alia,* such as lost income from not renting the farm, the lost value to The Essell Farms from the Receiver's actions; and the lost interest income on the Receivership Accounts or any lost opportunity costs of those assets.

Respectfully Submitted,


Dated:        September 05TH, 2022          /s/ Iftikar Ahmed
                                            _____
                                            Iftikar A. Ahmed
                                            C/O Advocate Anil Sharma
                                            Government Place East
                                            Kolkata 700 069, India
                                            Tel:     +91-983-008-9945
                                            e-mail: iftyahmed@icloud.com

                                            *Pro Se*


## CERTIFICATE OF SERVICE


I hereby certify that a copy of the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and served by electronic mail to:


MR. NICHOLAS P. HEINKE, *ESQ*.              MR. MARK L. WILLIAMS, *ESQ*.
U.S. Securities and Exchange Commission     U.S. Securities and Exchange Commission
Byron G. Rogers Federal Building            Byron G. Rogers Federal Building
1961 Stout Street, Ste. 1700                1961 Stout Street, Ste. 1700
Denver, CO 80294                            Denver, CO 80294
(303) 844-1071                              (303) 844-1027
e-mail: heinken@sec.gov                     e-mail: williamsml@sec.gov



MS. SHALINI AHMED, *Pro Se*
505 North Street
Greenwich, CT 06830
(203) 661-2704
e-mail: Shalini.Ahmed@me.com