UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

|  |  |  |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 3:15cv675 (JBA) |
| IFTIKAR AHMED, | ) ) ) | |
| Defendant, and | ) ) | |
| IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Relief Defendants. | ) ) | |

---

## PLAINTIFF'S MOTION FOR AN ORDER TO SHOW CAUSE WHY DEFENDANT IFTIKAR AHMED AND RELIEF DEFENDANT SHALINI AHMED SHOULD NOT BE HELD IN CIVIL CONTEMPT

Plaintiff United States Securities and Exchange Commission ("SEC") files this Motion

for an Order to Show Cause Why Defendant Iftikar Ahmed and Relief Defendant Shalini Ahmed

should not be held in civil contempt for their ongoing efforts to have another court enter a

dissolution agreement related to their purported divorce that, by their own admission, has

assigned and conveyed frozen assets and is interfering with the Receiver's ability to liquidate

assets frozen by this Court as well as the exclusive jurisdiction of this Court over those assets.

## INTRODUCTION

As outlined herein, Mr. Ahmed and Ms. Ahmed are violating the Ruling and Order Granting Preliminary Injunction, Doc. # 113 ("Asset Freeze Order"), and the Order Appointing Receiver, Doc. # 1070 ("Appointment Order"), through their ongoing efforts to have a Connecticut Superior Court presiding over their purported divorce, docketed at *Ahmed v. Ahmed*, Case No. FST-FA22-5026169-S (the "Dissolution Proceeding"), enter a dissolution agreement that purports to require Mr. Ahmed to immediately pay Ms. Ahmed the lump sum amount of $87.7 million for alimony and child support. Doc. # 2248-1 (the "Dissolution Agreement") at 4.

Among other things, the Appointment Order specifically prohibits (1) "using self-help or executing or issuing or causing the execution or issuance of any … process for the purpose of … interfering with … any property of the Receivership Estate"; (2) "transferring, exchanging, assigning or in any way conveying any property of the Receivership Estate"; and (3) "interfer[ing]…with the exclusive jurisdiction of this Court over the Receivership Estate." Appointment Order at 12-13 ¶ 19(a), (c), (d). Similarly, the Asset Freeze Order prohibits any "disposition, transfer, pledge, encumbrance, [or] assignment" of frozen assets and further prohibits Mr. and Ms. Ahmed (and others) from "tak[ing] any action to interfere with the asset freeze, including, but not limited to, the filing of any lawsuits, liens, or encumbrances, or bankruptcy cases to impact the property and assets subject to this order.." *Id*. at 20-21.

By their own admissions, Mr. and Ms. Ahmed have violated these provisions. Both Mr. and Ms. Ahmed have admitted that they entered into the Dissolution Agreement, that the assets at issue in the agreement are those frozen by this Court, that those frozen assets were assigned and conveyed from Mr. Ahmed to Ms. Ahmed as part of their purported divorce, and that the

intent of this assignment was to deprive this Court over jurisdiction of the assets.[1] Mr. Ahmed has claimed that "[t]he Dissolution Agreement *does* impact the liquidation process …, as the Court ***cannot liquidate assets belonging to Ms. Ahmed or the children*** …." Doc. # 2346 at 5 (emphasis in original). Similarly, Ms. Ahmed has claimed that the Dissolution Agreement represents "a change of circumstances" that means the Court "cannot liquidate any of the assets that the Receiver seeks to liquidate." Doc. # 2345 at 5. Though the Dissolution Agreement has not been entered in the Dissolution Proceeding, and though it would not preclude the Court from liquidating any frozen assets even if it had been, it is clear that Mr. and Ms. Ahmed are actively seeking to have the Dissolution Agreement entered as judgment in an admitted-to effort to deprive the Court of jurisdiction over the assets and prevent the liquidation ordered by this Court.

Indeed, despite the Receiver's attempts to intervene in the Dissolution Proceeding and compel Mr. and Ms. Ahmed to withdraw the Dissolution Agreement, Mr. and Ms. Ahmed continue to press forward with their contemptuous conduct. Perhaps most notably, Ms. Ahmed recently filed a motion to stay further liquidation, arguing that the Dissolution Agreement has interfered with the asset freeze and the assets within the Receivership Estate such that liquidation must now stop. *See* Doc. # 2368. Given this, and given that Mr. and Ms. Ahmed are continuing to push the court presiding over Dissolution Proceeding to enter the Dissolution Agreement (and continuing to urge that court to exclude the Receiver from the proceeding) for the specific purpose of obtaining a judgment that conflicts with the rulings of this Court, the SEC is compelled to file the instant motion.

---

[1] Mr. and Ms. Ahmed's divorce appears to be a sham entered into solely as an effort to stave off liquidation. Regardless, while the Ahmeds are free to seek a divorce – and enter into any dissolution agreement that does not violate this Court's orders – unless they obtain leave from this Court, they are not free to ask a divorce court (or any other court) to enter an order whereby they purport to transfer or pledge assets frozen by this Court.

Put simply, there does not appear to be a factual dispute that Mr. and Ms. Ahmed are violating the Appointment Order's prohibitions on assigning or conveying property of the Receivership Estate and interfering with the Receivership Estate and the Court's jurisdiction over it. There also does not appear to be a factual dispute that Mr. and Ms. Ahmed are violating the Asset Freeze's prohibition on interfering with the asset freeze and engaging in activity with the express purpose of impacting the property subject to the Asset Freeze. As a result, Mr. and Ms. Ahmed should be ordered to show cause why they should not be held in contempt of both Orders.

If the Court finds Mr. and Ms. Ahmed to be in contempt of its Orders, the SEC anticipates requesting that, among other things, the Court order Mr. and Ms. Ahmed to pay, on a joint and several basis, a rising daily fine until the contempt is purged by withdrawing their request that the divorce court enter the Dissolution Agreement or otherwise divvy up or assign assets subject to the asset freeze and within the Receivership Estate.

## FACTUAL BACKGROUND

In 2004, Defendant Iftikar Ahmed joined Oak Investment Partners and immediately began diverting monies from funds he advised into bank accounts he controlled, ultimately using fraudulent and deceptive means to divert tens of millions of dollars from funds he advised into his personal bank accounts, before funneling much of his ill-gotten gains into assets and accounts in the name of his wife. *See* Doc. # 835 at 4, 6-23. On May 6, 2015, the SEC initiated this case. Doc. # 1. Fearing that Mr. Ahmed would dissipate his assets once he learned that his fraud had been uncovered, the SEC filed an emergency motion for an *ex parte* temporary restraining order, Doc. # 2, which this Court granted on May 7. Doc. # 9.

Following the SEC's filing of an Amended Complaint – which named several additional relief defendants, including Ms. Ahmed, *see* Doc. # 33 – and Mr. Ahmed's illegal flight to India, on August 12, 2015, the Court granted the SEC's Motion for a Preliminary Injunction and entered the Asset Freeze Order. Therein, the Court ordered that the "assets, funds, or other property held by or under the direct or indirect control of Defendant Iftikar Ahmed and Relief Defendants … whether held in any of their names or for their direct or indirect beneficial interests, wherever located, up to the amount of $118,246,186, are frozen." Asset Freeze Order at 20. The Court ordered Mr. and Ms. Ahmed to "prevent any disposition, transfer, pledge, encumbrance, assignment, dissipation, concealment, or other disposal whatsoever of any of their funds or other assets or things of value," and prohibited Mr. and Ms. Ahmed, as well as others, from "tak[ing] any action to interfere with the asset freeze, including, but not limited to, the filing of any lawsuits, liens, or encumbrances, or bankruptcy cases to impact the property and assets subject to this order; provided, however, that any party or non-party may seek leave from this order upon a proper showing." *Id*. at 20-21.

On March 29, 2018, the Court granted the SEC's Motion for partial summary judgment, finding there was no genuine issue as to any material fact in light of the uncontroverted evidence that Mr. Ahmed orchestrated a large fraud over the span of a decade in which he defrauded the funds he was trusted to advise out of approximately $65 million. *See* Doc. #835.  Relief Defendants did not, because they could not, "put forth any convincing evidence rebutting the SEC's contention that the [frozen] assets belong to Defendant," Doc. # 955 at 19, and the Court found that all the assets listed on the SEC's Asset Schedule [Doc. # 888-1] . . . . [we]re available to satisfy this judgment against Defendant." Doc. # 855 at 31.

On December 14, 2018, the Court entered its final judgment – which was later amended following the Second Circuit's remand to this Court to determine the Mr. Ahmed's disgorgement obligation consistent with recently-enacted section 6501 of the National Defense Authorization Act, *see* Doc. # 2011[2] – and ordered that the frozen assets were "available to satisfy this Final Judgment against Defendant." Doc. # 1054 at 5.

Six days later, on December 20, 2018, the Court entered the Appointment Order, which ordered that the "Receiver shall control the operation of the Receivership Estate," which "include[d] all assets subject to the Court's asset freeze order as modified throughout this litigation." Appointment Order at ¶¶ 1-2 (citing Asset Freeze Order). The Court held that "Defendant and Relief Defendants shall have no authority with respect to the Receivership Estate's assets," *id* at ¶ 6, and enjoined interference with the Receiver. *Id. at* ¶ 19. Paragraph 19 specifically provides, in relevant part:

> The Defendant [and] Relief Defendants… are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:
>
> a.  Interfere with the Receiver's efforts to take possession, custody or control of, or to manage, any assets of the Receivership Estate; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any property of the Receivership Estate;

---

[2] On June 16, 2021, the Court entered its Redetermination of Defendant's Disgorgement Obligation. Therein, Mr. Ahmed's disgorgement obligation was increased from $41,920,639 to $64,171,646.14, and the prejudgment interest award was increased to $9,755,798.34. Doc. # 1997. With the $21 million in civil penalties previously ordered, this increased the total judgment to "$94,927,444.40, exclusive of gains on any assets used to satisfy the judgment since the asset freeze order." *Id*. at 12.

b.  Hinder, obstruct or otherwise interfere with the Receiver in the performance of his duties…

c.  Except with respect to authorized expenditures, dissipate or otherwise diminish the value of any property of the Receivership Estate; such prohibited actions include but are not limited to… transferring, exchanging, assigning or in any way conveying any property of the Receivership Estate….or,

d.  …interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estate.

The Appointment Order also stayed "[a]ll civil legal proceedings of any nature, including, but not limited to … actions of any nature … to obtain possession of property of the Receivership Estate." *Id*. at ¶ 22.

On February 28, 2022, Ms. Ahmed submitted a Notice to the Court stating her "intent to commence dissolution of marriage proceedings from the Defendant." Doc. # 2195. The Notice did not say anything about Mr. and Ms. Ahmed assigning, conveying, or otherwise divvying up assets. The Receiver's counsel subsequently contacted Ms. Ahmed's then counsel (Attorney Paul Knag) as well as "emailed Ms. Ahmed directly to confirm that she had no intentions to utilize the Dissolution Proceeding to interfere with the Asset Freeze or obtain any Receivership Assets." Doc. # 2218 at 3 n.4; *see also* Doc # 2241 (denying motion to seal information on dissolution proceeding). Though the Receiver's counsel subsequently followed up with an additional email, Ms. Ahmed did not respond. *Id*.

On April 28, 2022, without disclosure to the Court, Receiver, or SEC, Mr. and Ms. Ahmed filed a Dissolution of Marriage Agreement in the Dissolution Proceeding and asked that it be entered as a judgment. *See* Doc. # 2248-1. Under the agreement, Mr. and Ms. Ahmed agreed that Defendant would immediately pay Ms. Ahmed the lump sum amount of $87.7 million for alimony and child support. *Id*. at 4.

On May 18, 2022, after learning of the Dissolution of Marriage Agreement, the Receiver filed in this case a Notice Regarding Defendants' Apparent Failure to Comply with the Appointment Order. Doc. # 2248. Therein, the Receiver alerted the Court that it had "recently learned" that "the Defendant and Ms. Ahmed have entered into a Dissolution of Marriage Agreement [ ] which would require the Defendant to pay Ms. Ahmed immediately the lump sum amount of $87.7 million for alimony and child support," to which there "appear[ed] to be no legitimate basis for the imposition of this obligation." *Id*. at 2. The Receiver further noted that there was a hearing in the Dissolution Proceeding scheduled for the next day "to consider the Agreement." *Id*.

The Receiver filed an appearance in the Dissolution Proceeding and attended the hearing the following day "to apprise the Superior Court's Family Relations Counselor … of the nature and scope of this Court's orders and to answer questions concerning the same." Doc. # 2266 at 2. The SEC understands – and Defendant and Relief Defendants appear to agree – that the Receiver's appearance at the hearing, and disclosure of the Asset Freeze Order to the Superior Court, prevented the Dissolution of Marriage Agreement from being approved. *See, e.g.*, Doc. ## 2345 at 6 ("Ms. Ahmed informs the Court that the Receiver has. . . . actively precluded the entry of the Dissolution Agreement as judgment"); 2346 at 6 ("To the extent the Receiver continues to block the entry of the Dissolution Agreement as judgment, the Defendant intends to seek Second Circuit review of the Receiver's actions that are clearly in contravention of Second Circuit ruling").

On June 10, 2022, "[i]n furtherance of his efforts to protect the assets in the Receivership Estate, the Receiver moved to intervene in the Dissolution Proceeding." Doc. # 2266 at 2. Among other things, the Receiver was "concern[ed] … that the Defendant and Ms. Ahmed

[we]re attempting to create an argument of competing jurisdiction between two courts over the same property." *Id*. at 2-3 (footnote omitted). Ms. Ahmed opposed the Receiver's motion, arguing that the "decree of divorce approving the Agreement should enter without further delay," Doc. # 2266-2 at 7, and then filed a request in the Dissolution Proceeding seeking entry of the Agreement as a judgment of the court. Doc. # 2266-3.

On June 13, 2022, Relief Defendants clarified that the Dissolution Agreement referenced only assets frozen by this Court: "This Court has frozen all of Ms. Ahmed and Mr. Ahmed's assets since 2015, [ ] Ms. Ahmed has not received any of the funds referred to in the divorce agreement," and that the "divorce agreement does not imply that there are a separate set of unfrozen assets that can be used to satisfy the terms of that agreement." Doc. # 2256 at 3.

On July 22, 2022, the Receiver filed its report on its liquidation of certain assets (the "Phase 1 Report"). Therein, the Receiver detailed how its Phase 1 liquidation of assets resulted in cash insufficient to satisfy the judgment and requested permission to move forward with the liquidation of unique assets. Doc. ## 2273, 2280. Among the assets the Receiver proposed to liquidate were a MetLife Whole Life Insurance Policy, two Park Avenue apartments, and various jewelry and artwork. *See* Doc. # 2273 at 26. All of these assets were plainly within the Receivership Estate and had been specifically identified as assets "available to satisfy th[e] Final Judgment." *Compare id.* (listing specific assets and their "SEC No.," which correlated to assets listed in the Final Judgment) *with* Doc. # 1054 at 5-8 (listing same assets).

On September 21, 2022, Mr. and Ms. Ahmed responded to the Receiver's Motion to Approve the Phase 1 Report.  Doc. ## 2345, 2346. Therein, they claimed that the Court could no longer proceed with liquidating frozen assets – frozen assets that are part of the Receivership Estate, *see* Doc. # 1070 at 6 ¶ 2, and that this Court had previously and unambiguously ruled

were "available to satisfy th[e] Final Judgment," *see* Doc. # 1054 at 5 – because of the

Dissolution Agreement:

> Thus, the Court must wait until the Dissolution Proceeding is complete **and cannot liquidate any of the assets that the Receiver seeks to liquidate.** The Court has deemed the Relief Defendants as nominees, but there has been a change of circumstances, as the Dissolution Agreement recognizes Ms. Ahmed and the minor children's independent ownership of these assets.

 Doc. # 2345 at 5 (emphasis added). *See also id*. at 16 ("Allowing the Receiver to liquidate

[unique assets identified by the Receiver for liquidation] is against the provisions of the

Dissolution Agreement, which has already been executed and is waiting to be entered as

judgment."); *id.* at 38 ("Ms. Ahmed and the minor children have independent ownership interests

in their assets and the Dissolution Agreement impacts the liquidation process"); 2346 at 2

(claiming the Receiver failed to address "the fact that the dissolution of marriage proceeding

between Mr. and Ms. Ahmed has an impact on the liquidation process,"); *id.* at 4 ("The

Dissolution Agreement *does* impact the liquidation process here, as the Court ___cannot liquidate___

___assets belonging to Ms. Ahmed or the children for a judgment against the Defendant___.")

(emphasis in original); *id*. at 5 ("Until the Family Court enters the Dissolution Agreement as

judgment and the interests of Ms. Ahmed, Mr. Ahmed, and the children in the assets have

entered in the Dissolution Proceeding, the Court cannot liquidate any assets and must await the

ruling of the Family Court before proceeding"); *id.* at 7 ("The Receiver's Selection of Assets to

Liquidate … is in Contravention to the Dissolution Agreement."); *id*. at 36 ("[T]he Dissolution

Agreement has codified the interests that Ms. Ahmed, Mr. Ahmed and the minor children have in

the frozen assets. To transfer funds to the CRIS account would contravene the Dissolution

Agreement").

Indeed, both Mr. and Ms. Ahmed explicitly pointed to certain assets that the Receiver proposed to liquidate, and that are indisputably part of the Receivership Estate, and argued that the Dissolution Agreement has impacted their liquidation. For example, Ms. Ahmed specifically claimed that liquidation of the MetLife Whole Life Insurance Policy, the two Park Avenue apartments, and the various jewelry and artwork would be "contrary to the express provisions of the Dissolution Agreement." Doc. # 2345 at 2; *see also id.* at 5 (claiming that liquidation of the apartments and life insurance policy "interferes with Ms. Ahmed's and the children's ownership interests in those assets, as recognized by the Dissolution Agreement"); *id.* at 30 (claiming that liquidation of the apartments "contravenes the Dissolution Agreement"). Mr. Ahmed made similar claims. *See* Doc. # 2346 at 8 ("The Dissolution Agreement also explicitly recognizes Ms. Ahmed's, Mr. Ahmed's and the children's ownership of assets as of May 5, 2015, before the asset freeze, where Ms. Ahmed, through herself individually and through her own Trust, owns 100% of the two New York City apartments that the Receiver seeks to liquidate at this time. Liquidating these assets, and any other asset at this point, stands in contradiction of the Dissolution Agreement."); *id.* at 11 (claiming that the Dissolution Agreement "expects [the life insurance] policy to be maintained").

On October 25, 2022, the Court found that the Receiver's time spent preventing the Dissolution Agreement from being entered was "appropriately billed" and stated "[b]ecause Defendant has represented to the Court that he has no significant assets beyond those held in the Receivership Estate, his pending Dissolution Agreement, which seeks to transfer more than $87 million from Defendant to Ms. Ahmed, significantly affects the management and liquidation of assets." Doc. # 2369 a 6.

Recently, Ms. Ahmed has doubled-down on her claims that the Dissolution Agreement interfered with the Court's jurisdiction over the assets within the asset freeze and Receivership Estate. In her Motion to Stay Liquidation of Unique Assets, Doc. # 2368, she claims that "liquidation of assets cannot continue until the various interests of Ms. Ahmed, the minor children, and Mr. Ahmed have been determined in the" Dissolution Proceeding. *Id.* at 5. Ms. Ahmed goes on to claim that "the sooner the [Dissolution Proceeding] is over, the sooner [this] Court will be able to ascertain which assets belong to the Defendant or Ms. Ahmed and the children. But until then, there should be no further liquidation of any asset." *Id.* at 7. She makes these claims even though this Court has conclusively determined that all frozen assets are available to satisfy the Final Judgment, Doc. # 1054 at 5, and this Court's clear and unambiguous orders prohibiting interference with the asset freeze and Receivership Estate. *See* Asset Freeze Order, Appointment Order.

## RELEVANT LAW

The Court has "inherent power to enforce compliance with [its] lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966). "'A party may be held in civil contempt for failure to comply with a court order if (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.'" *SEC v. Mattera*, 2012 WL 4450999, at *11 (S.D.N.Y. Sept. 26, 2012) (quoting *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.,* 369 F.3d 645, 655 (2d Cir.2004)). While the movant "bears the initial burden of establishing these elements," it need not show that the alleged contemnor violated the court's orders willfully." *SEC v. Bronson*, 2021 WL 3167853, at *5 (S.D.N.Y. Jan. 19, 2021) (citing cases).

With respect to the first element, an order is "clear and unambiguous" provided it is "specific and definite enough to apprise those within its scope of the conduct that is being proscribed." *Mattera*, 2012 WL 4450999 at *11 (quoting N.*Y. State Nat'l Org. for Women v. Terry,* 886 F.2d 1339, 1352 (2d Cir.1989). As to the second element, "the party seeking a civil contempt sanction bears the burden of establishing the offense by clear and convincing evidence." *Id*. "To show a diligent attempt at compliance so as to negate the third element, a defendant must demonstrate that compliance was "'factually impossible.'" *Id*. at * 12 (quoting *Badgley v. Santacroce*, 800 F.2d 33, 36–37 (2d Cir.1986).

## ARGUMENT

As outlined above, there does not appear to be a factual dispute that Mr. and Ms. Ahmed are engaging in conduct that is, and is specifically designed to, interfere with both the Asset Freeze Order and the Appointment Order. Indeed, Mr. and Ms. Ahmed have figuratively exclaimed "gotcha!" to this Court by arguing that their furtive actions in the Dissolution Proceeding prevent certain assets from being liquidated even after this Court and the Second Circuit declined to stay such liquidation. These assets fall plainly within the asset freeze and the Receivership Estate. Thus, while this Court can and should order all frozen assets be liquidated, there is no doubt that Ms. and Ms. Ahmed's have "take[n] action[s]" – which are ongoing – "to interfere with the asset freeze," Asset Freeze Order at 21, and "to interfere…with the exclusive jurisdiction of this Court over the Receivership Estate," Appointment Order at ¶19(d). Indeed, the Receiver has been forced to devote resources to appearing and informing the court in the Dissolution Proceeding that it should not approve the Dissolution Agreement because it violates Orders of this Court and would cause two courts to be simultaneously exercising jurisdiction over the same assets.

13

A.  <u>The Asset Freeze Order and Appointment Order are Clear and Unambiguous.</u>

Both the Asset Freeze Order and the Appointment Order are clear and unambiguous, and apprise Mr. and Ms. Ahmed (among others) of what is proscribed. As relevant here, the Asset Freeze Order required Mr. and Ms. Ahmed to "prevent any disposition, transfer, pledge, encumbrance, assignment, dissipation, concealment, or other disposal whatsoever of any of their funds or other assets or things of value," and prohibited Mr. and Ms. Ahmed, as well as others, from "tak[ing] any action to interfere with the asset freeze, including, but not limited to, the filing of any lawsuits, liens, or encumbrances, or bankruptcy cases to impact the property and assets subject to this order." Asset Freeze Order at 20-21.

Similarly, the Appointment Order expressly enjoined Mr. and Ms. Ahmed from "directly or indirectly taking any action or causing any action to be taken" that would:

- "Interfere with the Receiver's efforts to take possession, custody or control of, or to manage, any assets of the Receivership Estate;" including by invoking any "process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any property of the Receivership Estate;"

- "[T]ransferring, exchanging, assigning or in any way conveying any property of the Receivership Estate," or

- "Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estate."

Appointment Order at ¶ 19(a), (c), (d). These provisions clearly and unambiguously inform Mr. and Ms. Ahmed that pledging or assigning frozen assets or taking any action that interferes with the asset freeze, the Receiver's management of the Receivership Estate, or the Receivership Estate itself is prohibited.

The Asset Freeze Order and Appointment Order are not only clear and unambiguous, but Mr. and Ms. Ahmed have made repeatedly made clear that they understand the prohibitions with respect to litigation over frozen assets. For example, in seeking to hold Oak in contempt of the

Appointment Order, Mr. Ahmed acknowledged that "[t]his Court's Order Appointing Receiver stayed any civil action of any kind against, *inter alia*, the Defendant(s) and the Receivership Assets." Doc. # 1703 at 1 (citing Doc. #1070). Indeed*,* Mr. Ahmed recognized that it would violate Court orders to attempt to obtain possession of frozen assets: "Thus, Oak has admitted that it seeks 'to obtain possession of property of the Receivership Estate,' precisely in violation of the Litigation Stay Order." Doc. # 1732 at 2. Similarly, Mr. Ahmed recognized that the Appointment Order "ordered a stay of litigation against, *inter alia* . . . . frozen assets without leave of this Court. Doc. # 1785 (citing Appointment Order). Ms. Ahmed joined this motion. *See* Doc. # 1794.

B. <u>Proof of Non-Compliance is Clear and Convincing.</u>

Proof of Mr. and Ms. Ahmed's non-compliance with these orders is clear and convincing. Indeed, they have essentially admitted their contempt, apparently believing it is worth the cost if it prolongs the satisfaction of the judgment. Well after the Asset Freeze Order and Appointment Order were entered, and without obtaining permission from (or even disclosing their intentions to) the Court, Mr. and Ms. Ahmed signed the Dissolution Agreement in which Mr. Ahmed pledged to pay Ms. Ahmed more than $87 million. *See* Doc. # 2248-1 at 4. Ms. Ahmed has acknowledged that the assets at issue in the Dissolution Agreement are the same assets subject to the asset freeze (and thus within the Receivership Estate). *See* Doc. # 2256 at 3 (noting that the "divorce agreement does not imply that there are a separate set of unfrozen assets that can be used to satisfy the terms of that agreement"). Simply put, the Court need look no further than the Dissolution Agreement – and Mr. and Ms. Ahmed's continuing efforts to have the Dissolution Agreement entered as a judgment in their Dissolution Proceeding – to find that both Mr. and Ms. Ahmed are in violation of the Asset Freeze Order and Appointment Order. They are doing

15

exactly what the Asset Freeze Order and Appointment Order prohibit by seeking to have another court enter an order whereby frozen assets are pledged and assigned to Ms. Ahmed in an attempt to stop this Court's Orders from being effectuated.

But perhaps the most notable proof of non-compliance are Mr. and Ms. Ahmed's statements in opposition to the Receiver's Phase 1 Report, where they readily admit that they have taken and are continuing to take actions – the signing of the Dissolution Agreement and the urging of the divorce court to approve that agreement (and ignore the Receiver's objections) – to interfere with the asset freeze and Receivership Estate. Indeed, they proclaim their actions to date have robbed the Court of its jurisdiction over the assets thereby preventing their liquidation to satisfy the judgment, the very purpose of the Asset Freeze Order's and Appointment Order's prohibition on pledging assets and interfering with the Receiver.

For example, as noted above, Ms. Ahmed repeatedly claimed that the Dissolution Agreement interfered with the Receiver's ability to liquidate assets subject to the asset freeze and within the Receivership Estate. *See, e.g.*, Doc. # 2345 at 5 (claiming the Dissolution Agreement represents a "change in circumstances" that means the Court "cannot liquidate any of the assets that the Receiver seeks to liquidate"). Mr. Ahmed made similar claims. *See, e.g.*, Doc # 2346 at 4 ("The Dissolution Agreement *does* impact the liquidation process here, as the Court ___*cannot*___ ___*liquidate assets belonging to Ms. Ahmed or the children for a judgment against the*___ ___*Defendant*___.") (emphasis in original).  Similarly, both Mr. and Ms. Ahmed objected to specific assets that the Receiver proposed to liquidate in light of the Dissolution Agreement. *See* Doc. ## 2273 at 26 (proposing to liquidate life insurance policy, two Park Avenue apartments, and various jewelry and artwork); 2345 at 2 (claiming that liquidation of these assets would be "contrary to the express provisions of the Dissolution Agreement"); *id.* at 5 (claiming that

16

liquidation of the apartments and life insurance policy "interferes with Ms. Ahmed's and the children's ownership interests in those assets, as recognized by the Dissolution Agreement"); *id.* at 30 (claiming that liquidation of the apartments "contravenes the Dissolution Agreement"); 2346 at 8 (claiming that liquidation of certain assets, including the two apartments, "stands in contradiction of the Dissolution Agreement."); *id.* at 11 (claiming that the Dissolution Agreement "expects [the life insurance] policy to be maintained"). These assets were clearly within the asset freeze and the Receivership Estate. *See, e.g.*, Asset Freeze Order at 20 (freezing "assets, funds or other property held by or under the direct or indirect control of" Mr. and Ms. Ahmed), Doc. ## 1054 at 5-8 (listing all assets available to satisfy the Final Judgment), 2273 at 26 (listing sub-set of these assets for liquidation).

In sum, Mr. and Ms. Ahmed's non-compliance with the provisions of the Asset Freeze Order and Appointment Order that prohibit, among other things, interfering with the asset freeze and Receivership Estate is clear and convincing, as shown by their own admissions.[3]

C. Mr. and Ms. Ahmed have not Diligently Attempted to Comply, and Compliance is not Factually Impossible.

As to the final element, not only have Mr. and Ms. Ahmed not attempted to comply, they have essentially touted their non-compliance. Following the Receiver's Phase 1 liquidation

---

[3] To be clear, the Dissolution Agreement does not, in fact, preclude the Court from ordering continued liquidation of the assets subject to the asset freeze and within the Receivership Estate. Those assets are subject to the exclusive jurisdiction of this Court. *See Colo. River Water Conversation Dist. v. United States*, 424 U.S. 800, 818 (1976) ("[T]he court first assuming jurisdiction over property may exercise jurisdiction to the exclusion of other courts."); *see generally* Doc. # 2357 at 2-4 (explaining why the Dissolution Agreement does not prevent liquidation). However, by entering into the Dissolution Agreement and urging its approval in the Dissolution Proceeding, Mr. and Ms. Ahmed were and are clearly taking "actions" to "interfere" with the asset freeze and Receivership Estate. Indeed, but for the Receiver's continuing efforts to prevent entry of the Dissolution Agreement, there would be competing orders as to the jurisdiction over and treatment of frozen assets, which would at a minimum cause the Receiver to spend additional time and money to effectuate liquidation and satisfy the judgment.

report, and after the Receiver specified additional assets within the asset freeze and Receivership

Estate that would need to be liquidated to satisfy the judgment in this case, Mr. and Ms. Ahmed

entered into the Dissolution Agreement in an admitted attempt to interfere with the liquidation of

these assets. They did so without informing the Court, the Receiver, or the SEC. *See* Doc. # 2195

(providing notice of intent to commence dissolution of marriage proceedings without mentioning

the potential transfer or divvying of frozen assets); *see also* Doc. # 2218 3 n.4 (noting that

Receiver had attempted to confirm with Ms. Ahmed that she "had no intentions to utilize the

Dissolution Proceeding to interfere with the Asset Freeze or obtain any Receivership Assets" and

that Ms. Ahmed did not respond). And they attempted to use the Dissolution Agreement as a

"gotcha" to claim the Court could no longer proceed with liquidation, and continue to bog down

this Court with filings that maintain they have outmaneuvered the Court and that liquidation

must cease. *See, e.g.*, Doc. # 2368.

Indeed, Ms. Ahmed has even claimed to the court presiding over the Dissolution

Proceeding that the fact that this Court has not acted to enjoin the Dissolution Agreement from

being entered as a judgment is tacit approval that this Court takes no issue with the Dissolution

Agreement. *See* Doc. # 2266-2 at 7 ("At no point in time has the District Court enjoined Ms.

Ahmed from commencing or continuing with this proceeding. The District Court has also been

notified of the Agreement and Proposed Orders through the Receiver and the District Court has

entered an order which acknowledges this action and the Agreement and assumes that the

Agreement has been entered by this Court."). Far from attempting to comply with this Court's

Orders prohibiting interference with the asset freeze and Receivership Estate, Ms. Ahmed is

actively arguing in the Dissolution Proceeding that this Court has approved of her contemptuous

conduct, and arguing to this Court that her actions in the Dissolution Proceeding have deprived it

of jurisdiction over frozen assets and that its Orders directing liquidation to proceed have been superseded.

What's more, compliance with the Asset Freeze Order and Appointment Order was far from factually impossible. Indeed, all Mr. and Ms. Ahmed had to do was to maintain the status quo and *not* – without leave of the Court – enter into the Dissolution Agreement purporting to convey frozen assets or urge the divorce court to enter it in order to avoid clear and unambiguous contempt.

## **CONCLUSION**

Mr. and Ms. Ahmed have been on notice of the Asset Freeze Order and Appointment Order – both of which expressly apply to them – for years. Indeed, they touted their familiarity with both Orders, regularly alleging third-parties had violated their provisions. But despite the clear and unambiguous language of these orders prohibiting actions to interfere with the asset freeze or Receivership Estate, Mr. and Ms. Ahmed entered into the Dissolution Agreement in an admitted attempt to do just that. The Court should order that Mr. and Ms. Ahmed show cause why they should not be held in civil contempt for their conduct. If the Court holds them in contempt – which it should – the SEC anticipates requesting that, among other things, Mr. and Ms. Ahmed be ordered to pay, on a joint and several basis, a rising daily fine until the contempt is purged by making a filing in the Divorce Proceeding expressly withdrawing their request to have the Dissolution Agreement entered. *See, e.g.*, *SEC v. Bronson*, 2021 WL 3167853, at *5 (S.D.N.Y. Jan. 19, 2021) ("[C]ivil contempt is remedial in nature, and 'seeks only to coerce the defendant to do what a court had previously ordered him to do.'") (quoting *Turner v. Rogers*, 564 U.S. 431, 441 (2011)).

DATED: November 15, 2022.

*s/ Nicholas P. Heinke*
Nicholas P. Heinke
Mark L. Williams
U.S. Securities and Exchange Commission
1961 Stout Street, Suite 1700
Denver, CO 80294-1961
(303) 844-1071 (Heinke)
(303) 844-1027 (Williams)
HeinkeN@sec.gov
WilliamsML@sec.gov
Attorneys for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

I certify that on November 15, 2022, a copy of the foregoing document was emailed to

Defendant Iftikar Ahmed at IftyAhmed@icloud.com and Shalini Ahmed at

shalini.ahmed@me.com, and served via ECF upon the following:

Paul E. Knag
Murtha Cullina, LLP
177 Broad Street, 4th Floor
Stamford, CT 06901
(Counsel for Relief Defendants I-Cubed Domains, LLC, Shalini Ahmed 2014 Grantor Retained
Annuity Trust, DIYA Holdings LLC, DIYA Real Holdings, LLC, and three minor children by
and through their next friends Iftikar and Shalini Ahmed, their parents)

Christopher H. Blau
Zeisler & Zeisler, P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604
(Counsel for Receiver, Stephen M. Kindseth)


                                        *s/ Nicholas P. Heinke*
                                        Nicholas P. Heinke