UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>    *Plaintiff*,<br><br>    *v.*<br><br>IFTIKAR AHMED,<br><br>    *Defendant*, and<br><br>IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents,<br><br>    *Relief Defendants*. | Civil No. 3:15cv675 (JBA)<br><br><br><br>January 31, 2023 |

**ORDER DENYING DEFENDANT'S EMERGENCY MOTION FOR RELIEF RELATED TO**

**ESSELL FARMS**

Defendant moves [Doc. # 2115] for several forms of relief related to property owned by The Essell Farms, LLC ("Essell Farms"), an asset of his that is currently under the control of a Court-appointed Receiver. Defendant requests that the Court void or enjoin a quiet title judgment that was entered against Essell Farms in relation to the property, order the Receiver to begin proceedings to recover some or all of the purchase price that Essell Farms paid for the property, and order the Receiver to use Receivership assets to satisfy the property's outstanding taxes.

1

For the reasons given below, the Court denies Defendant's motion.

I.     **Background**

The Court assumes familiarity with the underlying facts of the litigation. Relevant here, in May 2015, the SEC filed its complaint [Doc. # 1] against Defendant. At the SEC's request, the Court issued a temporary restraining order on May 7, 2015 [Doc. # 9] freezing assets allegedly derived from Defendant's fraud scheme. The SEC then filed an amended complaint and motion for a preliminary injunction to freeze additional assets [Doc. ## 27, 29], naming the Relief Defendants in addition to Defendant. The Court granted the preliminary injunction [Doc. # 113], freezing Defendant and Relief Defendants' assets believed to consist of or have been purchased with using illegally-obtained funds. In 2018, the Court appointed a Receiver to manage and liquidate Defendant and Relief Defendants' frozen assets for the purpose of effectuating the judgment against Defendants. (Appointment Order [Doc. # 1070] at 5.) The Receiver was given control over the Receivership Estate, which was defined to include all of the assets subject to the asset freeze. (*Id.* at 6.) In appointing the Receiver, the Court also stayed all civil litigation to obtain possession of Receivership Estate property and against any of the Defendants, including their wholly-owned subsidiaries and partnerships. (*Id.* at 13.)

Among the frozen assets, and thus part of the Receivership Estate, is Defendant's interest in Essell Farms. (Receiver's Opp'n [Doc. # 2139] at 2.) Defendant owns half of Essell Farms and Young Bae Ku owns the other half. (*Id.*)

II.    **Discussion**

A.   **The 1804 Property Judgment**

In 2012, Essell Farms purchased the property located at 1820 County Route 7 in Ancram, New York ("1820 property") from Donald and Betty Duksa. (*Id.*) The property was

acquired through a bargain and sale deed[1] dated June 22, 2012 ("Essell deed") for $3 million. (*Id.*) In addition to the 1820 property, the Essell deed includes a description of the property located at 1804 County Route 7 ("1804 property"). (*Id.*) The Duksas had previously owned this property but sold it in 1999. In 2014, after the execution of the Essell deed, the Duksas repurchased the 1804 property. (*Id.*) In 2021, the Duksas obtained a quiet title judgment stating that they hold the title to the 1804 property free and clear of any claims by Essell Farms. (Receiver's Notice Regarding The Essell Farms, LLC ("Essell Notice") [Doc. # 2093] at 3-4.)

Defendant argues that the Duksas' quiet title action regarding the 1804 property violates the Court's litigation stay and requests that the Court void or enjoin the judgment. (Mot. [Doc. # 2115] at 3-4.) Defendant asserts that the Essell deed conveyed the 1804 property to Essell Farms, meaning that the property is part of the Receivership Estate and subject to the litigation stay. (Reply [Doc. # 2149] at 3-5.) The Receiver argues that the Essell deed did not convey the 1804 property because the Duksas did not own the property at the time the deed was executed. (Opp'n at 6; Receiver's Notice Regarding Essell Farms [Doc. # 2093] at 3.)

New York Real Property Law § 245 states that a "greater estate or interest does not pass by any grant or conveyance, than the grantor possessed or could lawfully convey, at the time of the delivery of the deed." As the Duksas did not own the 1804 property at the time of its inclusion in the Essell deed, that portion of the deed was void and conveyed nothing. Therefore, the 1804 property was never owned by Essell Farms and was never subject to the litigation stay.

---

[1] Unlike a warranty deed, a bargain and sale deed does not contain covenants of title, although it may contain a covenant that the grantor has not encumbered. *See* 43A N.Y. Jur. 2d Deeds §§ 4-5, 89 (describing warranty deeds, bargain and sale deeds, and the covenants of title); N.Y. Real Prop. Law § 258 (setting forth the statutory form of various deeds).

The fact that the Duksas subsequently repurchased the 1804 property does not alter this conclusion. While "[i]t is the general rule that if a grantor who has no title, a defective title, or an estate less than that which he assumes to grant, conveys by deed with a covenant of warranty, and subsequently acquires the title or estate which he purports to convey, or perfects his title, such after-acquired title or after-perfected title will inure to the benefit of the grantee," 43A N.Y. Jur. 2d Deeds § 245, this rule does not apply to bargain and sale deeds like the Essell deed. *House v. McCormick*, 57 N.Y. 310, 320-21 (N.Y. 1874).

### B. The 1820 Property Purchase Price

Defendant asks that the Court order the Receiver to initiate an action to recover some of the purchase price Essell Farms paid for the 1820 property. (Mot. at 4.) The basis for this request is a discussion that the Receiver had with Mr. Duksa and his attorney where Mr. Duksa admitted that Essell Farms paid significantly more for the 1820 property than it was worth. (*Id.* at 4-5.) The Receiver opposes this request, asserting that such an action would be legally complex, require significant legal fees, and have limited upside for the Receivership Estate because Mr. Ahmed only owns half of Essell Farms. (Opp'n at 7-8.)

The Court is mindful of the Receiver's concerns that the financial benefit to the Receivership Estate of any litigation on this issue could be swallowed by the cost of the associated legal fees. However, in light of the projected significant shortfall between the judgment amount and the proceeds of the Receivership Estate liquidation process, it is prudent to explore additional sources of assets. (Order Approving Phase 1 Liquidation Report [Doc. # 2395] at 4.) The Court accordingly directs the Receiver to do an initial investigation of possible claims related to the conveyance of the 1820 property and inform the Court of its findings in the Phase 2 Report.

### C. Essell Farms' Outstanding Obligations

Essell Farms currently has more than $40,000 in outstanding obligations, including tax preparation fees, taxes, and late fees for unpaid taxes and continues to incur

approximately $400 per month in late fees for unpaid expenses. (Essell Notice at 4-5.) The Receiver initially paid Essell Farms' expenses from an account holding lease payments from the Duksas, who leased the property until December 2018. (Essell Notice at 2.) As the property is currently vacant, this account is nearly empty. (*Id.*)

Defendant requests that the Court order the Receiver to use Receivership Assets to pay the entirety Essell Farms' outstanding taxes. (Def.'s Mot. at 5.) The Receiver has indicated that he is willing to use Receivership Assets to satisfy 50 percent of the outstanding obligations, with Mr. Ku paying the other 50 percent, in keeping with the ownership structure of the corporation. (Essell Notice at 4-5.) However, Mr. Ku has not agreed to this plan, and instead urged the Receiver to have Essell Farms borrow the money from The Essell Group, LLC, another entity that he and Defendant jointly own, but that is separate from Essell Farms. (*Id.* at 5.) The Receiver is reluctant to pursue this path because of the possibility that the expense to the Receivership of either structuring such a loan or compelling Mr. Ku to pay 50 percent of the taxes would exceed Essell Farms' outstanding obligations. (*Id.* at 5-6.)

The Court appreciates the Receiver's concern and the fact that payment of Essell Farms' obligations is complicated by the fact that it is a jointly-owned entity. However, the Court notes that the outstanding tax liabilities might impair the Receiver's ability to liquidate the Essell Farms holding during Phase 2 of the liquidation process by limiting the pool of interested purchasers. (*See* Phase 1 Order at 31-21 (directing the Receiver to begin the Phase 2 liquidation of unique assets).) Accordingly, the Court requests that the Receiver inform the Court of the current outstanding obligations and accruing monthly late fees, whether an additional progress has been made in working with Mr. Ku to satisfy the outstanding obligations, and the Receiver's current understanding of possible avenues for liquidating the Essell Farms holding.

## III.  Conclusion

In accordance with the reasons given above, Defendant's motion [Doc. # 2115] for emergency relief related to Essell Farms is DENIED, but the Receiver's report on the investigation requested above will be filed in 30 days.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 31st day of January, 2023