UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br>    *Plaintiff*,<br><br>*v.*<br><br>IFTIKAR AHMED,<br>    *Defendant*, and<br><br>IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents,<br><br>    *Relief Defendants*. | Civil No. 3:15cv675 (JBA)<br><br>February 27, 2023 |

**ORDER APPROVING THE RECEIVER'S REVISED APARTMENT SALE PROCEDURE**

On December 19, 2022, the Court held a hearing ("the hearing") regarding whether private sale of Apartments 12A and 12F ("the Apartments") was in the Receivership Estate's best interest. (Order Approving with Modification Receiver's Phase 1 Report [Doc. # 2395] at 32.) At the conclusion of the hearing, after certain modifications were agreed to, the Court directed the Receiver to submit a proposed order with a revised sale procedure reflecting the terms agreed to by the Parties at the hearing.

In response to this Proposed Order (Proposed Order [Doc. # 2424-1]), Relief Defendant Shalini Ahmed lodged four objections: 1) the Court did not resolve the issue of whether the Receiver has sole authority to determine the Listing Price; 2) the Receiver should not be authorized to enter into a Purchase and Sale Agreement "on terms and

conditions determined by the Receiver" without Court approval; 3) the part of the Proposed Order granting the Receiver sole authority to determine any "subsequent adjustments to the Listing Price" is a new item, and that any subsequent adjustments to the Listing Price must be agreed to by the parties and approved by the Court; and 4) using "the tenth calendar day following the publication of the Notice (if no Notice Buyer comes forward)" as the deadline to provide a Sale Motion to the Court artificially limits the amount of time that other prospective buyers would have to determine whether to make offers. (Ms. Ahmed's Response [Doc. # 2425] at 2-3.) Ms. Ahmed proposes that the Court provide any prospective buyer 30 days from the time the Notice is placed in the real estate marketing materials to submit a superior counteroffer. (*Id.* at 3.)

Ms. Ahmed's first two objections are overruled because they are adequately addressed by existing safeguards. The approved Phase 1 Report states that "the Receiver shall determine the initial listing price for the Apartments." (Phase 1 Report, [Doc. # 2272] at 23; Phase 1 Order, [Doc. #2395] at 24-25.) Concerns about the sufficiency of the Listing Price are addressed by the requirements of obtaining appraisals from three disinterested persons (Proposed Order ¶ (ii)) and the Receiver's obligation to confer with an approved real estate broker, the SEC, the Defendant, and the Relief Defendants regarding an appropriate Listing Price (*Id.* ¶(iv)). Any sale contemplated in a PSA requires final approval by this Court. (*See* Proposed Order, ¶ (x) (providing that a PSA between the Receiver and a Notice Buyer shall also "be explicitly conditioned upon approval of this Court".)

Ms. Ahmed's third objection, that the Receiver has introduced a new item governing the procedure for "subsequent adjustments to the Listing Price," is unavailing. (Ms. Ahmed's Response [Doc. # 2425] at 2.) While it is true that Listing Price adjustments were not expressly raised in the Phase 1 Report or at the hearing, there is no reason offered why the procedures for adjusting the Listing Price should require a different procedure than for setting the initial Listing Price. Under the Proposed Order, the procedures for setting the

Listing Price and any adjusted price are the same, and both require the Receiver to confer with the SEC, the Defendant, and the Relief Defendants before any setting of price. (*Id*. ¶ (v).)

Ms. Ahmed's final objection, that ten calendar days is not enough after the Stalking Horse makes an offer and would unacceptably threaten the market for the Apartments, is also overruled. (Ms. Ahmed's Response [Doc. # 2425] at 2-3.) Ms. Ahmed's request for at least thirty days for prospective buyers to make a counteroffer unduly burdens the success of the sale process. While a lengthier period might allow a higher bid to emerge, it also poses significant risk. The Phase 1 Report states that "a delay of more than four weeks between the date the PSA is signed and the date this Court confirms the sale…will very likely result in (i) a lower sale price, as the population of buyers willing to wait more than four weeks is smaller and thus there will be less demand, (ii) an otherwise interested buyer 'walking away' and declining to purchase the property, and/or (iii) the buyer demanding compensation in the form of attorneys' fees or other expenses as part of the PSA if the transaction is not ultimately approved." (Phase 1 Report at 36.) While Ms. Ahmed is dissatisfied with the period of ten calendar days because it "does not consider holidays or weekends," (Ms. Ahmed's Response [Doc. # 2425] at 2), the fixed ten-day period ensures predictability of the sale timeline and provides the necessary time for the Court to review the final sale agreement. This is consistent with 28 U.S.C. § 2001(b)'s requirement that "[b]efore confirmation of any private sale, the terms thereof shall be published in such newspaper or newspapers of general circulation as the court directs at least ten days before confirmation."

For these reasons, the Proposed Order Approving with Modification the Receiver's Apartment Sale Procedure and Authorizing the Receiver to Act in Accordance Therewith (Doc. # 2424-1) is APPROVED AND SO ORDERED.

IT IS SO ORDERED.

_____

Janet Bond Arterton, U.S.D.J.
Dated at New Haven, Connecticut this 27th day of February, 2023