UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>    *Plaintiff*,<br><br>    *v.*<br><br>IFTIKAR AHMED,<br><br>    *Defendant*, and<br><br>IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents,<br><br>    *Relief Defendants*. | Civil No. 3:15-cv-675 (JBA)<br><br>August 4, 2023 |

**MEMORANDUM AND ORDER RE: CONTEMPT**

On November 15, 2022, Plaintiff Securities and Exchange Commission ("SEC") moved [Doc. # 2379] for an order to show cause why Defendant Iftikar Ahmed and Relief Defendant Shalini Ahmed ("the Ahmeds") should not be held in civil contempt. The SEC alleged that the Ahmeds' attempt to have the Connecticut state court enter their dissolution agreement affecting assets subject to the asset freeze and the Receivership established by the Court violated the Court's orders. The Receiver joined [Doc. # 2398] in that request. This Court granted the motion and issued an Order to Show Cause [Doc. # 2471] and a show cause hearing was set for July 7, 2023 [Doc. # 2505].

1

Despite the SEC's demand in its Motion for an Order to Show Cause filed November 15, 2022 that the Ahmeds withdraw the dissolution agreement, it was not until July 5, 2023, two days before the show cause hearing, that Ms. Ahmed notified the Court, the SEC and the Receiver that she had moved in state court to withdraw her request to enter the dissolution agreement "without prejudice" [Docs. # 2534, 2535-3]. While Ms. Ahmed then sought cancellation of the show cause hearing, SEC and Receiver opposed, (Joint Notice [Doc. # 2536]) and the show cause hearing went forward as scheduled on July 7, 2023. [Doc. # 2544]. The parties filed their post-hearing briefing on July 17, 2020. (Receiver's Post-Hearing Br. [Doc. # 2545]); (Ms. Ahmed's Post-Hearing Br. [Doc. # 2546]); (SEC's Post-Hearing Br. [Doc. # 2547])

## I.   Background

The SEC filed its securities fraud complaint against Defendant and sought a temporary restraining order freezing assets allegedly derived from Defendant's fraud scheme, which the Court granted on May 7, 2015 [Doc. # 9]. The SEC then filed an amended complaint and motion for a preliminary injunction to freeze additional assets [Doc. ## 27, 29], naming the Relief Defendants in addition to Defendant. After an evidentiary hearing, the Court granted the preliminary injunction ("Asset Freeze Order") [Doc. # 113], freezing Defendant and Relief Defendants' assets appearing to consist of or have been purchased using illegally-obtained funds. The Asset Freeze Order stated that

> No person or entity, including the Defendant, Relief Defendants, or any creditor or claimant against the Defendant or any of the Relief Defendants, or any person acting on behalf of such creditor or claimant, shall take any action to interfere with the asset freeze, including, but not limited to, the filing of any lawsuits, liens, or encumbrances, or bankruptcy cases to impact the property and assets subject to this order.

(*Id.* at 21.) The Court subsequently granted the SEC's summary judgment motion [Doc. # 835] finding Defendant liable for violations of Sections 206(1)-(4) of the Advisers Act,

Section 10(b) of the Exchange Act, and Section 17(a)(1) of the Securities Act. See *Ahmed v. SEC*, 308 F. Supp. 3d 628, 673 (D. Conn. 2018).

In 2018, the Court appointed a Receiver to manage and liquidate the Ahmeds' frozen assets for the purpose of satisfying the judgment against Defendant. (Appointment Order [Doc. # 1070] at 5.) The Receivership Estate over which the Receiver had control was defined to include all of the assets subject to the Asset Freeze Order. (*Id*. at 6.) The Appointment Order barred Defendant and Relief Defendants from

> directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:
>
> a. Interfere with the Receiver's efforts to take possession, custody or control of, or to manage, any assets of the Receivership Estate; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any property of the Receivership Estate; . . .
>
> c. Except with respect to authorized expenditures, dissipate or otherwise diminish the value of any property of the Receivership Estate; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning or in any way conveying any property of the Receivership Estate, enforcing judgments, assessments or claims against the property of the Receivership Estate, attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement which affects the Receivership Estate; or,
>
> d. Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estate.

(*Id.* at 12-13.) The Appointment Order also contained a provision staying "[a]ll civil legal proceedings of any nature . . . to obtain possession of property of the Receivership Estate, wherever located." (*Id.* at 13.)

In January 2022, the Court approved the Receiver's plan to liquidate Receivership Assets to satisfy the judgment. (Liquidation Order [Doc. # 2147] at 2.) The Court's order stated that, consistent with the Court's prior rulings, all Receivership Assets were available to satisfy the judgment. (*Id.* at 15-16.) The Court directed the Receiver to conduct the liquidation in two phases, with Phase 1 liquidating non-unique assets and Phase 2 liquidating unique assets. (*Id.* at 5-6.) In December 2022, the Court approved the Receiver's report on Phase 1 of the liquidation and directed the Receiver to begin Phase 2. (Phase 1 Approval Order [Doc. # 2395] at 1.)[1]

Concurrent with the Court's steps to secure and satisfy the judgment, in February 2022, Ms. Ahmed filed a "notice" that she intended to commence dissolution of marriage proceedings, did not believe that the Court's orders barred her from doing so, and would notify the state court of the Court's orders. (Ms. Ahmed's Notice [Doc. # 2195] at 1-2.) In May 2022, the Receiver notified the Court of the Ahmeds' "apparent failure to comply with the appointment order" by entering into a dissolution of marriage agreement ("dissolution agreement") implicating Receivership Assets, in violation of the Court's Orders. (Receiver's First Notice [Doc. # 2248] at 2.) The agreement was signed on April 28, 2022, and obligated Defendant to pay Ms. Ahmed a lump sum alimony and child support payment of $87.7 million. (Dissolution Agreement [Doc. # 2248-1] at 1.) Additionally, the agreement stated that certain items of personal property belonged to Ms. Ahmed (*Id.* at 1-5.) and affirmed that Ms. Ahmed and the couple's minor children held the title to any property titled to them or

---

[1] Nothing in the recent partial remand order by the Second Circuit in *United States Sec. & Exch. Comm'n v. Ahmed*, 72 F.4th 379(2d Cir. 2023) impacts the outcome of these contempt proceedings.

4

for their benefit as of the day prior to the date the asset freeze commenced, and stated that the title or benefit determined legal ownership, (*id.* at 8), contravening the Court's prior findings that Relief Defendants were nominee owners of these assets. *SEC v. Ahmed*, 343 F. Supp. 3d 16, 31-38 (D. Conn. 2018). The Receiver's notice explained that he would attempt to further investigate the dissolution agreement through discussions with the Ahmeds to ensure that the Receivership and Receivership assets would not be impacted. (Receiver's First Notice at 12.) The basis for his concern was because Defendant has no known assets beyond those in the Receivership Estate, the agreement necessarily impacted Receivership Assets.

In July 2022, the Receiver filed a supplemental notice regarding the dissolution agreement. (Receiver's Second Notice [Doc. # 2266].) He detailed his appearance in the state court to apprise that court of this Court's orders and his decision to move to intervene in the dissolution proceeding for the purpose of protecting the Receivership Estate's assets. (*Id.* at 2.) He also stated that he had attempted to contact the Ahmeds on multiple occasions but had received no substantive reply. (*Id.* at 3.)

On November 15, 2022, the SEC moved for an Order to Show Cause why "Defendant Iftikar Ahmed and Relief Defendant Shalini Ahmed should not be held in civil contempt for their ongoing efforts to have another court enter a dissolution agreement related to their purported divorce that, by their own admission, has assigned and conveyed frozen assets and is interfering with the Receiver's ability to liquidate assets frozen by this Court as well as the exclusive jurisdiction of this Court over those assets." (Show Cause Motion at 1.) On April 13, 2023, the Court granted the SEC's Show Cause Motion and ordered the Ahmeds to "show cause why they should not be held in contempt for seeking to obtain state court approval of their Dissolution Agreement." (Show Cause Order [Doc. # 2471] at 6.)

On April 24, 2023, the state court granted the Receiver's Motion to Intervene [Doc. No. 2498-2] (the "Memorandum of Decision") holding that "the [R]eceiver's interest is of a

5

direct and immediate character, and that the disposition of this litigation and the effect of its judgment will impair the [R]eceiver's interest without his involvement." (Memorandum of Decision at 24.) The state court further stated that "the pleadings establish the [R]eceiver's authority, as well as the District Court's exclusive jurisdiction, over the property at issue in this marital dissolution action." (*Id*. at 25-26.)

On June 12, 2023, the Ahmeds again moved in state court for entry of the Dissolution of Marriage Agreement as a judgment, and in the motion argued that "the marital estate includes well over $100 million in legitimate earnings and assets." (Motion for Entry of Amended Agreement, Ex. G to the Receiver's Resp. to Show Cause Order [Doc. # 2524] at 5.) Representing to the state court that "[t]here is nothing precluding th[e] [Dissolution of Marriage] [A]greement from being entered as judgment," Ms. Ahmed articulated the need for the agreement to be entered so her family could receive certain financial support: "MS. AHMED: And – I'm sorry, Your Honor, but, you know, I have three little children at home. They really need the support. It's not fair to them to keep this dragging on." (Receiver's Resp., Exhibit H at 5:4-16.)

The state court heard arguments from Ms. Ahmed and the Receiver on whether to enter the agreement and decided it would "defer hearing on the [Motion for Entry of Amended Agreement] until the time of trial and will render a decision on the motion after the conclusion of trial. Now, trial is scheduled for December 12th of 2023." (*Id.* at 7:6-10.)

As noted above, on July 5, 2023, two days before the show cause hearing commenced, Ms. Ahmed notified the Court, the SEC and the Receiver that she had moved to withdraw her request to enter the marriage dissolution agreement [Doc. # 2534]. The motion was for withdrawal "without prejudice." [Doc. # 2535-3]. The SEC and Receiver maintained that "the Court can and should still hear the issue of whether the Defendant and Ms. Ahmed should be sanctioned and ordered to pay the fees and expenses incurred by the Receiver related to the

6

Dissolution Proceeding and his efforts to protect the assets of the Receivership Estate." (Joint Notice at 2.)

## II.   Legal Standard

The Court has "inherent power to enforce compliance with [its] lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966).[2] A party may be held in civil contempt for failure to comply with a court order if "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995). With regard to the first element, an order is clear and unambiguous if it is "specific and definite enough to apprise those within its scope of the conduct that is being proscribed." *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1352 (2d Cir. 1989). As to the second element, the burden of establishing contemptuous conduct is borne by the moving party, *Latino Officers Ass'n of City of N.Y., Inc. v. City of N.Y.*, 558 F.3d 159, 164 (2d Cir. 2009), and "[i]n the context of civil contempt, the clear and convincing standard requires a quantum of proof adequate to demonstrate a reasonable certainty that a violation occurred," *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002). However, the party seeking the contempt order need not establish that the violation was willful. *Donovan v. Sovereign Sec. Ltd.*, 726 F.2d 55, 59 (2d Cir. 1984).

"Unlike sentences for criminal contempt, which are punitive in nature and intended to vindicate the authority of the court, the sanctions for civil contempt serve two purposes: to coerce future compliance and to remedy any harm past noncompliance caused the other party." *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996). The Second Circuit "has commented that, so far as the first of these functions is concerned, the district judge, sitting

---

[2] Unless otherwise indicated, this opinion omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

7

in equity, is vested with wide discretion in fashioning a remedy. The compensatory goal, by contrast, can only be met by awarding to the plaintiff any proven damages. The district court in either case may award appropriate attorney fees and costs to a victim of contempt." *Id.*

"When deciding whether to award fees, courts have focused on the willfulness of the contemnor's misconduct….Thus, while willfulness may not necessarily be a prerequisite to an award of fees and costs, a finding of willfulness strongly supports granting them. Indeed, to survive review in this court, a district court, having found willful contempt, would need to articulate persuasive grounds for any denial of compensation for the reasonable legal costs of the victim of contempt." *Id.* This is so because "the discretion of the district court is more narrowly bounded when seeking to compensate the victim of contempt, and correspondingly broader when it seeks to force prospective compliance with its own order." *Id.*[3]

### III.  Discussion

#### A. Contempt on the Merits

##### a. Failure to Comply with Court Orders

Paragraph 19(d) of the Appointment Order states that the Defendant and Ms. Ahmed may not take actions which would "[i]nterfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estate."

---

[3] Ms. Ahmed argues that, even if she were found in contempt, the Court cannot award fees, because she does not have the funds to pay such an award. (Ms. Ahmed's Br. at 24.) While Ms. Ahmed testified that she lacked access to funds beyond those allotted to her by the Court for monthly expenses, the Court did not find her testimony entirely credible. She admitted that she travels frequently to India with her children aged 11, 15 and 16 to see their father, who remains a fugitive there, and their plane tickets and lodging are paid for by friends of Mr. Ahmed, whose full names Ms. Ahmed claims not to know. (Transcript of July 7, 2023 Hearing ("Hearing Tr.") [Doc. # 2549] at 50:18-53:11; 65:5-67:16.) Ms. Ahmed also admits to having hundreds of thousands of dollars in tuition for her children's private schooling paid for by a benefactor whom she refused to name. (*Id.* at 54:5-58:10.) The significant financial assistance Ms. Ahmed admits to having received, and her unwillingness to provide any details about why and how these individuals came to provide such substantial financial support over the years, raises issues of whether Ms. Ahmed has ongoing access to significant funds when she requests them.

Paragraph 19(a) states that the Ahmeds may not [i]nterfere with the Receiver's efforts to take possession, custody or control of, or to manage, any assets of the Receivership Estate… include[ing] but… not limited to…executing or issuing or causing the execution or issuance of any court attachments…, execution, or other process for the purpose of… taking possession of or interfering with or creating or enforcing a lien upon any property of the Receivership Estate." The Receiver observes that the Ahmeds "could have gotten divorced without implicating Receivership Assets" but chose to do so in a manner disruptive to those assets. (Receiver's Resp. at 18.) He points to Ms. Ahmed's repeated representations that she sought to engage in such interference. *See* Receiver's Resp. Ex. I, Ms. Shalini Ahmed's Pre-Hearing Brief for Case Date on June 12, 2023, at 11 (arguing that the state court should grant the Motion for Entry of Amended Agreement, because: "Ms. Ahmed requires a judgment to ensure that she and the three minor children are able to receive the domestic support obligations that they are entitled to receive, that they are in need of, and that Mr. Ahmed must provide."); *see also* Ms. Ahmed's Response, at 26 (arguing that if the Defendant "does not have enough assets to satisfy his obligations [under the Agreement], then…" the SEC must "simply… share with other creditors," namely, Ms. Ahmed herself, "on an equal basis.") At the show cause hearing, Ms. Ahmed testified that her intention following the dissolution agreement being entered was "to bring whatever judgment was there to this court for enforcement or leave to enforce against the [frozen] assets" and to ask this Court "to consider the priority status" of her claim against those assets. (Transcript of July 7, 2023 Hearing ("Hearing Tr.") [Doc. # 2549] at 96:16–98:23.)

Paragraph 19(c) of the Appointment Order states that the Defendant and Relief Defendants may not take actions which would "dissipate, or otherwise diminish the value of any property of the Receivership Estate… includ[ing] but… not limited to… assigning or in any way conveying any property of the Receivership Estate…." The Receiver argues this provision would be violated by the dissolution agreement because it requires a payment of

9

a lump sum alimony and child support payment on the date of the agreement, and also that the agreement states that the Ahmeds "agree that the title to property shall remain as on 05 May 2015," the day prior to the Freeze Order, "regardless of any subsequent transfer of any asset(s) by any Receiver on or after 06 May 2015." (Receiver's Resp. at 20, citing Dissolution Agreement at 8.) The Receiver argues the Ahmeds violated the Appointment Order ¶ 22 and Freeze Order ¶ D, which stay legal proceedings related to property of the Receivership Estate. (*Id.* at 21-22.)

The Receiver argues that an entry of the dissolution agreement would also hinder his execution of his duties because it "would, among other things, enable the Ahmeds (i) to argue, albeit incorrectly, to the Receiver, to this Court and to other courts that this Court's exclusive jurisdiction over and prior adjudications concerning Receivership Assets have been supplanted by the Agreement and the Dissolution Proceeding; and (ii) to demand, albeit, again, incorrectly, to third-parties that they honor the Agreement and permit the Ahmeds control over certain Receivership Assets." (Receiver's Br. Regarding Impact of Dissolution Agreement [Doc. # 2499].) The Receiver maintains that even though such arguments by the Ahmeds are without merit, their assertions would be disruptive as it would require the Receiver to respond to such arguments and the ensuing legal proceedings will result in delay. (*See id.* at 2-3.) For example, the Receiver argues that if the agreement were approved, then Mr. Ahmed's failure to comply with his obligations under the dissolution agreement would make available to Ms. Ahmed certain post-judgment enforcement tools that would allow her "to serve certain financial institutions with state court executions requiring the turnover of Receivership Assets to her or to serve certain business entities within the Receivership Estate with a charging order which would divert sale proceeds to herself instead of the Receiver," thus leading to interference with the Receiver's duties. (Receiver's Resp. at 20.)

The Asset Freeze Order and Appointment Order unambiguously prohibited attempts to interfere and/or change ownership of assets in the Receivership Estate and interfere with the Court's jurisdiction over the Receivership Estate. (Asset Freeze Order at 21; Appointment Order at 12-13.) From the record, it is evident that prior to withdrawing the motion to enter the dissolution agreement, the Ahmeds were embarked on a scheme in connection with their divorce that would likely violate the Court's orders if it came to fruition.

### b. Diligent Compliance

As evidence of the Ahmeds' lack of diligence in complying with the Court's orders, the Receiver argues that the Ahmeds have attempted to use subterfuge to evade compliance. (Receiver's Resp. at 22-23.) He notes that the Ahmeds pushed for expedited approval of the agreement, even *after* this Court issued an order to Show Cause.[4] (*Id.* at 24.) The Receiver notes that "the Ahmeds' concerted efforts to get the Agreement entered as a judgment despite, inter alia, this Court ordering the Ahmeds to show cause why they should not be held in contempt for seeking to do just that, evidences an intent to violate the Freeze Order and Appointment Order." (*Id.* at 25.) Now, of course, Ms. Ahmed has withdrawn the motion to enter that dissolution agreement. However, Ms. Ahmed waited until the last possible moment to withdraw it prior to the hearing, claiming she is withdrawing only because she was denied funds for counsel. (Ex. 1 to Ms. Ahmed's Mot. to Cancel [Doc. # 2535-1].)

### B. Mootness of Contempt

Regardless of the merits of the contempt dispute, Ms. Ahmed argues that because she voluntarily withdrew her request to enter the dissolution agreement prior to the show cause hearing, the contempt issue is moot and no sanctions are appropriate. (Ms. Ahmed's Reply on Cancellation [Doc. # 2539] at 2-3.) In the SEC's initial Motion to Order the Ahmeds to Show

---

[4] The Receiver also sent emails to Ms. Ahmed inquiring about her intentions and warning her not to disturb the asset freeze and/or attempt to obtain possession of any Receivership Assets, (Show Causing Hr.'g Ex. 6 [Doc. # 2523-1] at 1.)

11

Cause, it requested the Court to "order Mr. and Ms. Ahmed to pay, on a joint and several basis, a rising daily fine until the contempt is purged by withdrawing their request that the divorce court enter the Dissolution Agreement or otherwise divvy up or assign assets subject to the asset freeze and within the Receivership Estate." (Show Cause Motion at 4.) It is clear that the Ahmeds have now pre-emptively purged themselves of any potentially contemptuous conduct. *See, e.g., United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 743 F. Supp. 155, 167 (S.D.N.Y.), *aff'd sub nom. United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 905 F.2d 610 (2d Cir. 1990) (finding that because the contemnor purged himself of all contempt, "the remaining issues involved in the contempt charges became moot.").

Nonetheless, the SEC maintains that the Court should find that the Ahmeds "violated Orders of this Court and sanction the Ahmeds by ordering them to pay [] fees and expenses." (SEC's Post-hearing Br. at 1.) In *Booth v. Wilson*, No. 96 CIV. 920 (RO), 1997 WL 615490, at *3 (S.D.N.Y. Oct. 6, 1997), the alleged contemnor no longer had any contemptuous conduct to purge because the offending conduct (a bankruptcy proceeding she initiated in defiance of a court order) had been stayed by the district court. *Id.* at *2-3. Despite this development, the court still held the Defendant in contempt and found it appropriate to award attorney's fees because "[c]ivil contempt sanctions can also be compensatory, "restor[ing] the parties to the position they would have held had the [court's order] been obeyed." *Id.* at *3 (*quoting Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir. 1979)). The Court finds some distinction between here, where the Ahmeds voluntarily withdrew the pending motion to enter the dissolution agreement, in contrast to Defendant Wilson, whose contempt was only eliminated by the external decision of the court to stay the bankruptcy proceeding.

At the show cause hearing, the SEC cited, in support of the remedial nature of contempt, *Vuitton et Fils S. A.*, 592 F.2d at 130, where the Second Circuit remanded to the district court directing that "if Judge Brieant concludes that any of the defendants had actual

12

notice of the injunction, acted in concert with Carousel, and is in contempt because of a violation of the terms of the decree, Vuitton should be afforded an opportunity to prove its damages." Neither *Vuitton* nor the Receiver's cases in his post-hearing brief involve a situation where the allegedly contemptuous conduct was *voluntarily ceased before a finding of contempt was issued, and before the allegedly contemptuous scheme came to fruition*. See *Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 673 F.2d 53, 56 (2d Cir. 1982) (affirming a finding of civil contempt which "imposed [a] contingent fine in order to compel [the contemnor] to comply with the court's injunctive orders"); *Weitzman*, 98 F.3d at 719 (awarding fees where the contemnor was an attorney who was found in contempt for having improperly interfered with a court-ordered sale of a car, where the attorney's actions successfully led to the cancellation of the sale)[5]; *Jaeger v. Massis*, 234 F.3d 1262 (2d Cir. 2000) (affirming a finding of contempt for defendant who had been continuously distributing fliers in violation of a temporary restraining order).

Given that Ms. Ahmed renewed her motion to have the state court enter the Dissolution of Marriage Agreement as judgment *even after the Order to Show Cause was issued*, the Ahmeds may very well have been engaged in a scheme that would have subverted the Court's orders if the dissolution agreement had been entered as a judgment in state court, potentially "impact[ing] the property and assets subject to this order," (Asset Freeze Order at 21), "[i]nterfer[ing] with the Receiver's efforts to…manage…the Receivership Estate" and/or "dissipate[ing] or otherwise diminish[ing] the value" of the Receivership Estate. (Appointment Order at 12-13.) However, regardless of the Ahmeds' motives, the motion to enter the dissolution agreement has been voluntarily withdrawn, and so the Court declines

---

[5] As background, in *Weitzman* the court had issued an order directing the seizure and sale of the car in question, and prohibiting interference with that sale by the defendant or her representatives. Defendant's lawyer "delivered a letter to the Sheriff that caused the Sheriff to cancel the sale of the Lincoln that was scheduled to occur on the following day." As a result, the district court found Defendant's lawyer in contempt. *Weitzman v. Stein*, 859 F. Supp. 740, 741-42 (S.D.N.Y. 1994), *vacated on other grounds*, 57 F.3d 1063 (2d Cir. 1995).

to exercise its contempt power, nor does the Court find that the circumstances warrant the awarding of the Receiver's fees, which will be paid for by the Receivership Estate.[6]

## II.     Conclusion

For the foregoing reasons, the Court declines to take action against Defendant Iftikar Ahmed and Relief Defendant Shalini Ahmed.[7]

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 4th day of August , 2023

---

[6] This is not to say that a party can never be subject to fees or damages even when a party voluntarily ceases its contemptuous conduct prior to a show cause hearing. Such a rule could allow for manipulation of the courts by allowing a party to engage in wanton violations of judicial orders only to cease their violations on the eve of judicial comeuppance.

[7] Ms. Ahmed's motion to withdraw the Dissolution Agreement was made "without prejudice," [Doc. # 2535-3], and the Court warns that any effort by Mr. or Ms. Ahmed to revive the dissolution agreement as written or enter a similar dissolution agreement that violates the Court's Orders will face the possibility of contempt proceedings and remedies that are both coercive and compensatory in nature.