UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br>　　　　*Plaintiff*,<br><br>　　　　*v.*<br><br>IFTIKAR AHMED,<br>　　　　*Defendant*, and<br><br>IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents,<br><br>　　　　*Relief Defendants*. | Civil No. 3:15-cv-675 (JBA)<br><br>August 23, 2023 |

**RULING ON RECEIVER'S MOTION FOR A PARTIAL STAY AND DEFENDANT'S MOTION FOR A FULL STAY OF LIQUIDATION**

Receiver Stephen M. Kindseth moves [Doc. # 2555] for an order partially staying the Liquidation Order [Doc. # 2147], the Court's Order approving the Phase 1 report with modifications [Doc. # 2395], and the February 27, 2023 Order approving apartment sale procedures [Doc. # 2445] ("the Liquidation Orders"). Receiver requests a stay as to liquidation of assets owned by the Relief Defendants in whole or that are jointly owned between Defendant and the Relief Defendants, identified in Exhibit A of his motion, and takes

the position that the Liquidation Orders otherwise require him to continue liquidating and engaging in other actions with respect to the remaining Remand Assets. (*Id.*)

Defendant Iftikar Ahmed and Relief Defendant Shalini Ahmed disagree; Defendant Ahmed cross-moves for a full stay of liquidation, interpreting the Second Circuit's dismissals of the appeals of this Court's prior liquidation orders as moot to mean that the liquidation orders "are not valid and new orders on liquidation" must be ordered before the Receiver can proceed. (Def.'s Mot. for Liquidation Stay [Doc. # 2557].) Relief Defendants join Defendant's motion (Relief Def.'s Response to Receiver's Stay Mot. [Doc. # 2574]); Ms. Ahmed additionally argues that the Ahmeds intend to seek further appellate review and that state law prevents liquidation of some of the assets, which she maintains are further reasons to stay liquidation. (Ms. Ahmed's Response to Receiver's Stay Mot. [Doc. # 2562].)

The SEC joins Receiver's motion for a partial stay as to the assets owned by Relief Defendants but argues additionally that the Court should clarify that jointly owned assets are subject to liquidation under an alternative holding to the nominee analysis, thus making any "undisputed" jointly owned assets subject to liquidation (SEC's Response to Receiver's Mot. [Doc. # 2572]); the SEC opposes Defendant's motion for the stay of any assets other than those fully owned by Relief Defendants and not affirmed by the Second Circuit as nominee assets on appeal. (SEC's Response to Def.'s Mot. [Doc. # 2573].) Defendant and Ms. Ahmed both oppose the SEC's request for the Court to issue clarification as to its prior judgment regarding jointly owned assets, arguing that the Court may not do so until the mandate issues and releases jurisdiction to resolve the remand issues back to this Court, (*see* [Docs. ## 2583, 2589, 2590]); Receiver takes no position on the SEC's request. (Receiver's Reply to Responses to Mot. for Partial Stay [Doc. # 2587].)

I.   **Background**

   A.   **The Second Circuit's Order**

The Court assumes familiarity with the factual and procedural background of this case. Relevant to this motion, this Court granted summary judgment to the SEC on liability on March 29, 2018. *United States Sec. & Exch. Comm'n v. Ahmed*, 308 F. Supp. 3d 628 (D. Conn. 2018). On September 6, 2018, the Court granted a permanent injunction, and awarded $41,920,639.00 in disgorgement and $21,000,000 civil penalties for a total of $62,920,639.00. *United States Sec. & Exch. Comm'n v. Ahmed*, 343 F. Supp. 3d 16, 30 (D. Conn. 2018), *vacated and remanded on other grounds*, 72 F.4th 379 (2d Cir. 2023) ("Remedies Judgment") [Doc. # 955]). The opinion also awarded interest/gains accrued on frozen assets and ruled on the assets available to satisfy the judgment. *Id.* On December 14, 2018, the Court amended the judgment (Amend. J. [Doc. # 1054]) to include prejudgment interest of $1,491,064.01 for the period between the Court's judgment and the order freezing the Receivership assets, as well as "any interest or gains accrued on disgorged frozen assets from the date of the Court's freeze order." (*Id.* at 4.) Defendants appealed the Amended Judgment, and the SEC moved for a limited remand; the Second Circuit remanded for the Court to determine whether § 6501 of the National Defense Authorization Act warranted issuance of another amended judgment. Accordingly, the Court issued a judgment ("Redetermined Amended Judgment" [Doc. # 2011]) increasing the disgorgement obligation by $ 22,251,007.04, and prejudgment interest by $ 8,264,734.33. The Court approved a proposed plan of liquidation submitted by Receiver ("First Liquidation Order" [Doc. # 2147]) and approved with modification the Phase I report by Receiver that included the Receiver's plan to begin liquidating unique assets as part of Phase II ("Phase I Approval Order" [Doc. # 2395].)

Defendants appealed the Remedies Judgment, the Amended Judgment, the Redetermined Amended Judgment, the First Liquidation Order, and the Phase I Approval Order. The appeals of the First Liquidation Order and the Phase I Approval Order were held

3

in abeyance before they were briefed, pending resolution of the appeals of the judgments. Relief Defendants appealed regarding (1) whether the Court correctly applied the nominee doctrine, (2) the calculation and award of pre-judgment interest, (3) the imposition of gains on frozen assets and the imposition of prejudgment interest on that amount, and (4) the calculation and award of post-judgment interest. (*SEC v. Ahmed,* Case No. 21-1686, Relief Defs.' Brief [Doc. # 79] (2d Cir. Nov. 11, 2021).) Defendant appealed (1) the retroactive application of the NDAA, (2) the imposition of disgorgement obligations, including the calculation of pre-judgment interest, actual gains, and the appropriate rate for post-judgment interest. (*SEC v. Ahmed,* Def.'s Brief [Doc. # 82].) He also appealed the underlying summary judgment liability order, as well as the amount of the penalty. (*Id.*)

After the appellate briefs were filed, Relief Defendants filed a motion on December 5, 2022 with the Second Circuit requesting a stay of implementation of the Court's December 2, 2022 Order approving the Phase I report and authorizing the Receiver to proceed with Phase II of the liquidation "pending appeal." (*SEC v. Ahmed,* Relief Defs.' Motion to Stay [Doc. # 169].) They filed an emergency motion on December 8, 2022, to stay liquidation of the MetLife insurance policy until their earlier motion to stay [Doc. # 169] was ruled on by the Second Circuit (*SEC v. Ahmed,* Relief Defs.' Emergency Mot. to Stay [Doc. # 174]); the Second Circuit granted the motion on December 22, 2022. (*SEC v. Ahmed,* Order Granting Emergency Motion to Stay, [Doc. # 192]). Relief Defendants also moved on April 8, 2023 for an emergency stay of liquidation of the two NYC apartments until its earlier motion to stay was ruled on, which the Second Circuit granted on May 4, 2023. (*See SEC v. Ahmed,* [Docs. ## 199, 210].)

On June 28, 2023, the Second Circuit issued its decision on the Amended Judgment and the Redetermined Amended Judgment and dismissed the appeals of the Phase I Order and motion to stay liquidation as moot. *United States Sec. & Exch. Comm'n v. Ahmed*, 72 F.4th

379 (2d Cir. 2023). The Second Circuit affirmed the Court's exclusion of Defendant Ahmed from discovery of materials subject to a protective order, denial of access to frozen funds to hire counsel, calculation of his disgorgement obligation, and retroactive application of the 2021 amendments to the Securities Exchange Act of 1934 to his disgorgement application. *Id.* at 393, 389-90. The Second Circuit also affirmed the Court's calculation and award of prejudgment interest. *Id.* at 389-90.

However, the panel concluded that the Court "should have ensured that consequential gains on frozen assets were not unduly remote from Ahmed's wrongdoing or, in other words, were attributable to the fraud," *id.* at 406, and remanded for the Court "to reassess actual gains in light of *Liu*." *Id.* at 407. It also held that the Court "should have applied an asset-by-asset approach to the nominee theory." *Id.* at 407. However, the Second Circuit affirmed the Court's nominee doctrine analysis as to the Iftikar A. Ahmed Family Trust, MetLife Policy, and the Fidelity x7540 account. *Id.* at 409. With the exception of the findings on those assets, the Second Circuit "vacate[d] and remand[ed] the [Court's] disgorgement as to the Relief Defendants' assets." *Id.* at 410.

Finally, the Second Circuit denied the Defendant and Relief Defendants' appeals of the Court's liquidation orders issued January 11, 2022 and December 2, 2022 as moot, denied Defendants' motion for a liquidation stay as moot, and vacated all stays—including the Second Circuit's stay of the liquidation of the life insurance policy [Doc. # 2491] and of the two apartments in New York City. [Doc. # 2248]. *Id.*

### B.    Liquidation Status of Receivership Assets

After the Second Circuit's decision issued, the Receiver filed a status report identifying which assets he believed were unaffected by the Second Circuit's order, and those that he viewed as impacted by the decision. (Receiver's Status Report [Doc. # 2554] at 2-3.) The Receiver reports that non-unique asset liquidation has resulted in proceeds of over

$102,433,000. (*Id.* at 4.) As for nonunique assets, the Receiver had taken steps towards listing the Apartments in NYC for marketing and sale, but paused those efforts after the stay was issued by the Second Circuit in May 2023; he continues to evaluate the best way to realize value from the Receivership's Estate in Essell Farm, LLC; he has obtained appraisals for miscellaneous personal property including jewelry, coins, art, and a designer handbag; he has not yet liquidated the MetLife life insurance policy, but is now prepared to do so because the Second Circuit's stay on its liquidation has been lifted; he has not been successful in liquidating the other two life insurance policies titled to the Iftikar A. Ahmed 2010 Irrevocable Trust; and he continues to realize value from interests in "Closely Held Entities, the Non-Forfeited Interests in Oak Management Corporation, and the partnership interest in Oak Management Corporation-advised investment entities." (*Id.* at 4-6.)

The Receiver has categorized the Receivership Assets into four categories:

(1) Defendant titled assets (directly or indirectly);

(2) Relief Defendant titled assets affirmed on appeal as nominee of the Defendant;

(3) Defendant titled assets held jointly with a Relief Defendant; and

(4) Relief Defendant titled assets.

The status report also contains an attached chart of those assets noting the status of their liquidations; in total, he estimates that assets held by the Receivership Estate total approximately $115,111,436.11. $43 million of that amount is reserved for tax payments. (*See* Doc. # 2570 at 4.)

## II.   **Legal Standard**

"A district court may stay an action pursuant to the power inherent in every court to control the disposition of the causes on its own docket with economy of time and effort for itself, for counsel, and for litigants." *Frank Brunckhorst Co., LLC, v. Castellini*, 17-CV-2324, 2018 WL 1788149, at *4 (E.D.N.Y. Feb. 28, 2018) (internal quotations omitted). "The party

requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Miller v. City of Ithaca*, 10-CV-0597, 2019 U.S. Dist. LEXIS 57184, at *4 (N.D.N.Y. Apr. 3, 2019). Courts consider, among other factors, "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.*

## III.   Discussion

Receiver represents that he intends to continue with liquidation of assets in the first two categories—Defendant titled assets and Relief Defendant Titled Assets affirmed as nominee assets on appeal—and seeks a stay of liquidation of the assets in the second two categories, Jointly Titled Assets and Relief Defendant titled assets. (Receiver's Stay Mot.) The SEC "does not dispute that relief sought in the Motion is appropriate on the current record," but requests that the Court "clarify" that a subset of the Jointly Titled Assets— "namely nine financial accounts, nine gold bars, and a painting called "Ashoka's Pillar"—may still be liquidated for the reasons discuss *infra* at Section III(A). Defendant requests a stay of the liquidation of all assets, which Ms. Ahmed and the other Relief Defendants join, arguing that the Second Circuit's ruling made the Court's prior judgments a nullity, and thus, no liquidation can proceed until the mandate issues and a new liquidation order and judgment are issued.

### A.   Jointly Held Assets

Relief Defendants argued in summary judgment briefing on damages that Ms. Ahmed was entitled to a portion of the marital estate because she managed certain assets, acting as the "family CIO." The Court held in its Remedies Judgment that

> *[e]ven if* Ms. Ahmed legitimately managed the family assets, Relief Defendants provide no authority that where a spouse manages assets which were

fraudulently acquired by the other spouse, the spouse managing those assets somehow gains an ownership interest in them such that the assets cannot be used to satisfy a judgment against the other spouse. Further, *assuming* Ms. Ahmed managed assets which were not fraudulently obtained, those jointly controlled assets can *nevertheless* be used to satisfy Defendant's judgment.

(*Id.* at 26) (emphasis added). The Court added in a footnote that regardless of whether Ms. Ahmed in fact managed family assets, "the Court need not make this determination given its conclusion . . . that the Court can reach jointly owned assets to satisfy a judgment against Defendant." (*Id.* n. 22); *SEC v. Smith,* 646 Fed. Appx. 42, 43 (2d Cir. 2016) (rejecting the relief defendant's argument that the district court erred in applying all assets in a jointly controlled account – held only in the name of a relief defendant – to satisfy final judgment against defendant) (*Id.* at 26-27).

The Second Circuit directed that the "district court's disgorgement order" was vacated and remanded "as to the Relief Defendants' assets" and that if on remand, the Court "finds that an asset is not nominally owned by one of the Relief Defendants," this Court could "consider whether an alternative theory of relief-defendant liability permits disgorgement of the asset", such as "*Cavanagh I* liability or a joint ownership theory." *Ahmed*, 72 F.4th at 410. It noted in a footnote that the "parties dispute whether the district court's joint-ownership analysis was *dicta* or an alternative holding," but declined to weigh in because the "record is unclear, and the district court is best positioned to clarify on remand." *Id.* at n. 21.

The SEC argues that the Court should clarify the portion of the Remedies Judgment detailed above and state that its joint-ownership analysis was, in fact, an alternative holding.[1] Ms. Ahmed maintains that the Court cannot yet clarify the issue of joint ownership because the Second Circuit has not yet issued its mandate and formally remanded the case. (Ms. Ahmed's Response to Def.'s Mot. to Stay Liq. [Doc. # 2583] at 3-4.) The SEC disagrees,

---

[1] The Receiver takes no position with respect to the SEC's argument on this point. (*See* Receiver's Reply to Responses to its Stay Mot. at 6.)

arguing that the Court retains the jurisdiction to issue clarifications based on *Burger King Corp. v. Horn & Hardart Co.,* 893 F.2d 525, 527 (2d Cir. 1990), holding that a district court could issue an amended judgment to "clarify the court's intended disposition of the case" even after an initial notice of appeal had been filed. *Burger King Corp.,* however, is distinguishable; there, the Second Circuit had deemed the "initial judgment . . . not to be final because it did not dispose of Burger King's complaint" and thus considered the notice of appeal from the initial judgment premature, instead considering only the appeal from the amended judgment. The Court here is faced with a very different procedural posture; where the clarification in *Burger King Corp.* came *before* the Second Circuit's ruling, the SEC's motion comes *after* the Second Circuit has already issued an order vacating a portion of the very judgment the SEC asks for the Court to clarify.

When the Second Circuit wishes to allow the district court to clarify its prior judgment, it may "remand without vacatur in order to allow for amendment of the written judgment." *United States v. Santiago*, 384 F.3d 31, 37 (2d Cir. 2004). Here, however, the Second Circuit specifically vacated the Court's judgment as to any assets owned by the Relief Defendants in whole or in part aside from the three assets specified. *See Ahmed,* 72 F.4th at 410. Thus, the Court cannot merely "clarify" whether the language about joint ownership was an alternative holding because there is no affirmed judgment as to those assets to clarify; rather, at this point, any clarification would result in an amended judgment—and despite the SEC's arguments, the Court does not yet have the jurisdiction to issue an amended judgment because "jurisdiction follows the mandate." *United States v. Rivera*, 844 F.2d 916, 921 (2d Cir. 1988). While this rule is not absolute, it does not permit for rulings "on the merits of the dispute" or rulings that have the "potential to create confusion or waste of time as to any matter still under consideration at the Circuit Court." *In re Adler, Coleman Clearing Corp.*, 469 F. Supp. 2d 112, 116 n.2 (S.D.N.Y. 2007); *see also United States v. Yonkers Bd. of Educ.*, No. 80

CIV. 6761 LBS, 1999 WL 509524, at *2 (S.D.N.Y. July 19, 1999) ("the cardinal principal [of the mandate rule is] that a district court should not interfere to modify the substance of the matters presently before an appellate tribunal.")

Here, both Defendant and Relief Defendants have moved for an extension of time to move for panel or *en banc* rehearing of this case, which if granted, may impact the issue of the Relief Defendant jointly-held assets; even if re-hearing is not granted, the relief sought by the SEC goes to the very heart of one of the substantive issues that is currently before the Second Circuit—i.e., whether assets held jointly or in full by Relief Defendants may properly be used to satisfy the judgment against Defendant. Thus, the Court determines that it does not have the jurisdiction to issue the clarification that the SEC seeks.

**B.      Motions to Stay**

As an initial matter, Defendant Ahmed also argues that this Court cannot allow any liquidation to proceed until a formal mandate has been issued; however, the mandate rule "should not be applied mechanically" to stop *all* proceedings at the district court level, *Yonkers Bd. of Educ.*, 1999 WL 509524 at *2, but instead should be guided by concerns of judicial efficiency. A district court may take certain actions during the pendency of an appeal if it does so "(1) in a manner that does not impact the substance of the issues before the appellate court or (2) to preserve the status quo." *Id.* Thus, ordering a stay of certain assets while permitting the continuation of liquidation of other assets is fully within the scope of those limitations so long as it does not contradict the directives of the Second Circuit.

To evaluate whether a partial or full stay is appropriate at this stage, the Court must first determine whether further liquidation is required to satisfy the damages affirmed by the Second Circuit based on the amount of the affirmed judgment and the assets indisputably available to satisfy it, or whether as it stands, the amount of Receivership Assets liquidated thus far is likely to satisfy that amount, and further liquidation would be necessary only in

the event that the Court determines after addressing the remanded issues that Defendant is liable for additional damages, and that some of the assets liquidated thus far cannot be used to satisfy the judgment. The Second Circuit affirmed this Court's findings as to the amount of Defendant's initial disgorgement obligation, as well as the Court's decision to increase it based on the NDAA, the calculation of pre-judgment interest, and the civil penalty. Thus, the final judgment amount of $64,171,646.14 in disgorgement, plus $9,755,798.34 in prejudgment interest, and $21,000,000 in civil penalties, leaves the Court with $94,927,444.48 in affirmed damages against Defendant that neither side disputes for purposes of this motion.

However, the parties *do* dispute whether post-judgment interest on amounts other than the appreciation award[2]—the disgorgement, civil penalty, and prejudgment interest— still runs from the date that partially vacated orders were entered, or whether it has been vacated by the Second Circuit's order and should run from whenever this Court issues a second amended judgment. The Receiver takes the position that the total judgment amount affirmed by the Second Circuit as of July 21, 2023, is $103,380,535.06, which is the combined total of the Amended Judgment's disgorgement and prejudgment interest amounts, the Redetermined Judgment's disgorgement and prejudgment interest amounts; and post-judgment interest on the amounts in both judgments, excluding the appreciation award amounts vacated. (Receiver's Status Report [Doc. # 2554] at 3.) Mr. and Ms. Ahmed disagree, arguing that the Second Circuit affirmed only the $94.9 million figure because it "did not affirm post-judgment interest." (Ms. Ahmed's Response to Receiver's Stay Mot. at 7)

---

[2] The post-freeze appreciation, or "actual gains", is now subject to recalculation, and the Second Circuit's decision to vacate this Court's application of the nominee doctrine means that this Court will have to determine which Receivership assets are subject to disgorgement, and thus, the value of the Receivership Estate; in turn, that will require a recalculation of post-judgment interest on the appreciation award, if the Court chooses to impose one. On this much, the parties agree.

(emphasis omitted). Instead, Mr. and Ms. Ahmed both argue that the Court's prior liquidation orders are no longer valid in light of the Second Circuit's decision, and that the Court has to enter a revised judgment which will mark the moment judgment has been meaningfully ascertained for purposes of post-judgment interest calculation; additionally, they argue that because over $102 million has already been liquidated, no further liquidation can occur until it has been determined if, and how much, the Defendants' liability in addition to the $94.9 million will be.

Post-judgment interest "properly runs from the date of the entry of judgment." *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835, (1990). If a damages judgment is completely reversed or the judgment on damages are not supported by the evidence, then they have not been "ascertained" in "any meaningful way." *Id.* at 836. However, under Fed. R. App. P. 37(a), "[w]hen the [c]ourt [a]ffirms[,]", then "[u]nless the law provides otherwise, if a money judgment in a civil case is affirmed, whatever interest is allowed by law is payable from the date when the district court's judgment was entered." Fed. R. App. P. 37. Thus, because the Court's judgment was affirmed as to disgorgement, the civil penalty, and prejudgment interest, post-judgment interest—which is mandatory and set at a fixed rate by statute, *see Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) *and* 28 U.S.C. § 1961(a)— continues to accrue on all three amounts and began running on the date the Amended Judgment and Redetermined Judgment were issued. *See Vermont Microsystems, Inc. v. Autodesk, Inc.*, 138 F.3d 449, 453 (2d Cir. 1998) (ordering that post-judgment interest and costs would run on the affirmed portion of the judgment from the date of the judgment's entry.)

Defendant and Relief Defendants argue that the Court should infer from the Second Circuit's decision to dismiss their appeals of the Court's liquidation orders as moot that in fact, both orders are vacated in their entirety and thus no longer serve as meaningful

ascertainments of judgment for purposes of post-judgment interest. As both the SEC and Receiver maintain, this is not the case; the Second Circuit explicitly stated "vacatur of the actual-gains award and application of the nominee doctrine affects the *scope* of the district court's liquidation orders," *Ahmed,* 72 F.4th at 410-11 (emphasis added), not that it makes them a nullity.[3] Defendants also rely on the Second Circuit's footnote that Defendant Ahmed's appeal of the "approach" the Court took to "calculation of post-judgment interest" in the December 2, 2022 was dismissed as moot to suggest that the liquidation orders are fully invalidated, including the award of post-judgment interest even on the otherwise affirmed underlying judgments. *Id.* at n.11. However, the footnote reflects nothing more than the fact whether (and which) frozen assets and Receivership assets are included in the total post-judgment interest calculation will necessarily be re-decided as part of this Court's determination of the issues on remand. Finally, the motions for a stay of liquidation pending appeal were rendered moot because the appeal was no longer pending, having been decided by the Second Circuit—not because the judgments were completely invalidated.

Thus, the Court finds that the amount which has been affirmed by the Second Circuit is $103,380,535.06 as of July 21, 2022, with post-judgment interest continuing to accrue on disgorgement, the civil penalty, and prejudgment interest. When considering the $43 million that must be reserved for tax payments, that amount leaves a shortfall between the amount of the judgment and the amount of assets which have thus far been liquidated. Further, a significant amount of what has been liquidated thus far falls into the category of "assets titled to Relief Defendants" and "assets jointly titled to Defendant and Relief Defendants," meaning

---

[3] Ms. Ahmed demonstrates in her response to the SEC's proposed remand briefing schedule [Doc. # 2565] that she understands a "vacatur" can apply to certain issues but not others without rendering the entire judgment void. (*Id.* at 2) (arguing that "vacatur" means that "the Court's prior ruling as it stands *to those issues* vacated is not in effect, that it has been cancelled, or rendered void.") (emphasis added).

13

that if the Court ultimately determines that some of those assets do not fall within the scope of the nominee doctrine, they could be returned to Relief Defendants, and further assets from categories 1 and 2 would then require liquidation to satisfy the judgment. Thus, Receiver has demonstrated that there is good cause to continue liquidating some of the assets while staying the liquidation of others.

Of the assets in Categories 1 and 2, three assets in particular warrant further discussion. Mr. and Ms. Ahmed's request to stay liquidation of the MetLife life insurance policy is denied because the Second Circuit determined that the Court's nominee doctrine application as to this asset is sound, and thus they do not show a likelihood of success on the merits in their potential further appellate review.[4] Defendant also challenges the classification of two assets—the Genworth life insurance policy and the American General life insurance policy—as Defendant titled assets, claiming that they should instead be considered Relief Defendant titled assets because they are "not titled to, nor do they belong to Defendant"; although he is the insured, Defendant maintains that the policies are owned by an insurance trust of which Ms. Ahmed is the trustee, with Ms. Ahmed and the minor children as the beneficiaries. (Def.'s Mot. at 3-4.) Receiver does not object to staying the liquidation of those two policies pending further investigation of the beneficial ownership of

---

[4] The Court also rejects Mr. and Ms. Ahmed's request to stay liquidation of the life insurance policies because they argue that "Connecticut state law bars the use of a life insurance policy to satisfy a judgment creditor". If Mr. and Ms. Ahmed believe an exemption to liquidation under Connecticut state law applies, then they must follow the procedure set forth in Conn. Gen. Stat. § 52-361(d) to formally claim the exemption, which will also allow Receiver to respond regarding the applicability of the Connecticut state law exemption for life insurance policies, including whether the legislation applies retroactively, whether Defendant may avail himself of the provision as a fugitive, and whether "the purchase, sale, or transfer of the life insurance policy [was] made with the intent to defraud the creditor" such that the exemption would not apply.

the policies, (Receiver's Reply to Responses to its Mot. [Doc. # 2587] at 4), and so the Court grants Defendant's motion to stay liquidation of those two assets.

The Court thus GRANTS Receiver's motion for a partial stay of liquidation as to the assets identified as being in categories (3) and (4), finding that such a stay will prevent irreparable injury to the Relief Defendants through the liquidation of unique assets that have not yet been adjudicated as being subject to disgorgement. Defendant's motion for a stay is also GRANTED IN PART as to the Genworth and American General life insurance policies. However, because Defendant and Relief Defendants present no authority for the proposition that the Receiver may not continue liquidating assets that belong to Mr. Ahmed, whose disgorgement obligations have been affirmed, or that have been determined subject to disgorgement via the nominee doctrine by the Second Circuit, the Court DENIES Defendant's motion in all other respects.[5]

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 23rd day of August, 2023

---

[5] Ms. Ahmed's motion for leave to file sur-reply [Doc. # 2591] reiterates the same arguments made in her other responses or addresses issues that do not bear on the Court's decision, and is thus DENIED for lack of good cause.