UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, <br><br> *Plaintiff*, <br><br> *v.* <br><br> IFTIKAR AHMED, <br><br> *Defendant*, and <br><br> IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents, <br><br> *Relief Defendants*. | Civil No. 3:15cv675 (JBA) <br><br><br><br> August 23, 2023 |

**ORDER GRANTING RECEIVER'S SIXTEENTH MOTION FOR FEES AND GRANTING IN PART RECEIVER'S SEVENTEENTH MOTIONS FOR FEES**

Receiver Stephen Kindseth moves for payment of fees and expenses incurred on behalf of the Receivership Estate. (Sixteenth and Seventeenth Mots. for Fees [Docs. ## 2444, 2493].) Defendant opposes (Def.'s Opp'ns [Docs. ## 2452, 2501]), and Ms. Ahmed ([Docs. ## 2453, 2502]) and the remaining Relief Defendants ([Docs. ## 2454, 2503]) join those oppositions to the extent that it does not conflict with their pending motions before the

Court.[1] For the reasons that follow, the Receiver's Sixteenth and Seventeenth Motions for Fees are granted.

## I.    Background

The Court assumes the parties' familiarity with the facts and history of this case but will briefly summarize the background relevant to this motion. The Receiver was appointed on December 20, 2018. (Appointment Order [Doc # 1070].) The Appointment Order states that the Receiver and persons retained to assist in his administration of the Receivership Estate are "entitled to reasonable compensation and expense reimbursement from the Receivership Estate," subject to "prior approval of the Court" and according to predetermined hourly billing rates. (*Id.* at 16.) The Receiver "shall apply to the Court for compensation and expense reimbursement from the Receivership Estate" within forty-five days after the end of each calendar quarter. (*Id.*) All such fee applications are "interim," "subject to cost/benefit and final reviews at the close of the receivership," and subject to a holdback in the amount of 20% of the amount of fees and expenses for each application, but the "total amounts held back during the course of the receivership may be paid out at the discretion of the Court as part of the final fee application." (*Id.* at 15-16.) The Appointment Order sets out certain requirements for the content of each fee application. (*Id.* at 17.)

## II.    Discussion

The Receiver moves for the payment of fees for the following periods: 1) October 1, 2022 through December 31, 2022, (Sixteenth Mot. for Fees ("Sixteenth Mot.") [Doc. # 2444] at 2); and 2) January 1, 2023 through March 31, 2023, (Seventeenth Mot. for Fees ("Seventeenth Mot.") [Doc. # 2493] at 2). In his Sixteenth Motion for Fees, "[t]he Receiver and Z&Z [Zeisler & Zeisler] seek an allowance of $59,996.75 in compensation for services rendered during the Compensation Period on behalf of the Receivership Estate and

---

[1] The Receiver represents that the SEC does not object to the relief sought. (Sixteenth Mot. at 2, Seventeenth Mot. at 2.)

reimbursement of actual and necessary expenses in the amount of $1,335.88. Additionally, the Receiver seeks this Court's authority to pay V&L [Verdolino & Lowey, P.C.] $3,758.25 for services rendered to the Receivership Estate during the Compensation Period." (Sixteenth Mot. at 3.) In his Seventeenth Motion for Fees, "[t]he Receiver and Z&Z seek an allowance of $71,375.08 in compensation for services rendered during the Compensation Period on behalf of the Receivership Estate and reimbursement of actual and necessary expenses in the amount of $6,213.75. Additionally, the Receiver seeks this Court's authority to pay V&L $3,563.25 for services rendered to the Receivership Estate during the Compensation Period." (*Id.*) (Seventeenth Mot. at 3.)"

The motions "reflect the hours worked by the Receiver and staff at Z&Z and V&L at the hourly rates applicable at the time that they rendered their services, as modified by the significant discounts provided by the Receiver, Z&Z, and V&L." (Seventeenth Mot. at 3.)[2] Additionally, the Receiver states that the fee applications

> take into account all relevant circumstances and factors as set forth in the Connecticut Rules of Professional Conduct and the SEC Guidelines, including the nature of the services performed, the amount of time spent, the experience and ability of the professionals and paraprofessionals working on this engagement, the novelty and complexity of the specific issues involved, the time limitations imposed by the circumstances, and the responsibilities undertaken by the Receiver, Z&Z, and V&L pursuant to this Court's orders.

(*Id.* at 3.) The applications include narrative descriptions of the services provided in the time records and summaries of the Receiver's administration of the Receivership Estate. (*Id.* at 4.) The Receiver does not seek "reimbursement for secretarial, word processing, proofreading or document preparation expenses (other than by professionals or paraprofessionals), data processing and other staff services (exclusive of paraprofessional services), or clerical

---

[2] Where the Receiver's motions contain significant overlap in content, the Court cites only to the Seventeenth Motion for Fees.

overtime." (*Id.*) The fee applications reflect the public service discounts determined at the time of the Receiver's appointment, including a twenty-five percent discount to regularly applicable hourly rates for all legal professionals and paraprofessionals. (*Id.* at 4-5.) In accordance with the SEC Guidelines, the Receiver and Z&Z categorized fees incurred by certain "activity categories." (*Id.* at 6.) The Receiver provided a detailed description of the activities of the Receivership Estate during each billing period. (*Id.* at 13-25; Sixteenth Mot. at 13-25.)

Defendant's oppositions largely repeat his prior unsuccessful arguments[3], including Defendant's position that the Receiver's fees should be paid from within the Judgment. (Def.'s Opp'n to 17th Mot., at 7-9.) The Court, in previously addressing this argument (*see* [Doc. # 2028]), reserved a decision on this argument until after liquidation and continues to do so. The Court has already rejected the majority of Defendant's other arguments, most recently in its Ruling Granting Receiver's Fifteenth Motion for Fees [Doc. #2423].

However, Defendant's Seventeenth opposition does make three new arguments: first, that the Receiver's compensation should be offset by amounts paid for staging the Apartments (Def.'s Opp'n to Seventeenth Mot. at 6); second, that the Receiver should rent the Apartments on a month-to-month basis (*id.*); and third, that the Receiver should not be compensated for fees and expenses related to his attendance at oral argument in the Merits Appeal, (*id.* at 6-7).

The Receiver explains that he expended funds to stage the Apartments in accordance with this Court's Orders, directing him to "market the Apartments as customary for similar properties in New York City[.]" (Approved Apartment Sale Procedure, ¶ vi.b [Docs. # 2424-1, 2445].) While the sale of the Apartments was stayed by the Second Circuit [Doc. No. 2488], that does not change the fact that the Receiver's expenses were incurred consistent with this

---

[3] *See, e.g.*, Def.'s Opp'n to Receiver's Sixteenth Mot. at 1 ("The Defendant fully incorporates his prior oppositions.").

Court's orders prior to the Second Circuit's stay were proper and are deserving of reimbursement.

Defendant's position that the Receiver should rent the Apartments on a month-to-month basis has no bearing on the relief sought in these motions. Moreover, this Court already rejected Defendant's prior request that the Receiver rent the Apartments. (Order Denying Mot. to Rent Apartments, [Doc. # 1822].) The Receiver argues that nothing has changed that would justify now renting the Apartments, noting the significant cost expended in staging the Apartments, and that such staging remains in place pending the possible future decision by the Second Circuit to lift its stay. (Receivers' Reply for Seventeenth Mot. [Doc. # 2517] at 3.)[4] The Receiver also notes the significant costs and risks associated with renting to month-to-month tenants. (*Id.*) The Court again concludes that the Receiver's decision not to rent the Apartments is "based on his professional expertise to maximize value of the Estate[] . . . and is an appropriate and authorized exercise of the discretion granted to him by the Court." (Order Denying Mot. to Rent Apartments at 2.)

As to Defendant's argument that costs billed for the Receiver and his counsel to attend oral argument for the Merits Appeal at the Second Circuit were improper, the Receiver responds that he and his counsel "attended oral argument to answer any questions that the Second Circuit may have had regarding the Receivership Estate and Receivership Assets." (Receiver's Reply for Seventeenth Mot. at 4.) Defendant argues that the billing of 3.2 hours each for Receiver and his counsel described as "Attend 2d Cir oral argument" was improper, as Defendant represents that oral argument lasted well under an hour (Def.'s Opp'n to Seventeenth at 6-7). While the in-person attendance of the Receiver was reasonable under the circumstances, there is insufficient explanation of the amount of time billed as well as the

---

[4] While that stay by the Second Circuit has since been lifted, this Court recently issued a partial stay of liquidation that stays liquidation of the Apartments. (See Order Granting Receiver's Mot. for a Partial Stay [Doc. # 2593] at 15); *see also* Receiver's Mem. [Doc. # 2555-1] at 7-8 (including the Apartments among the assets for which he sought a stay).)

necessity for hotel expenses.  While the expenses incurred by the Receiver in attending oral argument may well be justified, the Receiver must provide a more fulsome justification for these expenses before a final decision as to those costs can be made.

### III.     Conclusion

For the foregoing reasons, the Receiver's Sixteenth Motion for Fees [Docs. # 2444] is GRANTED. The Receiver's Seventeenth Motion for Fees [Doc. # 2494] is GRANTED IN PART, with the exception of the $4,710.43 in fees and expenses associated with attendance at the Second Circuit argument, which will be considered after review of the Receiver's explanatory justification of those costs, which shall be filed by August 30, 2023.

IT IS SO ORDERED.



Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 23rd day of August, 2023