UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION<br><br>*Plaintiff*,<br><br>v.<br><br>IFTIKAR AHMED,<br><br>*Defendant*, and<br><br>IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents,<br><br>*Relief Defendants*. | **MEMORANDUM AND ORDER**<br><br>No. 3:15-CV-675 (VDO) |

### ORDER APPROVING RECEIVER'S PROPOSED
### SECOND INTERIM DISTRIBUTION PLAN

**VERNON D. OLIVER**, United States District Judge:

Before the Court is the Receiver's Proposed Second Interim Distribution Plan (the "Second Distribution Plan") (ECF No. 2965). For the reasons that follow, the Plan is **APPROVED**, and the Receiver may distribute funds pursuant to the Plan without further delay.

   **I.**   **BACKGROUND**

The Court assumes familiarity with this matter's extensive underlying procedural and factual history. For purposes of this order, the Court recounts the following: On November 27,

1

2024, the Court (J. Meyer) approved the Receiver's First Interim Distribution Plan (the "First Distribution Plan") and denied Relief Defendant Shalini Ahmed's contemporaneous motion to stay the distribution.[1] The First Distribution Plan concerned assets that the Court found "inarguably unavailable to satisfy the judgment against Mr. Ahmed" (the "Non-Remand Assets").[2] However, as to certain other assets (the "Remand Assets"), at the time, ownership was still disputed following a remand order issued by the Second Circuit in 2023.[3]

On March 31, 2025, the Court entered an Order Granting in Part and Denying in Part the SEC's Motion for Post-Remand Relief (the "Post-Remand Relief Order").[4] It subsequently issued a clarification to that order (the "Clarification").[5] Together, the Post-Remand Relief Order and Clarification addressed the proper ownership of the Remand Assets. Thus, following the issuance of and pursuant to these orders, the Receiver filed a proposed Second Distribution Plan.[6] Ms. Ahmed, in the meantime, appealed the Post-Remand Relief Order and Clarification in the Second Circuit Court of Appeals[7] and moved to stay the distribution in this Court.[8] The Court has denied her request for a stay, and her appeal remains pending.[9]

---

[1] *See* ECF No. 2882.
[2] *Id.* at 6.
[3] *Id.*; *see also United States Sec. & Exch. Comm'n v. Ahmed*, 72 F.4th 379 (2d Cir. 2023).
[4] *See* ECF No. 2941.
[5] *See* ECF No. 2950.
[6] *See* ECF No. 2965.
[7] Case No. 25-1410, United States Court of Appeals for the Second Circuit.
[8] *See* ECF No. 3029.
[9] *See* ECF No. 3175.

In approving the Second Distribution Plan, the Court has reviewed and considered all relevant briefing.[10] Unless noted otherwise, the Court incorporates by reference the definitions of terms set forth in the Receiver's proposed First Distribution Plan.[11]

## II.   DISCUSSION

### a. Proposed Distribution

The Second Distribution Plan proposes distributing a total of $24,597,133.70 to victims of Mr. Ahmed's fraud. These funds consist of (i) CRIS Account Principal, attributable to the Remand Assets, (ii) CRIS Account Accrued Interest, attributable to the Remand Assets; and (iii) Residual CRIS Account Interest, attributable to Non-Remand Assets.[12]

As in the First Distribution Plan, the Receiver proposes distributing the relevant funds based on each victim's proportional share of the Total Disgorgement Award and the Total Prejudgment Interest Award.[13] The Receiver proposes keeping this methodology though the Court has now awarded supplemental enrichment on remand.[14] The Court agrees; the previous CRIS Account transfers have not been treated as satisfying the supplemental enrichment award, and the Court sees no reason to treat them as such now.

Just as she did in response to the First Distribution Plan, Ms. Ahmed again opposes the distribution of CRIS Account Interest as part of the Second Distribution Plan. Just as the Court (J. Meyer) rejected this argument then, and for the exact same reasons, it does so again now.[15]

---

[10] *See* ECF No. 2965 (the Second Distribution Plan); ECF No. 3030 (Ms. Ahmed's Objection); and ECF No. 3038 (the Receiver's Reply).
[11] *See* ECF No. 2769.
[12] *See* ECF No. 2965 at 6–10.
[13] *Id.* at 9–10.
[14] *Id.* at 9.
[15] *See* ECF No. 2882 at 12 (holding that "Transfers to the CRIS account are applied to satisfy a portion of the judgment, and thus transfers to the CRIS account operate to cease the accrual of

b. **Recalculation of Judgment**

The Court next approves the Receiver's request to recalculate the judgment on two grounds.

First, based on the Court's holding that the Unavailable Assets cannot be used to satisfy the judgment, the Court finds that there has been a $1,682.24 decrease in the satisfied portion of the judgment and thus an increase in the amount of post-judgment interest accruing on the judgment.[16]

Second, the Court approves the Receiver's request to recalculate the judgment to reflect that the CRIS Account Transfers have proportionally satisfied only the Total Disgorgement Award and Total Prejudgment Interest Award, and *not* the Civil Penalty. Recalculation on this ground results in a $262,329.67 increase in the total judgment.[17] The Court is unpersuaded by Ms. Ahmed's argument that this recalculation is "procedurally improper" and "legally prejudicial"; the Receiver's recalculation proposal indeed "reflect[s] the reality of how the judgment is being paid."[18] Nor can the Court locate any prior orders constraining the Receiver's accounting methodology choices with respect to the judgment in this case.

---

post-judgment interest on whichever portion of the judgment those transfers are applied to satisfy. Accordingly, if the interest accrued on funds in the CRIS account were applied to the judgment, Mr. Ahmed's victims would not receive any interest for the period during which funds were in the CRIS account. In other words, Ms. Ahmed's proposal would double-count this interest by crediting it to the judgment but also denying Mr. Ahmed's victims any form of interest for the period during which funds were held in the CRIS account. Her proposal would amount to a windfall for Mr. Ahmed. I therefore agree with the Receiver and the SEC that interest that accrues on funds held in the CRIS account should be distributed among Mr. Ahmed's victims without being credited towards the judgment.").
[16] *See* ECF No. 2965 at 12–13.
[17] *See id.* at 13–15.
[18] ECF No. 3038 at 2–3.

Thus, under the approved recalculation, as of April 28, 2025, the total judgment stands at $117,740,383.05, $50,708,646.20 of which is treated as satisfied, and $67,031,736.85 of which remains unsatisfied.

As to Ms. Ahmed's argument that her Roth IRA account ending in x5070 is an asset properly on remand, that asset has now been released to Ms. Ahmed.[19] Thus, the Receiver is directed to recalculate the judgment taking the release of this asset into account, on or before **April 2, 2026**.

### c. Ms. Ahmed's Objections

The Court has reviewed Ms. Ahmed's additional objections and finds them unavailing. First, to the extent her objections incorporate by reference the arguments set forth in her Motion to Stay, that motion has now been denied.[20] Second, also for the reasons laid out in the Court's denial of the Motion to Stay, the Court again rejects Ms. Ahmed's contentions that she is a creditor of the Receivership estate; and that under 28 U.S.C. § 960(a), the Receivership Estate's tax obligation is a "statutory precondition to any distribution."[21] Finally, to the extent Ms. Ahmed's objections assert irreparable harm from approval of the Second Distribution Plan, that consideration was likewise addressed in the Court's order denying the Motion to Stay.[22] For the same reasons stated therein, the Court declines to stay or otherwise pause implementation of the Second Distribution Plan.

---

[19] *See* ECF No. 3136.
[20] *See* ECF No. 3175.
[21] ECF No. 3030 at 8; *see also* ECF No. 3175 at 7.
[22] *See* ECF No. 3175 at 5–6.

### III.    CONCLUSION

For the foregoing reasons, the Court **APPROVES** the Second Distribution Plan and the re-calculation of the judgment contained therein. The Court sets **April 9, 2026** as the distribution date for this plan (the "Distribution Date"). On or before **April 2, 2026**, the Receiver must file (1) an updated recalculation of the judgment, taking into account the release of the x5070 Fidelity Roth IRA account, and (2) the amount to be distributed to each victim broken down by principal and interest on the Distribution Date. On or before **May 8, 2026**, the Receiver shall file a status report updating the Court as to the status of distribution.

**SO ORDERED.**

Hartford, Connecticut
March 10, 2026

        /s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge