# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION<br><br>*Plaintiff*,<br><br>v.<br><br>IFTIKAR AHMED,<br><br>*Defendant*, and<br><br>IFTIKAR ALI AHMED SOLE PROP; I-CUBED DOMAINS, LLC; SHALINI AHMED; SHALINI AHMED 2014 GRANTOR RETAINED ANNUNITY TRUST; DIYA HOLDINGS LLC; DIYA REAL HOLDINGS, LLC; I.I. 1, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; I.I. 2, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents; and I.I. 3, a minor child, by and through his next friends IFTIKAR and SHALINI AHMED, his parents,<br><br>*Relief Defendants.* | No. 3:15-CV-675 (VDO) |

## ORDER HOLDING RELIEF DEFENDANT SHALINI AHMED IN CONTEMPT OF THE COURT AND IMPOSING SANCTIONS

Before the Court is the Receiver's Motion for Contempt and for Sanctions Against Relief Defendant Shalini Ahmed (the "Motion").[1] For the following reasons, the Motion is **GRANTED.**

---

[1] ECF No. 3086. The Motion was originally filed on an emergency basis in light of the—at the time—fast-approaching trial in related Superior Court proceedings. However, that trial was later continued to May 20, 2026. *See Ahmed v. Ahmed*, Docket No. FST-FA22-5026169-S (Conn. Sup. Ct.). The Court thus rules on the Motion in the ordinary course.

1

## I.     BACKGROUND

The Court assumes familiarity with this matter's extensive underlying procedural and factual history. For purposes of deciding this Motion, the Court recounts the following:

### a.   The Appointment and Freeze Orders

On August 12, 2015, the Court granted the United States Securities and Exchange Commission's (the "SEC") motion for a preliminary injunction and froze the Defendant's and Relief Defendants' assets (the "Freeze Order").[2] The Freeze Order states, in pertinent part:

> No person or entity, including the Defendant, Relief Defendants, or any creditor or claimant against the Defendant or any of the Relief Defendants, or any person acting on behalf of such creditor or claimant, shall take any action to interfere with the asset freeze, including, but not limited to, the filing of any lawsuits, liens, or encumbrances, or bankruptcy cases to impact the property and assets subject to this order; provided, however, that any party or non-party may seek leave from this order upon a proper showing.[3]

On September 6, 2018, the Court granted summary judgment in favor of the SEC.[4] On December 20, 2018, the District Court appointed Jed Horwitt to serve as the Receiver (the "Appointment Order").[5] Jed Horwitt was subsequently substituted by Stephen M. Kindseth as Receiver.[6] The Appointment Order states, in pertinent part:

> The Defendant [and] Relief Defendants… are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:
>
> a.   Interfere with the Receiver's efforts to take possession, custody or control of, or to manage, any assets of the Receivership Estate; such prohibited actions

---

[2] ECF No. 113.

[3] *Id.* at 21. The Court's citations refer to CM/ECF pagination, rather than to any internal document pagination.

[4] ECF No. 955

[5] ECF No. 1070.

[6] ECF No. 2100.

include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any property of the Receivership Estate;

b.  Hinder, obstruct or otherwise interfere with the Receiver in the performance of his duties; such prohibited actions include but are not limited to, concealing, destroying or altering records or information;

c.  Except with respect to authorized expenditures, dissipate or otherwise diminish the value of any property of the Receivership Estate; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning or in any way conveying any property of the Receivership Estate, enforcing judgments, assessments or claims against the property of the Receivership Estate, attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement which affects the Receivership Estate; or,

d.  Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estate.[7]

The Appointment Order also stays "[a]ll civil legal proceedings of any nature, including, but not limited to… actions of any nature… (b) to obtain possession of property of the Receivership Estate, wherever located…."[8]

### b.  Dissolution Proceeding and Original Dissolution Agreement

On February 284, 2022, Ms. Ahmed filed a notice (the "Divorce Notice") "regarding her intent to commence dissolution of marriage proceedings from the Defendant."[9] Ms. Ahmed stated that she did not "construe the Court's [Freeze Order and Appointment Order] to prevent her from initiating dissolution of marriage proceedings."[10] On March 8, 2022, Ms. Ahmed

---

[7] ECF No. 1070 at 12–13.

[8] *Id.* at 13 ¶ 22.

[9] ECF No. 2195 at 1.

[10] *Id.* at 1–2.

commenced a dissolution of marriage proceeding against the Defendant, *Ahmed v. Ahmed*, Docket No. FST-FA22-5026169-S (the "Dissolution Proceeding"), in Connecticut Superior Court (the "Superior Court"). Two days later, on March 10, 2022, counsel to the Receiver emailed Ms. Ahmed to confirm that she "will not be utilizing the [Dissolution Proceeding] as a vehicle to disturb the asset freeze and/or obtain possession of any Receivership Assets" and stating that to do so would "[o]bviously… be a violation of the [Appointment Order]."[11] On March 15, 2022, after not having received a response from Ms. Ahmed, counsel to the Receiver sent a second correspondence.[12] Counsel to the Receiver never received a response from Ms. Ahmed.

On March 21, 2022, the Receiver responded to the Divorce Notice (the "Response to Divorce Notice") and indicated that "neither the commencement of the Dissolution Proceeding nor the [Federal Domestic Relations] Abstention Doctrine referenced by Ms. Ahmed in the [Divorce] Notice impair this Court's prior or future determination with respect to the Receivership Assets or the Receiver's ability to carry out this Court's orders, including the Liquidation Order."[13]. This representation was made *prior* to the Ahmeds' conduct that later became the subject of the initial set of contempt proceedings in this matter and *after* the Receiver's counsel made clear to Ms. Ahmed that using the Dissolution Proceeding to disturb the asset freeze and/or obtain possession of any Receivership Assets would be a violation of this Court's orders.

---

[11] ECF No. 2524-1 at 2.

[12] *Id.*

[13] ECF No. 2217 at 3.

On April 28, 2022, Ms. Ahmed filed a Dissolution of Marriage Agreement (the "Original Dissolution Agreement") in the Dissolution Proceeding on behalf of herself and Mr. Ahmed.[14] The Original Dissolution Agreement required Mr. Ahmed to immediately pay Ms. Ahmed a lump sum of $87.7 million for alimony and child support as of April 28, 2022.[15] Ms. Ahmed and the Defendant represented that they arrived at this $87.7 million figure by adding up certain supposed "alimony, maintenance, and support" expenses.[16] The Original Dissolution Agreement also made representations concerning the ownership of certain assets.[17] Additionally, the Original Dissolution Agreement contained provisions concerning the division and assignment of certain assets.[18] On the same date Ms. Ahmed filed the Original Dissolution Agreement, she filed on behalf of herself and the Defendant in the Dissolution Proceeding a Request for Approval of Final Agreement without Court Appearance (the "Request for Approval") and Motion to Waive Statutory Time Period By Agreement of the Parties Divorce or Legal Separation (the "Motion to Waive").[19]

While Ms. Ahmed informed this Court and the Receiver of the Dissolution Proceeding, she never informed the Court or the Receiver of the Original Dissolution Agreement. The

---

[14] *See generally* ECF No. 2248-1.

[15] *Id.* at 4.

[16] *Id.* at 4–6.

[17] *See e.g.*, *id.* at 6 ("[a]ll items received as wedding gifts and all jewelry in safe deposit boxes, etc. and all handbags belong solely to Ms. Ahmed in recognition that these are personal belongings solely of Ms. Ahmed").

[18] *See e.g.*, *id.* at 11 ("The Parties agree that title to property shall remain as on 05 May 2015 and recognize title as of that date, regardless of any subsequent transfer of any asset(s) by any Receiver on or after 06 May 2015.").

[19] *See* ECF Nos. 2524-2, 2524-3; *see also Ahmed v. Ahmed*, Docket No. FST-FA22-5026169-S, Dkts. 116, 118.

Receiver only learned of the Agreement on May 16, 2022, when he received a copy of the Original Dissolution Agreement from counsel to Oak Management Corporation. Immediately thereafter, the Receiver began to evaluate the extent to which the Original Dissolution Agreement implicated the Receivership Assets and his rights and obligations under the Appointment Order.[20]

On May 18, 2022, pursuant to the Appointment Order, which requires the Receiver to notify this Court "of any failure or apparent failure of any person or entity to comply in anyway with the terms of [the Appointment] Order," the Receiver filed the Notice Regarding Defendants' Apparent Failure to Comply with the Appointment Order (the "Apparent Failure Notice") to alert the Court that, *inter alia*, the Agreement "appears to be the first step of an attempt to 'interfere with the Receiver's efforts to… manage… any assets of the Receivership Estate' and amounts to '[h]inder[ing], obstruct[ing], or otherwise interfer[ing] with the Receiver in the performance of his duties.'"[21] The Receiver stated: "[T]he inherent and unavoidable implication of creating the $87.7 million obligation due to Ms. Ahmed by the Defendant purportedly on account of alimony and child support is to adversely impact Receivership Assets and impede the fulfillment of the Receiver's duties and other objectives of this proceeding."[22] That same day, the Receiver filed an appearance in the Dissolution Proceeding and provided the Superior Court with a copy of the Apparent Failure Notice.[23]

---

[20] ECF No. 3086 at 5.

[21] ECF No. 2248 at 7 (quoting ECF No. 1070 at 12).

[22] *Id.* at 8.

[23] *Ahmed v. Ahmed*, Docket No. FST-FA22-5026169-S, Dkts. 121, 122.

On May 18, 2022 the Receiver appeared in the Dissolution Proceeding and raised certain issues related to this action and his control over the Receivership Estate, to ensure that the Superior Court was fully apprised of the nature and scope of this Court's orders.[24]

On June 10, 2022, in furtherance of his efforts to protect the assets in the Receivership Estate, the Receiver moved to intervene (the "Motion to Intervene") in the Dissolution Proceeding.[25] In the Motion to Intervene, the Receiver raised various concerns, including that Ms. Ahmed and the Defendant were attempting to create an argument of competing jurisdiction between this Court and the Superior Court over the same property—an argument which could then be used to impair the Receiver's management of the Receivership Estate.[26] Prior to filing the Motion to Intervene, the Receiver "contacted the Defendant and Ms. Ahmed multiple times regarding a possible resolution to the Receiver's concerns about the… [Original Dissolution] Agreement," but both "refused to substantively engage with the Receiver in response to his concerns…."[27]

On July 7, 2022, Ms. Ahmed, on behalf of herself and the Defendant, filed a caseflow request (the "Caseflow Request") in the Dissolution Proceeding stating that she and the Defendant "are in agreement on all issues and have submitted a final dissolution of marriage agreement… and proposed orders" and requested "entry of the [Original Dissolution] Agreement as judgment."[28] The Receiver immediately objected, arguing that to enter "the

---

[24] *Id.*

[25] *See* ECF No. 2266-1.

[26] *Id.* at 13–17.

[27] ECF No. 2266 at 3.

[28] ECF No. 2524-4 at 2.

proposed [Original Dissolution] Agreement as judgment… at this time… eliminates the Receiver's ability to be heard on the important issues relating to the assets worth millions of dollars that the District Court instructed the Receiver to preserve and protect."[29] The Superior Court denied the Caseflow Request. That same day, the Receiver filed a Supplemental Notice Regarding Defendants' Apparent Failure to Comply with the Appointment Order, outlining the Receiver's efforts to intervene in the Dissolution Proceeding and Ms. Ahmed's continued efforts to seek approval of the Original Dissolution Agreement.[30]

On July 22, 2022, pursuant to the Liquidation Order, the Receiver filed his Phase 1 Report and Motion for Orders Necessary to Accomplish Phase 2 of the Liquidation Plan (the "Phase 1 Report"), which outlined his initial liquidation of certain Non-Unique Assets and to propose plans for further liquidation of additional Unique Assets, to the extent necessary.[31] On September 21, 2022, both Ms. Ahmed and the Defendant filed responses to the Phase 1 Report.[32] In their respective oppositions, the Ahmeds repeatedly argued that the Dissolution Agreement precluded this Court and the Receiver from proceeding with the liquidation of certain assets of the Receivership Estate.[33]

### c.  First Contempt Proceeding, Relief Denial Order, and Appeal

On November 15, 2022, the SEC moved for an order to show cause why the Defendant and Ms. Ahmed should not be held in civil contempt (the "Motion for Order to Show Cause")

---

[29] ECF No. 2524-5 at 3.

[30] ECF No. 2266.

[31] ECF No. 2272.

[32] ECF Nos. 2345, 2346.

[33] ECF No. 2345 at 15–16, 18, 26, 30, 60, 63; ECF No. 2346 at 4, 5, 7–8, 9, 10, 11, 13, 14, 17, 36, 57.

"for their ongoing efforts to have another court enter a dissolution agreement related to their purported divorce that, by their own admission, has assigned and conveyed frozen assets and is interfering with the Receiver's ability to liquidate assets frozen by this Court as well as the exclusive jurisdiction of this Court over those assets."[34] On December 6, 2022, the Receiver responded to and joined the Motion for Order for Show Cause.[35] On December 13, 2022, Ms. Ahmed filed her memoranda in opposition to the Motion for Order to Show Cause and the Receiver's response.[36] That same day, the Defendant filed his opposition to the Motion for Order to Show Cause.[37] On April 13, 2023, this Court granted the Motion for Order to Show Cause (the "Show Cause Order").[38]

On April 24, 2023, the Superior Court issued its Memorandum of Decision granting the Motion to Intervene, holding that "the [R]eceiver's interest is of a direct and immediate character, and that the disposition of this litigation and the effect of its judgment will impair the [R]eceiver's interest without his involvement."[39] The Superior Court further stated that "the pleadings establish the [R]eceiver's authority, as well as the District Court's exclusive jurisdiction, over the property at issue in this marital dissolution action."[40]

On June 7, 2023, Ms. Ahmed filed an Addendum to Dissolution of Marriage Agreement (the "Addendum," and the Original Dissolution Agreement as amended by the Addendum, the

---

[34] ECF No. 2379 at 1.

[35] ECF No. 2398.

[36] ECF Nos. 2408, 2409.

[37] ECF No. 2410.

[38] ECF No. 2471.

[39] ECF No. 2498-2 at 25.

[40] *Id.* at 26–27.

"Dissolution Agreement") and a Motion for Entry of the Amended Dissolution Agreement as Judgment (the "Motion for Entry of Dissolution Agreement").[41] In the Motion for Entry of Dissolution Agreement, Ms. Ahmed "request[ed] the [Superior] Court expeditiously enter the Amended Dissolution Agreement as judgment."[42] The only substantive change from the Original Dissolution Agreement is that Mr. Ahmed's purported alimony and child support obligation is reduced from $87,700,000 to $36,370,510.

On June 20, 2023, the Ahmeds filed their respective responses to the Show Cause Order.[43] On June 27, 2023, the SEC and the Receiver responded to Ms. Ahmed's Show Cause Order Response.[44]

"[O]n July 5, 2023, two days before the show cause hearing commenced, Ms. Ahmed notified the Court, the SEC and the Receiver that she had moved to withdraw her request to enter the dissolution agreement…."[45] "The motion was for withdrawal 'without prejudice.'"[46]

The Court nevertheless proceeded with the hearing on the Order to Show Cause (the "Show Cause Hearing"). During the SEC's examination of Ms. Ahmed, the Court inquired into Ms. Ahmed's intent:

> THE COURT: I don't think there's any claim anywhere that the purpose of the receiver's intervention here was to prevent a divorce. It was to prevent a dissolution agreement in connection with a divorce that left assets unprotected. The agreement specifically references assets which you have clarified were those that were frozen, that is there were none that were from the outside. So

---

[41] ECF Nos. 2510-1, 2524-7.

[42] ECF No. 2524-7 at 3.

[43] ECF Nos. 2515, 2516.

[44] ECF Nos. 2523, 2524.

[45] ECF No. 2564 (the "Contempt Order") at 6.

[46] *Id.*

let's proceed with that clarification and understanding how this dissolution agreement only applying to assets that were frozen wouldn't impact the freeze order. Can you answer that?

[MS. AHMED]: Yes, Your Honor. So the freeze order, I don't – let me see here. I think the freeze order basically said that you couldn't enforce anything against these assets. So the agreement referred to the frozen assets as a general judgment with the intention that that would have been brought to the Court for any enforcement. So –

THE COURT: I'm sorry. Any enforcement of what?

[MS. AHMED]: Of a judgment. It could have been brought to the Court –

THE COURT: The [Commission's] judgment is already in place. The assets to satisfy that judgment have been frozen. They are being liquidated. Where's the gap?

[MS. AHMED]: So, Your Honor, the dissolution agreement or whatever judgment is entered in the divorce court, my intention was to bring whatever judgment was there to this court for enforcement or leave to enforce against the assets because there are no other assets that the agreement could have referred to. There are no other assets. The Court has frozen all the assets. And so the asset freeze references not taking any liens or not encumbering or seeking to enforce against the assets, and so it was a general judgment of child support and alimony that would have been brought to this Court for any enforcement.

THE COURT: To the extent there has been quite clearly in prior pleadings and orders an anticipated shortfall of those frozen assets to satisfy the judgment that has now been affirmed by the Second Circuit, what would you be seeking to enforce? What would you be seeking to enforce against?

[MS. AHMED]: Your Honor, my understanding is that the SEC is a general unsecured creditor by Second Circuit law.

THE COURT: What does that have to do with my question? What were you seeking to enforce if, in fact, the frozen assets are to satisfy the confirmed judgment and there won't be other money left over?

[MS. AHMED]: Your Honor, I would have asked Your Honor to consider the priority status that has been put into place by Congress.

THE COURT: What do you mean by "priority status"? You have frozen assets, frozen because they have been adjudicated to be the proceeds of [a] fraudulent undertaking. This is apart from the issues that we will discuss in just a moment

11

of the nominal ownership. The proceeds are those that will satisfy the judgment. There's no priority or creditor status with respect to those assets satisfying the judgment. That's what I'm not understanding about why you say that you would have asked the Court to consider the priority status that has been put in place by Congress.[47]

On July 17, 2023, the Receiver, Ms. Ahmed, and the Commission filed post-hearing briefs concerning the Order to Show Cause.[48]

On August 4, 2023, the Court (Arterton, J.) issued the Contempt Order. The Court stated that "it is evident that prior to withdrawing the motion to enter the [D]issolution [A]greement, the Ahmeds were embarked on a scheme in connection with their divorce that would likely violate the Court's orders if it came to fruition."[49] Ultimately, the Court ruled that "regardless of the Ahmeds' motives, the motion to enter the [D]issolution [A]greement has been voluntarily withdrawn, and so the Court declines to exercise its contempt power…."[50] However, the Court further stated:

> Ms. Ahmed's motion to withdraw the Dissolution Agreement was made "without prejudice" … and the Court warns that any effort by Mr. or Ms. Ahmed to revive the [D]issolution [A]greement as written or enter a similar dissolution agreement that violates the Court's Orders will face the possibility of contempt proceedings and remedies that are both coercive and compensatory in nature.[51]

On October 20, 2023, Ms. Ahmed moved for relief, specifically seeking permission to continue her efforts to have the Dissolution Agreement entered as a judgment in the Dissolution Proceeding and to enforce that judgment against the assets of Receivership Estate

---

[47] ECF No. 2651-1 at 95:15–98:8.

[48] ECF Nos. 2545, 2546, 2547.

[49] ECF No. 2564 at 11.

[50] *Id*. at 13–14.

[51] *Id*. at 14 n.7.

(the "Motion for Relief").[52] Both the Receiver and the SEC opposed the Motion for Relief.[53] The Receiver argued that the Dissolution Agreement threatens the security of the SEC's judgment and interferes with this Court's exclusive jurisdiction over the Receivership Estate.[54] The SEC argued that the Motion for Relief was an improper motion for reconsideration and that the Motion for Relief was inconsistent with the purpose of this Court's orders establishing the judgment and protecting the assets of the Receivership Estate.[55] On December 1, 2023, the Court (Meyer, J.) held a hearing on the Motion for Relief.[56]

On December 20, 2023, the Court (Meyer, J.) issued the Relief Denial Order, stating:

> The Court DENIES without prejudice the motion for substantially the reasons set forth in the objections stated by the SEC and the Receiver. The Court concludes that the relief requested would contravene the Court's authority over frozen assets. This order is without prejudice to the right of the Ahmeds to participate in divorce proceedings that do not jeopardize the funds available for restitution to victims of Mr. Ahmed's fraud or to present a proposed order as suggested by the SEC. It is so ordered.[57]

Ms. Ahmed appealed the Relief Denial Order.[58] On November 17, 2025, the Second Circuit affirmed the Relief Denial Order, finding this Court (J. Meyer) "did not abuse its discretion in denying [Ms.] Ahmed's motion for divorce-related relief" and stating, in relevant part:

> [Ms.] Ahmed's arguments challenging [the Relief Denial Order] lack merit. To the extent [Ms.] Ahmed cites *Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d

---

[52] ECF No. 2637 at 1.

[53] ECF Nos. 2651, 2652.

[54] ECF No. 2561 at 10–15.

[55] ECF. No. 2652 at 14–18.

[56] ECF No. 2682.

[57] ECF No. 2711.

[58] ECF No. 2738.

Cir. 1990) (per curiam), and *Deem v. DiMella-Deem*, 941 F.3d 618, 621 (2d Cir. 2019), which address the domestic relations exception to federal subject matter jurisdiction and the domestic relations abstention doctrine, such reliance is misplaced. She argues that the district court lacked jurisdiction to decide the Divorce Order, because "divorce, alimony, child support and maintenance, and child custody[] are . . . issues within the exclusive domain of the state courts." Appellant's Br. at 30. Moreover, she contends that, even if the district court had jurisdiction, it should have abstained, "in view of the greater interest and expertise of state courts in this field." *Id.* (quoting *Am. Airlines, Inc.*, 905 F.2d at 14). However, Ahmed is incorrect that either the domestic relations exception or the domestic relations abstention doctrine applies in these circumstances. The domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). But the domestic relations exception does not apply where, as here, the issue is before the court on federal question jurisdiction for violations of securities laws. *See Deem*, 941 F.3d at 623 ("[T]he domestic relations exception clearly does not apply to this case because it is before this Court on federal question jurisdiction, not diversity." (internal quotation marks and citation omitted)).

Ahmed's argument for abstention fails for similar reasons. Under the domestic relations abstention doctrine, "even if subject matter jurisdiction lies over a particular matrimonial action, federal courts may properly abstain . . . in view of the greater interest and expertise of state courts." *Deem*, 941 F.3d at 621 (internal citation omitted). But there was no reason for the district court to abstain here, as the Divorce Order merely prevented the execution of an agreement that would allocate assets currently within the exclusive control of a receiver. *See SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986) ("A district judge simply cannot effectively and successfully supervise a receivership and protect the interests of its beneficiaries absent broad discretionary power."). Thus, as its clear language states, the Divorce Order did not "prejudice [] the right of the Ahmeds to participate in divorce proceedings."[59]

### d. Subsequent Developments in Dissolution Proceeding

On January 12, 2024, the Receiver filed in the Dissolution Proceeding his Notice of District Court Order Denying Ms. Ahmed's Motion for Relief Related to the Divorce Proceeding, informing the Superior Court of the Relief Denial Order.[60] For months thereafter,

---

[59] ECF No. 3113 at 8–10.

[60] *Ahmed v. Ahmed*, Docket No. FST-FA22-5026169-S, Dkt. 207.

14

the Dissolution Proceeding remained on a status conference schedule so that Superior Court could remain appraised of any changes to Ms. Ahmed's authority to pursue the Dissolution Agreement (or similar agreement) in the Dissolution Proceeding. On June 13, 2025, the Superior Court scheduled a trial in the Dissolution Proceeding for August 5, 2025.[61] Eventually, the trial was continued to October 28–29, 2025.[62]

On October 21, 2025, Ms. Ahmed filed in the Dissolution Proceeding her pre-trial compliance ("Ms. Ahmed's Trial Compliance").[63] Therein, Ms. Ahmed requested that the Superior Court enter the proposed order attached to Ms. Ahmed's Trial Compliance as Exhibit A (the "Proposed Order") and grant the Motion for Entry of Amended Dissolution Agreement.[64] This is the same motion that Ms. Ahmed withdrew without prejudice two days prior to the Show Cause Hearing, the withdrawal of which was the Court's (Arterton, J.) basis for not finding Ms. Ahmed in contempt. The Proposed Order states that it is "intended to supplement, and shall be read in conjunction with, Section III (Property Division and Assignment) of the Dissolution Agreement by addressing additional property and claim allocations not previously detailed therein."[65]

Also on October 21, 2025, Ms. Ahmed filed in the Dissolution Proceeding a motion for a protective order (the "Motion for Protective Order"), seeking to preclude the Receiver "from reproducing, disseminating, or publicly filing the parties' dissolution pleadings, filing[s].

---

[61] *Id.*, Dkt. 219.

[62] *Id.*, Dkt. 221.

[63] ECF No. 3086-1 at 2–19.

[64] *Id.* at 6.

[65] *Id.* at 9.

exhibits or orders outside [the Superior] Court without prior leave of the [Superior] Court."[66] In particular, Ms. Ahmed requests that the Superior Court "[d]irect the Receiver and his counsel to cease public filing or dissemination of any Connecticut family-court documents in the SEC action or elsewhere."[67]

Upon discovery of the filing of Ms. Ahmed's Trial Compliance and the Proposed Order therein, the Receiver filed the instant Motion. The Receiver alleges, *inter alia*, that the Proposed Order fails to cure the previously identified violations set forth in the Dissolution Agreement. Throughout the Proposed Order, according to the Receiver, "Ms. Ahmed purportedly seeks the Superior Court's distribution or assignment of allegedly marital property interests not in the Receivership Estate."[68] But "[t]o the contrary," the Receiver states, "numerous assets Ms. Ahmed asserts are not part of the Receivership Estate, in fact constitute part of the Receivership Estate or otherwise adversely impact the Receiver's ability to fulfill his obligations under the Appointment Order, including the following:

- The Proposed Order states that Mr. Ahmed's "tax-loss carryforwards and related tax attributes are awarded exclusively to Ms. Ahmed."[69]

- The Proposed Order defines the Receivership Estate's interest in Oak Management Corporation ("OMC") as "Class B shares" and stating that "should any court or tribunal determine… that the conversion of such shares from Class A to Class B was improper, invalid, or unenforceable, and that the shares (or any portion thereof) should be recharacterized, re-valued, or otherwise restored to a higher value, Ms. Ahmed shall be entitled to 100 percent (100%) of any incremental value, recovery, or proceeds exceeding the current value of the Class B shares as they presently standing the Receivership Estate and as value stated by the

---

[66] ECF No. 3086-2 at 2.

[67] *Id*. at 5.

[68] ECF No. 3086 at 13 (quoting ECF No. 3086-2).

[69] ECF No. 3086-1 at 11.

Receiver in his filing in *SEC v. Ahmed*, No. 3:15-cv-675 (D. Conn.), Dkt. 3056."[70]

- The Proposed Order states that "[a]ny and all membership interests in Oak Associates X, XI, XII, XIII, X-A, XI-A, XII-A, XIII-A seized, allegedly forfeited or converted in May 2015."[71]

- The Proposed Order awards Ms. Ahmed the right to pursue claims in the action *Ahmed v. Oak Management Corporation, et al*, Docket No. FST-CV-5023148-S ("*Ahmed v. OMC*"), which the Receiver informed the Court violates the Appointment Order to the extent Ms. Ahmed seeks to litigate issues related to the Receivership Estate's interest in OMC and, in turn, argues that the Receiver cannot liquidate such interest until that litigation concludes.[72]

- The Proposed Order protects Ms. Ahmed from Receivership claims and determining what assets are not part of the Receivership Estate.[73]

- The Proposed Order states that "[n]othing herein shall be deemed to extend or concede jurisdiction to the federal receivership over assets not explicitly included in the Receivership Estate."[74]

Based on the above, the Receiver moved for a finding of civil contempt against Ms. Ahmed, compensatory sanctions to be paid by her, along with and an order compelling Ms. Ahmed to comply with this Court's orders.

Shortly after the Receiver filed the Motion, the trial in the Dissolution Proceeding was continued to May 20, 2026, obviating a need to handle the Motion on an emergency basis. On December 5, 2025, Ms. Ahmed filed her Objection to the Motion.[75] The Receiver filed his

---

[70] *Id.* at 12.

[71] *Id.*

[72] *Id*. at 14.

[73] *Id*. at 17.

[74] *Id.* at 18.

[75] ECF No. 3129.

reply on December 19, 2025.[76] On December 22, 2025, Ms. Ahmed filed a Motion for Leave to file a Sur-Reply (the "Sur-Reply Motion"), along with the proposed Sur-Reply.[77]

## II.    LEGAL STANDARD

"To establish contempt, 'a movant must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.'" *Perez v. Danbury Hosp.*, 347 F.3d 419, 423–24 (2d Cir. 2003) (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)).

## III.    DISCUSSION

### a.  Clear and Unambiguous Orders

"A clear and unambiguous order is one that leaves 'no uncertainty in the minds of those to whom it is addressed….'" *King*, 65 F.3d at 1058 (quoting *Hess v. N.J. Transit Rails Operations, Inc.*, 846 F.2d 114, 116 (2d Cir. 1988)). The person to whom it is addressed "'must be able to ascertain from the four corners of the order precisely what acts are forbidden.'" *Id.* (quoting *Drywall Tapers, Loc. 1974 v. Loc. 530, Operative Plasterers Int'l Ass'n*, 889 F.2d 389, 395 (2d Cir. 1989), *cert. denied*, 494 U.S. 1030 (1990)). Prior warnings by a court regarding the consequences for the party's failure to comply with the order support a finding

---

[76] ECF No. 3141.

[77] ECF No. 3145. The Court is not entirely persuaded that the Sur-Reply Motion satisfies the standard for permitting a sur-reply under District of Connecticut Local Rule 7(d), which requires a finding of good cause. However, given that the underlying matter concerns a motion for contempt, that the Court ultimately finds contempt and imposes sanctions, and in light of Ms. Ahmed's *pro se* status, the Court, out of an abundance of caution, **grants** the Sur-Reply Motion and considers the Sur-Reply as part of the briefing on the Motion in issuing the instant order.

that an order is clear and unambiguous. *See e.g.*, *Ferrara v. Metro D Excavation & Found., Inc.*, No. 10-CV-4215, 2012 WL 6962214, at *2–3 (E.D.N.Y. Nov. 30, 2012).

The relevant orders underlying this Motion could not be more clear and unambiguous. This is exacerbated by the fact that this is the *second* set of contempt proceedings concerning the Dissolution Agreement. As the Receiver correctly points out, during the first set of proceedings, both the Freeze Order and the Appointment Order were the subject of the Show Cause Order and the Contempt Order. The Court (Arterton, J.) previously found that that the Freeze Order and Appointment Order "unambiguously prohibited attempts to interfere and/or change ownership of assets in the Receivership Estate and interfere with the Court's jurisdiction over the Receivership Estate."[78] The Court (Arterton, J.) further warned "that any effort by Mr. or Ms. Ahmed to revive the [D]issolution Agreement as written or enter a similar dissolution agreement that violates the Court's Orders will face the possibility of contempt proceeding and remedies that are both coercive and compensatory in nature."[79]

But the Court's guidance to Ms. Ahmed did not end there. When Ms. Ahmed sought to, in effect, challenge the Contempt Order by again asking the Court (Meyer, J.) for relief, the Court again spelled out precisely what Ms. Ahmed may and may not do. Indeed, this Court denied her request for permission to seek approval of the Dissolution Agreement by the Superior Court while permitting her either (a) "to participate in divorce proceedings that do not jeopardize the funds available for restitution to victim's of Mr. Ahmed's fraud or" (b) "to

---

[78] ECF No. 2564 at 11 (citing ECF No. 113 at 21; ECF No. 1070 at 12–13).

[79] *Id.* at 14 n.7

present a proposed order as suggested by the SEC."[80] In other words, Ms. Ahmed knew she needed relief from this Court, asked for that relief, the Court denied it, and it then expressly spelled out the limits of what Ms. Ahmed could do. Thus, there can now be no reasonable dispute as to the Relief Denial Order's clarity.

Ms. Ahmed's arguments to the contrary are unavailing. Her primary argument is that the Relief Denial Order "expressly authorized" her conduct because—despite denying Ms. Ahmed leave to have the Dissolution Agreement entered as a judgment and enforced against the Receivership Estate—the Relief Denial Order permitted Ms. Ahmed to present a proposed order for consideration. And this proposed order, per Ms. Ahmed's reading of the Relief Denial Order, could be submitted to the Superior Court, thus creating an ambiguity she attempts to rely on here.

Not so. The transcript of the hearing that resulted in the Relief Denial Order is absolutely, crystal-clear, that both the Commission and the Receiver suggested that the Court deny the Motion for Relief without prejudice and allow Ms. Ahmed to propose an order to *this* Court to ensure that such order, if entered in Superior Court, would not adversely impact the Receivership.[81] Ms. Ahmed was present at and participated in that hearing. Her attempt now to try to characterize the Relief Denial Order as permitting the presentment of a proposed order

---

[80] *See* ECF No. 2711.

[81] ECF No. 2697 at 101:16–102:10; 106:10–106:15 (Receiver: "[W]e suggest that you deny without prejudice so that if *she re-moves for relief from Your Honor*, she attach whatever agreement that she is going to try to enter as an order.") (emphasis added).

20

in Superior Court simply cannot be squared with the words uttered at the hearing on the Motion for Relief.[82]

Nor would the "ambiguity" Ms. Ahmed claims to exist make any logical sense. The very crux of the first set of contempt proceedings and the associated hearing on the Motion for Relief had to do with the fact that Ms. Ahmed was attempting to circumvent this Court's orders by seeking to have the Dissolution Agreement entered in Superior Court. Permitting her to then submit the Dissolution Agreement (or a version thereof) to the Superior Court, while simultaneously denying Ms. Ahmed leave to enter the Dissolution Agreement as a judgment and enforce it in this Court against the Receivership Estate assets, is an untenable reading of the Relief Denial Order. The Court thus reaffirms that the Contempt Order and the Relief Denial Order were clear and unambiguous.

### b.  Clear and Convincing Proof of Noncompliance

"In the context of civil contempt, the clear and convincing standard requires a quantum of proof adequate to demonstrate a 'reasonable certainty' that a violation occurred." *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002) (cleaned up). A "contempt order is inappropriate if there is a fair ground of doubt as to the wrongfulness of the alleged contemnor's conduct." *Next Invs., LLC v. Bank of China*, 12 F.4th 119, 131 (2d Cir. 2021)

---

[82] The Court does note that Ms. Ahmed is a *pro se* litigant. However, she is a sophisticated *pro se* litigant, who has been representing herself in this litigation for many years, drafting her own filings, and appearing at a number of this Court's hearings on behalf of herself. She is highly educated and fluent in English. There is simply no world where she can claim to have not understood that the Relief Denial Order contemplated that a proposed order, if any, was to be submitted for approval to this Court and not the Superior Court.

(cleaned up). Here, the Court concludes there is an abundance of evidence to demonstrate, to a reasonable certainty, that a violation of this Court's orders has occurred.

First, broadly speaking, Ms. Ahmed is continuing the "scheme" that the Court has already determined would likely violate both the Freeze Order and Appointment Order if it came to fruition.[83] Indeed, the Court's prior decision to refrain from exercising its contempt powers was premised on Ms. Ahmed's voluntary withdrawal of the Motion for Entry of Amended Dissolution Agreement in the Superior Court. Ms. Ahmed now seeks approval of that very motion.[84]

Second, the Proposed Order itself violates the Court's orders in multiple ways, as laid out by the Receiver.[85] Ms. Ahmed seeks relief that directly conflicts with this Court's established framework for resolving disputed issues and administering the Receivership Estate. Notably, despite acknowledging that the question of Mr. Ahmed's personal tax obligations—and any corresponding tax attributes—has been reserved for determination in Phase 2, the Proposed Order nonetheless purports to award Ms. Ahmed control over Mr. Ahmed's tax-loss carryforwards and related attributes.[86] That relief would materially interfere

---

[83] ECF No. 2564 at 11.

[84] ECF No. 3086-1 at 2. While the Proposed Order acknowledges the Receivership Estate and states that the Proposed Order does not authorize the enforcement against assets that are part of the Receivership Estate; *see* ECF No. 3086-1 at 11; the Relief Denial Order denied her the ability to do just that: have the Superior Court approve the Dissolution Agreement and allow Ms. Ahmed to come to this Court to enforce it. Therefore, Ms. Ahmed proposing to bring enforcement matters to this Court does not alter the Court's finding that she is violating the Court's orders.

[85] ECF No. 3086 at 16–19.

[86] *Compare* ECF No. 2395 at 18–19 (the Court (J. Arterton) discussing the tax dispute and determining that it will be resolved in Phase 2 of liquidation) *with* ECF No. 3086-1 at 11 (Proposed Order awarding Ms. Ahmed all of Mr. Ahmed's "tax-loss carryforwards and related tax attributes").

with the Receiver's ability to assess and, if necessary, satisfy any tax liabilities in a manner that maximizes value for the Estate, thereby undermining both the Freeze Order and the Appointment Order.

The Proposed Order similarly encroaches on assets squarely within the Receiver's control by attempting to carve out for Ms. Ahmed a contingent interest in the Receivership Estate's holdings in OMC.[87] But the Appointment Order plainly prohibits third parties from seeking possession or control of Receivership Assets, and this Court has already cautioned against actions that jeopardize their orderly liquidation.[88] Though this issue is now mooted by this Court's recent order permitting the Receiver to liquidate the OMC Class B shares,[89] by asserting a right to any enhanced value of those interests—and by conditioning that right on determinations in parallel state court proceedings—Ms. Ahmed advances precisely the type of interference this Court's orders were designed to prevent.

Perhaps most egregiously, the Proposed Order reflects an attempt to reallocate jurisdiction away from this Court.[90] It invites the Superior Court to determine which assets fall

---

[87] ECF No. 3086-1 at 12.

[88] ECF No. 1070 at 12 ¶ 19(a), 13 ¶¶ 22–23; ECF No. 2711.

[89] ECF No. 3193.

[90] *See* ECF No. 3086-1 at 17 (interests determined by another Court not to have been forfeited by Mr. Ahmed "shall not be deemed part of the Receivership Estate in *SEC v. Ahmed*, No. 3:15-cv-675 (D. Conn.)); *id*. ("nothing in the Receivership proceedings shall impair or defeat Ms. Ahmed's vested rights under this Judgment absent further order of [the Superior Court]"); *id*. ("It is the intent and determination of this Judgment that the assets, rights, and recoveries awarded to Ms. Ahmed herein — including and not limited to those relating to the marital home, tax losses, and Oak and Oak HC/FT interests — are not part of the federal Receivership Estate in the SEC Action. All such assets and recoveries are adjudged to constitute Ms. Ahmed's separate marital property and shall not be subject to turnover, disgorgement, or claim by the Receiver."); *id*. at 18 (the Proposed Order does not preclude Ms. Ahmed from "pursu[ing] appellate or other remedies or challeng[ing] any federal or state determination concerning the scope of the Receivership….").

23

within the Receivership Estate and to insulate certain categories of property from this Court's reach, notwithstanding this Court's explicit and repeatedly reaffirmed exercise of exclusive jurisdiction over the Estate. That effort not only contravenes the Appointment Order and Relief Denial Order, but also disregards Ms. Ahmed's prior representations that the dissolution proceedings implicated no assets outside the scope of the asset freeze.[91] Taken together, these provisions constitute clear and convincing proof of Ms. Ahmed's violations of the Freeze Order, Appointment Order, and the Relief Denial Order. Ms. Ahmed's arguments to the contrary, which the Court has considered, are unpersuasive, for the exact reasons stated by the Receiver.[92] Moreover, two other district judges have already scrutinized Ms. Ahmed's arguments to the contrary, finding that the four corners of the orders were sufficiently clear in prohibiting Ms. Ahmed's similar actions, and thus, there is no "fair ground of doubt as to the wrongfulness of" the actions here. *Latino Officers Ass'n City of N.Y., Inc. v. City of New York*, 558 F.3d 159, 163 (2d Cir. 2009).

### c. Lack of Diligence in Complying

The last element of the contempt analysis requires a finding that the contemnor "h[as] not 'been reasonably diligent and energetic in attempting to accomplish what was ordered.'" *EEOC v. Loc. 638*, 753 F.2d 1172, 1178 (2d Cir. 1985) (quoting *Powell v. Ward*, 643 F.2d 924, 931 (2d Cir. 1981), *cert. denied*, 454 U.S. 832 (1981)). But "the party seeking the

---

[91] ECF No. 2285 at 3 n.2 (citing ECF No. 2256 at 3); *see also* ECF No. 2651-1 at 96:16-23 (Ms. Ahmed testifying at the Show Cause Hearing that "the [D]issolution [A]greement or whatever judgment is entered in the divorce court, my intention was to bring whatever judgment was there to this Court for enforcement or leave to enforce against the assets because there are no other assets that the agreement could have referred to. There are no other assets.").

[92] ECF No. 3141 at 6–8.

24

contempt order need not establish that the violation was willful." *Raleigh v. Baribault*, 729 F. Supp. 3d 250, 254 (D. Conn. 2024); *see also Yurman Studio, Inc. v. Castaneda*, No. 07-CV-1241, 2009 WL 454275, at *2 (S.D.N.Y. Feb. 23, 2009) (The contemnor's "conduct need not be willful in order for the [contemnor] to be found in contempt." ).

For the reasons explained above, the Court finds that Ms. Ahmed has not attempted to comply with the Court's orders, let alone to diligently comply with these Court's orders. Indeed, it appears as though she has taken affirmative steps to try to circumvent this Court's orders and do exactly what the Relief Denial Order prohibited her from doing.[93] Ms. Ahmed's arguments to the contrary are, again, unavailing, for the reasons laid out by the Receiver.[94] Thus, the third prong necessary for finding contempt has been satisfied, and the Court holds Ms. Ahmed in contempt.

### d.  Ability to Pay

Ms. Ahmed claims that she "lacks the financial ability to pay any sanctions this Court might impose."[95] Inability to comply is, of course, a "long-recognized defense to a civil contempt citation, but the burden is on [the party held in contempt] to substantiate their claimed

---

[93] The Court does not need to find that Ms. Ahmed is willfully violating this Court's orders. *Yurman Studio, Inc.*, 2009 WL 454275, at *2. Nevertheless, the Court finds that Ms. Ahmed's Motion for a Protective Order, which seeks to preclude the Receiver from sharing with this Court papers filed in the Dissolution Proceeding, is evident of her intent to violate the Court's orders. As the Receiver points out, the entry of that protective order would have made more it more difficult for the Receiver to effectively carry out his duty to report violations of the Appointment Order to this Court, and in turn, made it easier for Ms. Ahmed to violate the Court's orders. This certainly is reflective of Ms. Ahmed's intent and further precludes this Court from finding that she has attempted to diligently comply with this Court's orders.

[94] ECF No. 3141 at 9–10.

[95] ECF No. 3129 at 34.

inability plainly and unmistakably." *Donovan v. Sovereign Sec., Ltd.*, 726 F.2d 55, 59–60 (2d Cir. 1984) (cleaned up).

Here, Ms. Ahmed has provided *no* evidence of her asserted inability to pay any sanctions imposed by this Court. Instead, she makes conclusory assertions that "Ms. Ahmed has no income, carries credit card debt to pay for necessities for herself and three young children, and has a pending motion for release of funds for basic living, rental, and education expenses. She literally cannot pay any fine or attorneys' fees."[96] She further states that the "Court already has Ms. Ahmed's financial information from the May 1, 2025 hearing and the divorce proceeding records."[97] Not so. At the outset, it is unclear what information associated with the May 1, 2025 hearing Ms. Ahmed is referring to. The divorce proceeding records similarly shed no light on her financial status.[98]

---

[96] ECF No. 3129 at 35.

[97] *Id.*

[98] Indeed, at ECF No. 3092, the Receiver provided copies of the following records from the pending dissolution proceedings:

- ECF No. 3092-1, No. 222.00 – Receiver's Trial Compliance for the trial scheduled to commence on August 5, 2025;

- ECF No. 3092-2, No. 223.00 – Receiver's List of Exhibits for the trial scheduled to commence on August 5, 2025;

- ECF No. 3092-3, No. 224.00 – Plaintiff's Objection to Receiver's Proposed Language (Entry No. 222.00);

- ECF No. 3092-4, No. 225.00 – Motion for Sole Custody, Pendente Lite;

- ECF No. 3092-5, No. 226.00 – Military Affidavit;

- ECF No. 3092-6, No. 227.00 – Receiver's Trial Compliance for the trial scheduled to commence on October 28, 2025;

- ECF No. 3092-7, No. 228.00 – Receiver's List of Exhibits for the trial scheduled to commence on October 28, 2025;

The Court has already expressed its doubts regarding Ms. Ahmed's claims of indigency.[99] Nothing in Ms. Ahmed's Opposition to the Motion provides any actual evidence of her financial status or counteracts those doubts. Accordingly, the Court finds that Ms. Ahmed has not met her burden to show that she is unable to pay "any" sanctions the Court may impose, and the Court proceeds with entering said sanctions.

### e.  Sanctions to be Imposed

"Civil sanctions have two purposes: to coerce compliance with a court order and to compensate" the party harmed. *CBS Broadcasting Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 101

---

- ECF No. 3092-8, No. 230.00 – Motion to Seal Document;
- ECF No. 3092-9, No. 230.01 – Order on 230.00;
- ECF No. 3092-10, No. 231.00 – Motion in Limine;
- ECF No. 3092-11, No. 232.00 – Plaintiff's List of Exhibits;
- ECF No. 3092-12, No. 234.00 – Request to Bring Audio/Visual Equipment into the Courthouse;
- ECF No. 3092-13, No. 234.01 – Order on 234.00;
- ECF No. 3092-14, No. 235.00 – Financial Affidavit;
- ECF No. 3092-15, No. 236.00 – Motion in Limine to Preclude Examination of Plaintiff at the Oct 28-29, 2025 Trial; and
- ECF No. 3092-16, No. 237.00 – Notice of Receiver's Emer. Motion for Contempt and for Sanctions Against Relief Def. Shalini Ahmed.

The Court has meticulously reviewed all of these records. Only the Financial Affidavit at ECF No. 3092-14 relates to the state of Ms. Ahmed's finances. But the Financial Affidavit reveals an annual income of approximately $48,000 and annual expenses of $585,421, further underscoring the Court's longstanding concerns regarding the accuracy and completeness of Ms. Ahmed's financial representations. On this record, the Court cannot reconcile how Ms. Ahmed's reported income could plausibly sustain such expenditures. Moreover, the Court notes that this affidavit is not corroborated anywhere on this docket or in the briefing on the Motion by objective financial documentation, such as tax returns, bank records, or credit card statements.

[99] *See, e.g.,* ECF No. 3135 at 4 (the Court "express[ing] its concerns with Ms. Ahmed's candor regarding her sources of income").

27

(2d Cir. 2016) (cleaned up). Where a sanction is compensatory, "'the sanction should correspond at least to some degree with the amount of damages.'" *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs, Inc.*, 369 F.3d 645, 658 (2d Cir. 2004) (quoting *King*, 65 F.3d at 1062). Generally, compensatory sanctions for the other party's attorneys' fees and costs. *See Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017). "[W]here the purpose is to make the defendant comply, the court's discretion is otherwise exercised. It must then consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *United States v. United Mine Workers*, 330 U.S. 258, 304 (1947).

Here, the Receiver requests compensatory sanctions to be paid by Ms. Ahmed for costs for attorneys' fees and costs incurred by the Receiver, in an amount to be proven, for (1) his defense in the Dissolution Proceeding against Ms. Ahmed's efforts which violate this Court's orders and (2) any contempt proceedings in this Court (including the preparation of the instant Motion) (the "Requested Sanctions"). The Court finds that this a fair measure of compensation for the harm caused by Ms. Ahmed, and the costs the Receiver has incurred. Thus, this Court awards the Receiver the Requested Sanctions.

## IV.    CONCLUSION

For the foregoing reasons, the Motion is **GRANTED.** On or before **May 18, 2026**, the Receiver shall file a proposed order specifying the compensatory fees he seeks to recover in connection with this Motion, along with contemporaneous billing records and other supporting documentation.

28

**SO ORDERED.**

Hartford, Connecticut
May 4, 2026

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge